**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SHIRA PERLMUTTER,

    *Plaintiff*,

v.

TODD BLANCHE *et al.*,

    *Defendants*.

Case No. 25-cv-1659

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION**
**FOR TEMPORARY RESTRAINING ORDER**

**TABLE OF CONTENTS**

INTRODUCTION ..............................................................................................................1

FACTUAL BACKGROUND ...........................................................................................1

LEGAL STANDARD .....................................................................................................3

ARGUMENT...................................................................................................................4

    I.    Plaintiff is Likely to Succeed on the Merits...........................................................4

        A.    The Register of Copyrights can be appointed and removed only by the Librarian of Congress. ..................................................................................................... 4

        B.    Mr. Blanche does not lawfully hold the position of acting Librarian of Congress......... 6

    II.    Plaintiff Will Suffer Immediate and Irreparable Harm Absent Immediate Relief............ 10

    III.    The Equitable Factors Strongly Favor Emergency Relief ................................................. 14

CONCLUSION...............................................................................................................15

**INTRODUCTION**

Plaintiff Shira Perlmutter is a renowned copyright expert who has served with dignity as Register of Copyrights since October 2020, when she was lawfully appointed to her role by the Librarian of Congress.  As Register, Ms. Perlmutter is a critical advisor to Congress on matters of important legislative interest and administers the Nation's copyright system.

As part of a lawless effort to seize control over Congress's library, Defendants have attempted to remove Ms. Perlmutter from her post: first, by the President's purported dismissal of Ms. Perlmutter; and next by the President's arrogation of the unilateral power to appoint Deputy Attorney General Todd Blanche as Librarian of Congress, who then purported to replace Ms. Perlmutter.  But neither the President's purported removal nor Mr. Blanche's purported replacement of Ms. Perlmutter had any legal effect because the President lacks any authority to remove the Register of Copyrights or appoint an acting Librarian of Congress.

Defendants' actions are blatantly unlawful, and they threaten severe and irreparable harm to Ms. Perlmutter and her ability to fulfill the duties entrusted to her under the law.  This Court should enter a temporary restraining order that confirms that Defendants' actions to remove Ms. Perlmutter have no legal effect, ensures that Ms. Perlmutter can resume her work as Register of Copyrights, and prevents Defendants from encumbering Ms. Perlmutter's efforts to perform the duties that Congress has entrusted her.

**FACTUAL BACKGROUND**

On May 8, 2025, President Trump fired the Librarian of Congress, Dr. Carla D. Hayden, in a two-sentence email.  *See* Tim Balk, *Trump Administration Fires Librarian of Congress,* N.Y. Times (May 8, 2025), https://perma.cc/865K-GS9D.  In accordance with the Library of Congress's

regulations, interim Principal Deputy Librarian of Congress Robert R. Newlen, a 40-year veteran

at the Library, replaced Dr. Hayden as acting Librarian.  *See* Perlmutter Decl. ¶ 6.

Two days later, over the weekend, Trent Morse, Deputy Assistant to the President and

Deputy Director of the White House Presidential Personnel Office, sent an email to Ms. Perlmutter,

which stated, on behalf of the President, that her position as the Register of Copyrights and Director

of the U.S. Copyright Office was terminated, effective immediately.[1]  *See id.* ¶ 9–10; *see also*

Exhibit A.  Then, on Monday, May 12, 2025, two Justice Department officials arrived at the Library

of Congress and requested access to the U.S. Copyright Office.  *See* Perlmutter Decl. ¶ 11; *see also*

Maya C. Miller & Devlin Barrett, *Trump Installs Top Justice Dept. Official at Library of Congress,*

*Prompting a Standoff*, N.Y. Times (May 12, 2025), https://perma.cc/9L4G-8ZMU.  Those two

officials were Brian Nieves, Chief of Staff and Senior Policy Counsel to Deputy Attorney General

Todd Blanche, and Paul Perkins, Associate Deputy Attorney General to Mr. Blanche.  *See*

Perlmutter Decl. ¶ 11.  Mr. Nieves and Mr. Perkins showed Library staff a letter from the White

House purporting to appoint Mr. Blanche to the position of acting Librarian of Congress pursuant

to the Federal Vacancies Reform Act.  *See id.*; *see also* Exhibit B.  The Justice Department officials

also showed Library staff an email from Mr. Blanche that stated that he had selected Mr. Nieves

to serve as the acting Principal Deputy Librarian, and Mr. Perkins to replace Ms. Perlmutter to

serve as the acting Register of Copyrights and Director of the U.S. Copyright Office, which served

---

[1] One day earlier, the U.S. Copyright Office had issued a long-awaited report, in pre-publication format.  *See* Perlmutter Decl. ¶ 7.  Part 3 of its Report on Copyright and Artificial Intelligence (AI), issued pursuant to the Register of Copyrights' statutory responsibility to "[c]onduct studies" and "[a]dvise Congress on national and international issues relating to copyright," 17 U.S.C. § 701(b)(1), (b)(4), addressed the use of copyrighted works in the development of generative AI systems.  *See* U.S. Copyright Off., Copyright and Artificial Intelligence Part 3: Generative AI Training (May 2025), https://perma.cc/3J9F-7SQN.  The Report concluded that some uses of copyrighted works in generative AI training were likely to qualify as "fair use" but that some uses were likely to require licensing.

as Mr. Blanche's ratification of the President's decision to remove Ms. Perlmutter from her position. *See* Perlmutter Decl. ¶ 11; *see also* Exhibit B.

Officials at the Library of Congress did not recognize Mr. Blanche as their acting Librarian and did not permit Mr. Blanche and Mr. Nieves to assume control over the Library. *See* Perlmutter Decl. ¶ 11–12. A bipartisan group of lawmakers has expressed concern about the President's unprecedented efforts to control Congress's library. *See* Katherine Tully-McManus, *GOP Leaders Draw the Line at Trump's Library of Congress Takeover*, Politico (May 14, 2025), https://perma.cc/236C-QXRM. The leadership of the Library of Congress remains unresolved to this day.

### LEGAL STANDARD

Courts analyze a request for a temporary restraining order under a four-factor test. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *Council on Am.-Islamic Relations v. Gaubatz*, 667 F. Supp. 2d 67, 74 (D.D.C. 2009). A plaintiff seeking a temporary restraining order or preliminary injunction must show "(1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent such relief; (3) that the equities favor the plaintiff's position; and (4) that the injunction is in the public's interest." *Atlas Air, Inc. v. Int'l Bhd. of Teamsters*, 928 F.3d 1102, 1112 (D.C. Cir. 2019) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). If a showing in any one of these areas is particularly strong, "an injunction may issue even if the showings in other areas are rather weak." *Chaplaincy*, 454 F.3d at 297.[2]

---

[2] Ms. Perlmutter respectfully requests that the Court waive any security under Rule 65(c). *See* Fed. R. Civ. P. 65(c). This Court has "wide discretion" to grant relief under Rule 65 without requiring the movant to post any bond. *Am. First Legal Found. v. Becerra*, No. 24-1092, 2024 WL 3741402, at *16 n.11 (D.D.C. Aug. 9, 2024). Here, the requested relief will "do the defendant[s] no material damage"—and that fact counsels strongly in favor of "dispens[ing] with any security

**ARGUMENT**

## I.    Plaintiff is Likely to Succeed on the Merits

Plaintiff is likely to succeed on the merits of her claims because she lawfully remains the

Register of Copyrights.  Only the Librarian of Congress may *appoint* the Register of Copyrights,

and only the Librarian of Congress may *remove* the Register of Copyrights.  The President's

purported removal of Ms. Perlmutter was therefore invalid because he is not the Librarian of

Congress.

Mr. Blanche's purported removal of Ms. Perlmutter was also invalid.  Mr. Blanche is

plainly not the Librarian of Congress; that would require the advice and consent of the Senate, *see*

2 U.S.C. § 136-1, which has not weighed in.  Nor is Mr. Blanche the *acting* Librarian of Congress

because the President lacks any authority to appoint him as such.[3]

### A.    The Register of Copyrights can be appointed and removed only by the Librarian of Congress.

Congress may vest the appointment of inferior officers in "heads of departments."  *Free*

*Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 493 (2010); U.S. Const. art. II

§ 2.  "If Congress does so, it is ordinarily the department head, rather than the President, who

enjoys the power of removal."  *Free Enter. Fund*, 561 U.S. at 493.  Congress may depart from this

default rule, but, "[a]bsent relevant legislation," "the power to remove is held by the appointing

---

requirement whatsoever," as is typical in cases in which government action is at issue.  *Id.* (quoting
*Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 759 (D.C. Cir. 1980)); *see, e.g.*,
*Widakuswara v. Lake*, No. 25-CV-2390 (JPO), 2025 WL 945869, at *11 (S.D.N.Y. Mar. 28, 2025)
("[r]equiring that plaintiffs suing the government to vindicate constitutional and statutory rights"
post large bonds "would ensure that very few individuals could afford to sue the federal
government," and federal defendants "can hardly gripe about" the cost of "abiding by their
constitutional role as members of the executive branch").

[3] Under the regulations promulgated pursuant to 2 U.S.C. § 136, and by longstanding practice,
interim Principal Deputy Librarian Robert R. Newlen automatically succeeded Dr. Hayden as
acting Librarian of Congress.  *See* Perlmutter Decl. ¶ 6.

authority, and only by the appointing authority." *Nat'l Treasury Emps. Union v. Reagan*, 663 F.2d 239, 247 (D.C. Cir. 1981) (emphasis added).

That is exactly the case here. The Librarian of Congress, who is appointed by the President with the advice and consent of the Senate, "is a Head of Department." *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1342 (D.C. Cir. 2012). And Congress has provided that the Librarian of Congress shall appoint the Register of Copyrights. 17 U.S.C. § 701(a) ("The Register of Copyrights . . . shall be appointed by the Librarian of Congress, and shall act under the Librarian's general direction and supervision."). As the Fourth Circuit explained, "[t]he Librarian of Congress is an Officer of the United States, with the usual power of such officer to appoint such inferior officers (i.e., the Register), as he thinks proper." *Eltra Corp. v. Ringer*, 579 F.2d 294, 300 (4th Cir. 1978) (cleaned up). The Register's obligation, as an inferior officer, is to act "under the Librarian's general direction and supervision," 17 U.S.C. § 701(a), and to be "subject to supervision and oversight" by the principal officer of the agency, the Librarian. *See Fleming v. U.S. Dep't of Agric.*, 987 F.3d 1093, 1103 (D.C. Cir. 2021).

Because the Librarian of Congress—and not the President—appoints the Register, and because there is no statute giving the President the power to remove the Register, the default rule prevails and only the Librarian may remove the Register. *See Nat'l Treasury Emps. Union*, 663 F.2d at 247.

The President thus has no direct authority to remove the Register of Copyrights from her post, and the President's apparent effort to remove Ms. Perlmutter had no legal effect. *See Grundmann v. Trump*, No. CV 25-425 (SLS), 2025 WL 782665, at *10 (D.D.C. Mar. 12, 2025) (courts may award relief from the "injury caused by a President exceeding his Article II authority and intruding on Congress's Article I authority").

### B.      Mr. Blanche does not lawfully hold the position of acting Librarian of Congress.

Nor has Ms. Perlmutter been removed from her post by Mr. Blanche, who was purportedly

appointed as and is now claiming to be acting Librarian of Congress.  Despite Defendants' claimed

reliance on the Federal Vacancies Reform Act of 1998 ("FVRA"), 5 U.S.C. § 3345 *et seq.*, the

FVRA does not authorize the President to appoint an acting Librarian of Congress—nor does any

other source of law.

In the ordinary course, when a principal officer of the United States resigns a post, the

position may be filled only after the President has nominated and the Senate has confirmed a

successor.  This limitation is a "critical 'structural safeguard[] of the constitutional scheme.'" *Nat'l*

*Lab. Rels. Bd. v. SW Gen., Inc.*, 580 U.S. 288, 293 (2017) (alteration in original) (quoting *Edmond*

*v. U.S.*, 520 U.S. 651, 659 (1997)).  It protects against unchecked power in a single individual by

"dividing" it "between the Executive and Legislative Branches." *Freytag v. Comm'r of Internal*

*Revenue*, 501 U.S. 868, 884 (1991).

In some circumstances, Congress "has given the President *limited authority* to appoint

acting officials to temporarily perform the functions of a vacant [principal] office without first

obtaining Senate approval." *SW Gen., Inc.*, 580 U.S. at 294 (emphasis added).  This limited

authority is set forth in the FVRA, which allows for a temporary appointment:

> If an officer of an Executive agency (including the Executive Office of the President, and
> other than the Government Accountability Office) whose appointment to office is required
> to be made by the President, by and with the advice and consent of the Senate, dies, resigns,
> or is otherwise unable to perform the functions and duties of the office.

5 U.S.C. § 3345(a).  The FVRA is "the exclusive means for temporarily authorizing an acting

official to perform the functions and duties of any office of an *Executive* agency" for which Senate

confirmation is required.  *Id.* § 3347(a) (emphasis added).[4]

The FVRA does not apply here, however, because the Library of Congress is not an

"Executive agency" within the meaning of the FVRA.  Pursuant to 5 U.S.C. § 105, the term

"Executive agency," when used in Title 5 of the U.S. Code, means any (1) "Executive department,"

(2) "Government corporation," or (3) "independent establishment."  The Library of Congress is

not an "Executive agency" under Title 5:  It is not included in the list of "Executive departments,"

5 U.S.C. § 101 (definition of "Executive departments"); is not a "corporation owned or controlled

by the Government of the United States," 5 U.S.C. § 103 (definition of "Government

corporation"); and is not "an establishment in the executive branch" or "the Government

Accountability Office," 5 U.S.C. § 104 (definition of "independent establishment).[5]

The Library of Congress is, in name and function, Congress's Library.  Since its inception,

Congress has treated the Library of Congress as part of the Legislative Branch.  The U.S. Code

lists the "Library of Congress" under the title "The Congress," 2 U.S.C. Ch. 5, and the "Library of

Congress" chapter includes a provision that uses the term "offices and agencies of the legislative

---

[4] There are two narrow exceptions to the FVRA's exclusive authority: "if another 'statutory provision expressly' authorizes the President or another official to make such an appointment, [5 U.S.C.] § 3347(a)(1) & (2), or if the President validly makes a recess appointment under Article II, U.S. Const., art. II, § 2."  *See Aviel v. Gor*, No. 25-cv-778, 2025 WL 1009035, at *7 (D.D.C. Apr. 4, 2025).  Those exceptions do not apply here: there is no other statutory basis for the President's purported appointment of Mr. Blanche as acting Librarian of Congress and the President has not purported to make a recess appointment.

[5] The explicit reference to the Government Accountability Office—another legislative entity—in 5 U.S.C. § 104 as an entity that is *not* an "establishment in the executive branch" but is nevertheless an "independent establishment" makes clear that all other entities that Congress has organized within the Legislative Branch, including the Library of Congress, are excluded from the definition of "independent establishment."

branch" and defines that term to include the Library of Congress. 2 U.S.C. § 181(b)(1).[6]  As the

Department of Justice's Office of Legal Counsel previously explained: the Library of Congress is

a "congressional agenc[y]" and "[m]ost of the functions undertaken by the Library of Congress . .

. can comfortably be described as in aid of the legislative process."  *See* The Const. Separation of

Powers Between the President and Cong., 20 Op. O.L.C. 124, 172 (1996).

      This is consistent with countless court decisions that have concluded that the Library of

Congress is a legislative entity for purposes of Title 5.  For example, courts have found that the

exclusion of Congress from the meaning of "agency" under the Administrative Procedure Act

(APA) means that the Library of Congress is not subject to the APA.  *See, e.g., Washington Legal*

*Found. v. U.S. Sent'g Comm'n*, 17 F.3d 1446, 1449 (D.C. Cir. 1994); *Benedict v. Library of*

*Congress*, 1997 U.S. Dist. LEXIS 16158, at \*7 (D.D.C. Oct. 8, 1997); *Keeffe v. Library of*

*Congress*, 777 F.2d 1573, 1574 (D.C. Cir. 1985).  For the same reasons, courts have consistently

found that the Library of Congress is not an "agency" under the Freedom of Information Act

(FOIA).  *See, e.g., Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136 (1980).

Additionally, the D.C. Circuit has held that provisions of the Rehabilitation Act do not apply to

Library of Congress employees because those provisions are "limited in scope to the executive

branch" and "the Library of Congress, as part of the legislative branch, was not included."  *Judd*

*v. Billington*, 863 F.2d 103, 104 (D.C. Cir. 1988).

      The D.C. Circuit's decision in *Intercollegiate Broadcast Systems* is not to the contrary.  In

that case, the court deemed the Librarian to be a "Head of Department" eligible to appoint

---

[6] This is also consistent with a provision related to civil servants under Title 5 that defines "agency" to include "any Executive agency" in addition to "the Architect of the Capitol, the Government Accountability Office, the Government Publishing Office, and the Library of Congress," and others, which makes clear that the Library of Congress is not included in the definition of "Executive agency."  5 U.S.C. § 3330f(a)(1).

Copyright Royalty Judges for purposes of the Constitution's Appointments Clause. *See* 684 F.3d at 1341–42. The FVRA is, naturally, a statute; Congress was entitled to—and did—adopt its own definition of "Executive agency" for purposes of the statute. *See Dep't of Transp. v. Ass'n of Am. R.R.*, 575 U.S. 43, 51 (2015) (explaining that Congress's label of an entity, while not dispositive of the entity's constitutional status, is "instructive as to matters within Congress'[s] authority to address"); *U.S. Inst. of Peace v. Jackson*, No. 25-cv-804 (D.D.C. May 19, 2025) (same). Whether the Librarian is a "Head of Department" under the Appointments Clause is a distinct question from whether the Library of Congress is an "Executive agency" under the FVRA. The latter is resolved simply by a determination of whether the statutory definition of "Executive agency" includes the Library of Congress. It does not.

There are good reasons why Congress would have excluded agencies performing legislative functions from the FVRA. The Library of Congress performs confidential research for Members of Congress developing legislation and maintains confidential congressional records. *See* Perlmutter Decl. ¶ 3. Congress naturally would want a say in who could access the Library's records and control the Library's discharge of its duties. Indeed, the appointment of Mr. Blanche (who is serving concurrently in the Executive Branch) highlights why Congress would not have cut itself out of the process of identifying acting leadership for the Library of Congress.

The President purported to appoint Mr. Blanche under the FVRA, which affords the President no such authority. Nor is there any authority to be found in the Constitution itself. *See Williams v. Phillips*, 360 F. Supp. 1363, 1371 (D.D.C. 1973) (rejecting the President's theory that he has an inherent Article II authority to appoint an acting director because "in the absence of such legislation or legislation vesting a temporary power of appointment in the President, the constitutional process of nomination and confirmation must be followed"). The President

9

therefore did not lawfully appoint Mr. Blanche, and Mr. Blanche has not and cannot exercise the powers of that office.  It follows that any actions taken by Mr. Blanche as acting Librarian of Congress are void *ab initio* and have no legal effect.  *See Lucia v. SEC*, 585 U.S. 237 (2018) (appropriate remedy for an unlawful appointment is invalidation of the officer's *ultra vires* acts). Thus, Mr. Blanche did not validly ratify the dismissal of Ms. Perlmutter and did not validly appoint either Mr. Nieves or Mr. Perkins to senior Library posts.

## II.    Plaintiff Will Suffer Immediate and Irreparable Harm Absent Immediate Relief

Defendants' actions have caused harm to Ms. Perlmutter and will continue to cause her harm absent judicial intervention.[7]  Although garden variety employment disputes generally do not require emergency relief, *cf. Sampson v. Murray*, 415 U.S. 61, 91–92 (1974) (rejecting a claim of irreparable injury predicated on an employee's "loss of income"), this is no ordinary employment dispute, for at least four reasons.

*First*, Ms. Perlmutter suffers irreparable harm because Defendants' actions deprive her of her "statutory right to function" in the role that the Librarian of Congress has lawfully appointed her to perform.  *Harris v. Bessent*, No. CV 25-412, --- F. Supp. 3d ---, 2025 WL 679303, at *13 (D.D.C. Mar. 4, 2025).  Because of Defendants' actions, Ms. Perlmutter has lost the opportunity to lead the U.S. Copyright Office within the Library of Congress in accordance with its statutory mandates, as those mandates are understood by Ms. Perlmutter and the current acting Librarian of Congress, Mr. Newlen.  This Court has recognized that even if the deprivation of a senior government official's "statutory right to function" is temporary, the injury to them and their agency is both significant and irreparable.  *Berry v. Reagan*, No. 83-3182, 1983 WL 538, at *5 (D.D.C.

---

[7] In assessing whether the plaintiff has suffered an irreparable harm, this Court must assume that Ms. Perlmutter has demonstrated a likelihood that Defendants' conduct violates the law. *Chaplaincy of Full Gospel Churches*, 454 F.3d at 303.

Nov. 14, 1983) (granting preliminary injunction against removal of plaintiffs as members of the U.S. Commission on Civil Rights), *vacated as moot*, 732 F.2d 949 (D.C. Cir. 1983) (per curiam); *see also Mackie v. Bush*, 809 F. Supp. 144, 147 (D.D.C. 1993), *vacated as moot sub nom. Mackie v. Clinton*, 10 F.3d 13 (D.C. Cir. 1993) (issuing temporary restraining order prohibiting the President from removing plaintiffs from federal office and noting that "neither a damages remedy nor a declaratory judgment would provide an adequate remedy" after the fact of their removal).

*Second*, beyond the loss of her "statutory right to function," Plaintiff will be prevented from performing the legislative functions that are assigned to her if the Court does not issue preliminary relief.  As Register, Plaintiff is statutorily required to perform a number of functions and duties, *see* Perlmutter Decl. ¶ 4–8, and the absence of an emergency injunction will mean continued confusion as to who is in control of the Library of Congress and the U.S. Copyright Office, which necessarily impedes Plaintiff's ability to fulfill her statutory obligations, *see id.* ¶ 12   Take as an example the Register's statutory responsibility to "[c]onduct studies" and "[a]dvise Congress on national and international issues relating to copyright."  17 U.S.C. § 701(b)(1), (b)(4).  Plaintiff recently issued a long-awaited third part of a report on Copyright and Artificial Intelligence (AI) pursuant to these statutory obligations and that was the product of a nearly two-year study.  *See* Perlmutter Decl. ¶ 7*; see also U.S. Copyright Off.*, Copyright and Artificial Intelligence Part 3: Generative AI Training (May 2025), https://perma.cc/3J9F-7SQN.  The fourth and final part of the report remains in process; absent the immediate prevention of Mr. Blanche's appointment, Mr. Perkins's appointment, and Ms. Perlmutter's removal, Ms. Perlmutter will be unable to complete the report as expected by Congress.  *See* Perlmutter Decl. ¶ 13.  If another person is appointed to Plaintiff's role, her ability to perform these duties will become at best unclear and at worst impossible.  *See id*. ¶ 13–14.  "[T]he loss of the ability to do what Congress specifically directed

[Plaintiff] to do cannot be remediated with anything other than equitable relief." *Harris v. Bessent*, No. CV 25-412 (RC), 2025 WL 521027, at *8 (D.D.C. Feb. 18, 2025) (citation omitted).

*Third*, absent emergency relief, Ms. Perlmutter will be irreparably harmed because the President's attempt to take over the Library of Congress implicates separation-of-powers issues not ordinarily present in an employment dispute. Given the sensitivity of the Library of Congress's statutory functions vis-à-vis Congress, Congress has not given up its right to determine who the acting Librarian of Congress should be. (As explained *supra* in Section I.B, the FVRA does not give the President that right.) Yet the President has purported to assert exactly that authority. And beyond just asserting the authority to appoint *somebody* as acting Librarian of Congress, the President is asserting the authority to appoint an individual who is serving concurrently in the Executive Branch. The Library of Congress's Congressional Research Service and U.S. Copyright Office will be unable to perform their statutory duties as neutral advisors to Congress if an Executive Branch official has asserted control over the Library's operations. This would put the current Deputy Attorney General in charge of a legislative entity that "determin[es] the advisability" of Congress's legislative proposals, 2 U.S.C. § 166(d)(1)(a), prepares "materials and services to committees and Members of the Senate and House of Representatives and joint committees of Congress to assist them in their legislative and representative functions," *id.* § 166(d)(5), and performs additional duties in aid of the legislative process, all "*without partisan bias*," *id.* § 166(d) (emphasis added). Defendants' unlawful access to the Library of Congress's confidential research for Members of Congress and confidential congressional records would be irreversible. And the damage could arise rapidly: were Defendants to obtain unlawful access to deposits of copyrighted works, the value of those works and the copyright registration system would be jeopardized and public trust in the U.S. Copyright Office would be irreparably harmed.

*Fourth*, the institutional harm to the Library of Congress and U.S. Copyright Office that will emanate from Defendants' unlawful actions will be such that Ms. Perlmutter would be unable to return to her position as it currently exists.  Because the harm to Plaintiff and the harm to the Library of Congress are inextricably intertwined, this circumstance presents precisely the "extraordinary situation" requiring urgent judicial intervention that the Supreme Court contemplated in *Sampson*.  This Court recognized this type of irremediable harm in *English v. Trump*, despite its finding that a plaintiff claiming to be the rightful director of the Consumer Financial Protection Bureau did not suffer irremediable harm because it was likely that she could later be reinstated.  279 F. Supp. 3d 307, 313 (D.D.C. 2018).  The Court in *English* contrasted the plaintiff's circumstances with those in *Berry*, explaining that "any harm suffered by the commissioners [in *Berry*] was *plainly irreparable* because the commission would have expired and they could not have been reinstated to it."  *English*, 279 F. Supp. 3d at 335 (emphasis added); *see also Davis v. Billington*, 76 F. Supp. 3d 59, 65 (D.D.C. 2014) (no irreparable harm arising from the plaintiff's termination because "he ha[d] no concrete proof that the vacancy . . . or some other comparable position w[ould] not be available when th[e] [case] is ultimately resolved").  This Court undertook the same analysis in *Aviel v. Gor*, explaining that the plaintiff's harm was beyond remediation because "no amount of relief will resurrect her right to function" as it existed at the time that the lawsuit was initiated.  2025 WL 1009035, at \*11 (citation omitted).  Therefore, "[t]his unique, irremediable harm distinguishes this case from those where the plaintiff only pleads the loss of her own right to function in a role."  *Id.* at \*21.

Accordingly, this case is nothing like a garden-variety employment dispute in which an employee seeks backpay or similar remedies for wrongful termination.  Ms. Perlmutter is not suing for monetary harm but instead the fundamental loss of her public office.  Mr. Blanche's unlawful

appointment to the position of acting Librarian of Congress, and Mr. Perkins's purported appointment to the U.S. Copyright Office, will do immeasurable damage to the independent role of the Library of Congress and its services to Congress and the public. And even if Ms. Perlmutter could eventually be reinstated, she would return to an entity that has been irreparably damaged due to Defendants' illegal conduct. All that Plaintiff seeks through this motion is a preservation of the lawful status quo. For the reasons stated above, Plaintiff has shown that she will suffer irreparable harm absent immediate injunctive relief.

III.   **The Equitable Factors Strongly Favor Emergency Relief**

Finally, the balance of the equities and the public interest also favor an injunction. These inquiries typically "merge into one factor when the government is the non-movant." *Ramirez v. U.S. Immigration & Customs Enf't*, 310 F. Supp. 3d 7, 32 (D.D.C. 2018) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

"[T]here is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)). As discussed above, no Defendant had the legal authority to remove Ms. Perlmutter as Register of Copyrights. *See supra* Part I.A. There can be no public interest in her unlawful removal. *See League of Women Voters*, 838 F.3d at 12 ("There is generally no public interest in the perpetuation of unlawful agency action."). Nor did Defendants have the legal authority to appoint Mr. Blanche to acting Librarian of Congress, *see supra* Part I.B, and therefore there can be no public interest in his unlawful placement in that position. The public also has a strong interest in a swift remedy of separation of powers violations. *See Grundmann v. Trump*, No. 25-CV-425 (SLS), 2025 WL 782665, at *18 (D.D.C. Mar. 12, 2025) ("If the Government had its way,

14

it would place unchecked power in the hands of the President, which is antithetical to our system of government"). As discussed above, *supra* Part II, immediate relief is necessary to prevent irreversible harm to the Library of Congress and Ms. Perlmutter's ability to perform her statutory duties.

On the other side of this balance, the requested relief will not cause Defendants any hardship. "It is well established that the Government cannot suffer harm from an injunction that merely ends an unlawful practice." *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 218 (D.D.C. 2020) (citations omitted). Nor will Defendants be harmed by the maintenance of the status quo, in which Plaintiff, who has faithfully served as the Register of Copyrights for the last five years, continues to fulfill her statutory role as an advisor to Congress and steward of the copyright system.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a temporary restraining order should be granted.

Dated: May 22, 2025

Respectfully submitted,

*/s/ Allyson R. Scher*
Brian D. Netter (D.C. Bar No. 979362)
Allyson R. Scher (D.C. Bar No. 1616379)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
bnetter@democracyforward.org
ascher@democracyforward.org

Donald B. Verrilli, Jr. (D.C. Bar. No. 420434)
Ginger D. Anders (D.C. Bar. No. 494471)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue, NW, Suite 500E
Washington, D.C. 20001
(202) 220-1100
donald.verrilli@mto.com
ginger.anders@mto.com

15

16

Kuruvilla J. Olasa (*pro hac vice* forthcoming)
James R. Salzmann (*pro hac vice* forthcoming)
Miranda E. Rehaut (*pro hac vice* forthcoming)
Adeel Mohammadi (*pro hac vice* forthcoming)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
(213) 683-9100
kuruvilla.olasa@mto.com
james.salzmann@mto.com
miranda.rehaut@mto.com
adeel.mohammadi@mto.com

*Counsel for Plaintiff*