IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHIRA PERLMUTTER,<br><br>    *Plaintiff*,<br><br>v.<br><br>TODD BLANCHE *et al.*,<br><br>    *Defendants*. | Case No. 25-cv-1659 |

**DECLARATION OF SHIRA PERLMUTTER**

I, Shira Perlmutter, declare under penalty of perjury, under 28 U.S.C. § 1746, that the following is true and correct:

1. I am the Register of Copyrights and Director of the U.S. Copyright Office at the Library of Congress. I was appointed to my position in October 2020 by the Librarian of Congress, Carla D. Hayden.

2. From 2012 until my appointment as Register, I was the Chief Policy Officer and Director for International Affairs at the United States Patent and Trademark Office ("USPTO"), where I oversaw policy and international work in all areas of intellectual property including copyright, serving administrations of both parties. Earlier in my career, I served as the Associate Register for Policy and International Affairs at the U.S. Copyright Office; directed global legal policy for an international trade association; was a consultant on copyright and e-commerce at the World Intellectual Property Organization; headed intellectual property law and policy at AOL Time Warner; was a law professor at the Catholic University of America; and practiced at two private law firms. I have an AB from Harvard University and a JD from the University of Pennsylvania.

3.      Through the Congressional Research Service ("CRS") and the U.S. Copyright Office, the Library of Congress performs critical legislative functions, such as conducting research and policy studies for members of Congress, advising them on draft legislation, and maintaining records that are confidential to the legislative branch.

4.      Within the Library of Congress, the U.S. Copyright Office registers copyright claims, records information about copyright ownership, provides information to the public, and advises Congress and other parts of the government on copyright law and policy.  The Office examines hundreds of thousands of copyright claims each year and receives deposits of works of authorship submitted for registration.  These deposits contribute significantly to the Library of Congress's collections.

5.      In my role as Register of Copyrights and Director of the U.S. Copyright Office, I serve as the principal advisor to Congress on national and international copyright matters, testifying upon request and providing impartial expertise on copyright law and policy, administering the U.S. Copyright Act, and leading a workforce of nearly 500 employees.

6.      As Register of Copyrights, by statute, I act under the Librarian of Congress's supervision and direction.  Since May 8, 2025, when President Trump fired Librarian of Congress Carla D. Hayden, I have acted under the supervision and direction of Robert R. Newlen, who replaced Dr. Hayden as acting Librarian in accordance with the Library of Congress's regulations.

7.      On May 9, 2025, the U.S. Copyright Office issued in pre-publication format, the long-awaited Part 3 of Copyright and Artificial Intelligence, a report made pursuant to my statutory responsibility to "[c]onduct studies . . . regarding copyright" and "[a]dvise Congress on national and international issues relating to copyright."  17 U.S.C. § 701(b)(1), (b)(4).  This Part, subtitled "Generative AI Training," addressed the use of copyrighted works in the development of

generative AI systems. *See* U.S. Copyright Off., *Copyright and Artificial Intelligence Part 3: Generative AI Training* (May 2025), https://perma.cc/3J9F-7SQN. The Report concluded that some uses of copyrighted works in generative AI training were likely to qualify as "fair use," but some uses were likely to require licensing. A fourth and final part of the report is in the process of being finalized, and it will address the topic of potential liability for infringing AI outputs.

8. Among other initiatives, I have been directing work on the accelerated development of the Enterprise Copyright System, a project to modernize the Office's IT and connect all of its services; the launch of a new fee study; and statutorily-required reviews of the operation of the small claims tribunal, the Copyright Claims Board recently established by Congress, and the redesignation of the entities that administer the statutory license created by the Music Modernization Act.

9. On May 10, 2025, I received an email from Trent Morse stating that, at the direction of President Trump, I was terminated from my position effective immediately.

10. Specifically, the May 10, 2025 email, *see* Exhibit A, reads:

Shira,

On behalf of President Donald J. Trump, I am writing to inform you that your position as the Register of Copyrights and Director at the U.S. Copyright Office is terminated effective immediately.

Thank you for your service.

Trent Morse
Deputy Director
Presidential Personnel

11. I am informed and believe that on May 12, 2025, Brian Nieves and Paul Perkins arrived at the Library of Congress and requested access to the U.S. Copyright Office. Mr. Nieves and Mr. Perkins showed Library staff a letter from the White House that purported to appoint Todd

3

Blanche to serve as the acting Librarian of Congress. *See* Exhibit B. Mr. Nieves and Mr. Perkins also showed Library staff printed versions of emails from Mr. Blanche, in which he purported to appoint Mr. Nieves as acting Principal Deputy Librarian of Congress and Mr. Perkins as Register of Copyrights and Director of the U.S. Copyright Office. *See* Exhibit B. Mr. Nieves and Mr. Perkins subsequently left the premises.

12. The purported appointments of Mr. Blanche, Mr. Nieves, and Mr. Perkins have caused considerable confusion among Library staff, copyright stakeholders, and the public. If the conflicting claims to the positions of acting Librarian of Congress and Register of Copyrights are not resolved, staff will not be able to ascertain who is in control of the Library and the Copyright Office, and therefore who supervises and directs their work. This will impede the Library of Congress's and Copyright Office's ability to perform their work as authorized by Congress and fulfill their statutory obligations. Specifically, Mr. Perkins's claim that he is the Acting Register of Copyrights has hindered and will continue to hinder my ability to fulfill the statutory obligations that are assigned to me as the Register of Copyrights.

13. Among many things, including the initiatives described above, I will be unable to issue the final part of the Office's *Copyright and Artificial Intelligence* report, pursuant to my statutory responsibility to "[c]onduct studies" and "[a]dvise Congress on national and international issues relating to copyright," 17 U.S.C. § 701(b)(1), (b)(4), if Mr. Perkins continues to claim that he is the acting Register of Copyrights and Director of the U.S. Copyright Office.

14. My ability to fulfill the statutory duties of the Register of Copyrights will be severely compromised if U.S. Copyright Office loses its credibility as a non-partisan advisor to Congress.

4

Alexandria, Virginia
May 22, 2025

_____
Shira Perlmutter