# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SHIRA PERLMUTTER, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-01659-TJK |
| | ) | |
| TODD BLANCHE, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

# DEFENDANTS' OPPOSITION TO PLAINTIFF'S
# <u>MOTION FOR A TEMPORARY RESTRAINING ORDER</u>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 3

LEGAL STANDARD ......................................................................................................... 5

ARGUMENT ...................................................................................................................... 6

I.      Plaintiff has not shown substantial likelihood of success on the merits. ........................... 6

      A.     The President lawfully designated Mr. Blanche as acting Librarian of Congress and Mr. Blanche ratified the President's removal of Plaintiff from serving as Register of Copyrights (Count I). .......................................................... 6

            1.     Mr. Blanche was lawfully designated as acting Librarian of Congress pursuant to the Federal Vacancies Reform Act. .......................... 6

            2.     Mr. Blanche's designation as acting Librarian of Congress was independently authorized by Article II of the Constitution. ...................... 11

      B.     Alternatively, the President lawfully removed Plaintiff as Register of Copyrights (Count II). ........................................................................................... 15

II.    Plaintiff has not met her burden of showing irreparable harm. ........................................ 17

III.   The balance of harms and the public interest weigh against injunctive relief. ................. 21

IV.   Plaintiff has no cause of action and no right to the relief she seeks. ................................ 23

CONCLUSION .................................................................................................................. 24

i

# TABLE OF AUTHORITIES

**Cases:**

*Abdullah v. Bush*,
   945 F. Supp. 2d 64 (D.D.C. 2013) ........................................................................ 22

*Alpine Sec. Corp. v. Fin. Indus. Reg. Auth.*,
   121 F.4th 1314 (D.C. Cir. 2024) ........................................................................... 17

*Aviel v. Gor*,
   ---F. Supp. 3d ---, 2025 WL 1009035 (D.D.C. Apr. 4, 2025) .................................. 21

*Berry v. Reagan*,
   Civ. A. No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983), *vacated as moot*,
   732 F.2d 949 (D.C. Cir. 1983) ....................................................................... 20, 21

*Bowsher v. Synar*,
   478 U.S. 714 (1986) ............................................................................................. 17

*Brehm v. Marocco*,
   Civ. A. No. 25-0660, 2025 U.S. Dist. LEXIS 71326 (D.D.C. Mar. 11, 2025) .................. 19, 21

*Burns v. U.S. Gen. Act. Off. Emps. Fed. Credit Union*,
   Civ. A. No. 88-3424, 1988 WL 134925 (D.D.C. Dec. 2, 1988) ............................... 19

*Chaplaincy of Full Gospel Churches v. England*,
   454 F.3d 290 (D.C. Cir. 2006) ........................................................................ 17, 18

*Chef Time 1520 LLC v. Small Bus. Admin.*,
   646 F. Supp. 3d 101 (D.D.C. 2022) ....................................................................... 5

*Coal. for Common Sense in Gov't Procurement v. United States*,
   576 F. Supp. 2d 162 (D.D.C. 2008) .................................................................. 17-18

*Collins v. Yellen*,
   594 U.S. 220 (2021) ............................................................................................. 15

*Davis v. Billington*,
   76 F. Supp. 3d 59 (D.D.C. 2014) ............................................................... 19, 20, 22

*Dellinger v. Bessent*,
   No. 25-5052, 2025 WL 887518 (D.C. Cir. Mar. 10, 2025) ...................................... 19

*Dotson v. District of Columbia*,
   No. 24-cv-1864, 2024 WL 5046282 (D.D.C. Dec. 9, 2024) .................................... 17

*Edmond v. United States,*
    520 U.S. 651 (1997) ............................................................................................. 12

*EEOC v. City of Janesville,*
    630 F.2d 1254 (7th Cir. 1980) ............................................................................. 19

*Elite Ent., Inc. v. Reshammiya,*
    Civ. A. No. 08-0641, 2008 WL 9356287 (D.D.C. Apr. 18, 2008)............................ 22

*Eltra Corp. v. Ringer,*
    579 F.2d 294 (4th Cir. 1978) .................................................................................. 9

*English v. Trump,*
    279 F. Supp. 3d 307 (D.D.C. 2018) .............................................. 6, 17, 19, 20, 21

*Farris v. Rice,*
    453 F. Supp. 2d 76 (D.D.C. 2006) .................................................................. 5, 19

*Franklin v. Massachusetts,*
    505 U.S. 788 (1992) ...................................................................................... 23, 24

*Franks v. Nimmo,*
    683 F.2d 1290 (10th Cir. 1982) .......................................................................... 19

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
    561 U.S. 477 (2010) .............................................................................. 8, 11, 12, 15

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives,*
    920 F.3d 1 (D.C. Cir. 2019) ................................................................................... 5

*Harris v. Bessent,*
    ---F. Supp. 3d---, 2025 WL 679303 (D.D.C. Mar. 4, 2025).................................... 18

*Hetreed v. Allstate Ins. Co.,*
    135 F.3d 1155 (7th Cir. 1998) ............................................................................. 19

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.,*
    684 F.3d 1332 (D.C. Cir. 2012) ............................................................. 1, 3, 7, 8, 9

*League of Women Voters v. Newby,*
    838 F.3d 1 (D.C. Cir. 2016) ................................................................................... 5

*Levesque v. Maine,*
    587 F.2d 78 (1st Cir. 1978) ................................................................................. 19

*Marxe v. Jackson,*
    833 F.2d 1121 (3d Cir. 1987) .............................................................................. 19

iii

*Mississippi v. Johnson*,
   71 U.S. (4 Wall.) 475 (1866) ................................................................. 23

*Myers v. United States*,
   272 U.S. 52 (1926) ............................................................. 13, 15, 16

*National Labor Relations Board v. SW General, Inc.*,
   580 U.S. 288 (2017) ............................................................. 14, 15, 23

*Nat'l Treasury Emps. Union v. Reagan*,
   663 F.2d 239 (D.C. Cir. 1981) ................................................................. 16

*Nichols v. Agency for Int'l Dev.*,
   18 F. Supp. 2d 1 (D.D.C. 1998) ................................................................. 19

*Nken v. Holder*,
   556 U.S. 418 (2009) ................................................................. 21

*Open Top Sightseeing USA v. Mr. Sightseeing, LLC*,
   48 F. Supp. 3d 87 (D.D.C. 2014) ................................................................. 5

*Phillip v. Fairfield Univ.*,
   118 F.3d 131 (2d Cir. 1997) ................................................................. 18

*Pursuing Am.'s Greatness v. FEC*,
   831 F.3d 500 (D.C. Cir. 2016) ................................................................. 5

*Raines v. Byrd*,
   521 U.S. 811 (1997) ................................................................. 19

*Rubino v. City of Mount Vernon*,
   707 F.2d 53 (2d Cir. 1983) ................................................................. 19

*Sampson v. Murray*,
   415 U.S. 61 (1974) ............................................................. 3, 19, 20

*Seila Law LLC v. CFPB*,
   591 U.S. 197 (2020) ............................................................. 11, 15, 16, 17, 22

*Sierra Club v. Johnson*,
   374 F. Supp. 2d 30 (D.D.C. 2005) ................................................................. 22

*Small v. Avanti Health Sys., LLC*,
   661 F.3d 1180 (9th Cir. 2011) ................................................................. 22

*Starbucks Corp. v. McKinney*,
   602 U.S. 339 (2024) ................................................................. 6

*Strait Shipbrokers Pte. Ltd. v. Blinken*,
    560 F. Supp. 3d 81 (D.D.C. 2021) ................................................................. 22

*SW Gen., Inc. v. Nat'l Lab. Rels. Bd.*,
    796 F.3d 67 (D.C. Cir. 2015) ......................................................................... 23

*Swan v. Clinton*,
    100 F.3d 973 (D.C. Cir. 1996) ....................................................................... 24

*Trump v. Wilcox*,
    605 U.S. __, No. 24A966, 2025 WL 1464804 (S. Ct. May 22, 2025) ............ 3, 18, 22

*United States v. Arthrex, Inc.*,
    594 U.S. 1 (2021) .......................................................................................... 11

*Williams v. Phillips*,
    360 F. Supp. 1363 (D.D.C. 1973) .................................................................. 14

*Williams v. Phillips*,
    482 F.2d 669 (D.C. Cir. 1973) ....................................................................... 14

*Winter v. Nat. Res. Def. Council*,
    555 U.S. 7 (2008) .......................................................................................... 5, 21

*Wis. Gas Co. v. Fed. Energy Regul. Comm'n*,
    758 F.2d 669 (D.C. Cir. 1985) ....................................................................... 18

*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952) ...................................................................................... 13

**Statutes:**

2 U.S.C. § 136 ..................................................................................................... 8

2 U.S.C. § 136-1 ................................................................................................. 1, 3, 7

5 U.S.C. § 104 ..................................................................................................... 1, 4, 7, 9, 10

5 U.S.C. § 105 ..................................................................................................... 1, 4, 7

5 U.S.C. § 552 ..................................................................................................... 9

5 U.S.C. § 3345 ................................................................................................... 4, 7

5 U.S.C. § 3347 ................................................................................................... 4, 14

17 U.S.C. § 701 ................................................................................................... 3, 9

v

17 U.S.C. § 702 ............................................................................................... 3, 9, 10

17 U.S.C. § 708 ...................................................................................................... 3

31 U.S.C. § 702 .................................................................................................... 10

31 U.S.C. § 703 .................................................................................................... 10

D.C. Code § 16-3501 ........................................................................................... 23

**U.S. Constitution:**

U.S. Const. art II, § 1 ........................................................................................... 11

U.S. Const. art II, § 2 ........................................................................................... 11

U.S. Const. art II, § 3 ....................................................................................... 2, 11

**Other Authorities:**

1 Annals of Cong. 463 (1789) .............................................................................. 11

*Authority of the President to Remove the Staff Director of the Civil Rights Commission
     and Appoint an Acting Staff Director,*
     25 Op. O.L.C. 103 (2001) .............................................................................. 12

Library of Congress, Librarians of Congress, 1802-1974 (1977) ...................... 8

Library of Congress, *George Watterston (1783-1854): 3rd Librarian of Congress 1815-1829,*
     https://www.loc.gov/item/n83041676/george-watterston-1783-1854/ .......... 8

Memorandum for Neil Eggleston, Associate Counsel to the President, from Walter Dellinger,
     Assistant Attorney General, Office of Legal Counsel, *Re: Appointment of an Acting Staff
     Director of the United States Commission on Civil Rights* (Jan. 13, 1994),
     https://www.justice.gov/olc/page/file/1311936/dl?inline ...................... 12

*Power of the President to Designate Acting Member of the Federal Home Loan
     Bank Board,*
     1 Op. O.L.C. 150 (1977) ........................................................................... 12, 13

*Temporary Presidential Designation of Acting Bd. Members of Inter-Am. Found. & U.S.
     African Dev. Found.,*
     49 Op. O.L.C. __, (Mar. 14, 2025) ............................................................ 11, 12

The Federalist No. 70 (J. Cooke ed. 1961) .......................................................... 12

## INTRODUCTION

The Constitution creates three branches of Government.    There is Congress, the Executive, and the Judiciary.    There is no fourth constitutional category reserved for an indeterminate-and-multiplying number of autonomous federal organizations.    That simple principle suffices to deny Plaintiff's motion.

The President of the United States removed Carla Hayden from her position as Librarian of Congress and designated the Deputy Attorney General, Todd Blanche, as acting Librarian.    The President then removed Plaintiff, Shira Perlmutter, from service as the Register of Copyrights and Director of the U.S. Copyright Office—a decision that was ratified by Mr. Blanche in his role as acting Librarian, including through Mr. Blanche's appointment of Paul Perkins to that role. Plaintiff now seeks a temporary restraining order asking this Court to reinstate Plaintiff to her prior position as Register of Copyrights.    The Court should deny the motion.

The President had the power to remove the Librarian and designate an acting replacement. The Library of Congress is not an autonomous organization free from political supervision.    It is part of the Executive Branch and is subject to presidential control, according to the strictures of the Federal Vacancies Reform Act ("FVRA").    That law imposes parameters on presidential designation of acting officials to fill vacancies in an "Executive agency," which includes "an establishment in the executive branch[.]"    5 U.S.C. §§ 104, 105.    The Library of Congress fits squarely in that definition.    The Librarian of Congress is appointed by the President, with the advice and consent of the Senate, *see* 2 U.S.C. § 136-1(a), "is subject to unrestricted removal by the President," and the Library exercises powers "generally associated in modern times with executive agencies," *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1341–42 (D.C. Cir. 2012).    Hence the D.C. Circuit's easy conclusion that the Library "is

1

undoubtedly a component of the Executive Branch." *Id*. at 1342 (citation omitted).

To the extent the FVRA does not apply, of course, the President's constitutional power to supervise the Library is greater—not less. The President has the constitutional power—indeed the obligation—to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. That power includes the power to designate subordinate officials to supervise components of the executive branch when they are otherwise leaderless. The FVRA does not supply the President the power to designate officials; it *constrains* his underlying constitutional power by imposing precise rules on how the President may exercise his designation authority in certain contexts. The President's power to designate Mr. Blanche comes from the Constitution, not any statute. And it applies here if the FVRA is silent.

As for Plaintiff, her removal was lawful. Because Mr. Blanche is properly serving as acting Librarian, he had clear authority to remove the Register of Copyrights, as he did in designating Paul Perkins as acting Register. In addition, the President removed the Register directly—a removal that likewise is within his constitutional power where, as at that time, there is no Librarian. The general rule is that the power to remove tracks the power to appoint; thus, the Librarian normally has the power to remove the Register. But if there is no Librarian and the President cannot designate an acting Librarian (as Plaintiff argues), the President's removal authority extends to inferior officers like the Register. Again, the Constitution does not countenance federal organizations free from all political control, and where there is no principal officer to effectuate removals, that power lies in the ultimate repository of executive power—the President.

Finally, Plaintiff's motion should be denied for the independent and sufficient reasons that she has neither demonstrated irreparable harm absent a temporary restraining order nor shown that the equities favor that relief. Plaintiff has no right to perpetual service as Register of Copyrights,

2

and her loss of employment is not irreparable absent a "genuinely extraordinary situation." *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974).   Plaintiff argues she is being "depriv[ed] of her 'statutory right to function'" as Register of Copyrights, but the Supreme Court just rejected that precise theory of injury as a basis for emergency injunctive relief.   *Trump v. Wilcox*, 605 U.S. __, No. 24A966, 2025 WL 1464804, at *1 (S. Ct. May 22, 2025).   The other injuries Plaintiff postulates are not *her* injuries, but supposed *institutional* injuries to the Library or to Congress— injuries that cannot support *her* request for judicial reinstallation to office.   And Plaintiff makes no claim that the U.S. Copyright Office is somehow in jeopardy, such that she could not be reinstated, if she were to prevail, after this litigation has run its course.

The Court should deny the motion.

## BACKGROUND

The Library of Congress is a statutorily created entity that is headed by a Librarian, who is appointed by the President with the advice and consent of the Senate.   2 U.S.C. § 136-1(a).   The Library is composed of several divisions that perform a variety of distinct functions, including the U.S. Copyright Office.   That office is headed by the Register of Copyrights and Director of the U.S. Copyright Office, who is appointed by the Librarian.   17 U.S.C. § 701(a).   That office is authorized "to promulgate copyright regulations, to apply the statute to affected parties, and to set rates and terms case by case[.]"   *Intercollegiate Broad. Sys., Inc.*, 684 F.3d at 1342; *see* 17 U.S.C. §§ 702, 708.   "All regulations established by the Register … are subject to the approval of the Librarian of Congress."   17 U.S.C § 702.

On May 8, 2025, the President exercised his authority under Article II of the Constitution to remove Carla Hayden from her position as Librarian of Congress.   Compl. ¶ 17 (ECF No. 1).   The next day, the President designated Defendant Todd Blanche, the current Deputy Attorney

General, as acting Librarian of Congress and "directed [him] to perform the duties of th[at] office." ECF No. 2-5, at 2.  In designating Mr. Blanche as acting Librarian, the President invoked his authority under Article II of the Constitution, both generally and as addressed in applicable federal statutes, including the FVRA, 5 U.S.C. §§ 3345–3349.  *See id*.

The FVRA governs the President's designation of an acting official for a Senate-confirmed position in an "Executive agency" when the officer previously holding that position "dies, resigns, or is otherwise unable to perform the functions and duties of the office…."  5 U.S.C. § 3345(a). The term "Executive agency" includes an "independent establishment."  *Id*. §§ 104, 105.  An "independent establishment," in turn, includes "an establishment in the executive branch (other than the United States Postal Service or the Postal Regulatory Commission)."  *Id*. § 104(1).  The definition excludes "an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment[.]"  *Id*.  The statute also expressly designates the Government Accountability Office as an "independent establishment."  *Id*. § 104(2).  For governmental entities that fall within the FVRA, that statute delineates the "exclusive means for temporarily authorizing an acting official to perform the functions and duties" of that entity, except in limited circumstances.  *Id*. § 3347(a).

On May 10, 2025, the President removed the then-Register of Copyrights, Plaintiff Shira Perlmutter.  Compl. ¶ 20; *see* ECF No. 2-4, at 1.   Mr. Blanche, as acting Librarian, then appointed Brian Nieves and Defendant Paul Perkins to serve as the acting Principal Deputy Librarian of Congress, and acting Register of Copyrights, respectively.   Compl. ¶ 23; *see* ECF No. 2-5, at 1. By appointing Mr. Perkins as acting Register of Copyrights, Mr. Blanche ratified the President's removal of Plaintiff.   Compl. ¶ 23.

4

On May 22, Plaintiff filed this lawsuit challenging her removal from serving as Register of Copyrights and moved for a temporary restraining order enjoining Mr. Blanche from serving as acting Librarian of Congress, prohibiting Mr. Perkins from serving as acting Register of Copyrights, and reinstating Plaintiff as Register of Copyrights.   *See* Mot. for TRO, ECF No. 2; Mem. in Supp. of Pl.'s Mot. for TRO (Pl.'s Mem."), ECF No. 2-1.

## LEGAL STANDARD

Both a temporary restraining order and a preliminary injunction are "extraordinary remed[ies] never awarded as of right."   *Winter v. Nat. Res. Def. Council,* 555 U.S. 7, 24 (2008). A party seeking preliminary relief must make a "clear showing that four factors, taken together, warrant relief:   likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest."   *League of Women Voters v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (quoting *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016)).   The last two factors merge when the government is the opposing party.   *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019).   "[P]laintiffs bear the burden of persuasion on all four preliminary injunction factors to secure such an 'extraordinary remedy.'"   *Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014).   "The decision of whether to award a TRO is analyzed using the same factors applicable to preliminary injunctive relief[.]"   *Chef Time 1520 LLC v. Small Bus. Admin.*, 646 F. Supp. 3d 101, 109 (D.D.C. 2022) (citation omitted).

Moreover, where, as here, a party "seeks a mandatory injunction—to change the status quo through action rather than merely to preserve the status quo—the moving party typically must show, not only that it is *likely* to succeed on the merits, but that it is "'clearly' … entitled to relief or that extreme or very serious damage will result."   *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006).

5

**ARGUMENT**

**I.    Plaintiff has not shown substantial likelihood of success on the merits.**

The Court should deny Plaintiff's request for a temporary restraining order because she has failed to establish a likelihood of success on the merits, much less that she *clearly* will prevail on the merits on either of her counts.  *English v. Trump*, 279 F. Supp. 3d 307, 316 (D.D.C. 2018) ("[F]ailure to show a likelihood of success on the merits is, standing alone, enough to" show that a TRO is not warranted); *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024).

> **A.    The President lawfully designated Mr. Blanche as acting Librarian of Congress and Mr. Blanche ratified the President's removal of Plaintiff from serving as Register of Copyrights (Count I).**

The President's designation of Mr. Blanche as acting Librarian of Congress was lawful. First, the Library of Congress is an "Executive agency" under the FVRA, and the President's designation of Mr. Blanche thus traveled an established path to designating an acting official under the FVRA.   Second, if the FVRA's statutory limits on designating acting officials do *not* apply to the Library of Congress, the President properly exercised his inherent authority under Article II to designate Mr. Blanche.   Either way, Mr. Blanche is properly serving as the acting Librarian of Congress, and, as Plaintiff concedes, Mr. Blanche's appointment of "Mr. Perkins to replace Ms. Perlmutter as the acting Register of Copyrights and the Director of the U.S. Copyright Office … served as Mr. Blanche's ratification of the President's decision to remove Ms. Perlmutter from her position."   Compl. ¶ 23.

> **1.    Mr. Blanche was lawfully designated as acting Librarian of Congress pursuant to the Federal Vacancies Reform Act.**

The President lawfully designated Mr. Blanche as the acting Librarian of Congress pursuant to the FVRA.   Where that statutory structure applies, Presidents have the power to fill a vacancy in a covered Senate-confirmed office by designating, among others, "a person who serves in an

office for which appointment is required to be made by the President, by and with the advice and consent of the Senate, to perform the functions and duties of the vacant office temporarily in an acting capacity subject to the time limitations of section 3346." 5 U.S.C. § 3345(a)(2). Mr. Blanche is the Senate-confirmed Deputy Attorney General and so plainly qualifies. And there is no dispute that former-Librarian Hayden is now "unable to perform the functions and duties of [that] office." *Id*. § 3345(a).

The FVRA allows designation of officials like Mr. Blanche wherever it applies, and it is clear that statutory regime applies here. The FVRA applies to any "Executive agency," 5 U.S.C. § 3345(a), which is elsewhere defined as "an Executive department, a Government corporation, and an independent establishment," *id*. § 105. The term "independent establishment" is, in turn, defined as "an establishment in the executive branch (other than the United States Postal Service or the Postal Regulatory Commission) which is not an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment," as well as "the Government Accountability Office." *Id.* § 104.

The Library of Congress is an "independent establishment in the executive branch." Despite having "Congress" in its name, the Library wields executive functions that place it firmly within this statutory language and subject to presidential supervision. Its organic statute makes the President responsible for appointing with the advice and consent of the Senate (and reappointing) the Librarian, *see* 2 U.S.C. § 136-1, and the President accordingly has the sole authority to remove the Librarian, who is otherwise removable only through impeachment. *See Intercollegiate Broad. Sys., Inc.*, 684 F.3d at 1341. The President's power to appoint and remove the Librarian—a power he does *not* have over true congressional entities like the House Sergeant-at-Arms or the Senate Parliamentarian—suffices to situate the Library within the executive branch.

Historical practice confirms what the Library's appointment structure establishes. From the early years of the Republic, the President has supervised tasks as mundane as which books the Library purchases. *See* Library of Congress, Librarians of Congress, 1802-1974, at 20 (1977) (describing President Jefferson as taking active oversight over the first Librarian's purchase of books). When Librarians and Presidents have not seen eye to eye, Presidents have removed Librarians, as President Jackson did based on political differences with the Librarian at the time. *See* Library of Congress, *George Watterston (1783-1854): 3rd Librarian of Congress 1815-1829*, https://www.loc.gov/item/n83041676/george-watterston-1783-1854/ (last visited May 26, 2025) ("It therefore is hard to believe that he was surprised on May 28, 1829, when newly elected President Andrew Jackson, a Democrat, replaced him as Librarian with a fellow Democrat, John Silva Meehan, a local printer and publisher.").

And of course, the Library has quintessential executive functions, particularly when it comes to copyright. The Library has the power to "promulgate copyright regulations, to apply the statute to affected parties, and to set rates and terms case by case." *Intercollegiate Broad. Sys., Inc.*, 684 F.3d at 1342; *see also* 2 U.S.C. § 136 (empowering the Librarian to "make rules and regulations for the government of the Library"). The power to regulate or set rates is an executive power—not a congressional one. As the D.C. Circuit has explained, these Library powers "are ones generally associated in modern times with executive agencies rather than legislators"; hence the Library's constitutional status as "undoubtedly a 'component of the Executive Branch.'" *Intercollegiate Broad. Sys., Inc.*, 684 F.3d at 1341–42 (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 511 (2010)). While the copyright regulations are promulgated by the Copyright Office—the Office that Plaintiff seeks to reclaim here—"[a]ll regulations established by the Register … are subject to the approval of the Librarian of Congress." 17 U.S.C. § 702.

And those regulations are subject to judicial review under the APA, like regulations promulgated by any other executive-branch agency. *See id*. § 701(e).

Plaintiff disagrees but fails to grapple with the statutory text. As explained above, the Library is an "independent establishment" under 5 U.S.C. § 104(a), so long as it resides "in the executive branch"—a constitutional location that the provisions governing the Librarian, the Library's history, and the Library's authorities, particularly in the Copyright Office, all point directly toward. Plaintiff acknowledges that these features suffice to make the Library part of the executive branch for *constitutional* purposes, *see Intercollegiate Broad. Sys., Inc.*, 684 F.3d at 1341, but says they are not enough to make it "an establishment in the executive branch" under the FVRA, Pl.'s Mem. 6–7. But Plaintiff identifies no textual basis for cleaving a *constitutionally* executive establishment out of the capacious *statutory* term "establishment in the executive branch." The more natural reading is that "executive branch" means the Constitution's Executive Branch rather than some alternative ersatz executive branch of indeterminate scope.

Plaintiff makes much of the fact that the Library is codified under Title 2, *see* Pl.'s Mem. 7, but it is "irrelevant that the Office of the Librarian of Congress is codified under the legislative branch." *Eltra Corp. v. Ringer*, 579 F.2d 294, 301 (4th Cir. 1978). Such "code-grouping" cannot be determinative of whether the Library of Congress "is executive" or not, *Eltra Corp.*, 579 F.2d at 301, particularly in light of the Library's clear executive functions. Nor does it matter that unrelated statutes like the Freedom of Information Act and the Administrative Procedure Act do not include the Library of Congress. *Cf.* Pl.'s Mem. 8. Those statutes employ different terminology than the FVRA to delineate the executive entities to which their provisions apply. *See* 5 U.S.C. §§ 552, 701–702 (applying to "agencies"). Congress could have used the same word with the same definition for all these different statutory schemes. It did not, presumably because it

9

recognized that each regime—the FVRA, the APA, and FOIA—have different purposes and appropriately have different ambits.    Concerns that might have animated Congress's decision on the scope of the APA or FOIA have no relevance to the FVRA—a provision that regulates the President's authority to install acting officials to supervise executive branch entities.    The Library must answer to *some* politically accountable official, and the statutory text, the Library's history, and the Library's possession of core executive power make clear that official is the President.

The Library's provision of services to Congress, *see* Pl.'s Mem. 9, is also immaterial, given that Congress has not attempted to oust the President from supervision over the Library.    If Congress wanted "a say" over who runs the Library on an acting basis, *id.*—beyond the substantial "say" the FVRA already provides—it could have enacted a special statutory structure for acting Librarians.    Indeed, that is precisely what Congress did for the Government Accountability Office—another "independent establishment" with a presidentially appointed head that provides services to Congress.    *See* 31 U.S.C. § 703(a)(1).    For the GAO, Congress prescribed a detailed scheme to govern acting heads—including a statutorily prescribed succession and a requirement of congressional involvement in choosing a nominee.    *Id.* § 703(a)(2), (c)(2).[1]

Congress did none of this for the Library, instead leaving it within the same statutory guardrails that govern the rest of the Executive Branch—the FVRA and its strictures on eligible officials, duration of service, etc.    These statutory limitations impose significant congressional

---

[1]  The fact that the GAO is specifically listed in 5 U.S.C. § 104(b) does not detract from the conclusion that the Library of Congress is "an establishment in the executive branch" under § 104(a).    The GAO's enabling statute states that the GAO "is an instrumentality of the United States Government independent of the executive departments."    31 U.S.C. § 702.    Given that language, Congress may well have thought it necessary to specifically list the GAO in 5 U.S.C. § 104(b) to avoid any argument that the language in the GAO's enabling statute precludes it from being considered "an establishment in the executive branch."

control over the President.    And as detailed below, absent these strictures the President would have more constitutional power to designate acting officials—not less.

> **2.    Mr. Blanche's designation as acting Librarian of Congress was independently authorized by Article II of the Constitution.**

If Plaintiff were correct that the Library of Congress is not an "Executive agency" under the FVRA, the President's designation of Mr. Blanche as acting Librarian was a lawful exercise of the President's Article II authority.

Article II of the Constitution provides that "the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020) (quoting U.S. Const. art. II, § 1, cl. 1; *id*. § 3).    As the framers well understood, "[i]f any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws." *Free Enter. Fund*, 561 U.S. at 492 (quoting 1 Annals of Cong. 463 (1789) (Madison, J.)).    Pursuant to the Appointments Clause, the President "may be assisted in carrying out" his duties "by officers nominated by him and confirmed by the Senate, as well as by other officers not appointed in that manner but whose work … must be directed and supervised by an officer who has been." *United States v. Arthrex, Inc.*, 594 U.S. 1, 6 (2021); U.S. Const. art II, § 2, cl. 2.

The President's Article II duty to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, "grants him the concomitant authority to designate acting officers" to "keep the Government running." *Temporary Presidential Designation of Acting Bd. Members of Inter-Am. Found. & U.S. African Dev. Found.*, 49 Op. O.L.C. __, at 1, 10 (Mar. 14, 2025) (slip op.) ("*Temporary Presidential Designation*").    The President "functionally could not exercise his Take Care authority" if he were unable to "task a politically accountable official to fill … agencies' leadership positions in an acting capacity[.]" *Id*. at 9.    The authority also flows from the

"structural safeguards" of political accountability reflected in the Appointments Clause.  *Edmond v. United States*, 520 U.S. 651, 659 (1997).  The power to designate acting officials ensures the President can "temporarily maintain the constitutional chain of supervision over an organization created by Congress to perform executive functions."  *Temporary Presidential Designation*, 49 Op. O.L.C. __, at 1.  Absent that "clear and effective chain of command, the public cannot 'determine on whom the blame or the punishment of a pernicious measure, or series of pernicious measures ought really to fall.'"  *Free Enter. Fund*, 561 U.S. at 498 (quoting The Federalist No. 70, at 467 (J. Cooke ed. 1961) (A. Hamilton)).

Given those serious constitutional concerns, the Office of Legal Counsel in Administrations of both parties has long recognized that, "at least where no statute precludes it," Article II authorizes the President to designate acting officials to supervise agencies' operations temporarily. *Temporary Presidential Designation*, 49 Op. O.L.C. __, at 1, 4; *see also Authority of the President to Remove the Staff Director of the Civil Rights Commission and Appoint an Acting Staff Director*, 25 Op. O.L.C. 103, 103 (2001); Memorandum for Neil Eggleston, Associate Counsel to the President, from Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, *Re: Appointment of an Acting Staff Director of the United States Commission on Civil Rights* (Jan. 13, 1994), https://www.justice.gov/olc/page/file/1311936/dl?inline ("*Dellinger Memo*"); *Power of the President to Designate Acting Member of the Federal Home Loan Bank Board*, 1 Op. O.L.C. 150, 151 (1977) ("*Home Loan Bank Board*").  That longstanding and unbroken view of the Executive power is matched by equally longstanding historical practice.  *See Home Loan Bank Board*, 1 Op. O.L.C. at 151 (noting a consistent "governmental practice going back more than a century"); *Dellinger Memo*, at 2–3 & n.3 (detailing historical practice dating to the founding); *accord Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring)

12

("congressional inertia, indifference or quiescence may sometimes, at least as a practical matter, enable, if not invite, measures on independent presidential responsibility").

Plaintiff does not dispute that the President lawfully exercised his Article II powers when he removed Ms. Hayden as Librarian of Congress. And Plaintiff points to no statute prohibiting the President from designating an acting Librarian to replace her.[2] Instead, Plaintiff's theory appears to be that the President may only designate acting officials if Congress has affirmatively granted him such authority by statute, such as through the FVRA. Pl.'s Mem. 6. That would upend the Constitution. The President "alone and unaided could not execute the laws. He must execute them by the assistance of subordinates." *Myers v. United States*, 272 U.S. 52, 117 (1926). That includes the power to *install* subordinates—subject in some cases to statutory restrictions on who is eligible to serve in particular roles. The FVRA is the most well-known such limitation, but it is "not a source, but rather a regulation" of the President's installation power. *Home Loan Bank Board*, 1 Op. O.L.C. at 151. Should that statute not apply here as Plaintiff contends, all that means is that the President had greater authority to take the contested actions rather than less.

The FVRA's "exclusive[ity]" provision does not dictate a different outcome. *Cf.* Pl.'s Mem. 7. That provision simply makes clear that *when* the FVRA applies, *then* its rules provide "the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office *of an Executive agency*…." 5 U.S.C. § 3347(a) (emphasis added). That

---

[2] Plaintiff references Library of Congress regulations (which are not published in the Code of Federal Regulations) that provide that the Principal Deputy Librarian becomes acting Librarian if the Librarian is no longer able to serve. Compl. at 2; Decl. of Shira Perlmutter ¶ 6, ECF No. 2-3; *see* LCR 1-120 (attached hereto). To state the obvious, federal establishments do not have independent power to insulate themselves from presidential control—whether by internal regulations or any other means. Congress might to able to cabin and direct the President's constitutional powers; the Library of Congress cannot.

provision makes clear that *within its ambit*, the FVRA constrains the President's installation power. But it does not in any sense purport to limit the President's authority over executive branch entities outside the FVRA's scope altogether.

Plaintiff invokes the four-decade-old decision in *Williams v. Phillips*, 360 F. Supp. 1363 (D.D.C. 1973), which concluded that the President lacked authority to appoint an acting director of the Office of Economic Opportunity ("OEO") without statutory permission, absent an emergency. *Id*. at 1367–71. The D.C. Circuit did not agree. To the contrary, it acknowledged "[i]t could be argued that the intersection of the President's constitutional obligation to 'take care that the laws be faithfully executed' and his obligation to appoint the director of OEO 'with the Advice and Consent of the Senate' provides the President an implied power, in the absence of limiting legislation … to appoint an acting director for a reasonable period of time before submitting the nomination of a new director to the Senate." *Williams v. Phillips*, 482 F.2d 669, 670 (D.C. Cir. 1973). Ultimately, the D.C. Circuit declined to stay the district court's order solely on the ground that the acting director of the OEO had been in that position for a "four-and-a-half month period" without any nominee being submitted to the Senate, as that was not a "reasonable time" for the President to appoint an acting official without nominating a replacement. *Id*. at 671. Nothing close to that scenario is presented here: President Trump designated Mr. Blanche to be the acting Librarian on May 9—under three weeks ago—and there is no basis to assume he will not move swiftly to nominate a permanent Librarian.[3]

---

[3] Plaintiff cites *National Labor Relations Board v. SW General, Inc.*, 580 U.S. 288 (2017), for its statement that Congress has given Presidents "limited authority to appoint acting officials to temporarily perform the functions of a vacant … office without first obtaining Senate approval." Pl.'s Mem. 6 (*SW Gen., Inc.*, 580 U.S. at 294). That decision construed the scope of the FVRA's prohibition on a person serving as an acting official while simultaneously being nominated to fill

14

\*      \*      \*

The President lawfully designated Mr. Blanche as acting Librarian and, as Plaintiff concedes, Mr. Blanche's appointment of "Mr. Perkins to replace Ms. Perlmutter as the acting Register of Copyrights and the Director of the U.S. Copyright Office ... served as Mr. Blanche's ratification of the President's decision to remove Ms. Perlmutter from her position."  Compl. ¶ 23. Nothing more is needed to hold that Plaintiff's removal was lawful, and for the Court to deny the temporary restraining order.

**B.    Alternatively, the President lawfully removed Plaintiff as Register of Copyrights (Count II).**

If Plaintiff were correct that the President lacked the authority to designate Mr. Blanche as acting Librarian, the Court should deny the requested temporary restraining order because the President had Article II authority to terminate the Register of Copyrights directly.

"[A]s a general matter," the executive power encompasses "the authority to remove those who assist [the President] in carrying out his duties."  *Free Enter. Fund*, 561 U.S. at 513–14; *cf.*, *Collins v. Yellen*, 594 U.S. 220, 250 (2021) (finding acting Department Head to be removable at will even when the Department Head otherwise had statutory removal protections).  Without such power, the President would be unable to control those who aid him in executing the laws and "could not be held fully accountable for discharging his own responsibilities."  *Free Enter. Fund*, 561 U.S. at 514.   For nearly a century, the Supreme Court has reaffirmed "[t]he President's power to remove—and thus supervise—those who wield executive power on his behalf."  *Seila Law*, 591 U.S. at 204 (citing *Myers*, 272 U.S. 52).

---

the same vacancy.  *See* 580 U.S. at 293, 299–309.   The Court did not purport to address the President's general constitutional power to designate acting officials.

Normally, the President exercises supervisory authority over *inferior* officers—like the Register of Copyrights—by exercising control over the principal officer (here, the Librarian of Congress). No one doubts, for example, that the President could direct the Librarian of Congress to remove the Register of Copyrights. *See Nat'l Treasury Emps. Union v. Reagan*, 663 F.2d 239, 247–48 (D.C. Cir. 1981). But that normal approach is not absolute: if the President is *unable* to appoint an acting principal officer upon removal of the principal officer, then Article II supplies the background rule, and the President has the constitutional authority—and obligation—to oversee and supervise the inferior officer until a new principal officer is installed. The Constitution does not confer autonomous status on executive entities that lack component heads.

Here, the President exercised his Article II authority to remove the Librarian of Congress from office. If Plaintiff is correct that the President cannot designate an acting Librarian, then the President's supervisory and removal powers must extend to the *inferior* officers in the Library of Congress—particularly inferior officers like the Register of Copyrights that wield significant executive power. Only the President is "charged specifically to take care that [the laws] be faithfully executed" and the "reasonable implication" is that "he should select those who were to act for him under his direction in the execution of the laws." *Myers*, 272 U.S. at 117. Saddling the President with a Register of Copyrights over whom he has no say would give the Senate an effective veto over the "President's power to remove—and thus supervise—those who wield executive power on his behalf," which is precisely the type of infringement on Article II that the Supreme Court rejected "in the landmark decision [of] *Myers*." *Seila Law*, 591 U.S. at 204; *see Myers*, 272 U.S. at 161 (Congress lacks "the power to remove or the right to participate in the exercise of that power"). The President must have the authority to remove the leadership of an agency because it is "'only the authority that can remove' such officials that they 'must fear and, in

16

the performance of [their] functions, obey.'"  *Seila Law*, 591 U.S. at 213–14 (quoting *Bowsher v. Synar*, 478 U.S. 714, 726 (1986)).[4]

In short, if the President cannot designate an acting Librarian to remove Plaintiff from serving as Register of Copyrights, then the President retains the authority to remove Plaintiff himself.

## II.    Plaintiff has not met her burden of showing irreparable harm.

Merits aside, the Court can deny the requested temporary restraining order on the straightforward, independent ground that Plaintiff failed to satisfy her heavy burden of establishing that *she* will be irreparably harmed by her termination.[5]  *See Alpine Sec. Corp. v. Fin. Indus. Reg. Auth.*, 121 F.4th 1314, 1336 (D.C. Cir. 2024) ("A movant's failure to show any irreparable harm is … grounds for refusing to issue a preliminary injunction" (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297)); *Dotson v. District of Columbia*, No. 24-cv-1864, 2024 WL 5046282, at *6 (D.D.C. Dec. 9, 2024) (same).  "The irreparable injury requirement sets a 'very high bar' for a movant seeking" a temporary restraining order.  *English*, 279 F. Supp. 3d at 333 (quoting *Coal.*

_____

[4] The Library of Congress regulations Plaintiff references do not change the analysis. Foremost and as explained in note 2, *supra*, the Library plainly cannot create its own internal governance regime to insulate itself from presidential control.  Nor is it even clear the regulations apply here, as they apply only "in the Librarian's absence or temporary unavailability."  *See* LCR 1-120(1) (attached hereto).  Having been removed from office, the former Librarian is not "temporarily unavailable."  Nor is she "absent"—a term that likewise has a temporal component and connotes an eventual return.

[5] Plaintiff argues that "[i]n assessing whether the plaintiff has suffered an irreparable harm, this Court must assume that Ms. Perlmutter has demonstrated a likelihood the Defendants' conduct violates the law."  Pl.'s Mem. 10 n.7 (citing *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 303 (D.C. Cir. 2006)).  That is wrong—"even after *Chaplaincy*, courts have held that the presence of irreparable harm can depend on whether the movant is likely to succeed on the merits."  *English*, 279 F. Supp. 3d at 333 (collecting cases).  In any event, Plaintiff does not come close to establishing irreparable harm even on the assumption she has shown a likelihood of success on the merits.

*for Common Sense in Gov't Procurement v. United States*, 576 F. Supp. 2d 162, 168 (D.D.C. 2008)).

The "high standard for irreparable injury," *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297—

even higher here insofar as Plaintiff has requested a mandatory injunction that would alter the status

quo, *Phillip v. Fairfield Univ.*, 118 F.3d 131, 133 (2d Cir. 1997)—requires a two-fold showing:

First, because an irreparable injury "must be both certain and great," Plaintiff "must show '[t]he

injury complained of is of such imminence that there is a 'clear and present' need for equitable

relief to prevent irreparable harm.'" *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297

(quoting *Wis. Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

Second, "the injury must be beyond remediation." *Id*. None of the supposed injuries Plaintiff

lists satisfies these demanding requirements.

 Plaintiff first argues that she will be irreparably harmed by being "deprive[d] of her

'statutory right to function' in the role that the Librarian of Congress has lawfully appointed her to

perform." Pl.'s Mem. 10 (quoting *Harris v. Bessent*, ---F. Supp. 3d---, 2025 WL 679303, at *13

(D.D.C. Mar. 4, 2025), *appeal filed*, No. 25-5055 (D.C. Cir. Mar. 4, 2025). Just last week, the

Supreme Court directly rejected that theory of injury as a sufficient ground for emergency

injunctive relief. In a decision handed down the very day Plaintiff filed her Complaint, the Court

stayed the injunctions entered in the *Bessent* cases Plaintiff invokes (as well as other similar district

court injunctions), explaining that "the Government faces greater risk of harm from an order

allowing a removed officer to continue exercising the executive power than a wrongfully removed

officer faces from being unable to perform her statutory duty." *Wilcox*, 2025 WL 1464804, at *1.

That holding categorically rejects Plaintiff's theory of harm as a basis for a temporary restraining

order.

 The Supreme Court's ruling did not arise in a vacuum—it solidifies the longstanding rule

that, absent a "genuinely extraordinary situation," loss of employment does not constitute irreparable harm, *Sampson*, 415 U.S. at 92 n.68—which is what Plaintiff's "statutory right to function" argument is all about. Although a public official's "loss of salary" amounts to a judicially cognizable harm, his "loss of political power" does not. *Raines v. Byrd*, 521 U.S. 811, 821 (1997); *Dellinger v. Bessent,* No. 25-5052, 2025 WL 887518, at \*3-4 (D.C. Cir. Mar. 10, 2025) (granting a stay pending appeal, giving effect to the removal of appellee from his position as Special Counsel for the U.S. Office of Special Counsel); *see also Hetreed v. Allstate Ins. Co.*, 135 F.3d 1155, 1158 (7th Cir. 1998); *Davis v. Billington*, 76 F. Supp. 3d 59, 65–66 (D.D.C. 2014) (collecting cases). Indeed, "[c]ases are legion holding that loss of employment does not constitute irreparable injury." *English*, 279 F. Supp. 3d at 334 (quoting *Farris*, 453 F. Supp. 2d at 79–80).

This rule is not limited to low-level employees. Courts have repeatedly rejected the notion that the deprivation of a unique, singular, or high-level position is somehow a more irreparable injury. *See Hetreed*, 135 F.3d at 1158 (loss of position as senior manager leading audit department not irreparable injury); *Marxe v. Jackson*, 833 F.2d 1121, 1122–28 (3d Cir. 1987) (division manager); *Rubino v. City of Mount Vernon*, 707 F.2d 53 (2d Cir. 1983) (mayoral-appointed City Assessor); *Franks v. Nimmo*, 683 F.2d 1290, 1291 (10th Cir. 1982) (Associate Chief of Staff for Research and Development position at Department of Veterans Affairs Medical Center); *EEOC v. City of Janesville*, 630 F.2d 1254, 1256 (7th Cir. 1980) (Chief of Police); *Levesque v. Maine*, 587 F.2d 78, 79 (1st Cir. 1978) (Maine Commissioner of Manpower); *Brehm v. Marocco*, Civ. A. No. 25-0660, 2025 U.S. Dist. LEXIS 71326 (D.D.C. Mar. 11, 2025) (president of U.S. Africa Development Foundation); *Nichols v. Agency for Int'l Dev.*, 18 F. Supp. 2d 1, 2, 4 (D.D.C. 1998) (Chief of Information Management Systems, Office of Inspector General); *Burns v. U.S. Gen. Act. Off. Emps. Fed. Credit Union*, Civ. A. No. 88-3424, 1988 WL 134925, at \*1–2 (D.D.C. Dec. 2,

1988) (President of Credit Union Board of Directors).

Should the Court ultimately determine that Plaintiff's removal was unlawful, then she can obtain monetary relief in the form of back pay.   Plaintiff is suing in her personal capacity and is eligible to obtain all the relief she is personally due, but those harms are not irreparable ones that can support immediate injunctive intervention.   *English*, 279 F. Supp. 3d at 335 (any harm that an agency director suffered from removal "can be remediated in the ordinary course of this case"); *Davis*, 76 F. Supp. 3d at 65 ("The plaintiff fails to meet this high standard as he has no concrete proof that the vacancy . . . will not be available when this matter is ultimately resolved.").

Nor is there anything "extraordinary" about Plaintiff's situation that could change the usual rules.   *Sampson*, 415 U.S. at 92 n.68.   This case is nothing like *Berry v. Reagan*, Civ. A. No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983), *vacated as moot*, 732 F.2d 949 (D.C. Cir. 1983), which deemed harm from removal to be irreparable because the agency itself was, by law, set to terminate within a few weeks—meaning the plaintiff commissioners *could not* be re-appointed to their posts if their removals were eventually deemed unlawful.   *Id*. at *5; *see English*, 279 F. Supp. 3d at 335 ("in *Berry*, absent an injunction, any harm suffered by the commissioners was plainly irreparable because the commission would have expired and they could not have been reinstated to it").   Here, by contrast, Plaintiff's argument that she "suffers harm solely from not functioning as the [Register] … cannot succeed because any such harm can be remediated in the ordinary course of the case," *English*, 279 F. Supp. 3d at 335—the Library of Congress is not set to disappear.   And the same goes for Plaintiff's supposed injury of being "prevented from performing the legislative functions that are assigned to her."   Pl.'s Mem. 11.

Plaintiff's remaining theories of irreparable harm posit injury to *others*—not herself.   For example, Plaintiff says that without an injunction, there will be "continued confusion as to who is

in control," a "report as expected by Congress" will not be completed (at least, not as quickly), and separation-of-powers concerns will arise by giving executive branch officials "access to the Library of Congress's confidential research for Members of Congress and confidential congressional records." Pl.'s Mem. 11–12. Even if those wildly speculative harms materialized, they are *institutional* harms to either the Library or to Congress. But Plaintiff "must demonstrate the likelihood of irreparable harm *to her* if an injunction does not issue." *English*, 279 F. Supp. 3d at 335 (emphasis in original); *Brehm*, 2025 U.S. Dist. LEXIS 71326, at *6-7 (denying the plaintiff a temporary restraining order to stop his removal as President of the U.S. Africa Development Foundation for lack of irreparable harm because the plaintiff "has not identified any cognizable irreparable harm to *himself* as opposed to potential harm to the agency and its partners").

Plaintiff cannot transform those admittedly "institutional harm[s]" into her own on the theory that they "will be such that [she] would be unable to return to her position *as it currently exists*." Pl.'s Mem. 13 (emphasis added). Plaintiff would not be irreparably harmed if she were reinstated and the Library was not exactly as when she left it. Nor do any of the cases she cites support that sweeping theory of irreparable harm. Instead, in both *Berry* and *Aviel v. Gor*, ---F. Supp. 3d ---, 2025 WL 1009035, at *10 (D.D.C. Apr. 4, 2025), *appeal filed*, No. 25-5105 (D.C. Cir. Apr. 7, 2025), the district courts deemed harm irreparable because the relevant agency would be virtually or literally *non-existent* at the end of the litigation. Plaintiff has not remotely shown as much here.

## III.   The balance of harms and the public interest weigh against injunctive relief.

A party seeking a temporary restraining order must also demonstrate "that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "These factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418,

435 (2009).

The balance of harms decisively favors Defendants. The Supreme Court has made its "judgment" clear that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Wilcox*, 2025 WL 1464804, at *1. This clear statement from the Supreme Court last week is equally dispositive here.

In addition, the balance of equities and the public interest tip strongly in favor of the Government, for "the public interest favors applying federal law correctly." *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1197 (9th Cir. 2011). As discussed above, Mr. Blanche was lawfully designated acting Librarian, and Plaintiff was lawfully removed from her prior position as Register of Copyrights. Granting the extraordinary relief Plaintiff requests would mark a severe intrusion into the President's authority to exercise "all of" the "executive Power" of the United States. *Seila Law*, 591 U.S. at 203.

Finally, in seeking an order reinstating her as Register of Copyrights, Plaintiff seeks to change the status quo. Injunctions that "'would change the status quo' are disfavored as 'an even more extraordinary remedy' than the typical preliminary injunction, ... 'especially when directed at the United States Government.'" *Strait Shipbrokers Pte. Ltd. v. Blinken*, 560 F. Supp. 3d 81, 92–93 (D.D.C. 2021) (quoting *Abdullah v. Bush*, 945 F. Supp. 2d 64, 67 (D.D.C. 2013), and *Sierra Club v. Johnson*, 374 F. Supp. 2d 30, 33 (D.D.C. 2005)). Injunctions that alter the status quo, on balance, favor the non-movant. *See, e.g.*, *Davis*, 76 F. Supp. 3d at 68; *Elite Ent., Inc. v. Reshammiya*, Civ. A. No. 08-0641, 2008 WL 9356287, at *4 (D.D.C. Apr. 18, 2008). The third and fourth factors thus also weigh against granting injunctive relief.

**IV.    Plaintiff has no cause of action and no right to the relief she seeks.**

Aside from the lack of substantive merit to Plaintiff's claims, two additional obstacles further undermine Plaintiff's likelihood of success:  lack of a cause of action and lack of entitlement to the relief she seeks.

First, Plaintiff's action appears to be an attempted end-run around the requirements and restrictions for bringing a quo warranto action.  The federal quo warranto statute, which Congress codified for historical reasons in the D.C. Code, provides a civil action against any person who, within the District of Columbia, "usurps, intrudes into, or unlawfully holds or exercises . . . a public office of the United States, civil or military."  D.C. Code § 16-3501.  The D.C. Circuit has indicated that the quo warranto statute is the sole means by which an interested party may make a direct attack on the authority of another person to perform the duties of a public office (as opposed to an indirect attack on his or her official actions).  *See SW Gen., Inc. v. Nat'l Lab. Rels. Bd.*, 796 F.3d 67, 81 (D.C. Cir. 2015) ("The de facto officer doctrine allows [direct] attacks [on an officer's authority,] but they can be brought via writ of quo warranto only."), *aff'd*, 580 U.S. 288 (2017). Plaintiff's failure to satisfy the requirements for a direct challenge to Mr. Blanche's (or anyone else's) authority to perform his duty as an acting official itself prevents her from prevailing on the merits.

Second, even if the President's designation of Mr. Blanche as acting Librarian and his removal of Plaintiff were not lawful, this Court still should not grant Plaintiff's motion to the extent that she seeks injunctive and declaratory relief against the President himself.  For a century and a half, the Supreme Court has maintained that courts, "in general," have "no jurisdiction of a bill to enjoin the President in the performance of his official duties."  *Franklin v. Massachusetts*, 505 U.S. 788, 802–03 (1992) (plurality opinion) (quoting *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501

23

(1866)); *see also id.* at 826–27 (Scalia, J., concurring). A "District Court's grant of injunctive relief against the President himself is extraordinary, and should . . . raise judicial eyebrows." *Id.* at 802 (plurality opinion). "[S]imilar considerations regarding a court's power to issue relief against the President himself apply to [a] request for a declaratory judgment." *Swan v. Clinton*, 100 F.3d 973, 976 n.1 (D.C. Cir. 1996). Granting Plaintiff's requested relief would "at best create[] an unseemly appearance of constitutional tension and at worst risk[] violation of the constitutional separation of powers." *Id.* at 978. For that reason, too, the Court should deny relief.

## CONCLUSION

For these reasons, the Court should deny Plaintiff's motion for a temporary restraining order.

Dated:  May 26, 2025                          Respectfully submitted,

                                             YAAKOV M. ROTH
                                             Acting Assistant Attorney General

                                             ERIC J. HAMILTON
                                             Deputy Assistant Attorney General

                                             BENJAMIN HAYES
                                             Senior Counsel to the Assistant Attorney General,
                                             Civil Division

                                             */s/ Christopher R. Hall*
                                             CHRISTOPHER R. HALL
                                             Assistant Branch Director
                                             U.S. Department of Justice
                                             Civil Division, Federal Programs Branch
                                             1100 L Street, NW
                                             Washington, DC 20530
                                             Telephone: (202) 514-4778
                                             E-mail: Christopher.Hall@usdoj.gov

                                             *Counsel for Defendants*