```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
 2
                             ---
 3

 4    SHIRA PERLMUTTER,              )
                                     )
 5                                   )
          Plaintiff,                 )  CIVIL NO. 25-1659
 6                                   )
      v.                             )
 7                                   )  Wednesday, May 28, 2025
      TODD BLANCHE, et al.,          )
 8                                   )  2:06 p.m. - 3:21 p.m.
                                     )
 9         Defendants.               )
      _____  )
10
                TRANSCRIPT OF TEMPORARY RESTRAINING ORDER
11
              BEFORE THE HONORABLE TIMOTHY J. KELLY
12                  UNITED STATES DISTRICT JUDGE
                             ---
13
      APPEARANCES:       DEMOCRACY FORWARD FOUNDATION
14                       BY:  Allyson R. Scher
                              Brian D. Netter
15                       P.O. Box 34554
                         Washington, DC 20043
16                       202-448-9090
                         Email: Ascher@democracyforward.org
17                       Email: Bnetter@democracyforward.org

18                       MUNGER, TOLLES & OLSON
                         BY:  Donald B. Verrilli, Jr.
19                            Ginger D. Anders
                         601 Massachusetts Avenue, NW, Ste 500E
20                       Washington, DC 20001
                         213-683-9507
21                       Email: Donald.verrilli@mto.com

22                       For the Plaintiff

23                             ---

24    COURT REPORTER:    CHANDRA R. KEAN, RMR
                         Official Court Reporter
25                       333 Constitution Avenue, NW
                         Washington, DC 20001
```

APPEARANCES (CONT'D):

                    BRAND WOODWARD LAW, LP
                    BY:  Stanley Edmund Woodward, Jr.
                    400 Fifth Street, Northwest
                    Washington, DC 20001
                    202-996-7447
                    Email: Stanley@brandwoodwardlaw.com

                    U.S. DEPARTMENT OF JUSTICE
                    FPB CIVIL DIVISION
                    BY: Christopher Hall
                        Benjamin Hayes
                    20 Massachusetts Avenue, NW, Room 7224
                    Washington, DC 20530
                    (202) 514-4778
                    Email: Christopher.hall@usdoj.gov
                    Email: Benjamin.T.Hayes@usdoj.gov

                    For the Defendants

1                     **PROCEEDINGS**

2          (Court called to order at 2:06 p.m.)

3              DEPUTY COURTROOM CLERK:  This is Civil

4     Matter 25-1659, *Shira Perlmutter v. Todd Blanche,*

5     *et al.*

6          Arguing on behalf of the plaintiff is

7     Allyson Scher, and arguing on behalf of the defendants

8     is Stanley Woodward, Jr.

9              THE COURT:  All right.  Well, good afternoon to

10    everyone.

11         We are here, obviously, for argument on the motion

12    for a TRO that was filed just before the long weekend.

13    And consistent with the practice in this Court, I had

14    gave the government an -- a quick opportunity to respond

15    and got you all here at the first possible time we could

16    do that, consistent with allowing the government the

17    opportunity to respond on paper.

18         So why don't I, without further ado, just -- I'm

19    going to hear from each side, and we'll proceed that

20    way.

21         I have a few questions, but given, again, the speed

22    with which a TRO has to be adjudicated, I'm mostly going

23    to rely on you all to present whatever affirmative

24    points you want.

25         I think, big picture, if I were the plaintiffs, I'd

```
1    focus on irreparable harm; and if I were the government,
2    I'd focus on the merits.
3         But why don't I hear from the plaintiffs --
4    plaintiff, please, up at the -- up at the podium.
5              MS. SCHER:  Good afternoon, Your Honor.
6         The Library of Congress is in name and function,
7    Congress's library.  The President's purported
8    appointment of Deputy Attorney General Todd Blanche as
9    acting Librarian of Congress, and Mr. Blanche's unlawful
10   appointment of two other Justice Department officials,
11   amounts to an unprecedented Executive Branch takeover of
12   the Library of Congress's operations and access to reams
13   of confidential information that belong to Congress.
14        (Reporter admonition)
15             MS. SCHER:  Yes.  Sorry.
16             THE COURT:  Glad we got that out of the way
17   early.
18             MS. SCHER:  Yes.
19             THE COURT:  And for both parties to hear.
20             MS. SCHER:  Defendants' claimed authority to
21   appoint Mr. Blanche and remove Plaintiff,
22   Shira Perlmutter, are not supported by the Constitution
23   or any statute.
24        In its exercise of equitable authority, this Court
25   did grant preliminary emergency relief to
```

1    Ms. Perlmutter, who has been serving as the

2    Register of Copyrights, with dignity, and is entitled to

3    continue her service and maintain the status quo because

4    there has been no lawful effort to remove her.

5        So I will briefly cover the merits here.  And,

6    first, we'll start with something that ought to be

7    uncontroversial.

8        The Register of Copyrights is an inferior officer,

9    and for an inferior officer, Congress can decide to vest

10    the authority to hire and fire in a principal officer.

11    That is exactly what Congress has done here.

12        THE COURT:  Do you take the government to

13    dispute that?

14        MS. SCHER:  I do not take the government to

15    dispute that the Register of Copyrights is an inferior

16    officer.

17        THE COURT:  Right.

18        MS. SCHER:  They concede that.

19        But they do dispute that the authority is vested

20    only in the Librarian of Congress.

21        But finding precedent from the Supreme Court and

22    the D.C. Circuit say just that.  And defendants point to

23    no basis in statute or case law that suggests otherwise.

24        And so the President does not have the authority to

25    hire or fire a Register of Copyrights unilaterally.

1          THE COURT:  Would he have the right to direct

2     the person who you all believe is acting to fire her?

3          MS. SCHER:  Yes, in that the President has

4     supervisory authority over the Librarian of Congress --

5     or the acting Librarian of Congress and can remove that

6     person from their position if they're not effectuating

7     the President's wishes.

8          THE COURT:  Okay.

9          MS. SCHER:  And, so for this reason, because

10     the authority to hire and fire the Register of

11     Copyrights is vested in the Librarian of Congress alone,

12     the President does not have the authority to fire her,

13     and so that was unlawful.

14          This will bring us next to whether the President

15     lawfully appointed Mr. Blanche as acting Librarian of

16     Congress.  He did not.

17          To support their argument, the government

18     principally relies on the Federal Vacancies Reform Act,

19     which is a statutory authority that temporarily -- or

20     allows the President to temporarily appoint officers to

21     executive agencies in certain circumstances; and that

22     does not apply here because the Library of Congress is

23     not an executive agency.

24          The government doesn't --

25          THE COURT:  Is it fair to say -- I'm going

1    to -- when I talk to the government about this point,

2    I'm going to raise the same point, which is I think

3    you've both -- it's interesting.

4        I think there's a sprinkling of evidence on both

5    sides, and maybe some evidence points to the fact that

6    the Library of Congress is sort of a unicorn in that it

7    has some functions that are properly part of different

8    branches.

9        So, you know, I think, at the end of the day, each

10   side is going to have to grapple on this question.  You

11   each have to grapple with a significant amount of

12   evidence on the other side, it seems to me.

13       Is that fair?  I mean, or tell me -- tell me --

14           MS. SCHER:  Sure.

15           THE COURT:  Because I do think you've got some

16   good points on this.  No question.  I think they have

17   some decent points on it, too.

18       And so, ultimately, it's me trying to make sense of

19   the evidence on one side and the other.

20           MS. SCHER:  Sure.

21       Respectfully, I do disagree that it's --

22           THE COURT:  You disagree they have any good

23   points; is that what you're telling me?

24           MS. SCHER:  I do -- I -- specific to this, yes.

25       I think that an "executive agency" is a term that

1    Congress created and defined.  We are not disputing that

2    Inter -- in the D.C. Circuit, in *Intercollegiate,* said

3    that the Library of Congress exercises some

4    executive-adjacent powers in addition to the legislative

5    powers that they exercise.

6         THE COURT:  I don't -- did they say "adjacent"?

7    No, they didn't.

8         They said "executive power," but --

9         MS. SCHER:  I think another case may have said

10    "adjacent."

11         THE COURT:  All right.

12         MS. SCHER:  That may have been the

13    Fourth Circuit case.

14         But *Intercollegiate* ruled that the Library of

15    Congress is part of the Executive Branch for the

16    specific purpose of appointing the copyright judges, and

17    that's a constitutional question.

18         And so I agree with you that it's a more difficult

19    constitutional question of whether the Library of

20    Congress can act with executive power or has more

21    executive power than legislative.  But that's not the

22    question here.

23         Here, Congress enacted the FVRA.  They intended to

24    have the FVRA cover a specific set of agencies.  And I

25    think it's very, very clear from the context of Title 5

1   that executive agency does not include the Library of

2   Congress.

3        And I'll point you to Pages 2 through 5 of our

4   reply, where I think we have detailed and irrefutable

5   evidence that Congress considered the Library of

6   Congress to be legislative for the purpose of Title 5,

7   which is where the FVRA sits.

8        So this is separate from the constitutional

9   question.

10            THE COURT:  Sure.

11            MS. SCHER:  It's just a very strict statutory

12   question.

13            THE COURT:  Right.

14        And your point is that they considered the library

15   sort of -- when they defined the various components,

16   they defined the library as its -- its -- in many cases,

17   as its own entity.

18        They didn't --

19            MS. SCHER:  Yes.

20            THE COURT:  -- lump it in in any kind of

21   general term -- in any, generally, category of compo- --

22   of agencies or components.

23            MS. SCHER:  They actually have referred to the

24   Library of Congress as a legislative agency in some

25   provision of Title 5.  So they actually have defined it

1     that way.

2           And then, as you said, for other provisions,

3     they'll say "executive agency" and also add the Library

4     of Congress, and the Architect of the Capitol, and other

5     legislative entities.

6           And I think those are all laid out in 2 through 5

7     of the reply.

8                 THE COURT:  Yep.

9                 MS. SCHER:  Although, there is some in the

10    opening motion, as well.

11          And I think our points about the APA and FOIA cases

12    that have shown that the Library of Congress was not --

13    is not subject to the APA or FOIA because courts

14    interpreted the APA exclusion of Congress to include the

15    Library of Congress, and so the Library of Congress was

16    excluded from FOIA and APA.

17                THE COURT:  The government's -- or the

18    defendants' counter to that -- and I don't think it's an

19    unreasonable one -- is that, well, look, those are

20    statutes that were passed for specific purposes.

21          It makes sense that Congress might say, okay, we

22    don't want -- it doesn't make sense for our purposes

23    for -- let's take FOIA -- for FOIA to apply to the

24    Library of Congress, regardless of whether it fits into

25    the term "executive agency" or not.

1          In other words, Congress can define the scope of

2     the legislation that its passing to cover whatever it

3     wants and might have good reason to say, "We think that

4     particular" -- I don't even know what to call it --

5     "organization should not be covered by this statute,"

6     for whatever reason, but maybe in a different case it

7     would have covered.

8          So I don't know.  I think of all the things that

9     you all can -- of all the evidence you have on your

10    side, I don't find that as persuasive as some of the

11    others.

12          MS. SCHER:  Well, I'll add, just for what I

13    think it is most useful for -- at least the APA and the

14    FOIA points -- are that -- Congress was aware previous

15    to the enactment of the FVRA.  Those APA and FOIA cases

16    were before the FVRA was enacted.

17          So Congress understood, or we can infer that they

18    understood, that courts have been finding the Library

19    of -- considering the Library of Congress to be a

20    legislative agency, while *Intercollegiate* was, I think,

21    15 years after the FVRA was enacted, and so Congress

22    would not have been aware of that holding.

23          And I think another important point here is that

24    the way that defendants would have you consider the term

25    "executive agency" would be an ever-changing, evolving

1    term depending on how courts rule related to executive

2    power.

3        And that's not what they've done here.  They've

4    created a fixed meaning when they enacted the FVRA.

5        And just logically, Congress wouldn't give the

6    President sole and unreviewable authority to appoint an

7    acting Librarian of Congress to oversee an agency that

8    performs critical legislative functions and cut itself

9    entirely out of that process.

10        And so moving on to irreparable harm,

11    Ms. Perlmutter was lawfully appointed Register of

12    Copyrights, and she has not been properly removed.

13        The Court's urgent intervention is required to

14    avoid serious harms to Ms. Perlmutter in her critical

15    role and the institution that she's faithfully served

16    over the last nearly five years.

17        And we largely rest -- or at least in part rest on

18    the "statutory right to function" argument that this

19    Court is familiar with and has articulated in *Berry*.

20    And Ms. Perlmutter -- defendants' actions deprived her

21    of her statutory right to function in the Register of

22    Copyrights' role that she was lawfully appointed to by

23    the Librarian of Congress.

24            THE COURT:  Can I just -- let me follow up on

25    that.

1          And let me just say none of this should be taken to

2    suggest that Ms. Perlmutter hasn't served well and

3    honorably and -- or should be taken to cast -- to

4    denigrate her service at all.

5          But I do think you have both the -- and, look,

6    you all laid out a number of cases, recent cases, in

7    which my colleagues, a number of them, have in one way

8    or another adopted that theory.

9          But you have, over these last few months, and

10   really just last week, first, the Circuit in staying one

11   district court injunction of some kind, and then the

12   Supreme Court just last week.

13         Also, I guess in that case, denying -- I can't

14   remember which posture it was.  But both courts, courts

15   that I answer to, unlike the other district courts, that

16   I have to apply their precedent -- and I get these were

17   both hardly sort of final on the merits conclusions

18   about these things.

19         But they both kind of -- I'll put it -- they

20   both -- I'll say that they both gave a side eye to the

21   no- -- this theory.

22         And so what am I -- what am I to make of those two

23   cases?

24              MS. SCHER:  What's the first one you're

25   referring to?

1          THE COURT:  Well, the Circuit --

2          MS. SCHER:  The second one is *Wilcox*.

3          THE COURT:  Yeah, that's right.  That's right.

4     And the first one was -- it might have been -- hold

5     on.

6     It's the only case in which we had a panel of our

7     Circuit stay -- it was the case before --

8          MS. SCHER:  *Dellinger*?

9          THE COURT:  -- Judge Jackson.  The case before

10    Judge Jackson.

11    It's -- hold on.  Hold on.  Hold on.

12    Yeah, *Dellinger v.* --

13         MS. SCHER:  Okay.

14         THE COURT:  -- *Bessent*.

15         MS. SCHER:  Yeah.

16         THE COURT:  Yeah.  Yeah.

17    In which I think it was a panel of Judge Henderson,

18    Judge Millett and -- I can't remember the other judge --

19    Judge Walker, perhaps.

20    But in any event -- and they basically said, well,

21    you know -- and, look, none of these cases sort of say

22    this is not a theory that can ever be accepted by a

23    court.  I think that's clear.

24    But they do -- in that case, they did say, "Well,

25    look, you've got to come out" -- and they kind of called

1    back to the -- oh, gosh, I think the case is called

2    Sampson.  I always want to call it Simpson.

3        Sampson, in which they say, "Look, you've got to

4    show a certain level of harm" -- first of all, you've

5    got to show harm to the individual, not to the

6    institution, not -- or at least it can't be

7    free-floating harm to the institution.  It has to

8    connect to the individual.

9        And that's just a general proposition, right?

10       Any time a plaintiff comes in and asks for

11   preliminary relief, the irreparable harm focuses on the

12   harm to the person, not the harm to third parties.

13       Okay.  And then they said, you know, "And you've

14   got to show that that harm is great enough so that it

15   overcomes the harm on the flip side."

16       And, again, that's what the Supreme Court

17   originally said in that Sampson case.

18       And the Supreme Court seemed to do the same kind of

19   analysis when it said, "Look, whatever the harms here

20   are, we don't -- we don't think -- we don't think that

21   the harm to the plaintiff is the kind of harm that would

22   override the harm to the government."

23           So I don't know.  Tell me what I'm supposed to

24   make of those cases.

25           MS. SCHER:  Sure.

1          So -- and, as you stated, it's -- it is -- it's

2      a -- there -- it's a signal.  And I picked up that it is

3      a signal of something.

4          I read the Supreme Court's order in *Wilcox* last

5      week to talk about -- that the harm when a person is in

6      a position that exercises considerable executive power,

7      which is --

8              THE COURT:  That's what they say.

9              MS. SCHER:  -- what's mentioned in the order.

10         And that -- in that case, the President has more of

11     an interest in controlling who that person is basically,

12     than the person has a right to that position.

13         That's just not the case here, and defendants do

14     not suggest that the Register of Copyright exercises

15     extreme or considerable executive power.

16             THE COURT:  Well, I guess I don't -- I don't

17     know quite what that phrase means in this context.

18         But, I mean, if you go back to the other Circuit

19     case that talks about and decided that, at least for

20     copyright purposes, the Library or the Office of

21     Copyrights, however you want to slice it --

22             MS. SCHER:  Yeah.

23             THE COURT:  -- that portion of the library, it

24     seems that that's all executive power, isn't it?

25         I mean, it's -- I don't know what considerable --

1       or, yeah, I can't remember what it -- it did use a word

2       like "considerable" --

3              MS. SCHER:  "Considerable," yeah.

4              THE COURT:  -- I think.

5         Whatever that means, it's executive power, and

6       that's what we're talking about here.  I mean, we're not

7       talking about, you know, CRS.

8              MS. SCHER:  Yes.

9         First, the plaintiff, who is the Register of

10      Copyrights, I would argue that that is not considerable

11      executive power, and that's because the Librarian of

12      Congress actually has supervisory authority over her.

13         And, also, to the extent that the Register of

14      Copyrights promulgates the rules, which is, like, a more

15      executive function, the Librarian actually approves

16      those rules.  So the power at least is in the Librarian.

17         And, here, the President removed the Librarian, and

18      we are not -- we don't have any claims regarding that.

19              THE COURT:  Right.

20         And I guess I should have said, like you -- I think

21      I said we're not talking about, you know, essentially

22      the Librarian.

23         You are talking about the Librarian, obviously, in

24      some of your claims.  I mean, but in terms of the harm

25      analysis, it's kind of derivative harm, or I guess it's

1    not direct harm to her, other than insofar as it may

2    have resulted in her being removed.

3         MS. SCHER:  I think whether it's a harm to her

4    is sort of a separate point.

5         But to, like, finish off the *Wilcox* point, the

6    President does have a, like -- is exercising supervisory

7    authority over the Librarian of Congress right now.  So

8    I think that sort of covers the concerns that are

9    expressed in *Wilcox*.  But beyond the statutory right to

10   function in her role, we argue that plaintiff's harm

11   goes well beyond that.

12        And Ms. Perlmutter is currently the Register of

13   Copyrights, and for that reason, she is tasked with

14   legislative functions by statute that are assigned to

15   the Register of Copyrights; and she is being -- she is

16   prevented and facing obstacles in fulfilling her

17   statutory duties because of these unlawful

18   appointments.

19        And these are covered in our opening and reply

20   brief, the sort of duties that are assigned to her,

21   including --

22        THE COURT:  The report.

23        MS. SCHER:  The report, yes.

24        -- fulfilling her statutory duty to conduct studies

25   and advise Congress.

1          She issued a report.  She's working on the fourth

2    part of the report, and that task will be -- will face a

3    threat of not being able to be completed because of

4    these competing claims to who is the Register of

5    Copyrights.

6          And this is a big distinction with *English v. Trump*

7    case, because in that case, Ms. English was not serving

8    as the acting director.  She was the deputy director,

9    and she had not been removed from her position.

10         And she was not facing obstacles in performing the

11   duties that Congress assigned to her because she was not

12   assigned the role of acting director, and so she was not

13   able to claim that she had a threat of irreparable harm

14   to prevent her from fulfilling her statutory

15   obligations.

16             THE COURT:  That is no -- no doubt, that is a

17   distinction between that case and this case.  I'm not

18   sure either side thinks that's -- that case is the

19   answer here.

20         But you're right, it is a distinction that

21   Ms. English had never served as the director.

22             MS. SCHER:  And for that reason, the ask here

23   is to maintain the status quo, which is, again,

24   different than it is in the *English* case.

25         And, finally, sort of an irreparable harm section

1       is the institutional harm to the Library of Congress and

2       the Copyright Office that is tied to plaintiff's harm.

3              It's -- I think it should be considered as a -- as

4       a harm to the institution in the way that, sort of,

5       *Berry* and the *Harris* case have talked about it, but we

6       can also tie that harm specifically to plaintiff.

7              And I think the first order of harm is that the

8       President -- if the President's unlawfully appointed

9       person serves as the head of the Library of Congress,

10      having cut Congress completely out of the process while

11      it is -- the Library of Congress is an agency that is

12      very uniquely designed to benefit and assist Congress,

13      and so that harm sort of damages the reputation of the

14      library in being a neutral adviser to Congress.

15             THE COURT:  It is striking that we don't have

16      Congress here.  I'll just point that out.  We don't --

17      you know, we don't have Congress appearing in this

18      case -- I'll just put it that way -- either as a

19      plaintiff, as an intervenor, or in any other way.

20             But, fair enough.

21             MS. SCHER:  I can point you to at least

22      statements that are bipartisan from members of Congress

23      on both sides, I think, in our opening brief, and it

24      might also be in the reply, that express their

25      discomfort with the Executive Branch attempting to seize

1     control of the Library of Congress.

2          And so this harm, it's damaging the Library of

3     Congress's ability to be an adviser to Congress.

4          And at least, you know, as you mentioned, the

5     Congressional Research Service, by statute, has to give

6     nonpartisan advice; and that's obviously complicated if

7     the Executive Branch has essentially seized control and

8     inserted the Deputy Attorney General and two of his

9     associates into the leadership offices of the Library.

10         And the threat that they pose is imminent because

11    any access that they have will be unlawful; and this

12    unlawful access to the confidential data that the

13    Library of Congress keeps and the copyright deposits

14    that are housed in the Copyright Office are going to

15    damage the credibility of the institution and the system

16    that Ms. Perlmutter, my client, is tasked with

17    safeguarding.

18          And, again, this is another distinguishing

19    point with *English v. Trump* because, there, Ms. English

20    wasn't able to tie her harm to the agency, and the Court

21    had remarked that the CFPB continued to function with

22    Mr. Mulvaney as acting director.  And that's just simply

23    not the case here.

24         And so plaintiff will -- if she's not given

25    emergency relief, will lose her ability to carry out her

1    role as a Register of Copyrights when the institution is

2    so damaged that she's unable -- she's unable to perform

3    the duties of the Register with, like, the public trust

4    and relationship with Congress that is so vital.

5        If you do not have any more questions, I will --

6            THE COURT:  I will give you an opportunity to

7    respond.  It's your motion, so you'll get an opportunity

8    to respond to anything the defendants say.

9            MS. SCHER:  Thank you.

10           THE COURT:  Absolutely.

11       Mr. Woodward.

12           MR. WOODWARD:  Good afternoon, Judge.  Good to

13   see you again.

14           THE COURT:  Good afternoon.  Same to you.

15           MR. WOODWARD:  So, Your Honor, six days ago,

16   the plaintiff filed her motion, and six days ago, the

17   Supreme Court issued its order in *Wilcox*.

18       And I'll quote:  "This stay also reflects our

19   judgment that the government faces greater risk of harm

20   from an order allowing a removed officer to continue

21   exercising the executive power that a wrongfully removed

22   officer faces from being unable to perform her statutory

23   duty."

24       And so with respect, Your Honor, six days into this

25   litigation, our position is the Court need not delve

1    into these mighty constitutional concerns that the

2    plaintiffs have flagged.

3        The fact of the matter is, is that the balance of

4    the equities weigh in favor of the government.  What the

5    plaintiff is asking us to do is to reinstate someone

6    whom the President no longer believes will execute on

7    the prerogatives of his administration.  That's

8    completely within his purview.

9        And how we get there, at least at this early

10   juncture, is irrelevant.  As the Court points out, it is

11   certainly conceivable the -- that the President direct

12   the acting Librarian of Congress, whomever that is, to

13   remove the Register of Copyrights.  That person refuses,

14   they're removed.  The next Librarian of Congress steps

15   in, and so forth.

16       And so at the end of the day, the facts that are

17   not disputed by the parties leave us in the same place.

18       You know, so turning to the merits of the

19   plaintiff's argument, we would observe that the

20   following is beyond dispute.

21       There is no dispute that Congress designated the

22   Librarian of Congress as an officer of the United States

23   to be appointed by the Senate -- excuse me, to be

24   appointed by the President with advice and consent of

25   the Senate.

1          Everybody agrees.

2          There's also no dispute that the Librarian of

3     Congress can be fired by the President.

4          Everybody agrees.

5              THE COURT:  Everyone agrees.

6              MR. WOODWARD:  And there's no dispute that a

7     duly Senate-confirmed Librarian can appoint a Register

8     of Copyrights, and in so doing would be removing any

9     Register of Copyrights who was there.

10         And so it appears that where we disagree is how the

11    Court is to treat -- to use your word -- this unicorn of

12    an organization that exists.

13         We agree that the Library of Congress performs some

14    legislative functions, but we also think it's beyond

15    dispute that the Library of Congress serves a fair

16    amount of Executive Branch functions.

17         And we would observe that in particular that the

18    Register of Copyrights is almost exclusively focused on

19    the performance of Executive Branch functions.

20         Now, Congress could have done many things.  But

21    what Congress did in creating the Library of Congress

22    was designate the Librarian of Congress as an Executive

23    Branch official to be appointed by the President.

24         They didn't have to do that, and I'm glad --

25             THE COURT:  When you say "as an Executive

```
1    Branch official to be appointed by the President," I get
2    the second part of what you just said.
3        I mean, isn't the Executive Branch official the
4    whole nub of the argument?
5              MR. WOODWARD:  It is.
6              THE COURT:  Okay.
7              MR. WOODWARD:  And to be sure --
8              THE COURT:  I mean, I don't know that they
9    would agree with that.  Obviously, they make the point,
10   among many, that it's codified in the legislative part
11   of the Code.
12       You all respond that that's not dispositive at all,
13   and maybe you would even respond it doesn't even -- it
14   doesn't even matter one whit.
15       And maybe that's right.  I'm just saying that that
16   is the dispute, right?  Is it in the executive or not?
17             MR. WOODWARD:  I agree.
18       And so we've moved beyond the parts where we are
19   all in agreement.
20             THE COURT:  Okay.
21             MR. WOODWARD:  It is the position of the United
22   States government, the Department of Justice, that the
23   Librarian of Congress is an Executive Branch official,
24   an official whose appointment is governed by the
25   Appointments Clause.
```

1          And Congress created this office, the Office of the

2     Librarian of Congress, intentionally to put the

3     Librarian in this position.

4          And so the question really becomes does the FVRA

5     apply?

6          Now, Your Honor wrote the treatise on the FVRA.  I

7     won't -- I won't even attempt to educate the Court on

8     this.

9          THE COURT:  If only I could remember it, but I

10     did write something about it.

11          MR. WOODWARD:  It was extensive.

12          I would -- you know, the question for the Court is

13     going -- will be, at some point in time, is the Office

14     of the Librarian of Congress an independent

15     establishment such that it is an executive agency under

16     the FVRA?

17          We submit that it is, and we submit that although

18     that specific question has not yet been decided, because

19     of the precedent by which the Court is bound, there's

20     no -- there's no way to decide otherwise.

21          And so what is that precedent?  Most recently, in

22     Med Imagining & Tech v. The Library of Congress --

23     that's 103 F.4th 830 -- the D.C. Circuit concluded that

24     Congress was treating the Register of Copyrights and the

25     Librarian of Congress by virtue of his function in

1    overseeing the Register of Copyrights -- and not for

2    nothing, right?

3        But the copyright statute says that the Register of

4    Copyrights shall propose rules for the Librarian to

5    promulgate.

6        And Congress then went on top of that and said,

7    although the APA -- although the APA does not generally

8    apply to the Library of Congress, it is going to apply

9    to that specific function, looping in both the Register

10   of Copyrights, looping in the Librarian.

11       And so to be sure, the D.C. Circuit does not say

12   that the Library of Congress is an Executive Branch

13   agency covered by the FVRA.  It is concluding that the

14   Library of -- the Librarian of Congress performs

15   executive functions.

16           THE COURT:  No question.

17           MR. WOODWARD:  Prior, we have *Intercollegiate*

18   *Broad. Systems*, which my colleague mentioned, again, a

19   decision by the D.C. Circuit.

20       That opinion is important because it is -- that is

21   the case that allows the Court -- and don't take my word

22   for it -- it allows the Court to conclude -- or,

23   frankly, requires the Court to conclude that the

24   Librarian of Congress is an officer of the United States

25   subject to Article II Section 2, Clause 2, the

1    Appointments Clause.

2         I apologize, the cite there is 684 F.3d 1332.

3         Not binding on this Court but persuasive, is a

4    decision we cite from the Fourth Circuit.  That's *Eltra*

5    *Corp.*, 579 F.2d 294 from 1978.

6         And I quote, "In *Buckley*, the Court chose rather to

7    consider each function of the Commission separately and

8    to determine the character of each, whether legislative

9    or executive, resolving the validity of the function on

10   the basis of such determination.  Adopting that same

11   procedure in reviewing the several functions of the

12   Librarian of Congress, it would appear indisputable that

13   the operations of the Office of Copyright are

14   executive."

15        And so if we agree that the copyright -- that the

16   Librarian of Congress, in performing the duties of the

17   Register of Copyrights, and the way that these two

18   offices are inextricably intertwined, are serving as an

19   Executive Branch function.  And we overlay the fact that

20   Congress specifically -- specifically recognized the

21   Librarian of Congress as an official subject to the

22   Appointments Clause.  Then the question is why isn't the

23   office an independent establishment and therefore an

24   executive agency?

25        My colleagues point to Title 5.  And they say,

1  Well, Title 5 has references both to executive agencies,

2  as well as to the Library of Congress, and so it must

3  mean that Congress understood the Library of Congress

4  not to be an executive agency.

5       And our response to that is twofold.

6       First, no.  Right?

7       Congress does what it wants and it writes statutes

8  the way it wants to write statutes; and simply because

9  it is mentioning both at that time in Title 5 doesn't

10  mean that throughout the entirety of the U.S. Code the

11  Librarian of Congress is excluded from the definition of

12  executive agency --

13           THE COURT:  Sure.

14       But it's evidence, right, along with the canon of

15  statutory construction?

16           MR. WOODWARD:  So we would -- exactly,

17  Your Honor.  We would submit that, in fact, what

18  Congress was doing was belt and suspenders.

19       We are aware of the plethora of case law in which

20  the Library of Congress, the unicorn that it is, has

21  been found not to be an executive agency for purposes of

22  FOIA, for purposes of the APA, for other purposes that

23  I'm sure I'm not familiar with; and therefore, in

24  defining the Library of Congress, we're going to

25  specifically connote what it is and when it -- when

1    it -- where it applies and what statutes apply to it.

2        And so we think you can read this exactly the

3    opposite way, which is to say that Congress was just

4    being careful.  It wanted to make sure everybody

5    understood because there is nothing like the Library of

6    Congress.  There is nothing else out there.  And so they

7    had to specifically designate it.

8        We also -- we also don't think the Court needs to

9    decide on the question of what authority the President

10   has under Article II, to appoint an officer where the

11   FVRA doesn't apply.

12       We do brief that, and it's long been the

13   Department's position that the President does have that

14   authority, that it can't be --

15            THE COURT:  Go ahead.

16            MR. WOODWARD:  Well, it can't be that if the

17   FVRA doesn't apply, that that office sits empty forever.

18            THE COURT:  Right.

19       But who's saying -- well, okay.

20       But no one is saying -- there is a regulation that

21   elevates an enacting, correct, from within the

22   institution?

23            MR. WOODWARD:  I can respond to that --

24            THE COURT:  I mean, I'm sure --

25            MR. WOODWARD:  -- twofold.

1          THE COURT:  I'm just -- no one would maybe

2    doubt -- or your position I'm sure is that the President

3    can override that, and I'm not arguing that.

4        But at least to respond to your point that, like,

5    goodness, the office is -- there's no one there, what

6    are we to do?

7        Like, there are regulations that account for that,

8    right?

9          MR. WOODWARD:  Well, there's a regulation

10   promulgated by the Librarian --

11          THE COURT:  Right.

12          MR. WOODWARD:  -- him or herself, and not done

13   so at the direction of Congress, not done so at the

14   request of Congress, right?

15        There's no statutory authority supporting that

16   delegation or that line of succession, if you will,

17   right?  That was done and not blessed by Congress, not

18   blessed by the President.

19        So, you know, we would argue that regulations

20   should be, at best, in quotes.  Observe that it exists.

21        And, of course, you know, we included it in our --

22   in our brief out of an abundance of transparency.

23        But, no, we don't think that binds the President in

24   any case.

25          THE COURT:  Right.

1          MR. WOODWARD:  And, two, even if it were part

2     of the law, to your earlier hypothetical, nothing

3     precludes the President from removing seriatim the

4     Librarian of Congress, which again puts us in a place

5     where if not subject to the FVRA, then the President

6     can't run the Library of Congress.

7          And so that opens up this whole can of worms about

8     whether his duty to faithfully execute the laws can be

9     met or not and should he have -- again, the Department

10    of Justice's position is we don't have to get there.

11         And the reason we don't have to get there today,

12    Your Honor, is because the balance of equities, the

13    Supreme Court has clarified for us, weigh in favor of

14    the government.

15         This Court should not enter an order forcing

16    someone into office that the President has now said, "I

17    do not think that you can pursue my policy prerogatives

18    moving forward."

19         And that's what the Court made clear in *Wilcox*.

20    And to be clear, *Wilcox* is a very different animal in

21    the sense that, as the dissent in *Wilcox* points out,

22    they were talking about success on the merits that may

23    very well include the Court's overturning precedent.

24         We don't even have that here.  Here, we just have

25    an undecided question of law that will take time to

1    definitively resolve.

2         I'll conclude just by flagging that the parade of

3    horribles that the government is concerned about --

4    excuse me, that the -- old habits die hard.

5              THE COURT:  Yeah, yeah.  I was going to say.

6              MR. WOODWARD:  The parade of horribles --

7              THE COURT:  You have to get used to that

8    different hat, Mr. Woodward.

9              MR. WOODWARD:  The parade of horribles that the

10   plaintiffs are concerned about, A, they have not come to

11   fruition; B, you know, they can be resolved.

12        You know, if -- to the extent that the concern

13   here -- first of all, the Register of Copyrights, to my

14   understanding, does not have access to CRS.  So CRS is

15   not -- is not really an issue here.

16        The concern that there would be some takeover of

17   CRS, access to confidential data, like, that has not

18   been presented by a party that has any real interest.

19        The concern that the access to the funds in the

20   Copyright Office could be used to some harm, that's a

21   separate -- again, a separate cause of action.  That

22   hasn't been done.  There's no suggestion that that would

23   be done.  And to the extent that that is done, I expect

24   that we'll be back here promptly.

25              THE COURT:  I mean, that circles back to the

1    notion that I don't have anyone from Congress here.

2              MR. WOODWARD:  We're aware.

3              THE COURT:  I got it.

4              MR. WOODWARD:  If Your Honor has no further

5    questions -- all right.  Thank you.

6              THE COURT:  I do not.

7         I'm going to give the plaintiffs an opportunity

8    to -- plaintiff an opportunity to respond to any points

9    you made.

10             MS. SCHER:  Thanks.

11        Just very briefly, I think we've covered the

12   merits.

13        But I'll just point out for the independent

14   establishment point, that it's Page 7 to 8 on our

15   opening brief.  That includes a provision where a

16   legislative agency is defined, and that is defined to

17   include the Library of Congress.

18        And, separately, as you're probably aware from the

19   CFPB case, agencies often have independent establishment

20   as part of their definition in their organic statute.

21             THE COURT:  I don't know if it's invariably the

22   case, but I saw the many instances you pointed out in

23   your brief.

24             MS. SCHER:  Thank you.

25             THE COURT:  Yeah.

```
 1              MS. SCHER:  And just a final point on
 2    irreparable harm.
 3         The government's theory of irreparable harm is that
 4    there's no limiting principle.  And in their brief they
 5    mention that the Senate parliamentarian is something
 6    that they wouldn't -- that they would agree -- or
 7    wouldn't disagree is a legislative function, that the
 8    President would not be able to remove the Senate
 9    parliamentarian.
10         And so if we're thinking of a hypothetical where
11    that's what happened here, why wouldn't that be
12    irreparable harm?
13              THE COURT:  You're suggesting if -- you're
14    suggesting that would be a scenario where the removal of
15    a -- I'm trying to use a neutral term -- an employee --
16    a government employee would be irreparable harm, would
17    suggest irreparable harm?
18              MS. SCHER:  Well, it's something where the
19    plaintiff and the defendants agree that the President
20    can't remove the Senate parliamentarian from office.
21         And so under their theory that we are not showing
22    irreparable harm, how could the Senate parliamentarian
23    show irreparable harm when we both agree that they have
24    a right to their office?
25         And so for that reason, plaintiff respectfully
```

1   requests emergency relief to maintain the status quo so

2   she can continue serving as Register of Copyrights in

3   the Library of Congress.

4           THE COURT:  All right.  Very, very well.

5       All right.  So consistent with how at least I have

6   handled TROs, and I think generally how our court

7   handles them, they are requests for immediate relief.

8       So I'm prepared to rule right now.

9       Before me is Plaintiff Perlmutter's motion for a

10  temporary restraining order, which she filed after the

11  close of business last Thursday.

12      Consistent with the practice in this court, I'm

13  hearing the parties on this motion as fast as reasonably

14  possible while also providing the defendants the

15  opportunity to respond in writing.

16      On Friday, I entered an order requiring defendants

17  to respond to the motion over the Memorial Day

18  holiday -- sorry about that folks -- and so this hearing

19  is taking place about two and a half business days after

20  the motion was filed and on the very limited record

21  provided.

22      I am going to deny the motion because, at this

23  stage, Perlmutter has not shown that she will suffer

24  irreparable harm absent the entry of a TRO.

25      A temporary restraining order is "an extraordinary

1    remedy that should be granted only when the party

2    seeking the relief, by a clear showing, carries the

3    burden of persuasion."

4        That is *Hulli v. Mayorkas*, 549 F.Supp 3d, 95 at

5    Page 99.  It's a D.D.C. case from 2021.

6        As with the preliminary injunction, a party seeking

7    a TRO must establish, one, that she is likely to succeed

8    on the merits; two, that she is likely to suffer

9    irreparable harm in the absence of preliminary relief;

10   three, that the balance of equities tips in her favor;

11   and four, that an injunction is in the public interest.

12       That's *Aamer v. Obama*, 742 F.3d 1023 at 1038.  It's

13   a D.C. Circuit case from 2014.

14       A Court also considers the underlying purpose of a

15   TRO "preserving the status quo" in presenting

16   irreparable harm while proceedings for preliminary or

17   permanent injunctive relief are pending.

18       That's *AIDS Vaccine Advocacy Coalition v.*

19   *U.S. Department of State*, No. 25-5046, 2025 Westlaw

20   621396 at 1, a D.C. Circuit case from February 26th of

21   2025.

22       Thus, the plaintiff here must show that she will

23   suffer irreparable harm absent a TRO; that is, that the

24   harm will happen within the next 14 days.

25       And I cite for that *Doe v. OPM*, No. 25-CV-234, 2025

1    Westlaw 513268, at Page 7 and Note 4, a D.D.C. case.   It

2    was Judge Moss, I believe, from February 17, 2025.

3        Even assuming that Ms. Perlmutter is likely to

4    succeed on the merits, my analysis begins and ends with

5    irreparable harm, perhaps with a dash of the balance of

6    the equities as it relates to irreparable harm.

7        But in any event, irreparable harm is "a threshold

8    requirement in granting temporary injunctive relief."

9        That's *Beattie v. Barnhart*, 663 F.Supp. 2d 5 at 8,

10   a D.D.C. case from 2009.

11       "If a party makes a sufficient showing of

12   irreparable -- a sufficient showing -- an insufficient

13   showing" -- I'm sorry.

14       "If a party fails to make a sufficient showing of

15   irreparable injury, a Court may deny a motion for

16   injunctive relief."   That is the same *Beattie* case I

17   mentioned a moment ago.

18       This Circuit "has set a high standard for

19   irreparable injury."   That's *Chaplaincy of Full Gospel*

20   *Churches v. England*, 454 F.3d 290, 297, a D.C. Circuit

21   case from 2006.

22       And all these quotes are from that *Chaplaincy* case.

23       Not only must the injury be "both certain and

24   great" and "actual and not theoretical," but it "must be

25   beyond remediation."   The key word in this

1    consideration, of course, is "irreparable."

2         And as I mentioned a moment ago, I don't think the

3    plaintiff has satisfied this high standard on the record

4    here.

5         The irreparable harm analysis starts with the

6    Supreme Court's instruction that the loss of a job and

7    the injuries that go along with it generally "will not

8    support a finding of irreparable injury however severely

9    they may affect a particular individual."

10         That's *Sampson v. Murray*, 415 U.S. 61 at 92 and

11    Note 68, a Supreme Court case from 1974.

12         Accordingly, in the typical case in which an

13    employee challenges his firing, the loss of a job does

14    not "constitute an irreparable injury."  *English v.*

15    *Trump*, 279 F.Supp. 3d, 307 at 334, a D.D.C. case from

16    2018.  And that is particularly true in cases involving

17    government employment.  Again, cite to the *English v.*

18    *Trump* again.

19         In *Sampson*, the Supreme Court recognized "the

20    well-established rule that the government has

21    traditionally been granted the widest latitude in the

22    dispatch of its own internal affairs."  415 U.S. at 83.

23         Thus, preliminary equitable intervention in

24    government personnel cases is strongly disfavored, and

25    the plaintiff here must show a "genuinely extraordinary

1    situation" to obtain the relief sought.

2        Again, that is the *Sampson* case at Page 92,

3    Note 68.

4        To make that showing, she must show that "the

5    circumstances surrounding her discharge, together with

6    the resultant effect on her, so far depart from the

7    normal situation that irreparable injury might be

8    found."

9        That's a cleaned-up quote, again, from *Sampson* at

10    92, Note 68.

11        She "at the very least must make a showing of

12    irreparable injury sufficient in kind and degree to

13    override these factors cutting against the general

14    availability of preliminary injunctions in government

15    personnel cases."

16        That's *Sampson* at 84.

17        It talks -- that quote talks about irreparable

18    injury.  It sort of bakes in a little bit of -- as the

19    defendants argue here today, a little bit of the balance

20    of the equities, but I think it's fundamentally about

21    the level that irreparable harm -- of irreparable harm

22    that has to be shown in cases in which we're talking

23    about government personnel.

24        Ms. Perlmutter argues that four reasons justify

25    finding that this case presents a genuinely

1    extraordinary situation that satisfied the above

2    standard, but at least, as I see it, none does the

3    trick.

4         First, the plaintiff argues that she suffers

5    irreparable harm from defendants' deprivation "of her

6    statutory right to function in the role that the

7    Librarian of Congress has lawfully appointed her to

8    perform."  That's ECF No. 2-1 at 12.

9         Acknowledging the Simpson case -- I'm sorry, the

10   *Sampson* case, Ms. Perlmutter argues that regardless of

11   the rule, in "garden-variety employment disputes," that

12   rule does not apply here because of her "statutory right

13   to function."  Again, that's in the briefing, the ECF

14   No. 2-1 at 12.

15        And she points me to several recent cases where

16   courts in the District appear to have adopted to one

17   degree or another the argument that an officer's loss of

18   a statutory right to function can cause irreparable

19   harm.  And that's at ECF No. 9, the reply brief, at 17

20   to 18.  Those cases are collected there.

21        Ms. Perlmutter is right that this is not a

22   garden-variety case.  Still, those cases are not binding

23   on me, and to the extent they adopt such a blanket rule,

24   or really any rule that apply here results in a finding

25   of irreparable harm, I respectfully disagree with them,

1     especially with the benefit of recent decisions that

2     we've just been talking about by the D.C. Circuit and

3     the Supreme Court in a few of those same very -- of

4     those very same cases.

5         To begin, though, even the reasoning of those cases

6     Ms. Perlmutter cites is not as clearly applicable to

7     this situation here, as she claims.  In some of them,

8     the courts seem to link a finding of irreparable harm to

9     the President's disruption of a statutory scheme

10    involving "a Senate-confirmed principal officer of a

11    Congressionally created independent agency."

12        That's *Grundmann v. Trump*, No. 25-CV-425, 2025

13    Westlaw 782665, at Page 17, a case from this district

14    from March 12th of 2025.

15        Now, putting aside for the moment that this is not

16    harm that the officer herself "is likely to suffer,"

17    which is required in any case in which a party seeks

18    preliminary injunctive relief, and for that I cite

19    Winter v. Natural Resources Defense Counsel Inc., 555,

20    U.S. 7 at 20, a Supreme Court case from 2008, the

21    situation here does not clearly present those same

22    factors.

23        Ms. Perlmutter was not confirmed by the Senate to

24    her position as Register of Copyrights and director of

25    the Copyright Office, and she has not explained why it

1    is similarly important that her position, unlike other

2    components of the Library of Congress, should function

3    with any degree of independence from control by the

4    Executive Branch, especially when, as the D.C. Circuit

5    has held and as we have discussed here today, it

6    exercises executive authority.

7        And for that I just cite *Intercollegiate Broad.*

8    *Systems Inc. v. Copyright Royalty Board*, 684 F.3d 1332

9    at 1341 through 42, a D.C. Circuit case from 2012.

10       In another of the recent District Court cases cited

11   by the plaintiff, Judge AliKhan went so far as to say

12   that it is not "clear" whether "the harm that comes from

13   the loss of a statutory right to function" is

14   irreparable.  That's *Aviel v. Gor*, No. 25-CV-2025, 2025

15   Westlaw 1009035, at Page 10, a D.D.C. case from

16   April 4th of 2025.  And Judge AliKhan did not rely

17   solely on such a theory to conclude that the plaintiff

18   had shown irreparable harm because the plaintiff in that

19   case had "identified an additional layer of harm on top

20   of her basic right to function."

21       There, Judge AliKhan found that "the very survival

22   of the plaintiff's organization was at stake," which put

23   her case squarely in the genuinely extraordinary

24   situation contemplated by *Sampson*."

25       That's a cleaned-up quote from Judge AliKhan's

1    case.

2         In other words, the existential risk to the agency

3    and the concomitant personal risk to the plaintiff that

4    there would be no agency for her to return to caused

5    Judge AliKhan to conclude that the circumstances

6    surrounding her discharge, together with the -- that

7    "the circumstances surrounding her discharge, together

8    with the resultant effect on her so far departed from

9    the normal situation that irreparable injury could be

10   found."  And that quote is from the *Sampson* case again,

11   415 U.S. at 92, Note 68, a cleaned-up quote from it.

12        As I will explain further in a moment, the

13   plaintiff here has not made a similar showing.

14        Now, as we've discussed in some of the other cases,

15   District Court cases from this district cited by the

16   plaintiff, the D.C. Circuit and the Supreme Court have

17   recently weighed in.

18        Even if they have not definitively ruled it out,

19   they have been plainly skeptical of the "statutory right

20   to function" theory of irreparable harm for purposes of

21   preliminary injunctive relief.  Indeed, in one case the

22   circuit stayed a District Court's grant of an

23   injunction, restoring a plaintiff to his position as

24   special counsel.

25        The Court noted that the plaintiff had to make "a

1    showing of irreparable injury sufficient in kind and

2    degree to override the factors cutting against the

3    general availability of preliminary injunctions in

4    government personnel cases."  Obviously, invoking the

5    Supreme Court's *Sampson* decision.

6         That was *Dellinger v. Bessent*, No. 25-5052, 2025

7    Westlaw 887518 at 4, a D.C. Circuit case from

8    March 10th, 2025.

9         And the Circuit concluded that even assuming the

10   plaintiff "is correct that his removal is statutorily

11   ultra vires, and assuming that his removal constitutes a

12   cognizable injury, that does not mean such injury is

13   irreparable and weighs in his favor."

14        The Circuit noted that, "at worst, the plaintiff

15   would remain out of office for a short period of time,"

16   whereas, "the potential injury to the government" in

17   having the officer remain in office improperly would be

18   substantial."

19        Thus, like here, the "injury-focused factors"

20   favored a stay of the injunction that the District Court

21   has entered.  Again, when we're talking about

22   irreparable harm or irreparable harm plus these -- the

23   balance of the equities.

24        Similarly, the Supreme Court just last week stayed

25   an order issued in another case cited by Ms. Perlmutter,

1    *Harris v. Bessent*, No. 25-CV-412, 2025 Westlaw 679303.

2        That case was a D.D.C. case from March 4th, 2025,

3    and reasoned that "the government" -- this is what

4    defendants led with understandably here this

5    afternoon -- and reasoned "the government faces greater

6    risk of harm from an order allowing a removed officer to

7    continue exercising the executive power than a

8    wrongfully removed officer faces from being unable to

9    perform their statutory duty."

10       That's *Trump v. Wilcox*, No. 24A966, 2025 Westlaw

11   1464804 at 1.  This is a Supreme Court order from

12   May 22nd of 2025.

13       To be sure, the Court did not hold that an

14   officer's removal can never constitute irreparable harm

15   to the officer, but it strongly implied that being

16   unable to perform her statutory duty is typically not

17   such an irreparable harm, or at least not a harm that

18   outweighs the corresponding risk of harm to the

19   government.  So, too, in this case.

20       So for all these reasons, Ms. Perlmutter's first

21   argument does not establish that she will likely suffer

22   irreparable injury, again, an injury that would

23   warrant -- certainly injury that would warrant relief

24   after considering the balance of the equities.

25       Second, the plaintiff contends that "beyond the

1    loss of her statutory right to function," she will "be

2    prevented from performing the legislative functions that

3    are assigned to her if the Court does not issue

4    preliminary relief."

5        That's ECF No. 2-1 at Page 13 in the briefing.

6        Specifically, the plaintiff argues that the final

7    part of an ongoing report on Copyright and Artificial

8    Intelligence "remains in process," and absent immediate

9    reinstatement, she "will be unable to complete the

10    report as expected by Congress."

11        I think there are several problems with this

12    argument.  For starters, the plaintiff does not

13    meaningfully explain how this asserted harm goes beyond

14    the "loss of her statutory right to function."  At

15    bottom, both assert the same theory of harm:  That Ms.

16    Perlmutter cannot do the job she was appointed to do.

17    And for the reasons discussed previously, it is not

18    irreparable harm to her if someone else picks up this

19    task.

20        In any event, the plaintiff does not explain how

21    any harm flowing from the ongoing report she references

22    would likely be remedied by a TRO, which after all, can

23    only last 14 days.

24        Although she concludes that "she will be unable to

25    complete the report as expected by Congress" absent

1    immediate relief, the limited record before me does not

2    support that conclusion.

3        For example, plaintiff does not explain the

4    timeline for this final part of the report or show what

5    would happen if she did not -- or show that she needs to

6    act within the next 14 days to "complete the report as

7    expected."

8        Third, Ms. Perlmutter argues that "absent emergency

9    relief, she will be irreparably harmed because the

10   President's attempt to take over the Library of Congress

11   implicates separation-of-powers issues not ordinarily

12   present in an employment dispute."  That's ECF No. 2-1

13   at 14.

14       But similarly, the separation-of-powers harms that

15   Perlmutter predicts -- Ms. Perlmutter predicts that

16   Congress, the Library of Congress, and the Copyright

17   Office will suffer absent preliminary relief because of

18   the Executive Branch's alleged encroachment do not count

19   as the harm to her that is required.

20       As I emphasized already, for me to grant the

21   preliminary relief sought, the plaintiff must establish

22   "that she is likely to suffer irreparable harm in the

23   absence of preliminary relief."

24       That's *Winter*, 555 U.S. at 20.

25       Indeed, defendants assert that Ms. Perlmutter is

1    suing in her personal capacity, ECF No. 7 at 27, which

2    she does not appear to contest.

3        Moreover, that Congress has not joined this lawsuit

4    as a party impacts -- it has to impact my assessment,

5    again, on this limited record and only two and a half

6    days into -- business days into the case, of the

7    likelihood and severity of the institutional harm that

8    she alleges may flow from separation-of-powers concerns.

9        It is striking at this point, as I've mentioned a

10   few times, that Congress does not seem to think that the

11   likelihood and nature of these separation-of-powers

12   harms she raises warrant any intervention by the

13   judiciary, at least at this time.

14       And I'll just circle back and say there certainly

15   are functions within the Library of Congress that one

16   can understand would give Congress concern if the

17   Executive encroached upon them.

18       But I don't have a record here, at all, for

19   example, the confidential requests that members of

20   Congress can make to CRS housed within the Library of

21   Congress, but I have no evidence before me today that

22   the confidentiality of those requests is being affected

23   by what's happened with Ms. Perlmutter.

24       And beyond that, if there was, again, you would

25   think that I would have Congress in front of me asking

1    to vindicate its equities.

2        Finally, the plaintiff advances a fourth argument

3    that tries to connect the institutional harm she alleges

4    to her personally.

5        She argues that "the institutional harm to the

6    Library of Congress and U.S. Copyright Office that will

7    emanate from defendants' unlawful actions will be such

8    that Ms. Perlmutter would be unable to return to her

9    position as it currently exists" without immediate

10   relief, meaning, "the harm to plaintiff and the harm to

11   the Library of Congress are inextricably intertwined."

12       That's ECF No. 2-1 at 15.

13       For support, Ms. Perlmutter cites to *English v.*

14   *Trump*, where I noted that removal is "plainly

15   irreparable" when absent an injunction, an officer's

16   position will terminate such that she "could not be

17   reinstated to it following a final judgment on the

18   merits.  That's 279 F.Supp. 3d at 335.

19       And that part of the opinion discusses *Berry v.*

20   *Reagan*, No. 83-CV-3182, 1983 Westlaw 538, a D.D.C. case

21   from November 14th of 1983.

22       This is the same sort of irreparable harm that I

23   referenced earlier that Judge AliKhan found in the *Aviel*

24   case, 2025 Westlaw 1009035, at Page 10.

25       The problem for the plaintiff is that the record

1    here is devoid of factual support for this argument.

2    The plaintiff does not claim that her job will soon be

3    abolished, as was the case in *Berry*, where the position

4    at issue was about to -- was set to expire on a date

5    certain by operation of statute.

6        All she alleges is that because of defendants'

7    potential future actions, the Library and her position

8    will be changed in some dramatic but undefined way,

9    perhaps, that the public won't trust them as much as

10   they do now.

11       But her fears that anything along these lines will

12   happen are vague and speculative.  They are not certain

13   and great, as is required -- as is required by the

14   relevant legal standard.  And that's from *Chaplaincy of*

15   *Full Gospel Churches*, 454 F.3d at 297.

16       Thus, the plaintiff has not shown that it is at all

17   likely that defendants will so drastically change the

18   Register of Copyrights' position or the Copyrights

19   Office or duties such that should she win reinstatement

20   at the end of the case, the job would not be

21   "comparable" to the one she left.  I cite there to *Davis*

22   *v. Billington*, 76 F.Supp. 3d, 59 at 65, a D.D.C. case

23   from 2014.  And it is doubly speculative that any such

24   harm will accrue within the next 14 days.

25       So for all these reasons, I do find that

1    Ms. Perlmutter has not met her burden of showing that

2    she will suffer imminent irreparable harm within the

3    next two weeks absent a TRO.  Certainly, that she won't

4    suffer such harm that when considering the balance of

5    the equities would warrant preliminary injunctive

6    relief.  Thus, I will deny her motion.

7         But I emphasize, this is based on, you know, two

8    and a half -- this case is two and a half days --

9    business days old, and I've -- and this is my resolution

10   of a TRO on a very limited record.

11        If Ms. Perlmutter plans to move for a preliminary

12   injunction, I'll just ask the parties to confer and

13   submit by tomorrow at, let's say, 5:00 p.m., a proposed

14   briefing schedule for that preliminary injunction should

15   she wish to pursue it.  Then I will take that up and

16   enter it.

17        Is there anything further from the plaintiffs

18   today -- from the plaintiff?

19        MS. SCHER:  Yes, just one thing.

20        Could you clarify if the denial is without

21   prejudice should new facts arise?

22        THE COURT:  I don't think -- well, I mean --

23   let's put it this way.  I guess I've never been asked if

24   a motion for a TRO when it's denied typically is with or

25   without prejudice.

1        You know, the typical way that these cases proceed

2    is for -- if a TRO is denied, for the plaintiff to seek

3    a preliminary injunction if they still think preliminary

4    injunctive relief is warranted.

5        I -- so I've never had to think about that.  And so

6    I don't -- I don't really have an answer for you, other

7    than to say, you know, obviously a preliminary

8    injunction and the speed at which I resolve that could

9    be something that -- I mean, I guess part of the reason

10   it probably tends not to come up is that a plaintiff

11   thinks if we are going to get a slightly more -- a

12   ruling with giving the judge a little more time and a

13   little more time for the parties to brief the issues,

14   that the thing the plaintiff gets out of a PI is it's

15   appealable.

16       So, I guess, I'm going to -- I just have never had

17   this asked of me, and so I don't want to say that it's

18   with prejudice when there might be authority out there

19   that says, in fact, you can file one tomorrow.

20       If you -- let's put it this way.  If you want to go

21   that route, we could -- you could ask for a conference,

22   and we can talk about it.

23       But I just haven't had it come up because, again,

24   my impression has been that what plaintiffs, if they get

25   a TRO denied, really are focused on doing is obviously

1    turning -- getting -- convincing the judge that he or

2    she was wrong, and then, if not, having something they

3    can appeal.

4              MS. SCHER:  Thank you.

5              THE COURT:  All right.  Anything further from

6    the defendants?

7              MR. WOODWARD:  No, Your Honor.

8              THE COURT:  All right.  Very well.

9         Well, I hope it stopped raining outside for

10   everyone.  Until I hear from you tomorrow, if indeed I'm

11   going to get a PI briefing schedule, the parties are

12   dismissed.

13             (Court adjourned at 3:21 p.m.)

14

15                        CERTIFICATE

16

17        I, Chandra Kean, RMR, hereby certify that the

18   foregoing transcript is a true and correct transcription

19   of the proceedings held in the above-titled matter.

20

21

22   _____        May 29, 2025

23   Chandra Kean, RMR                   DATE

24

25

## 1

**1** [2] - 37:20, 46:11
**10** [2] - 43:15, 50:24
**1009035** [2] - 43:15, 50:24
**1023** [1] - 37:12
**103** [1] - 26:23
**1038** [1] - 37:12
**10th** [1] - 45:8
**12** [1] - 41:8, 41:14
**12th** [1] - 42:14
**13** [1] - 47:5
**1332** [2] - 28:2, 43:8
**1341** [1] - 43:9
**14** [5] - 37:24, 47:23, 48:6, 48:13, 51:24
**1464804** [1] - 46:11
**14th** [1] - 50:21
**15** [2] - 11:21, 50:12
**17** [3] - 38:2, 41:19, 42:13
**18** [1] - 41:20
**1974** [1] - 39:11
**1978** [1] - 28:5
**1983** [2] - 50:20, 50:21

## 2

**2** [4] - 9:3, 10:6, 27:25
**2-1** [5] - 41:8, 41:14, 47:5, 48:12, 50:12
**20** [2] - 42:20, 48:24
**2006** [1] - 38:21
**2008** [1] - 42:20
**2009** [1] - 38:10
**2012** [1] - 43:9
**2014** [2] - 37:13, 51:23
**2018** [1] - 39:16
**2021** [1] - 37:5
**2025** [16] - 37:19, 37:21, 37:25, 38:2, 42:12, 42:14, 43:14, 43:16, 45:6, 45:8, 46:1, 46:2, 46:10, 46:12, 50:24, 54:22
**22nd** [1] - 46:12
**24A966** [1] - 46:10
**25-1659** [1] - 3:4
**25-5046** [1] - 37:19
**25-5052** [1] - 45:6
**25-CV-2025** [1] - 43:14
**25-CV-234** [1] - 37:25
**25-CV-412** [1] - 46:1
**25-CV-425** [1] - 42:12
**26th** [1] - 37:20
**27** [1] - 49:1
**279** [2] - 39:15, 50:18
**29** [1] - 54:22
**290** [1] - 38:20

## 3

**294** [1] - 28:5
**297** [2] - 38:20, 51:15
**2:06** [1] - 3:2
**2d** [1] - 38:9

## 3

**307** [1] - 39:15
**334** [1] - 39:15
**335** [1] - 50:18
**3:21** [1] - 54:13
**3d** [4] - 37:4, 39:15, 50:18, 51:22

## 4

**4** [2] - 38:1, 45:7
**415** [3] - 39:10, 39:22, 44:11
**42** [1] - 43:9
**454** [2] - 38:20, 51:15
**4th** [2] - 43:16, 46:2

## 5

**5** [9] - 8:25, 9:3, 9:6, 9:25, 10:6, 28:25, 29:1, 29:9, 38:9
**513268** [1] - 38:1
**538** [1] - 50:20
**549** [1] - 37:4
**555** [2] - 42:19, 48:24
**579** [1] - 28:5
**59** [1] - 51:22
**5:00** [1] - 52:13

## 6

**61** [1] - 39:10
**621396** [1] - 37:20
**65** [1] - 51:22
**663** [1] - 38:9
**679303** [1] - 46:1
**68** [4] - 39:11, 40:3, 40:10, 44:11
**684** [2] - 28:2, 43:8

## 7

**7** [4] - 34:14, 38:1, 42:20, 49:1
**742** [1] - 37:12
**76** [1] - 51:22
**782665** [1] - 42:13

## 8

**8** [2] - 34:14, 38:9
**83** [1] - 39:22
**83-CV-3182** [1] - 50:20
**830** [1] - 26:23
**84** [1] - 40:16

## 9

**9** [1] - 41:19
**92** [4] - 39:10, 40:2, 40:10, 44:11
**95** [1] - 37:4
**99** [1] - 37:5

## A

**Aamer** [1] - 37:12
**ability** [2] - 21:3, 21:25
**able** [4] - 19:3, 19:13, 21:20, 35:8
**abolished** [1] - 51:3
**above-titled** [1] - 54:19
**absence** [2] - 37:9, 48:23
**absent** [8] - 36:24, 37:23, 47:8, 47:25, 48:8, 48:17, 50:15, 52:3
**absolutely** [1] - 22:10
**abundance** [1] - 31:22
**accepted** [1] - 14:22
**access** [6] - 4:12, 21:11, 21:12, 33:14, 33:17, 33:19
**accordingly** [1] - 39:12
**account** [1] - 31:7
**accrue** [1] - 51:24
**acknowledging** [1] - 41:9
**act** [2] - 8:20, 48:6
**Act** [1] - 6:18
**acting** [9] - 4:9, 6:2, 6:5, 6:15, 12:7, 19:8, 19:12, 21:22, 23:12
**action** [1] - 33:21
**actions** [3] - 12:20, 50:7, 51:7
**actual** [1] - 38:24
**add** [2] - 10:3, 11:12
**addition** [1] - 8:4
**additional** [1] - 43:19
**adjacent** [3] - 8:4, 8:6, 8:10
**adjourned** [1] - 54:13
**adjudicated** [1] - 3:22
**administration** [1] - 23:7
**admonition** [1] - 4:14
**ado** [1] - 3:18
**adopt** [1] - 41:23
**adopted** [2] - 13:8, 41:16

**adopting** [1] - 28:10
**advances** [1] - 50:2
**advice** [2] - 21:6, 23:24
**advise** [1] - 18:25
**adviser** [2] - 20:14, 21:3
**Advocacy** [1] - 37:18
**affairs** [1] - 39:22
**affect** [1] - 39:9
**affected** [1] - 49:22
**afternoon** [5] - 3:9, 4:5, 22:12, 22:14, 46:5
**agencies** [5] - 6:21, 8:24, 9:22, 29:1, 34:19
**agency** [21] - 6:23, 7:25, 9:1, 9:24, 10:3, 10:25, 11:20, 11:25, 12:7, 20:11, 21:20, 26:15, 27:13, 28:24, 29:4, 29:12, 29:21, 34:16, 42:11, 44:2, 44:4
**ago** [4] - 22:15, 22:16, 38:17, 39:2
**agree** [8] - 8:18, 24:13, 25:9, 25:17, 28:15, 35:6, 35:19, 35:23
**agreement** [1] - 25:19
**agrees** [3] - 24:1, 24:4, 24:5
**ahead** [1] - 30:15
**AIDS** [1] - 37:18
**al** [1] - 3:5
**AliKhan** [5] - 43:11, 43:16, 43:21, 44:5, 50:23
**AliKhan's** [1] - 43:25
**alleged** [1] - 48:18
**alleges** [3] - 49:8, 50:3, 51:6
**allowing** [3] - 3:16, 22:20, 46:6
**allows** [3] - 6:20, 27:21, 27:22
**Allyson** [1] - 3:7
**almost** [1] - 24:18
**alone** [1] - 6:11
**amount** [2] - 7:11, 24:16
**amounts** [1] - 4:11
**analysis** [4] - 15:19, 17:25, 38:4, 39:5
**animal** [1] - 32:20
**answer** [3] - 13:15, 19:19, 53:6
**APA** [9] - 10:11, 10:13,

**10:14, 10:16, 11:13, 11:15, 27:7, 29:22
**apologize** [1] - 28:2
**appeal** [1] - 54:3
**appealable** [1] - 53:15
**appear** [3] - 28:12, 41:16, 49:2
**appearing** [1] - 20:17
**applicable** [1] - 42:6
**applies** [1] - 30:1
**apply** [11] - 6:22, 10:23, 13:16, 26:5, 27:8, 30:1, 30:11, 30:17, 41:12, 41:24
**appoint** [5] - 4:21, 6:20, 12:6, 24:7, 30:10
**appointed** [10] - 6:15, 12:11, 12:22, 20:8, 23:23, 23:24, 24:23, 25:1, 41:7, 47:16
**appointing** [1] - 8:16
**appointment** [2] - 4:8, 4:10, 25:24
**Appointments** [3] - 25:25, 28:1, 28:22
**appointments** [1] - 18:18
**approves** [1] - 17:15
**April** [1] - 43:16
**Architect** [1] - 10:4
**argue** [4] - 17:10, 18:10, 31:19, 40:19
**argues** [6] - 40:24, 41:4, 41:10, 47:6, 48:8, 50:5
**arguing** [3] - 3:6, 3:7, 31:3
**argument** [10] - 3:11, 6:17, 12:18, 23:19, 25:4, 41:17, 46:21, 47:12, 50:2, 51:1
**arise** [1] - 52:21
**Article** [2] - 27:25, 30:10
**articulated** [1] - 12:19
**Artificial** [1] - 47:7
**aside** [1] - 42:15
**assert** [2] - 47:15, 48:25
**asserted** [1] - 47:13
**assessment** [1] - 49:4
**assigned** [5] - 18:14, 18:20, 19:11, 19:12, 47:3
**assist** [1] - 20:12
**associates** [1] - 21:9
**assuming** [3] - 38:3, 45:9, 45:11
**attempt** [2] - 26:7,

48:10
**attempting** [1] - 20:25
**Attorney** [2] - 4:8, 21:8
**authority** [17] - 4:20, 4:24, 5:10, 5:19, 5:24, 6:4, 6:10, 6:12, 6:19, 12:6, 17:12, 18:7, 30:9, 30:14, 31:15, 43:6, 53:18
**availability** [2] - 40:14, 45:3
**Aviel** [2] - 43:14, 50:23
**avoid** [1] - 12:14
**aware** [5] - 11:14, 11:22, 29:19, 34:2, 34:18

**B**

**bakes** [1] - 40:18
**balance** [8] - 23:3, 32:12, 37:10, 38:5, 40:19, 45:23, 46:24, 52:4
**Barnhart** [1] - 38:9
**based** [1] - 52:7
**basic** [1] - 43:20
**basis** [2] - 5:23, 28:10
**Beattie** [2] - 38:9, 38:16
**becomes** [1] - 26:4
**begin** [1] - 42:5
**begins** [1] - 38:4
**behalf** [2] - 3:6, 3:7
**believes** [1] - 23:6
**belong** [1] - 4:13
**belt** [1] - 29:18
**benefit** [2] - 20:12, 42:1
**Berry** [4] - 12:19, 20:5, 50:19, 51:3
**Bessent** [3] - 14:14, 45:6, 46:1
**best** [1] - 31:20
**between** [1] - 19:17
**beyond** [9] - 18:9, 18:11, 23:20, 24:14, 25:18, 38:25, 46:25, 47:13, 49:24
**big** [2] - 3:25, 19:6
**Billington** [1] - 51:22
**binding** [2] - 28:3, 41:22
**binds** [1] - 31:23
**bipartisan** [1] - 20:22
**bit** [2] - 40:18, 40:19
**Blanche** [4] - 3:4, 4:8, 4:21, 6:15
**Blanche's** [1] - 4:9

**blanket** [1] - 41:23
**blessed** [2] - 31:17, 31:18
**Board** [1] - 43:8
**bottom** [1] - 47:15
**bound** [1] - 26:19
**Branch** [13] - 4:11, 8:15, 20:25, 21:7, 24:16, 24:19, 24:23, 25:1, 25:3, 25:23, 27:12, 28:19, 43:4
**Branch's** [1] - 48:18
**branches** [1] - 7:8
**brief** [9] - 18:20, 20:23, 30:12, 31:22, 34:15, 34:23, 35:4, 41:19, 53:13
**briefing** [4] - 41:13, 47:5, 52:14, 54:11
**briefly** [2] - 5:5, 34:11
**bring** [1] - 6:14
**Broad** [2] - 27:18, 43:7
**Buckley** [1] - 28:6
**burden** [2] - 37:3, 52:1
**business** [4] - 36:11, 36:19, 49:6, 52:9

**C**

**cannot** [1] - 47:16
**canon** [1] - 29:14
**capacity** [1] - 49:1
**Capitol** [1] - 10:4
**careful** [1] - 30:4
**carries** [1] - 37:2
**carry** [1] - 21:25
**case** [66] - 5:23, 8:9, 8:13, 11:6, 13:13, 14:6, 14:7, 14:9, 14:24, 15:1, 15:17, 16:10, 16:13, 16:19, 19:7, 19:17, 19:18, 19:24, 20:5, 20:18, 21:23, 27:21, 29:19, 31:24, 34:19, 34:22, 37:5, 37:13, 37:20, 38:1, 38:10, 38:16, 38:21, 38:22, 39:11, 39:12, 39:15, 40:2, 40:25, 41:9, 41:10, 41:22, 42:13, 42:17, 42:20, 43:9, 43:15, 43:19, 43:23, 44:1, 44:10, 44:21, 45:7, 45:25, 46:2, 46:19, 49:6, 50:20, 50:24, 51:3, 51:20, 51:22, 52:8
**cases** [22] - 9:16, 10:11, 11:15, 13:6,

13:23, 14:21, 15:24, 39:16, 39:24, 40:15, 40:22, 41:15, 41:20, 41:22, 42:4, 42:5, 43:10, 44:14, 44:15, 45:4, 53:1
**cast** [1] - 13:3
**category** [1] - 9:21
**caused** [1] - 44:4
**certain** [5] - 6:21, 15:4, 38:23, 51:5, 51:12
**certainly** [4] - 23:11, 46:23, 49:14, 52:3
**CERTIFICATE** [1] - 54:15
**certify** [1] - 54:17
**CFPB** [2] - 21:21, 34:19
**challenges** [1] - 39:13
**Chandra** [2] - 54:17, 54:22
**change** [1] - 51:17
**changed** [1] - 51:8
**changing** [1] - 11:25
**Chaplaincy** [3] - 38:19, 38:22, 51:14
**character** [1] - 28:8
**chose** [1] - 28:6
**Churches** [2] - 38:20, 51:15
**circle** [1] - 49:14
**circles** [1] - 33:25
**circuit** [1] - 44:22
**Circuit** [22] - 5:22, 8:2, 8:13, 13:10, 14:1, 14:7, 16:18, 26:23, 27:11, 27:19, 28:4, 37:13, 37:20, 38:18, 38:20, 42:2, 43:4, 43:9, 44:16, 45:7, 45:9, 45:14
**circumstances** [4] - 6:21, 40:5, 44:5, 44:7
**cite** [7] - 28:2, 28:4, 37:25, 39:17, 42:18, 43:7, 51:21
**cited** [3] - 43:10, 44:15, 45:25
**cites** [2] - 42:6, 50:13
**Civil** [1] - 3:3
**claim** [2] - 19:13, 51:2
**claimed** [1] - 4:20
**claims** [4] - 17:18, 17:24, 19:4, 42:7
**clarified** [1] - 32:13
**clarify** [1] - 52:20
**Clause** [4] - 25:25, 27:25, 28:1, 28:22

**cleaned** [3] - 40:9, 43:25, 44:11
**cleaned-up** [3] - 40:9, 43:25, 44:11
**clear** [6] - 8:25, 14:23, 32:19, 32:20, 37:2, 43:12
**clearly** [2] - 42:6, 42:21
**CLERK** [1] - 3:3
**client** [1] - 21:16
**close** [1] - 36:11
**Coalition** [1] - 37:18
**Code** [2] - 25:11, 29:10
**codified** [1] - 25:10
**cognizable** [1] - 45:12
**colleague** [1] - 27:18
**colleagues** [2] - 13:7, 28:25
**collected** [1] - 41:20
**Commission** [1] - 28:7
**comparable** [1] - 51:21
**competing** [1] - 19:4
**complete** [3] - 47:9, 47:25, 48:6
**completed** [1] - 19:3
**completely** [2] - 20:10, 23:8
**complicated** [1] - 21:6
**compo** [1] - 9:21
**components** [3] - 9:15, 9:22, 43:2
**concede** [1] - 5:18
**conceivable** [1] - 23:11
**concern** [4] - 33:12, 33:16, 33:19, 49:16
**concerned** [2] - 33:3, 33:10
**concerns** [3] - 18:8, 23:1, 49:8
**conclude** [5] - 27:22, 27:23, 33:2, 43:17, 44:5
**concluded** [2] - 26:23, 45:9
**concludes** [1] - 47:24
**concluding** [1] - 27:13
**conclusion** [1] - 48:2
**conclusions** [1] - 13:17
**concomitant** [1] - 44:3
**conduct** [1] - 18:24
**confer** [1] - 52:12
**conference** [1] - 53:21
**confidential** [4] - 4:13, 21:12, 33:17, 49:19

**confidentiality** [1] - 49:22
**confirmed** [3] - 24:7, 42:10, 42:23
**Congress** [114] - 4:6, 4:9, 4:13, 5:9, 5:11, 5:20, 6:4, 6:5, 6:11, 6:16, 6:22, 7:6, 8:1, 8:3, 8:15, 8:20, 8:23, 9:2, 9:5, 9:6, 9:24, 10:4, 10:12, 10:14, 10:15, 10:21, 10:24, 11:1, 11:14, 11:17, 11:19, 11:21, 12:5, 12:7, 12:23, 17:12, 18:7, 18:25, 19:11, 20:1, 20:9, 20:10, 20:11, 20:12, 20:14, 20:16, 20:17, 20:22, 21:1, 21:3, 21:13, 22:4, 23:12, 23:14, 23:21, 23:22, 24:3, 24:13, 24:15, 24:20, 24:21, 24:22, 25:23, 26:1, 26:2, 26:14, 26:22, 26:24, 26:25, 27:6, 27:8, 27:12, 27:14, 27:24, 28:12, 28:16, 28:20, 28:21, 29:2, 29:3, 29:7, 29:11, 29:18, 29:20, 29:24, 30:3, 30:6, 31:13, 31:14, 31:17, 32:4, 32:6, 34:1, 34:17, 36:3, 41:7, 43:2, 47:10, 47:25, 48:10, 48:16, 49:3, 49:10, 49:15, 49:16, 49:20, 49:21, 49:25, 50:6, 50:11
**Congress's** [3] - 4:7, 4:12, 21:3
**Congressional** [1] - 21:5
**Congressionally** [1] - 42:11
**connect** [2] - 15:8, 50:3
**connote** [1] - 29:25
**consent** [1] - 23:24
**consider** [2] - 11:24, 28:7
**considerable** [6] - 16:6, 16:15, 16:25, 17:2, 17:3, 17:10
**consideration** [1] - 39:1
**considered** [3] - 9:5, 9:14, 20:3
**considering** [3] -

11:19, 46:24, 52:4
**considers** [1] - 37:14
**consistent** [4] - 3:13, 3:16, 36:5, 36:12
**constitute** [2] - 39:14, 46:14
**constitutes** [1] - 45:11
**Constitution** [1] - 4:22
**constitutional** [4] - 8:17, 8:19, 9:8, 23:1
**construction** [1] - 29:15
**contemplated** [1] - 43:24
**contends** [1] - 46:25
**contest** [1] - 49:2
**context** [2] - 8:25, 16:17
**continue** [4] - 5:3, 22:20, 36:2, 46:7
**continued** [1] - 21:21
**control** [3] - 21:1, 21:7, 43:3
**controlling** [1] - 16:11
**convincing** [1] - 54:1
**Copyright** [10] - 16:14, 20:2, 21:14, 28:13, 33:20, 42:25, 43:8, 47:7, 48:16, 50:6
**copyright** [5] - 8:16, 16:20, 21:13, 27:3, 28:15
**Copyrights** [26] - 5:2, 5:8, 5:15, 5:25, 6:11, 12:12, 16:21, 17:10, 17:14, 18:13, 18:15, 19:5, 22:1, 23:13, 24:8, 24:9, 24:18, 26:24, 27:1, 27:4, 27:10, 28:17, 33:13, 36:2, 42:24, 51:18
**Copyrights'** [2] - 12:22, 51:18
**Corp** [1] - 28:5
**correct** [3] - 30:21, 45:10, 54:18
**corresponding** [1] - 46:18
**Counsel** [1] - 42:19
**counsel** [1] - 44:24
**count** [1] - 48:18
**counter** [1] - 10:18
**course** [2] - 31:21, 39:1
**Court** [41] - 3:2, 3:13, 4:24, 5:21, 12:19, 13:12, 15:16, 15:18, 21:20, 22:17, 22:25, 23:10, 24:11, 26:7, 26:12, 26:19, 27:21,

27:22, 27:23, 28:3, 28:6, 30:8, 32:13, 32:15, 32:19, 37:14, 38:15, 39:11, 39:19, 42:3, 42:20, 43:10, 44:15, 44:16, 44:25, 45:20, 45:24, 46:11, 46:13, 47:3, 54:13
**court** [4] - 13:11, 14:23, 36:6, 36:12
**COURT** [60] - 3:9, 4:16, 4:19, 5:12, 5:17, 6:1, 6:8, 6:25, 7:15, 7:22, 8:6, 8:11, 9:10, 9:13, 9:20, 10:8, 10:17, 12:24, 14:1, 14:3, 14:9, 14:14, 14:16, 16:8, 16:16, 16:23, 17:4, 17:19, 18:22, 19:16, 20:15, 22:6, 22:10, 22:14, 24:5, 24:25, 25:6, 25:8, 25:20, 26:9, 27:16, 29:13, 30:15, 30:18, 30:24, 31:1, 31:11, 31:25, 33:5, 33:7, 33:25, 34:3, 34:6, 34:21, 34:25, 35:13, 36:4, 52:22, 54:5, 54:8
**Court's** [6] - 12:13, 16:4, 32:23, 39:6, 44:22, 45:5
**COURTROOM** [1] - 3:3
**courts** [8] - 10:13, 11:18, 12:1, 13:14, 13:15, 41:16, 42:8
**cover** [3] - 5:5, 8:24, 11:2
**covered** [5] - 11:5, 11:7, 18:19, 27:13, 34:11
**covers** [1] - 18:8
**created** [4] - 8:1, 12:4, 26:1, 42:11
**creating** [1] - 24:21
**credibility** [1] - 21:15
**critical** [2] - 12:8, 12:14
**CRS** [5] - 17:7, 33:14, 33:17, 49:20
**cut** [2] - 12:8, 20:10
**cutting** [2] - 40:13, 45:2

**D**

**D.C** [13] - 5:22, 8:2, 26:23, 27:11, 27:19, 37:13, 37:20, 38:20,

42:2, 43:4, 43:9, 44:16, 45:7
**D.D.C** [8] - 37:5, 38:1, 38:10, 39:15, 43:15, 46:2, 50:20, 51:22
**damage** [1] - 21:15
**damaged** [1] - 22:2
**damages** [1] - 20:13
**damaging** [1] - 21:2
**dash** [1] - 38:5
**data** [2] - 21:12, 33:17
**DATE** [1] - 54:22
**date** [1] - 51:4
**Davis** [1] - 51:21
**days** [12] - 22:15, 22:16, 22:24, 36:19, 37:24, 47:23, 48:6, 49:6, 51:24, 52:8, 52:9
**decent** [1] - 7:17
**decide** [3] - 5:9, 26:20, 30:9
**decided** [2] - 16:19, 26:18
**decision** [3] - 27:19, 28:4, 45:5
**decisions** [1] - 42:1
**defendants** [13] - 3:7, 5:22, 11:24, 16:13, 22:8, 35:19, 36:14, 36:16, 40:19, 46:4, 48:25, 51:17, 54:6
**defendants'** [6] - 4:20, 10:18, 12:20, 41:5, 50:7, 51:6
**Defense** [1] - 42:19
**define** [1] - 11:1
**defined** [6] - 8:1, 9:15, 9:16, 9:25, 34:16
**defining** [1] - 29:24
**definition** [2] - 29:11, 34:20
**definitively** [2] - 33:1, 44:18
**degree** [4] - 40:12, 41:17, 43:3, 45:2
**delegation** [1] - 31:16
**Dellinger** [3] - 14:8, 14:12, 45:6
**delve** [1] - 22:25
**denial** [1] - 52:20
**denied** [3] - 52:24, 53:2, 53:25
**denigrate** [1] - 13:4
**deny** [3] - 36:22, 38:15, 52:6
**denying** [1] - 13:13
**depart** [1] - 40:6
**departed** [1] - 44:8
**Department** [4] - 4:10,

25:22, 32:9, 37:19
**Department's** [1] - 30:13
**deposits** [1] - 21:13
**deprivation** [1] - 41:5
**deprived** [1] - 12:20
**DEPUTY** [1] - 3:3
**Deputy** [2] - 4:8, 21:8
**deputy** [1] - 19:8
**derivative** [1] - 17:25
**designate** [2] - 24:22, 30:7
**designated** [1] - 23:21
**designed** [1] - 20:12
**detailed** [1] - 9:4
**determination** [1] - 28:10
**determine** [1] - 28:8
**devoid** [1] - 51:1
**die** [1] - 33:4
**different** [5] - 7:7, 11:6, 19:24, 32:20, 33:8
**difficult** [1] - 8:18
**dignity** [1] - 5:2
**direct** [3] - 6:1, 18:1, 23:11
**direction** [1] - 31:13
**director** [6] - 19:8, 19:12, 19:21, 21:22, 42:24
**disagree** [5] - 7:21, 7:22, 24:10, 35:7, 41:25
**discharge** [3] - 40:5, 44:6, 44:7
**discomfort** [1] - 20:25
**discussed** [3] - 43:5, 44:14, 47:17
**discusses** [1] - 50:19
**disfavored** [1] - 39:24
**dismissed** [1] - 54:12
**dispatch** [1] - 39:22
**dispositive** [1] - 25:12
**dispute** [10] - 5:13, 5:15, 5:19, 23:20, 23:21, 24:2, 24:6, 24:15, 25:16, 48:12
**disputed** [1] - 23:17
**disputes** [1] - 41:11
**disputing** [1] - 8:1
**disruption** [1] - 42:9
**dissent** [1] - 32:21
**distinction** [3] - 19:6, 19:17, 19:20
**distinguishing** [1] - 21:18
**district** [4] - 13:11, 13:15, 42:13, 44:15

**District** [5] - 41:16, 43:10, 44:15, 44:22, 45:20
**Doe** [1] - 37:25
**done** [9] - 5:11, 12:3, 24:20, 31:12, 31:13, 31:17, 33:22, 33:23
**doubly** [1] - 51:23
**doubt** [2] - 19:16, 31:2
**dramatic** [1] - 51:8
**drastically** [1] - 51:17
**duly** [1] - 24:7
**duties** [6] - 18:17, 18:20, 19:11, 22:3, 28:16, 51:19
**duty** [5] - 18:24, 22:23, 32:8, 46:9, 46:16

**E**

**early** [2] - 4:17, 23:9
**ECF** [7] - 41:8, 41:13, 41:19, 47:5, 48:12, 49:1, 50:12
**educate** [1] - 26:7
**effect** [2] - 40:6, 44:8
**effectuating** [1] - 6:6
**effort** [1] - 5:4
**either** [2] - 19:18, 20:18
**elevates** [1] - 30:21
**Eltra** [1] - 28:4
**emanate** [1] - 50:7
**emergency** [4] - 4:25, 21:25, 36:1, 48:8
**emphasize** [1] - 52:7
**emphasized** [1] - 48:20
**employee** [3] - 35:15, 35:16, 39:13
**employment** [3] - 39:17, 41:11, 48:12
**empty** [1] - 30:17
**enacted** [4] - 8:23, 11:16, 11:21, 12:24
**enacting** [1] - 30:21
**enactment** [1] - 11:15
**encroached** [1] - 49:17
**encroachment** [1] - 48:18
**end** [3] - 7:9, 23:16, 51:20
**ends** [1] - 38:4
**England** [1] - 38:20
**English** [9] - 19:6, 19:7, 19:21, 19:24, 21:19, 39:14, 39:17, 50:13
**enter** [2] - 32:15,

52:16
**entered** [2] - 36:16, 45:21
**entirely** [1] - 12:9
**entirety** [1] - 29:10
**entities** [1] - 10:5
**entitled** [1] - 5:2
**entity** [1] - 9:17
**entry** [1] - 36:24
**equitable** [2] - 4:24, 39:23
**equities** [9] - 23:4, 32:12, 37:10, 38:6, 40:20, 45:23, 46:24, 50:1, 52:5
**especially** [2] - 42:1, 43:4
**essentially** [2] - 17:21, 21:7
**establish** [3] - 37:7, 46:21, 48:21
**established** [1] - 39:20
**establishment** [4] - 26:15, 28:23, 34:14, 34:19
**et** [1] - 3:5
**event** [3] - 14:20, 38:7, 47:20
**ever-changing** [1] - 11:25
**evidence** [8] - 7:4, 7:5, 7:12, 7:19, 9:5, 11:9, 29:14, 49:21
**evolving** [1] - 11:25
**exactly** [3] - 5:11, 29:16, 30:2
**example** [2] - 48:3, 49:19
**excluded** [2] - 10:16, 29:11
**exclusion** [1] - 10:14
**exclusively** [1] - 24:18
**excuse** [2] - 23:23, 33:4
**execute** [2] - 23:6, 32:8
**executive** [31] - 6:21, 6:23, 7:25, 8:4, 8:8, 8:20, 8:21, 9:1, 10:3, 10:25, 11:25, 12:1, 16:6, 16:15, 16:24, 17:5, 17:11, 17:15, 22:21, 25:16, 26:15, 27:15, 28:9, 28:14, 28:24, 29:1, 29:4, 29:12, 29:21, 43:6, 46:7
**Executive** [15] - 4:11, 8:15, 20:25, 21:7,

24:16, 24:19, 24:22, 24:25, 25:3, 25:23, 27:12, 28:19, 43:4, 48:18, 49:17
**executive-adjacent** [1] - 8:4
**exercise** [2] - 4:24, 8:5
**exercises** [4] - 8:3, 16:6, 16:14, 43:6
**exercising** [3] - 18:6, 22:21, 46:7
**existential** [1] - 44:2
**exists** [3] - 24:12, 31:20, 50:9
**expect** [1] - 33:23
**expected** [3] - 47:10, 47:25, 48:7
**expire** [1] - 51:4
**explain** [4] - 44:12, 47:13, 47:20, 48:3
**explained** [1] - 42:25
**express** [1] - 20:24
**expressed** [1] - 18:9
**extensive** [1] - 26:11
**extent** [4] - 17:13, 33:12, 33:23, 41:23
**extraordinary** [4] - 36:25, 39:25, 41:1, 43:23
**extreme** [1] - 16:15
**eye** [1] - 13:20

**F**

**F.2d** [1] - 28:5
**F.3d** [5] - 28:2, 37:12, 38:20, 43:8, 51:15
**F.4th** [1] - 26:23
**F.Supp** [5] - 37:4, 38:9, 39:15, 50:18, 51:22
**face** [1] - 19:2
**faces** [4] - 22:19, 22:22, 46:5, 46:8
**facing** [2] - 18:16, 19:10
**fact** [5] - 7:5, 23:3, 28:19, 29:17, 53:19
**factors** [4] - 40:13, 42:22, 45:2, 45:19
**facts** [2] - 23:16, 52:21
**factual** [1] - 51:1
**fails** [1] - 38:14
**fair** [4] - 6:25, 7:13, 20:20, 24:15
**faithfully** [2] - 12:15, 32:8
**familiar** [2] - 12:19, 29:23
**far** [3] - 40:6, 43:11,

44:8
**fast** [1] - 36:13
**favor** [4] - 23:4, 32:13, 37:10, 45:13
**favored** [1] - 45:20
**fears** [1] - 51:11
**February** [2] - 37:20, 38:2
**Federal** [1] - 6:18
**few** [4] - 3:21, 13:9, 42:3, 49:10
**file** [1] - 53:19
**filed** [4] - 3:12, 22:16, 36:10, 36:20
**final** [5] - 13:17, 35:1, 47:6, 48:4, 50:17
**finally** [2] - 19:25, 50:2
**finish** [1] - 18:5
**fire** [5] - 5:10, 5:25, 6:2, 6:10, 6:12
**fired** [1] - 24:3
**firing** [1] - 39:13
**first** [12] - 3:15, 5:6, 13:10, 13:24, 14:4, 15:4, 17:9, 20:7, 29:6, 33:13, 41:4, 46:20
**fits** [1] - 10:24
**five** [1] - 12:16
**fixed** [1] - 12:4
**flagged** [1] - 23:2
**flagging** [1] - 33:2
**flip** [1] - 15:15
**floating** [1] - 15:7
**flow** [1] - 49:8
**flowing** [1] - 47:21
**focus** [2] - 4:1, 4:2
**focused** [2] - 24:18, 45:19, 53:25
**focuses** [1] - 15:11
**FOIA** [6] - 10:11, 10:13, 10:16, 10:23, 11:14, 11:15, 29:22
**folks** [1] - 36:18
**follow** [1] - 12:24
**following** [2] - 23:20, 50:17
**forcing** [1] - 32:15
**foregoing** [1] - 54:18
**forever** [1] - 30:17
**forth** [1] - 23:15
**forward** [1] - 32:18
**four** [2] - 37:11, 40:24
**fourth** [2] - 19:1, 50:2
**Fourth** [2] - 8:13, 28:4
**frankly** [1] - 47:23
**free** [1] - 15:7
**free-floating** [1] - 15:7
**Friday** [1] - 36:16

**front** [1] - 49:25
**fruition** [1] - 33:11
**fulfilling** [3] - 18:16, 18:24, 19:14
**Full** [2] - 38:19, 51:15
**function** [21] - 4:6, 12:18, 12:21, 17:15, 18:10, 21:21, 26:25, 27:9, 28:7, 28:9, 28:19, 35:7, 41:6, 41:13, 41:18, 43:2, 43:13, 43:20, 44:20, 47:1, 47:14
**functions** [10] - 7:7, 12:8, 18:14, 24:14, 24:16, 24:19, 27:15, 28:11, 47:2, 49:15
**fundamentally** [1] - 40:20
**funds** [1] - 33:19
**future** [1] - 51:7
**FVRA** [14] - 8:23, 8:24, 9:7, 11:15, 11:16, 11:21, 12:4, 26:4, 26:6, 26:16, 27:13, 30:11, 30:17, 32:5

**G**

**garden** [2] - 41:11, 41:22
**garden-variety** [2] - 41:11, 41:22
**general** [4] - 9:21, 15:9, 40:13, 45:3
**General** [2] - 4:8, 21:8
**generally** [4] - 9:21, 27:7, 36:6, 39:7
**genuinely** [3] - 39:25, 40:25, 43:23
**given** [3] - 3:21, 21:24
**glad** [2] - 4:16, 24:24
**goodness** [1] - 31:5
**Gor** [1] - 43:14
**gosh** [1] - 13:5
**Gospel** [2] - 38:19, 51:15
**governed** [1] - 25:24
**government** [25] - 3:14, 3:16, 4:1, 5:12, 5:14, 6:17, 6:24, 7:1, 15:22, 22:19, 23:4, 25:22, 32:14, 33:3, 35:16, 39:17, 39:20, 39:24, 40:14, 40:23, 45:4, 45:16, 46:3, 46:5, 46:19
**government's** [2] - 10:17, 35:3
**grant** [3] - 4:25, 44:22,

48:20
**granted** [2] - 37:1, 39:21
**granting** [1] - 38:8
**grapple** [2] - 7:10, 7:11
**great** [3] - 15:14, 38:24, 51:13
**greater** [2] - 22:19, 46:5
**Grundmann** [1] - 42:12
**guess** [3] - 13:13, 16:16, 17:20, 17:25, 52:23, 53:9, 53:16

**H**

**habits** [1] - 33:4
**half** [4] - 36:19, 49:5, 52:8
**handled** [1] - 36:6
**handles** [1] - 36:7
**hard** [1] - 33:4
**hardly** [1] - 13:17
**harm** [80] - 4:1, 12:10, 15:4, 15:5, 15:7, 15:11, 15:12, 15:14, 15:15, 15:21, 15:22, 16:5, 17:24, 17:25, 18:1, 18:3, 18:10, 19:13, 19:25, 20:1, 20:2, 20:4, 20:6, 20:7, 20:13, 21:2, 21:20, 22:19, 33:20, 35:2, 35:3, 35:12, 35:16, 35:17, 35:22, 35:23, 36:24, 37:9, 37:16, 37:23, 37:24, 38:5, 38:6, 38:7, 39:5, 40:21, 41:5, 41:19, 41:25, 42:8, 42:16, 43:12, 43:18, 43:19, 44:20, 45:22, 46:6, 46:14, 46:17, 46:18, 47:13, 47:15, 47:18, 47:21, 48:19, 48:22, 49:7, 50:3, 50:5, 50:10, 50:22, 51:24, 52:2, 52:6
**harmed** [1] - 48:9
**harms** [4] - 12:14, 15:19, 48:14, 49:12
**Harris** [2] - 20:5, 46:1
**hat** [1] - 33:8
**head** [1] - 20:9
**hear** [4] - 3:19, 4:3, 4:19, 54:10
**hearing** [2] - 36:13, 36:18

**held** [2] - 43:5, 54:19
**Henderson** [1] - 14:17
**hereby** [1] - 54:17
**herself** [2] - 31:12, 42:16
**high** [2] - 38:18, 39:3
**hire** [3] - 5:10, 5:25, 6:10
**hold** [5] - 14:4, 14:11, 46:13
**holding** [1] - 11:22
**holiday** [1] - 36:18
**Honor** [8] - 4:5, 22:15, 22:24, 26:6, 29:17, 32:12, 34:4, 54:7
**honorably** [1] - 13:3
**hope** [1] - 54:9
**horribles** [3] - 33:3, 33:6, 33:9
**housed** [2] - 21:14, 49:20
**Hulli** [1] - 37:4
**hypothetical** [2] - 32:2, 35:10

**I**

**identified** [1] - 43:19
**II** [2] - 27:25, 30:10
**Imagining** [1] - 26:22
**immediate** [4] - 36:7, 47:8, 48:1, 50:9
**imminent** [2] - 21:10, 52:2
**impact** [1] - 49:4
**impacts** [1] - 49:4
**implicates** [1] - 48:11
**implied** [1] - 46:15
**important** [3] - 11:23, 27:20, 43:1
**impression** [1] - 53:24
**improperly** [1] - 45:17
**Inc** [2] - 42:19, 43:8
**include** [4] - 9:1, 10:14, 32:23, 34:17
**included** [1] - 31:21
**includes** [1] - 34:15
**including** [1] - 18:21
**indeed** [3] - 44:21, 48:25, 54:10
**independence** [1] - 43:3
**independent** [5] - 26:14, 28:23, 34:13, 34:19, 42:11
**indisputable** [1] - 28:12
**individual** [3] - 15:5, 15:8, 39:9
**inextricably** [2] -

28:18, 50:11
**infer** [1] - 11:17
**inferior** [3] - 5:8, 5:9, 5:15
**information** [1] - 4:13
**injunction** [10] - 13:11, 37:6, 37:11, 44:23, 45:20, 50:15, 52:12, 52:14, 53:3, 53:8
**injunctions** [2] - 40:14, 45:3
**injunctive** [7] - 37:17, 38:8, 38:16, 42:18, 44:21, 52:5, 53:4
**injuries** [1] - 39:7
**injury** [17] - 38:15, 38:19, 38:23, 39:8, 39:14, 40:7, 40:12, 40:18, 44:9, 45:1, 45:12, 45:16, 45:19, 46:22, 46:23
**injury-focused** [1] - 45:19
**inserted** [1] - 21:8
**insofar** [1] - 18:1
**instances** [1] - 34:22
**institution** [7] - 12:15, 15:6, 15:7, 20:4, 21:15, 22:1, 30:22
**institutional** [4] - 20:1, 49:7, 50:3, 50:5
**instruction** [1] - 39:6
**insufficient** [1] - 38:12
**Intelligence** [1] - 47:8
**intended** [1] - 8:23
**intentionally** [1] - 26:2
**Inter** [1] - 8:2
**Intercollegiate** [5] - 8:2, 8:14, 11:20, 27:17, 43:7
**interest** [3] - 16:11, 33:18, 37:11
**interesting** [1] - 7:3
**internal** [1] - 39:22
**interpreted** [1] - 10:14
**intertwined** [2] - 28:18, 50:11
**intervenor** [1] - 20:19
**intervention** [3] - 12:13, 39:23, 49:12
**invariably** [1] - 34:21
**invoking** [1] - 45:4
**involving** [2] - 39:16, 42:10
**irrefutable** [1] - 9:4
**irrelevant** [1] - 23:10
**irreparable** [51] - 4:1, 12:10, 15:11, 19:13, 19:25, 35:2, 35:3,

35:12, 35:16, 35:17, 35:22, 35:23, 36:24, 37:9, 37:16, 37:23, 38:5, 38:6, 38:7, 38:12, 38:15, 38:19, 39:1, 39:5, 39:8, 39:14, 40:7, 40:12, 40:17, 40:21, 41:5, 41:18, 41:25, 42:8, 43:14, 43:18, 44:9, 44:20, 45:1, 45:15, 45:22, 46:14, 46:17, 46:22, 47:18, 48:22, 50:15, 50:22, 52:2
**irreparably** [1] - 48:9
**issue** [3] - 33:15, 47:3, 51:4
**issued** [3] - 19:1, 22:17, 45:25
**issues** [2] - 48:11, 53:13
**itself** [1] - 12:8

**J**

**Jackson** [2] - 14:9, 14:10
**job** [5] - 39:6, 39:13, 47:16, 51:2, 51:20
**joined** [1] - 49:3
**Jr** [1] - 3:8
**Judge** [12] - 14:9, 14:10, 14:17, 14:18, 14:19, 22:12, 38:2, 43:11, 43:16, 43:21, 43:25, 44:5, 50:23
**judge** [3] - 14:18, 53:12, 54:1
**judges** [1] - 8:16
**judgment** [2] - 22:19, 50:17
**judiciary** [1] - 49:13
**juncture** [1] - 23:10
**Justice** [2] - 4:10, 25:22
**Justice's** [1] - 32:10
**justify** [1] - 40:24

**K**

**Kean** [2] - 54:17, 54:22
**keeps** [1] - 21:13
**key** [1] - 38:25
**kind** [9] - 9:20, 13:11, 13:19, 14:25, 15:18, 15:21, 17:25, 40:12, 45:1

**L**

**laid** [2] - 10:6, 13:6
**largely** [1] - 12:17
**last** [8] - 12:16, 13:9, 13:10, 13:12, 16:4, 36:11, 45:24, 47:23
**latitude** [1] - 39:21
**law** [4] - 5:23, 29:19, 32:2, 32:25
**lawful** [1] - 5:4
**lawfully** [4] - 6:15, 12:11, 12:22, 41:7
**laws** [1] - 32:8
**lawsuit** [1] - 49:3
**layer** [1] - 43:19
**leadership** [1] - 21:9
**least** [14] - 11:13, 12:17, 15:6, 16:19, 17:16, 20:21, 21:4, 23:9, 31:4, 36:5, 40:11, 41:2, 46:17, 49:13
**leave** [1] - 23:17
**led** [1] - 46:4
**left** [1] - 51:21
**legal** [1] - 51:14
**legislation** [1] - 11:2
**legislative** [14] - 8:4, 8:21, 9:6, 9:24, 10:5, 11:20, 12:8, 18:14, 24:14, 25:10, 28:8, 34:16, 35:7, 47:2
**level** [2] - 15:4, 40:21
**Librarian** [37] - 4:9, 5:20, 6:4, 6:5, 6:11, 6:15, 12:7, 12:23, 17:11, 17:15, 17:16, 17:17, 17:22, 17:23, 18:7, 23:12, 23:14, 23:22, 24:2, 24:7, 24:22, 25:23, 26:2, 26:3, 26:14, 26:25, 27:4, 27:10, 27:14, 27:24, 28:12, 28:16, 28:21, 29:11, 31:10, 32:4, 41:7
**Library** [48] - 4:6, 4:12, 6:22, 7:6, 8:3, 8:14, 8:19, 9:1, 9:5, 9:24, 10:3, 10:12, 10:15, 10:24, 11:18, 11:19, 16:20, 20:1, 20:9, 20:11, 21:1, 21:2, 21:9, 21:13, 24:13, 24:15, 24:21, 26:22, 27:8, 27:12, 27:14, 29:2, 29:3, 29:20, 29:24, 30:5, 32:6, 34:17, 36:3,

43:2, 48:10, 48:16, 49:15, 49:20, 50:6, 50:11, 51:7
**library** [5] - 4:7, 9:14, 9:16, 16:23, 20:14
**likelihood** [2] - 49:7, 49:11
**likely** [8] - 37:7, 37:8, 38:3, 42:16, 46:21, 47:22, 48:22, 51:17
**limited** [4] - 36:20, 48:1, 49:5, 52:10
**limiting** [1] - 35:4
**line** [1] - 31:16
**lines** [1] - 51:11
**link** [1] - 42:8
**litigation** [1] - 22:25
**logically** [1] - 12:5
**look** [4] - 10:19, 13:5, 14:21, 14:25
**Look** [2] - 15:3, 15:19
**looping** [2] - 27:9, 27:10
**lose** [1] - 21:25
**loss** [6] - 39:6, 39:13, 41:17, 43:13, 47:1, 47:14
**lump** [1] - 9:20

**M**

**maintain** [3] - 5:3, 19:23, 36:1
**March** [3] - 42:14, 45:8, 46:2
**Matter** [1] - 3:4
**matter** [3] - 23:3, 25:14, 54:19
**Mayorkas** [1] - 37:4
**mean** [14] - 7:13, 16:18, 16:25, 17:6, 17:24, 25:3, 25:8, 29:3, 29:10, 30:24, 33:25, 45:12, 52:22, 53:9
**meaning** [2] - 12:4, 50:10
**meaningfully** [1] - 47:13
**means** [2] - 16:17, 17:5
**Med** [1] - 26:22
**members** [2] - 20:22, 49:19
**Memorial** [1] - 36:17
**mention** [1] - 35:5
**mentioned** [6] - 16:9, 21:4, 27:18, 38:17, 39:2, 49:9
**mentioning** [1] - 29:9

**merits** [9] - 4:2, 5:5, 13:17, 23:18, 32:22, 34:12, 37:8, 38:4, 50:18
**met** [2] - 32:9, 52:1
**might** [6] - 10:21, 11:3, 14:4, 20:24, 40:7, 53:18
**mighty** [1] - 23:1
**Millett** [1] - 14:18
**moment** [4] - 38:17, 39:2, 42:15, 44:12
**months** [1] - 13:9
**moreover** [1] - 49:3
**Moss** [1] - 38:2
**most** [2] - 11:13, 26:21
**mostly** [1] - 3:22
**motion** [12] - 3:11, 10:10, 22:7, 22:16, 36:9, 36:13, 36:17, 36:20, 36:22, 38:15, 52:6, 52:24
**move** [1] - 52:11
**moved** [1] - 25:18
**moving** [2] - 12:10, 32:18
**MR** [21] - 22:12, 22:15, 24:6, 25:5, 25:7, 25:17, 25:21, 26:11, 27:17, 29:16, 30:16, 30:23, 30:25, 31:9, 31:12, 32:1, 33:6, 33:9, 34:2, 34:4, 54:7
**MS** [39] - 4:5, 4:15, 4:18, 4:20, 5:14, 5:18, 6:3, 6:9, 7:14, 7:20, 7:24, 8:9, 8:12, 9:11, 9:19, 9:23, 10:9, 11:12, 13:24, 14:2, 14:8, 14:13, 14:15, 15:25, 16:9, 16:22, 17:3, 17:8, 18:3, 18:23, 19:22, 20:21, 22:9, 34:10, 34:24, 35:1, 35:18, 52:19, 54:4
**Mulvaney** [1] - 21:22
**Murray** [1] - 39:10
**must** [9] - 29:2, 37:7, 37:22, 38:23, 38:24, 39:25, 40:4, 40:11, 48:21

## N

**name** [1] - 4:6
**Natural** [1] - 42:19
**nature** [1] - 49:11

**nearly** [1] - 12:16
**need** [1] - 22:25
**needs** [2] - 30:8, 48:5
**neutral** [2] - 20:14, 35:15
**never** [4] - 19:21, 46:14, 52:23, 53:5, 53:16
**new** [1] - 52:21
**next** [6] - 6:14, 23:14, 37:24, 48:6, 51:24, 52:3
**none** [3] - 13:1, 14:21, 41:2
**nonpartisan** [1] - 21:6
**normal** [2] - 40:7, 44:9
**Note** [5] - 38:1, 39:11, 40:3, 40:10, 44:11
**noted** [2] - 44:25, 45:14, 50:14
**nothing** [4] - 27:20, 30:5, 30:6, 32:2
**notion** [1] - 34:1
**November** [1] - 50:21
**nub** [1] - 25:4
**number** [2] - 13:6, 13:7

## O

**obama** [1] - 37:12
**obligations** [1] - 19:15
**observe** [3] - 23:19, 24:17, 31:20
**obstacles** [2] - 18:16, 19:10
**obtain** [1] - 40:1
**obviously** [7] - 3:11, 17:23, 21:6, 25:9, 45:4, 53:7, 53:25
**Office** [11] - 16:20, 20:2, 21:14, 26:1, 26:13, 28:13, 33:20, 42:25, 48:17, 50:6, 51:19
**office** [9] - 26:1, 28:23, 30:17, 31:5, 32:16, 35:20, 35:24, 45:15, 45:17
**officer** [15] - 5:8, 5:9, 5:10, 5:16, 22:20, 22:22, 23:22, 27:24, 30:10, 42:10, 42:16, 45:17, 46:6, 46:8, 46:15
**officer's** [3] - 41:17, 46:14, 50:15
**officers** [1] - 6:20
**offices** [2] - 21:9, 28:18

**official** [6] - 24:23, 25:1, 25:3, 25:23, 25:24, 28:21
**officials** [1] - 4:10
**often** [1] - 34:19
**old** [2] - 33:4, 52:9
**one** [18] - 7:19, 10:19, 13:7, 13:10, 13:24, 14:2, 14:4, 25:14, 30:20, 31:1, 31:5, 37:7, 41:16, 44:21, 49:15, 51:21, 52:19, 53:19
**ongoing** [2] - 47:7, 47:21
**opening** [4] - 10:10, 18:19, 20:23, 34:15
**opens** [1] - 32:7
**operation** [1] - 51:5
**operations** [2] - 4:12, 28:13
**opinion** [2] - 27:20, 29:20
**OPM** [1] - 37:25
**opportunity** [7] - 3:14, 3:17, 22:6, 22:7, 34:7, 34:8, 36:15
**opposite** [1] - 30:3
**order** [13] - 3:2, 16:4, 16:9, 20:7, 22:17, 22:20, 32:15, 36:10, 36:16, 36:25, 45:25, 46:6, 46:11
**ordinarily** [1] - 48:11
**organic** [1] - 34:20
**organization** [3] - 11:5, 24:12, 43:22
**originally** [1] - 15:17
**otherwise** [2] - 5:23, 26:20
**ought** [1] - 5:6
**outside** [1] - 54:9
**outweighs** [1] - 43:10
**overcomes** [1] - 15:15
**overlay** [1] - 28:19
**override** [4] - 15:22, 31:3, 40:13, 45:2
**oversee** [1] - 12:7
**overseeing** [1] - 27:1
**overturning** [1] - 32:23
**own** [2] - 9:17, 39:22

## P

**p.m** [3] - 3:2, 52:13, 54:13
**Page** [8] - 34:14, 37:5, 38:1, 40:2, 42:13, 43:15, 47:5, 50:24

**Pages** [1] - 9:3
**panel** [2] - 14:6, 14:17
**paper** [1] - 3:17
**parade** [3] - 33:2, 33:6, 33:9
**parliamentarian** [4] - 35:5, 35:9, 35:20, 35:22
**part** [12] - 7:7, 8:15, 12:17, 19:2, 25:2, 25:10, 32:1, 34:20, 47:7, 48:4, 50:19, 53:9
**particular** [3] - 11:4, 24:17, 39:9
**particularly** [1] - 39:16
**parties** [7] - 4:19, 15:12, 23:17, 36:13, 52:12, 53:13, 54:11
**parts** [1] - 25:18
**party** [7] - 33:18, 37:1, 37:6, 38:11, 38:14, 42:17, 49:4
**passed** [1] - 10:20
**passing** [1] - 11:2
**pending** [1] - 37:17
**perform** [5] - 22:2, 22:22, 41:8, 46:9, 46:16
**performance** [1] - 24:19
**performing** [3] - 19:10, 28:16, 47:2
**performs** [2] - 12:8, 24:13, 27:14
**perhaps** [3] - 14:19, 38:5, 51:9
**period** [1] - 45:15
**Perlmutter** [27] - 3:4, 4:22, 5:1, 12:11, 12:14, 12:20, 13:2, 18:12, 21:16, 36:23, 38:3, 40:24, 41:10, 41:21, 42:6, 42:23, 45:25, 47:16, 48:8, 48:15, 48:25, 49:23, 50:8, 50:13, 52:1, 52:11
**Perlmutter's** [2] - 36:9, 46:20
**permanent** [1] - 37:17
**person** [8] - 6:2, 6:6, 15:12, 16:5, 16:11, 16:12, 20:9, 23:13
**personal** [2] - 44:3, 49:1
**personally** [1] - 50:4
**personnel** [4] - 39:24, 40:15, 40:23, 45:4
**persuasion** [1] - 37:3

**persuasive** [2] - 11:10, 28:3
**phrase** [1] - 16:17
**PI** [2] - 53:14, 54:11
**picked** [1] - 16:2
**picks** [1] - 47:18
**picture** [1] - 3:25
**place** [3] - 23:17, 32:4, 36:19
**plainly** [2] - 44:19, 50:14
**Plaintiff** [2] - 4:21, 36:9
**plaintiff** [42] - 3:6, 4:4, 15:10, 15:21, 17:9, 20:6, 20:19, 21:24, 22:16, 23:5, 34:8, 35:19, 35:25, 37:22, 39:3, 39:25, 41:4, 43:11, 43:17, 43:18, 44:3, 44:13, 44:16, 44:23, 44:25, 45:10, 45:14, 46:25, 47:6, 47:12, 47:20, 48:3, 48:21, 50:2, 50:10, 50:25, 51:2, 51:6, 52:18, 53:2, 53:10, 53:14
**plaintiff's** [4] - 18:10, 20:2, 23:19, 43:22
**plaintiffs** [7] - 3:25, 4:3, 23:2, 33:10, 34:7, 52:17, 53:24
**plans** [1] - 52:11
**plethora** [1] - 29:19
**plus** [1] - 45:22
**podium** [1] - 4:4
**point** [19] - 5:22, 7:1, 7:2, 9:3, 9:14, 11:23, 18:4, 18:5, 20:16, 20:21, 21:19, 25:9, 26:13, 28:25, 31:4, 34:13, 34:14, 35:1, 49:9
**pointed** [1] - 34:22
**points** [11] - 3:24, 7:5, 7:16, 7:17, 7:23, 10:11, 11:14, 23:10, 32:21, 34:8, 41:15
**policy** [1] - 32:17
**portion** [1] - 16:23
**pose** [1] - 21:10
**position** [18] - 6:6, 16:6, 16:12, 19:9, 22:25, 25:21, 26:3, 30:13, 31:2, 32:10, 42:24, 43:1, 44:23, 50:9, 50:16, 51:3, 51:7, 51:18
**possible** [2] - 3:15,

36:14
**posture** [1] - 13:14
**potential** [2] - 45:16, 51:7
**power** [12] - 8:8, 8:20, 8:21, 12:2, 16:6, 16:15, 16:24, 17:5, 17:11, 17:16, 22:21, 46:7
**powers** [6] - 8:4, 8:5, 48:11, 48:14, 49:8, 49:11
**practice** [2] - 3:13, 36:12
**precedent** [5] - 5:21, 13:16, 26:19, 26:21, 32:23
**precludes** [1] - 32:3
**predicts** [2] - 48:15
**prejudice** [3] - 52:21, 52:25, 53:18
**preliminary** [20] - 4:25, 15:11, 37:6, 37:9, 37:16, 39:23, 40:14, 42:18, 44:21, 45:3, 47:4, 48:17, 48:21, 48:23, 52:5, 52:11, 52:14, 53:3, 53:7
**prepared** [1] - 36:8
**prerogatives** [2] - 23:7, 32:17
**present** [3] - 3:23, 42:21, 48:12
**presented** [1] - 33:18
**presenting** [1] - 37:15
**presents** [1] - 40:25
**preserving** [1] - 37:15
**President** [26] - 5:24, 6:3, 6:12, 6:14, 6:20, 12:6, 16:10, 17:17, 18:6, 20:8, 23:6, 23:11, 23:24, 24:3, 24:23, 25:1, 30:9, 30:13, 31:2, 31:18, 31:23, 32:3, 32:5, 32:16, 35:8, 35:19
**President's** [5] - 4:7, 6:7, 20:8, 42:9, 48:10
**prevent** [1] - 19:14
**prevented** [2] - 18:16, 47:2
**previous** [1] - 11:14
**previously** [1] - 47:17
**principal** [2] - 5:10, 42:10
**principally** [1] - 6:18
**principle** [1] - 35:4
**problem** [1] - 50:25

**problems** [1] - 47:11
**procedure** [1] - 28:11
**proceed** [2] - 3:19, 53:1
**proceedings** [2] - 37:16, 54:19
**PROCEEDINGS** [1] - 3:1
**process** [3] - 12:9, 20:10, 47:8
**promptly** [1] - 33:24
**promulgate** [1] - 27:5
**promulgated** [1] - 31:10
**promulgates** [1] - 17:14
**properly** [2] - 7:7, 12:12
**propose** [1] - 27:4
**proposed** [1] - 52:13
**proposition** [1] - 15:9
**provided** [1] - 36:21
**providing** [1] - 36:14
**provision** [2] - 9:25, 34:15
**provisions** [1] - 10:2
**public** [3] - 22:3, 37:11, 51:9
**purported** [1] - 4:7
**purpose** [3] - 8:16, 9:6, 37:14
**purposes** [7] - 10:20, 10:22, 16:20, 29:21, 29:22, 44:20
**pursue** [2] - 32:17, 52:15
**purview** [1] - 23:8
**put** [6] - 13:19, 20:18, 26:2, 43:22, 52:23, 53:20
**puts** [1] - 32:4
**putting** [1] - 42:15

### Q

**questions** [3] - 3:21, 22:5, 34:5
**quick** [1] - 3:14
**quite** [1] - 16:17
**quo** [4] - 5:3, 19:23, 36:1, 37:15
**quote** [2] - 22:18, 28:6, 40:9, 40:17, 43:25, 44:10, 44:11
**quotes** [2] - 31:20, 38:22

### R

**raining** [1] - 54:9
**raise** [1] - 7:2

**raises** [1] - 49:12
**rather** [1] - 28:6
**read** [2] - 16:4, 30:2
**Reagan** [1] - 50:20
**real** [1] - 33:18
**really** [6] - 13:10, 26:4, 33:15, 41:24, 53:6, 53:25
**reams** [1] - 4:12
**reason** [8] - 6:9, 11:3, 11:6, 18:13, 19:22, 32:11, 35:25, 53:9
**reasonably** [1] - 36:13
**reasoned** [2] - 46:3, 46:5
**reasoning** [1] - 42:5
**reasons** [4] - 40:24, 46:20, 47:17, 51:25
**recent** [4] - 13:6, 41:15, 42:1, 43:10
**recently** [2] - 26:21, 44:17
**recognized** [2] - 28:20, 39:19
**record** [7] - 36:20, 39:3, 48:1, 49:5, 49:18, 50:25, 52:10
**referenced** [1] - 50:23
**references** [2] - 29:1, 47:21
**referred** [1] - 9:23
**referring** [1] - 13:25
**reflects** [2] - 12:18
**Reform** [1] - 6:18
**refuses** [1] - 23:13
**regarding** [1] - 17:18
**regardless** [2] - 10:24, 41:10
**Register** [28] - 5:2, 5:8, 5:15, 5:25, 6:10, 12:11, 12:21, 16:14, 17:9, 17:13, 18:12, 18:15, 19:4, 22:1, 22:3, 23:13, 24:7, 24:9, 24:18, 26:24, 27:1, 27:3, 27:9, 28:17, 33:13, 36:2, 42:24, 51:18
**regulation** [1] - 30:20, 31:9
**regulations** [2] - 31:7, 31:19
**reinstate** [1] - 23:5
**reinstated** [1] - 50:17
**reinstatement** [2] - 47:9, 51:19
**related** [1] - 12:1
**relates** [1] - 38:6
**relationship** [1] - 22:4
**relevant** [1] - 51:14

**relief** [23] - 4:25, 15:11, 21:25, 36:1, 36:7, 37:2, 37:9, 37:17, 38:8, 38:16, 40:1, 42:18, 44:21, 46:23, 47:4, 48:1, 48:9, 48:17, 48:21, 48:23, 50:10, 52:6, 53:4
**relies** [1] - 6:18
**rely** [2] - 3:23, 43:16
**remain** [2] - 45:15, 45:17
**remains** [1] - 47:8
**remarked** [1] - 21:21
**remediation** [1] - 38:25
**remedied** [1] - 47:22
**remedy** [1] - 37:1
**remember** [4] - 13:14, 14:18, 17:1, 26:9
**removal** [5] - 35:14, 45:10, 45:11, 46:14, 50:14
**remove** [6] - 4:21, 5:4, 6:5, 23:13, 35:8, 35:20
**removed** [9] - 12:12, 17:17, 18:2, 19:9, 22:20, 22:21, 23:14, 46:6, 46:8
**removing** [2] - 24:8, 32:3
**reply** [5] - 9:4, 10:7, 18:19, 20:24, 41:19
**report** [10] - 18:22, 18:23, 19:1, 19:2, 47:7, 47:10, 47:21, 47:25, 48:4, 48:6
**Reporter** [1] - 4:14
**reputation** [1] - 20:13
**request** [1] - 31:14
**requests** [4] - 36:1, 36:7, 49:19, 49:22
**required** [5] - 12:13, 42:17, 48:19, 51:13
**requirement** [1] - 38:8
**requires** [1] - 27:23
**requiring** [1] - 36:16
**Research** [1] - 21:5
**resolution** [1] - 52:9
**resolve** [2] - 33:1, 53:8
**resolved** [1] - 33:11
**resolving** [1] - 28:9
**Resources** [1] - 42:19
**respect** [1] - 23:9
**respectfully** [3] - 7:21, 35:25, 41:25
**respond** [3] - 3:14, 3:17, 22:7, 22:8,

**25:12, 25:13, 30:23, 31:4, 34:8, 36:15, 36:17
**response** [1] - 29:5
**rest** [2] - 12:17
**restoring** [1] - 44:23
**restraining** [2] - 36:10, 36:25
**resultant** [2] - 40:6, 44:8
**resulted** [1] - 18:2
**results** [1] - 41:24
**return** [2] - 44:4, 50:8
**reviewing** [1] - 28:11
**risk** [5] - 22:19, 44:2, 44:3, 46:6, 46:18
**RMR** [2] - 54:17, 54:22
**role** [6] - 12:15, 12:22, 18:10, 19:12, 22:1, 41:6
**route** [1] - 53:21
**Royalty** [1] - 43:8
**rule** [7] - 12:1, 36:8, 39:20, 41:11, 41:12, 41:23, 41:24
**ruled** [2] - 8:14, 44:18
**rules** [3] - 17:14, 17:16, 27:4
**ruling** [1] - 53:12
**run** [1] - 32:6

### S

**safeguarding** [1] - 21:17
**Sampson** [12] - 15:2, 15:3, 15:17, 39:10, 39:19, 40:2, 40:9, 40:16, 41:10, 43:24, 44:10, 45:5
**satisfied** [2] - 39:3, 41:1
**saw** [1] - 34:22
**scenario** [1] - 35:14
**schedule** [2] - 52:14, 54:11
**scheme** [1] - 42:9
**SCHER** [39] - 4:5, 4:15, 4:18, 4:20, 5:14, 5:18, 6:3, 6:9, 7:14, 7:20, 7:24, 8:9, 8:12, 9:11, 9:19, 9:23, 10:9, 11:12, 13:24, 14:2, 14:8, 14:13, 14:15, 15:25, 16:9, 16:22, 17:3, 17:8, 18:3, 18:23, 19:22, 20:21, 22:9, 34:10, 34:24, 35:1, 35:18, 52:19, 54:4

**Scher** [1] - 3:7
**scope** [1] - 11:1
**second** [3] - 14:2, 25:2, 46:25
**Section** [1] - 27:25
**section** [1] - 19:25
**see** [2] - 22:13, 41:2
**seek** [1] - 53:2
**seeking** [2] - 37:2, 37:6
**seeks** [1] - 42:17
**seem** [2] - 42:8, 49:10
**seize** [1] - 20:25
**seized** [1] - 21:7
**Senate** [9] - 23:23, 23:25, 24:7, 35:5, 35:8, 35:20, 35:22, 42:10, 42:23
**Senate-confirmed** [2] - 24:7, 42:10
**sense** [4] - 7:18, 10:21, 10:22, 32:21
**separate** [4] - 9:8, 18:4, 33:21
**separately** [2] - 28:7, 34:18
**separation** [4] - 48:11, 48:14, 49:8, 49:11
**separation-of-powers** [4] - 48:11, 48:14, 49:8, 49:11
**seriatim** [1] - 32:3
**serious** [1] - 12:14
**served** [3] - 12:15, 13:2, 19:21
**serves** [2] - 20:9, 24:15
**service** [2] - 5:3, 13:4
**Service** [1] - 21:5
**serving** [4] - 5:1, 19:7, 28:18, 36:2
**set** [3] - 8:24, 38:18, 51:4
**several** [3] - 28:11, 41:15, 47:11
**severely** [1] - 39:8
**severity** [1] - 49:7
**shall** [1] - 27:4
**Shira** [2] - 3:4, 4:22
**short** [1] - 45:15
**show** [9] - 15:4, 15:5, 15:14, 35:23, 37:22, 39:25, 40:4, 48:4, 48:5
**showing** [11] - 35:21, 37:2, 38:11, 38:12, 38:13, 38:14, 40:4, 40:11, 44:13, 45:1, 52:1
**shown** [5] - 10:12,

36:23, 40:22, 43:18, 51:16
**side** [8] - 3:19, 7:10, 7:12, 7:19, 11:10, 13:20, 15:15, 19:18
**sides** [2] - 7:5, 20:23
**signal** [2] - 16:2, 16:3
**significant** [1] - 7:11
**similar** [1] - 44:13
**similarly** [3] - 43:1, 45:24, 48:14
**simply** [2] - 21:22, 29:8
**Simpson** [2] - 15:2, 41:9
**sits** [2] - 9:7, 30:17
**situation** [7] - 40:1, 40:7, 41:1, 42:7, 42:21, 43:24, 44:9
**six** [3] - 22:15, 22:16, 22:24
**skeptical** [1] - 44:19
**slice** [1] - 16:21
**slightly** [1] - 53:11
**sole** [1] - 12:6
**solely** [1] - 43:17
**someone** [3] - 23:5, 32:16, 47:18
**soon** [1] - 51:2
**Sorry** [1] - 4:15
**sorry** [3] - 36:18, 38:13, 41:9
**sort** [12] - 7:6, 9:15, 13:17, 14:21, 18:4, 18:8, 18:20, 19:25, 20:4, 20:13, 40:18, 50:22
**sought** [2] - 40:1, 48:21
**special** [1] - 44:24
**specific** [6] - 7:24, 8:16, 8:24, 10:20, 26:18, 27:9
**specifically** [6] - 20:6, 28:20, 29:25, 30:7, 47:6
**speculative** [2] - 51:12, 51:23
**speed** [2] - 3:21, 53:8
**sprinkling** [1] - 7:4
**squarely** [1] - 43:23
**stage** [1] - 36:23
**stake** [1] - 43:22
**standard** [4] - 38:18, 39:3, 41:2, 51:14
**Stanley** [1] - 3:8
**start** [1] - 5:6
**starters** [1] - 47:12
**starts** [1] - 39:5
**State** [1] - 37:19

**statements** [1] - 20:22
**States** [3] - 23:22, 25:22, 27:24
**status** [4] - 5:3, 19:23, 36:1, 37:15
**statute** [8] - 4:23, 5:23, 11:5, 18:14, 21:5, 27:3, 34:20, 51:5
**statutes** [4] - 10:20, 29:7, 29:8, 30:1
**statutorily** [1] - 45:10
**statutory** [21] - 6:19, 9:11, 12:18, 12:21, 18:9, 18:17, 18:24, 19:14, 22:22, 29:15, 31:15, 41:6, 41:12, 41:18, 42:9, 43:13, 44:19, 46:9, 46:16, 47:1, 47:14
**stay** [3] - 14:7, 22:18, 45:20
**stayed** [2] - 44:22, 45:24
**staying** [1] - 13:10
**steps** [1] - 23:14
**still** [2] - 41:22, 53:3
**stopped** [1] - 54:9
**strict** [1] - 9:11
**striking** [2] - 20:15, 49:9
**strongly** [2] - 39:24, 46:15
**studies** [1] - 18:24
**subject** [4] - 10:13, 27:25, 28:21, 32:5
**submit** [2] - 26:17, 29:17, 52:13
**substantial** [1] - 45:18
**succeed** [2] - 37:7, 38:4
**success** [1] - 32:22
**succession** [1] - 31:16
**suffer** [9] - 36:23, 37:8, 37:23, 42:16, 46:21, 48:17, 48:22, 52:2, 52:4
**suffers** [1] - 41:4
**sufficient** [5] - 38:11, 38:12, 38:14, 40:12, 45:1
**suggest** [3] - 13:2, 16:14, 35:17
**suggesting** [2] - 35:13, 35:14
**suggestion** [1] - 33:22
**suggests** [1] - 5:23
**suing** [1] - 49:1
**supervisory** [3] - 6:4,

17:12, 18:6
**support** [5] - 6:17, 39:8, 48:2, 50:13, 51:1
**supported** [1] - 4:22
**supporting** [1] - 31:15
**supposed** [1] - 15:23
**Supreme** [16] - 5:21, 13:12, 15:16, 15:18, 16:4, 22:17, 32:13, 39:6, 39:11, 39:19, 42:3, 42:20, 44:16, 45:5, 45:24, 46:11
**surrounding** [3] - 40:5, 44:6, 44:7
**survival** [1] - 43:21
**suspenders** [1] - 29:18
**system** [1] - 21:15
**Systems** [2] - 27:18, 43:8

**T**

**takeover** [2] - 4:11, 33:16
**talks** [3] - 16:19, 40:17
**task** [2] - 19:2, 47:19
**tasked** [2] - 18:13, 21:16
**Tech** [1] - 26:22
**temporarily** [2] - 6:19, 6:20
**temporary** [3] - 36:10, 36:25, 38:8
**tends** [1] - 53:10
**term** [6] - 7:25, 9:21, 10:25, 11:24, 12:1, 35:15
**terminate** [1] - 50:16
**terms** [1] - 17:24
**THE** [60] - 3:9, 4:16, 4:19, 5:12, 5:17, 6:1, 6:8, 6:25, 7:15, 7:22, 8:6, 8:11, 9:10, 9:13, 9:20, 10:8, 10:17, 12:24, 14:1, 14:3, 14:9, 14:14, 14:16, 16:8, 16:16, 16:23, 17:4, 17:19, 18:22, 19:16, 20:15, 22:6, 22:10, 22:14, 24:5, 24:25, 25:6, 25:8, 25:20, 26:9, 27:16, 29:13, 30:15, 30:18, 30:24, 31:1, 31:11, 31:25, 33:5, 33:7, 33:25, 34:3, 34:6, 34:21, 34:25, 35:13, 36:4, 52:22, 54:5,

54:8
**theoretical** [1] - 38:24
**theory** [8] - 13:8, 13:21, 14:22, 35:3, 35:21, 43:17, 44:20, 47:15
**therefore** [2] - 28:23, 29:23
**they've** [2] - 12:3
**thinking** [1] - 35:10
**thinks** [2] - 19:18, 53:11
**third** [3] - 11:12, 48:8
**threat** [2] - 19:3, 19:13, 21:10
**three** [1] - 37:10
**threshold** [1] - 38:7
**throughout** [1] - 29:10
**Thursday** [1] - 36:11
**tie** [2] - 20:6, 21:20
**tied** [1] - 20:2
**timeline** [1] - 48:4
**tips** [1] - 37:10
**Title** [6] - 8:25, 9:6, 9:25, 28:25, 29:1, 29:9
**titled** [1] - 54:19
**today** [5] - 32:11, 40:19, 43:5, 49:21, 52:18
**Todd** [2] - 3:4, 4:8
**together** [3] - 40:5, 44:6, 44:7
**tomorrow** [3] - 52:13, 53:19, 54:10
**top** [2] - 27:6, 43:19
**traditionally** [1] - 39:21
**transcript** [1] - 54:18
**transcription** [1] - 54:18
**transparency** [1] - 31:22
**treat** [1] - 24:11
**treating** [1] - 26:24
**treatise** [1] - 26:6
**trick** [1] - 41:3
**tries** [1] - 50:3
**TRO** [12] - 3:12, 3:22, 36:24, 37:7, 37:15, 37:23, 47:22, 52:3, 52:10, 52:24, 53:2, 53:25
**TROs** [1] - 36:6
**true** [2] - 39:16, 54:18
**Trump** [7] - 19:6, 21:19, 39:15, 39:18, 42:12, 46:10, 50:14
**trust** [2] - 22:3, 51:9
**trying** [2] - 7:18, 35:15

**turning** [2] - 23:18, 54:1
**two** [11] - 4:10, 13:22, 21:8, 28:17, 32:1, 36:19, 37:8, 49:5, 52:3, 52:7, 52:8
**twofold** [2] - 29:5, 30:25
**typical** [2] - 39:12, 53:1
**typically** [2] - 46:16, 52:24

## U

**U.S** [8] - 29:10, 37:19, 39:10, 39:22, 42:20, 44:11, 48:24, 50:6
**ultimately** [1] - 7:18
**ultra** [1] - 45:11
**unable** [8] - 22:2, 22:22, 46:8, 46:16, 47:9, 47:24, 50:8
**uncontroversial** [1] - 5:7
**undecided** [1] - 32:25
**undefined** [1] - 51:8
**under** [3] - 26:15, 30:10, 35:21
**underlying** [1] - 37:14
**understandably** [1] - 46:4
**understood** [4] - 11:17, 11:18, 29:3, 30:5
**unicorn** [3] - 7:6, 24:11, 29:20
**unilaterally** [1] - 5:25
**uniquely** [1] - 20:12
**United** [3] - 23:22, 25:21, 27:24
**unlawful** [6] - 4:9, 6:13, 18:17, 21:11, 21:12, 50:7
**unlawfully** [1] - 20:8
**unlike** [2] - 13:15, 43:1
**unprecedented** [1] - 4:11
**unreasonable** [1] - 10:19
**unreviewable** [1] - 12:6
**up** [12] - 4:4, 12:24, 16:2, 32:7, 40:9, 43:25, 44:11, 47:18, 52:15, 53:10, 53:23
**urgent** [1] - 12:13
**useful** [1] - 11:13

## V

**Vacancies** [1] - 6:18
**Vaccine** [1] - 37:18
**vague** [1] - 51:12
**validity** [1] - 28:9
**variety** [2] - 41:11, 41:22
**various** [1] - 9:15
**vest** [1] - 5:9
**vested** [2] - 5:19, 6:11
**vindicate** [1] - 50:1
**vires** [1] - 45:11
**virtue** [1] - 26:25
**vital** [1] - 22:4

## W

**Walker** [1] - 14:19
**wants** [3] - 11:3, 29:7, 29:8
**warrant** [4] - 46:23, 49:12, 52:5
**warranted** [1] - 53:4
**week** [4] - 13:10, 13:12, 16:5, 45:24
**weekend** [1] - 3:12
**weeks** [1] - 52:3
**weigh** [2] - 23:4, 32:13
**weighed** [1] - 44:17
**weighs** [1] - 45:13
**well-established** [1] - 39:20
**Westlaw** [9] - 37:19, 38:1, 42:13, 43:15, 45:7, 46:1, 46:10, 50:20, 50:24
**whereas** [1] - 45:16
**whit** [1] - 25:14
**whole** [2] - 25:4, 32:7
**widest** [1] - 39:21
**Wilcox** [9] - 14:2, 16:4, 18:5, 18:9, 22:17, 32:19, 32:20, 32:21, 46:10
**win** [1] - 51:19
**Winter** [2] - 42:19, 48:24
**wish** [1] - 52:15
**wishes** [1] - 6:7
**Woodward** [3] - 3:8, 22:11, 33:8
**WOODWARD** [21] - 22:12, 22:15, 24:6, 25:5, 25:7, 25:17, 25:21, 26:11, 27:17, 29:16, 30:16, 30:23, 30:25, 31:9, 31:12, 32:1, 33:6, 33:9, 34:2, 34:4, 54:7

**word** [4] - 17:1, 24:11, 27:21, 38:25
**words** [2] - 11:1, 44:2
**worms** [1] - 32:7
**worst** [1] - 45:14
**write** [2] - 26:10, 29:8
**writes** [1] - 29:7
**writing** [1] - 36:15
**wrongfully** [2] - 22:21, 46:8
**wrote** [1] - 26:6

## Y

**years** [2] - 11:21, 12:16