# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHIRA PERLMUTTER,

    *Plaintiff,*

v.

TODD BLANCHE *et al.*,

    *Defendants*.

Case No. 25-cv-01659-TJK

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

FACTUAL BACKGROUND .................................................................................................2

    I.    The Purported Removal of Plaintiff as Register of Copyrights .............................2

    II.    The Register of Copyrights and U.S. Copyright Office ..................................3

LEGAL STANDARD .............................................................................................................7

ARGUMENT ..........................................................................................................................7

    I.    Plaintiff Is Likely to Succeed on the Merits .......................................................7

        A.    The Register of Copyrights can be appointed and removed only by the Librarian of Congress .............................................................8

        B.    Mr. Blanche does not lawfully hold the position of acting Librarian of Congress ............................................................11

            1.    The FVRA does not authorize Mr. Blanche's purported appointment ................................................11

            2.    The statutory scheme makes clear that the Library of Congress is not an "Executive agency"........................................13

            3.    Congressional intent makes clear that the Library of Congress is not an "Executive agency"........................................17

            4.    Precedent confirms that the Library of Congress is not an "Executive Agency" ......................................18

            5.    The Constitution does not authorize Mr. Blanche's purported appointment ................................................20

    II.    Plaintiff Will Likely Suffer Immediate and Irreparable Harm ...........................22

        A.    *Sampson* contemplates preliminary injunctive relief for the termination of a government employee in an "extraordinary situation".......................................................22

        B.    Plaintiff's removal is precisely the type of "extraordinary situation" contemplated by *Sampson*..........................................24

            1.    Plaintiff has a "statutory right to function" as Register of Copyrights ................................................25

2.      Plaintiff remains Register of Copyrights and is therefore required to fulfill her statutory duties ............................................28

3.      Irreparable harm to the Library of Congress and Copyright Office will frustrate Plaintiff's ability to resume her duties ..........30

III.    The Equitable Factors Strongly Favor Preliminary Relief ....................................33

CONCLUSION ...............................................................................................................34

## TABLE OF AUTHORITIES

### <u>Cases</u>

*Aviel v. Gor*, No. 25-5105, 2025 WL 1600446 (D.C. Cir. June 5, 2025).................................*passim*

*Aviel v. Gor*, No. 25-cv-778, 2025 WL 1009035 (D.D.C. Apr. 4, 2025)...............................*passim*

*Benedict v. Library of Congress*, 1997 U.S. Dist. LEXIS 16158 (D.D.C. Oct. 8, 1997).............18

*Berry v. Reagan*, No. 83-cv-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983) ...........................24, 25

*Buckley v. Valeo,* 424 U.S. 1 (1976)........................................................................................20

*C.G.B. v. Wolf*, 464 F. Supp. 3d 174 (D.D.C. 2020) ...................................................................34

*Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716 (D.C. Cir. 2022).......................................7

*Davis v. Billington*, 76 F. Supp. 3d 59 (D.D.C. 2014) ..................................................................30

*Dellinger v. Bessent*, 766 F. Supp 3d 57 (D.D.C. 2025) ...............................................................24

*Dellinger v. Bessent*, No. 25-5052, 2025 WL 887518 (D.C. Cir. Mar. 10, 2025) ........................27

*Does 1–26 v. Musk*, No. CV 25-0462-TDC, 2025 WL 840574 (D. Md. Mar. 18, 2025) .............24

*Dolan v. U.S. Postal Serv.*, 546 U.S. 481 (2006) .............................................................14, 17, 18

*Edmond v. U.S.*, 520 U.S. 651 (1997) .......................................................................................11

*Eltra Corp. v. Ringer*, 579 F.2d 294 (4th Cir. 1978).......................................................................8

*English v. Trump*, 279 F. Supp. 3d 307 (D.D.C. 2018).................................................................30

*Ethnic Employees of Library of Congress v. Boorstin*, 751 F.2d 1405 (D.C. Cir. 1985).............18

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010) ......................8, 9, 11, 20

*Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868 (1991) ....................................................12

*Grundmann v. Trump*, No. 25-cv-425 (SLS), 2025 WL 782665 (D.D.C. Mar. 12, 2025)....................................................................................................................23, 24, 33

*Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995) ............................................................................16

*Haddon v. Walters*, 43 F.3d 1488 (D.C. Cir. 1995) ...............................................................14, 15

*Harris v. Bessent*, No. 25-cv-412 (RC), 2025 WL 521027 (D.D.C. Feb. 18, 2025).............*passim*

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.,* 684 F.3d 1332 (D.C. Cir. 2012).....................................................................................................................8, 19, 20

*Jama v. Immigr. & Customs Enf't*, 543 U.S. 335 (2005) ................................................10

*Judd v. Billington*, 863 F.2d 103 (D.C. Cir. 1988) .........................................................19

*Karem v. Trump*, 404 F. Supp. 3d 203 (D.D.C. 2019) ....................................................26

*Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136 (1980) ...........18

*League of United Latin Am. Citizens v. Exec. Off. of the President*, No. CV 25-0946
   (CKK), 2025 WL 1187730 (D.D.C. Apr. 24, 2025) .......................................................7

*League of Women Voters of U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016)...............7, 33

*LeBlanc v. U.S. Priv. & C.L. Oversight Bd.*, No. CV 25-542 (RBW), 2025 WL
   1454010 (D.D.C. May 21, 2025)....................................................................23, 25, 31

*Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995) .......................................13

*Li v. Blinken*, No. 22-5266, 2023 WL 4044487 (D.C. Cir. June 16, 2023)....................26

*Lucia v. SEC*, 585 U.S. 237 (2018) ..............................................................................21

*Mackie v. Bush*, 809 F. Supp. 144 (D.D.C. 1993) .......................................................25

*Mistretta v. U.S.*, 488 U.S. 361 (1989) ........................................................................13

*N.L.R.B. v. Noel Canning*, 573 U.S. 513 (2014) ..........................................................21

*Nat'l Lab. Rels. Bd. v. SW Gen., Inc.*, 580 U.S. 288 (2017)...........................11, 12, 17

*Nat'l R.R. Passenger Corp. (Amtrak) v. Sublease Int. Obtained Pursuant to an
   Assignment and Assumption of Leasehold Int. Made as of Jan. 25, 2007*, Case. No.
   22-cv-1043 2024 WL 3443596 (D.D.C. July 15, 2024)..................................................7

*Nat'l Treasury Emps. Union v. Reagan*, 663 F.2d 239 (D.C. Cir. 1981) ................7, 8, 9

*Nken v. Holder*, 556 U.S. 418 (2009) .............................................................................7

*Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500 (D.C. Cir. 2016) ....7

*Sampson v. Murray*, 415 U.S. 61 (1974)..................................................................22, 23

*Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020)...........................26

*Thaler v. Perlmutter*, 130 F.4th 1039 (D.C. Cir. 2025)....................................................3

*Trump v. Wilcox*, 145 S. Ct. 1415 (2025) .....................................................................26

*Washington Legal Found. v. U.S. Sent'g Comm'n*, 17 F.3d 1446 (D.C. Cir. 1994) ......18

*Wilcox v. Trump*, No. 25-cv-334, 2025 WL 720914 (D.D.C. Mar. 6, 2025) ...........................24, 25

*Williams v. Phillips*, 360 F. Supp. 1363 (D.D.C. 1973) ....................................................................21

## **Statutes**

17 U.S.C. § 114 (1976) ...............................................................................................................5

17 U.S.C. § 115 ..................................................................................................................6, 28

17 U.S.C. § 1502 ...........................................................................................................................6

17 U.S.C. § 1506 .................................................................................................................6, 28

17 U.S.C. § 205 .............................................................................................................................6

17 U.S.C. § 407 ..........................................................................................................................31

17 U.S.C. § 410 ...................................................................................................................5, 28, 29

17 U.S.C. § 411 .............................................................................................................................5

17 U.S.C. § 701 ..................................................................................................................*passim*

17 U.S.C. § 702 ..........................................................................................................................28

17 U.S.C. § 705 .............................................................................................................................6

17 U.S.C. § 707 .............................................................................................................................4

17 U.S.C. § 802 ....................................................................................................................6, 28

2 U.S.C. § 136 ....................................................................................................................2, 8, 12

2 U.S.C. § 166 ............................................................................................................................31

2 U.S.C. § 181 ...................................................................................................................14, 17

2 U.S.C. Ch. 5 .............................................................................................................................17

3 U.S.C. § 112 ............................................................................................................................15

39 U.S.C. § 201 ..........................................................................................................................17

42 U.S.C. § 2286 ........................................................................................................................17

44 U.S.C. § 2102 ........................................................................................................................16

5 U.S.C. § 101 ............................................................................................................................14

5 U.S.C. § 103 ....................................................................................................................14

5 U.S.C. § 104 ....................................................................................................................14

5 U.S.C. § 105 ..........................................................................................................13, 14, 16

5 U.S.C. § 1101 ..................................................................................................................17

5 U.S.C. § 3102 ..................................................................................................................15

5 U.S.C. § 3345 ..................................................................................................................12

5 U.S.C. § 3347 ..................................................................................................................12

5 U.S.C. § 3371 ..................................................................................................................15

5 U.S.C. § 3401 ..................................................................................................................15

5 U.S.C. § 4101 ..................................................................................................................15

5 U.S.C. § 4501 ..................................................................................................................15

5 U.S.C. § 5102 ..................................................................................................................15

5 U.S.C. § 5521 ..................................................................................................................15

5 U.S.C. § 5541 ..................................................................................................................15

5 U.S.C. § 5584 ..................................................................................................................15

5 U.S.C. § 5595 ..................................................................................................................15

5 U.S.C. § 5921 ..................................................................................................................15

5 U.S.C. § 5948 ............................................................................................................15, 16

5 U.S.C. § 6121 ..................................................................................................................15

5 U.S.C., ch. 5 ....................................................................................................................17

Act of May 31, 1790, ch. 15, § 1, 1 Stat. 124 ....................................................................4

Copyright Act of 1870, 16 Stat. 198 ..................................................................................4

Copyright Act of 1897, 29 Stat. 481 ..................................................................................4

Federal Vacancies Reform Act of 1998 ("FVRA"), 5 U.S.C. § 3345 *et seq* ................11

Pub. L. 103-110 (Oct. 21, 1993), 107 Stat. 1043 ..............................................................14

Pub. L. 115-414 (Jan. 3, 2019), 132 Stat. 5430 ..................................................................14

The Register of Copyrights Selection and Accountability Act of 2017, H.R. 1695, 115th Cong. (2017) ..............................................................................................................................9

## **Other Authorities**

"History of U.S. Copyright Office," U.S. Copyright Office, https://www.copyright.gov/history/copyright-exhibit/history-co/ .............................................5

Group Registration for Two-Dimensional Artwork, https://www.copyright.gov/rulemaking/gr2d/ ..........................................................................6

H.R. Rpt. No. 115-91 (2017) ..............................................................................................9

Hearings on H.R. 2223 Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Comm. on the Judiciary, 94th Cong., 1st Sess. at 1823 (1975) .......................................................................................................5

Ivan Moreno, *Unsigned Copyright Certificates Raise Validity Questions*, Law360 (June 3, 2025), https://www.law360.com/articles/2348985/unsigned-copyright-certificates-raise-validity-questions .......................................................................29

*Jurisdiction*, H. Subcomm. on Leg. Branch Appropriations, https://appropriations.house.gov/subcommittees/legislative-branch-0/jurisdiction .................15

Katherine Tully-McManus, GOP Leaders Draw the Line at Trump's Library of Congress Takeover, *Politico* (May 14, 2025), https://perma.cc/236C-QXRM ..........................3

*Leadership*, U.S. Copyright Off., https://www.copyright.gov/about/leadership ...........................28

Letter from Reps. Joseph D. Morelle, Rosa L. DeLauro, Adriano Espaillat, Terri A. Sewell, Norma J. Torres, and Julie E. Johnson, to Kimberly Benoit, Libr. of Cong. Inspector Gen. (May 12, 2025), https://democrats-cha.house.gov/sites/evo-subsites/democrats-cha.house.gov/files/evo-media-document/5.12.25-letter-to-loc-ig-re-investigation.pdf .........................................................................................32

Maya C. Miller & Devlin Barrett, Trump Installs Top Justice Dept. Official at Library of Congress, Prompting a Standoff, *N.Y. Times* (May 12, 2025), https://perma.cc/9L4G-8ZMU ...........................................................................3

*Register of Copyrights Selection and Accountability Act: Hearing on H.R. 1695 Before the S. Comm. on Rules and Admin.*, 115th Cong. 3 (2018) .............................................4

*Register of Copyrights Selection and Accountability Act: Hearing on H.R. 1695 Before the S. Comm. on Rules and Admin.*, 115th Cong. 6 (2018) (statement of Prof. Jonathan Band) ......................................................................................10

S. Rep. 105-250 (1998) ......................................................................................12

S. Rep. 118-192 (2024) ....................................................................................................15

Tim Balk, *Trump Administration Fires Librarian of Congress*, *N.Y. Times* (May 8, 2025), https://perma.cc/865K-GS9D ..............................................................................2

## **Constitution**

U.S. Const. art. I, § 8, cl. 8 ..............................................................................................3

U.S. Const. art. II, § 2, cl. 2 ..............................................................................8, 10, 20

## **Regulations**

36 C.F.R. § 703.5..........................................................................................................32

## INTRODUCTION

Plaintiff Shira Perlmutter is the Register of Copyrights and Director of the U.S. Copyright Office in the Library of Congress. She has served faithfully in this role since she was lawfully appointed by the Librarian of Congress in October 2020. As Register of Copyrights, Ms. Perlmutter has been charged by Congress with the duty to administer the nation's copyright system and to advise Congress on copyright matters of national importance.

In an unprecedented attempt to seize control over the Library of Congress's operations, the President purported unilaterally to appoint a new Librarian of Congress and to remove Ms. Perlmutter from her position as Register. But these actions lack any statutory or constitutional basis. Indeed, Defendants take issue with what were previously uncontroversial points of law: the President does not have inherent Article II authority to unilaterally install acting principal officers beyond what is permitted under the Federal Vacancies Reform Act or the Appointments Clause; and the President does not have the authority to directly remove the Register of Copyrights. Just last week, the D.C. Circuit made clear that neither of Defendants' extreme positions is likely to succeed. *Aviel v. Gor*, No. 25-5105, 2025 WL 1600446, at *1 (D.C. Cir. June 5, 2025) ("*Aviel II*").

Defendants' actions have caused irreparable harm to Ms. Perlmutter and will continue to do so absent judicial intervention. Ms. Perlmutter has a statutory right to serve as Register of Copyrights until she is removed by a lawfully appointed Librarian of Congress. At least six courts in this District have found the deprivation of a statutory right to function to be sufficient to entitle an officeholder to challenge an unlawful removal. And as the D.C. Circuit made explicit in rejecting the Government's request for a stay in *Aviel II*, the Supreme Court's stay in *Wilcox* does not militate against a determination of irreparable harm where, as here, the plaintiff is likely to succeed on the merits. *Id.* at *2 n.2. Beyond that, Ms. Perlmutter has critical and time-sensitive

duties that she is required by law to perform.  Defendants' actions prevent her from discharging those statutory responsibilities, which, in the absence of immediate judicial intervention, threatens to render inoperable significant functions of the Copyright Office during the months-long pendency of this lawsuit.

Defendants' actions are brazenly unlawful, and they cause severe and irreparable harm to Ms. Perlmutter and her ability to fulfill the duties entrusted to her under the law.  This Court should follow the path set out by the D.C. Circuit in *Aviel II* and enter a preliminary injunction that directs that Defendants' purported removal of Ms. Perlmutter has no legal effect, ensures that she can resume her work as Register of Copyrights, and prevents Defendants from encumbering her efforts to perform her duties.

## FACTUAL BACKGROUND

### I.    The Purported Removal of Plaintiff as Register of Copyrights

On Thursday, May 8, 2025, President Trump fired the Librarian of Congress, Dr. Carla D. Hayden, in a two-sentence email.  *See* Tim Balk, Trump Administration Fires Librarian of Congress, *N.Y. Times* (May 8, 2025), https://perma.cc/865K-GS9D.   In accordance with the Library of Congress's regulations—issued pursuant to the authority Congress expressly delegated to the Librarian, 2 U.S.C. § 136—Principal Deputy Librarian of Congress and 40-year Library veteran Robert R. Newlen replaced Dr. Hayden as acting Librarian.  *See* Declaration of Shira Perlmutter ("Perlmutter Decl.") ¶ 5.

Over the following weekend, Trent Morse, Deputy Assistant to the President and Deputy Director of the White House Presidential Personnel Office, sent an email to Ms. Perlmutter, stating, on the President's behalf, that her position as the Register of Copyrights and Director of the U.S. Copyright Office was terminated, effective immediately.  *See id*. ¶ 9; *see also id.*, Exhibit A.  The following Monday, May 12, two Justice Department officials arrived at the Library of Congress

and requested access to the U.S. Copyright Office. *See id.* ¶ 10; *see also* Maya C. Miller & Devlin Barrett, Trump Installs Top Justice Dept. Official at Library of Congress, Prompting a Standoff, *N.Y. Times* (May 12, 2025), https://perma.cc/9L4G-8ZMU. Those two officials were Brian Nieves, Chief of Staff and Senior Policy Counsel to Deputy Attorney General Todd Blanche, and Paul Perkins, Associate Deputy Attorney General to Mr. Blanche. *See* Perlmutter Decl. ¶ 10. Mr. Nieves and Mr. Perkins showed Library staff a letter from the White House purporting to appoint Mr. Blanche to the position of acting Librarian of Congress pursuant to the Federal Vacancies Reform Act. *See id.*; *see also id.*, Exhibit B. The Justice Department officials also showed Library staff an email from Mr. Blanche, stating that he had selected Mr. Nieves to serve as the acting Principal Deputy Librarian, and Mr. Perkins to serve as the acting Register of Copyrights and Director of the U.S. Copyright Office. This served as Mr. Blanche's ratification of the President's decision to remove Ms. Perlmutter from her position. *See id.* ¶ 10; *see also id.*, Exhibit B.

Officials at the Library of Congress did not recognize Mr. Blanche as the acting Librarian and have not permitted Mr. Blanche or Mr. Perkins to assume control over the Library or Copyright Office. *See* Perlmutter Decl. ¶¶ 10–11. A bipartisan group of lawmakers has expressed concern about the President's unprecedented efforts to control Congress's library. *See* Katherine Tully-McManus, GOP Leaders Draw the Line at Trump's Library of Congress Takeover, *Politico* (May 14, 2025), https://perma.cc/236C-QXRM.

## II.     The Register of Copyrights and U.S. Copyright Office

The Constitution vests Congress with the power to "secur[e] for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8. Pursuant to that authority, Congress has entrusted the Copyright Office, led by the Register of Copyrights, with the responsibility to administer the nation's copyright system. *See* 17 U.S.C. § 701(a); *see Thaler v. Perlmutter*, 130 F.4th 1039, 1042 (D.C. Cir. 2025) ("The

Copyright Act is administered by the United States Copyright Office.").[1]

The Register is the "director of the Copyright Office," 17 U.S.C. § 701(a), and Congress has charged the Register personally to perform various duties related to Congress's constitutional authority over copyright law. For example, the Register has the responsibility to "[a]dvise Congress on national and international issues relating to copyright," 17 U.S.C. § 701(b)(1); provide assistance to "Federal departments and agencies and the Judiciary" with respect to copyright law, id. § 701(b)(2); conduct "studies and programs regarding copyright," id. § 701(b)(4); perform "other functions as Congress may direct," id. § 701(b)(5); and "authenticate all certified documents issued by the Copyright Office," id. § 701(c). The Register herself "shall ensure" that accurate records are maintained, id. § 705; "shall . . . publish . . . catalogs of all copyright registrations," id. § 707(a); and "shall furnish" forms for copyright registration, id. § 707(b).

In accordance with her duties, the Register serves as a trusted advisor to Congress on copyright matters; in that role, she provides input and guidance to Congressional committees and individual Members as they propose, draft, consider, and vote on copyright-related legislation. *See Register of Copyrights Selection and Accountability Act: Hearing on H.R. 1695 Before the S. Comm. on Rules and Admin.*, 115th Cong. 3 (2018) (statement of Sen. Amy Klobuchar) (describing the Register of Copyrights as Congress's "chief copyright policy adviser"). This input and guidance are provided both through public reports and private consultations.

The Register's advice to Congress has included contributions to some of the most important

---

[1] Congress enacted the first federal copyright law in 1790, under which authors registered and deposited their works with federal district courts. Act of May 31, 1790, ch. 15, § 1, 1 Stat. 124. Later, Congress centralized copyright administration within the Library of Congress. Copyright Act of 1870, 16 Stat. 198. And in 1897, Congress established the Copyright Office as a separate department within the Library, with a dedicated Register of Copyrights. Copyright Act of 1897, 29 Stat. 481.

milestones in copyright law.  Registers of Copyrights have assisted Congress in shaping the Copyright Act of 1909, the Copyright Act of 1976, the Digital Millennium Copyright Act of 1998 (DMCA), the Orrin G. Hatch–Bob Goodlatte Music Modernization Act of 2018 (MMA), and the Copyright Alternative in Small-Claims Enforcement Act of 2020, among other pieces of legislation.[2]  Pursuant to the Register's duty to provide advice to Congress, Ms. Perlmutter has led a two-year initiative to prepare a comprehensive study and report on the intersection of copyright and artificial intelligence (AI) ("Copyright and AI Report").  Ms. Perlmutter published the third installment of this four-part Report for Congress on May 9, 2025, the day before her purported removal.  Perlmutter Decl. ¶ 7.  The fourth and final part of this Report is in progress.  *Id.*

The Register of Copyrights additionally executes many other statutory directives in administering the Copyright Act, including:

- The Register is responsible for the examination of copyright applications pursuant to 17 U.S.C. § 410, and registers claims in works found to constitute copyrightable subject matter—actions that have significant implications for copyrights, including in litigation.  17 U.S.C. §§ 410, 411 (registration is required to institute a civil action for infringement and makes available important enhanced remedies).  Upon registering a work, the Register issues a certificate of registration, which constitutes *prima facie* evidence of the copyright's validity.  *See id.* § 410.

- The Register advises courts on the impact of inaccurate information contained in a certificate of registration.  *See id.* § 411(b).

---

[2]    *See* "History of U.S. Copyright Office," U.S. Copyright Office, https://www.copyright.gov/history/copyright-exhibit/history-co/; *see also, e.g.,* Hearings on H.R. 2223 Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Comm. on the Judiciary, 94th Cong., 1st Sess. at 1823 (1975) (testimony of Barbara Ringer, then-Register of Copyrights, on the Copyright Act of 1976); 17 U.S.C. § 114(d) (1976) (directing the Register of Copyrights "to prepare a report setting forth setting forth recommendations as to whether this section should be amended to provide for performers and copyright owners of copyrighted material any performance right in such material").

- The Register maintains records of copyright deposits and registrations and transfers of copyright ownership. *Id.* §§ 205, 705.

- The Register is authorized to establish rulemakings in the administration of her functions and duties (subject to approval by the Librarian of Congress), 17 U.S.C. § 702, including rulemakings that are currently in process. Perlmutter Decl. ¶ 14(d); *see, e.g.*, Group Registration for Two-Dimensional Artwork, https://www.copyright.gov/rulemaking/gr2d/.

- Pursuant to the MMA, the Register must periodically designate an entity as the Mechanical Licensing Collective ("MLC") to administer the mechanical blanket license and distribute collected royalties to songwriters and music publishers, and a Digital Licensee Coordinator ("DLC") to represent digital music services in the administration of the license. 17 U.S.C. § 115(d)(3)(B), (d)(5)(B). Both entities are currently subject to a redesignation process that began in January 2024 and remains to be completed. *See* Designation of Mechanical Licensing Collective and Digital Licensee Coordinator, https://www.copyright.gov/rulemaking/mma-designations/.

- The Register must, pursuant to 17 U.S.C. § 1502, recommend Copyright Claims Officers to serve on the three-member tribunal Copyright Claims Board ("CCB"), the small claims copyright tribunal established by Congress; and review the CCB's decisions for abuse of discretion before a party can appeal to federal district court. *See* 17 U.S.C. § 1506(x).

- The Register reviews for legal error the decisions by Copyright Royalty Judges, which determine royalty rates, adjust terms, and ensure the distribution of royalties deposited by licensees, no later than 60 days after final determinations are issued. *Id.* § 802(f)(1)(D). The Register also consults with Copyright Royalty Judges on legal issues as requested and resolves novel questions of law before them. *Id.* §§ 802(f)(1)(A)(ii), 802(f)(1)(B).

## LEGAL STANDARD

To obtain a preliminary injunction, Plaintiff must show that "four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in [her] favor, and accord with the public interest." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (citation omitted). The final two factors merge where the defendant is the Government. *Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016); *see also Nken v. Holder*, 556 U.S. 418, 435 (2009). Courts in this Circuit continue to apply a "sliding scale" approach, wherein "a strong showing on one factor could make up for a weaker showing on another." *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 726 (D.C. Cir. 2022) (cleaned up) (noting potential tension in case law but reserving the question of "whether the sliding-scale approach remains valid"); *Nat'l R.R. Passenger Corp. (Amtrak) v. Sublease Int. Obtained Pursuant to an Assignment and Assumption of Leasehold Int. Made as of Jan. 25, 2007*, Case. No. 22-cv-1043 2024 WL 3443596, at *1–2 (D.D.C. July 15, 2024) (recognizing that district courts remain bound by sliding-scale precedent); *cf. League of United Latin Am. Citizens v. Exec. Off. of the President*, No. CV 25-0946 (CKK), 2025 WL 1187730, at *14 (D.D.C. Apr. 24, 2025) (collecting cases on tension).

## ARGUMENT

### I.    Plaintiff Is Likely to Succeed on the Merits

Ms. Perlmutter is likely to prevail on her claims because neither the President nor Mr. Blanche has the lawful authority to remove her as the Register of Copyrights. The President's purported removal of Ms. Perlmutter was invalid because only the Librarian of Congress may *appoint* the Register of Copyrights, and therefore only the Librarian of Congress may *remove* the Register of Copyrights. *See Aviel II*, 2025 WL 1600446, at *1–2; *Nat'l Treasury Emps. Union v. Reagan*, 663 F.2d 239, 247 (D.C. Cir. 1981) ("[T]he power to remove is held by the appointing

authority, and only by the appointing authority.").  And Mr. Blanche's purported removal of Ms. Perlmutter is invalid because Mr. Blanche is not the Librarian of Congress—acting or otherwise. Mr. Blanche has not been nominated or confirmed by the Senate, *see* 2 U.S.C. § 136-1, and the President lacks any constitutional or statutory authority to appoint an acting Librarian of Congress. *See Aviel II*, 2025 WL 1600446, at *1–2.

### A.    The Register of Copyrights can be appointed and removed only by the Librarian of Congress.

1.    The President lacks any statutory authority directly to remove the Register of Copyrights.  Congress may vest the appointment of inferior officers in "the President alone, in the Courts of Law, or in the Heads of Departments" as it "think[s] proper."  *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 487 (2010); U.S. Const. art. II, § 2, cl. 2.  If Congress vests the authority to appoint inferior officers in a Head of Department, "it is ordinarily the department head, rather than the President, who enjoys the power of removal."  *Free Enter. Fund*, 561 U.S. at 493.  Congress may depart from this default rule, but, "[a]bsent relevant legislation," "the power to remove is held by the appointing authority, and only by the appointing authority."  *Nat'l Treasury Emps. Union*, 663 F.2d at 247 (emphasis added).

That is exactly the case here.  The Librarian of Congress, who is appointed by the President with the advice and consent of the Senate, "is a Head of Department."  *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.,* 684 F.3d 1332, 1342 (D.C. Cir. 2012).  Congress unambiguously vested the Librarian of Congress with the authority to appoint the Register.  17 U.S.C. § 701(a) ("The Register of Copyrights . . . shall be appointed by the Librarian of Congress, and shall act under the Librarian's general direction and supervision.").  As the Fourth Circuit explained, "[t]he Librarian of Congress is an Officer of the United States, with the usual power of such officer to appoint such inferior officers (i.e., the Register), as he thinks proper."  *Eltra Corp. v. Ringer*, 579

F.2d 294, 300 (4th Cir. 1978) (cleaned up).

Congress has not elected to depart from the default rule and authorize the President to remove the Register of Copyrights directly.  No prior President has attempted to remove the Register of Copyrights unilaterally, and this President has no statutory basis for his unprecedented effort to do so here.  The default rule prevails, and only the Librarian of Congress may remove the Register.  *See Nat'l Treasury Emps. Union*, 663 F.2d at 247.

The D.C. Circuit's recent decision in *Aviel II* is instructive.  In *Aviel II*, the D.C. Circuit refused to stay an injunction requiring the Government to "recognize [Aviel] as still holding" the office of CEO of the Inter-American Foundation (IAF).  2025 WL 1600446, at *1.  The court explained that "the governing statute [of the IAF] authorizes the IAF Board of Directors—not the President—to appoint the CEO, and it is silent regarding the question of removal."  *Id.*  "That means the Board—not the President—has the power to remove Aviel."  *Id.* (citing *Free Enter. Fund*, 561 U.S. at 493, 509).  The same is true here, where the law authorizes the Librarian of Congress—not the President—to appoint the Register, and is silent regarding the question of removal.

The lack of statutory authority for the President to remove the Register of Copyrights is confirmed by Congress's recent consideration—and rejection—of legislation that would have conferred such authority.  The Register of Copyrights Selection and Accountability Act of 2017, H.R. 1695, 115th Cong. (2017), would have amended the Copyright Act to allow the President "to remove the Register from office subject to a notification requirement to the House of Representatives and Senate."  H.R. Rpt. No. 115-91, at 7 (2017).  The bill passed the House but failed in the Senate.  *See Register of Copyrights Selection and Accountability Act: Hearing on H.R. 1695 Before the S. Comm. on Rules and Admin.*, 115th Cong. 6 (2018) (statement of Prof. Jonathan

Band) ("It is hard to comprehend why Congress would voluntarily cede to the executive branch the authority of its own Librarian to select a key congressional adviser.").

If the President, as he now claims, *had* the statutory authority to remove the Register directly, Congress's consideration of the 2017 bill would have been unnecessary. The failed 2017 bill shows that the President did not have that authority; this history also shows that Congress knows how to alter the removal authority for inferior officers generally (and for the Register of Copyrights in particular), and that Congress did not do that either. *Cf. Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest.").

In sum, Congress has seen fit to vest the power to appoint the Register of Copyrights in the Librarian of Congress, and therefore the power to remove the Register rests with the Librarian.

2. Defendants have also contended that the President has inherent authority under the Constitution's Take Care Clause to remove the Register. That is wrong. The Appointments Clause itself forecloses any claim of background presidential authority to remove inferior officers who were not appointed by the President. That Clause provides that Congress may exclude the President entirely from appointing inferior officers: "the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. Once Congress has exercised its right to vest the appointment of an inferior officer in, for instance, a Head of Department, the President lacks any "background" authority to circumvent that statutory provision. Otherwise, the Appointments Clause's conferral of authority on Congress to "by Law vest the

Appointment" of inferior officers in officials other than the President would be meaningless; the President could simply remove such officials the instant they were appointed.

The Constitution does not give the President the right to circumvent the Appointments Clause through a freestanding removal power. Instead, "removal is incident[al]" to the appointment power, *Free Enter. Fund*, 561 U.S. at 509, and Congress may exclude the President from the removal of an inferior officer, by excluding the President from appointing that officer. No other conclusion would be consistent with the Appointments Clause. Indeed, even President Nixon evidently shared this understanding of the Appointments Clause: there would have been no need for the Saturday Night Massacre if President Nixon could simply have fired the special prosecutor himself.

### B. Mr. Blanche does not lawfully hold the position of acting Librarian of Congress.

Nor has Ms. Perlmutter been lawfully removed from her post by Mr. Blanche, whom the President purportedly appointed to be acting Librarian of Congress. Despite Defendants' claimed reliance on the Federal Vacancies Reform Act of 1998 ("FVRA"), 5 U.S.C. § 3345 *et seq.*, the FVRA does not authorize the President to appoint an acting Librarian of Congress—nor does any other source of law.

#### 1.    The FVRA does not authorize Mr. Blanche's purported appointment.

In the ordinary course, when a principal officer of the United States departs from a post, the position may be filled only after the President nominates, and the Senate confirms, a successor. This limitation is a "critical 'structural safeguard[] of the constitutional scheme.'" *Nat'l Lab. Rels. Bd. v. SW Gen., Inc.*, 580 U.S. 288, 293 (2017) (alteration in original) (quoting *Edmond v. U.S.*, 520 U.S. 651, 659 (1997)). It protects against unchecked power in a single individual by

"dividing" it "between the Executive and Legislative Branches." *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 884 (1991).

Here, the Library of Congress's principal-officer appointment statute could not be clearer: "The Librarian of Congress shall be appointed by the President, by and with the advice and consent of the Senate." 2 U.S.C. § 136-1. Therefore, absent advice and consent, the President lacks unilateral authority to appoint a Librarian.

In some circumstances, Congress "has given the President limited authority to appoint acting officials to temporarily perform the functions of a vacant [principal] office without first obtaining Senate approval." *SW Gen., Inc.*, 580 U.S. at 294. But that is not the case here. Congress has not given the President *any* statutory authority to appoint an acting head of the Library of Congress. That is because the limited temporary-appointment authority set forth in the FVRA allows for a temporary appointment if:

> [A]n officer of an *Executive agency* (including the Executive Office of the President, and other than the Government Accountability Office) whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office.

5 U.S.C. § 3345(a) (emphasis added). The FVRA is "the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency" for which Senate confirmation is required. *Id.* § 3347(a); *see also* S. Rep. 105-250 (1998) at *4–5 (in enacting the FVRA, Congress emphasized that "the President lacks any inherent appointment authority for government officers").[3]

---

[3] There are two narrow exceptions to the FVRA's exclusive authority: "if another 'statutory provision expressly' authorizes the President or another official to make such an appointment, 5 U.S.C. § 3347(a)(1) & (2), or if the President validly makes a recess appointment under Article II, U.S. Const., art. II, § 2, cl. 3." *See Aviel v. Gor*, No. 25-cv-778, 2025 WL 1009035, at *7 (D.D.C. Apr. 4, 2025) ("*Aviel I*"). Those exceptions do not apply here: there is no other statutory basis for

The FVRA does not apply here, however, because the Library of Congress is not an "Executive agency" within the meaning of the FVRA. The critical point for FVRA purposes is that Congress established the Library of Congress as a *legislative* agency, and it has consistently treated the Library as a legislative agency for purposes of other statutes. Congress has treated the Library together with executive agencies only in rare circumstances, and when it has done so, it has been explicit about that deviation from the norm. The FVRA contains no such explicit language, and its definition of "Executive agency" does not encompass the Library. This Court should not lightly conclude, moreover, that Congress would cede to the Executive Branch unilateral authority to appoint an acting official to lead the Library, in view of its many sensitive responsibilities to Congress.

2.    <u>The statutory scheme makes clear that the Library of Congress is not an "Executive agency."</u>

At the outset, it is important to be clear about the nature of the inquiry: the question is whether the Library of Congress falls within the FVRA's definition of an "Executive agency." *See* 5 U.S.C. § 105. That is a statutory question, not a constitutional one. Whether the Library of Congress is in some respects part of the Executive Branch for constitutional purposes has no bearing on its status under the FVRA. *See Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 392 (1995) (holding that Congress has the "dispositive" ability to define government entities "for purposes of matters that are within Congress's control"); *Mistretta v. U.S.*, 488 U.S. 361 (1989) (Scalia, J., dissenting) ("For such statutory purposes, Congress can define the term ['the Judicial Branch'] as it pleases."). Defendants' reliance on Appointments Clause cases to determine the meaning of "Executive agency" is therefore misplaced. Any presidential authority to appoint an

---

the President's purported appointment of Mr. Blanche as acting Librarian of Congress, and the President has not purported to make a recess appointment.

acting Librarian would have to be conferred by statute. But the relevant statute—the FVRA—confers no such authority.

The FVRA defines the term "Executive agency" as any (1) "Executive department," (2) "Government corporation," or (3) "independent establishment." 5 U.S.C. § 105; *see Haddon v. Walters*, 43 F.3d 1488, 1490 (D.C. Cir. 1995) (per curiam) (confirming that Section 105's list is exhaustive). The Library of Congress is none of these. It is not included in the enumerated list of "Executive departments," 5 U.S.C. § 101 (definition of "Executive departments"), and it is not a "corporation owned or controlled by the Government of the United States," *id.* § 103 (definition of "Government corporation"). Defendants' only statutory argument is therefore that the Library of Congress is an "independent establishment," that is, "an establishment in the executive branch," *id.* § 104 (definition of "independent establishment"). ECF No. 7 at 7. The statutory text, as well as its structure and statutory history, forecloses Defendants' argument. *See Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006).

**First**, the term "independent establishment" is defined as "an establishment in the executive branch," a description that does not encompass the Library of Congress. Congress established the Library of Congress in Title 2 of the U.S. Code—that is, the Title devoted to "The Congress." Accordingly, Congress has repeatedly defined the Library of Congress as a "legislative branch agency," along with other legislative agencies like the Architect of the Capitol. *E.g.*, 2 U.S.C. § 181(b)(1) (using both "legislative branch agency" and "offices and agencies of the legislative branch"); Pub. L. 115-414, § 2(a)(3) (Jan. 3. 2019) 132 Stat. 5430; Pub. L. 103-110, § 122(b) (Oct. 21, 1993) 107 Stat. 1043 (discussing "the Library of Congress and other Legislative Branch agencies"). Unlike appropriations for Executive agencies, funding for the Library of Congress and the Copyright Office is provided through Legislative Branch appropriations, and the Appropriations Subcommittees for the Legislative Branch have jurisdiction. *See, e.g.*, S. Rep. 118-

14

192, at 48–52 (2024); *Jurisdiction*, H. Subcomm. on Leg. Branch Appropriations, https://appropriations.house.gov/subcommittees/legislative-branch-0/jurisdiction. Indeed, even the Department of Justice has acknowledged—in a brief filed just last month—that Congress has categorized the Library of Congress with the "legislative branch agencies." Mem. of Points and Authorities in Support of Def.'s Mot. To Dismiss, *Am. First Legal Found. v. U.S. Gov't Accountability. Off.*, No. 1:25-cv-00662-SLS, ECF No. 9-1, at 5 (D.D.C. May 28, 2025). Congress's express establishment of the Library of Congress as a "legislative" agency demonstrates that the Library is not "an establishment in the executive branch."

**Second**, Congress regularly uses the term "independent establishment" in a manner that excludes the Library of Congress. *See, e.g.*, 5 U.S.C. § 4101(1) ("For the purpose of this chapter 'agency' . . . means (A) an Executive department; (B) *an independent establishment*; (C) a Government corporation . . . ; (D) *the Library of Congress* . . . ." (emphases added)). As in *Haddon*, in which the D.C. Circuit concluded that the White House Executive Residence is not an "independent establishment" under Section 105 because "elsewhere Congress has used the term 'independent establishment' in distinction to the Executive Residence," 43 F.3d at 1490 (citing 3 U.S.C. § 112), the fact that Congress distinguished the Library of Congress from the term "independent establishment" in 5 U.S.C. § 4101(1) makes plain that Congress does not regard the Library of Congress as an independent establishment, as it uses that term. *Id.*

**Third**, at least a dozen provisions of Title 5, where the FVRA is codified, distinguish between an "Executive agency" on the one hand and the Library of Congress on the other. *See, e.g.*, 5 U.S.C. § 3102(a)(1) (defining "agency" to include both "an Executive agency" and "the Library of Congress"); *id.* § 3401(1) (same); *id.* § 4501(1) (same); *id.* § 5102(a)(1) (same); *id.* § 5521(1) (same); *id.* § 5541(1) (same); *id.* § 5584(g) (same); *id.* § 5595(a)(1) (same); *id.* § 5921(2) (same); *id.* § 5948(g)(2) (same); *id.* § 6121(1) (same); *see also id.* § 3371(3) (same with the

definition of "federal agency").[4]  Viewing these provisions of Title 5 together, there can be little

doubt that the Library of Congress is not an "Executive agency" under Title 5 generally, and the

FVRA specifically, which shares the same definition of "Executive agency" as the rest of Title 5,

*see id.* § 105.  If the Library of Congress were an "Executive agency" within the meaning of

Section 105, that would render each of these statutory provisions superfluous because they

specifically apply both to any "Executive agency" and the "Library of Congress."  *See Gustafson

v. Alloyd Co.*, 513 U.S. 561, 574 (1995) ("[T]he Court will avoid a reading which renders some

words altogether redundant.").

Defendants have argued that "what Congress was doing was belt and suspenders" because

"there is nothing like the Library of Congress," so Congress "had to specifically designate it" in

statutes where Congress wanted to regulate the Library.[5]  That argument just proves Plaintiff's

point: Congress recognizes the Library of Congress's unique status and, where it wants a statute

to apply to the Library of Congress, it knows how to say so plainly.  The failure to include the

Library of Congress in the definition of "Executive agency" is no accident.  In any event,

Defendants lack a theory for why the canon against superfluity should be disregarded here.  Why

did Congress adopt a "belt and suspenders" approach in a *dozen* other places in Title 5, but not in

Section 105?  Defendants have no answer.

*Fourth*, when Congress designates an agency as an "independent establishment," it

invariably does so through the organic statutes creating those agencies.  *See, e.g.*, 44 U.S.C. § 2102

(establishing the National Archives and Records Administration as "an independent establishment

---

[4] Should there remain any doubt, in 5 U.S.C. § 5948(g)(2), Congress specifically distinguished
between "Executive agency, as defined in Section 105 of this title" and "the Library of
Congress"—clearly showing that Congress did not view the Library of Congress to be subsumed
in Section 105's definition of an "Executive agency."

[5] ECF No. 15, Tr. of Oral Argument at 29:16–18, 30:4–7 (May 29, 2025).

in the executive branch"); 5 U.S.C. § 1101 (same for the Office of Personnel Management); 39
U.S.C. § 201 (same for the United States Postal Service); 42 U.S.C. § 2286 (same for the Defense
Nuclear Facilities Safety Board).  By contrast, nowhere in the Library of Congress's organic
statute—or anywhere else—does Congress indicate that the Library of Congress should be
classified as an "independent establishment."  *See generally* 5 U.S.C., ch. 5.

> 3.  <u>Congressional intent makes clear that the Library of Congress is not an
>     "Executive agency."</u>

Courts also "consider[] the purpose and context of the statute" in interpreting statutory text.
*Dolan*, 546 U.S. at 486.  Here, both the purpose and the context of the FVRA confirm that Congress
did not intend for the Library of Congress to be considered an "Executive agency" for purposes of
the FVRA.  Congress granted the President only "limited authority to appoint acting officials,"
and, "[p]erceiving a threat to the Senate's advice and consent power," Congress enacted the FVRA
to circumscribe the President's ability to appoint acting officials—not to expand it in the manner
Defendants seek to do here.  *SW Gen.*, 580 U.S. 288, 294–95.

Defendants' theory—that Congress deliberately chose to hand over to the President *sub
silentio* the authority to appoint an acting Librarian *for its own Library*—strains credulity.
Congress enacted the FVRA to *limit* the President's authority to circumvent the Senate's
constitutional advice-and-consent power, and Congress has treated the Library of Congress—
which is, in both name and function, *Congress's Library*—as part of the Legislative Branch.  As
discussed above, *supra* at 14, the U.S. Code lists the "Library of Congress" under the title "The
Congress," 2 U.S.C. Ch. 5, and the "Library of Congress" chapter includes a provision that uses
the term "offices and agencies of the legislative branch" and defines that term to include the
Library of Congress.  2 U.S.C. § 181(b)(1).

Congress had good reasons to exclude from the FVRA agencies that perform legislative functions, like the Library of Congress.  *See* Perlmutter Decl. ¶ 3.  Congress has an obvious and direct interest in who is permitted to access the Library's confidential research and advice for Members of Congress, as well as other confidential Congressional records it holds, and who controls the Library's discharge of its duties as a non-partisan advisor to Congress.  Indeed, the purported appointment of Mr. Blanche, who serves concurrently in the Executive Branch, starkly confirms why Congress would not have cut itself out of the process of identifying acting leadership for the Library of Congress.

      **4.**    <u>Precedent confirms that the Library of Congress is not an "Executive Agency."</u>

Finally, courts also "consult[] . . . precedents or authorities" that "inform" the statutory analysis.  *See Dolan*, 546 U.S. at 486.  Here, the relevant precedents confirm that the Library of Congress is not an "Executive agency" for purposes of the FVRA.

Plaintiff's reading of the FVRA is consistent with court decisions that have concluded that the Library of Congress is a legislative entity for purposes of Title 5.  This Circuit has held that the exclusion of "Congress" from the meaning of "agency" under the Administrative Procedure Act (APA) means that the Library of Congress is not subject to the APA.  *See, e.g.*, *Ethnic Employees of Library of Congress v. Boorstin*, 751 F.2d 1405, 1416 n.15 (D.C. Cir. 1985); *Washington Legal Found. v. U.S. Sent'g Comm'n*, 17 F.3d 1446, 1449 (D.C. Cir. 1994); *Benedict v. Library of Congress*, 1997 U.S. Dist. LEXIS 16158, at *7 (D.D.C. Oct. 8, 1997).  For the same reasons, courts have consistently found that the Library of Congress is not an "agency" under the Freedom of Information Act (FOIA).  *See, e.g.*, *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136 (1980).  And the D.C. Circuit has held that provisions of the Rehabilitation Act do not apply to Library of Congress employees because those provisions are "limited in scope

to the executive branch" and "the Library of Congress, as part of the legislative branch, was not included." *Judd v. Billington*, 863 F.2d 103, 104 (D.C. Cir. 1988). Taken together, these cases show that courts have broadly understood Congress to have treated the Library of Congress as part of the legislative branch for statutory purposes. The fact that the Library of Congress is treated as part of "Congress" for purposes of other parts of Title 5 and elsewhere is irrefutable evidence that Congress did not silently intend to treat the Library of Congress as an "Executive agency" under Section 105.

By contrast, no case has held that the Library of Congress is an "Executive agency" for purposes of the FVRA. Defendants principally rely on *Intercollegiate Broadcast Systems v. Copyright Royalty Board*, 684 F.3d 1332 (D.C. Cir. 2012). But that case does not bear on the *statutory* definition of "Executive agency." Instead, *Intercollegiate* addresses whether the Library of Congress is a "Department" for purposes of the Appointments Clause such that its "Head"— the Librarian—may appoint Copyright Royalty Judges. *See id.* at 1341–42. While answering the question of whether the Library of Congress is a "Department[]" for purposes of the Appointments Clause (and not the separate question presented here, *i.e.*, whether the Library of Congress is an "Executive agency" for purposes of the FVRA), the Court acknowledged the noncontroversial proposition that the Library performs "a range of different functions, including some . . . that are exercised primarily for legislative purposes" and others that are "generally associated in modern times with executive agencies rather than legislators." *Id.* It was only with respect to certain of the Library's copyright functions that the D.C. Circuit affirmed that "the Library is undoubtedly a component of the Executive Branch" for purposes of the Appointments Clause. *Id.* at 1342 (citation omitted). Indeed, even the Department of Justice acknowledged, in the briefing in *Intercollegiate*, that "the Library is regarded as a legislative entity for various statutory purposes" precisely because "Congress's definition of 'executive departments' in 5 U.S.C. § 101" is not

coextensive with the scope of Article II.  Br. for Appellees, *Intercollegiate Broadcasting Sys.*,

2011 WL 5288867, at *12, 41.[6]

        5.      <u>The Constitution does not authorize Mr. Blanche's purported appointment.</u>

Defendants also assert that the President has inherent Article II authority to designate acting

principal officers to ensure that he may faithfully execute federal law, as required by the Take Care

Clause, U.S. Const. Art II, § 3.  ECF No. 7 at 11–15.  Not a single case—from any Circuit or any

time period—supports such an extreme proposition.

To the contrary, Defendants' assertion of inherent appointment authority clashes with the

Constitution's text, historical practice, Supreme Court and Circuit precedent, and congressional

intent—all of which establish the exclusive means by which a President can appoint a principal

officer such as the Librarian of Congress.  If a President could bypass those prescribed methods of

appointment merely by invoking the Take Care Clause, surely some court in the history of the

Republic would have sustained the exercise of this power.  None has.  *Cf. Free Enter. Fund*, 561

U.S. at 505 (lack of historical precedent is a "telling indication of the severe constitutional

problem") (cleaned up).

Instead, the President must rely on the power vested in him by the Appointments Clause,

which permits the President to appoint principal officers of the United States only "*by and with*

*the Advice and Consent of the Senate*."  U.S. Const. art. II, § 2, cl. 2 (emphasis added).  The

---

[6] Even to the extent Defendants are correct that the constitutional question presented in *Intercollegiate* should be conflated with the statutory one presented here (it should not), identifying the Library of Congress as a "Department" does not end the inquiry.  As the D.C. Circuit observed in *Intercollegiate*, the "'Departments' referred to in the Appointments Clause 'are . . . in the Executive Branch *or at least have some connection with that branch*.'"  684 F.3d at 1341 (quoting *Buckley v. Valeo,* 424 U.S. 1, 127 (1976)) (emphasis added).  In other words, the Appointments Clause reaches *beyond* the confines of the Executive Branch to include certain agencies that have "some connection with," but are not located in, the Executive Branch.

President lacks inherent authority to make those appointments unilaterally. Were it otherwise, "there would be no need for the Recess Appointments Clause." *Aviel I*, 2025 WL 1009035, at *9, *stay pending appeal denied*, *Aviel II*, 2025 WL 1600446 (rejecting argument that the President has "inherent" authority to appoint acting principal officers). The Recess Appointments Clause is a narrow "exception" to the Appointments Clause, and as the Supreme Court has emphasized, does "not offer[] the President the authority routinely to avoid the need for Senate confirmation." *N.L.R.B. v. Noel Canning*, 573 U.S. 513, 519, 523–24 (2014) (citation and internal quotation marks omitted). But under the Government's view, the President could routinely avoid the need for Senate confirmation, simply by purporting to appoint an acting official of his choice to serve indefinitely in the principal officer's position. That cannot be right.

Lest there be any remaining doubt, the D.C. Circuit has in recent days confirmed—across both the majority and the dissent—that "it is unlikely that the Take Care Clause gives the President unfettered discretion to designate acting principal officers with neither Senate confirmation nor a Senate recess nor even statutory authorization through the FVRA." *Aviel II*, 2025 WL 1600446, at *2; *accord id.* at *4 n.1 (Rao, J., dissenting) ("I agree with my colleagues that . . . the text and structure of the Constitution strongly suggest the President has no inherent authority to appoint officers of the United States, like IAF Board members, outside the strictures of the Appointments Clause."); *accord Williams v. Phillips*, 360 F. Supp. 1363, 1371 (D.D.C. 1973).

The President did not lawfully appoint Mr. Blanche, so Mr. Blanche cannot lawfully exercise the powers of that office. Any actions taken by Mr. Blanche as acting Librarian of Congress are therefore void *ab initio* and have no legal effect. *See Lucia v. SEC*, 585 U.S. 237 (2018) (the appropriate remedy for an unlawful appointment is invalidation of the officer's *ultra vires* acts). Thus, Mr. Blanche did not validly ratify the dismissal of Ms. Perlmutter and did not validly appoint either Mr. Nieves or Mr. Perkins to senior Library posts.

## II.    Plaintiff Will Likely Suffer Immediate and Irreparable Harm

Defendants' actions have caused irreparable harm to Ms. Perlmutter and will continue to cause her harm absent judicial intervention.   Although garden-variety employment disputes predicated on an employee's "loss of income" generally do not justify emergency relief, *cf. Sampson v. Murray*, 415 U.S. 61, 91–92 (1974), the present dispute is hardly ordinary—as this Court has recognized.   *See* ECF No. 15, Tr. of Oral Argument at 41:21–22 (May 29, 2025) ("Ms. Perlmutter is right that this is not a garden-variety case.").   Plaintiff suffers harm from Defendants' actions because they threaten to deprive her of her "statutory right to function" in the role to which she was lawfully appointed; they frustrate her ability to perform the mandatory statutory duties that Congress assigned to her; and they cause irreversible institutional damage to the Library of Congress and Copyright Office, such that any later reinstatement would not resurrect Ms. Perlmutter's right to function in her office as it exists now and would further implicate significant separation-of-powers concerns that this Court can and should consider in deciding this motion.

Delayed remedies or remedies at law are inadequate to redress Plaintiff's injuries.   Ms. Perlmutter does not seek lost pay.   She seeks to execute her duties and administer the Copyright Office in accordance with statutory mandates.   With each day that passes that the Court does not confirm she lawfully serves as Register, Ms. Perlmutter is irreparably harmed by her inability to fulfill her statutorily required duties and lead the Copyright Office's important and time-sensitive work.

### A.    *Sampson* contemplates preliminary injunctive relief for the termination of a government employee in an "extraordinary situation"

In cases arising out of the purportedly unlawful termination of Executive Branch employees, plaintiffs challenging their terminations "must make a showing of irreparable injury sufficient in kind and degree to override" the Government's traditional autonomy over its internal

affairs, which ordinarily "cut[s] against the availability of preliminary injunctions in Government personnel cases."[7] *Sampson*, 415 U.S. at 84.  In *Sampson*, the Supreme Court considered whether a probationary employee at the General Services Administration could receive a temporary restraining order enjoining her dismissal during an administrative appeal to the Civil Service Commission.  *Id.* at 62–63.  The Court concluded that the loss of wages and reputation that may be remedied through further proceedings fell "far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction in this type of case," especially in consideration of the Government's prerogative to manage its employees.  *Id.* at 91–92.  Nonetheless, the Court noted that a "District Court is not totally without authority to grant interim injunctive relief to a discharged Government employee," *id.* at 63, and that relief may be appropriate "in the genuinely extraordinary situation" where "circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found."  *Id.* at 92 n.68.

At least six courts in this District have concluded that the unlawful removal of a senior government official represents such a "genuinely extraordinary situation" causing irreparable harm.  *See, e.g.*, *LeBlanc v. U.S. Priv. & C.L. Oversight Bd.*, No. CV 25-542 (RBW), 2025 WL 1454010, at *1 (D.D.C. May 21, 2025) (Walton, J.) (irreparable harm where members of the United States Privacy and Civil Liberties Oversight Board (PCLOB) were unlawfully removed); *Grundmann v. Trump*, No. 25-cv-425 (SLS), 2025 WL 782665 (D.D.C. Mar. 12, 2025) (Sooknanan, J.) (irreparable harm where chair of Federal Labor Relations Authority was

---

[7] For example, the Supreme Court denied temporary relief in *Sampson* in part because of the "well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs."  415 U.S. at 83 (citation omitted).  But that concern is "minimized in the context of an action that at this stage appears to be nakedly illegal, such that the Government's range of options is necessarily constrained."  *Harris v. Bessent*, No. 25-cv-412 (RC), 2025 WL 521027, at *6 (D.D.C. Feb. 18, 2025).

unlawfully removed); *Aviel I*, 2025 WL 1009035, at *10–11 (AliKhan, J.) (irreparable harm where President of Inter-American Foundation was unlawfully removed); *Harris v. Bessent*,  No. 25-cv-412, 2025 WL 521027 (D.D.C. Feb. 18, 2025) (Contreras, J.) (irreparable harm where member of the Merit Systems Protection Board (MSPB) was unlawfully removed); *Dellinger v. Bessent*, 766 F. Supp 3d 57 (D.D.C. 2025) (Berman Jackson, J.) (irreparable harm where Special Counsel of the Office of Special Counsel was unlawfully removed); *Wilcox v. Trump*, No. 25-cv-334, 2025 WL 720914 (D.D.C. Mar. 6, 2025) (Howell, J.), *hearing en banc denied sub nom. Harris v. Bessent*, No. 25-5037, 2025 WL 1033740 (D.C. Cir. Apr. 7, 2025) (irreparable harm where Member of National Labor Relations Board was unlawfully removed), *stayed sub nom. Trump v. Wilcox*, 145 S. Ct. 1415 (May 22, 2025); *Berry v. Reagan*, No. 83-cv-3182, 1983 WL 538, at *5 (D.D.C. Nov. 14, 1983), *vacated as moot*, 732 F.2d 949 (D.C. Cir. 1983) (irreparable harm where members of the U.S. Commission on Civil Rights were unlawfully removed).  Ms. Perlmutter's purported removal compels the same conclusion.[8]

### B.  Plaintiff's removal is precisely the type of "extraordinary situation" contemplated by *Sampson*

The Register of Copyrights is charged with significant responsibilities of national interest, including the administration of the national copyright system and the provision of impartial advice on copyright law to Congress, federal agencies, the courts, and the public.[9]   Therefore, the

---

[8] The fact that several of these lawsuits involved "a Senate-confirmed principal officer of a Congressionally created independent agency" who was deprived of a statutory right to function neither limits the "extraordinary situation" doctrine nor makes the analysis in those cases any less persuasive here.  Congress intentionally authorized only the Librarian of Congress to appoint or remove the Register of Copyrights.  17 U.S.C. § 701; *Grundmann v. Trump*, No. CV 25-425 (SLS), 2025 WL 782665, at *17 (D.D.C. Mar. 12, 2025); *see also, e.g.*, *Does 1–26 v. Musk*, No. CV 25-0462-TDC, 2025 WL 840574, at *28 (D. Md. Mar. 18, 2025) (removal of employees and contractors of United States Agency for International Development was an extraordinary situation).

[9] *See supra* Factual Background Part II.

Register's "unlawful removal from office by the President and the obviously disruptive effect that such removal has on the organization's functioning" make this a "genuinely extraordinary situation," as contemplated by *Sampson*.  *LeBlanc*, 2025 WL 1454010, at *29 (cleaned up); *Wilcox*, 2025 WL 720914, at *15 (same).  Ms. Perlmutter's purported removal from her position as Register of Copyrights should be enjoined because it has caused and will continue to cause irreparable harm, for at least three reasons.

1.  <u>Plaintiff has a "statutory right to function" as Register of Copyrights.</u>

Ms. Perlmutter suffers irreparable harm because Defendants' actions deprive her of her "statutory right to function" in the role that the Librarian of Congress lawfully appointed her to perform.  *Harris v. Bessent*, No. CV 25-412, 2025 WL 679303, at *13 (D.D.C. Mar. 4, 2025), *appeal pending*, No. 25-5055 (D.C. Cir.).

Courts in this District have recognized that even if the deprivation of a senior government official's "statutory right to function" is temporary, the injury to them and their agency is both significant and irreparable.  *Berry*, 1983 WL 538, at *5, *vacated as moot*, 732 F.2d 949 (D.C. Cir. 1983) (per curiam); *see also Mackie v. Bush*, 809 F. Supp. 144, 147 (D.D.C. 1993), *vacated as moot sub nom. Mackie v. Clinton*, 10 F.3d 13 (D.C. Cir. 1993) (issuing temporary restraining order prohibiting the President from removing plaintiffs from federal office and noting that "neither a damages remedy nor a declaratory judgment would provide an adequate remedy" after the fact of their removal).

Plaintiff's loss of the ability to carry out her congressionally directed mission transcends the loss of income or embarrassment involved in the typical employment action at issue in *Sampson*; it cannot be remedied by money damages.  Rather, Ms. Perlmutter's loss of the opportunity to lead and direct the important work of the Copyright Office at this precise time is a "harm that cannot be remediated if the court waits until the end of litigation."  *Li v. Blinken*, No.

25

22-5266, 2023 WL 4044487, at *1 (D.C. Cir. June 16, 2023); *cf. Cable News Network, Inc.*, No. 18-cv-2610, ECF No. 22 (D.D.C Nov. 16, 2018) (Kelly, J.) (concluding that the harm to a journalist based on the White House's revocation of his press pass was "irreparable" in part because "[t]he Court cannot restore his access to press briefings that have already occurred or to conversations in the White House press facilities that have already been had" and "that CNN may still send another journalist or other journalist to the White House does not make the harm to Mr. Acosta any less irreparable"). Ms. Perlmutter's opportunity to lead the Copyright Office in accordance with her statutory mandates—to, *inter alia*, direct rulemakings to administer the Copyright Act; make time-sensitive, critical staff decisions, including for the Copyright Claims Board; review Copyright Royalty Judges' decisions for legal error and resolve novel questions of law before them; issue copyright registrations; and complete the Office's Copyright and AI Report—will be forfeited during the months-long pendency of this lawsuit. *See* Perlmutter Decl. ¶¶ 7, 14. Plaintiff's harm is "unrecoverable" and therefore irreparable. *Karem v. Trump*, 404 F. Supp. 3d 203, 217 (D.D.C. 2019), *aff'd as modified*, 960 F.3d 656 (D.C. Cir. 2020).

The Supreme Court's recent stay decision in *Trump v. Wilcox*, 145 S. Ct. 1415 (2025), is not to the contrary, and does not mean that the President always gets his way in the assessment of irreparable harm. Rather, the Court explained in *Wilcox* that the stay granted in that case reflected its judgment that the government was likely to prevail on the merits on the question of whether, under the Court's Appointments Clause precedents, the President can remove members of the National Labor Relations Board and the Merit Systems Protection Board. *Id.* (citing *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 215−18 (2020)).

Additionally, the D.C. Circuit recently confirmed *Wilcox*'s limited applicability, explaining that it does *not* apply where the President is *not* likely to succeed on the merits. *See Aviel II*, 2025 WL 1600446, at *4 n.2 ("Although the Supreme Court issued a stay in *Harris* and

a companion case [*Wilcox*], its merits ruling rested on the proposition that the removals at issue in those cases were likely lawful."). Common sense requires this conclusion. What if, taking Defendants' example, *see* ECF No. 7 at 7, the President unlawfully removes the Senate Parliamentarian? The Chairman of the Federal Reserve? A District Court judge? Courts must be empowered to provide effective interim relief for these unlawful actions, where it is clear that the President faces no harm—and has no lawful authority to remove the officer in question.

As in *Aviel II*, and consistent with *Wilcox*, Ms. Perlmutter has established that she is likely to succeed on the merits, *see supra* Part I, and therefore the President does not face harm. Accordingly, an injunction is warranted to prevent Ms. Perlmutter's irreparable harm based on her purported removal.

Nor does the D.C. Circuit's stay decision three months ago in *Dellinger* call into question the clear irreparable harm in this case. In *Dellinger*, based on "the circumstances of the particular case," the court concluded that plaintiff would, "[a]t worst, . . . remain out of office for a short period of time" because the case was expedited on the court's own motion. *Dellinger v. Bessent*, No. 25-5052, 2025 WL 887518, at *4 (D.C. Cir. Mar. 10, 2025) (internal quotation marks omitted). That is not the case here, where Ms. Perlmutter would remain out of office for the pendency of this suit, which would likely take many months, as the Court indicated at the June 3, 2025 status conference that this lawsuit is at the bottom of a lengthy queue. "[T]he potential injury to the government of . . . having its designated [acting official] sidelined," *id.*, does not apply here for the same reasons that *Wilcox* does not apply: the President does not have the authority to appoint (or remove) the acting Register of Copyrights, *supra* at 8–11.

2.    Plaintiff remains Register of Copyrights and is therefore required to fulfill
her statutory duties.

Beyond the loss of her "statutory right to function," absent preliminary relief Plaintiff will also be prevented from performing the legislative functions that continue to be required of her. Ms. Perlmutter remains the Register of Copyrights according to the Library of Congress's leadership and staff; she has not received any communication from Library of Congress leadership that could lawfully terminate her employment.  *See* Perlmutter Decl. ¶ 13; *see also Leadership*, U.S. Copyright Off., https://www.copyright.gov/about/leadership (identifying Ms. Perlmutter as Register as of June 10, 2025).  Ms. Perlmutter therefore is required by law to fulfill her statutory obligations while this lawsuit is pending, unless she is removed from office by a duly appointed Librarian.

Those duties require her to (among other things): evaluate applications for registration of copyright and issue registrations if the works contain copyrightable subject matter, 17 U.S.C. § 410; advise Congress on national and international issues relating to copyright, *id*. § 701(b)(1); conduct studies and programs regarding copyright, *id.* § 701(b)(4); establish regulations subject to the approval of the Librarian of Congress, *id.* § 702; designate the MLC and DLC, which will represent digital music services in the administration of the license and in the determination of the administrative assessment fee paid by digital music providers for the reasonable costs of establishing and operating the new MLC, 17 U.S.C. § 115(d)(5)(B); recommend a new Copyright Claims Officer to serve on the three-member tribunal Copyright Claims Board, *id.* § 1506(x); and review decisions by Copyright Royalty Judges, which determine royalty rates, adjust terms, and ensure the distribution of royalties deposited by licensees, *id.* § 802 (f)(1)(D).  *See* Perlmutter Decl. ¶¶ 6, 14.

These duties are both critical and time-sensitive.  The Register must designate a new MLC and DLC every five years; the current redesignation process is underway and has not yet been completed.  *Id.* ¶¶ 6(f), 14(b).  The Register must review decisions by Copyright Royalty Judges within 60 days after the decisions are issued.  *Id.* ¶¶ 6(h), 14(e).  The Register must appoint a new Copyright Claims Officer, in consultation with the Librarian of Congress, to replace an Officer whose term is ending; without a new Officer, the CCB will be unable to function effectively.  *Id.* ¶¶ 6(g), 14(c).  And stakeholders are awaiting the issuance of the final part of the Office's Copyright and AI Report as well as long-sought and in-process regulations, including one that establishes a new option of Group Registration for Two-Dimensional Artwork.  *Id.* ¶¶ 7, 14(d), 14(g).  Absent a preliminary injunction, Ms. Perlmutter will be unable to effectively carry out these and other duties.  *Id.* ¶ 14.  And the ongoing uncertainty will necessarily impede Ms. Perlmutter's ability to do what is statutorily required of her and cast doubt over the Copyright Office's actions.  This is already happening in real time.  Due to the current situation, the Copyright Office has been issuing certificates without the Register's signature, which, although authorized by law, 17 U.S.C. § 410(a), could lead to challenges in litigation.  *See* Ivan Moreno, *Unsigned Copyright Certificates Raise Validity Questions*, Law360 (June 3, 2025), https://www.law360.com/articles/2348985/unsigned-copyright-certificates-raise-validity-questions.

This "loss of the ability to do what Congress specifically directed [Plaintiff] to do cannot be remediated with anything other than equitable relief." *Harris*, 2025 WL 521027, at *8 (citation omitted).  Plaintiff therefore seeks to preserve the *status quo ante* because without immediate prevention of Mr. Blanche's appointment, Ms. Perlmutter's removal, and Mr. Perkins's appointment, Ms. Perlmutter will be irreparably harmed by being unable to perform her statutorily required duties.  *See* Perlmutter Decl. ¶ 14.

3.    <u>Irreparable harm to the Library of Congress and Copyright Office will frustrate Plaintiff's ability to resume her duties.</u>

Because of the institutional harm to the Library of Congress and U.S. Copyright Office that emanates from Defendants' unlawful actions, Ms. Perlmutter will be unable to return to her position as it currently exists unless she receives preliminary relief.  Because harm to Plaintiff and harm to the Library of Congress and the Copyright Office are inextricably intertwined, this circumstance again presents precisely the "extraordinary situation" requiring judicial intervention that the Supreme Court contemplated in *Sampson*.

This Court recognized this type of irremediable harm in *English v. Trump*, despite finding that a plaintiff claiming to be the rightful director of the Consumer Financial Protection Bureau did not suffer irremediable harm because it was likely that she could later be reinstated.  279 F. Supp. 3d 307, 313 (D.D.C. 2018).  *English* contrasted the plaintiff's circumstances with those in *Berry*, explaining that "any harm suffered by the commissioners [in *Berry*] was *plainly irreparable* because the commission would have expired and they could not have been reinstated to it." *English*, 279 F. Supp. 3d at 335 (emphasis added); *see also Davis v. Billington*, 76 F. Supp. 3d 59, 65 (D.D.C. 2014) (no irreparable harm arising from the plaintiff's termination because "he ha[d] no concrete proof that the vacancy . . . or some other comparable position w[ould] not be available when th[e] [case] is ultimately resolved").  *Aviel v. Gor* follows the same analysis, explaining that the plaintiff's harm was beyond remediation because "no amount of relief will resurrect her right to function" as it existed at the time that the lawsuit was initiated.  *Aviel I*, 2025 WL 1009035, at *11 (citation omitted).

These concerns are amplified here given that the President's attempt to take over the Library of Congress implicates separation-of-powers issues not ordinarily present in other employment disputes.  To decide this motion, the Court can and should consider these irremediable

separation-of-powers harms to the institutions themselves.  *See LeBlanc*, 2025 WL 1454010, at

*32 (finding irreparable harm based in part on the determination that the violation "impedes the

ability of the PCLOB to function as an independent watchdog in furtherance of protecting civil

liberties and privacy interests, as envisioned by Congress"); *Harris*, 2025 WL 521027 at *8

(finding irreparable harm based in part on the determination that "the MSPB's congressionally

mandated independence would be permanently marred by the threat of renewed removal and

delayed reinstatement while litigation proceed").

Given the sensitivity of the Library of Congress's statutory functions vis-à-vis Congress,

Congress has not given the President statutory authority to determine who the acting Librarian of

Congress should be.  *See supra* Part I.B.  Yet the President purports to wield exactly that power—

not merely to appoint *somebody* as acting Librarian of Congress, but to appoint an individual

serving concurrently in the Executive Branch.  The Copyright Office cannot perform its statutory

role as a neutral advisor to Congress if an Executive Branch official controls the Library of

Congress's operations.  To conclude otherwise would put the Deputy Attorney General in charge

of a legislative entity that "determin[es] the advisability" of Congress's legislative proposals, 2

U.S.C. § 166(d)(1)(a); prepares "materials and services to committees and Members of the Senate

and House of Representatives and joint committees of Congress to assist them in their legislative

and representative functions," *id.* § 166(d)(5); and performs additional duties in aid of the

legislative process, all "*without partisan bias*," *id.* § 166(d) (emphasis added).  And it would put

Defendant Perkins, a counselor to the Deputy Attorney General, in charge of the Copyright Office

itself—a body statutorily charged to provide neutral, technical advice to Congress.  *See* 17 U.S.C.

§ 701(b)(1), (4); *see also id.* § 407.

In connection with its role as adviser to Congress, the Library of Congress also stores

confidential "Congressional correspondence and other materials relating to work performed in

response to or in anticipation of Congressional requests," which are "exempt from disclosure" "unless authorized for release by officials of the Congress."   36 C.F.R.  § 703.5(b)(1).   If Defendants were to unlawfully access the Library of Congress's confidential records, including research and advice for Members of Congress on potential legislation, the damage would be irreversible.[10]   And if Defendants were to unlawfully access the deposits of copyrighted works safeguarded in the Copyright Office, the copyright registration system and the value of those works would be jeopardized.

In sum, the Executive Branch's unlawful seizure of the Library of Congress and Copyright Office, if permitted to continue until some undetermined future date, will deprive both institutions of their ability to continue as legislative entities that exist in significant part to provide nonpartisan advice to Congress.  That loss will prevent Ms. Perlmutter, if equitable relief is delayed, from serving as the Register of Copyrights in the manner that Congress envisioned.  Therefore, "[t]his unique, irremediable harm distinguishes this case from those where the plaintiff only pleads the loss of her own right to function in a role."  *Aviel I*, 2025 WL 1009035 at *11.

\* \* \*

For all these reasons, Plaintiff's case is nothing like a garden-variety employment dispute in which an employee seeks backpay or similar remedies for wrongful termination.  Ms. Perlmutter is not suing for monetary harm but instead the fundamental loss of her public office, which is imbued with important and ongoing statutory duties.  Mr. Blanche's unlawful appointment to the

---

[10] *See* Letter from Reps. Joseph D. Morelle, Rosa L. DeLauro, Adriano Espaillat, Terri A. Sewell, Norma J. Torres, and Julie E. Johnson, to Kimberly Benoit, Libr. of Cong. Inspector Gen. (May 12, 2025), https://democrats-cha.house.gov/sites/evo-subsites/democrats-cha.house.gov/files/evo-media-document/5.12.25-letter-to-loc-ig-re-investigation.pdf.    ("The Library is part of the legislative branch—an independent and coequal branch of government.  The executive has no authority to demand or receive confidential legislative branch data, and the Library has no legal basis to supply such information without authorization from Congress.").

position of acting Librarian of Congress, and Mr. Perkins's unlawful appointment to the position of acting Register of Copyrights, will do immeasurable damage to the neutral role of the Library of Congress and Copyright Office, and their services to Congress and the public.  If the Court does not enter preliminary relief for Ms. Perlmutter, this irreparable harm will prevent her from being able to serve as Register of Copyrights in accordance with her statutory mandate.  All that Plaintiff seeks through this motion is a preservation of the lawful *status quo*.  For the reasons stated above, Plaintiff has shown that she will suffer irreparable harm absent preliminary injunctive relief.

## III.    The Equitable Factors Strongly Favor Preliminary Relief

Finally, the balance of the equities and the public interest also favor an injunction.  A party's likelihood of success on the merits is a strong indicator that a permanent injunction "would serve the public interest" because "[t]here is generally no public interest in the perpetuation of unlawful agency action."  *League of Women Voters*, 838 F.3d at 12.  As discussed above, no Defendant had the legal authority to remove Ms. Perlmutter as Register of Copyrights.  *See supra* Part I.A.  There can be no public interest in her unlawful removal.  *See id.* (there is a strong interest in the executive branch "abid[ing] by the federal laws that govern [its] existence and operations").  Nor did Defendants have the legal authority to appoint Mr. Blanche to acting Librarian of Congress, *see supra* Part I.B, and therefore there can be no public interest in his unlawful placement in that position.  The public also has a strong interest in a swift remedy of separation of powers violations.  *See Grundmann*, 2025 WL 782665, at *18 ("If the Government had its way, it would place unchecked power in the hands of the President, which is antithetical to our system of government").  As discussed above, *supra* Part II, immediate relief is necessary to prevent irreversible harm to the Library of Congress, the Copyright Office, and Ms. Perlmutter's ability to perform her statutory duties.  The current lack of clarity as to the Office's leadership has already caused delay and uncertainty, which threatens to render inoperable significant functions of

importance to stakeholders and the general public. The public interest requires clarity so that the Copyright Office may continue its important work without impediment, and so that there is no question as to the validity and reliability of the Copyright Office's actions.

On the other side of this balance, the requested relief will not cause Defendants any hardship. "It is well established that the Government cannot suffer harm from an injunction that merely ends an unlawful practice." *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 218 (D.D.C. 2020) (citations omitted). Nor will Defendants be harmed by the maintenance of the *status quo*, in which Plaintiff, who has faithfully served as the Register of Copyrights for nearly five years, continues to fulfill her statutory role as an advisor to Congress and steward of the copyright system. Moreover, as explained above, the President faces no harm because he is not entitled to unilaterally appoint an acting Librarian of Congress nor to appoint the Register of Copyrights.

## CONCLUSION

For the reasons stated herein, the Court should grant preliminary injunctive relief in favor of Ms. Perlmutter.

Dated: June 10, 2025                        Respectfully submitted,

                                            */s/ Allyson R. Scher*
                                            Brian D. Netter (D.C. Bar No. 979362)
                                            Allyson R. Scher (D.C. Bar No. 1616379)
                                            Democracy Forward Foundation
                                            P.O. Box 34553
                                            Washington, DC 20043
                                            (202) 448-9090
                                            bnetter@democracyforward.org
                                            ascher@democracyforward.org

                                            Donald B. Verrilli, Jr. (D.C. Bar No. 420434)
                                            Ginger D. Anders (D.C. Bar No. 494471)
                                            MUNGER, TOLLES & OLSON LLP
                                            601 Massachusetts Avenue, NW, Suite 500E
                                            Washington, D.C. 20001

(202) 220-1100
donald.verrilli@mto.com
ginger.anders@mto.com

Kuruvilla J. Olasa (admitted *pro hac vice*)
James R. Salzmann (admitted *pro hac vice*)
Miranda E. Rehaut (admitted *pro hac vice*)
Adeel Mohammadi (admitted *pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
(213) 683-9100
kuruvilla.olasa@mto.com
james.salzmann@mto.com
miranda.rehaut@mto.com
adeel.mohammadi@mto.com

*Counsel for Plaintiff*