IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHIRA PERLMUTTER,<br><br>*Plaintiff*,<br><br>v.<br><br>TODD BLANCHE *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-01659-TJK |

## DECLARATION OF SHIRA PERLMUTTER

I, Shira Perlmutter, declare as follows:

1. I am the Register of Copyrights and Director of the U.S. Copyright Office in the Library of Congress. I was appointed to my position in October 2020 by then-Librarian of Congress, Carla D. Hayden.

2. From 2012 until my appointment as Register, I was the Chief Policy Officer and Director for International Affairs at the United States Patent and Trademark Office ("USPTO"), where I oversaw policy and international work in all areas of intellectual property including copyright, serving administrations of both parties. Earlier in my career, I served as the Associate Register for Policy and International Affairs at the U.S. Copyright Office; directed global legal policy for an international trade association; was a consultant on copyright and e-commerce at the World Intellectual Property Organization; headed intellectual property law and policy at AOL Time Warner; was a law professor at the Catholic University of America; and practiced at two private law firms. I have an AB from Harvard University and a JD from the University of Pennsylvania.

1

3.     The Library of Congress performs critical legislative functions, such as conducting research and policy studies for members of Congress, advising them on draft legislation, and maintaining records that are confidential to the legislative branch.

4.     Within the Library of Congress, the U.S. Copyright Office registers copyright claims, records information about copyright ownership, provides information to the public, and advises Congress and other parts of the government on copyright law and policy. The Office examines hundreds of thousands of copyright claims each year and receives deposits of works of authorship submitted for registration. These deposits contribute significantly to the Library of Congress's collections.

5.     As Register of Copyrights, by statute, I act under the Librarian of Congress's supervision and direction. Since May 8, 2025, when President Trump fired Librarian of Congress Carla D. Hayden, I have acted under the supervision and direction of Robert R. Newlen, who replaced Dr. Hayden as acting Librarian in accordance with the Library of Congress's regulations.

6.     In my role as Register of Copyrights and Director of the U.S. Copyright Office, I serve as the principal advisor to Congress on national and international copyright matters, testifying upon request, conducting studies and programs, providing impartial expertise on copyright law and policy, administering the U.S. Copyright Act, and leading a workforce of nearly 500 employees. I am statutorily required to perform the following responsibilities (among others):

  a. examine applications for copyright registration and register or reject claims, 17 U.S.C. § 410;

  b. advise courts on the impact of inaccurate information in a certificate of registration, *id.* § 411(b);

  c. maintain records of copyright deposits and registrations, *id.* § 705;

d. record transfers of copyright ownership, *id.* § 205;

e. establish regulations for the administration of my functions and duties, subject to the approval of the Librarian of Congress, *id.* § 702;

f. designate a Mechanical Licensing Collective ("MLC") to administer the mechanical blanket license for musical works and distribute collected royalties to songwriters and music publishers, *id.* § 115(d)(3)(B), and a Digital Licensee Coordinator ("DLC") to represent digital music services in the administration of the license, *id.* § 115(d)(5)(B).

g. recommend Copyright Claims Officers to serve on the three-member tribunal Copyright Claims Board ("CCB"), the small claims court recently established by the Copyright Office at the direction of Congress; and review the CCB's decisions for abuse of discretion before they can be appealed in district court, *id.* § 1506(x); and

h. review for legal error decisions by Copyright Royalty Judges, which determine royalty rates, adjust terms, and ensure the distribution of royalties deposited by licensees, no later than 60 days after the date of their final determination, *id.* § 802(f)(1)(D); consult with the Copyright Royalty Judges on legal issues as requested, *id.* § 802(f)(1)(A)(ii); and resolve novel questions of law as requested, *id*. § 802(f)(1)(B).

7. On May 9, 2025, the U.S. Copyright Office issued in pre-publication format, the long-awaited Part 3 of Copyright and Artificial Intelligence, a report made pursuant to my statutory responsibility to "[c]onduct studies . . . regarding copyright" and "[a]dvise Congress on national and international issues relating to copyright." 17 U.S.C. § 701(b)(1), (b)(4). This Part, subtitled "Generative AI Training," addressed the use of copyrighted works in the development of generative AI systems. *See* U.S. Copyright Off., Copyright and Artificial Intelligence Part 3: Generative AI Training (May 2025), https://perma.cc/3J9F-7SQN. The Report concluded that

3

some uses of copyrighted works in generative AI training were likely to qualify as "fair use," but some uses were likely to require licensing. Part 4 of the Copyright and Artificial Intelligence report, which will be the final part, remains in progress.

8. On May 10, 2025, I received an email from Trent Morse stating that, at the direction of President Trump, I was terminated from my position effective immediately.

9. Specifically, the May 10, 2025 email, *see* Exhibit A, reads:

> Shira,
>
> On behalf of President Donald J. Trump, I am writing to inform you that your position as the Register of Copyrights and Director at [sic] the U.S. Copyright Office is terminated effective immediately.
>
> Thank you for your service.
>
> Trent Morse
> Deputy Director
> Presidential Personnel

10. I am informed and believe that on May 12, 2025, Brian Nieves and Paul Perkins arrived at the Library of Congress and requested access to the U.S. Copyright Office. Mr. Nieves and Mr. Perkins showed Library staff a letter from the White House that purported to appoint Todd Blanche to serve as the acting Librarian of Congress. *See* Exhibit B. Mr. Nieves and Mr. Perkins also showed Library staff printed versions of emails from Mr. Blanche, in which he purported to appoint Mr. Nieves as acting Principal Deputy Librarian of Congress and Mr. Perkins as acting Register of Copyrights and Director of the U.S. Copyright Office. *See* Exhibit B. Mr. Nieves and Mr. Perkins subsequently left the premises.

11. To my knowledge, no official at the Library of Congress has recognized Mr. Blanche as the acting Librarian of Congress. Still, the purported appointments of Mr. Blanche, Mr. Nieves, and Mr. Perkins have caused considerable confusion among Library staff, copyright stakeholders,

and the public. If the conflicting claims to the positions of acting Librarian of Congress and Register of Copyrights are not resolved, staff will not be able to ascertain who is in control of the Library and the Copyright Office, and therefore who supervises and directs their work.

12. Despite Mr. Perkins's claim that he is Acting Register of Copyrights, I remain Register of Copyrights and therefore am required by law to fulfill my above-described statutory obligations.

13. I have not received any communication from Library of Congress leadership that purports to terminate my employment as Register of Copyrights.

14. My statutory duties include many current and near-term responsibilities that Mr. Perkins's claim to serve as Acting Register of Copyrights impedes my ability to faithfully execute, including (among others), the following. Without an injunction, I will be unable to effectively:

   a. register copyright claims if the works contain copyrightable subject matter—actions that have significant implications for private rights, including in copyright litigation. Copyright registration is generally a prerequisite to bringing an infringement lawsuit and to obtaining an award of statutory damages and attorneys' fees. Without an effective and timely registration system, copyright owners will face difficulties in enforcing their rights;

   b. redesignate an MLC and DLC as required every five years. The current redesignation process began in January 2024 and remains incomplete;

   c. appoint a new Copyright Claims Officer, in consultation with the Librarian of Congress, to replace an Officer whose term is ending. Without a new Officer, the Board will be unable to function effectively;

 d. issue rulemakings that are currently underway, including a forthcoming rulemaking establishing a Group Registration option for Two-Dimensional Artwork, https://www.copyright.gov/rulemaking/gr2d/;

 e. review determinations by the Copyright Royalty Judges for legal error within 60 days after the date on which their final determination is issued;

 f. continue to advise courts on the impact of inaccurate information contained in a certificate of registration, 17 U.S.C. § 411(b); and

 g. issue the final part of the Office's Copyright and Artificial Intelligence report, pursuant to my statutory responsibility to "[c]onduct studies" and "[a]dvise Congress on national and international issues relating to copyright," 17 U.S.C. § 701(b)(1), (b)(4).

15. For the above-described reasons, Mr. Perkins's claim that he is the acting Register of Copyrights will also impede the Copyright Office's ability to perform its work as authorized by Congress and critical to copyright owners and users.

16. If the U.S. Copyright Office loses its credibility as a reliable administrator of the copyright system and non-partisan advisor to Congress, my ability to fulfill the statutory duties of the Register of Copyrights will be severely compromised.

I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Alexandria, Virginia  
June 10, 2025

_____  
Shira Perlmutter