```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
                           ---

SHIRA PERLMUTTER,            )
                             )
                             )
       Plaintiff,            )  CIVIL NO. 25-1659
                             )
v.                           )
                             )  Wednesday, July 23, 2025
TODD BLANCHE, et al.,        )
                             )  3:08 p.m. - 4:09 p.m.
                             )
       Defendants.           )
_____)
```

              TRANSCRIPT OF PRELIMINARY INJUNCTION

          BEFORE THE HONORABLE TIMOTHY J. KELLY
                UNITED STATES DISTRICT JUDGE
                          ---

APPEARANCES:        DEMOCRACY FORWARD FOUNDATION
                    BY:  Brian D. Netter
                         Allyson R. Scher
                         Adeel Mohammadi
                    P.O. Box 34554
                    Washington, DC 20043
                    202-448-9090
                    Email: Ascher@democracyforward.org
                    Email: Bnetter@democracyforward.org

                    For the Plaintiff

                    U.S. DEPARTMENT OF JUSTICE
                    FPB CIVIL DIVISION
                    BY:  Benjamin Hayes
                    20 Massachusetts Avenue, NW, Room 7224
                    Washington, DC 20530
                    202-514-4778
                    Email: Benjamin.T.Hayes@usdoj.gov

                    For the Defendants
                          ---
COURT REPORTER:     CHANDRA R. KEAN, RMR
                    Official Court Reporter
                    333 Constitution Avenue, NW
                    Washington, DC 20001

```
1                         PROCEEDINGS

2              (Court called to order at 3:08 p.m.)

3              DEPUTY COURTROOM CLERK:  We're on the record in

4    Civil Matter 25-1659, Shira Perlmutter v. Todd Blanche,

5    et al.

6          Present for the plaintiff are Brian Netter, Adeel

7    Mohammadi, and Allyson Scher.  And present for the

8    defendants is Benjamin Hayes.

9              THE COURT:  All right.  Good afternoon to

10   everyone.  So without further ado, let me recognize --

11   and we'll do it the same way we did it in connection

12   with the TRO.  I'll hear from the plaintiff; I'll hear

13   from the defendant; and then I'll let the plaintiffs

14   respond to anything the defendants said.

15         You know, I'll just -- you all -- let me put it

16   this way.  You all know where I was at the time of the

17   TRO, so I would say take that into account when using

18   your time.  But other than that, any of the factors you

19   want to hit, I'm happy to hear you on.

20         So I don't know who it will be for the plaintiff,

21   whether it's Ms. Scher or someone else, but you may

22   proceed.

23             MR. NETTER:  Good afternoon, Your Honor.  Brian

24   Netter from Democracy Forward Foundation.  I'll be

25   handling this argument for the plaintiff, Ms.
```

1    Perlmutter.

2                THE COURT:  All right.  Very well.

3                MR. NETTER:  Since the last hearing in this

4    matter, nothing has cured the abject lawlessness of the

5    attempted takeover of the Library of Congress by Todd

6    Blanche and his subordinates, nor have any of the facts

7    meaningfully changed.

8        Ms. Perlmutter remains unable to perform the

9    functions assigned to her by law, and the Library of

10   Congress and Copyright Office remain in a state of

11   disarray.

12       What has changed since this Court's emergency TRO

13   review is that there is new guidance from the D.C.

14   Circuit on a series of critical issues.  In *Aviel v.*

15   *Gor,* a motions panel reviewing the government's motion

16   to stay an order reinstating the president of the

17   Inter-American Foundation pending appeal, denied the

18   government's motion.  And although some motions panel

19   orders leave the parties guessing as to the reasons for

20   the panel's order, the *Aviel* panel majority provided a

21   full opinion by Judge Katsas and joined by Judge

22   Pillard.

23       The *Aviel* opinion includes three critical findings:

24       First, for purposes of likelihood of success on the

25   merits, the panel found that where the Federal Vacancies

1    Reform Act does not expressly authorize the President to

2    appoint an acting principal officer, it is unlikely that

3    the Take Care Clause gives the President freestanding

4    authority to make a temporary appointment.  And on this

5    point, Judge Rao agreed as well.

6        Second, where the President does not have the

7    authority to appoint an inferior officer, he does not

8    have the authority to fire the inferior officer.  And

9    this determination by the D.C. Circuit follows the

10   Supreme Court's holdings in *Free Enterprise Fund v.*

11   *PCAOB* and the 1839 decision in *In Re Hennen*.

12       And, third, at least until the Supreme Court or a

13   D.C. Circuit merits panel weighs in, the quote-unquote

14   "last word" from the D.C. Circuit for purposes of

15   preliminary relief is that reinstatement is an

16   appropriate remedy if the removals at issue were likely

17   unlawful.

18       In so reasoning, the panel adopted an

19   interpretation of the Supreme Court's *Wilcox* stay order

20   that differs from this Court's preliminary assessment.

21       So our fundamental submission to the Court at this

22   moment of time, on full review of the preliminary

23   injunction, is with the guidance of the D.C. Circuit

24   under *Aviel*, the Court's assessment that Ms. Perlmutter

25   could not demonstrate irreparable injury, at least for

1    purposes of the 14-day period of the TRO, should not

2    guide the determination of whether she demonstrates

3    irreparable injury for purposes of the duration of the

4    case under the preliminary injunction standard.

5         THE COURT:  Can you just go into the very last

6    point you made of the three?  I think -- and what you

7    said was it conflicted with my reasoning, I think you

8    said.

9         Explain to me what you mean by that.

10         MR. NETTER:  So Judge Katsas's opinion in *Aviel*

11    takes the position that what the Supreme Court was

12    saying in *Wilcox* was that a party is unlikely to

13    demonstrate irreparable harm -- the equities weigh

14    against that party -- if it is likely on the merits that

15    the President had the authority to terminate that

16    individual.  So the --

17         THE COURT:  That is -- okay.  So that's your

18    argument, is that it conflicts with how I had

19    interpreted *Wilcox*.

20         MR. NETTER:  That's correct, Your Honor.

21         THE COURT:  Okay.  I understand the argument.

22    I -- well, okay.  I understand your argument.  I'll wait

23    to hear from the other side, but you can proceed.  But I

24    wanted to make sure I understood the point you were

25    making.

```
 1              MR. NETTER:  And let me follow up.  Not just
 2     with respect to -- and whether this Court should follow
 3     what we construe Judge Katsas to have been saying in the
 4     Aviel ruling but in the Supreme Court's decision in
 5     Wilcox itself.  The one thing we would want to refer the
 6     Court to is the critical language, and I'll read this
 7     quotation, is, "The stay also reflects our judgment that
 8     the government faces greater risk of harm if an order
 9     allowing a removed officer to continue exercising the
10     executive power than a wrongfully removed officer faces
11     from being unable to perform her statutory duty."
12         And the citation that's attached to that quote is
13     to Trump v. International Refugee Assistance Project,
14     2017 per curiam decision of the Supreme Court.  And
15     the --
16              THE COURT:  I have it right here.  No, go
17     ahead.
18              MR. NETTER:  Excellent.  And the Supreme
19     Court's -- a quotation from Trump v. IRAP is the purpose
20     of interim equity relief is not to conclusively
21     determine the rights of the party but to balance the
22     equities as the litigation moves forward.
23         So what that's saying is, effectively, that given
24     that a preliminary injunction is an exercise of a
25     Court's equitable authority, the point of this practice
```

1    is to minimize the expected harm that results from

2    having to establish what the rules are going to be while

3    the case is being litigated.  So, naturally, and as a

4    mathematical matter, the way that one computes expected

5    harm is by taking both what the harm would be if a

6    circumstance were to be true and the likelihood that

7    that circumstance would come to pass.

8        So, naturally, if it is true that the President is

9    likely to prevail on his argument that he was entitled

10    to fire an individual, then, if you multiply that by the

11    harm to the President of not having his preferred person

12    in office, that creates a very different dynamic than a

13    situation where, as here, Ms. Perlmutter -- the

14    arguments on the merits for Ms. Perlmutter having been

15    fired are extraordinarily weak.  And the harms that she

16    will suffer, therefore, in the balancing of the

17    equities, in terms of expected value, necessarily tilt

18    the balance in a certain direction.

19        THE COURT:  I understand your argument.  And

20    what you're saying is that it's just -- it's

21    interesting -- look, you know, it's hard to -- all of

22    these opinions, whether we're talking about Supreme

23    Court in *Wilcox* or some of the other ones on the D.C.

24    Circuit are hard to -- in some cases, are hard to divine

25    exactly what is happening, obviously.

1          But your argument is that there is interplay --

2     what this is suggesting is interplay between what the

3     Court is saying in the balance of the equities and its

4     assessment of the merits.

5               MR. NETTER:  Correct, Your Honor.

6               THE COURT:  The likelihood of success.

7               MR. NETTER:  And we would assert that it's not

8     just us saying this, but that's what Footnote 2 in Judge

9     Katsas' opinion in *Aviel* is suggesting.

10               THE COURT:  Well, you use the word

11     "suggesting," and I think that's fair.  I mean, again, I

12     think this is all very murky and somewhat difficult to

13     nail down conclusively because of the posture these

14     cases are in.  That certainly -- I agree with you that's

15     one way to read what he was saying -- what Judge Katsas

16     was saying, that is -- but, okay.  I understand your

17     argument.

18               MR. NETTER:  Thank you, Your Honor.  And I

19     think what's essential there is that Judge Katsas, who

20     has not always been in the majority of the en banc court

21     for these purposes, viewed himself effectively as bound

22     by the most recent en banc decision of the D.C. Circuit

23     in this stay posture for purposes of ruling on a panel

24     stay.

25          And this, you know, leaves open the possibility

1    that he or District Court judges or that the D.C.

2    Circuit en banc could reach a different decision after a

3    merits determination.  But what this Court is deciding

4    right now is that necessarily probabilistic assessment

5    of where things sit in terms of preliminary relief.

6         And for those purposes, our assessment is that a

7    recent and reasoned panel by the D.C. Circuit that

8    necessarily rejected the government's arguments in that

9    case as to irreparable harm, which track the arguments

10    that the government is making here in large part, that

11    that should guide this Court's assessment of whether Ms.

12    Perlmutter has established irreparable harm for purposes

13    of her motion for preliminary injunction.

14              THE COURT:  It's tough because there are --

15    you'd have to acknowledge, right, that there are plenty

16    of times when courts don't seem to weigh -- they don't

17    seem to do the sort of expected value calculation that

18    you're offering.  And they say -- and even -- and,

19    again, you can interpret *Wilcox* as saying this, too --

20    but that basically say when they end up -- if a Court

21    ends up denying -- I guess it only comes up in this

22    scenario -- but denying preliminary relief on the basis

23    of irreparable harm, and they go out of their way to

24    say, well, even assuming the plaintiff is likely to end

25    up -- is likely to win, and, in fact, they're

1    wrongfully -- which is different, I know, what you're

2    saying is happening in *Wilcox*, and I get what you're

3    arguing.  But they say, even if they're likely to win,

4    this is not the type of harm -- or however you want to

5    put it.  It's not the type of harm that could get you

6    irreparable harm.

7         And so even though we assume -- we're assuming

8    they're -- for example, they're wrongfully removed in

9    this case, or whatever the case might be, they're going

10   to end up winning on the merits, that because of the

11   nature of the harm at stake they don't get over the

12   hump.

13        How do you respond to that -- to that, which I

14   think is put -- zooming out a little bit from the

15   language of some of these cases over the last few

16   months, is sort of like how courts do sometimes when

17   they're going to decide on this basis, tend to come out?

18   Or how they describe what they're doing is really what I

19   mean to say.

20             MR. NETTER:  So, Your Honor, whatever the

21   points of disagreement may be at the D.C. Circuit on

22   questions of the appropriateness of judicial relief in

23   these employment disputes, I think our first-line

24   argument would be that there's no reading of *Aviel* that

25   is consistent with the conclusion that it is never

1     appropriate to grant preliminary relief to a federal

2     employee who has supposedly been fired through a

3     potentially unlawful process.

4            THE COURT:  Okay.  I mean, I -- to say -- well,

5     it's never appropriate -- it's never appropriate or a

6     plaintiff -- or it's not -- I'm sorry, repeat what you

7     just said.

8            MR. NETTER:  Well, instead of repeating it, let

9     me state it differently.

10           THE COURT:  Okay.

11           MR. NETTER:  Which is, to the extent there is

12     an argument out in the world that the theory of

13     irreparable harm doesn't work, that there's no such

14     thing as having irreparable harm from having lost your

15     senior-level federal job, that argument is inconsistent

16     with the outcome in *Aviel*.  It's certainly inconsistent

17     with the resolution as compared to the arguments the

18     government made in that case.

19     So then the question has to be, and what is the

20     standard --

21           THE COURT:  Go ahead.

22           MR. NETTER:  And if it is true that irreparable

23     harm exists in only some circumstances, is this one of

24     those circumstances?  And on that point, we adamantly

25     assert that this is a very strong case in which Ms.

1    Perlmutter is experiencing irreparable harm because of

2    the facts surrounding the attempts to dismiss her.

3        So on May 9th, Ms. Perlmutter published, in her

4    capacity as Register of Copyright, a pre-publication

5    version of Part 3 of her report to Congress on

6    artificial intelligence, discussing how -- whether AI

7    companies -- discussing, excuse me, whether AI companies

8    may use copyrighted materials to train their models.

9        The very next day, on May 10th, the President

10   purported to remove her, setting into motion the chain

11   of events that gave rise to this litigation.

12       So there's a strong evidentiary inference that the

13   President sought to sideline her so as to prevent her

14   from continuing the important work that she has been

15   doing as an adviser to Congress.

16       Now, if it was important enough for the President

17   unlawfully to prevent Ms. Perlmutter from finishing her

18   report to Congress on the applicability of copyright law

19   to artificial intelligence, then surely Ms. Perlmutter

20   has an interest in resuming that work.  And a Court

21   exercising a fundamentally equitable authority should

22   not be putting a thumb on the scale to favor the lawless

23   actions of the executive branch, you know, vis-a-vis an

24   act of performing fundamentally legislative functions in

25   that regard.

1          So now the Supreme Court case that starts this

2     line, the *Sampson* case and its progeny, those cases talk

3     in terms of balancing the parochial interests of the

4     fired employee against the, quote, "latitude

5     traditionally afforded to the government in handling its

6     own internal affairs."

7          And if we start with that second point here, the

8     interest of the executive branch are diminished because

9     at least some of the Register's functions, and

10    potentially the functions that caused for the President

11    to seek to intervene, are legislative in nature.

12         And it -- I think the Court should take judicial

13    notice of the fact that just today the White House has

14    issued a -- what it's calling America's AI Action Plan.

15         So the need for Ms. Perlmutter to be on the ground

16    advising Congress as to how copyright intersects with

17    artificial intelligence is more significant and more

18    important than perhaps ever.  And permitting the

19    executive branch officials to sideline Ms. Perlmutter

20    because they don't want her to be able to provide the

21    advice to Congress that she has been providing as a

22    lifelong expert on copyright matters is fundamentally

23    inequitable and should not fall into the bucket of

24    letting the executive branch manage its own internal

25    affairs, because that's just not what's going on here.

1           And if any of these harms could be remedied for

2     purposes of this being irreparable harm, the government

3     hasn't offered any theories as to what that remedy would

4     look like at the end of the case.

5           If legislation is considered and adopted while Ms.

6     Perlmutter is on the sidelines, then there's not

7     realistically going to be any pathway for Congress to

8     reopen those bills and take account of the advice that

9     she would have given had the executive branch not

10    interfered.

11          Likewise, all of the appointments and the functions

12    that are assigned to her by statute are assigned to the

13    Register by statute because she is an important expert

14    on copyright law and ought to be there performing those

15    functions.  So it is rare in these cases where you have

16    a government official who has functions specifically

17    assigned to her by statute.

18          She is not a line-level employee or somebody who is

19    just performing tasks that are assigned by a supervisor

20    that, you know, could be delegated to somebody else.

21          Here we have a circumstance in which Congress has

22    said, this is what we want the Register to be doing, and

23    she can't do those things.

24              THE COURT:  I take your point.  When you say

25    they're assigned to her, they're assigned to the office,

1    and your position is she's the rightful person to be in

2    that office.  But the legislation doesn't say Ms.

3    Perlmutter is assigned these things.  They're assigned

4    to an office.  And she, in your view, is the rightful,

5    lawful occupant of that office.

6         Fair?

7              MR. NETTER:  That's correct, Your Honor.  And

8    we'll turn in a moment to the merits.  But if we accept

9    the proposition that she is the Register of Copyrights

10    then -- Register of Copyright, excuse me -- then she has

11    both the privilege of serving as its adviser and the

12    responsibility of discharging these statutory tasks.

13         And the executive branch officials who are standing

14    as the obstacle to her accomplishing those tasks are

15    acting fundamentally inequitably and are preventing her

16    from doing the things that she is entitled to and

17    responsible for doing.

18         So it does invariably tie us back to the merits,

19    and perhaps this is an opportunity, then, to walk

20    through the points on the merits because this seems

21    exceedingly straightforward.

22         Ms. Perlmutter is likely to prevail on the merits

23    because her position as Register of Copyrights is an

24    inferior officer for purposes of the Appointments

25    Clause.  This is undisputed as between the parties.  And

1    for an inferior officer, the Constitution's Appointment

2    Clause, it says that Congress may decide by statute

3    whether the officer will be appointed by the President,

4    by the courts of law, or by a head of department.

5        And here, through 17 U.S.C. 701, Congress decided

6    to vest appointment authority in the Librarian of

7    Congress.  And as we discussed, as one of the issues

8    handled by the *Aviel* panel, unless otherwise provided by

9    statute, the power to remove an inferior officer belongs

10    to whoever holds the appointment power.

11        So this is -- pursuant to binding Supreme Court

12    precedent, Ms. Perlmutter can be removed only by the

13    Librarian.

14        So that takes us to the question of whether

15    Mr. Blanche, when he was purporting to act as the

16    librarian, was lawfully exercising that role.

17        Pursuant to the Appointments Clause, the President

18    lacks any inherent authority to appoint principal

19    officers without the advice and consent of Congress

20    unless Congress has expressly provided such authority by

21    statute.  And that's where the Federal Vacancies Reform

22    Act comes in.

23        The FVRA doesn't help the executive branch here

24    because Congress did not include the Library of Congress

25    within the statute's scope.  It very clearly, in 5

1     U.S.C. 3345(a), says that the FVRA applies to an

2     executive agency.  Executive agency is defined in

3     Section 105 to include executive departments, which are

4     enumerated and don't include the Library of Congress;

5     government corporations, which are defined in 103 and

6     plainly does not include the Library of Congress; or

7     independently -- independent establishments as defined

8     in Section 104.

9           In Section 104, "independent establishment" is

10    defined to mean an establishment in the executive

11    branch, which is not an executive department, military

12    department, or government corporation, plus, the

13    Government Accounting Office -- or Government

14    Accountability Office these days.

15          So the question ultimately becomes whether, as a

16    matter of statute -- and it's well established that

17    Congress is not obligated to follow constitutional norms

18    in using statutory terms.  So the question is whether,

19    as a matter of statute, the Library of Congress is an

20    independent establishment and, therefore, an executive

21    agency.  And there is just not a whit of evidence to

22    suggest that Congress treated the Library of Congress as

23    an independent establishment and, therefore, as an

24    executive agency.

25          Much to the contrary, there is again binding D.C.

1    Circuit precedent, the case of *Haddon v. Walters*,

2    establishing that when Congress has used the term

3    "independent establishment" in distinction to an agency,

4    when it has identified a list that includes both

5    independent establishment and the agency, that excludes

6    the possibility that the agency or entity at issue is an

7    independent establishment.

8        And that is precisely what happens in the U.S.

9    Code, because in -- 5 U.S.C. 4101(a) uses "independent

10   establishment" in distinction to the Library of

11   Congress.  It lists both an independent establishment or

12   the Library of Congress.

13       Moreover, we identified in our briefs a dozen

14   separate circumstances in which Congress used the term

15   "executive agency" in distinction to the Library of

16   Congress.  There is simply no basis whatsoever to infer

17   from this that Congress intended for the Library of

18   Congress to be treated as an independent establishment.

19       Now, the defendants' only argument in response is

20   that they say that this is just a belt and suspenders

21   situation that apparently involves a whole lot of belts

22   and a whole lot of suspenders because we have more than

23   a dozen circumstances in which Congress has used the

24   term -- the relevant statutory terms in a way that's

25   inconsistent with including the Library of Congress.

1          And there's effectively no real argument here, no

2     real argument as to why Congress would have done so.

3     And if it was so important in those other 13-plus

4     examples for Congress to emphasize that the Library of

5     Congress, through its belt and suspenders obsession,

6     that the Library of Congress would be included, why not

7     here?  Why, if it was so important for the Library of

8     Congress to be included elsewhere, would Congress not

9     have expressly included the Library here?

10          And the only proper inference is the inference that

11     always follows from the canon against super fluidity,

12     which is that Congress wasn't using the term

13     "independent establishment" to include the Library of

14     Congress.

15          Therefore, it follows that Mr. Blanche does not

16     have any authority as acting Librarian of Congress

17     because the President lacked the authority to appoint

18     him to that role under the FVRA or under any other

19     mechanism, and that he, therefore, had no authority to

20     terminate or to remove Ms. Perlmutter from her role as

21     Register of Copyright such that she properly continues

22     to hold that position and ought to be restored during

23     the pendency of this litigation.

24          THE COURT:  All right.  Thank you.  I

25     appreciate your argument.

1          Let me hear the defendant in response.

2          MR. HAYES:  Good morning, Your Honor.  Benjamin

3     Hayes for the defendants.

4          I'm happy to start wherever you would like, but I

5     guess I think it appropriate to start at irreparable

6     harm since that's where the other side started as well.

7     And so I'll start with the *Wilcox* and the *Dellinger*

8     cases because I think I have a very different

9     understanding of those cases.  I think Your Honor's

10    prior TRO decision got those cases exactly right.

11         So the *Wilcox* decision -- I think what's relevant

12    here is the *Wilcox* decision and the *Dellinger* decision

13    from the D.C. Circuit.

14         My read of *Wilcox* is exactly as Your Honor read it,

15    that there are two independent bases identified in the

16    Supreme Court's order that justify the stay.  And the

17    Court lays them out separately.

18         One is the merits question.  And then it says, "The

19    stay also reflects our judgment that the government

20    faces greater risk," et cetera.  And that's the language

21    that the parties have quoted.

22         I don't know how to read that, frankly, without

23    reading it for what it says.  And at least, whether it's

24    focused just on an irreparable harm question or the

25    balance of harms in total, the bottom line is still that

1    when they are asserting a statutory right to function

2    theory, when the plaintiff is, that is not enough given

3    the relative harms that the government is suffering and

4    they are.

5         I don't know how to read it other than that, and I

6    don't think the *Aviel* decision undermines that at all.

7    That decision says nothing whatsoever about irreparable

8    harm.

9         The footnote is discussing a separate merits

10   question, Footnote 2, a separate merits question about

11   whether reinstatement was an available remedy.  The

12   Court doesn't go into irreparable harm.

13        Now, maybe there's a chain of inferences that one

14   could draw that says, well, maybe that might be related,

15   but that's not what that footnote is talking about, and

16   I don't think that's enough, certainly, to rewrite what

17   *Wilcox* was saying.

18        And I do think, on this point, the *Dellinger* stay

19   is relevant too because, as I take my opponent's

20   argument, I think it is that you have to have both

21   likelihood of success on the merits as well as, you

22   know, the other factors in order to get a stay.

23        And *Dellinger* says -- makes -- as Your Honor was

24   suggesting courts do this -- assumes that the plaintiff

25   is correct that his removal is statutory ultra vires

1    nonetheless found, no irreparable harm and granted a

2    stay of the injunction.

3        So I think that's exactly how the courts have

4    approached this:  Irreparable harm is needed and an

5    independent basis for obtaining a preliminary injunction

6    or a TRO.  And I don't think reading a footnote in *Aviel*

7    can displace at least what the Supreme Court has told us

8    and the D.C. Circuit in the *Dellinger* case, in terms of

9    what is likely -- what is there not final say on the

10    matter but their assessment of what statutory right to

11    function is and whether it's enough to get emergency

12    injunctive relief.  So I think that's the appropriate

13    way to read those decisions.

14        But I think that, you know, even if we're going to

15    go further than that and say, well, maybe there is some

16    form of this that there can be irreparable harm based on

17    statutory right to function, this case doesn't fit into

18    that.  And this -- I think Your Honor's TRO decision

19    made this point too.

20        I think most of the cases that have preceded this,

21    this one, and in which statutory right to function has

22    been held to be irreparable harm fall into one of two

23    buckets.

24        The first are, where the principal officer, the

25    vacancy, is someone who is appointed by the President

1    with the advice and consent of the Senate, to an

2    independent agency or -- independent position or a

3    multi-member independent board with for-cause removal

4    protections.

5        And the cases that have done that highlight in

6    multiple places of the opinions those features as would

7    distinguish those cases from, say, your run-of-the-mill

8    employment dispute.  And they have emphasized that that

9    is what -- if it's going to be a theory that is viable

10   for irreparable harm, you need to have that.

11       Other cases that have not involved an individual

12   who is confirmed by the Senate and nominated by the

13   President, like the *Brehm* decision by Judge Leon -- I

14   think it's true of the *English* decision as well --

15   highlighted those distinctions as to say those cases are

16   different.  We're not here talking about someone who is

17   appointed by the President, confirmed by the Senate, and

18   someone who isn't serving on an independent entity.

19       So I think that -- even if this theory is accepted,

20   it clearly doesn't fall into the buckets of those cases

21   that have accepted it.  So I think that's a reason to

22   reject it there.

23       The second bucket are cases like *Berry* and *Aviel*.

24   And those are cases where irreparable harm was found

25   because the entity, whether it was the -- I think a

1    civil rights board in *Berry* -- and I can't remember the

2    other one -- and *Aviel*, were either going to terminate

3    legislatively, be gone, so you can't reinstate someone

4    to something that's no longer there, or was going to be

5    fundamentally changed from what they were before.

6        And those are -- there's -- there's nothing like

7    that here.  There wasn't any evidence of that when this

8    case was filed.  There's no evidence of that when the PI

9    briefing went through.  There's nothing to suggest that

10   in the declaration.  And nothing like that has happened

11   today.

12       So I think -- and I think that long history

13   demonstrates why at this point, 75 days out, no --

14   there's no suggestion that the Library of Congress is in

15   peril.  I think that just underscores why those cases

16   are totally different than what we're talking about even

17   if you think the statutory right to function theory is

18   one that can qualify for irreparable harm.

19       I'll address -- so they have several other theories

20   of irreparable harm that I can walk through.

21       The other -- the second one is this inability to

22   perform legislative functions.  As I think Your Honor's

23   stay decision -- not stay decision -- TRO decision

24   references, it's a little bit hard to distinguish this

25   theory from the statutory right to function theory.  So

1    I think it could be dispensed with just on that ground.

2    But I think, in addition to that, there are a couple

3    other problems with it.

4        The first is -- and this is also relevant to the

5    statutory right to function -- that at bottom, these are

6    not harms to her.  I think Your Honor's *English* decision

7    makes this point, that the harm has to be harm to the

8    individual.  And this conflates harm to the plaintiff

9    with harms to the Copyright Office or the Library of

10   Congress or some other entity.  And I don't think that's

11   what the law allows.  I think *Dellinger* is a good

12   example of not allowing that, that it has to be harm to

13   her and not to the entity.  So I don't think that

14   conflation is allowed under the law.

15       But even if you were to allow it, I don't think

16   that she has substantiated the harms that she has

17   identified.  So we have before us a single declaration

18   from the plaintiff, which I think is defective for all

19   the reasons Your Honor signaled in your TRO decision.

20       One point Your Honor made was that there's very

21   little -- very little by way of timing, like, when is

22   this going to happen.  Irreparable harm has to be

23   imminent.  So a lot of the functions that the Copyright

24   Office -- copyright director or the plaintiff says need

25   to be done, there's no timeline on them.  So it's hard

1   to say that that satisfies irreparable harm.  Others of

2   them seem to be done.

3        So one of her examples in Paragraph 14 is it will

4   be difficult to effectively register copyright claims.

5   The Law 360 article that they submitted in their brief

6   paints a very different picture, that the Copyright

7   Office is doing all of these things and is open for

8   business.  There was a brief period of time in, I think,

9   May, when there was a backlog as -- right around the

10   time when the removals happened, but those have been

11   cleared.

12        There's no indication that the Copyright Office

13   isn't proceeding.  The only thing they point out in

14   their brief is that there is not a signature, but they

15   acknowledge that that's not statutorily required anyway.

16   So that's not a barrier to the Copyright Office

17   functioning.

18        Another example she gives is the appointment of --

19   this is Paragraph 14, subparagraph C -- the appointment

20   of a new copyright claims officer.  I just looked on

21   their website.  That person has been reappointed in

22   July 2025.

23        So the point of all of this is just to illustrate

24   that, while you can read her declaration as being a

25   parade of horribles of things that's going to happen,

1    you either don't have any clear guidance in terms of

2    timing or you have lists of things that are actually

3    moving forward as they seem to normally move forward.

4         And so, at bottom, it is her burden to put forth

5    evidence to support irreparable harm.  It has to be

6    great.  It has to be imminent, and so on.  And I don't

7    see how -- even if we put aside the theoretical problems

8    with statutory right to function, ability to perform

9    legislative functions, and so on, I don't see how she's

10   satisfied the burden just of producing evidence to

11   support a theory of irreparable harm.

12        And I guess the last harm -- I probably covered

13   most of this already -- is the harms to institutions,

14   which a lot of the same points can be made.  It's not a

15   harm to her; it's a harm to the institution.

16        Her declaration, by the way, says nothing about --

17   there are concerns, for example, in her brief about

18   disclosure of confidential information, you know,

19   Congress's correspondence, things like that.  None of

20   that is in the declaration.  That's all attorney

21   argument in the brief.  It's pure speculation

22   regardless, and there's no evidence that I'm aware of

23   that anything like that has occurred now 75 days out

24   from when this suit was initiated.  So I think that

25   fails for multiple reasons, too.  And so --

1           THE COURT:  It's also not -- as I understand it

2      anyway, it's not part of her job.  I mean, the issue

3      of -- I know there's an argument that she has certain

4      advisory duties to Congress, okay, but I think that's

5      referring to like CRS, which is a separate animal.  It

6      doesn't mean there's nothing to this argument on her

7      part.  But the core things that I think I've seen folks

8      express concern about is I make -- I'm a member of

9      Congress.  I make a confidential request to Congress

10     for -- I mean, to the Library for some legislative

11     research.  I might even, you know -- that might even

12     be -- and I don't want the executive to know what I'm

13     doing.  That wouldn't be within her job parameters

14     anyway.

15         Is that fair to say?

16           MR. HAYES:  I think that's fair so -- it's fair

17     to say that the copyright director does not control CRS.

18     So I think that's totally separate entirely from

19     anything that she might be doing in terms of advising

20     Congress, which, yeah, is another reason why anything

21     related to that is not harm to the Copyright Office and

22     certainly not a harm that would be attributable at all

23     to these removals since they have no effect on them at

24     all.

25         I think I've covered the things I wanted to say

1    about irreparable harm.  If I remember something I'll

2    come back to it.  So I'm happy to turn to the merits.

3        So our position is that the -- of course, the

4    plaintiff's removal was lawful, both based on the FVRA

5    and then two alternative constitutional arguments.

6        Under the federal -- our primary argument is that

7    Mr. Blanche's designation as acting librarian was

8    authorized by the Federal Vacancies Act.  We're

9    talking -- so we're dealing with a statutory text.

10   There's a definition of "executive agency," which

11   includes an independent establishment, and that is

12   defined to mean an establishment in the executive

13   branch.  That's the language we're dealing with.

14       And so I think the Library of Congress falls

15   squarely within that language for two reasons -- at

16   least two reasons.  Number one, I think this was

17   mentioned before, the Librarian who leads the Library is

18   selected -- nominated by the President with the advice

19   and consent by the Senate.  There are no removal

20   protections in the statute, and I don't think it's ever

21   been suggested that there are any.  Her removal has not

22   been challenged.  So that's number one.

23       Number two, and I think more importantly but they

24   both go together, is the fact that the Library of

25   Congress performs quintessential executive functions.

1    It issues regulations, promulgates regulations by the

2    Copyright Office which are approved by and sometimes

3    promulgated by the Librarian.

4        These are binding on parties.  They adjudicate

5    cases, set royalty rates, things that the D.C. Circuit

6    in the *Intercollegiate* case and the *Medical Imaging* case

7    repeatedly characterize as core executive functions.

8        I think the Fourth Circuit case does as well from a

9    little further back in *Edgar*.  And those quintessential

10   executive functions are what led the *Intercollegiate*

11   case to hold that it is a department within the

12   executive branch.

13       Now, I take the point, it is true, that they were

14   not interpreting this statute.  But I think the problem

15   with -- I don't think it can just be dismissed on that

16   basis because I think at the end of the day you have to

17   match up what did the Court hold in those cases and what

18   statutory language are you dealing with.  And the

19   statutory language is an establishment in the executive

20   branch.  It has been held to be in the executive branch.

21       And I don't know why there's some -- I don't know

22   what nuanced version of executive branch there would be

23   that would mean it is within the executive branch for

24   purposes of the Constitution and in addition to the fact

25   that it performs all of these executive functions.  So

1    it's not strange to view it in the executive branch and

2    why that wouldn't fall within the plain text of the

3    statute.

4         Now, my friend on the other side has mentioned some

5    statutory provisions that they believe up the other way.

6    So I'll say a few things about that.

7         First of all, most of them, those dozen that he

8    refers to, are definitions of the word "agency."  That's

9    all.  So it isn't as if we're comparing apples and

10   oranges here in terms of the Library of Congress and

11   where it falls.  We're still dealing with unique text

12   here that isn't the word "agency" but is an

13   establishment in the executive branch.  So I think we

14   have to interpret that on its face.

15        I do think, as much as they disagree, that the best

16   reading of those provisions -- it is a belt and

17   suspenders approach.  And the reason for that is

18   because, despite the fact that Congress -- or the

19   Library of Congress has -- performs all these executive

20   functions and such, even in the *Med. Imaging* case, for

21   example, the Court recognizes that it is historically

22   associated with Congress.  It has Congress in its name,

23   after all.  That's not determinative, but I think that

24   is a very -- that's -- it's impossible to avoid that as

25   a background understanding when Congress is legislating.

1    I think it's perfectly reasonable for Congress, when

2    writing the definition of a word "agency," which is not

3    normally associated with the Library of Congress, to

4    specifically list it.

5        And those are the exact same concerns, by the way,

6    which led D.C. Circuit to hold that the Library of

7    Congress is not within the definition of the term

8    "agency" for purposes of the APA and FOIA.  So it isn't

9    like I'm saying, well, these must be the reasons.  These

10   are the kind of reasons that have led courts to exclude

11   the Library of Congress from the definition of agency.

12   And so I don't know why that wouldn't apply to those as

13   well.  And at the end of the day, despite like -- there

14   is, to be sure, the rule against surplusage is a canon

15   of interpretation, but it is not an inexorable command.

16       In statutory interpretation, context is key; and

17   when we're talking about the clear language of this

18   particular provision, which isn't just the term

19   "agency," we're not even just interpreting the term

20   "executive agency."  We're talking about "and

21   established in the executive branch."  I don't think

22   that a bunch of random definitions of the term "agency"

23   scattered across Title 5 is enough to override the plain

24   meaning of this text.

25       And they have some other arguments.  I'm happy to

1    address them.  One argument was Library of Congress is

2    in Title 2.  I don't think that's a good argument.  You

3    won't surprised here.  I think the Fourth Circuit's

4    *Eltra* decision effectively resolves that where it says,

5    yes, we know that the Library has some legislative

6    functions, for example, CRS.  So it really tells us

7    nothing whatsoever.  That it's in Title 2 versus Title 5

8    or anywhere else, I think that's right.  And so I don't

9    find that particularly probative at all.

10        And their last point was that some statutes define

11    the entity as an independent establishment in the

12    organic statute.  True, the Library of Congress is much

13    older than that.  They point to the fact that the post

14    office, for example, is also very old, and that's true.

15    But the difference is that the reason the post office

16    statute has the label "independent establishment" in

17    there is because Congress fundamentally reorganized it

18    in 1970 so post the creation of Title 5.  And that was

19    in the midst -- in the midst of taking it from being a

20    cabinet level department to being a completely

21    independent agency, basically rewriting the operations,

22    that they did that.

23        That's the same sort of thing that happened with

24    the National Archives.  It was part of GSA back in 1934.

25    There was some reorganization legislation post-1966, and

1    they include -- and Congress includes that language

2    there.

3        As far as I'm aware, nothing like that has happened

4    to the Library of Congress.  There's been amendments but

5    there hasn't been a wholesale, you know, reorganization

6    akin to that done by the Postal Service.

7        And I don't think Congress would be expected to go

8    around just, you know, amending enabling statutes with

9    no other reason to be amending the statutes.  And so I

10   think that that's the reason for the disparity there,

11   but I don't think that's really probative of the

12   statutory question.

13       THE COURT:  Your other theories, though, beyond

14   the statutory interpretation theories.

15       MR. HAYES:  Yes.  So we have two -- the

16   constitutional points.

17       So our first is that even if you were to accept the

18   argument that the FVRA does not apply to the Library

19   that our view is that Article II empowers the President

20   for a brief time to designate an acting official until

21   some nominee can be -- excuse me -- someone can be

22   nominated and confirmed by the Senate.

23       This was not held in the *Williams* case, so I'm not

24   representing that the D.C. Circuit has held that, but

25   the D.C. Circuit did -- I think it's fair to say,

1    recognized the plausibility of -- or the possibility

2    that this power would exist but not as the *Aviel*

3    decision -- stay decision that they cite said.

4        We're not suggesting that it's unfettered

5    discretion, like the President can just ignore anything,

6    you know, the Appointments Clause, the FVRA; it has just

7    unbridled power.  Our point is simply it is to enable

8    the President to act as the President, namely, to

9    exercise control over the executive branch and whatever

10   department you're talking about for a period of time,

11   because it always will take time once there's a vacancy,

12   for the Senate to act.  And if you don't have some

13   ability for there to be someone to be put into that

14   place in the interim, then that entity truly is cut off

15   from executive leadership.  And that's our -- and that's

16   where it's a narrow argument.

17       We're not seeking -- you know, our position is not

18   that the President gets -- you know, has unilateral

19   power to do this but might, if he feels -- so feels and

20   do it some other way according to statute or otherwise.

21       So that's our principal argument there.  I

22   understand that the *Aviel* stay decision did not view

23   that favorably, but I think that -- at least the

24   argument that they were addressing.

25            THE COURT:  You got one of three.

```
 1              MR. HAYES:  I'm sorry?
 2              THE COURT:  You got one of three, right, on
 3     that one?
 4              MR. HAYES:  Yeah.  Well, not on that one,
 5     actually.  I think Judge --
 6              THE COURT:  Oh, no.  It's your later argument,
 7     okay.
 8              MR. HAYES:  It's the later argument, which I'll
 9     turn to now because I -- although I do -- I guess I
10     would say one more thing about this one, which is, that
11     the argument made that the Recess Appointments Clause
12     somehow forecloses our argument, I don't think that's
13     right because I think it is correct that that clause is
14     dealing with a very particular problem, right?
15          It's not -- I don't think it's surprising that
16     Congress, back in 17- -- you know, the 1700s, would have
17     thought, knowing that recesses were going to last a very
18     long time, would write a clause directly focused on
19     that, but I don't think that means that they, therefore,
20     left no room for the President or Congress to have
21     residual power to figure out how to deal with a vacancy
22     that arises during a recess.  So I think that's dealing
23     with a specific problem and wasn't purporting to cover
24     the entire ground when it comes to when -- how to fill
25     acting positions.
```

1    So moving on to the third constitutional argument,

2    yes, our position is that, if you don't agree with

3    either of the first two, then the President has the

4    authority to remove, in this case the plaintiff, an

5    inferior officer, directly.  And the reason for that is

6    we recognize that the normal rule is that the head of --

7    the person who appoints has the power to remove.  That's

8    just normally how it goes.  We recognize that our

9    argument, again, is narrow.

10    It is not that the President can remove an inferior

11    officer who has been appointed by a principal officer

12    whenever he so chooses.  It is simply that -- and this

13    is the point that Judge Rao did agree with -- that where

14    there's a breakdown in the chain of command, in that

15    context, he needs to be able to exercise power over the

16    inferior officer until the principal officer position is

17    filled; otherwise, you're left in more or less the same

18    position that he can't exercise power, the Take Care

19    Clause and the power to oversee the executive branch, if

20    there is that break in the chain of command.

21    THE COURT:  All right.  Very well.

22    Let me turn to you, Mr. Netter, for any response.

23    But can I also just -- you don't have to begin with it

24    but if you could include a response to this, something

25    Mr. Hayes raised, that I thought it made sense to flesh

1    out.

2        I still struggle to understand the difference

3    conceptually -- and I was just looking to see how you

4    described it in your briefing, between -- I mean, I

5    guess, more or less between your first and second

6    theories of harm.

7        So I -- forgive me if this is not sort of -- you

8    wouldn't characterize it this way, but sort of -- I

9    thought -- the first one is sort of statutory right to

10   function.  That's sort of kind of what we've been

11   talking about, what the cases tend to call it.  And then

12   the second one -- I'm just looking at your header --

13   "plaintiff remains the Register of Copyrights and is,

14   therefore, required to fulfill her statutory duties."

15       Tell me, at a high level, what is the difference

16   between those two things?  Anyway, I don't want to

17   sidetrack you on any other points you want to make in

18   response, but that is one thing I'd love to hear you

19   address.

20           MR. NETTER:  Of course, Your Honor.  I'm happy

21   to start there.

22       So the difference that we had intended is that the

23   first category refers to Ms. Perlmutter's right to

24   discharge these functions under the statute.

25       And the second category is her obligation to do the

1    things that she is told to do by statute.  And so one of

2    them is receiving the commands, and one of them is

3    discharging the commands.

4         THE COURT:  Okay.  Okay.  Understood.

5         MR. NETTER:  And I had wanted to begin by

6    correcting one misstatement by Mr. Hayes, or perhaps an

7    unintentional mischaracterization, as if the appointment

8    of the copyright claims board officer had been

9    successfully accomplished.

10        The website that he identified says that the former

11   officer, quote, "will serve as an officer until the

12   ongoing hiring process for his replacement is completed

13   and a new appointment is made," close quote.  It was the

14   "new appointment" that we had argued could not be made

15   without the recommendation of the Register such as that

16   is an example of a function that cannot be performed

17   during this period of uncertainty.

18        And to Mr. Hayes's broader point that some parade

19   of horribles hasn't taken place, I think it does bear

20   mentioning that his client, Mr. Perkins, hasn't returned

21   to the Library of Congress.  None of these executive

22   branch officials have returned since the one day that

23   they attempted to go there.

24        So the situation on the ground is one of treading

25   water of the Library as a venerated American institution

1    awaiting this Court's guidance, which is yet another

2    reason why an expeditious determination on the merits

3    either by this Court or by the appellate courts is

4    essential to create a functioning institution.

5        Now turning to Mr. Hayes' argument more broadly,

6    what I think is striking with respect to this -- this --

7    I'll call it a power play by the President and by the

8    Justice Department, what's striking is the utter lack of

9    principle, a lack of principle with respect to the

10    application of the law and a lack of principle with

11    respect to the construction of this Court's equitable

12    authority.

13        Now, with respect to the interpretation of the law,

14    you know, Mr. Hayes said that, there's just a, quote,

15    "bunch of random definitions" in the U.S. Code that this

16    Court should ignore in deciding that the Library of

17    Congress is an executive agency and, more specifically,

18    that Congress thought it was an executive agency when it

19    passed the FVRA.

20        Now, this is a nation of laws, and this is how the

21    rule of law works.  We look at the statutes; we look at

22    how Congress has used terms to figure out what Congress

23    wanted to do in terms of assigning authorities and

24    assigning functions.  The only way for the government to

25    get to its desired position is to assume that it's true

1    and then to collect various data points that don't have

2    any principled basis.

3        So this suggestion that these 12 statutes don't

4    matter because they were using independent establishment

5    as part of the definition of agency so it was necessary

6    to reference the Library of Congress, but here, Congress

7    was using the term "independent establishment" as part

8    of the definition of executive agency and, therefore, it

9    didn't need to mention the Library of Congress.

10        You know, just to state that argument is to refute

11    it.  And the backdrop of this entire case is just an

12    incredible power grab, not just as to the executive

13    functions that are performed within the Library,

14    whatever those may be, but as to an agency that surely

15    has non-executive functions as well.

16        So treating this case as just something about the

17    President being able to control his executive officers

18    because there are some executive tasks that take place

19    there, that misses the mark entirely.

20        This is a case about the President trying to jump

21    over his line, to exceed his authority under the

22    Constitution, to take powers that have not been

23    allocated to him by Congress and asking the Court to

24    look the other way while that happens.

25        With respect to the Court's equitable authority, I

1   hear the arguments that the government is making.  What

2   I don't hear is a principled theory for when an

3   individual is going to be allowed to come to court to

4   ask -- to have the obstacles to his or her continued

5   performance in government service removed.

6        So we've mentioned a couple times now that, okay,

7   as a hypothetical, what if the President purported to

8   remove the Senate parliamentarian?  Or what if the

9   President purported to remove you, Your Honor, somebody

10  who undisputedly is not under the control of the

11  President.

12       THE COURT:  Finish your point because I do -- I

13  mean, I thought that was -- I want to respond to this

14  point but finish your point.

15       MR. NETTER:  Thank you, Your Honor.

16       So the only response that the government has

17  offered to this point is, I believe, in their opposition

18  brief, Docket 33.  They say the President's power to

19  appoint and remove the Librarian, a power he does not

20  have over true congressional entities like the House

21  Sergeant At Arms or the Senate parliamentarian, confirms

22  the Library of Congress's placement in the executive

23  branch.

24       But that doesn't answer the question of how this

25  would play out if the President did assert the authority

1    to remove the Senate parliamentarian.

2              THE COURT:  How do you think it would play out?

3              MR. NETTER:  Well, I think that the arguments

4    would be precisely the same, that this was unlawful --

5              THE COURT:  I don't think that's true at all.

6    You would have -- I would have the -- whether -- if the

7    President purported to remove or purported to exercise

8    his authority in a way that was plainly intrusive on the

9    other branches, number one, I don't actually know what

10   the practical effect of that would even really be, but

11   let's say that were the case, some future President, you

12   would have institutionally that branch.  You would have

13   more than just a person, a high-level person concededly,

14   but you would have more than just a person

15   vindicating -- attempting to vindicate their rights.

16   You would have institutionally that branch trying to

17   vindicate its rights.

18        And I -- you know, you would have action by -- in

19   the case of the Senate parliamentarian, I would have

20   before me Senate counsel.  I would have before me

21   representatives of that branch attempting to vindicate

22   their institutional prerogatives, the prerogatives of

23   their independent branch.  And I don't have that here.

24        So that doesn't -- to be clear, I don't really

25   think that answers the question, you know.  I take your

1    point that -- I'm not -- I don't think this points

2    directly to the merits answer here.  But my point is

3    just that I do think -- in the scenarios you laid out, I

4    do think things would play out differently because we'd

5    have a clash of branches, not merely what -- I say

6    "merely," but not the clash between the executive and an

7    individual.  What say you to that?

8              MR. NETTER:  So, Your Honor, with respect, I

9    think that that's changing the hypothetical, right?

10   That assumes that another branch of government is going

11   to decide that it's in its broader political interests

12   to stage a fight and that the power -- that there would

13   be some sort of a power struggle that would result in

14   another institution filing a lawsuit.  And, you know,

15   that may work for the Senate.  Maybe they would; maybe

16   they wouldn't.  I don't know who would be filing suit on

17   this Court's behalf, if the Court were -- if the

18   President were to purport to start firing judges.

19        But that doesn't answer the fundamental question,

20   which is, what if the individual who has been fired --

21   what if the Senate parliamentarian shows up in court and

22   says this is obviously unlawful, and it's not just

23   unlawful because the President doesn't have the

24   authority, it is unlawful because it is disruptive to

25   the separation of powers.  It is an effort by the

1    President or by the executive branch to claim power that

2    does not belong to the President.

3        And if the answer to that is, well, Senate

4    parliamentarian, you're entitled to your paycheck at the

5    end of the day, then that is not a recipe for continued

6    success in having the rule of law govern what

7    authorities belong to each of the branches.

8        Here today, we have an official who was lawfully

9    appointed to a position, who has worked over the course

10   of her entire career to develop the expertise to

11   discharge the responsibilities of Register of Copyright,

12   who has responsibilities and privileges under the law,

13   and who is due to exercise those privileges during this

14   time frame, at a critical point in time when Congress is

15   waiting to hear from her about the application of

16   copyright law to artificial intelligence, something that

17   is under active consideration.

18        And if the answer is that the President can

19   take this action or direct his subordinates to take this

20   action, and that there's nothing that the courts can or

21   will do because maybe, if she can get a paycheck at the

22   end of the day, then that is entirely disruptive of

23   fundamental principles of the rule of law, and suggests

24   that -- it gives the executive branch the incentive to

25   act inequitably and creates mischief that will not

1    easily be corrected by the courts at the end of the

2    day.

3        So this remains the emergency that it was when we

4    filed this lawsuit.  Ms. Perlmutter remains entitled to

5    continue her service as Register of Copyright as much as

6    was the case the day we filed this lawsuit.  Just as we

7    urge this Court to reach the merits and to rule in her

8    favor at the TRO stage, we believe strongly that the

9    D.C. Circuit's further guidance in *Aviel* requires that

10    outcome today, in any event, and we would urge the Court

11    to permit this case to advance to the extent there are

12    questions about how the D.C. Circuit should be resolving

13    this issue.  This is a circumstance that we should let

14    the D.C. Circuit decide for itself, which, of course,

15    can happen once this Court enters an appealable order.

16        We appreciate the Court's consideration of the

17    issues in this case and ask that our motion be granted.

18        THE COURT:  All right.  Very well.

19        Look, I will just say, I mean, I think -- I do

20    think that it's a tricky case.  And I appreciate all the

21    work all of you have put into it, and I will endeavor to

22    get you an answer as soon as I can.

23        With that, the parties are dismissed.

24        (Court in recess, 4:09 p.m.)

25                    - - -

CERTIFICATE


     I, Chandra Kean, RMR, hereby certify that the

foregoing transcript is a true and correct transcription

of the proceedings held in the above-titled matter.



_____          July 24, 2025
Chandra Kean, RMR                     DATE

**1**

**103** [1] - 17:5
**104** [2] - 17:8, 17:9
**105** [1] - 17:3
**10th** [1] - 12:9
**12** [1] - 41:3
**13-plus** [1] - 19:3
**14** [2] - 26:3, 26:19
**14-day** [1] - 5:1
**17** [2] - 16:5, 36:16
**1700s** [1] - 36:16
**1839** [1] - 4:11
**1934** [1] - 33:24
**1970** [1] - 33:18

**2**

**2** [4] - 8:8, 21:10, 33:2, 33:7
**2017** [1] - 6:14
**2025** [1] - 26:22
**25-1659** [1] - 2:4

**3**

**3** [1] - 12:5
**33** [1] - 42:18
**3345(a** [1] - 17:1
**360** [1] - 26:5
**3:08** [1] - 2:2

**4**

**4101(a** [1] - 18:9
**4:09** [1] - 46:24

**5**

**5** [5] - 16:25, 18:9, 32:23, 33:7, 33:18

**7**

**701** [1] - 16:5
**75** [2] - 24:13, 27:23

**9**

**9th** [1] - 12:3

**A**

**ability** [2] - 27:8, 35:13
**abject** [1] - 3:4
**able** [3] - 13:20, 37:15, 41:17
**accept** [2] - 15:8, 34:17
**accepted** [2] - 23:19, 23:21
**accomplished** [1] - 39:9

**accomplishing** [1] - 15:14
**according** [1] - 35:20
**account** [2] - 2:17, 14:8
**Accountability** [1] - 17:14
**Accounting** [1] - 17:13
**acknowledge** [2] - 9:15, 26:15
**act** [5] - 12:24, 16:15, 35:8, 35:12, 45:25
**Act** [3] - 4:1, 16:22, 29:8
**acting** [6] - 4:2, 15:15, 19:16, 29:7, 34:20, 36:25
**action** [3] - 43:18, 45:19, 45:20
**Action** [1] - 13:14
**actions** [1] - 12:23
**active** [1] - 45:17
**adamantly** [1] - 11:24
**addition** [2] - 25:2, 30:24
**address** [3] - 24:19, 33:1, 38:19
**addressing** [1] - 35:24
**Adeel** [1] - 2:6
**adjudicate** [1] - 30:4
**ado** [1] - 2:10
**adopted** [2] - 4:18, 14:5
**advance** [1] - 46:11
**advice** [5] - 13:21, 14:8, 16:19, 23:1, 29:18
**adviser** [2] - 12:15, 15:11
**advising** [2] - 13:16, 28:19
**advisory** [1] - 28:4
**affairs** [2] - 13:6, 13:25
**afforded** [1] - 13:5
**afternoon** [2] - 2:9, 2:23
**agency** [24] - 17:2, 17:21, 17:24, 18:3, 18:5, 18:6, 18:15, 23:2, 29:10, 31:8, 31:12, 32:2, 32:8, 32:11, 32:19, 32:20, 32:22, 33:21, 40:17, 40:18, 41:5, 41:8, 41:14
**agree** [3] - 8:14, 37:2, 37:13
**agreed** [1] - 4:5

**ahead** [2] - 6:17, 11:21
**AI** [3] - 12:6, 12:7, 13:14
**akin** [1] - 34:6
**al** [1] - 2:5
**allocated** [1] - 41:23
**allow** [1] - 25:15
**allowed** [2] - 25:14, 42:3
**allowing** [2] - 6:9, 25:12
**allows** [1] - 25:11
**Allyson** [1] - 2:7
**alternative** [1] - 29:5
**amending** [2] - 34:8, 34:9
**amendments** [1] - 34:4
**America's** [1] - 13:14
**American** [2] - 3:17, 39:25
**animal** [1] - 28:5
**answer** [6] - 42:24, 44:2, 44:19, 45:3, 45:18, 46:22
**answers** [1] - 43:25
**anyway** [4] - 26:15, 28:2, 28:14, 38:16
**APA** [1] - 32:8
**appeal** [1] - 3:17
**appealable** [1] - 46:15
**appellate** [1] - 40:3
**apples** [1] - 31:9
**applicability** [1] - 12:18
**application** [2] - 40:10, 45:15
**applies** [1] - 17:1
**apply** [2] - 32:12, 34:18
**appoint** [5] - 4:2, 4:7, 16:18, 19:17, 42:19
**appointed** [5] - 16:3, 22:25, 23:17, 37:11, 45:9
**appointment** [8] - 4:4, 16:6, 16:10, 26:18, 26:19, 39:7, 39:13, 39:14
**Appointment** [1] - 16:1
**appointments** [1] - 14:11
**Appointments** [4] - 15:24, 16:17, 35:6, 36:11
**appoints** [1] - 37:7
**appreciate** [3] - 19:25, 46:16, 46:20
**approach** [1] - 31:17

**approached** [1] - 22:4
**appropriate** [6] - 4:16, 11:1, 11:5, 20:5, 22:12
**appropriateness** [1] - 10:22
**approved** [1] - 30:2
**Archives** [1] - 33:24
**argued** [1] - 39:14
**arguing** [1] - 10:3
**argument** [34] - 2:25, 5:18, 5:21, 5:22, 7:9, 7:19, 8:1, 8:17, 10:24, 11:12, 11:15, 18:19, 19:1, 19:2, 19:25, 21:20, 27:21, 28:3, 28:6, 29:6, 33:1, 33:2, 34:18, 35:16, 35:21, 35:24, 36:6, 36:8, 36:11, 36:12, 37:1, 37:9, 40:5, 41:10
**arguments** [8] - 7:14, 9:8, 9:9, 11:17, 29:5, 32:25, 42:1, 43:3
**arises** [1] - 36:22
**Arms** [1] - 42:21
**Article** [1] - 34:19
**article** [1] - 26:5
**artificial** [4] - 12:6, 12:19, 13:17, 45:16
**aside** [1] - 27:7
**assert** [3] - 8:7, 11:25, 42:25
**asserting** [1] - 21:1
**assessment** [7] - 4:20, 4:24, 8:4, 9:4, 9:6, 9:11, 22:10
**assigned** [9] - 3:9, 14:12, 14:17, 14:19, 14:25, 15:3
**assigning** [2] - 40:23, 40:24
**Assistance** [1] - 6:13
**associated** [2] - 31:22, 32:3
**assume** [2] - 10:7, 40:25
**assumes** [2] - 21:24, 44:10
**assuming** [2] - 9:24, 10:7
**attached** [1] - 6:12
**attempted** [2] - 3:5, 39:23
**attempting** [2] - 43:15, 43:21
**attempts** [1] - 12:2
**attorney** [1] - 27:20
**attributable** [1] -

28:22
**authorities** [2] - 40:23, 45:7
**authority** [19] - 4:4, 4:7, 4:8, 5:15, 6:25, 12:21, 16:6, 16:18, 16:20, 19:16, 19:17, 19:19, 37:4, 40:12, 41:21, 41:25, 42:25, 43:8, 44:24
**authorize** [1] - 4:1
**authorized** [1] - 29:8
**available** [1] - 21:11
**Aviel** [17] - 3:14, 3:20, 3:23, 4:24, 5:10, 6:4, 8:9, 10:24, 11:16, 16:8, 21:6, 22:6, 23:23, 24:2, 35:2, 35:22, 46:9
**avoid** [1] - 31:24
**awaiting** [1] - 40:1
**aware** [2] - 27:22, 34:3

**B**

**backdrop** [1] - 41:11
**background** [1] - 31:25
**backlog** [1] - 26:9
**balance** [4] - 6:21, 7:18, 8:3, 20:25
**balancing** [2] - 7:16, 13:3
**banc** [3] - 8:20, 8:22, 9:2
**barrier** [1] - 26:16
**based** [2] - 22:16, 29:4
**bases** [1] - 20:15
**basis** [6] - 9:22, 10:17, 18:16, 22:5, 30:16, 41:2
**bear** [1] - 39:19
**becomes** [1] - 17:15
**begin** [2] - 37:23, 39:5
**behalf** [1] - 44:17
**belong** [2] - 45:2, 45:7
**belongs** [1] - 16:9
**belt** [3] - 18:20, 19:5, 31:16
**belts** [1] - 18:21
**Benjamin** [2] - 2:8, 20:2
**Berry** [2] - 23:23, 24:1
**best** [1] - 31:15
**between** [6] - 8:2, 15:25, 38:4, 38:5, 38:16, 44:6
**beyond** [1] - 34:13
**bills** [1] - 14:8
**binding** [3] - 16:11,

17:25, 30:4
**bit** [2] - 10:14, 24:24
**Blanche** [4] - 2:4, 3:6, 16:15, 19:15
**Blanche's** [1] - 29:7
**board** [3] - 23:3, 24:1, 39:8
**bottom** [2] - 20:25, 25:5, 27:4
**bound** [1] - 8:21
**branch** [28] - 12:23, 13:8, 13:19, 13:24, 14:9, 15:13, 16:23, 17:11, 29:13, 30:12, 30:20, 30:22, 30:23, 31:1, 31:13, 32:21, 35:9, 37:19, 39:22, 42:23, 43:12, 43:16, 43:21, 43:23, 44:10, 45:1, 45:24
**branches** [3] - 43:9, 44:5, 45:7
**break** [1] - 37:20
**breakdown** [1] - 37:14
**Brehm** [1] - 23:13
**Brian** [2] - 2:6, 2:23
**brief** [7] - 26:5, 26:8, 26:14, 27:17, 27:21, 34:20, 42:18
**briefing** [2] - 24:9, 38:4
**briefs** [1] - 18:13
**broader** [2] - 39:18, 44:11
**broadly** [1] - 40:5
**bucket** [2] - 13:23, 23:23
**buckets** [2] - 22:23, 23:20
**bunch** [1] - 32:22, 40:15
**burden** [2] - 27:4, 27:10
**business** [1] - 26:8

## C

**cabinet** [1] - 33:20
**calculation** [1] - 9:17
**cannot** [1] - 39:16
**canon** [2] - 19:11, 32:14
**capacity** [1] - 12:4
**Care** [2] - 4:3, 37:18
**career** [1] - 45:10
**case** [30] - 5:4, 7:3, 9:9, 10:9, 11:18, 11:25, 13:1, 13:2, 14:4, 18:1, 22:8, 22:17, 24:8, 30:6,

30:8, 30:11, 31:20, 34:23, 37:4, 41:11, 41:16, 41:20, 43:11, 43:19, 46:6, 46:11, 46:17, 46:20
**cases** [20] - 7:24, 8:14, 10:15, 13:2, 14:15, 20:8, 20:9, 20:10, 22:20, 23:5, 23:7, 23:11, 23:15, 23:20, 23:23, 23:24, 24:15, 30:5, 30:17, 38:11
**category** [2] - 38:23, 38:25
**caused** [1] - 13:10
**certain** [2] - 7:18, 28:3
**certainly** [4] - 8:14, 11:16, 21:16, 28:22
**cetera** [1] - 20:20
**chain** [4] - 12:10, 21:13, 37:14, 37:20
**challenged** [1] - 29:22
**changed** [3] - 3:7, 3:12, 24:5
**changing** [1] - 44:9
**characterize** [2] - 30:7, 38:8
**chooses** [1] - 37:12
**Circuit** [20] - 3:14, 4:9, 4:13, 4:14, 4:23, 7:24, 8:22, 9:2, 9:7, 10:21, 18:1, 20:13, 22:8, 30:5, 30:8, 32:6, 34:24, 34:25, 46:12, 46:14
**Circuit's** [2] - 33:3, 46:9
**circumstance** [4] - 7:6, 7:7, 14:21, 46:13
**circumstances** [4] - 11:23, 11:24, 18:14, 18:23
**citation** [1] - 6:12
**cite** [1] - 35:3
**civil** [1] - 24:1
**Civil** [1] - 2:4
**claim** [1] - 45:1
**claims** [3] - 26:4, 26:20, 39:8
**clash** [2] - 44:5, 44:6
**Clause** [7] - 4:3, 15:25, 16:2, 16:17, 35:6, 36:11, 37:19
**clause** [2] - 36:13, 36:18
**clear** [3] - 27:1, 32:17, 43:24
**cleared** [1] - 26:11
**clearly** [2] - 16:25,

23:20
**CLERK** [1] - 2:3
**client** [1] - 39:20
**close** [1] - 39:13
**Code** [2] - 18:9, 40:15
**collect** [1] - 41:1
**command** [3] - 32:15, 37:14, 37:20
**commands** [2] - 39:2, 39:3
**companies** [2] - 12:7
**compared** [1] - 11:17
**comparing** [1] - 31:9
**completed** [1] - 39:12
**completely** [1] - 33:20
**computes** [1] - 7:4
**concededly** [1] - 43:13
**conceptually** [1] - 38:3
**concern** [1] - 28:8
**concerns** [2] - 27:17, 32:5
**conclusion** [1] - 10:25
**conclusively** [2] - 6:20, 8:13
**confidential** [2] - 27:18, 28:9
**confirmed** [3] - 23:12, 23:17, 34:22
**confirms** [1] - 42:21
**conflates** [1] - 25:8
**conflation** [1] - 25:14
**conflicted** [1] - 5:7
**conflicts** [1] - 5:18
**Congress** [76] - 3:5, 3:10, 12:5, 12:15, 12:18, 13:16, 13:21, 14:7, 14:21, 16:2, 16:5, 16:7, 16:19, 16:20, 16:24, 17:4, 17:6, 17:17, 17:19, 17:22, 18:2, 18:11, 18:12, 18:14, 18:16, 18:17, 18:18, 18:23, 18:25, 19:2, 19:4, 19:5, 19:6, 19:8, 19:12, 19:14, 19:16, 24:14, 25:10, 28:4, 28:9, 28:20, 29:14, 29:25, 31:10, 31:18, 31:19, 31:22, 31:25, 32:1, 32:3, 32:7, 32:11, 33:1, 33:12, 33:17, 34:1, 34:4, 34:7, 36:16, 36:20, 39:21, 40:17, 40:18, 40:22, 41:6, 41:9, 41:23, 45:14
**Congress's** [2] -

27:19, 42:22
**congressional** [1] - 42:20
**connection** [1] - 2:11
**consent** [3] - 16:19, 23:1, 29:19
**consideration** [2] - 45:17, 46:16
**considered** [1] - 14:5
**consistent** [1] - 10:25
**Constitution** [2] - 30:24, 41:22
**Constitution's** [1] - 16:1
**constitutional** [4] - 17:17, 29:5, 34:16, 37:1
**construction** [1] - 40:11
**construe** [1] - 6:3
**context** [2] - 32:16, 37:15
**continue** [2] - 6:9, 46:5
**continued** [2] - 42:4, 45:5
**continues** [1] - 19:21
**continuing** [1] - 12:14
**contrary** [1] - 17:25
**control** [4] - 28:17, 35:9, 41:17, 42:10
**Copyright** [13] - 3:10, 12:4, 15:10, 19:21, 25:9, 25:23, 26:6, 26:12, 26:16, 28:21, 30:2, 45:11, 46:5
**copyright** [10] - 12:18, 13:16, 13:22, 14:14, 25:24, 26:4, 26:20, 28:17, 39:8, 45:16
**copyrighted** [1] - 12:8
**Copyrights** [3] - 15:9, 15:23, 38:13
**core** [2] - 28:7, 30:7
**corporation** [1] - 17:12
**corporations** [1] - 17:5
**correct** [5] - 5:20, 8:5, 15:7, 21:25, 36:13
**corrected** [1] - 46:1
**correcting** [1] - 39:6
**correspondence** [1] - 27:19
**counsel** [1] - 43:20
**couple** [2] - 25:2, 42:6
**course** [4] - 29:3, 38:20, 45:9, 46:14
**Court** [29] - 2:2, 4:12, 4:21, 5:11, 6:2, 6:6,

6:14, 7:23, 8:3, 9:1, 9:3, 9:20, 12:20, 13:1, 13:12, 16:11, 20:17, 21:12, 22:7, 30:17, 31:21, 40:3, 40:16, 41:23, 44:17, 46:7, 46:10, 46:15, 46:24
**court** [3] - 8:20, 42:3, 44:21
**COURT** [26] - 2:9, 3:2, 5:5, 5:17, 5:21, 6:16, 7:19, 8:6, 8:10, 9:14, 11:4, 11:10, 11:21, 14:24, 19:24, 28:1, 34:13, 35:25, 36:2, 36:6, 37:21, 39:4, 42:12, 43:2, 43:5, 46:18
**Court's** [15] - 3:12, 4:10, 4:19, 4:20, 4:24, 6:4, 6:19, 6:25, 9:11, 20:16, 40:1, 40:11, 41:25, 44:17, 46:16
**COURTROOM** [1] - 2:3
**courts** [9] - 9:16, 10:16, 16:4, 21:24, 22:3, 32:10, 40:3, 45:20, 46:1
**cover** [1] - 36:23
**covered** [2] - 27:12, 28:25
**create** [1] - 40:4
**creates** [2] - 7:12, 45:25
**creation** [1] - 33:18
**critical** [4] - 3:14, 3:23, 6:6, 45:14
**CRS** [3] - 28:5, 28:17, 33:6
**cured** [1] - 3:4
**curiam** [1] - 6:14
**cut** [1] - 35:14

## D

**D.C** [20] - 3:13, 4:9, 4:13, 4:14, 4:23, 7:23, 8:22, 9:1, 9:7, 10:21, 17:25, 20:13, 22:8, 30:5, 32:6, 34:24, 34:25, 46:9, 46:12, 46:14
**data** [1] - 41:1
**days** [3] - 17:14, 24:13, 27:23
**deal** [1] - 36:21
**dealing** [6] - 29:9, 29:13, 30:18, 31:11,

36:14, 36:22
**decide** [4] - 10:17,
16:2, 44:11, 46:14
**decided** [1] - 16:5
**deciding** [2] - 9:3,
40:16
**decision** [23] - 4:11,
6:4, 6:14, 8:22, 9:2,
20:10, 20:11, 20:12,
21:6, 21:7, 22:18,
23:13, 23:14, 24:23,
25:6, 25:19, 33:4,
35:3, 35:22
**decisions** [1] - 22:13
**declaration** [5] -
24:10, 25:17, 26:24,
27:16, 27:20
**defective** [1] - 25:18
**defendant** [2] - 2:13,
20:1
**defendants** [3] - 2:8,
2:14, 20:3
**defendants'** [1] -
18:19
**define** [1] - 33:10
**defined** [5] - 17:2,
17:5, 17:7, 17:10,
29:12
**definition** [6] - 29:10,
32:2, 32:7, 32:11,
41:5, 41:8
**definitions** [3] - 31:8,
32:22, 40:15
**delegated** [1] - 14:20
**Dellinger** [6] - 20:7,
20:12, 21:18, 21:23,
22:8, 25:11
**Democracy** [1] - 2:24
**demonstrate** [2] -
4:25, 5:13
**demonstrates** [2] -
5:2, 24:13
**denied** [1] - 3:17
**denying** [2] - 9:21,
9:22
**Department** [1] - 40:8
**department** [6] - 16:4,
17:11, 17:12, 30:11,
33:20, 35:10
**departments** [1] - 17:3
**DEPUTY** [1] - 2:3
**describe** [1] - 10:18
**described** [1] - 38:4
**designate** [1] - 34:20
**designation** [1] - 29:7
**desired** [1] - 40:25
**despite** [2] - 31:18,
32:13
**determination** [4] -
4:9, 5:2, 9:3, 40:2

**determinative** [1] -
31:23
**determine** [1] - 6:21
**develop** [1] - 45:10
**difference** [4] - 33:15,
38:2, 38:15, 38:22
**different** [7] - 7:12,
9:2, 10:1, 20:8,
23:16, 24:16, 26:6
**differently** [2] - 11:9,
44:4
**differs** [1] - 4:20
**difficult** [2] - 8:12,
26:4
**diminished** [1] - 13:8
**direct** [1] - 45:19
**direction** [1] - 7:18
**directly** [3] - 36:18,
37:5, 44:2
**director** [2] - 25:24,
28:17
**disagree** [1] - 31:15
**disagreement** [1] -
10:21
**disarray** [1] - 3:11
**discharge** [2] - 38:24,
45:11
**discharging** [2] -
15:12, 39:3
**disclosure** [1] - 27:18
**discretion** [1] - 35:5
**discussed** [1] - 16:7
**discussing** [3] - 12:6,
12:7, 21:9
**dismiss** [1] - 12:2
**dismissed** [2] - 30:15,
46:23
**disparity** [1] - 34:10
**dispensed** [1] - 25:1
**displace** [1] - 22:7
**dispute** [1] - 23:8
**disputes** [1] - 10:23
**disruptive** [1] - 44:24,
45:1
**distinction** [3] - 18:3,
18:10, 18:15
**distinctions** [1] -
23:15
**distinguish** [2] - 23:7,
24:24
**District** [1] - 9:1
**divine** [1] - 7:24
**Docket** [1] - 42:18
**done** [5] - 19:2, 23:5,
25:25, 26:2, 34:6
**down** [1] - 8:13
**dozen** [3] - 18:13,
18:23, 31:7
**draw** [1] - 21:14

**due** [1] - 45:13
**duration** [1] - 5:3
**during** [4] - 19:22,
36:22, 39:17, 45:13
**duties** [2] - 28:4,
38:14
**duty** [1] - 6:11
**dynamic** [1] - 7:12

## E

**easily** [1] - 46:1
**Edgar** [1] - 30:9
**effect** [2] - 28:23,
43:10
**effectively** [5] - 6:23,
8:21, 19:1, 26:4,
33:4
**effort** [1] - 44:25
**either** [4] - 24:2, 27:1,
37:3, 40:3
**elsewhere** [1] - 19:8
**Eltra** [1] - 33:4
**emergency** [3] - 3:12,
22:11, 46:3
**emphasize** [1] - 19:4
**emphasized** [1] - 23:8
**employee** [3] - 11:2,
13:4, 14:18
**employment** [2] -
10:23, 23:8
**empowers** [1] - 34:19
**en** [3] - 8:20, 8:22, 9:2
**enable** [1] - 35:7
**enabling** [1] - 34:8
**end** [9] - 9:20, 9:24,
10:10, 14:4, 30:16,
32:13, 45:5, 45:22,
46:1
**endeavor** [1] - 46:21
**ends** [1] - 9:21
**English** [2] - 23:14,
25:6
**Enterprise** [1] - 4:10
**enters** [1] - 46:15
**entire** [3] - 36:24,
41:11, 45:10
**entirely** [3] - 28:18,
41:19, 45:22
**entities** [1] - 42:20
**entitled** [4] - 7:9,
15:16, 45:4, 46:4
**entity** [7] - 18:6, 23:18,
23:25, 25:10, 25:13,
33:11, 35:14
**enumerated** [1] - 17:4
**equitable** [4] - 6:25,
12:21, 40:11, 41:25
**equities** [2] - 5:13,
6:22, 7:17, 8:3

**equity** [1] - 6:20
**essential** [2] - 8:19,
40:4
**establish** [1] - 7:2
**established** [3] - 9:12,
17:16, 32:21
**establishing** [1] - 18:2
**establishment** [19] -
17:9, 17:10, 17:20,
17:23, 18:3, 18:5,
18:7, 18:10, 18:11,
18:18, 19:13, 29:11,
29:12, 30:19, 31:13,
33:11, 33:16, 41:4,
41:7
**establishments** [1] -
17:7
**et** [2] - 2:5, 20:20
**event** [1] - 46:10
**events** [1] - 12:11
**evidence** [6] - 17:21,
24:7, 24:8, 27:5,
27:10, 27:22
**evidentiary** [1] - 12:12
**exact** [1] - 32:5
**exactly** [4] - 7:25,
20:10, 20:14, 22:3
**example** [4] - 10:8,
25:12, 26:18, 27:17,
31:21, 33:6, 33:14,
39:16
**examples** [2] - 19:4,
26:3
**exceed** [1] - 41:21
**exceedingly** [1] -
15:21
**excellent** [1] - 6:18
**exclude** [1] - 32:10
**excludes** [1] - 18:5
**excuse** [3] - 12:7,
15:10, 34:21
**executive** [48] - 6:10,
12:23, 13:8, 13:19,
13:24, 14:9, 15:13,
16:23, 17:2, 17:3,
17:10, 17:11, 17:20,
17:24, 18:15, 28:12,
29:10, 29:12, 29:25,
30:7, 30:10, 30:12,
30:19, 30:20, 30:22,
30:23, 30:25, 31:1,
31:13, 31:19, 32:20,
32:21, 35:9, 35:15,
37:19, 39:21, 40:17,
40:18, 41:8, 41:12,
41:15, 41:17, 41:18,
42:22, 44:6, 45:1,
45:24
**exercise** [6] - 6:24,
35:9, 37:15, 37:18,

43:7, 45:13
**exercising** [3] - 6:9,
12:21, 16:16
**exist** [1] - 35:2
**exists** [1] - 11:23
**expected** [5] - 7:1,
7:4, 7:17, 9:17, 34:7
**expeditious** [1] - 40:2
**experiencing** [1] -
12:1
**expert** [2] - 13:22,
14:13
**expertise** [1] - 45:10
**explain** [1] - 5:9
**express** [1] - 28:8
**expressly** [3] - 4:1,
16:20, 19:9
**extent** [2] - 11:11,
46:11
**extraordinarily** [1] -
7:15

## F

**face** [1] - 31:14
**faces** [3] - 6:8, 6:10,
20:20
**fact** [6] - 9:25, 13:13,
29:24, 30:24, 31:18,
33:13
**factors** [2] - 2:18,
21:22
**facts** [2] - 3:6, 12:2
**fails** [1] - 27:25
**fair** [6] - 8:11, 15:6,
28:15, 28:16, 34:25
**fall** [4] - 13:23, 22:22,
23:20, 31:2
**falls** [2] - 29:14, 31:11
**far** [1] - 34:3
**favor** [2] - 12:22, 46:8
**favorably** [1] - 35:23
**features** [1] - 23:6
**federal** [3] - 11:1,
11:15, 29:6
**Federal** [3] - 3:25,
16:21, 29:8
**few** [2] - 10:15, 31:6
**fight** [1] - 44:12
**figure** [2] - 36:21,
40:22
**filed** [3] - 24:8, 46:4,
46:6
**filing** [2] - 44:14,
44:16
**fill** [1] - 36:24
**filled** [1] - 37:17
**final** [1] - 22:9
**findings** [1] - 3:23
**finish** [2] - 42:12,

42:14
**finishing** [1] - 12:17
**fire** [2] - 4:8, 7:10
**fired** [4] - 7:15, 11:2, 13:4, 44:20
**firing** [1] - 44:18
**first** [10] - 3:24, 10:23, 22:24, 25:4, 31:7, 34:17, 37:3, 38:5, 38:9, 38:23
**first-line** [1] - 10:23
**fit** [1] - 22:17
**flesh** [1] - 37:25
**fluidity** [1] - 19:11
**focused** [2] - 20:24, 36:18
**FOIA** [1] - 32:8
**folks** [1] - 28:7
**follow** [3] - 6:1, 6:2, 17:17
**follows** [3] - 4:9, 19:11, 19:15
**Footnote** [2] - 8:8, 21:10
**footnote** [3] - 21:9, 21:15, 22:6
**for-cause** [1] - 23:3
**forecloses** [1] - 36:12
**forgive** [1] - 38:7
**form** [1] - 22:16
**former** [1] - 39:10
**forth** [1] - 27:4
**forward** [3] - 6:22, 27:3
**Forward** [1] - 2:24
**Foundation** [2] - 2:24, 3:17
**Fourth** [2] - 30:8, 33:3
**frame** [1] - 45:14
**frankly** [1] - 10:22
**Free** [1] - 4:10
**freestanding** [1] - 4:3
**friend** [1] - 31:4
**fulfill** [1] - 38:14
**full** [2] - 3:21, 4:22
**function** [10] - 21:1, 22:11, 22:17, 22:21, 24:17, 24:25, 25:5, 27:8, 38:10, 39:16
**functioning** [2] - 26:17, 40:4
**functions** [20] - 3:9, 12:24, 13:9, 13:10, 14:11, 14:15, 14:16, 24:22, 25:23, 27:9, 29:25, 30:7, 30:10, 30:25, 31:20, 33:6, 38:24, 40:24, 41:13, 41:15
**Fund** [1] - 4:10

**fundamental** [3] - 4:21, 44:19, 45:23
**fundamentally** [6] - 12:21, 12:24, 13:22, 15:15, 24:5, 33:17
**future** [1] - 43:11
**FVRA** [7] - 16:23, 17:1, 19:18, 29:4, 34:18, 35:6, 40:19

### G

**given** [3] - 6:23, 14:9, 21:2
**Gor** [1] - 3:15
**govern** [1] - 45:6
**Government** [2] - 17:13
**government** [15] - 6:8, 9:10, 11:18, 13:5, 14:2, 14:16, 17:5, 17:12, 20:19, 21:3, 40:24, 42:1, 42:5, 42:16, 44:10
**government's** [3] - 3:15, 3:18, 9:8
**grab** [1] - 41:12
**grant** [1] - 11:1
**granted** [2] - 22:1, 46:17
**great** [1] - 27:6
**greater** [2] - 6:8, 20:20
**ground** [4] - 4:13, 15, 25:1, 36:24, 39:24
**GSA** [1] - 33:24
**guess** [5] - 9:21, 20:5, 27:12, 36:9, 38:5
**guessing** [1] - 3:19
**guidance** [5] - 3:13, 4:23, 27:1, 40:1, 46:9
**guide** [1] - 5:2, 9:11

### H

**Haddon** [1] - 18:1
**handled** [1] - 16:8
**handling** [2] - 2:25, 13:5
**happy** [5] - 2:19, 20:4, 29:2, 32:25, 38:20
**hard** [5] - 7:21, 7:24, 24:24, 25:25
**harm** [45] - 5:13, 6:8, 7:1, 7:5, 7:11, 9:9, 9:12, 9:23, 10:4, 10:5, 10:6, 10:11, 11:13, 11:14, 11:23, 12:1, 14:2, 20:6, 20:24, 21:8, 21:12, 22:1, 22:4, 22:16,

22:22, 23:10, 23:24, 24:18, 24:20, 25:7, 25:8, 25:12, 25:22, 26:1, 27:5, 27:11, 27:12, 27:15, 28:21, 28:22, 29:11, 38:6
**harms** [8] - 7:15, 14:1, 20:25, 21:3, 25:6, 25:9, 25:16, 27:13
**HAYES** [6] - 20:2, 28:16, 34:15, 36:1, 36:4, 36:8
**Hayes** [5] - 2:8, 20:3, 37:25, 39:6, 40:14
**Hayes'** [1] - 40:5
**Hayes's** [1] - 39:18
**head** [2] - 16:4, 37:6
**header** [1] - 38:12
**hear** [9] - 2:12, 2:19, 5:23, 20:1, 38:18, 42:1, 42:2, 45:15
**hearing** [1] - 3:3
**held** [4] - 22:22, 30:20, 34:23, 34:24
**help** [1] - 16:23
**Hennen** [1] - 4:11
**high** [2] - 38:15, 43:13
**high-level** [1] - 43:13
**highlight** [1] - 23:5
**highlighted** [1] - 23:15
**himself** [1] - 8:21
**hiring** [1] - 39:12
**historically** [1] - 31:21
**history** [1] - 24:12
**hit** [1] - 2:19
**hold** [4] - 19:22, 30:11, 30:17, 32:6
**holdings** [1] - 40:10
**holds** [1] - 16:10
**Honor** [15] - 2:23, 5:20, 8:5, 8:18, 10:20, 15:7, 20:2, 20:14, 21:23, 25:19, 25:20, 38:20, 42:9, 42:15, 44:8
**Honor's** [4] - 20:9, 22:18, 24:22, 25:6
**horribles** [1] - 26:25, 39:19
**House** [2] - 13:13, 42:20
**hump** [1] - 10:12
**hypothetical** [2] - 42:7, 44:9

### I

**identified** [5] - 18:4, 18:13, 20:15, 25:17, 39:10

**ignore** [2] - 35:5, 40:16
**II** [1] - 34:19
**illustrate** [1] - 26:23
**Imaging** [2] - 30:6, 31:20
**imminent** [2] - 25:23, 27:6
**important** [6] - 12:14, 12:16, 13:18, 14:13, 19:3, 19:7
**importantly** [1] - 29:23
**impossible** [1] - 31:24
**inability** [1] - 24:21
**incentive** [1] - 45:24
**include** [7] - 16:24, 17:3, 17:4, 17:6, 19:13, 34:1, 37:24
**included** [3] - 19:6, 19:8, 19:9
**includes** [4] - 3:23, 18:4, 29:11, 34:1
**including** [1] - 18:25
**inconsistent** [3] - 11:15, 11:16, 18:25
**incredible** [1] - 41:12
**independent** [24] - 17:7, 17:9, 17:20, 17:23, 18:3, 18:5, 18:7, 18:9, 18:11, 18:18, 19:13, 20:15, 22:5, 23:2, 23:3, 23:18, 29:11, 33:11, 33:16, 33:21, 41:4, 41:7, 43:23
**independently** [1] - 17:7
**indication** [1] - 26:12
**individual** [7] - 5:16, 7:10, 23:11, 25:8, 42:3, 44:7, 46:20
**inequitable** [1] - 13:23
**inequitably** [2] - 15:15, 45:25
**inexorable** [1] - 32:15
**infer** [1] - 18:16
**inference** [3] - 12:12, 19:10
**inferences** [1] - 21:13
**inferior** [8] - 4:7, 4:8, 15:24, 16:1, 16:9, 37:5, 37:10, 37:16
**information** [1] - 27:18
**inherent** [1] - 16:18
**initiated** [1] - 18:16
**injunction** [6] - 4:23, 5:4, 6:24, 9:13, 22:2, 22:5
**injunctive** [1] - 22:12

**injury** [2] - 4:25, 5:3
**instead** [1] - 11:8
**institution** [4] - 27:15, 39:25, 40:4, 44:14
**institutional** [1] - 43:22
**institutionally** [2] - 43:12, 43:16
**institutions** [1] - 27:13
**intelligence** [4] - 12:6, 12:19, 13:17, 45:16
**intended** [2] - 18:17, 38:22
**Inter** [1] - 3:17
**Inter-American** [1] - 3:17
**Intercollegiate** [2] - 30:6, 30:10
**interest** [2] - 12:20, 13:8
**interesting** [1] - 7:21
**interests** [2] - 13:3, 44:11
**interfered** [1] - 14:10
**interim** [2] - 6:20, 35:14
**internal** [2] - 13:6, 13:24
**International** [1] - 6:13
**interplay** [2] - 8:1, 8:2
**interpret** [2] - 9:19, 31:14
**interpretation** [5] - 4:19, 32:15, 32:16, 34:14, 40:13
**interpreted** [1] - 5:19
**interpreting** [2] - 30:14, 32:19
**intersects** [1] - 13:16
**intervene** [1] - 13:11
**intrusive** [1] - 43:8
**invariably** [1] - 15:18
**involved** [1] - 23:11
**involves** [1] - 18:21
**IRAP** [1] - 6:19
**irreparable** [29] - 4:25, 5:3, 5:13, 9:9, 9:12, 9:23, 10:6, 11:13, 11:14, 11:22, 12:1, 14:2, 20:5, 20:24, 21:7, 21:12, 22:1, 22:4, 22:16, 22:22, 23:10, 23:24, 24:18, 24:20, 25:22, 26:1, 27:5, 27:11, 29:1
**issue** [4] - 4:16, 18:6, 28:2, 46:13
**issued** [1] - 13:14
**issues** [4] - 3:14, 16:7,

30:1, 46:17
**itself** [2] - 6:5, 46:14

## J

**job** [3] - 11:15, 28:2,
28:13
**joined** [1] - 3:21
**Judge** [11] - 3:21, 4:5,
5:10, 6:3, 8:8, 8:15,
8:19, 23:13, 36:5,
37:13
**judges** [2] - 9:1, 44:18
**judgment** [2] - 6:7,
20:19
**judicial** [2] - 10:22,
13:12
**July** [1] - 26:22
**jump** [1] - 41:20
**Justice** [1] - 40:8
**justify** [1] - 20:16

## K

**Katsas** [4] - 3:21, 6:3,
8:15, 8:19
**Katsas'** [1] - 8:9
**Katsas's** [1] - 5:10
**key** [1] - 32:16
**kind** [2] - 32:10, 38:10
**knowing** [1] - 36:17

## L

**label** [1] - 33:16
**lack** [3] - 40:8, 40:9,
40:10
**lacked** [1] - 19:17
**lacks** [1] - 16:18
**laid** [1] - 44:3
**language** [9] - 6:6,
10:15, 20:20, 29:13,
29:15, 30:18, 30:19,
32:17, 34:1
**large** [1] - 9:10
**last** [7] - 3:3, 4:14, 5:5,
10:15, 27:12, 33:10,
36:17
**latitude** [1] - 13:4
**Law** [1] - 26:5
**law** [13] - 3:9, 12:18,
14:14, 16:4, 25:11,
25:14, 40:10, 40:13,
40:21, 45:6, 45:12,
45:16, 45:23
**lawful** [2] - 15:5, 29:4
**lawfully** [2] - 16:16,
45:8
**lawless** [1] - 12:22
**lawlessness** [1] - 3:4
**laws** [1] - 40:20

**lawsuit** [3] - 44:14,
46:4, 46:6
**lays** [1] - 20:17
**leadership** [1] - 35:15
**leads** [1] - 29:17
**least** [7] - 4:12, 4:25,
13:9, 20:23, 22:7,
29:16, 35:23
**leave** [1] - 3:19
**leaves** [1] - 8:25
**led** [3] - 30:10, 32:6,
32:10
**left** [2] - 36:20, 37:17
**legislating** [1] - 31:25
**legislation** [3] - 14:5,
15:2, 33:25
**legislative** [6] - 12:24,
13:11, 24:22, 27:9,
28:10, 33:5
**legislatively** [1] - 24:3
**Leon** [1] - 23:13
**less** [2] - 37:17, 38:5
**letting** [1] - 13:24
**level** [5] - 11:15,
14:18, 33:20, 38:15,
43:13
**Librarian** [6] - 16:6,
16:13, 19:16, 29:17,
30:3, 42:19
**librarian** [2] - 16:16,
29:7
**Library** [40] - 3:5, 3:9,
16:24, 17:4, 17:6,
17:19, 17:22, 18:10,
18:12, 18:15, 18:17,
18:25, 19:4, 19:6,
19:7, 19:9, 19:13,
24:14, 25:9, 28:10,
29:14, 29:17, 29:24,
31:10, 31:19, 32:3,
32:6, 32:11, 33:1,
33:5, 33:12, 34:4,
34:18, 39:21, 39:25,
40:16, 41:6, 41:9,
41:13, 42:22
**lifelong** [1] - 13:22
**likelihood** [4] - 3:24,
7:6, 8:6, 21:21
**likely** [8] - 4:16, 5:14,
7:9, 9:24, 9:25, 10:3,
15:22, 22:9
**likewise** [1] - 14:11
**line** [5] - 10:23, 13:2,
14:18, 20:25, 41:21
**line-level** [1] - 14:18
**list** [2] - 18:4, 32:4
**lists** [2] - 18:11, 27:2
**litigated** [1] - 7:3
**litigation** [3] - 6:22,
12:11, 19:23

**look** [6] - 7:21, 14:4,
40:21, 41:24, 46:19
**looked** [1] - 26:20
**looking** [2] - 38:3,
38:12
**lost** [1] - 11:14
**love** [1] - 38:18

## M

**majority** [2] - 3:20,
8:20
**manage** [1] - 13:24
**mark** [1] - 41:19
**match** [1] - 30:17
**materials** [1] - 12:8
**mathematical** [1] - 7:4
**Matter** [1] - 2:4
**matter** [6] - 3:4, 7:4,
17:16, 17:19, 22:10,
41:4
**matters** [1] - 13:22
**mean** [13] - 5:9, 8:11,
10:19, 11:4, 17:10,
28:2, 28:6, 28:10,
29:12, 30:23, 38:4,
42:13, 46:19
**meaning** [1] - 32:24
**meaningfully** [1] - 3:7
**means** [1] - 36:19
**mechanism** [1] -
19:19
**Med** [1] - 31:20
**Medical** [1] - 30:6
**member** [2] - 23:3,
28:8
**mention** [1] - 41:9
**mentioned** [3] - 29:17,
31:4, 42:6
**mentioning** [1] - 39:20
**merely** [2] - 44:5, 44:6
**merits** [19] - 3:25,
4:13, 5:14, 7:14, 8:4,
9:3, 10:10, 15:8,
15:18, 15:20, 15:22,
20:18, 21:9, 21:10,
21:21, 29:2, 40:2,
44:2, 46:7
**midst** [1] - 33:19
**might** [6] - 10:9,
21:14, 28:11, 28:19,
35:19
**military** [1] - 17:11
**mill** [1] - 23:7
**minimize** [1] - 7:1
**mischaracterization**
[1] - 39:7
**mischief** [1] - 45:25
**misses** [1] - 41:19
**misstatement** [1] -

39:6
**models** [1] - 12:8
**Mohammadi** [1] - 2:7
**moment** [2] - 4:22,
15:8
**months** [1] - 10:16
**moreover** [1] - 18:13
**morning** [1] - 20:2
**most** [4] - 8:22, 22:20,
27:13, 31:7
**motion** [5] - 3:15,
3:18, 9:13, 12:10,
46:17
**motions** [2] - 3:15,
3:18
**move** [1] - 27:3
**moves** [1] - 6:22
**moving** [2] - 27:3,
37:1
**MR** [25] - 2:23, 3:3,
5:10, 5:20, 6:1, 6:18,
8:5, 8:7, 8:18, 10:20,
11:8, 11:11, 11:22,
15:7, 20:2, 28:16,
34:15, 36:1, 36:4,
36:8, 38:20, 39:5,
42:15, 43:3, 44:8
**multi** [1] - 23:3
**multi-member** [1] -
23:3
**multiple** [2] - 23:6,
27:25
**multiply** [1] - 7:10
**murky** [1] - 8:12
**must** [1] - 32:9

## N

**nail** [1] - 8:13
**name** [1] - 41:23
**namely** [1] - 35:8
**narrow** [2] - 35:16,
37:9
**nation** [1] - 40:20
**National** [1] - 33:24
**naturally** [2] - 7:3, 7:8
**nature** [2] - 10:11,
13:11
**necessarily** [3] - 7:17,
9:4, 9:8
**necessary** [1] - 41:5
**need** [4] - 13:15,
23:10, 25:24, 41:9
**needed** [1] - 22:4
**needs** [1] - 37:15
**Netter** [3] - 2:6, 2:24,
37:22
**NETTER** [19] - 2:23,
3:3, 5:10, 5:20, 6:1,
6:18, 8:5, 8:7, 8:18,

39:6
**never** [3] - 10:25, 11:5
**new** [3] - 4:13, 26:20,
39:13, 39:14
**next** [1] - 12:9
**nominated** [2] - 23:12,
29:18, 34:22
**nominee** [1] - 34:21
**non** [1] - 41:15
**non-executive** [1] -
41:15
**none** [2] - 27:19,
39:21
**nonetheless** [1] - 22:1
**normal** [1] - 37:6
**normally** [3] - 27:3,
32:3, 37:8
**norms** [1] - 45:17
**nothing** [10] - 3:4,
21:7, 24:6, 24:9,
24:10, 27:16, 28:6,
33:7, 34:3, 45:20
**notice** [1] - 13:13
**nuanced** [1] - 30:22
**number** [4] - 29:16,
29:22, 29:23, 43:9

## O

**obligated** [1] - 17:17
**obligation** [1] - 38:25
**obsession** [1] - 19:5
**obstacle** [1] - 15:14
**obstacles** [1] - 42:4
**obtaining** [1] - 22:5
**obviously** [2] - 7:25,
44:22
**occupant** [1] - 15:5
**occurred** [1] - 27:23
**offered** [2] - 14:3,
42:17
**offering** [1] - 9:18
**office** [7] - 7:12,
14:25, 15:2, 15:4,
15:5, 33:14, 33:15
**Office** [10] - 3:10,
17:13, 17:14, 25:9,
25:24, 26:7, 26:12,
26:16, 28:21, 30:2
**officer** [19] - 4:2, 4:7,
4:8, 6:9, 6:10, 15:24,
16:1, 16:3, 16:9,
22:24, 26:20, 37:5,
37:11, 37:16, 39:8,
39:11
**officers** [2] - 16:19,
41:17

**official** [3] - 14:16, 34:20, 45:8
**officials** [3] - 13:19, 15:13, 39:22
**old** [1] - 33:14
**older** [1] - 33:13
**once** [2] - 35:11, 46:15
**one** [32] - 6:5, 7:4, 8:15, 11:23, 16:7, 20:18, 21:13, 22:21, 22:22, 24:2, 24:18, 24:21, 25:20, 26:3, 29:16, 29:22, 33:1, 35:25, 36:2, 36:3, 36:4, 36:10, 38:9, 38:12, 38:18, 39:1, 39:2, 39:6, 39:22, 39:24, 43:9
**ones** [1] - 7:23
**ongoing** [1] - 39:12
**open** [2] - 8:25, 26:7
**operations** [1] - 33:21
**opinion** [4] - 3:21, 3:23, 5:10, 8:9
**opinions** [2] - 7:22, 23:6
**opponent's** [1] - 21:19
**opportunity** [1] - 15:19
**opposition** [1] - 42:17
**oranges** [1] - 31:10
**order** [8] - 2:2, 3:16, 3:20, 4:19, 6:8, 20:16, 21:22, 46:15
**orders** [1] - 3:19
**organic** [1] - 33:10
**otherwise** [3] - 16:8, 35:20, 37:17
**ought** [2] - 14:14, 19:22
**outcome** [2] - 11:16, 46:10
**override** [1] - 32:23
**oversee** [1] - 37:19
**own** [2] - 13:6, 13:24

**P**

**p.m** [2] - 2:2, 46:24
**paints** [1] - 26:6
**panel** [9] - 3:15, 3:18, 3:20, 3:25, 4:13, 4:18, 8:23, 9:7, 16:8
**panel's** [1] - 3:20
**parade** [2] - 26:25, 39:18
**Paragraph** [2] - 26:3, 26:19
**parameters** [1] - 28:13
**parliamentarian** [6] -

42:8, 42:21, 43:1, 43:19, 44:21, 45:4
**parochial** [1] - 13:3
**part** [6] - 9:10, 28:2, 28:7, 33:24, 41:5, 41:7
**Part** [1] - 12:5
**particular** [2] - 32:18, 36:14
**particularly** [1] - 33:9
**parties** [5] - 3:19, 15:25, 20:21, 30:4, 46:23
**party** [3] - 5:12, 5:14, 6:21
**pass** [1] - 7:7
**passed** [1] - 40:19
**pathway** [1] - 14:7
**paycheck** [2] - 45:4, 45:21
**PCAOB** [1] - 4:11
**pendency** [1] - 19:23
**pending** [1] - 3:17
**per** [1] - 6:14
**perfectly** [1] - 32:1
**perform** [4] - 3:8, 6:11, 24:22, 27:8
**performance** [1] - 42:5
**performed** [2] - 39:16, 41:13
**performing** [3] - 12:24, 14:14, 14:19
**performs** [3] - 29:25, 30:25, 31:19
**perhaps** [3] - 13:18, 15:19, 39:6
**peril** [1] - 24:15
**period** [4] - 5:1, 26:8, 35:10, 39:17
**Perkins** [1] - 39:20
**Perlmutter** [19] - 2:4, 3:1, 3:8, 4:24, 7:13, 7:14, 9:12, 12:1, 12:3, 12:17, 12:19, 13:15, 13:19, 14:6, 15:3, 15:22, 16:12, 19:20, 46:4
**Perlmutter's** [1] - 38:23
**permit** [1] - 46:11
**permitting** [1] - 13:18
**person** [7] - 7:11, 15:1, 26:21, 37:7, 43:13, 43:14
**PI** [1] - 24:8
**picture** [1] - 26:6
**Pillard** [1] - 4:5
**place** [3] - 35:14, 39:19, 41:18

**placement** [1] - 42:22
**places** [1] - 23:6
**plain** [1] - 31:2, 32:23
**plainly** [1] - 17:6, 43:8
**plaintiff** [13] - 2:6, 2:12, 2:20, 2:25, 9:24, 11:6, 21:2, 21:24, 25:8, 25:18, 25:24, 37:4, 38:13
**plaintiff's** [1] - 29:4
**plaintiffs** [1] - 2:13
**Plan** [1] - 13:14
**plausibility** [1] - 35:1
**play** [4] - 40:7, 42:25, 43:2, 44:4
**plenty** [1] - 9:15
**plus** [1] - 17:12
**point** [27] - 4:5, 5:6, 5:24, 6:25, 11:24, 13:7, 14:24, 21:18, 22:19, 24:13, 25:7, 25:20, 26:13, 26:23, 30:13, 33:10, 33:13, 35:7, 37:13, 39:18, 42:12, 42:14, 42:17, 44:1, 44:2, 44:3
**points** [7] - 10:21, 15:20, 27:14, 34:16, 38:17, 41:1, 44:1
**political** [1] - 44:11
**position** [12] - 5:11, 15:1, 15:23, 19:22, 23:2, 29:3, 35:17, 37:2, 37:16, 37:18, 40:25, 45:9
**positions** [1] - 36:25
**possibility** [3] - 8:25, 18:6, 35:1
**post** [3] - 33:13, 33:15, 33:18
**post-1966** [1] - 33:25
**Postal** [1] - 34:6
**posture** [2] - 8:13, 8:23
**potentially** [1] - 11:3, 13:10
**power** [18] - 6:10, 16:9, 16:10, 35:2, 35:7, 35:19, 36:21, 37:7, 37:15, 37:18, 37:19, 40:7, 41:12, 42:18, 42:19, 44:12, 44:13, 45:1
**powers** [2] - 41:22, 44:25
**practical** [1] - 43:10
**practice** [1] - 6:25
**pre** [1] - 12:4
**pre-publication** [1] - 12:4

**preceded** [1] - 22:20
**precedent** [2] - 16:12, 18:1
**precisely** [2] - 18:8, 43:4
**preferred** [1] - 7:11
**preliminary** [10] - 4:15, 4:20, 4:22, 5:4, 6:24, 9:5, 9:13, 9:22, 11:1, 22:5
**prerogatives** [2] - 43:22
**present** [2] - 2:6, 2:7
**President** [39] - 4:1, 4:3, 4:6, 5:15, 7:8, 7:11, 12:9, 12:13, 12:16, 13:10, 16:3, 16:17, 19:17, 22:25, 23:13, 23:17, 29:18, 34:19, 35:5, 35:8, 35:18, 36:20, 37:3, 37:10, 40:7, 41:17, 41:20, 42:7, 42:9, 42:11, 42:25, 43:7, 43:11, 44:18, 44:23, 45:1, 45:2, 45:18
**president** [1] - 3:16
**President's** [2] - 42:18, 44:11
**prevail** [2] - 7:9, 15:22
**prevent** [2] - 12:13, 12:17
**preventing** [1] - 15:15
**primary** [1] - 29:6
**principal** [6] - 4:2, 16:18, 22:24, 35:21, 37:11, 37:16
**principle** [3] - 40:9, 40:10
**principled** [2] - 41:2, 42:2
**principles** [1] - 45:23
**privilege** [1] - 15:11
**privileges** [2] - 45:12, 45:13
**probabilistic** [1] - 9:4
**probative** [2] - 33:9, 34:11
**problem** [3] - 30:14, 36:14, 36:23
**problems** [1] - 25:3, 27:7
**proceed** [2] - 2:22, 5:23
**proceeding** [1] - 26:13
**PROCEEDINGS** [1] - 2:1
**process** [2] - 11:3, 39:12
**producing** [1] - 27:10
**progeny** [1] - 13:2

**Project** [1] - 6:13
**promulgated** [1] - 30:3
**promulgates** [1] - 30:1
**proper** [1] - 19:10
**properly** [1] - 19:21
**proposition** [1] - 15:9
**protections** [2] - 23:4, 29:20
**provide** [1] - 13:20
**provided** [5] - 3:20, 16:8, 16:20
**providing** [1] - 13:21
**provision** [1] - 32:18
**provisions** [2] - 31:5, 31:16
**publication** [1] - 12:4
**published** [1] - 12:3
**pure** [1] - 27:21
**purport** [1] - 44:18
**purported** [5] - 12:10, 42:7, 42:9, 43:7
**purporting** [2] - 16:15, 36:23
**purpose** [1] - 6:19
**purposes** [12] - 3:24, 4:14, 5:1, 5:3, 8:21, 8:23, 9:6, 9:12, 14:2, 15:24, 30:24, 32:8
**pursuant** [2] - 16:11, 16:17
**put** [7] - 2:15, 10:5, 10:14, 27:4, 27:7, 35:13, 46:21
**putting** [1] - 12:22

**Q**

**qualify** [1] - 24:18
**questions** [2] - 10:22, 46:12
**quintessential** [2] - 29:25, 30:9
**quotation** [2] - 6:7, 6:19
**quote** [6] - 4:13, 6:12, 13:4, 39:11, 39:13, 40:14
**quote-unquote** [1] - 4:13
**quoted** [1] - 20:21

**R**

**raised** [1] - 37:25
**random** [2] - 32:22, 40:15
**Rao** [2] - 4:5, 37:13
**rare** [1] - 14:15
**rates** [1] - 30:5

**Re** [1] - 4:11
**reach** [2] - 9:2, 46:7
**read** [8] - 6:6, 8:15, 20:14, 20:22, 21:5, 22:13, 26:24
**reading** [4] - 10:24, 20:23, 22:6, 31:16
**real** [2] - 19:1, 19:2
**realistically** [1] - 14:7
**really** [5] - 10:18, 33:6, 34:11, 43:10, 43:24
**reappointed** [1] - 26:21
**reason** [8] - 23:21, 28:20, 31:17, 33:15, 34:9, 34:10, 37:5, 40:2
**reasonable** [1] - 32:1
**reasoned** [1] - 9:7
**reasoning** [2] - 4:18, 5:7
**reasons** [7] - 3:19, 25:19, 27:25, 29:15, 29:16, 32:9, 32:10
**receiving** [1] - 39:2
**recent** [2] - 8:22, 9:7
**Recess** [1] - 36:11
**recess** [2] - 36:22, 46:24
**recesses** [1] - 36:17
**recipe** [1] - 45:5
**recognize** [3] - 2:10, 37:6, 37:8
**recognized** [1] - 35:1
**recognizes** [1] - 31:21
**recommendation** [1] - 39:15
**record** [2] - 2:3
**refer** [1] - 6:5
**reference** [1] - 41:6
**references** [1] - 24:24
**referring** [1] - 28:5
**refers** [2] - 31:8, 38:23
**reflects** [2] - 6:7, 20:19
**Reform** [2] - 4:1, 16:21
**Refugee** [1] - 6:13
**refute** [1] - 41:10
**regard** [1] - 12:25
**regardless** [1] - 27:22
**register** [1] - 26:4
**Register** [11] - 12:4, 14:13, 14:22, 15:9, 15:10, 15:23, 19:21, 38:13, 39:15, 45:11, 46:5
**Register's** [1] - 13:9
**regulations** [1] - 30:1
**reinstate** [1] - 24:3

**reinstatement** [2] - 4:15, 21:11
**reinstating** [1] - 3:16
**reject** [1] - 23:22
**rejected** [1] - 9:8
**related** [2] - 21:14, 28:21
**relative** [1] - 21:3
**relevant** [4] - 18:24, 20:11, 21:19, 25:4
**relief** [7] - 4:15, 6:20, 9:5, 9:22, 10:22, 11:1, 22:12
**remain** [1] - 3:10
**remains** [4] - 3:8, 38:13, 46:3, 46:4
**remedied** [1] - 14:1
**remedy** [4] - 4:16, 14:3, 21:11
**remember** [2] - 24:1, 29:1
**removal** [5] - 21:25, 23:3, 29:4, 29:19, 29:21
**removals** [3] - 4:16, 26:10, 28:23
**remove** [11] - 12:10, 16:9, 19:20, 37:4, 37:7, 37:10, 42:8, 42:9, 42:19, 43:1, 43:7
**removed** [5] - 6:9, 6:10, 10:8, 16:12, 42:5
**reopen** [1] - 14:8
**reorganization** [2] - 33:25, 34:5
**reorganized** [1] - 33:17
**repeat** [1] - 11:6
**repeatedly** [1] - 30:7
**repeating** [1] - 11:8
**replacement** [1] - 39:12
**report** [2] - 12:5, 12:18
**representatives** [1] - 43:21
**representing** [1] - 34:24
**request** [1] - 28:9
**required** [2] - 26:15, 38:14
**requires** [1] - 46:9
**research** [1] - 28:11
**residual** [1] - 36:21
**resolution** [1] - 11:17
**resolves** [1] - 33:4
**resolving** [1] - 46:12
**respect** [7] - 6:2, 40:6, 40:9, 40:11, 40:13,

41:25, 44:8
**respond** [3] - 2:14, 10:13, 42:13
**response** [6] - 18:19, 20:1, 37:22, 37:24, 38:18, 42:16
**responsibilities** [2] - 45:11, 45:12
**responsibility** [1] - 15:12
**responsible** [1] - 15:17
**restored** [1] - 19:22
**result** [1] - 44:13
**results** [1] - 7:1
**resuming** [1] - 12:20
**returned** [2] - 39:20, 39:22
**review** [2] - 3:13, 4:22
**reviewing** [1] - 3:15
**rewrite** [1] - 21:16
**rewriting** [1] - 33:21
**rightful** [2] - 15:1, 15:4
**rights** [4] - 6:21, 24:1, 43:15, 43:17
**rise** [1] - 12:11
**risk** [2] - 6:8, 20:20
**role** [3] - 16:16, 19:18, 19:20
**room** [1] - 36:20
**royalty** [1] - 30:5
**rule** [6] - 32:14, 37:6, 40:21, 45:6, 45:23, 46:7
**rules** [1] - 7:2
**ruling** [2] - 6:4, 8:23
**run** [1] - 23:7
**run-of-the-mill** [1] - 23:7

**S**

**Sampson** [1] - 13:2
**satisfied** [1] - 27:10
**satisfies** [1] - 26:1
**scale** [1] - 12:22
**scattered** [1] - 32:23
**scenario** [1] - 9:22
**scenarios** [1] - 44:3
**Scher** [2] - 2:7, 2:21
**scope** [1] - 16:25
**second** [7] - 4:6, 13:7, 23:23, 24:21, 38:5, 38:12, 38:25
**Section** [3] - 17:3, 17:8, 17:9
**see** [3] - 27:7, 27:9, 38:3
**seek** [1] - 13:11
**seeking** [1] - 35:17

**seem** [4] - 9:16, 9:17, 26:2, 27:3
**selected** [1] - 29:18
**Senate** [14] - 23:1, 23:12, 23:17, 29:19, 34:22, 35:12, 42:8, 42:21, 43:1, 43:19, 43:20, 44:15, 44:21, 45:3
**senior** [1] - 11:15
**senior-level** [1] - 11:15
**sense** [1] - 37:25
**separate** [5] - 18:14, 21:9, 21:10, 28:5, 28:18
**separately** [1] - 20:17
**separation** [1] - 44:25
**Sergeant** [1] - 42:21
**series** [1] - 3:14
**serve** [1] - 39:11
**Service** [1] - 34:6
**service** [2] - 42:5, 46:5
**serving** [2] - 15:11, 23:18
**set** [1] - 30:5
**setting** [1] - 12:10
**several** [1] - 24:19
**Shira** [1] - 2:4
**shows** [1] - 44:21
**side** [5] - 5:23, 20:6, 31:4
**sideline** [2] - 12:13, 13:19
**sidelines** [1] - 14:6
**sidetrack** [1] - 38:17
**signaled** [1] - 25:19
**signature** [1] - 26:14
**significant** [1] - 13:17
**simply** [3] - 18:16, 35:7, 37:12
**single** [1] - 25:17
**sit** [1] - 9:5
**situation** [3] - 7:13, 18:21, 39:24
**someone** [7] - 2:21, 22:25, 23:16, 23:18, 24:3, 34:21, 35:13
**sometimes** [2] - 10:16, 30:2
**somewhat** [1] - 8:12
**soon** [1] - 46:22
**sorry** [2] - 11:6, 36:1
**sort** [9] - 9:17, 10:16, 33:23, 38:7, 38:8, 38:9, 38:10, 44:13
**sought** [1] - 12:13
**specific** [1] - 36:23
**specifically** [3] - 14:16, 32:4, 40:17

**speculation** [1] - 27:21
**squarely** [1] - 29:15
**stage** [2] - 44:12, 46:8
**stake** [1] - 10:11
**standard** [2] - 5:4, 11:20
**standing** [1] - 15:13
**start** [6] - 13:7, 20:4, 20:5, 20:7, 38:21, 44:18
**started** [1] - 20:6
**starts** [1] - 13:1
**state** [3] - 3:10, 11:9, 41:10
**statute** [16] - 14:12, 14:13, 14:17, 16:2, 16:9, 16:21, 17:16, 17:19, 29:20, 30:14, 31:3, 33:12, 33:16, 35:20, 38:24, 39:1
**statute's** [1] - 16:25
**statutes** [5] - 33:10, 34:8, 34:9, 40:21, 41:3
**statutorily** [1] - 26:15
**statutory** [22] - 6:11, 15:12, 17:18, 18:24, 21:1, 21:25, 22:10, 22:17, 22:21, 24:17, 24:25, 25:5, 27:8, 29:9, 30:18, 30:19, 31:5, 32:16, 34:12, 34:14, 38:9, 38:14
**stay** [14] - 3:16, 4:19, 6:7, 6:23, 8:24, 20:16, 20:19, 21:18, 21:22, 22:2, 24:23, 35:3, 35:22
**still** [3] - 20:25, 31:11, 38:2
**straightforward** [1] - 15:21
**strange** [1] - 31:1
**striking** [2] - 40:6, 40:8
**strong** [1] - 11:25, 12:12
**strongly** [1] - 46:8
**struggle** [2] - 38:2, 44:13
**submission** [1] - 4:21
**submitted** [1] - 26:5
**subordinates** [2] - 3:6, 45:19
**subparagraph** [1] - 26:19
**substantiated** [1] - 25:16
**success** [4] - 3:24,

8:6, 21:21, 45:6

**successfully** [1] - 39:9

**suffer** [1] - 7:16

**suffering** [1] - 21:3

**suggest** [2] - 17:22, 24:9

**suggested** [1] - 29:21

**suggesting** [5] - 8:2, 8:9, 8:11, 21:24, 35:4

**suggestion** [2] - 24:14, 41:3

**suggests** [1] - 45:23

**suit** [2] - 27:24, 44:16

**super** [1] - 19:11

**supervisor** [1] - 14:19

**support** [2] - 27:5, 27:11

**supposedly** [1] - 11:2

**Supreme** [12] - 4:10, 4:12, 4:19, 5:11, 6:4, 6:14, 6:18, 7:22, 13:1, 16:11, 20:16, 22:7

**surely** [2] - 12:19, 41:14

**surplusage** [1] - 32:14

**surprised** [1] - 33:3

**surprising** [1] - 36:15

**surrounding** [1] - 12:2

**suspenders** [4] - 18:20, 18:22, 19:5, 31:17

**T**

**takeover** [1] - 3:5

**tasks** [4] - 14:19, 15:12, 15:14, 41:18

**temporary** [1] - 4:4

**tend** [2] - 10:17, 38:11

**term** [9] - 18:2, 18:14, 18:24, 19:12, 32:7, 32:18, 32:19, 32:22, 41:7

**terminate** [3] - 5:15, 19:20, 24:2

**terms** [11] - 7:17, 9:5, 13:3, 17:18, 18:24, 22:8, 27:1, 28:19, 31:10, 40:22, 40:23

**text** [4] - 29:9, 31:2, 31:11, 32:24

**THE** [26] - 2:9, 3:2, 5:5, 5:17, 5:21, 6:16, 7:19, 8:6, 8:10, 9:14, 11:4, 11:10, 11:21, 14:24, 19:24, 28:1, 34:13, 35:25, 36:2, 36:6, 37:21, 39:4,

42:12, 43:2, 43:5, 46:18

**theoretical** [1] - 27:7

**theories** [5] - 14:3, 24:19, 34:13, 34:14, 38:6

**theory** [9] - 11:12, 21:2, 23:9, 23:19, 24:17, 24:25, 27:11, 42:2

**therefore** [8] - 7:16, 17:20, 17:23, 19:15, 19:19, 36:19, 38:14, 41:8

**third** [2] - 4:12, 37:1

**three** [4] - 3:23, 5:6, 35:25, 36:2

**thumb** [1] - 12:22

**tie** [1] - 15:18

**tilt** [1] - 7:17

**timeline** [1] - 25:25

**timing** [2] - 25:21, 27:2

**Title** [5] - 32:23, 33:2, 33:7, 33:18

**today** [4] - 13:13, 24:11, 45:8, 46:10

**Todd** [2] - 2:4, 3:5

**together** [1] - 29:24

**total** [1] - 20:25

**totally** [2] - 24:16, 28:18

**tough** [1] - 9:14

**track** [1] - 9:9

**traditionally** [1] - 13:5

**train** [1] - 12:8

**treading** [1] - 39:24

**treated** [2] - 17:22, 18:18

**treating** [1] - 41:16

**tricky** [1] - 46:20

**TRO** [10] - 2:12, 2:17, 3:12, 5:1, 20:10, 22:6, 22:18, 24:23, 25:19, 46:8

**true** [10] - 7:6, 7:8, 11:22, 23:14, 30:13, 33:12, 33:14, 40:25, 42:20, 43:5

**truly** [1] - 35:14

**Trump** [2] - 6:13, 6:19

**trying** [2] - 41:20, 43:16

**turn** [4] - 15:8, 29:2, 36:9, 37:22

**turning** [1] - 40:5

**two** [9] - 20:15, 22:22, 29:5, 29:15, 29:16, 29:23, 34:15, 37:3, 38:16

**type** [2] - 10:4, 10:5

**U**

**U.S** [2] - 18:8, 40:15

**U.S.C** [3] - 16:5, 17:1, 18:9

**ultimately** [1] - 17:15

**ultra** [1] - 21:25

**unable** [2] - 3:8, 6:11

**unbridled** [1] - 35:7

**uncertainty** [1] - 39:17

**under** [11] - 4:24, 5:4, 19:18, 25:14, 29:6, 38:24, 41:21, 42:10, 45:12, 45:17

**undermines** [1] - 21:6

**underscores** [1] - 24:15

**understood** [2] - 5:24, 39:4

**undisputed** [1] - 15:25

**undisputedly** [1] - 42:10

**unfettered** [1] - 35:4

**unilateral** [1] - 35:18

**unintentional** [1] - 39:7

**unique** [1] - 31:11

**unlawful** [6] - 4:17, 11:3, 43:4, 44:22, 44:23, 44:24

**unlawfully** [1] - 12:17

**unless** [2] - 16:8, 16:20

**unlikely** [2] - 4:2, 5:12

**unquote** [1] - 4:13

**up** [9] - 6:1, 9:20, 9:21, 9:25, 10:10, 30:17, 31:5, 44:21

**urge** [2] - 46:7, 46:10

**uses** [1] - 18:9

**utter** [1] - 40:8

**V**

**Vacancies** [3] - 3:25, 16:21, 29:8

**vacancy** [3] - 22:25, 35:11, 36:21

**value** [2] - 7:17, 9:17

**various** [1] - 41:1

**venerated** [1] - 39:25

**version** [2] - 12:5, 30:22

**versus** [1] - 33:7

**vest** [1] - 16:6

**viable** [1] - 23:9

**view** [4] - 15:4, 31:1, 34:19, 35:22

**viewed** [1] - 8:21

**vindicate** [3] - 43:15, 43:17, 43:21

**vindicating** [1] - 43:15

**vires** [1] - 21:25

**vis** [2] - 12:23

**vis-a-vis** [1] - 12:23

**W**

**wait** [1] - 5:22

**waiting** [1] - 45:15

**walk** [2] - 15:19, 24:20

**Walters** [1] - 18:1

**water** [1] - 39:25

**weak** [1] - 7:15

**website** [2] - 26:21, 39:10

**weigh** [2] - 5:13, 9:16

**weighs** [1] - 4:13

**whatsoever** [3] - 18:16, 21:7, 33:7

**whit** [1] - 17:21

**White** [1] - 13:13

**whole** [2] - 18:21, 18:22

**wholesale** [1] - 34:5

**Wilcox** [12] - 4:19, 5:12, 5:19, 6:5, 7:23, 9:19, 10:2, 20:7, 20:11, 20:12, 20:14, 21:17

**Williams** [1] - 34:23

**win** [2] - 9:25, 10:3

**winning** [1] - 10:10

**word** [5] - 4:14, 8:10, 31:8, 31:12, 32:2

**works** [1] - 40:21

**world** [1] - 11:12

**write** [1] - 36:18

**writing** [1] - 32:2

**wrongfully** [3] - 6:10, 10:1, 10:8

**Z**

**zooming** [1] - 10:14