UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHIRA PERLMUTTER, *Plaintiff*, v. TODD BLANCHE et al., *Defendants*. | Civil Action No. 25-1659 (TJK) |

## MEMORANDUM OPINION

On May 10, 2025, Shira Perlmutter was purportedly fired by President Trump from her position as Register of Copyrights and Director of the U.S. Copyright Office at the Library of Congress. Arguing that this attempt to terminate her was unlawful, she sued a few weeks later and then moved for a preliminary injunction, seeking to prevent her removal. The Court will deny her motion because she has not shown that she will be irreparably harmed without this relief.

**I.  Background**

    **A.  Factual Background**

On May 8, 2025, President Trump removed Carla D. Hayden as Librarian of Congress. ECF No. 24-3 ¶ 5. Two days later, acting through another official, he similarly purported to remove Perlmutter as head of the Copyright Office via an email that terminated her "effective immediately." *Id.* ¶ 9. And the next day, Deputy Attorney General Todd Blanche—whom President Trump had "directed to perform the duties of the office of the Librarian of Congress" following the former Librarian's removal, ECF No. 24-5 at 3—"designate[d] Paul Perkins" to replace Perlmutter "as the Acting Register of Copyrights and Acting Director of the U.S. Copyright Office," *id.* at 2. For her part, Perlmutter maintains that she "remain[s] Register of Copyrights" and that

she has "not received any communication from Library of Congress leadership that purports to terminate [her] employment as Register of Copyrights." *Id.* ¶¶ 12–13.

### B.    Procedural History

Perlmutter claims that "the purported appointments of" Blanche and Perkins "have caused considerable confusion among Library staff, copyright stakeholders, and the public" and will "impede the Copyright Office's ability to perform its work." ECF No. 24-3 ¶¶ 11, 15.  So on May 22, 2025, she sued, bringing two counts challenging her purported removal and the President's appointment of Blanche as the Acting Librarian of Congress.  ECF No. 1 ¶¶ 26–36.  She also moved for a temporary restraining order.  ECF No. 2.  On May 28, the Court denied her motion, concluding that she had not shown that she would suffer irreparable harm without that relief.  ECF No. 15 at 36–52.  Then, on June 10, Perlmutter moved for a preliminary injunction, ECF No. 24, and the Court held a hearing on the motion on July 23.

## II.    Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20.  "[P]laintiffs bear the burden of persuasion on all four preliminary injunction factors." *Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014).  Thus, "failure to show a likelihood of irreparable harm" is, "standing alone, sufficient to defeat the motion." *Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87, 96 (D.D.C. 2020) (quoting *Navajo Nation v. Azar*, 292 F. Supp. 3d 508, 512 (D.D.C. 2018)).

The D.C. Circuit "has set a high standard for irreparable injury." *Chaplaincy of Full Gospel*

*Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). "[T]he injury must be both certain and great; it must be actual and not theoretical." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam). "The party seeking injunctive relief must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (cleaned up). In other words, "[t]he movant must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." *Id.* Furthermore, "the movant must show that the alleged harm will *directly result* from the action which the movant seeks to enjoin." *Id.* (emphasis added). Finally, the injury must be truly "irreparable"—i.e., "beyond remediation." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.

**III.    Analysis**

The Court's analysis begins and ends with irreparable harm. Perlmutter argues that her removal from office—even if only temporary—is irreparable harm that can only be prevented by a preliminary injunction. The Court is unconvinced, so it will deny her motion.

The Supreme Court has instructed that the loss of a job and the harms that go along with it generally "will not support a finding of irreparable injury, however severely they may affect a particular individual." *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974). "That is particularly true in cases involving government employment." *English v. Trump*, 279 F. Supp. 3d 307, 334 (D.D.C. 2018). Indeed, the *Sampson* Court emphasized "that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" 415 U.S. at 83 (quoting *Cafeteria & Restaurant Workers Union, Local 473, A.F.L.—C.I.O. v. McElroy*, 367 U.S. 886, 896 (1961)). And it noted that, even outside the government context, courts of equity are "traditional[ly] unwilling[]" "to enforce contracts for personal service either at the behest of the employer or of the employee." *Id.* The Court also relied on "the historical denial of all equitable

3

relief by the federal courts" when a plaintiff sought, "by injunction, [to] restrain an executive officer from making a wrongful removal of a subordinate appointee." *Id.* at 71, 83 (quoting *White v. Berry*, 171 U.S. 366, 377 (1898)).  For these reasons, preliminary equitable intervention in government-personnel cases is disfavored, and the plaintiff must at least demonstrate that her case involves a "genuinely extraordinary situation" to obtain interim relief.  *Id.* at 92 n.68.  Such a showing must establish that "the circumstances surrounding [her] discharge, together with the resultant effect on [her], . . . so far depart from the normal situation that irreparable injury might be found."  *Id.*  Only then will she have shown "irreparable injury sufficient in kind and degree to override these factors cutting against the general availability of preliminary injunctions in Government personnel cases."  *Id.* at 84.[1]

Perlmutter argues that this case presents a "genuinely extraordinary situation" for three reasons: (1) she has been deprived of her "'statutory right to function' as Register of Copyrights," ECF No. 24-2 at 34; (2) she "remains Register of Copyrights and is therefore required to fulfill her statutory duties," *id.* at 37; and (3) "[i]rreparable harm to the Library of Congress and Copyright Office will frustrate [her] ability to resume her duties," *id.* at 39.  As explained below, each of these arguments fails.

### A. Perlmutter's Temporary Loss of Her "Statutory Right to Function" While the Court Resolves the Merits of Her Case Is Not an Irreparable Harm

Perlmutter first argues that this case warrants preliminary injunctive relief because her

---

[1] At times, Perlmutter appears to suggest that the importance of her position should play a role in the Court's analysis of whether this situation is "genuinely extraordinary." *E.g.*, ECF No. 24-2 at 32.  Perhaps this is a response to the *Sampson* plaintiff's status as a "probationary employee."  415 U.S. at 62.  The reasoning in *Sampson*, though, did not appear to turn on the seniority of the employee.  Thus, the Court assigns little weight to this factor.  To be sure, such a consideration is not irrelevant.  But it does little to show that "the circumstances surrounding [her] discharge, together with the resultant effect on [her], . . . so far depart from the normal situation that irreparable injury might be found."  *Sampson*, 415 U.S. at 92 n.68.

removal deprives her of her "statutory right to function" as the Register of Copyrights. ECF No. 24-2 at 32, 34 (quotation omitted). Not so. In the first case purporting to recognize such a right, the court found that the plaintiffs had shown irreparable harm because, without a preliminary injunction, the court could not reinstate them to their positions later on—because the positions would no longer exist. *See Berry v. Reagan*, No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983). Nothing similarly irremediable is at stake here.

In *Berry*, President Carter had appointed the plaintiffs, with the advice and consent of the Senate, to the Commission on Civil Rights. *Id.* at *1. That body did not have a fixed term for members; by statute, it expired 60 days after the date established for submission of its final report, September 30, 1983. *Id*. at *1 n.1. The Commission apparently did not meet this deadline, leaving it racing to finish the report before it dissolved on November 29. *Id*. at *5. But President Reagan fired the plaintiffs before the Commission submitted its report, so they sued. *Id*. at *1. After concluding that the plaintiffs were likely to succeed on the merits, the court found that they had established irreparable injury to "their statutory right to function as Commissioners." *Id*. at *5. According to that court, "[t]he irreparable nature of this injury is evident by the obviously disruptive effect the *denial* of preliminary relief will likely have on the Commission's final activities." *Id.* Because the plaintiffs' removal deprived the Commission of a quorum, it lost its "ability to fulfill its mandate" to issue a final report before it expired. *Id*. These circumstances, the court held, satisfied the *Sampson* test. *Id*.

Even putting aside that *Berry* is not binding on this Court, it does not provide Perlmutter a winning argument that she will likely suffer irreparable harm here for several reasons. First, as noted above, the harm to the plaintiff Commissioners was irreparable because, without a preliminary injunction, the Commission itself would have expired and the Court could not have reinstated

5

them to their positions. Here, to the extent that Perlmutter argues that she suffers harm solely from not functioning as the Register of Copyrights, she provides no reason to think that any such harm cannot be remediated in the ordinary course by returning her to her position if she prevails on the merits. She argues that later reinstatement is insufficient because she is being sidelined *now* and can never reclaim this lost time. ECF No. 24-2 at 34–35. And to demonstrate, she notes that the Copyright Office is in the middle of producing a multi-volume report on copyright and artificial intelligence for Congress and other stakeholders and that her ability to "complete" that report "will be forfeited during the months-long pendency of this lawsuit." *Id.* at 35. The *Berry* court, however, did not rely on this type of reasoning. And more fundamentally, this "lost time" argument proves too much because it would establish irreparable harm in *every* wrongful-termination case.

Perlmutter also gestures at a related argument when she asserts that her removal and Perkins's appointment will have an irreparable effect on her because they will prevent her from "return[ing] to her position as it currently exists." ECF No. 24-2 at 39. But she does not show that Defendants' actions, if not enjoined, will likely irreparably alter her position. So those fears are vague and speculative, not "certain and great." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (quotation omitted).

Second, although the court in *Berry* appears to have assumed that alleged injury to the Commission was identical to alleged injury to the plaintiff Commissioners—an assumption with which the Court disagrees for reasons explained later—the situation in *Berry* was very different than the one here. In *Berry*, denying the requested injunction would have shut down the Commission before it fulfilled its mandate. So the Commission itself could not have continued to function—and indeed, could never function again—absent preliminary relief. Here, on the other hand, while Perlmutter claims that Defendants' actions "impede[]" *her* from carrying out the

6

responsibilities of the Copyright Office, ECF No. 24-3 ¶ 14, she does not explain why the Copyright Office cannot continue to operate under Perkins's temporary leadership. *Cf. English*, 279 F. Supp. 3d at 355 (finding that a removed officer had not shown irreparable harm where the agency would "not be shuttered" because it could "continue[] to operate" under the leadership of the officer's purported replacement). For example, though Perlmutter claims that *she* will be temporarily unable to complete the report on copyright and artificial intelligence absent an injunction, she does not explain why the *Copyright Office* could not do so without her at the helm. *See* ECF No. 24-3 ¶ 14(g). So even if the Court could consider some harms to the agency in considering irreparable harm to Perlmutter, she has not shown that the type of harm the *Berry* court addressed is present here.

Still, moving past *Berry* itself, Perlmutter identifies six more recent decisions from this district in which judges have concluded, at least in part based on *Berry*, that even the "temporary" "deprivation of a senior government official's 'statutory right to function' . . . is both significant and irreparable." ECF No. 24-2 at 34; *id.* at 32–33 (collecting cases). These cases get her no further.

One of them—*Aviel v. Gor* (*Aviel I*), No. 25-cv-778, 2025 WL 1009035 (D.D.C. Apr. 4, 2025)—is inapposite for substantially the same reasons as *Berry*. In that case, the district court found irreparable harm because "the very survival of [the removed officer's] organization [was] at stake." *Id.* at *10. So without an injunction, there would be no agency for the officer to return to after the case was resolved. But to repeat, Perlmutter has not shown that the existence of the Copyright Office is at stake, or that her position will likely be irreparably changed without an injunction. In another—*LeBlanc v. United States Privacy & Civil Liberties Oversight Board*—the agency, like the Commission in *Berry*, would have been deprived of a quorum, preventing it from

7

carrying out many of its responsibilities. No. 25-cv-542, 2025 WL 1454010, at *31 (D.D.C. May 21, 2025). Yet again, Perlmutter has not shown that the Copyright Office will grind to a halt without her.[2] True, in the other four cases Perlmutter cites, judges found irreparable harm even though the plaintiff did not make a showing similar to *Berry*, *Aviel I*, or *LeBlanc*. But respectfully, for that reason, the Court does not find their reasoning persuasive. *See Brehm*, 2025 U.S. Dist. LEXIS 71326, at *7–10 (declining to follow some cases cited by Perlmutter since "the viability of a 'statutory right to function' claim is uncertain" and, "[t]o the extent courts have accepted such a claim, it has been on different facts").

On top of all that, what is striking about these four cases—and also about *LeBlanc*—is what happened next: either the D.C. Circuit or the Supreme Court stayed the injunctions entered by the district courts. In three, either the Circuit or the Supreme Court stayed a preliminary injunction directly.[3] In the other two, the decision cited by Perlmutter was an unappealable temporary restraining order, but a subsequent permanent injunction entered by the same court was stayed.[4] And while Perlmutter disputes the meaning of these developments in the appellate courts,

---

[2] Similarly, in *LeBlanc*, the court noted that the removed officer was "appointed by the President, with the advice and consent of the Senate, to a nonpartisan, multimember board of experts." 2025 WL 1454010, at *30. Here, by contrast, Perlmutter was appointed by the Librarian, not the President with the advice and consent of the Senate. 17 U.S.C. § 701(a). At least one court in this district has held that such a distinction minimizes the officer's injury. *Brehm v. Marocco*, No. 25-cv-660, 2025 U.S. Dist. LEXIS 71326, at *8 (D.D.C. Mar. 11, 2025) (finding no irreparable harm from an officer's removal in part because the officer "was not appointed by the U.S. President or confirmed by the Senate").

[3] *LeBlanc v. U.S. Priv. & C.L. Oversight Bd.*, No. 25-cv-542, 2025 WL 1454010 (D.D.C. May 21, 2025), *stayed*, No. 25-5197, 2025 WL 1840591 (D.C. Cir. July 1, 2025) (per curiam); *Grundmann v. Trump*, 770 F. Supp. 3d 166 (D.D.C. 2025), *stayed*, No. 25-5165, 2025 WL 1840641 (D.C. Cir. July 3, 2025) (per curiam); *Wilcox v. Trump*, 775 F. Supp. 3d 215 (D.D.C. 2025), *stayed sub nom. Trump v. Wilcox*, 145 S. Ct. 1415 (2025).

[4] *Harris v. Bessent*, 775 F. Supp. 3d 164 (D.D.C. 2025), *stayed sub nom. Wilcox*, 145 S. Ct. 1415; *Dellinger v. Bessent* (*Dellinger I*), 768 F. Supp. 3d 33 (D.D.C. 2025), *stayed by Dellinger*

8

this Court would have to blind itself to them to assign the weight to these cases that she urges. In the end, none of the injunctions stuck. And no precedent of the Supreme Court or the D.C. Circuit has recognized that an official's temporary loss of a "statutory right to function" is an irreparable harm in a situation like Perlmutter's.

The reasoning behind the orders staying the injunctions, even if not conclusive here, is instructive as to whether Perlmutter is suffering the kind of harm warranting preliminary injunctive relief, especially in light of the balance of the equities. For example, in considering the allegedly unlawful removal of members of the National Labor Relations Board and the Merit Systems Protection Board, the Supreme Court held "that the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025). In other words, the Court concluded that an officer's temporarily "being unable to perform her statutory duty" was not an irreparable harm—or at least, not a harm that outweighed the corresponding risk of harm to the Executive such that an injunction was warranted. *Id.* This makes sense in light of *Sampson*'s holding that a plaintiff "at the very least must make a showing of irreparable injury sufficient in kind and degree to override the[] factors cutting against the general availability of preliminary injunctions in Government personnel cases." 415 U.S. at 84. And the D.C. Circuit has taken this approach as well. In a recent case about the alleged unlawful removal of the Special Counsel, it held that "circumstances cut" against an injunction when, "[a]t worst," the officer "would remain out of office for a short period of time" yet "the potential injury to the government of both having its designated [officer] sidelined and unable to

---

*v. Bessent* (*Dellinger II*), No. 25-5052, 2025 WL 887518 (D.C. Cir. Mar. 10, 2025) (per curiam), *vacated and remanded*, No. 25-5052, 2025 WL 935211 (D.C. Cir. Mar. 27, 2025) (per curiam).

9

act while also having to try and unravel [the removed officer]'s actions is substantial." *Dellinger II*, 2025 WL 887518, at *4.

So even assuming Perlmutter is right that her removal was unlawful, this reasoning suggests that an injunction is not warranted here. "At worst, [she] would remain out of office for a short period of time" while the Court resolves the merits. *Dellinger II*, 2025 WL 887518, at *4. And as the Supreme Court suggested, even if Perlmutter has been "wrongfully removed," temporarily "being unable to perform her statutory duty," without more, is not a harm that justifies a preliminary injunction, given the similar balance of the equities here. *Wilcox*, 145 S. Ct. at 1415; *cf. Sampson*, 415 U.S. at 84.

Perlmutter disputes the application of these appellate decisions and argues that they are limited to circumstances where the Government is likely to succeed on the merits.[5] Not so. In *Wilcox*, for example, the Supreme Court addressed the harm that "a *wrongfully* removed officer faces from being unable to perform her statutory duty." 145 S. Ct. at 1415 (emphasis added). Although the Court also suggested that the Government was likely to prevail on one aspect of the merits, nothing about its brief consideration of irreparable harm and the balance of the equities

---

[5] Perlmutter also argues that *Wilcox* is "non-precedential." ECF No. 34 at 26; *see also Aviel I*, 2025 WL 1009035, at *10 (describing *Dellinger II* as "non-precedential"). In their opposition, Defendants do not suggest otherwise. Still, since briefing on Perlmutter's motion and the hearing concluded, the Supreme Court has clarified that its stay decisions, though "not conclusive as to the merits . . . inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, No. 25A11, 2025 WL 2056889, slip op. at 1 (U.S. July 23, 2025). As noted above, the Court's decision here is informed by the reasoning in *Wilcox*. And *Boyle* itself only adds to the pile of similar authority. In *Boyle*, the Court granted a stay pending appeal of a district court's permanent injunction preventing the removal of members of the Consumer Product Safety Commission. *Id.* The Court explained that "[t]he application is squarely controlled by" *Wilcox* and concluded that a stay was warranted because, as there, "'the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty.'" *Id.* (quoting *Wilcox*, 145 S. Ct. at 1415).

appeared to turn on its assessment of the merits. *See id.* But even if it did, *Dellinger II*'s discussion did not. There, in a more developed analysis, the Circuit explicitly "assume[d]" that the officer's "removal [was] statutorily ultra vires" and that such "removal constitute[d] a cognizable injury." 2025 WL 887518, at *4. But it still determined that "that does not mean such injury is irreparable and weighs in [the officer's] favor." *Id.* Instead, when the injury is "remain[ing] out of office for a short period of time," "circumstances cut" against an injunction, even if the officer's removal "deprive[s] [her] of the statutory right to function in office." *Id.* (quotation omitted).[6] So too here.

Perlmutter also argues that the D.C. Circuit's handling of *Aviel* "confirm[s]" that *Wilcox* does not apply here because *she*—rather than Defendants—is likely to succeed on the merits. ECF No. 24-2 at 35. More than that, she appears to read the Circuit to suggest that, as long as she shows such a likelihood, she is entitled to a preliminary injunction. *Id.* at 36. She points out that Judge Katsas, in a concurring statement joined by Judge Pillard, noted that the Supreme Court's "merits ruling" in *Wilcox* "rested on the proposition that the removals at issue . . . were likely lawful" and that the Court did not disturb a prior D.C. Circuit decision suggesting that "reinstatement" is "an appropriate remedy" when an officer is unlawfully removed. *Aviel v. Gor* (*Aviel II*), No. 25-5105, 2025 WL 1600446, at *2 n.2 (D.C. Cir. June 5, 2025) (Katsas, J., concurring). Based on these snippets, Perlmutter seems to argue that, for purposes of preliminary relief, "reinstatement is an appropriate remedy if the removals at issued were likely unlawful," full stop—somehow skipping over (or implicitly satisfying) her burden to show irreparable harm. ECF No. 35 at 4.

Perlmutter reads far too much into *Aviel II*. First, Judge Katsas's point about the availability of reinstatement as a remedy in officer-removal cases generally says nothing about Perlmutter's

---

[6] Perlmutter suggests that *Dellinger II* is limited to cases in which an appeal has been expedited. ECF No. 24-2 at 36. But nothing in the opinion implies such a limitation.

11

entitlement to that specific remedy now, other than that it remains available if she satisfies the requirements for a preliminary injunction. Second, nothing about Judge Katsas's statement—which did not even address irreparable harm[7]—or *Aviel II* purports to upend those requirements or the longstanding precedent in this jurisdiction that "[a] movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297. Thus, even assuming Perlmutter's removal was unlawful, she must still separately show such harm to obtain a preliminary injunction. In fact, not long before *Aviel II*, the Circuit reaffirmed this commonsense conclusion in *Dellinger II*, when it assumed that the Special Counsel's removal was unlawful but still found that he did not show sufficient harm on a statutory-right-to-function theory to warrant a preliminary injunction reinstating him. 2025 WL 887518, at *4.

For these reasons, the Court concludes that Perlmutter's asserted loss of her "statutory right to function" is not a genuinely extraordinary situation such that her temporary removal is irreparable harm—or at least, harm that outweighs any corresponding risk of harm to the Government such that the balance of the equities tips in her favor.

**B.     Perlmutter's Temporary Inability to Perform Her Statutory Duties Is Not an Irreparable Harm**

Next, Perlmutter argues that this case presents a genuinely extraordinary situation because she "remains Register of Copyrights and is therefore required to fulfill her statutory duties." ECF No. 24-2 at 37. There is little if any difference between this theory of harm and her first. Perlmutter

---

[7] Indeed, the only judge to discuss irreparable harm was Judge Rao, who explicitly rejected Perlmutter's statutory-right-to-function theory of harm because, in her view, an officer "possesses no private right in the powers of her office or the policy direction of the agency." *Aviel II* at *6 (Rao, J., dissenting) (citing *Raines v. Byrd*, 521 U.S. 811, 821 (1997)).

distinguishes the two by arguing that the first addresses her right to function and the second addresses her obligation to do so. But at bottom, both are ways of claiming that she is suffering irreparable harm because she cannot perform the job of Register of Copyrights and Director of the Copyright Office. And as the Court has already explained, Perlmutter's asserted inability to do that job temporarily while this lawsuit proceeds is not enough to show irreparable harm.

### C. To Meet Her Burden of Showing Irreparable Harm, Perlmutter Cannot Rely on Harms to the Library of Congress or the Copyright Office

Finally, Perlmutter claims that her removal is genuinely extraordinary because Defendants' actions inflict "institutional harm to the Library of Congress and U.S. Copyright Office." ECF No. 24-2 at 39. But injuries to third parties are not a basis to find irreparable harm. *Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203, 213 (D.D.C. 2012); *Winter*, 555 U.S. at 20 (noting that a party seeking preliminary injunctive relief must show "that *he* is likely to suffer irreparable harm in the absence of preliminary relief" (emphasis added)). Indeed, in *Sampson*, the Court emphasized that "irreparable injury" can be found only by considering "the circumstances surrounding an employee's discharge, together with the resultant effect *on the employee*." 415 U.S. at 92 n.68 (emphasis added). So institutional harms to the Library or the Copyright Office, divorced from how those harms impact Perlmutter personally, cannot help her meet her burden.

Perlmutter argues that institutional harms are relevant because, in cases like *Wilcox*, the Supreme Court considered harms to the office of the President, not just harms to President Trump individually. ECF No. 34 at 22. But in those cases, the defendant officials were sued in their official capacities. So when they moved to stay the injunctions issued by the lower courts, they had the burden to show that they would be irreparably harmed *in their official capacities* absent a stay. In such circumstances, it makes sense to consider harm to their offices. Here, on the other, Perlmutter does not appear to dispute that she is suing in her personal capacity. ECF No. 15 at

13

48–49. Thus, unlike a defendant sued in his official capacity, Perlmutter cannot rely on purported institutional harms to the Library or Copyright Office to show irreparable harm to her.

Undeterred, Perlmutter points to cases in which courts have considered harms to agencies in addressing whether a removed officer has suffered irreparable harm. *See* ECF No. 24-2 at 39–40. But those cases do not stand for the general proposition that a removed officer can appropriate harm to an agency in asserting her own irreparable harm. Instead, many merely recognize, as discussed above, that an officer's removal may threaten irreparable harm to her when it is likely the agency or office will no longer exist when the case is resolved. *See, e.g.*, *Aviel I*, 2025 WL 1009035, at *10–11; *see also English*, 279 F. Supp. 3d at 334–35 (discussing this theory of irreparable harm). In those cases, courts concluded that such circumstances have an irreparable "resultant effect" on the removed officer because, without an injunction, there will be no position for the officer to return to should she win on the merits. *Sampson*, U.S. at 92 n.68; *Aviel I*, 2025 WL 1009035, at *10–11. But as discussed, nothing in the record suggests that the existence of the Copyright Office is threatened or that Perlmutter's position will irreparably change in some way if it is temporarily held by Perkins.[8]

Finally, even putting aside that these purported institutional harms are not Perlmutter's to invoke, they fail on their own terms. She claims that the Copyright Office will not be able to "perform its statutory role as a neutral advisor to Congress if an Executive Branch official controls the Library of Congress's operations." ECF No. 24-2 at 40. But this concern is based on speculation at this point, and no representative of Congress has sought to intervene in this case to protect these interests that Perlmutter says are in peril. Besides, for support, she mostly cites to provisions

---

[8] To the extent that some courts may have permitted plaintiffs to establish irreparable harm by pointing to harms suffered solely by their agencies, the Court is not bound by those decisions and, for the reason explained above, respectfully disagrees with them.

of the U.S. Code governing the Congressional Research Service. *See* ECF No. 24-2 at 40 (citing 2 U.S.C. § 166). But that Service is "a separate department in the Library of Congress" untethered to the Copyright Office. § 166(a). Furthermore, the D.C. Circuit has held that, as a matter of constitutional interpretation, the Library, at least in its role related to copyright matters, is part of the *Executive*, not the Legislative, Branch. *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1342 (D.C. Cir. 2012). And the Librarian—who appoints the Register of Copyrights—is appointed by the President with the advice and consent of the Senate, and she is removable by the President at will. *Id*. at 1341. So Executive influence over the Copyright Office appears to be a feature, not a bug, of this atypical arrangement. *See Kennedy v. Braidwood Mgmt., Inc.*, 145 S. Ct. 2427, 2443 (2025) ("The prerogative of at-will removal of a subordinate, then, often carries with it the power to supervise and direct that subordinate.").

## IV.   Conclusion

For all the above reasons, the Court will deny Perlmutter's Motion for a Preliminary Injunction, ECF No. 24. A separate order will issue.

/s/ Timothy J. Kelly  
TIMOTHY J. KELLY  
United States District Judge

Date: July 30, 2025