**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SHIRA PERLMUTTER,

       *Plaintiff*,

v.

TODD BLANCHE *et al.*,

       *Defendants*.

Case No. 1:25-cv-01659-TJK

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

I.     The Register of Copyrights and the U.S. Copyright Office.................................... 2

II.    The Attempted Takeover of the Library of Congress and the Copyright Office............... 3

III.   Procedural History .................................................................................................. 4

LEGAL STANDARD............................................................................................................. 5

ARGUMENT .......................................................................................................................... 5

I.     The President Lacks Statutory Authority to Remove Ms. Perlmutter Directly ................. 5

II.    The President Lacks Statutory Authority to Appoint Mr. Blanche, Who Therefore
       Does Not Possess the Authority to Remove Ms. Perlmutter ................................. 7

III.   The President Does Not Have Inherent Constitutional Authority to Overcome His
       Lack of Statutory Authority .................................................................................. 13

       A.     The President does not have inherent Article II authority to appoint Mr.
              Blanche ....................................................................................................... 13

       B.     The President does not have inherent Article II authority to remove Ms.
              Perlmutter directly ..................................................................................... 15

IV.    The Court Should Grant Ms. Perlmutter the Requested Relief ........................... 17

       A.     Ms. Perlmutter is entitled to injunctive relief ...................................... 17

       B.     Ms. Perlmutter is entitled to declaratory relief .................................... 25

CONCLUSION...................................................................................................................... 26

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................. 5

*Aviel v. Gor*, 780 F. Supp. 3d 1 (D.D.C. 2025) ........................................................................... 22

*Aviel v. Gor*, No. 25-cv-778, 2025 WL 2374618
    (D.D.C. Aug. 14, 2025) ............................................................ 8, 13, 14, 16, 17, 20, 22

*Beattie v. Barnhart*, 663 F. Supp. 2d 5 (D.D.C. 2009) ................................................................ 18

*Berry v. Reagan*, No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983) ....................................... 22

*Brehm v. Marocco*, No. 25-cv-660 (D.D.C. June 10, 2025) ........................................................ 21

*Brehm v. Marocco*, No. 25-cv-660 (D.D.C. Mar. 11, 2025) ........................................................ 21

*C.G.B. v. Wolf*, 464 F. Supp. 3d 174 (D.D.C. 2020) ................................................................... 25

*Chamber of Com. Of U.S. v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996) ............................................ 24

*CREW v. OMB*, 25-5266 (D.C. Cir. Aug. 9, 2025) ...................................................................... 24

*Davis v. Billington*, 681 F.3d 377 (D.C. Cir. 2012) ............................................................. 7, 9, 11

*DL v. District of Columbia*, 860 F.3d 713 (D.C. Cir. 2017) ........................................................ 17

*eBay Inc. v. MercExchange*, 547 U.S. 388 (2006) ...................................................................... 17

*Edmond v. U.S.*, 520 U.S. 651 (1997) ............................................................................................ 8

*Eltra Corp. v. Ringer*, 579 F.2d 294 (4th Cir. 1978) .................................................................... 6

*Franklin v. Massachusetts*, 505 U.S. 788 (1992) ........................................................................ 24

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010) ...................................... 6

*Freytag v. Commissioner*, 501 U.S. 868 (1991) .................................................................... 14, 24

*Gately v. Com. of Mass.*, 2 F.3d 1221 (1st Cir. 1993) ................................................................. 19

*Glenn v. Thomas Fortune Fay*, 222 F. Supp. 3d 31 (D.D.C. 2016) ............................................. 25

*Grundmann v. Trump*, No. 25-cv-425, 2025 WL 782665 (D.D.C. Mar. 12, 2025) ......... 20, 23, 24

*Haddon v. Walters*, 43 F.3d 1488 (D.C. Cir. 1995) ............................................................... 10, 11

*Harris v. Bessent*, 775 F. Supp. 3d 164 (D.D.C. 2025) ........................................................ 20, 22

*Harris v. Bessent*, No. 25-5037, 2025 WL 1033740 (D.C. Cir. Apr. 7, 2025) ...................... 18, 20

*Holcomb v. Powell*, 433 F.3d 889 (D.C. Cir. 2006) ......................................................... 5

*In re Hennen*, 38 U.S. 230 (1839) .................................................................................. 7

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*,
    684 F.3d 1332 (D.C. Cir. 2012) ............................................................................ 6, 12

*Jama v. Immigr. & Customs Enf't*, 543 U.S. 335 (2005) .................................................. 7

*Karem v. Trump*, 404 F. Supp. 3d 203 (D.D.C. 2019) ................................................... 21

*Kennedy v. Braidwood Mgmt., Inc.*, 145 S. Ct. 2427 (2025) .......................................... 6

*Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136 (1980) ................... 11

*League of Women Voters of the United States v. Newby*, 838 F.3d 1 (D.C. Cir. 2016)............... 24

*LeBlanc v. U.S. Priv. & C.L. Oversight Bd.*, No. 25-cv-542, 2025 WL 1454010
    (D.D.C. May 21, 2025) ..................................................................................... 20, 22

*Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995) ......................................... 12

*Marbury v. Madison*, 5 U.S. 137 (1803) ....................................................................... 15

*N.L.R.B. v. Noel Canning*, 573 U.S. 513 (2014) ........................................................... 15

*Nat'l Lab. Rels. Bd. v. SW Gen., Inc.*, 580 U.S. 288 (2017) ............................................ 8

*Nat'l Treasury Emps. Union v. Reagan*, 663 F.2d 239 (D.C. Cir. 1981) ......................... 6

*New York v. Biden*, 636 F. Supp. 3d 1 (D.D.C. 2022) ................................................... 25

*POM Wonderful LLC v. F.T.C.*, 894 F. Supp. 2d 40 (D.D.C. 2012) ............................... 25

*Ramirez v. U.S. Immigr. & Customs Enf't*, 568 F. Supp. 3d 10 (D.D.C. 2021) ........................ 17

*Sampson v. Murray*, 415 U.S. 61 (1974) ......................................................... 18, 19, 20

*Severino v. Biden*, 581 F. Supp. 3d 110 (D.D.C. 2022) ................................................. 24

*Severino v. Biden,* 71 F.4th 1038 (D.C. Cir. 2023) ....................................................... 18

*Slaughter v. Trump*, No. 25-cv-909, 2025 WL 1984396 (D.D.C. July 17, 2025) ................. 20, 21

*Spicer v. Biden*, 575 F. Supp. 3d 93 (D.D.C. 2021) ...................................................... 24

*Taylor v. Resolution Trust Corps.*, 56 F.3d 1497 (D.C. Cir. 1995) ............................... 19

*United States Inst. of Peace v. Jackson*, No. 25-cv-804, 2025 WL 142864
  (D.D.C. May 19, 2025) ............................................................................................. 21

*Wagner v. Taylor*, 836 F.2d 566 (D.C. Cir. 1987) ........................................................ 19

*Wash. Legal Found. v. U.S. Sent'g Comm'n*, 17 F.3d 1446 (D.C. Cir. 1994) .............. 11

*Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) ........ 19

*Wilcox v. Trump*, 775 F. Supp. 3d 215 (D.D.C. 2025) ................................................ 20, 23

## <u>STATUTES AND REGULATIONS</u>

Federal Vacancies Reform Act of 1998, 5 U.S.C. § 3345 ............................................... 8

2 U.S.C.:

  § 136 ............................................................................................................................. 3

  § 141 ........................................................................................................................... 11

  § 181 ........................................................................................................................... 11

5 U.S.C.:

  § 101 ............................................................................................................................. 9

  § 103 ............................................................................................................................. 9

  § 104 ............................................................................................................................. 9

  § 105 ........................................................................................................................... 8, 9

  § 13101 ....................................................................................................................... 10

  § 13142 ....................................................................................................................... 10

  § 3102 ......................................................................................................................... 11

  § 3347 ........................................................................................................................... 8

  § 3401 ......................................................................................................................... 11

  § 4101 ......................................................................................................................... 10

  § 4501 ......................................................................................................................... 11

  § 5102 ......................................................................................................................... 11

  § 5521 ......................................................................................................................... 11

iv

§ 5541 .................................................................................................................... 11

§ 5584 .................................................................................................................... 11

§ 5595 .................................................................................................................... 11

§ 5921 .................................................................................................................... 11

§ 5948 .................................................................................................................... 11

§ 6121 .................................................................................................................... 11

§ 7103 ................................................................................................................. 9, 11

17 U.S.C.:

§ 115 ...................................................................................................................... 22

§ 1502 ...................................................................................................................... 3

§ 1506 ...................................................................................................................... 3

§ 205 ........................................................................................................................ 3

§ 410 ........................................................................................................................ 3

§ 411 ...................................................................................................................... 22

§ 701 ....................................................................................................... 1, 2, 6, 22

§ 702 ........................................................................................................................ 3

§ 705 ........................................................................................................................ 3

§ 802 ...................................................................................................................... 22

§411 ......................................................................................................................... 3

31 U.S.C. § 1105 ................................................................................................... 11

## **OTHER AUTHORITIES**

William F. Patry, *Library of Congress is in Congress, (surprise surprise), in* 7 Patry on Copyright § 28:16 (Mar. 2025) ...................................................................... 12

Ivan Moreno, *Unsigned Copyright Certificates Raise Validity Questions*, Law360 (June 3, 2025), https://perma.cc/9HFT-Z893 ............................................. 4

Katherine Tully-McManus, *GOP Leaders Draw the Line at Trump's Library of Congress Takeover*, Politico (May 14, 2025), https://perma.cc/236C-QXRM ........................................ 4

Maya C. Miller Devlin Barrett, Trump Installs Top Justice Dept. Official at Library of Congress, Prompting a Standoff, N.Y. TIMES (May 12, 2025), https://perma.cc/9L4G-8ZMU ................. 4

Mohar Chatterjee, *Trump Derides Copyright and State Rules in AI Action Plan Launch*, POLITICO (July 23, 2025), https://perma.cc/YV55- QP7S..................................................... 4

## <u>LEGISLATIVE MATERIALS</u>

H.R. Conf. Rep. No. 105-796 (1998)...................................................................... 2, 11

H.R. Rep. No. 115-91 (2017)..................................................................................... 7

Register of Copyrights Selection and Accountability Act: Hearing on H.R. 1695 Before the S. Comm. on Rules and Admin., 115th Cong. 3 (2018) (statement of Sen. Klobuchar) ............... 2

The Register of Copyrights Selection and Accountability Act of 2017, H.R. 1695, 115th Cong. (2017)...................................................................................................................... 7

## <u>CONSTITUTIONAL PROVISIONS</u>

Appointments Clause, U.S. Const. art. II, § 2, cl. 2 ........................................................ 6

Intellectual Property Clause, U.S. Const. art. I, § 8, cl. 8 ............................................... 2

Take Care Clause, U.S. Const. art. II, §3 .................................................................. 13

# INTRODUCTION

Plaintiff Shira Perlmutter is the Register of Copyrights and Director of the U.S. Copyright Office in the Library of Congress.  By statute, she serves as an advisor to Congress "on national and international issues relating to copyright," among other critical functions. 17 U.S.C. § 701(b)(1).  She is appointed by, and operates under the authority of, the Librarian of Congress. *Id.* § 701(a).

On May 10, 2025, President Trump purported to fire Ms. Perlmutter—one day after she issued a report on the use of copyrighted materials in generative artificial intelligence, providing an analysis of copyright law with which the President has publicly indicated disagreement.  He then purported to appoint Deputy Attorney General Todd Blanche to serve as acting Librarian of Congress, and Mr. Blanche purported to appoint Justice Department official Paul Perkins as acting Register of Copyrights and Justice Department official Brian Nieves as acting Principal Deputy Librarian.

This is a lawless attempt to seize control of the Library of Congress and the U.S. Copyright Office.  Defendants offer only underdeveloped, *post hoc* justifications for their plainly illegal actions.  Defendants' primary theory—that Congress intended for the Library of Congress to be considered an "Executive agency" under the FVRA—is squarely foreclosed by binding D.C. Circuit precedent.  Defendants also offer novel, extreme positions that the President has inherent Article II authority to unilaterally install acting principal officers beyond what is permitted under the Federal Vacancies Reform Act or the Appointments Clause, and that the President has inherent Article II authority to directly remove inferior officers like the Register of Copyrights. Defendants' extraordinary claims fail; they are riddled with internal inconsistencies and, critically, contravene the Constitution.  At bottom, neither the President nor Mr. Blanche has the legitimate authority to displace Ms. Perlmutter from her position as Register of Copyrights.

Ms. Perlmutter filed suit to enjoin Mr. Blanche, Mr. Perkins, and White House officials from interfering with her functioning as Register of Copyrights. This Court should not permit the President's lawless effort to prevent Ms. Perlmutter from advising Congress on today's critical copyright issues.

## BACKGROUND

### I. The Register of Copyrights and the U.S. Copyright Office

The Constitution vests Congress with the power to "secur[e] for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8. Pursuant to that authority, Congress has entrusted the Copyright Office, led by the Register of Copyrights, with the responsibility to administer the nation's copyright system. *See* 17 U.S.C. § 701(a).

The Register is the "director of the Copyright Office," 17 U.S.C. § 701(a), which has a "longstanding role as advisor to Congress on matters within its competence." H.R. Conf. Rep. No. 105-796, at 77 (1998). The Register's role "is separate from testimony or other recommendations by the Administration pursuant to the President's concurrent constitutional power to make recommendations to Congress." *Id.* The Register is required to "[a]dvise Congress on national and international issues relating to copyright," to "[c]onduct studies and programs regarding copyright," and to "[p]erform such other functions as Congress may direct." 17 U.S.C. § 701(b); *see also* Register of Copyrights Selection and Accountability Act: Hearing on H.R. 1695 Before the S. Comm. on Rules and Admin., 115th Cong. 3 (2018) (statement of Sen. Klobuchar) (describing the Register of Copyrights as Congress's "chief copyright policy adviser").

In her role as advisor to Congress, Ms. Perlmutter has provided multiple reports on copyright law and policy issues, most recently addressing the thorny issues raised by artificial intelligence. Ms. Perlmutter issued Part 3 of her report on fair use of copyrighted materials and

generative artificial intelligence ("AI Report") in pre-publication format on May 9, 2025—the day before the President purported to remove her—and had been working on the fourth and final installment, which she had expected to release over the summer. *See* Statement of Material Facts Not in Dispute ("SOMF") ¶¶ 4, 5, 6; Declaration of Shira Perlmutter ("Perlmutter Decl.") ¶ 7. The uncertainty over Ms. Perlmutter's position has put that effort on indefinite hold.

In addition to her Congress-facing responsibilities, the Register is responsible for the administration of the Copyright Act, including the examination of copyright applications, the issuance of copyright registrations, the maintenance of copyright deposits, and the recordation of transfers of copyright ownership. 17 U.S.C. §§ 205, 410-11, 705; Perlmutter Decl. ¶¶ 6(a), (c), (d). She has rulemaking and fee-setting authority (subject to review by the Librarian of Congress and by Congress) and plays a major role in the appointment and review of the Copyright Claims Board. 17 U.S.C. §§ 702, 1502, 1506(x); Perlmutter Decl. ¶¶ 6(e), (g).

## II. The Attempted Takeover of the Library of Congress and the Copyright Office

On Thursday, May 8, 2025, President Trump fired the Librarian of Congress, Dr. Carla D. Hayden. *See* SOMF ¶ 2; Perlmutter Decl. ¶ 5. In accordance with the Library's regulations—issued pursuant to the authority Congress expressly delegated to the Librarian, 2 U.S.C. § 136—Principal Deputy Librarian of Congress Robert Newlen replaced Dr. Hayden as acting Librarian. SOMF ¶¶ 2, 3; Perlmutter Decl. ¶ 5.

On Friday, May 9, Ms. Perlmutter issued the prepublication version of Part 3 of the AI Report. SOMF ¶ 4; Perlmutter Decl. ¶ 7. On Saturday, May 10, Trent Morse, Deputy Assistant to the President and Deputy Director of the White House Presidential Personnel Office, sent an email to Ms. Perlmutter, stating, on the President's behalf, that her position as the Register of Copyrights and Director of the U.S. Copyright Office was terminated, effective immediately. SOMF ¶ 6; Perlmutter Decl. ¶ 8. The following Monday, May 12, Mr. Perkins and Mr. Nieves

arrived at the Library of Congress with a letter from the President purporting to appoint Mr. Blanche as acting Librarian of Congress pursuant to the Federal Vacancies Reform Act, and an email from Mr. Blanche purporting to appoint Mr. Perkins and Mr. Nieves as acting Register and acting Deputy Librarian, respectively. SOMF ¶¶ 7, 8, 9; Perlmutter Decl. ¶ 10. Officials at the Library did not recognize Mr. Blanche as the acting Librarian and have not permitted him or Mr. Perkins to assume control over the Library or Copyright Office. SOMF ¶¶ 10, 11, 12, 13; *see also* Maya C. Miller Devlin Barrett, Trump Installs Top Justice Dept. Official at Library of Congress, Prompting a Standoff, N.Y. TIMES (May 12, 2025), https://perma.cc/9L4G-8ZMU. A bipartisan group of lawmakers has expressed concern about the President's unprecedented efforts to control Congress's library. *See* Katherine Tully-McManus, *GOP Leaders Draw the Line at Trump's Library of Congress Takeover*, POLITICO (May 14, 2025), https://perma.cc/236C-QXRM.

Since the initiation of this lawsuit, there has been public uncertainty around the status of the Copyright Office and its actions. *See* Ivan Moreno, *Unsigned Copyright Certificates Raise Validity Questions*, Law360 (June 3, 2025), https://perma.cc/9HFT-Z893. In July, when President Trump released a 28-page "AI Action Plan," he publicly expressed a position on fair use of copyrighted materials in generative AI training that contradicts Ms. Perlmutter's analysis and advice to Congress in the AI Report. *See* Mohar Chatterjee, *Trump Derides Copyright and State Rules in AI Action Plan Launch*, POLITICO (July 23, 2025), https://perma.cc/YV55- QP7S.

### III. Procedural History

Plaintiff filed suit on May 22, 2025 and moved that same day for a temporary restraining order. ECF Nos. 1, 2. The district court denied the motion on May 28, 2025. *See* May 28, 2025 Minute Entry, *Perlmutter v. Blanche*, 1:25-cv-01659 (D.D.C.). Without addressing Ms. Perlmutter's likelihood of success on the merits, this Court concluded that Ms. Perlmutter had not demonstrated that the loss of her position as Register would cause her to be irreparably harmed in

the next 14 days.  ECF No. 15, Tr. of Oral Arg. at 37:22–24, 47:20–23, 51:23–24 (May 28, 2025).

Ms. Perlmutter asked the court to proceed to expedited summary judgment proceedings, *see* ECF

No. 16, but the court declined to expedite consideration, whereafter Ms. Perlmutter filed a motion

for a preliminary injunction.  ECF No. 24.  On July 30, 2025, this Court denied that motion, again

taking the view that, irrespective of the merits of her claim, Ms. Perlmutter did not demonstrate

that she would be irreparably harmed during the pendency of litigation.  ECF No. 40.

On July 31, 2025, Ms. Perlmutter noticed an interlocutory appeal to the D.C. Circuit

pursuant to 28 U.S.C. § 1292(a)(1).  ECF No. 41.  She moved this Court to enter an injunction

pending appeal, ECF No. 43, and this Court denied her motion.  She also moved the D.C. Circuit

to enter an injunction pending appeal; that motion remains pending.

## LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A fact is only "'material' if a dispute over it might affect the outcome of a suit under the

governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary

judgment determination."  *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The dispute is only "genuine" if "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

(quoting *Anderson*, 477 U.S. at 248).

## ARGUMENT

## I.  The President Lacks Statutory Authority to Remove Ms. Perlmutter Directly

The President lacks any authority to directly remove the Register of Copyrights.  Pursuant

to the Appointments Clause of the Constitution, Congress may vest the appointment of inferior

officers in "the President alone, in the Courts of Law, or in the Heads of Departments" as it

"think[s] proper." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 487 (2010);

U.S. Const. art. II, § 2, cl. 2.  If Congress vests the authority to appoint inferior officers in a Head

of Department, "it is ordinarily the department head, rather than the President, who enjoys the

power of removal." *Free Enter. Fund*, 561 U.S. at 493.  In other words, the power to fire follows

the power to hire.  Congress may depart from this default rule, however, "[a]bsent relevant

legislation," "the power to remove is held by the appointing authority, and *only by* the appointing

authority." *Nat'l Treasury Emps. Union v. Reagan*, 663 F.2d 239, 247 (D.C. Cir. 1981) (emphasis

added); *see also Kennedy v. Braidwood Mgmt., Inc.*, 145 S. Ct. 2427, 2444 (2025) ("[W]hen as

here Congress vests appointment of inferior officers in 'heads of departments,' 'it is ordinarily the

department head . . . who enjoys the power of removal.'").

That is exactly the case here.  The Librarian of Congress, who is appointed by the President

with the advice and consent of the Senate, "is a Head of Department." *Intercollegiate Broad. Sys.,

Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1342 (D.C. Cir. 2012).  Congress unambiguously

vested the Librarian of Congress with the authority to appoint the Register.  *See* 17 U.S.C. § 701(a)

("The Register of Copyrights . . . shall be appointed by the Librarian of Congress, and shall act

under the Librarian's general direction and supervision."); *see also Eltra Corp. v. Ringer*, 579 F.2d

294, 300 (4th Cir. 1978) ("The Librarian of Congress is an Officer of the United States, with the

usual power of such officer to appoint such inferior officers (i.e., the Register), as he thinks

proper.") (cleaned up).  Nor have Defendants argued otherwise at previous stages of this litigation.

Because Congress vested only the Librarian of Congress with the authority to appoint the Register,

it follows that only the Librarian of Congress has the authority to remove her.  The President does

not have the power to do so.[1]  *See Nat'l Treasury Emps. Union*, 663 F.2d at 247; *see also In re*

---

[1] This Court should "not lightly assume that Congress has omitted from its adopted text
requirements that it nonetheless intends to apply[.]" *Jama v. Immigr. & Customs Enf't*, 543 U.S.

*Hennen*, 38 U.S. 230, 260 (1839) (if Congress vests a department head with the power to appoint and remove an inferior officer, "the President has certainly no power to remove" the inferior officer directly). Accordingly, the purported termination of Ms. Perlmutter from her position as the Register of Copyrights by the President was *ultra vires* and did not have the legally binding effect of displacing Ms. Perlmutter from her role.

## II. The President Lacks Statutory Authority to Appoint Mr. Blanche, Who Therefore Does Not Possess the Authority to Remove Ms. Perlmutter

Nor could Mr. Blanche have removed Ms. Perlmutter as Register, because he was not properly serving as acting Librarian. Defendants purported to rely on the FVRA at the time of Mr. Blanche's appointment, ECF No. 33 at 2, 20, but the FVRA does not authorize the President to appoint an acting Librarian of Congress. The FVRA applies only to an "Executive agency," 6 U.S.C. § 3345(a), and binding D.C. Circuit authority holds that Congress is "plainly" not an Executive agency. *Davis v. Billington*, 681 F.3d 377, 386 (D.C. Cir. 2012). Binding precedent thus squarely forecloses Defendants' only statutory argument. There can be no question that the President did not have the authority to unilaterally appoint Mr. Blanche as acting Librarian of Congress, and in turn, Mr. Blanche did not possess the authority to remove Ms. Perlmutter from her post.

**1.** In the ordinary course, when a principal officer of the United States resigns a post, the position may be filled only after the President has nominated and the Senate has confirmed a successor. This limitation is a "critical 'structural safeguard[] of the constitutional scheme.'" *Nat'l*

---

335, 341 (2005). That is especially true here, where Congress made clear that it knows how to alter the removal authority for the Register of Copyrights when it considered and rejected a 2017 bill that would allow the President "to remove the Register from office subject to a notification requirement to the House of Representatives and Senate." H.R. Rep. No. 115-91, at 7 (2017); *see* The Register of Copyrights Selection and Accountability Act of 2017, H.R. 1695, 115th Cong. (2017).

*Lab. Rels. Bd. v. SW Gen., Inc.*, 580 U.S. 288, 293 (2017) (alteration in original) (quoting *Edmond v. U.S.*, 520 U.S. 651, 659 (1997)).

Through the Federal Vacancies Reform Act of 1998 (FVRA), 5 U.S.C. § 3345, Congress "has given the President *limited authority* to appoint acting officials to temporarily perform the functions of a vacant [principal] office without first obtaining Senate approval." *SW Gen., Inc.*, 580 U.S. at 294 (emphasis added). Critically, the FVRA applies to any Senate-confirmed office in an "Executive agency." For those offices, the FVRA permits the President to direct a person "to perform the functions and duties of the vacant office temporarily [and] in an acting capacity subject to the time limitations" set forth in the statute. 5 U.S.C. § 3345. The FVRA is "the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency" for which Senate confirmation is required. *Id.* § 3347(a).[2]

**2.** The FVRA straightforwardly does not supply the President with the authority to appoint Mr. Blanche as acting Librarian because Congress did not include the Library of Congress within its definition of "Executive agency." By its terms, the FVRA authorizes the President temporarily to fill vacancies for "an officer of an Executive agency (including the Executive Office of the President, and other than the Government Accountability Office) whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate." 5 U.S.C. § 3345(a). The term "Executive agency" is not separately defined by the FVRA, so it takes on the definition prescribed "[f]or the purpose of [Title 5]" (5 U.S.C. § 105), where Congress defined "Executive agency" to include an agency (1) on the enumerated list of "Executive department[s]"

---

[2] "The only exceptions [to the FVRA's exclusive authority] are if another 'statutory provision expressly authorizes' the designation of an acting officer, if another statute 'expressly designates' an acting officer, or if the President makes an appointment under the Recess Appointments Clause of the Constitution." *Aviel v. Gor*, No. 25-cv-778, 2025 WL 2374618, at *9 (D.D.C. Aug. 14, 2025). None of these exceptions applies here.

(*id.* § 101); (2) that is a "Government corporation" (*id.* § 103); or (3) that is an "independent establishment," which is defined to mean either "an establishment in the executive branch" not previously covered or "the Government Accountability Office" (*id.* § 104). Defendants have previously asserted that the Library is an "independent establishment," *see, e.g.*, ECF No. 33 at 5, but it quite obviously is not.

The D.C. Circuit has decided unequivocally that the "narrowing term 'Executive agency' . . . plainly does not contain the Library of Congress within the meaning of the statute." *Davis*, 681 F.3d at 386. In *Davis*, the D.C. Circuit considered the availability of *Bivens* relief for a former Library of Congress employee alleging wrongful termination. The court reasoned that the answer turned on whether Congress had adopted a comprehensive remedial scheme that foreclosed an implied remedy. The court found such a scheme in the Civil Service Reform Act (CSRA), concluding that, although Library of Congress employees are generally covered by the Act, they are not entitled to invoke the Act's remedial provisions, which are available only to employees of an "Executive agency":

> Here, the unambiguous use of the narrowing term "Executive agency"—a term which plainly does not contain the Library of Congress within the meaning of the statute, *see* 5 U.S.C. § 7103(a)(3)—and the express exclusion of probationary employees from the "agencies" and types of "employees" subject to the CSRA's remedial protections evidences an explicit congressional design for the subsets of civil-service employees that would and would not have access to those protections.

681 F.3d at 386. The referenced statute, 5 U.S.C. § 7103(a)(3), provides that, for purposes of the Federal Service Labor-Management Relations Statute (FSLMRS), "'agency' means an Executive agency[,] … the Library of Congress, the Government Publishing Office, and the Smithsonian Institution." The term "Executive agency" is not separately defined for purposes of the FSLMRS, so it takes on the meaning prescribed by 5 U.S.C. § 105. Thus, this Court held in *Davis* that the definition of "Executive agency" in 5 U.S.C. § 105 "plainly does not contain the Library of

Congress."  Applied here, because the Library is beyond the scope of § 105, the FVRA does not apply, the President had no authority to appoint Mr. Blanche as acting Librarian, and Mr. Blanche had no authority to replace Ms. Perlmutter as Register of Copyrights.

Even were this not an open-and-shut application of binding circuit precedent, Congress has directly foreclosed the possibility that the Library can be treated as an "Executive agency" for purposes of § 105.  In the Ethics in Government Act, Congress defined "executive branch" to "include[] each Executive agency (as defined in section 105 of [title 5]), other than the Government Accountability Act" and separately defined "legislative branch" to "include[] . . . the Library of Congress." 5 U.S.C. § 13101(4), (11).  Under the statute, different ethics rules apply to employees of the "executive branch" and the "legislative branch," *see, e.g.*, *id.* § 13142, so the Library cannot be both an "Executive agency" and simultaneously part of the "legislative branch" as defined by Congress.

The bounty of irrefutable evidence does not end there.  In *Haddon v. Walters*, 43 F.3d 1488 (D.C. Cir. 1995), this Court considered whether the Executive Residence is an "independent establishment" within the meaning of § 104.  For two reasons, the Court concluded that it was not an "independent establishment."  First, "Congress has used the term 'independent establishment' in distinction to the Executive Residence," thereby establishing that "Congress does not regard the Executive Residence to be an independent establishment, as it uses that term." *Id.* at 1490.  Second, Congress indicated that it did not intend for the Executive Residence to be subject to Title 5 because it saw fit to regulate the staff of the Executive Residence in Title 3.  *Id.*

Those same considerations establish conclusively that the Library is not an "independent establishment" either.  *First*, Congress has used the term "independent establishment" in distinction to the Library of Congress.  *See* 5 U.S.C. § 4101(1) ("For the purpose of this chapter 'agency' … means (A) an Executive department; (B) an independent establishment; (C) a

10

Government corporation … ; [or] (D) the Library of Congress….").  Congress has likewise used the term "Executive agency" in distinction to the term "Library of Congress" many more times. *See* 5 U.S.C. §§ 3102(a)(1), 3401(1), 4501(1), 5102(a)(1), 5521(1), 5541(1), 5584(g), 5595(a)(1), 5921(2), 5948(g)(2), 6121(1), 7103(a)(3).  Clearly, then, Congress does not regard the Library to be an "independent establishment" or an "Executive agency," as it defined those terms for purposes of the FVRA.  *Second*, Congress has elsewhere sought to regulate the Library as part of the legislative branch, so there is good reason why it would not have given the President *carte blanche* to designate an acting Librarian without any congressional input.  The evidence here is abundant: Congress established the Library in Title 2 ("The Congress") and has repeatedly defined the Library as a "legislative branch agency."  *E.g.*, 2 U.S.C. § 181(b)(1); 31 U.S.C. § 1105 note (132 Stat. 5430, 5430); 2 U.S.C. § 141 note (107 Stat. 1037, 1044).  Indeed, when Congress last "clarifie[d] the duties and functions of the Register of Copyrights," the Conference Report emphasized "the Copyright Office's role as a legislative branch agency."  H.R. Conf. Rep. No. 105-796, at 77 (1998).  And courts have recognized, for a host of purposes, that Congress intended to treat the Library as part of the legislative branch for statutory purposes.  *See, e.g.*, *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136 (1980) (FOIA); *Wash. Legal Found. v. U.S. Sent'g Comm'n*, 17 F.3d 1446, 1449 (D.C. Cir. 1994) (APA).  Congress has routinely organized the Library within the legislative branch; it did so here, too, which means that it did not authorize the President to appoint an acting Librarian without the advice and consent of the Senate.

    **3.**  As against this comprehensive demonstration of Congress's intent, Defendants were left in previous filings with two profoundly unsatisfying responses, neither of which has a scintilla of support anywhere in the U.S. Code.  Defendants contended that Congress referenced the Library of Congress as distinct from "Executive agency" and "independent establishment" merely because it was being cautious.  But that argument is foreclosed by *Davis*, *Haddon*, and the innumerable

decisions applying the canon against superfluity, and fails to explain the Ethics in Government Act (which would, under Defendants' theory, impose conflicting obligations on Library of Congress employees that cannot be waved away as mere superfluities). Defendants' only other statutory argument is that Congress intended to define "Executive agency" to be coextensive with the Constitution's definition of "executive Departments" in Article II. But Congress obviously was not required to use that constitutional standard. *See Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 392–93 (1995) (holding that Congress has the "dispositive" ability to define government entities "for purposes of matters that are within Congress's control"). And it clearly did not choose voluntarily to do so. If Congress had wanted to import a standard from Article II, why would it have used different words? Why would it not have referenced the Constitution? Why would it have partitioned the constitutional standard into three distinct components? And why would it have listed some (but not all) of the "Departments"? The answer is that Congress intended to adopt its own standard, as the text of the statute demonstrates. And it would have been illogical for Congress to have adopted a standard that would depend on future legal developments and that would not provide clear guidance as to how to handle entities (like the Library of Congress) that may wield enough executive authority to trigger the Appointments Clause (*see Intercollegiate Broad. Sys.*, 684 F.3d 1332 (addressing the Copyright Royalty Board, which is not a part of the Copyright Office)), but that also quite obviously perform critical legislative functions (*see id.* at 1341–42 (identifying the Congressional Research Service as one of the Library's legislative functions)). In any event, the Executive Residence is surely part of Article II, so *Haddon*, too, forecloses this novel theory.

For purposes of the FVRA, as William F. Patry has colorfully explained in his treatise, the "Library of Congress is in Congress, (surprise surprise)," 7 Patry on Copyright § 28:16 (Mar. 2025), and Congress did not authorize the President to appoint an acting Librarian. For good

reason.  Congress has an obvious and direct interest in who is permitted to access the Library's confidential research and advice for Members of Congress, as well as other confidential Congressional records it holds, and who controls the Library's discharge of its duties as a non-partisan advisor to Congress.  Indeed, the purported appointment of Mr. Blanche, who serves concurrently in the executive branch, starkly confirms why Congress would not have cut itself out of the process of identifying acting leadership for the Library.

### III. The President Does Not Have Inherent Constitutional Authority to Overcome His Lack of Statutory Authority

Because the President decisively lacks statutory authority to remove Ms. Perlmutter directly or remove Ms. Perlmutter through the appointment of Mr. Blanche, Defendants have offered backup, *post hoc* constitutional arguments to justify their overbroad assertions of executive power.  But these claims, too, are easily proved incorrect.  No court has ever accepted either of Defendants' extraordinary positions.  All three members of a motions panel of the D.C. Circuit recently found unpersuasive Defendants' novel theory in support of the President's purported constitutional authority to unilaterally appoint principal officers.  *Aviel v. Gor* ("*Aviel II*"), No. 25–5105, 2025 WL 1600446, at \*2 (D.C. Cir. June 5, 2025) (Katsas, J., concurring, joined by Pillard, J.); *accord id.* at \*4 n.1 (Rao, J., dissenting).  And Defendants declined to present to the D.C. Circuit their inventive view of the President's constitutional authority to directly remove inferior officers, betraying the weakness of their position.

### A. The President does not have inherent Article II authority to appoint Mr. Blanche

Because their statutory claim is foreclosed by D.C. Circuit precedent, Defendants are left with their only remaining argument to justify the President's unilateral appointment of Mr. Blanche: that the President has inherent Article II authority to appoint Mr. Blanche in order to "faithfully execute[]" the laws.  ECF No. 33 at 18 (quoting U.S. Const. art. II, §3).  Defendants'

arguments find no precedent in our nearly 250-year constitutional record. Instead, the structure of the Constitution requires the President to work with Congress; he may exercise his authority over the Librarian (or over an acting Librarian), but unless Congress has given him such power, he cannot unilaterally appoint an acting Librarian.

The D.C. Circuit has cast doubt on this very claim of inherent Article II authority. *See Aviel II*, at *2; *accord id.* at *4 n.1. Although she dissented in other respects, Judge Rao sided with the majority on the absence of inherent Article II authority:

> I agree with my colleagues that this argument is unlikely to succeed because the text and structure of the Constitution strongly suggest the President has no inherent authority to appoint officers of the United States, like IAF Board members, outside the strictures of the Appointments Clause. U.S. Const. art. II, § 2; *see NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 946 (2017) (Thomas, J., concurring) ("[T]he Appointments Clause forbids the President to appoint principal officers without the advice and consent of the Senate."). And the Federal Vacancies Reform Act does not apply to the IAF. 5 U.S.C. §§ 3349c(1)(B), 3345. If Marocco was not properly appointed as an acting IAF Board member, he lacked the authority to remove Aviel.

*Aviel II*, at *4 n.1. Judge Katsas, likewise, found that "it is unlikely that the Take Care Clause gives the President unfettered discretion to designate acting principal officers with neither Senate confirmation nor a Senate recess nor even statutory authorization through the FVRA." *Id.* at *2. Defendants' unprecedented theory ought to be rejected here too.

Were it otherwise, none of the Appointments Clause, Recess Appointments Clause, or FVRA would make any sense. *First*, the Appointments Clause forecloses a Presidential power to unilaterally appoint principal officers of the United States. The Framers believed that such an unchecked power was "the most insidious and powerful weapon of eighteenth-century despotism." *Freytag v. Commissioner*, 501 U.S. 868, 883 (1991) (cleaned up). The Appointments Clause accordingly limits that power by "dividing" it "between the Executive and Legislative Branches." *Id.* at 884. Defendants' argument therefore "obliterates" the Appointments Clause. *Aviel v. Gor*, 25-cv-778, 2025 WL 2374618, at *21 (D.D.C. Aug. 14, 2025). There is no need to require Senate

approval in the first place if the President can appoint an "acting" principal officer to a vacant position—especially where, as here, the position is only vacant because the President prematurely removed that officer.  *Second*, the Recess Appointments Clause is a narrow "exception" to the Appointments Clause, and as the Supreme Court has emphasized, does "not offer[] the President the authority routinely to avoid the need for Senate confirmation."  *N.L.R.B. v. Noel Canning*, 573 U.S. 513, 519, 523–24 (2014) (cleaned up).  But under Defendants' view, the President could routinely avoid the need for Senate confirmation, simply by purporting to appoint an acting official of his choice to serve indefinitely in the principal officer's position.  That would render the Recess Appointments Clause surplusage.  *See Marbury v. Madison*, 5 U.S. 137, 174 (1803) ("It cannot be presumed that any clause in the constitution is intended to be without effect.").  *Third*, if the President has the power to appoint acting officials to any principal office by default, then the FVRA would be meaningless.  Under Defendants' view, the FVRA does nothing more than give the President permission to do what he already has permission to do.  And to the extent that Defendants argue that the President has inherent authority under Article II to name acting officials only when the FVRA does not apply, that assertion runs contrary to Defendants' expansive interpretation of Article II.

Defendants cannot contend with the irrefutable evidence and circuit precedent against them.  It is unquestionably correct that the President did not lawfully appoint Mr. Blanche, and so Mr. Blanche cannot lawfully exercise the powers of that office.  Mr. Blanche's removal of Ms. Perlmutter from her position was therefore invalid.

## B.  The President does not have inherent Article II authority to remove Ms. Perlmutter directly

Defendants previously attempted to argue that if the President is unable to appoint an acting Librarian, then he must have inherent authority under Article II to supervise Ms. Perlmutter and

therefore remove her directly. *See* ECF No. 33 at 22–25. As explained *supra* Part II and III.A, the President does not have authority to unilaterally appoint Mr. Blanche as acting Librarian of Congress. And the Appointments Clause forecloses any claim of background presidential authority to remove inferior officers who were not appointed by the President. Otherwise, the Appointments Clause's conferral of authority on Congress to "by Law vest the Appointment" of inferior officers in officials other than the President would be meaningless. Unsurprisingly, Defendants' novel and extraordinary position was recently rejected by the D.C. Circuit. *See Aviel II* at *1 (concluding that "the President's putative removal [of an inferior officer] was likely invalid" because "[t]he governing statute authorizes the [Head of Department]—not the President—to appoint the [inferior officer], and it is silent regarding the question of removal."). No court has accepted Defendants' unbelievable claim.[3]

Defendants' argument is patently incorrect for two additional reasons. First, President Trump purported to fire Ms. Perlmutter *before* Mr. Blanche attempted to do the same. *See* SOMF ¶¶ 6, 7, 9. Defendants' actions therefore contradict their argument that *if* the President is unable to appoint an acting officer, *then* the President has Article II authority to fire inferior officers— "the President's attempted termination was therefore not a backstop; it was the original plan." *Aviel*, 2025 WL 2374618, at *26–27. As the district court explained in *Aviel v. Gor*, "[t]his chronology is critical because Defendants advance their restructured argument as a conditional: if the President cannot appoint a principal officer to do his bidding, then he must be able to take matters into his own hands because he cannot carry out his policy goals." *Id.* Defendants' argument therefore fails on its own terms.

---

[3] Indeed, even President Nixon evidently shared this understanding of the Appointments Clause: there would have been no need for the Saturday Night Massacre if President Nixon could simply have fired the special prosecutor himself.

Second, even if the timeline were reversed, Defendants' argument would still fail. As an initial matter, Defendants' position "has worrisome implications," including that "the President could easily circumvent the general restriction on firing inferior officers by simply firing the principal officers first. That makes no sense." *Id.* at 28. But Defendants' unprecedented assertion of power would not even apply here, where Mr. Newlen serves as the rightful acting Librarian and is (as his predecessor was) removable—though not unilaterally replaceable—by the President. Contrary to Defendants' previously stated concerns, there *is* a clear chain of command at the Library: the President supervises the acting Librarian (by virtue of the President's ability to remove the acting Librarian), who, in turn, supervises the Register. And, equally obviously, if the President prefers not to work within the Library's line of succession, he may nominate and seek confirmation of any person he chooses to the Librarian position. He has not done so.

In short, the Constitution does not give the President the right to circumvent the Appointments Clause through a freestanding removal power, and Defendants can offer no plausible support for their contrary position that was rejected by the D.C. Circuit. The President's purported removal of Ms. Perlmutter was therefore invalid.

## IV.  The Court Should Grant Ms. Perlmutter the Requested Relief

### A.  Ms. Perlmutter is entitled to injunctive relief

Ms. Perlmutter satisfies the requirements for a permanent injunction because (1) she will suffer irreparable injury if an injunction is denied; (2) remedies "available at law" cannot remedy that injury; and (3) the balance of hardships and public interest favor Plaintiff. *See eBay Inc. v. MercExchange*, 547 U.S. 388, 391 (2006). Where, as here, the "enforce[ment] of federal law" hangs in the balance, courts "must not hesitate in awarding necessary relief." *Ramirez v. U.S. Immigr. & Customs Enf't*, 568 F. Supp. 3d 10, 22 (D.D.C. 2021) (quoting *DL v. District of Columbia*, 860 F.3d 713, 726 (D.C. Cir. 2017)).

**1.** "An irreparable harm is an imminent injury that is both great and certain to occur, and for which legal remedies are inadequate." *Beattie v. Barnhart*, 663 F. Supp. 2d 5, 9 (D.D.C. 2009). Although this Court, applying the framework of *Sampson v. Murray*, has taken the position that even a wrongful removal from a federal appointment will not support preliminary injunctive relief, *Sampson* does not apply at the summary-judgment stage. *See Sampson v. Murray*, 415 U.S. 61, 83–84 (1974) (identifying the "factors cutting against the general availability of *preliminary injunctions* in Government personnel cases") (emphasis added). Recognizing this, the D.C. Circuit has made clear that a wrongfully terminated public official *can* seek redress through an injunction that reinstates them. *See Harris v. Bessent*, No. 25-5037, 2025 WL 1021435, at *2 (D.C. Cir. Apr. 7, 2025) (en banc) (per curiam) (denying motion to stay final judgment and permanent injunction because the government "has not shown a strong likelihood of success on the merits of its claim that there is no available remedy for [removed officers] Harris or Wilcox, or that allowing the district court's injunctions to remain in place pending appeal is impermissible"); *Severino v. Biden*, 71 F.4th 1038, 1042–43 (D.C. Cir. 2023) (Courts "can enjoin 'subordinate executive officials' to reinstate a wrongly terminated official '*de facto*.'"). In *Severino*, where the plaintiff challenged his removal from the Administrative Conference of the United States Council, the government even conceded that, "were Severino to prevail on the merits, the [defendants] would be prepared either to identify for removal a specific member of the Council occupying Severino's seat or to comply with other equitable relief granting Severino at least some of the privileges of his office." *Severino*, 714 F.4th at 1043. While Ms. Perlmutter does not seek reinstatement here because she remains the rightful occupant of her position, the D.C. Circuit's line of reinstatement cases nevertheless confirms that injunctive relief *is* available in wrongful-removal cases like this one.

Moreover, *Sampson* does not apply here for an additional reason. *Sampson*'s heightened standard for injunctive relief applies only where there is an administrative scheme in place to

resolve the personnel dispute at issue. The D.C. Circuit "has not resolved the applicability of [*Sampson*'s] heightened standard to suits *not* implicating such an administrative scheme." *Taylor v. Resolution Trust Corps.*, 56 F.3d 1497, 1505 n.1 (D.C. Cir. 1995), *opinion amended on reh'g*, 66 F.3d 1226 (D.C. Cir. 1995). The First Circuit has explicitly adopted this view of *Sampson*. *See Gately v. Com. of Mass.*, 2 F.3d 1221, 1232 (1st Cir. 1993) ("As we read *Sampson*, it teaches that . . . before enjoining a government agency from dismissing a Civil Service employee who has not exhausted her administrative remedies, a district court must find that the facts underlying the employee's allegations of irreparable harm are 'genuinely extraordinary.'"). This is consistent with the text of *Sampson*. In *Sampson*, the plaintiff filed an administrative appeal with the Civil Service Commission and subsequently filed an action in federal district court seeking reinstatement while her administrative appeal was pending. The Supreme Court explained that the plaintiff must "make a showing of irreparable injury sufficient in kind and degree to override [the] factors cutting against the general availability of preliminary injunctions in Government personnel cases," which include "giv[ing] serious weight to the obviously disruptive effect which the grant of the temporary relief awarded here was likely to have on the administrative process" and "grant[ing] [the government] the widest latitude in 'the dispatch of its own internal affairs.'" *Sampson v. Murray*, 415 U.S. 61, 83–84 (1974). As the D.C. Circuit observed in *Taylor*, these factors are relevant only in cases where an administrative process is in place for plaintiffs to avail themselves of. *Taylor*, 56 F.3d at 1506 n.1. Therefore, *Sampson*'s heightened standard does not apply to cases like the instant suit, in which the plaintiff does not "attempt to short-circuit an administrative scheme explicitly designed to resolve the exact type of personnel dispute at issue." *Id.*; *see also Wagner v. Taylor*, 836 F.2d 566, 576 n.66 (D.C. Cir. 1987); *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *5 (D.C. Cir. May 3, 2025) ("Loss of government employment generally does not constitute irreparable injury, especially since employees seeking to challenge

their termination or placement on administrative leave may seek emergency stays from the Office of Special Counsel and MSPB") (citation omitted).

In any event, the harms at issue here are "sufficient in kind and degree" to override the factors typically weighing against relief in "personnel cases" like *Sampson*. *Sampson*, 415 U.S. at 84. The judges in this District have uniformly recognized that a federal official suffers an irreparable injury from an unlawful attempt to remove her from her office at the summary-judgment stage. *See, e.g.*, *LeBlanc v. U.S. Priv. & C.L. Oversight Bd.*, No. 25-cv-542, 2025 WL 1454010 (D.D.C. May 21, 2025) (Walton, J.) (irreparable harm where members of the United States Privacy and Civil Liberties Oversight Board (PCLOB) were unlawfully removed); *Grundmann v. Trump*, No. 25-cv-425, 2025 WL 782665 (D.D.C. Mar. 12, 2025) (Sooknanan, J.) (irreparable harm where chair of Federal Labor Relations Authority was unlawfully removed); *Aviel*, 2025 WL 2374618 (AliKhan, J.) (irreparable harm where president of Inter-American Foundation was unlawfully removed);[4] *Slaughter v. Trump*, No. 25-cv-909, 2025 WL 1984396 (D.D.C. July 17, 2025) (AliKhan, J.) (irreparable harm where chair of the Federal Trade Commission was unlawfully removed); *Harris v. Bessent*, 775 F. Supp. 3d 164, 170 (D.D.C. 2025), *hearing en banc denied*, No. 25-5037, 2025 WL 1033740 (D.C. Cir. Apr. 7, 2025) (Contreras, J.) (irreparable harm where member of Merit Systems Protection Board was unlawfully removed); *Wilcox v. Trump*, 775 F. Supp. 3d 215, 217 (D.D.C. 2025), *hearing en banc denied sub nom. Harris v. Bessent*, No. 25-5037, 2025 WL 1033740 (D.C. Cir. Apr. 7, 2025) (irreparable harm where member of National Labor Relations Board was unlawfully removed); *United States Inst. of Peace*

---

[4] In *Aviel*, the district court did not decide at the preliminary-injunction stage whether plaintiff's deprivation of a statutory right to serve as a federal official was an irreparable harm; but at the summary-judgment stage, the court determined that the "lost the ability to fulfill a high-ranking, public-servant role to which she is entitled" was an irreparable harm. *Aviel*, 2025 WL 2374618, at *15.

*v. Jackson*, No. 25-cv-804, 2025 WL 142864 (D.D.C. May 19, 2025) (Howell, J.) (irreparable harm where members of the U.S. Institute of Peace Board were unlawfully removed).[5]

That is precisely the case here.  Ms. Perlmutter's inability to lead and direct the important work of the Copyright Office at a critical juncture transcends the loss of income or embarrassment involved in the typical employment action.  Ms. Perlmutter's patently unlawful removal deprives her of the opportunity to influence federal decisionmaking on copyright matters of national importance: it causes her to forfeit opportunities to advise on artificial intelligence; direct rulemakings; make time-sensitive, critical staff decisions; review decisions and novel questions of law before the Copyright Royalty Board; and determine standards for copyright registration. Perlmutter Decl. ¶¶ 6, 14.  These opportunities, once past, do not come around again.  Money damages would "not restore her ability to influence" the Copyright Office's "decision-making in the past or in the future."  *Slaughter*, 2025 WL 1984396, at *18.  These harms are "unrecoverable" and therefore irreparable.  *Karem v. Trump*, 404 F. Supp. 3d 203, 217 (D.D.C. 2019), *aff'd as modified*, 960 F.3d 656 (D.C. Cir. 2020).

Moreover, this conclusion flows directly from the line of cases in this District that considered, as this Court explained in its preliminary-injunction opinion, that "there would be no agency for the officer to return to after the case was resolved" or that plaintiff's "position [would] likely be irreparably changed without an injunction."  ECF No. 40 at 7.  These cases—*Aviel*,

---

[5] While the district court decided in *Brehm* that the deprivation of a statutory right to function in that case did not qualify as irreparable harm for the purpose of obtaining a temporary restraining order, the court did not rule on whether irreparable harm existed for purposes of plaintiff's motion for summary judgment, or in the alternative, a preliminary injunction.  Mem. Op., *Brehm v. Marocco*, No. 25-cv-660 (D.D.C. June 10, 2025), ECF No. 41.  Moreover, the court's denial of plaintiff's motion for a temporary restraining order explained that emergency relief was unnecessary because the plaintiff's harm was remediable at the merits-stage by "reinstating him to [the] position."  Mem. Ord. at 5, *Brehm v. Marocco*, No. 25-cv-660 (D.D.C. Mar. 11, 2025), ECF No. 15.

*LeBlanc*, and *Berry*—make clear that the deprivation of a wrongfully-removed plaintiff's statutory right to serve in her position *is* irreparable harm. *See Aviel v. Gor*, 780 F. Supp. 3d 1, 14–15 (D.D.C. 2025); *LeBlanc*, 2025 WL 1454010, at *31; *Berry v. Reagan*, No. 83-3182, 1983 WL 538, at *5 (D.D.C. Nov. 14, 1983). If this were not true, then backpay would have been a sufficient remedy in those cases. Instead, the courts concluded that reinstatement was necessary to remedy the plaintiffs' harm from their unlawful terminations, and therefore, an injunction was warranted.

Beyond the loss of her "statutory right to function," Ms. Perlmutter will also be irreparably harmed by the concomitant impediment to her ability to discharge her ongoing statutory responsibilities as the lawful Register of Copyrights. Ms. Perlmutter is required by law to fulfill her statutory obligations unless she is removed from office by a duly appointed Librarian. *See, e.g.*, 17 U.S.C. §§ 115(d), 411(b), 701, 802(f)(1)(D). Injunctive relief is necessary so that Ms. Perlmutter can do what Congress has directed her to do. *Harris*, 775 F. Supp. 3d at 186 (the "loss of the ability to do what Congress specifically directed [the plaintiff] to do cannot be remediated with anything other than equitable relief") (citation omitted).

Finally, Defendants' efforts to oust Perlmutter threaten the Library's and the Copyright Office's ability to perform their assigned functions as intended by Congress, which has not given the President authority to unilaterally appoint an acting Librarian, or to directly remove the Register. This is especially apt given the sensitivity of the Library's statutory functions as a neutral advisor to Congress. Congress therefore provided that the Register would be supervised directly by the Librarian, and that the Librarian would be subject to Senate confirmation. Because the President does not possess the authority to remove Perlmutter, her wrongful removal is inextricable from the President's unlawful assault on the institutional independence and integrity of the Library and Copyright Office.

These concerns are amplified here given that the President's attempt to take over the Library of Congress implicates separation-of-powers issues not ordinarily present in other employment disputes.  The Library of Congress, including the Copyright Office, cannot perform its statutory role as a neutral advisor to Congress if an executive branch official controls the Library of Congress's operations.  Access to the Library's records, including confidential research and advice for Members of Congress on potential legislation, by unconfirmed executive branch officials outside the established line of succession will damage the credibility and reliability of the institution as a non-partisan advisor, place confidential congressional correspondence and work product at risk, and, specifically with respect to the records of the Copyright Office, jeopardize the security of the copyright registration system and the value of the deposited works.

**2.**  In the wrongful-termination context, irreparable injury and the availability of remedies at law tend to collapse into one another.  *See Grundmann*, 770 F. Supp. 3d at 187 (quoting *Wilcox*, 775 F. Supp. 3d at 235–36 n.20).  The same reasons why Ms. Perlmutter's unique injuries are irremediable explain why other remedies, like monetary damages, cannot cure the unlawful conduct.  Money damages would not restore her ability to lead an important statutory office and administer the nation's copyright system.  As a result, remedies at law are plainly insufficient.

Moreover, if money damages were sufficient redress, then the President could illegally fire any senior federal official and bypass Senate confirmation for the President's appointments.  The President would be able to temporarily replace the Senate parliamentarian before she issued a ruling that would prevent a bill that the President supported from becoming law; and, pursuant to this theory, the parliamentarian would suffer no irreparable harm because she could get backpay.  Or the President could temporarily replace a U.S. District Judge who was about to enjoin a policy that the President preferred.  The judge, under this theory, would suffer no irreparable harm because he or she could get backpay.  Of course, this theory cannot be right.  Backpay is not a

silver bullet that gives the President limitless authority to appoint acting officials or remove inferior officers.

**3.**    The balance of the equities and public interest favor Ms. Perlmutter.    A party's likelihood of success on the merits is a strong indicator that an injunction "would serve the public interest" because "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). That substantial public interest is particularly acute here.    If Defendants were permitted to disregard Congress's restrictions on the President's appointment and removal powers, the Appointments Clause would be rendered a practical nullity.    As the Supreme Court has made clear, the significant structural safeguard of the Appointments Clause does not protect the interests "of any one branch of Government, but of the *entire* Republic."    *Freytag*, 501 U.S. at 880 (emphasis added).    And "[t]he public interest is best served by maintaining the separation-of-powers balance struck by the Constitution."    *CREW v. OMB*, 25-5266, at 24 (D.C. Cir. Aug. 9, 2025) (Henderson, J. concurring).    Thus, for the same reasons that Plaintiff is likely to succeed on the merits, equity requires permanent injunctive relief.[6]

On the other side of this balance, the requested relief will not cause Defendants any hardship.    "It is well established that the Government cannot suffer harm from an injunction that

---

[6] To the extent that Defendants take the position that this Court may not order injunctive relief against the President, that limitation would not preclude Plaintiff from seeking injunctive relief against subordinate officials.    It is "well established" that plaintiffs can obtain full review by "seeking to enjoin the officers who attempt to enforce the President's directive" "[e]ven if [they] were acting at the behest of the President." *Chamber of Com. Of U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) (quoting *Franklin v.* Massachusetts, 505 U.S. 788, 803, 825 (1992) (Scalia, J. concurring)); *see also Severino v. Biden*, 581 F. Supp. 3d 110, 116 (D.D.C. 2022), *aff'd,* 71 F.4th 1038, 1043 (D.C. Cir. 2023); *Grundmann*, 2025 WL 782665, at *184–89 (Sooknanan, J.) (reading *Swan* and *Severino* to support the proposition that *de facto* reinstatement is an available remedy); *Spicer v. Biden*, 575 F. Supp. 3d 93, 97 (D.D.C. 2021) (Friedrich, J.) ("Following *Swan*, the Court could grant effective relief in this case by ordering Ruppersberger and Thalakottur, in their capacities as the Board's Chairman and DFO, to treat the plaintiffs as full members of the Board.").

merely ends an unlawful practice." *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 218 (D.D.C. 2020) (citations omitted).

**B.  Ms. Perlmutter is entitled to declaratory relief**

To determine whether a court should issue declaratory relief, courts typically consider (1) whether the judgment will "clarify[] the legal relations at issue," and (2) whether it will "afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *New York v. Biden*, 636 F. Supp. 3d 1, 31 (D.D.C. 2022) (quoting *Glenn v. Thomas Fortune Fay*, 222 F. Supp. 3d 31, 36 (D.D.C. 2016)).

Both factors warrant declaratory relief here.  Declaratory judgment would settle the "substantial controversy" of whether Ms. Perlmutter remains the Register of Copyrights and Director of the U.S. Copyright Office.  *See Glenn*, 222 F. Supp. 3d at 36 (citation omitted).  It would also afford relief from the uncertainty of whether the President can appoint Mr. Blanche to Librarian of Congress without the advice and consent of the Senate.

Nor would any of the typical concerns that might weigh against declaratory relief apply. There are no questions about the "equity" of Ms. Perlmutter's conduct; the "state of the record" is fully developed as to all facts relevant to the legal issue before this Court; the parties are plainly "adverse[]"; and the "question to be decided" is one of substantial "public importance." *POM Wonderful LLC v. F.T.C.*, 894 F. Supp. 2d 40, 44 (D.D.C. 2012).

* * *

The President had no authority to set into motion the events that have impeded Ms. Perlmutter from continuing her distinguished service as Register of Copyrights.  Equity does not favor the unclean hands of Defendants, who have so flagrantly violated Ms. Perlmutter's rights. This Court should act swiftly to correct this Executive overreach.

## CONCLUSION

For these reasons, the Court should grant Plaintiff's motion for summary judgment.

Dated: September 8, 2025

Respectfully submitted,

*/s/ Allyson R. Scher*
Brian D. Netter (D.C. Bar No. 979362)
Allyson R. Scher (D.C. Bar No. 1616379)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
bnetter@democracyforward.org
ascher@democracyforward.org

Donald B. Verrilli, Jr. (D.C. Bar. No. 420434)
Ginger D. Anders
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue, NW, Suite 500E
Washington, D.C. 20001
(202) 220-1100
donald.verrilli@mto.com
ginger.anders@mto.com

Kuruvilla J. Olasa (pro hac vice admitted)
Miranda E. Rehaut (pro hac vice admitted)
Adeel Mohammadi (pro hac vice admitted)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
(213) 683-9100
kuruvilla.olasa@mto.com
miranda.rehaut@mto.com
adeel.mohammadi@mto.com

*Counsel for Plaintiff*