# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SHIRA PERLMUTTER, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-01659-TJK |
| | ) | |
| TODD BLANCHE, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND
<u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

I.    The Library of Congress and the U.S. Copyright Office operate under presidential
      control and exercise significant executive powers. .............................................. 3

II.   The President removed the Librarian and designated the Senate-confirmed Deputy
      Attorney General, Todd Blanche, as acting Librarian under the Federal Vacancies
      Reform Act. ........................................................................................................... 5

III.  The President removed Plaintiff as Register of Copyrights and Plaintiff filed this
      lawsuit. .................................................................................................................. 6

LEGAL STANDARD ......................................................................................................... 7

ARGUMENT ...................................................................................................................... 8

I.    Plaintiff was lawfully removed from serving as Register of Copyrights. ............................ 8

      A.    The President lawfully designated Mr. Blanche as acting Librarian and Mr.
            Blanche Confirmed Plaintiff's Removal from the Position of Register of
            Copyrights. ................................................................................................... 8

            1.    Mr. Blanche was lawfully designated as acting Librarian pursuant to the Federal
                  Vacancies Reform Act ................................................................................. 8

            2.    Plaintiff offers no persuasive reason to exclude the Library of Congress from
                  the definition of "Executive Agency." ................................................. 11

            3.    Alternatively, the President's designation of Mr. Blanche as acting Librarian is
                  independently authorized by Article II of the Constitution................................. 18

      B.    If the President lacks the authority to designate an acting Librarian to
            supervise the Register of Copyrights, he has the authority to remove the
            Register directly. .......................................................................................... 22

II.   Plaintiff is not entitled to reinstatement or a permanent injunction. ................................. 26

      A.    Plaintiff is not entitled to reinstatement. .................................................... 26

      B.    Plaintiff is not entitled to a permanent injunction. .................................... 28

            1.    A permanent injunction cannot be awarded absent extraordinary
                  circumstances. ....................................................................................... 29

i

2.    Plaintiff has failed to show irreparable harm. ....................................................... 31

3.    The balance of harms and public interest weigh strongly against a permanent injunction. ................................................................................................................ 37

4.    Even if injunctive relief were available, the Court should not enter the broad injunction Plaintiff requests. ................................................................................. 38

C.    Even assuming that Plaintiff is entitled to declaratory relief, that relief must be limited to a declaration that her removal was unlawful. ................................... 39

CONCLUSION ......................................................................................................................... 40

# TABLE OF AUTHORITIES

**Cases:**

*Amoco Prod. Co. v. Vill. of Gambell*,
  480 U.S. 531 (1987) ........................................................................................ 30, 37

*Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.*,
  64 F.4th 1354 (D.C. Cir. 2023) ......................................................................... 28, 31

*Atl. Richfield Co. v. Christian*,
  590 U.S. 1 (2020) ..................................................................................................... 14

*Aviel v. Gor*,
  780 F. Supp. 3d 1 (D.D.C. 2025) ............................................................................ 33

*Aviel v. Gor*,
  Civ. A. No. 25-778, 2025 WL 2374618 (D.D.C. Aug. 14, 2025)............................ 25

*Aviel v. Gor*,
  No. 25-5105, 2025 WL 1600446 (D.C. Cir. June 5, 2025)..................... 21, 24, 25, 26

*Baker v. Carr*,
  369 U.S. 186 (1962) ................................................................................................. 27

*Barnes v. Kline*,
  759 F.2d 21 (D.C. Cir. 1984), *judgment vacated sub nom.*
  *Burke v. Barnes*, 479 U.S. 361 (1987)..................................................................... 31

*Berry v. Reagan*,
  Civ. A. No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983), *vacated as moot*,
  732 F.2d 949 (D.C. Cir. 1983) ................................................................................ 33

*Bessent v. Dellinger*,
  604 U.S. ---, 145 S. Ct. 515 (2025), *subsequent determination*, 145 S. Ct. 1326 (2025) .......... 28

*Bowsher v. Synar*,
  478 U.S. 714 (1986) ................................................................................................. 24

*Brehm v. Marocco*,
  2025 U.S. Dist. LEXIS 71326 (D.D.C. Mar. 11, 2025) ........................................... 33

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ................................................................................................. 38

*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006) .......................................................................... 29, 38

*Collins v. Yellen*,
  594 U.S. 220 (2021) ................................................................................................. 22

*Cook Inlet Tribal Council, Inc. v. Dotomain*,
  10 F.4th 892 (D.C. Cir. 2021) ............................................................ 14

*Davis v. Billington*,
  681 F.3d 377 (D.C. Cir. 2012) ............................................................ 16

*Dellinger v. Bessent*,
  No. 25-5052, 2025 WL 887518 (D.C. Cir. Mar. 10, 2025)........................ 34

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) ................................................................ 29, 31

*Edmond v. United States*,
  520 U.S. 651 (1997) ........................................................................ 19

*Eltra Corp. v. Ringer*,
  579 F.2d 294 (4th Cir. 1978)........................................................ 12, 15

*English v. Trump*,
  279 F. Supp. 3d 307 (D.D.C. 2018) ............................................ 29, 33, 36

*Ethnic Emps. of Libr. of Cong. v. Boorstin*,
  751 F.2d 1405 (D.C. Cir. 1985) ........................................................ 14

*Farris v. Rice*,
  453 F. Supp. 2d 76 (D.D.C. 2006) ...................................................... 29

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992) ........................................................................ 26

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010) .............................................. 11, 15, 18, 19, 22, 35

*Great Lakes Dredge & Dock Co. v. Huffman*,
  319 U.S. 293 (1943) ........................................................................ 40

*Grundmann v. Trump*,
  770 F. Supp. 3d 166 (D.D.C. 2025) ................................................ 30, 32

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
  527 U.S. 308 (1999) ........................................................................ 27

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
  920 F.3d 1 (D.C. Cir. 2019) .............................................................. 37

*Haddon v. Walters*,
  43 F.3d 1488 (D.C. Cir. 1995) .......................................................... 16

*Haddon v. Walters*,
  836 F. Supp. 1 (D.D.C. 1993) ............................................................ 16

iv

*Harkrader v. Wadley*,
  172 U.S. 148 (1898) ............................................................................................... 27

*Harris v. Bessent*,
  775 F. Supp. 3d 164 (D.D.C. 2025) ................................................................. 30, 32

*Harris v. Bessent*,
  No. 25-5037, 2025 WL 1021435 (D.C. Cir. Apr. 7, 2025) ...................................... 28

*In re Sawyer*,
  124 U.S. 200 (1888) ......................................................................................... 27, 28

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*,
  684 F.3d 1332 (D.C. Cir. 2012) ........................................... 1, 4, 9, 10, 11, 12, 15, 35

*Kennedy v. Braidwood Management, Inc.*,
  145 S. Ct. 2427 (2025) ...................................................................................... 23, 25

*Kissinger v. Reps. Comm. for Freedom of the Press*,
  445 U.S. 136 (1980) ............................................................................................... 14

*Kuretski v. Comm'r of Internal Revenue Serv.*,
  755 F.3d 929 (D.C. Cir. 2014) ............................................................................... 12

*Lamie v. U.S. Trustee*,
  540 U.S. 526 (2004) ............................................................................................... 14

*LeBlanc v. U.S. Priv. & C.L. Oversight Bd.*,
  784 F. Supp. 3d 1 (D.D.C. May 21, 2025) ...................................................... 29, 30, 32

*Macauley v. Waterman S.S. Corp.*,
  327 U.S. 540 (1946) ............................................................................................... 40

*Med. Imaging & Tech. All. v. Libr. of Cong.*,
  103 F.4th 830 (D.C. Cir. 2024) ....................................................... 4, 10, 11, 14, 15

*Mississippi v. Johnson*,
  71 U.S. (4 Wall.) 475 (1866) .................................................................................. 26

*Mistretta v. United States*,
  488 U.S. 361 (1989) ............................................................................................... 13

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010) ............................................................................................... 28

*Myers v. United States*,
  272 U.S. 52 (1926) ........................................................................................... 20, 23

*N. Am. Butterfly Ass'n v. Wolf*,
  977 F.3d 1244 (D.C. Cir. 2020) ............................................................................. 17

*Nat'l Treasury Emps. Union v. Reagan,*
  663 F.2d 239 (D.C. Cir. 1981) ............................................................ 23

*Perlmutter v. Blanche,*
  No. 25-5285, 2025 WL 2627965 (D.C. Cir. Sept. 10, 2025) ........................ 7, 15, 16, 30, 34, 38

*Phillip v. Fairfield Univ.,*
  118 F.3d 131 (2d Cir. 1997) ............................................................ 29

*Sampson v. Murray,*
  415 U.S. 61 (1974) ............................................................ 2, 29, 30, 34

*Samuels v. Mackell,*
  401 U.S. 66 (1971) ............................................................ 39

*Seila Law LLC v. Consumer Fin. Prot. Bureau,*
  591 U.S. 197 (2020) ............................................................ 18, 22, 23, 24, 26, 37

*Severino v. Biden,*
  71 F.4th 1038 (D.C. Cir. 2023) ............................................................ 28

*Slaughter v. Trump,*
  No. 25-5261, 2025 WL 2551247 (D.C. Cir. Sept. 2, 2025) ........................ 27

*Snyder v. United States,*
  603 U.S. 1 (2024) ............................................................ 14

*Swan v. Clinton,*
  100 F.3d 973 (D.C. Cir. 1996) ............................................................ 27

*Taylor v. Resol. Tr. Corp.,*
  56 F.3d 1497 (D.C. Cir. 1995) ............................................................ 30

*Trump v. Boyle,*
  606 U.S. ---, 145 S. Ct. 2653 (2025) ............................................................ 7, 32, 38

*Trump v. CASA, Inc.,*
  606 U.S. 831 (2025) ............................................................ 2, 38, 39

*Trump v. Int'l Refugee Assistance Project,*
  582 U.S. 571 (2017) ............................................................ 31-32

*Trump v. Slaughter,*
  ---F. Supp. 3d---, 2025 WL 1984396 (D.D.C. July 17, 2025) ........................ 30, 32, 33

*Trump v. Wilcox,*
  145 S. Ct. 1415 (2025) ............................................................ 7, 31, 38

*U.S. Institute of Peace v. Jackson,*
  783 F. Supp. 3d 316 (D.D.C. 2025) ............................................................ 32

*United States v. Arthrex, Inc.*,
    594 U.S. 1 (2021) ............................................................................... 18

*United States v. Hernandez*,
    107 F.4th 965 (11th Cir. 2024) ......................................................... 16

*Walton v. House of Representatives of the State of Okla.*,
    265 U.S. 487 (1924) ........................................................................... 27

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ........................................................................... 29

*White v. Berry*,
    171 U.S. 366 (1898) ........................................................................... 27

*Wilcox v. Trump*,
    775 F. Supp. 3d 215 (D.D.C. 2025) ................................................. 32

*Williams v. Phillips*,
    482 F.2d 669 (D.C. Cir. 1973) .................................................... 20, 21

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ......................................................................... 29, 37

*Wis. Gas Co. v. Fed. Energy Regul. Comm'n*,
    758 F.2d 669 (D.C. Cir. 1985) ......................................................... 29

**Statutes:**

2 U.S.C. § 136-1 ...................................................................... 1, 3, 9, 36

2 U.S.C. § 181(b)(1) ...................................................................... 12-13

5 U.S.C. § 104 ................................................... 1, 5, 9, 13, 15, 16, 17

5 U.S.C. § 105 ..................................................... 1, 5, 9, 11, 14

5 U.S.C. § 701(b) ................................................................................ 14

5 U.S.C. § 701(b)(1)(A) ...................................................................... 15

5 U.S.C. § 3345(a) ................................................................... 5, 6, 8, 9

5 U.S.C. § 3346(a)(1) ............................................................................ 6

5 U.S.C. § 3347(a) ................................................................................. 5

5 U.S.C. § 13101(4) ............................................................................ 13

5 U.S.C. § 13101(11) .......................................................................... 13

17 U.S.C. § 409 ................................................................................................. 4

17 U.S.C. § 410 ................................................................................................. 4

17 U.S.C. § 411(a) ............................................................................................. 4

17 U.S.C. § 701(a) ................................................................................. 4, 33, 34

17 U.S.C. § 701(e) ........................................................................................... 10

17 U.S.C. § 702 ......................................................................................... 4, 10

17 U.S.C. § 708 ................................................................................................. 4

Act of Apr. 24, 1800, ch. 37, § 5, 2 Stat. 55 ................................................... 3

Act of Jan. 26, 1802, ch. 2, § 3, 2 Stat. 128 ......................................... 3, 9, 17

Act of July 8, 1870, ch. 230, § 85, 16 Stat. 198 ............................................. 4

Act of Feb. 19, 1897, ch. 265, 29 Stat. 538 ................................................... 4

Pub. L. No. 103-110, 107 Stat. 1037 (1993) ................................................. 13

Pub. L. No. 115-414, 132 Stat. 5430 (2019) ................................................. 13

**U.S. Constitution:**

U.S. Const. art. II, § 1 ................................................................................... 18

U.S. Const. art. II, § 2 ................................................................... 18, 21, 24

U.S. Const. art. II, § 3 ............................................................................. 1, 18

**Federal Rules:**

Fed. R. Civ. P. 56 ............................................................................................ 7

**Other Authorities:**

1 Annals of Cong. 463 (1789) ...................................................................... 18

29 Cong. Rec. 318–19 (Dec. 19, 1896) .......................................................... 3

29 Cong. Rec. 387 (Dec. 21, 1896) ................................................................ 3

*Authority of the President to Remove the Staff Director of the Civil Rights Commission &
Appoint an Acting Staff Director*,
25 Op. O.L.C. 103, 103-04 (Mar. 30, 2001) ............................................. 19

H.R. Conf. Rep. No. 105-796 (1998) ........................................................... 15

John Y. Cole, *For Congress and the Nation: A Chronological History of the Library of Congress* (1979) ............................................................................................ 3

*Legality of Designation of Certain Acting Officials by the Secretary of Energy*,
2 Op. O.L.C. 113 (May 18, 1978) ................................................................... 18

Library of Congress, *George Watterston (1783-1854): 3rd Librarian of Congress 1815-1829*,
https://www.loc.gov/item/n83041676/george-watterston-1783-1854/ ....................................... 10

Library of Congress,*Librarians of Congress, 1802-1974* 20 (1977).............................................. 10

Memorandum for Neil Eggleston, Associate Counsel to the President, from Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, *Re: Appointment of an Acting Staff Director of the United States Commission on Civil Rights* (Jan. 13, 1994),
https://www.justice.gov/olc/page/file/1311936/dl?inline ........................................... 19

*Power of the President to Designate Acting Member of the Federal Home Loan Bank Board*,
1 Op. O.L.C. 150 (June 15, 1977) .......................................................... 19, 20

R.R. Bowker, *The American National Library*, 21 Lib. J. 357 (1896) ........................................... 3

*Temporary Presidential Designation of Acting Board Members of Inter-American Foundation & U.S. African Development Foundation*,
49 Op. O.L.C. __, (Mar. 14, 2025)................................................................. 18, 19

The Federalist No. 70 (J. Cooke ed. 1961) (A. Hamilton) ............................................ 19

Theodore Roosevelt, Message to the Senate and the House of Representatives (Dec. 3, 1901) https://millercenter.org/the-presidency/presidential-speeches/december-3-1901-first -annual-message ........................................................................... 3-4

U.S. House of Representatives, Office of the Law Revision Counsel,
https://uscode.house.gov/codification/legislation.shtml............................................. 12

Webster's Encyclopedic Unabridged Dictionary of the English Language (1989) ...................... 25

## INTRODUCTION

The President of the United States lawfully removed Carla Hayden from her position as Librarian of Congress and lawfully designated the Deputy Attorney General, Todd Blanche, as acting Librarian.  The Library of Congress is not an autonomous organization free from political supervision.  It is part of the Executive Branch and is subject to presidential control, according to the strictures of the Federal Vacancies Reform Act ("FVRA").  That law imposes parameters on presidential designation of acting officials to fill vacancies in an "Executive agency," which includes "an establishment in the executive branch[.]"  5 U.S.C. §§ 104(1), 105.  The Library of Congress fits squarely in that definition.  The Librarian of Congress is appointed by the President, with the advice and consent of the Senate, *see* 2 U.S.C. § 136-1(a), "is subject to unrestricted removal by the President," and the Library exercises powers "generally associated in modern times with executive agencies," *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1341–42 (D.C. Cir. 2012).  Hence the D.C. Circuit's conclusion that the Library "is undoubtedly a component of the Executive Branch."  *Id*. at 1342 (citation omitted).

To the extent the FVRA does not apply, the President's constitutional power to supervise the Library is greater—not less.  The President has the constitutional power—indeed, the obligation—to "take Care that the Laws be faithfully executed."  U.S. Const. art. II, § 3.  That power includes the power to designate subordinate officials to supervise components of the Executive Branch when they are otherwise leaderless.  The FVRA is not the source of the President's power to designate acting officials; it channels how the President may exercise that designation authority in certain contexts.  The President's power to designate Mr. Blanche ultimately comes from the Constitution, not a statute.  And that constitutional power operates here if the FVRA is silent.

1

Because Mr. Blanche is properly serving as acting Librarian, he had clear authority to remove the Register of Copyrights, as he did in designating Paul Perkins as acting Register. In addition, the President removed the Register directly—a removal that likewise is within his constitutional power when, as at that time, there was no Librarian. The general rule is that the power to remove tracks the power to appoint; thus, the Librarian normally has the power to remove the Register. But if there is no Librarian and the President cannot designate an acting Librarian (as Plaintiff argues), the President's removal authority extends to inferior officers like the Register. The Constitution does not countenance federal entities free from all political control.

Merits aside, Plaintiff is not entitled to the sweeping remedies of reinstatement and a permanent injunction that she seeks. Equity does not empower federal courts to order the reinstatement of an executive officer who has been removed. Even if that remedy were available, Plaintiff has failed to show she is entitled to a permanent injunction. Plaintiff's loss of employment is not irreparable absent a "genuinely extraordinary situation." *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974). She says she is being deprived of her "statutory right to function" as Register of Copyrights, but she has no right to perpetual service in that office. The other injuries Plaintiff asserts are not *her* injuries, but supposed *institutional* harms to the Library or Congress—injuries that cannot support *her* request for injunctive relief. And even if injunctive relief were available, Plaintiff cannot obtain an injunction against Mr. Blanche—the acting Librarian—because that relief is not necessary to provide *her* with "complete relief." *Trump v. CASA, Inc.*, 606 U.S. 831, 851 (2025). Plaintiff cannot use this lawsuit to secure injunctive relief for non-parties.

Accordingly, the Court should deny Plaintiff's motion and grant Defendants' cross-motion for summary judgment.

## BACKGROUND

I.    **The Library of Congress and the U.S. Copyright Office operate under presidential control and exercise significant executive powers.**

The Library of Congress is a statutorily created entity that is headed by a Librarian. Although the Library was initially created "for the use [by] Congress," Act of Apr. 24, 1800, ch. 37, § 5, 2 Stat. 55, 56, it has for over two centuries operated under the control of the Executive Branch and provided services to the federal government broadly, not just Congress.   Since the position of Librarian was created in 1802 and to this day, Congress has directed that the Librarian be appointed by the President—now, with the advice and consent of the Senate.   *See* Act of Jan. 26, 1802, ch. 2, § 3, 2 Stat. 128, 129 ("1802 Act") (providing that "a librarian [is] to be appointed by the President of the United States solely"); 2 U.S.C. § 136-1(a) ("The President shall appoint the Librarian of Congress, by and with the advice and consent of the Senate.").   In the same law that created the office of Librarian, Congress authorized the President and Vice-President to borrow books from the Library, 1802 Act, § 4, and privileges were extended to cabinet officials, *see* John Y. Cole, *For Congress and the Nation: A Chronological History of the Library of Congress* 12, 15 (1979).   Thus, as Congress recognized in 1897, "it is a misnomer to call it the Congressional Library.   It is a great national Library and belongs to the Government of the United States."   29 Cong. Rec. 318–19 (Dec. 19, 1896) (statement of Rep. Dockery); *accord id.* at 387 (Dec. 21, 1896) (statement of Rep. Stone); *id.* (Dec. 21, 1896) (statement of Rep. Fairchild); *see also* R.R. Bowker, *The American National Library*, 21 Lib. J. 357 (1896) ("[T]he Library of Congress, so called, is now the library of the nation as well as of Congress."); Theodore Roosevelt, Message to the Senate

3

and the House of Representatives (Dec. 3, 1901) (stating that "the Federal library, which, though still the Library of Congress, and so entitled, is the one national library of the United States").[1]

The Library of Congress is composed of several divisions.  One of these is the U.S. Copyright Office, which Congress established within the Library in 1897.  *See* Act of Feb. 19, 1897, ch. 265, 29 Stat. 538, 545.[2]  That office is headed by the Register of Copyrights and Director of the U.S. Copyright Office, who is appointed by the Librarian.  17 U.S.C. § 701(a).  The Register administers the copyright laws of the United States.  She examines applications for copyright registration, *id*. §§ 409–410, which copyright owners must obtain before bringing an infringement suit, *id*. § 411(a).  The Register also has "broad authority … to make copyright rules." *Med. Imaging & Tech. All. v. Libr. of Cong.*, 103 F.4th 830, 833 (D.C. Cir. 2024); *see* 17 U.S.C. §§ 702, 708.  In addition, the Register oversees the Copyright Royalty Judges, who have the power "to promulgate copyright regulations, to apply the statute to affected parties, and to set rates and terms case by case."  *Intercollegiate*, 684 F.3d at 1342.  The Register cannot exercise rulemaking powers unilaterally; instead, the Register "acts under the direction and supervision of the Librarian," *Med. Imaging*, 103 F.4th at 833 (citing 17 U.S.C. § 701(a)), and "[a]ll regulations established by the Register … are subject to the approval of the Librarian of Congress," 17 U.S.C. § 702; *see Med. Imaging*, 103 F.4th at 838 (copyright laws "give[] rulemaking authority to the Librarian, who explicitly acts upon the recommendation of the Register").

---

[1]  https://millercenter.org/the-presidency/presidential-speeches/december-3-1901-first-annual-message.

[2]  Congress had previously tasked the Librarian with administering the copyright laws.  *See* Act of July 8, 1870, ch. 230, § 85, 16 Stat. 198, 212.

II.    **The President removed the Librarian and designated the Senate-confirmed Deputy Attorney General, Todd Blanche, as acting Librarian under the Federal Vacancies Reform Act.**

On May 8, 2025, the President exercised his authority under Article II of the Constitution to remove Carla Hayden from her position as Librarian of Congress.   Decl. of Shira Perlmutter ¶ 5 (ECF No. 49-3) ("Perlmutter Decl.").   The next day, the President designated Defendant Todd Blanche, the Deputy Attorney General, as acting Librarian of Congress and "directed [him] to perform the duties of [that] office."   Perlmutter Decl., Ex. B, at 2 (ECF No. 49-5).   In designating Mr. Blanche as acting Librarian, the President invoked his authority under Article II of the Constitution, both generally and as addressed in applicable federal statutes, including the FVRA, 5 U.S.C. § 3345(a).   *Id.*

The FVRA governs the President's designation of an acting officer for a Senate-confirmed position in an "Executive agency" when the officer previously holding that position "dies, resigns, or is otherwise unable to perform the functions and duties of the office…."   5 U.S.C. § 3345(a). The term "Executive agency" includes an "independent establishment."   *Id.* §§ 104(1), 105.   An "independent establishment," in turn, includes "an establishment in the executive branch (other than the United States Postal Service or the Postal Regulatory Commission)."   *Id.* § 104(1).   The definition also excludes "an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment[.]"   *Id.*   The statute also expressly designates the Government Accountability Office as an "independent establishment."   *Id.* § 104(2).   For a governmental entity encompassed by the FVRA, that statute delineates the "exclusive means for temporarily authorizing an acting official to perform the functions and duties" of that entity, except in limited circumstances.   *Id.* § 3347(a).

5

The FVRA limits who may be designated as an acting officer and how long that person may serve.   By default, the "first assistant" to the vacant office automatically assumes the role of the acting officer, but the President may designate an alternative—either another "officer or employee" of the same entity, subject to certain limits, or "a person who serves in an office for which appointment is required to be made by the President, by and with the advice and consent of the Senate."   5 U.S.C. § 3345(a)(1)–(3).   A person designated under the FVRA may not serve indefinitely; rather, the FVRA imposes detailed limits on the duration of an acting officer's tenure. *Id*. § 3346(a)(1).

III.    **The President removed Plaintiff as Register of Copyrights and Plaintiff filed this lawsuit.**

On May 10, 2025, the President removed the then-Register of Copyrights, Plaintiff Shira Perlmutter.   Perlmutter Decl., Ex. A (ECF No. 49-4).   Mr. Blanche, as acting Librarian, then appointed Brian Nieves and Defendant Paul Perkins to serve as the acting Principal Deputy Librarian of Congress and acting Register of Copyrights, respectively.   Perlmutter Decl., Ex. B, at 1 (ECF No. 49-5).   By appointing Mr. Perkins as acting Register of Copyrights, Mr. Blanche confirmed the President's removal of Plaintiff.

Plaintiff filed this lawsuit on May 22, challenging her removal as Register of Copyrights and requesting a temporary restraining order to enjoin Mr. Blanche from serving as acting Librarian of Congress, prohibiting Mr. Perkins from serving as acting Register of Copyrights, and reinstating Plaintiff to the position of Register of Copyrights.   *See generally* Mot. for TRO (ECF No. 2); Mem. in Supp. of Pl.'s Mot. for TRO (ECF No. 2-1).   This Court denied that motion because Plaintiff "ha[d] not met her burden of showing that she will suffer imminent irreparable harm" absent a temporary restraining order.   TRO Hr'g Tr. at 51:25–52:6 (ECF No. 33-1).   This Court also noted that Plaintiff had not explained why the Copyright Office "should function with any degree of

6

independence from control by the Executive Branch, especially when, as the D.C. Circuit has held … it exercises executive authority." *Id*. at 42:23-43:6.

Plaintiff then filed a motion for a preliminary injunction, *see* Pl.'s Mot. for a Prelim. Inj. (ECF No. 24), which this Court denied on the same ground, *see* Order (ECF No. 39); Mem Op. (ECF No. 40) ("PI Mem. Op."). The Court again rejected Plaintiff's argument that she will be irreparably harmed by being deprived of a "statutory right to function," PI Mem. Op. 4–12, and held that Plaintiff cannot "rely on purported institutional harms to the Library or Copyright Office to show irreparable harm to her," *id*. at 14.

Plaintiff appealed and sought an injunction pending appeal. A divided panel of the D.C. Circuit entered an injunction pending appeal, enjoining Defendants (except the President) from "interfering with [Plaintiff's] service as Register of Copyrights and Direct of the U.S. Copyright Office …." *Perlmutter v. Blanche*, No. 25-5285, 2025 WL 2627965, at *1 (D.C. Cir. Sept. 10, 2025) (per curiam). Judge Walker dissented from the panel's order, reasoning that the Supreme Court has repeatedly "stayed lower-court injunctions that barred the President from removing officers" who, like the Register of Copyrights, "exercise[] executive power in a host of ways." *Id*. at *10–11 (Walker, J., dissenting). As Judge Walker explained, the panel's injunction "repeat[ed] the mistake that [*Trump v. Wilcox*, 145 S. Ct. 1415 (2025)] and [*Trump v. Boyle*, 606 U.S. ---, 145 S. Ct. 2653 (2025)] twice corrected." *Id*. at *11 (Walker, J., dissenting).

Defendants have filed a petition for rehearing *en banc*.

## LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

7

## ARGUMENT

### I.    Plaintiff was lawfully removed from serving as Register of Copyrights.

Plaintiff was lawfully removed as Register of Copyrights—either by Mr. Blanche or by the President.   Plaintiff has no right to serve in the office she previously occupied.   Therefore, the Court should grant summary judgment for Defendants.

#### A.    The President lawfully designated Mr. Blanche as acting Librarian and Mr. Blanche Confirmed Plaintiff's Removal from the Position of Register of Copyrights.

The President's designation of Mr. Blanche as acting Librarian of Congress was lawful. First, the Library of Congress is an "Executive agency" under the FVRA, and the President's designation of Mr. Blanche thus traveled an established path to designating an acting official under that law.   Second, if the FVRA's statutory limits on designating acting officials do *not* apply to the Library of Congress, the President properly exercised his inherent authority under Article II to designate Mr. Blanche.   Either way, Mr. Blanche is properly serving as the acting Librarian of Congress.

##### 1.    Mr. Blanche was lawfully designated as acting Librarian pursuant to the Federal Vacancies Reform Act.

The President lawfully designated Mr. Blanche as the acting Librarian of Congress pursuant to the FVRA.  That law authorizes the President to fill a vacancy that has arisen in a Senate-confirmed position within an "Executive agency" by designating, among others, "a person who serves in an office for which appointment is required to be made by the President, by and with the advice and consent of the Senate, to perform the functions and duties of the vacant office temporarily in an acting capacity subject to the time limitations of section 3346."  5 U.S.C. § 3345(a)(2).  Mr. Blanche is the Senate-confirmed Deputy Attorney General, and there is no dispute that former Librarian Hayden is now "unable to perform the functions and duties of [that]

8

office." *Id*. § 3345(a). The only remaining question is whether the Library of Congress is an "Executive Agency" to which the FVRA applies, which is defined as "an Executive department, a Government corporation, and an independent establishment." *Id*. § 105.

It is. An "independent establishment" is "an establishment in the executive branch (other than the United States Postal Service or the Postal Regulatory Commission) which is not an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment," as well as "the Government Accountability Office." 5 U.S.C. § 104. Despite having "Congress" in its name, the Library has numerous characteristics and powers that bring it firmly within the statutory language "establishment in the executive branch." *Id*.

*First*, federal law authorizes the President to appoint the Librarian with the advice and consent of the Senate, *see* 2 U.S.C. § 136-1, and the President accordingly has the sole authority to remove the Librarian. *See Intercollegiate*, 684 F.3d at 1341. The President's power to appoint and remove the Librarian—a power he does *not* have over true congressional entities like the House Sergeant-at-Arms, who is elected by the members of the House, or the Senate Parliamentarian, who is appointed by the Senate majority leader—confirms the Library of Congress's placement in the Executive Branch. The D.C. Circuit held that the Librarian's appointment by, and subordination to, the President are key features that make the Library a "Department" in the Executive Branch for purposes of the Appointments Clause. *Id*.

The President's control over the Library is not a new development. Ever since the position of Librarian was created in 1802, Congress has directed that the Librarian be appointed by the President. 1802 Act, § 3 (providing for "a librarian to be appointed by the President of the United States solely"). Presidents, moreover, have not shied away from exerting authority over Librarians, including with respect to such mundane tasks as which books the Library should

purchase.  *See* Library of Congress, *Librarians of Congress, 1802-1974* 20 (1977) (describing President Jefferson as taking active oversight over the first Librarian's purchase of books).  And when Librarians and Presidents have not seen eye to eye, Presidents have removed Librarians, as President Jackson did based on political differences with the Librarian at the time.  *See* Library of Congress, *George Watterston (1783-1854): 3rd Librarian of Congress 1815-1829* ("It therefore is hard to believe that he was surprised on May 28, 1829, when newly elected President Andrew Jackson, a Democrat, replaced him as Librarian with a fellow Democrat, John Silva Meehan, a local printer and publisher.").[3]

*Second*, the Library of Congress, including the Copyright Office housed within, exercises quintessential executive functions.  Through its various components, "the Library of Congress … exercises significant regulatory authority over copyrights," *Med. Imaging*, 103 F.4th at 833, including the power to "promulgate copyright regulations, to apply the statute to affected parties, and to set rates and terms case by case," *Intercollegiate*, 684 F.3d at 1342; *see also Med. Imaging*, 103 F.4th at 839 (same); *supra*, p. 4.  Although the Copyright Office is responsible for developing and proposing certain copyright regulations, it cannot institute those rules unilaterally; rather, "[a]ll regulations established by the Register … are subject to the approval of the Librarian of Congress." 17 U.S.C. § 702; *see Med. Imaging*, 103 F.4th at 837 ("Congress provided that the Register may establish copyright regulations, with the approval of the Librarian").  And those regulations are subject to judicial review under the APA, *see* 17 U.S.C. § 701(e); *Med. Imaging*, 103 F.4th at 838— just like regulations promulgated by any other Executive Branch agency.

These regulatory powers are executive powers.  As the D.C. Circuit has explained, these

---

[3] https://www.loc.gov/item/n83041676/george-watterston-1783-1854/.

powers "are ones generally associated in modern times with executive agencies rather than legislators," and those core executive powers led the court of appeals to hold that the Library is "undoubtedly a 'component of the Executive Branch.'"  *Intercollegiate*, 684 F.3d at 1341–42 (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 511 (2010)).   The D.C. Circuit reaffirmed that holding just last year, explaining that "whatever the Library's historical association with Congress," it exercises "important executive power" that makes it "squarely a component of the Executive Branch in its role as a copyright regulator."  *Med. Imaging*, 103 F.4th at 840 n.4.

The Library of Congress thus falls squarely within the Executive Branch.   The Librarian is appointed by the President, and the Library exercises quintessential executive powers, including through the operations of the Copyright Office.   Therefore, the Library of Congress is an "establishment in the executive branch," and the President's designation of Mr. Blanche as acting Librarian was authorized by the FVRA.

### 2. Plaintiff offers no persuasive reason to exclude the Library of Congress from the definition of "Executive Agency."

Plaintiff acknowledges that these features put the Library squarely within the Executive Branch for *constitutional* purposes, but she insists that the same features are insufficient to make the Library "an establishment in the executive branch" under the FVRA, *see* Mem. of Law. in Supp. of Pl.'s Mot. for Summ. J. 7–13 (ECF No. 49-1) ("Pl.'s Mem.").   But Plaintiff identifies no textual or precedential basis for cleaving "a component of the Executive Branch" under the Appointments Clause, *Intercollegiate*, 684 F.3d at 1341–42, out of the capacious statutory term "establishment in the executive branch."   The most natural reading of the statute's text is that "an establishment in the executive branch" under the FVRA includes the Executive Branch under the Constitution.   5 U.S.C. §§104(1), 105.

11

a.     Plaintiff raises a series of textual arguments to detract from the clear language of the FVRA.  She first argues that the Library of Congress is not "an establishment in the executive branch" because it is codified in Title 2 of the U.S. Code, and a few provisions in Title 2 label the Library of Congress a "legislative branch agency."  Pl.'s Mem. 11.  To begin, Congress has not enacted Title 2 into positive law.  *See* U.S. House of Representatives, Office of the Law Revision Counsel.[4]  The Library provisions' placement in Title 2 thus reflects a choice made by the codifiers, not by Congress.  In any event, Plaintiff's argument has already been rejected.  Although the Library of Congress performs numerous core executive functions, some of its activities are "exercised primarily for legislative purposes," *Intercollegiate*, 684 F.3d at 1341, so that the Library "could have been grouped code-wise under either the legislative or executive department," *Eltra Corp. v. Ringer*, 579 F.2d 294, 301 (4th Cir. 1978).  Therefore, for purposes of classifying the Library of Congress as "legislative" or "executive," it is "irrelevant that the Office of the Librarian of Congress is codified under the legislative branch or that it receives its appropriation as part of the legislative appropriation."  *Id*.  The fact that the Library is housed under Title 2 "cannot determine"—indeed, is irrelevant to—"whether a given function is executive or legislative."  *Id*.; *see also Kuretski v. Comm'r of Internal Revenue Serv.*, 755 F.3d 929, 939, 942 (D.C. Cir. 2014) (holding that the Tax Court is part of the Executive Branch, notwithstanding its status as an "Article I legislative court").

Equally uninformative are the handful of statutory provisions that refer to the Library of Congress as a "legislative branch agency."  Those provisions include the Library of Congress within definitions of various phrases, such as "offices and agencies of the legislative branch."  2

---

[4]  https://uscode.house.gov/codification/legislation.shtml.

U.S.C. § 181(b)(1); *see also* Pub. L. No. 115-414 § 2(a)(3), 132 Stat. 5430, 5430 (2019) (defining the term "agency" and designating the Library of Congress as a "legislative branch agenc[y]"); Pub. L. No. 103-110 § 122(b), 107 Stat. 1037, 1044 (1993) (similar).   Congress is free to define terms "as it pleases," *Mistretta v. United States*, 488 U.S. 361, 423 (1989) (Scalia, J., dissenting), and the fact that Congress grouped the Library of Congress into a definition of "legislative branch agencies" in a smattering of statutory provisions over the span of decades offers no insights into whether the Library of Congress is "in the executive branch" for purposes of the FVRA.   Besides, those provisions are unrelated to the FVRA or any interest relevant to the FVRA.   For example, 2 U.S.C. § 181(b)(1) applies to a "[p]rogram for exchange of information among legislative branch agencies," and lists the Library in the definition of "offices and agencies of the legislative branch." The fact that Congress wanted the Library to share information with the Clerk of the House and the Congressional Budget Office has no bearing on whether the Library is an "establishment in the executive branch" for purposes of the FVRA.

The same problem infects Plaintiff's reliance on the provision from the Ethics in Government Act.   *See* Pl.'s Mem. 10 (citing 5 U.S.C. § 13101(4), (11)).   That provision defines "Executive branch" to include "each Executive agency (as defined in section 105 of this title)," and "Legislative branch" to include the Library of Congress—but only for purposes of "*this subchapter*."   5 U.S.C. § 13101(4), (11) (emphasis added).   Again, Congress is free to adopt specialized definitions that govern only specific subsections or subparts.   That Congress chose in § 13101 to define the Library of Congress as part of the "Legislative branch" solely for that subchapter has no bearing to whether the Library of Congress is an "establishment in the executive branch" under 5 U.S.C. § 104(1) generally.

Plaintiff argues that Defendants' interpretation also would render superfluous several

13

provisions in Title 5 that list "independent establishment" or "Executive agency" separately from the Library of Congress.   Pl.'s Mem. 10–11.   Like all canons of statutory interpretation, the rule against superfluity "is not absolute," *Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004), as "Congress commonly writes federal statutes … in [ ] a belt and suspenders manner."   *Snyder v. United States*, 603 U.S. 1, 19 (2024); *see, e.g.*, *Atl. Richfield Co. v. Christian*, 590 U.S. 1, 14 n.5 (2020) (holding that "Congress employed a belt and suspenders approach to make sure that *all* CERCLA lawsuits are routed to federal court"); *Cook Inlet Tribal Council, Inc. v. Dotomain*, 10 F.4th 892, 896 (D.C. Cir. 2021) (rejecting surplusage argument and adopting "belt-and-suspenders" interpretation).

That is the case here.   Each of the cited provisions adopts a unique definition of the term "agency" that differs from the definition of "agency" under the APA to govern a specific section or chapter of Title 5.   Pl.'s Mem. 10–11; *see* 5 U.S.C. § 701(b).   That matters, because courts have long held that the Library of Congress is excluded from the APA's definition of "agency."   *See, e.g.*, *Ethnic Emps. of Libr. of Cong. v. Boorstin*, 751 F.2d 1405, 1416 n.15 (D.C. Cir. 1985) (citing *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 145 (1980)).   With that backdrop, it is hardly surprising that Congress would have felt the need to list the Library of Congress by name when drafting a definition of "agency" for a specific portion of Title 5.   No similar dynamic applies to the FVRA's definitions of the distinct statutory terms "Executive agency" and "independent establishment," especially in light of the Library's exercise of "important executive power" that places it "squarely" within "the Executive Branch."   *Med. Imaging*, 103 F.4th at 840 n.4; *see* 5 U.S.C. §§104(1), 105.   Even without the backdrop of precedent, Congress would have had every reason to adopt a belt-and-suspenders approach when drafting the specialized definitions of the term "agency" that Plaintiff cites, given the "Library's historical association with Congress" that ultimately led courts to conclude that the Library is part of "Congress" for purposes

14

of the exclusion from the APA's and FOIA's definitions of "agency."  *Id*.; *see* 5 U.S.C. § 701(b)(1)(A).[5]

The divided motion panel also relied on these definitions of "agency" to support its injunction pending appeal, but it did not grapple at all with the contextual factors that bear on the interpretation of 5 U.S.C. § 104.   More fundamentally, the panel's preliminary conclusion that the Library of Congress is likely not "an establishment in the executive branch" under 5 U.S.C. § 104, followed from its belief that the Library of Congress (and the Copyright Office) are within the *Legislative* Branch.  *See Perlmutter*, 2025 WL 2627965, at *1 (Pan, J., joined by Childs, J., concurring) ("The Register of Copyrights … is a unique position *within the Legislative Branch*" (emphasis added)); *id*. at *2 (describing the Library of Congress as "a part of the Legislative Branch"); *id*. at *4 (describing the Copyright Office as "housed within the Legislative Branch"); *id*. at *7–10 (similar).   That position is foreclosed by *Intercollegiate* and *Medical Imaging*.  *See Intercollegiate*, 684 F.3d at 1342 (holding that the "Library is undoubtedly a 'component of the Executive Branch'" (quoting *Free Enter. Fund*, 561 U.S. at 511)); *Med. Imaging*, 103 F.4th at 839, 840 n.4 (noting the "important executive power exercised by the Library" and reiterating that the Copyright Office exercises powers that are "generally associated in modern times with executive agencies"); *accord Perlmutter*, 2025 WL 2627965, at *10 (Walker, J., dissenting) (explaining that "[t]he Register of Copyrights exercises executive power in a host of ways").   The panel's preliminary view of the merits is not binding on this Court, and should not be persuasive either,

---

[5] Plaintiff highlights a Conference Report that refers to "the Copyright Office's role as a legislative branch agency."   Pl.'s Mem. 11 (quoting H.R. Conf. Rep. No. 105-796 at 77 (1998)).   She ignores the Report's statement—on the same page—that "[l]ike the Library of Congress, its parent agency, the Copyright Office is a hybrid entity that historically has performed both legislative *and executive* or administrative functions."   H.R. Conf. Rep. No. 105-796 at 77 (emphasis added) (quoting *Eltra Corp*., 579 F.2d 294).

given the panel's refusal to adhere to binding D.C. Circuit precedent.[6]

b.       The cases Plaintiff cites also do her no good.   In *Haddon v. Walters*, 43 F.3d 1488 (D.C. Cir. 1995), the D.C. Circuit held that the Executive Residence at the White House is not an "independent establishment" for purposes of 5 U.S.C. § 104, relying in part on a provision in Title 3 of the U.S. Code that references the Executive Residence and "independent establishment" separately.   *Haddon*, 43 F.3d at 1490.   But in matters of statutory interpretation, "context is king," *United States v. Hernandez*, 107 F.4th 965, 969 (11th Cir. 2024), and none of the factors that justified Congress's belt-and-suspenders approach to the Library of Congress in the context of drafting specialized definitions of "agency" apply to the Executive Residence.   The motion panel's reliance on *Haddon* ignored this basic principle of statutory construction.   *See Perlmutter*, 2025 WL 2627965, at *5 (Pan, J., joined by Childs, J., concurring).   Indeed, the fact that the President's personal residence is not covered by Title VII is not surprising, *see Haddon v. Walters*, 836 F. Supp. 1, 3 (D.D.C. 1993) (the case concerns "the President's authority to manage his own household"), and does not shed light on whether the Library is an "independent establishment."

Plaintiff also places immense weight on *Davis v. Billington*, 681 F.3d 377 (D.C. Cir. 2012), which is inapposite.   *Davis* is a *Bivens* case that held that the creation of the Civil Service Reform Act was a special factor precluding a *Bivens* remedy.   *Id*. at 383–86.   Nothing in *Davis* speaks to the FVRA's application to the Library of Congress or the President's ability to oversee the Executive Branch.   Plaintiff says *Davis* is controlling, but even the motion panel did not treat *Davis* as having resolved the statutory question presented here.   *See Perlmutter*, 2025 WL 2627965, at *6 (Pan, J.,

---

[6] Plaintiff has abandoned her argument that the Library of Congress is not an "independent establishment" because its enabling statute does not refer to it as such.   *Cf*. Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. 16 (ECF No. 24-2).

joined by Childs, J., concurring).

c.    Ultimately, Plaintiff has failed to muster any convincing textual or precedential basis for excluding a Department within the Executive Branch that contains an office performing quintessential executive powers from the statutory language "establishment in the executive branch."   5 U.S.C. § 104(1).   Instead, Plaintiff simply asserts that Congress would have used different language had it wished to bring the Library of Congress within the term "Executive agency."   *See* Pl.'s Mem. 12.   Congress can always write a statute differently.   But Plaintiff's desire for a differently worded statute is not a basis for departing from the plain meaning of the language Congress chose to adopt.

Nor is Plaintiff's speculation that Congress would not have "cut itself out of the process of identifying acting leadership for the Library."   Pl.'s Mem. 13.   That ignores the substantial control that *Congress* has given the President, currently and historically, over the Library.   *Supra*, pp. 3–4. Indeed, when Congress first created the position of Librarian in 1802, it provided "[t]hat a librarian [was] to be appointed by the President of the United States *solely*," without any congressional input. 1802 Act, § 3 (emphasis added).   Presidential control over the Library is by *congressional* design. For that reason, it is hardly surprising that Congress would have made the Library of Congress subject to the FVRA, just like the plethora of other Executive Branch entities whose principal officers are nominated by the President and confirmed by the Senate.   In all events, such broad appeals to Congressional motive cannot overcome the statute's text.   *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1261 (D.C. Cir. 2020).

17

### 3.    Alternatively, the President's designation of Mr. Blanche as acting Librarian is independently authorized by Article II of the Constitution.

Even if Plaintiff were correct that the Library of Congress is not an "Executive agency" under the FVRA, the President's designation of Mr. Blanche as acting Librarian was a lawful exercise of the President's Article II authority.

Article II of the Constitution provides that "the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203 (2020) (quoting U.S. Const. art. II, § 1, cl. 1; U.S. Const. art. II § 3).   As the Framers well understood, "if any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws." *Free Enter. Fund*, 561 U.S. at 492 (quoting 1 Annals of Cong. 463 (1789) (Madison, J.)).   Pursuant to the Appointments Clause, the President "may be assisted in carrying out" his duties "by officers nominated by him and confirmed by the Senate, as well as by other officers not appointed in that manner but whose work … must be directed and supervised by an officer who has been." *United States v. Arthrex, Inc.*, 594 U.S. 1, 6 (2021); U.S. Const. art. II, § 2, cl. 2.

The President's Article II duty to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, "grants him the concomitant authority to designate acting officers" to "keep the Government running." *Temporary Presidential Designation of Acting Board Members of Inter-American Foundation & U.S. African Development Foundation*, 49 Op. O.L.C. __, at 1, 11 (Mar. 14, 2025) (slip op.) ("*Temporary Presidential Designation*") (quoting *Legality of Designation of Certain Acting Officials by the Secretary of Energy*, 2 Op. O.L.C. 113, 117 (May 18, 1978)).   The President "functionally could not exercise his Take Care authority" if he were unable to "task a politically accountable official to fill … agencies' leadership positions in an acting capacity[.]" *Id.* at 9.   The authority also flows from the "structural safeguards" of political accountability reflected

18

in the Appointments Clause. *Edmond v. United States*, 520 U.S. 651, 659 (1997). The power to designate acting officials ensures that the President can "temporarily maintain the constitutional chain of supervision over an organization created by Congress to perform executive functions." *Temporary Presidential Designation*, 49 Op. O.L.C. __, at 1. Absent that "clear and effective chain of command, the public cannot 'determine on whom the blame or the punishment of a pernicious measure, or series of pernicious measures ought really to fall.'" *Free Enter. Fund*, 561 U.S. at 498 (quoting The Federalist No. 70, at 467 (J. Cooke ed. 1961) (A. Hamilton)).

Given those serious constitutional concerns, the Office of Legal Counsel in Administrations of both parties has long recognized that, "at least where no statute precludes it," Article II authorizes the President to designate acting officials to supervise agencies' operations temporarily. *Temporary Presidential Designation*, 49 Op. O.L.C. __, at 1, 4; *see also Authority of the President to Remove the Staff Director of the Civil Rights Commission & Appoint an Acting Staff Director*, 25 Op. O.L.C. 103, 103–04 (Mar. 30, 2001); Memorandum for Neil Eggleston, Associate Counsel to the President, from Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, *Re: Appointment of an Acting Staff Director of the United States Commission on Civil Rights* (Jan. 13, 1994) ("*Dellinger Memorandum*")[7]; *Power of the President to Designate Acting Member of the Federal Home Loan Bank Board*, 1 Op. O.L.C. 150, 151 (June 5, 1977) ("*Home Loan Bank Board*"). That longstanding and unbroken view of the Executive power is matched by equally longstanding historical practice. *See Home Loan Bank Board*, 1 Op. O.L.C. at 151 (noting a consistent "governmental practice going back more than a century"); *Dellinger Memorandum*, at 2–3 & n.3 (detailing historical practice dating to the Founding).

---

[7] https://www.justice.gov/olc/page/file/1311936/dl?inline.

The D.C. Circuit, too, has acknowledged in dicta the President's need for a limited authority to appoint acting principal officers—reasoning that "[i]t could be argued that the intersection of the President's constitutional obligation to 'take care that the laws be faithfully executed' and his obligation to appoint [a principal officer] 'with the Advice and Consent of the Senate' provides the President an implied power, in the absence of limiting legislation … to appoint an acting [principal officer] for a reasonable period of time before submitting the nomination of a new [principal officer] to the Senate." *Williams v. Phillips*, 482 F.2d 669, 670 (D.C. Cir. 1973).

Plaintiff does not dispute that the President lawfully exercised his Article II powers when he removed Ms. Hayden as Librarian of Congress. And she points to no statute prohibiting the President from designating an acting Librarian to replace her. Instead, Plaintiff's theory appears to be that the President may only designate acting officials if Congress has affirmatively granted him that authority by statute, such as through the FVRA. Pl.'s Mem. 14–15. That would upend the Constitution. The President "alone and unaided could not execute the laws. He must execute them by the assistance of subordinates." *Myers v. United States*, 272 U.S. 52, 117 (1926). That includes the power to *install* subordinates—subject in some cases to statutory restrictions on who is eligible to serve in particular roles. The FVRA is the most well-known such limitation, but it is "not a source, but rather a regulation" of the President's installation power. *Home Loan Bank Board*, 1 Op. O.L.C. at 151. Should that statute not apply here, as Plaintiff contends, all that means is that the President had greater authority over the appointment of an acting Librarian, not less.[8]

Plaintiff says that recognizing the President's Article II authority to designate an acting official, no matter how short the duration, would render the Recess Appointments Clause

---

[8] Plaintiff's argument that Defendants' theory renders the FVRA "meaningless" rests on the flawed premise that the FVRA is a grant, rather than a regulation, of executive authority. Pl.'s Mem. 15.

meaningless.  Pl.'s Mem. 14–15.  That is wrong.  The Recess Appointments Clause serves the very specific function of authorizing the President to fill a principal officer vacancy that arises "during the Recess" until "the End of [Congress's] next Session."  U.S. Const. art. II, § 2, cl. 3. It does not address the very different problem of principal officer vacancies that arise when Congress is in session.   The President's authority to address that problem by designating an acting officer to serve only "for a reasonable period of time" until the President can nominate and secure Senate confirmation of a replacement, *Williams*, 482 F.2d at 670, neither "obliterates" the Recess Appointments Clause, nor authorizes the President to appoint an acting official to serve "indefinitely."  *Cf.* Pl.'s Mem. 14–15.

Indeed, Plaintiff's argument proves too much.  After all, if the Recess Appointments Clause really provides the *exclusive* means by which the President may fill a principal-officer vacancy without the Senate's advice and consent, even on a temporarily basis, then Congress could not enact legislation, like the FVRA, which authorizes the President to designate acting officials, without Senate approval, when Congress is in session.   Plaintiff offers no constitutional theory for why *Congress* would hold such residual power but not the President.

Finally, Plaintiff relies on the D.C. Circuit's stay order in *Aviel v. Gor*, No. 25-5105, 2025 WL 1600446 (D.C. Cir. June 5, 2025), which concluded that the President does not have "unfettered discretion to designate acting principal officers."  *Id*. at *2 (Katsas, J., joined by Pillard, J., concurring).  That interlocutory decision did not definitively resolve this question, and, in any event, Defendants have not argued that the President has "unfettered discretion" to appoint an acting officer—he may do so, as *Williams* indicated, only "for a reasonable time" until a nominee has been submitted to the Senate for approval.   482 F.2d at 670.

*     *     *

The President lawfully designated Mr. Blanche as acting Librarian and, as Plaintiff concedes, Mr. Blanche's appointment of "Mr. Perkins to replace Ms. Perlmutter as the acting Register of Copyrights and the Director of the U.S. Copyright Office … served as Mr. Blanche's ratification of the President's decision to remove Ms. Perlmutter from her position."   Compl. ¶ 23. Nothing more is needed to hold that Plaintiff's removal was lawful.

**B.      If the President lacks the authority to designate an acting Librarian to supervise the Register of Copyrights, he has the authority to remove the Register directly.**

If Plaintiff were correct that the President lacked the authority to designate Mr. Blanche as acting Librarian, the Court still should deny Plaintiff's motion for summary judgment, because the President had the authority under Article II to terminate the Register of Copyrights directly.

"[A]s a general matter," the executive power encompasses "the authority to remove those who assist [the President] in carrying out his duties."   *Free Enter. Fund*, 561 U.S. at 513–14; *cf.*, *Collins v. Yellen*, 594 U.S. 220, 250 (2021) (finding acting Department Head to be removable at will even when the Department Head otherwise had statutory removal protections).   Without such power, the President would be unable to control those who aid him in executing the laws and "could not be held fully accountable for discharging his own responsibilities."   *Free Enter. Fund*, 561 U.S. at 514.   For nearly a century, the Supreme Court has reaffirmed "[t]he President's power to remove—and thus supervise—those who wield executive power on his behalf."   *Seila Law*, 591 U.S. at 204.

Normally, the President exercises supervisory authority over inferior officers—like the Register of Copyrights—by exercising control over the principal officer (here, the Librarian of Congress).   No one doubts, for example, that the President could direct the Librarian of Congress

22

to remove the Register of Copyrights. *See Nat'l Treasury Emps. Union v. Reagan*, 663 F.2d 239, 247–48 (D.C. Cir. 1981). But that normal approach is not absolute. If the President is *unable* to appoint an acting officer upon removal of the principal officer, then Article II supplies the background rule, and the President has the constitutional authority and obligation to oversee and supervise the inferior officer until a new principal officer is confirmed by the Senate. Although the Supreme Court has not suggested that "a principal officer must be able to compel [an inferior officer] to take an affirmative act," the President or a principal officer must at a minimum have the authority "to review and block" the inferior officer's actions. *Kennedy v. Braidwood Management, Inc.*, 145 S. Ct. 2427, 2451–52 (2025). The Constitution does not confer autonomous status on executive entities that lack component heads.

Here, the President exercised his Article II authority to remove the Librarian of Congress. If Plaintiff is correct that the President cannot designate an acting Librarian, then the President's supervisory and removal powers must extend to the *inferior* officers in the Library of Congress—particularly inferior officers like the Register of Copyrights that wield significant executive power. Only the President is "charged specifically to take care that [the laws] be faithfully executed" and the "reasonable implication" is that "he should select those who were to act for him under his direction in the execution of the laws." *Myers*, 272 U.S. at 117. Saddling the President with a Register of Copyrights over whom he has no say would give the Senate an effective veto over the "President's power to remove—and thus supervise—those who wield executive power on his behalf," which is precisely the type of infringement on Article II that the Supreme Court rejected "in the landmark decision [of] *Myers*." *Seila Law*, 591 U.S. at 204; *see Myers*, 272 U.S. at 161 (Congress lacks "the power to remove or the right to participate in the exercise of that power"). The President must have the authority to remove the leadership of an agency because it is "'only

23

the authority that can remove' such officials that they 'must fear and, in the performance of [their] functions, obey.'"  *Seila Law*, 591 U.S. at 213–14 (quoting *Bowsher v. Synar*, 478 U.S. 714, 726 (1986)).   If the President cannot designate an acting Librarian to remove Plaintiff from serving as Register of Copyrights—as Plaintiff argues—then the President retains the authority to remove Plaintiff himself.   *See Aviel*, 2025 WL 1600446, at *3–5 (Rao, J., dissenting).[9]

None of Plaintiff's arguments undermines the President's Article II power in this narrow context.   She says that "the Appointments Clause forecloses any claim of background presidential authority to remove inferior officers who were not appointed by the President" because it authorizes Congress to vest the appointment of inferior officers—like the Register of Copyrights—in the "Heads of Departments."   Pl.'s Mem. 5–6, 16 (citing U.S. Const. art. II, § 2, cl. 2).   That just begs the question of who may *remove* those inferior officers.   She insists it must be only the principal officer, otherwise "the Appointments Clause's conferral of authority" on principal officers to appoint inferior officers "would be meaningless."   *Id.* at 16.   But while that presidential control over inferior officers may normally be exercised indirectly through principal officers, that default mechanism of presidential supervision breaks down in the absence of a principal officer over whom the President can exercise control.   *Supra*, pp. 22–23; *Aviel*, 2025 WL 1600446, at *3–5 (Rao, J., dissenting).   Plaintiff's theory would effectively allow her to exercise executive power without any supervision while the office of Librarian remains vacant, undermining "the chain of political accountability that was central to the Framers' design of the Appointments Clause."   *Kennedy*, 145 S. Ct. at 2461.

---

[9]  The absence of a principal officer between the President and Plaintiff—assuming, for purposes of this alternative argument, that Mr. Blanche was not properly designated as acting Librarian—is what distinguishes this case from the Saturday Night Massacre.   Pl.'s Mem. 16 n.3.

Plaintiff's other objections are even weaker.    She says the President cannot have Article II removal authority because he sought to remove her before Mr. Blanche acted.    Pl.'s Mem. 16. That has no legal significance.    If the President lacked the authority to designate an acting Librarian, as Plaintiff argues, then Mr. Blanche's actions had no effect—leaving the President alone to exercise executive oversight over Plaintiff, including removal.    Plaintiff says this is "worrisome" because President could "circumvent the general restriction on firing inferior officers by simply firing the principal officers first."    *Id.* at 17 (quoting *Aviel v. Gor*, No. Civ. A. No. 25-778, 2025 WL 2374618, at *28 (D.D.C. Aug. 14, 2025)).    Of course, the President can achieve the same outcome by ordering the *principal* officer to fire the inferior officer.    The Appointments Clause is not a tool for insulating inferior officers from the President's control.

The internal Library of Congress regulations Plaintiff cites do not eliminate the constitutional dilemma.    Pl.'s Mem. 17.    A department of the Executive Branch cannot create its own internal governance regime to insulate itself from presidential control.    Nor is it even clear the regulations apply here, as they apply only "in the Librarian's absence or temporary unavailability." *See* LCR 1-120(1) (ECF No. 7-1).    Having been removed from office, the former Librarian is not "temporarily unavailable." Nor is she "absent"—a term that likewise suggests an eventual return. *See, e.g.*, Webster's Encyclopedic Unabridged Dictionary of the English Language 5 (1989) ("not in a certain place in certain place at a given time; away; missing; not present").

Finally, Plaintiff again relies on the D.C. Circuit's order in *Aviel*, in which a divided panel concluded that Article II does not authorize the President to remove an inferior officer, even where the principal officer's position is vacant.    *Aviel*, 2025 WL 1600446, at *1 (Katsas, J., joined by Pillard, J., concurring); *see* Pl.'s Mem. 16.    Again, that decision is not binding and merely reflects the motion panel's preliminary assessment of this constitutional question.    As Judge Rao

25

explained, although "[t]he President rarely has cause to turn his attention to the removal of an inferior officer because such officers are directly controlled by principal officers in the chain of command," "when that chain of command is broken … '[t]he Constitution requires that such officials remain dependent on the President' and subject to his control." *Aviel*, 2025 WL 1600446, at *5 (Rao, J., dissenting) (quoting *Seila Law*, 591 U.S. at 238).   So too here.

## II.    Plaintiff is not entitled to reinstatement or a permanent injunction.

As explained above, Plaintiff was lawfully removed from serving as Register of Copyrights. But even if Plaintiff were to prevail on the merits, the Court should deny the expansive relief that Plaintiff seeks in the form of reinstatement and a permanent injunction.

### A.    Plaintiff is not entitled to reinstatement.

Plaintiff asks the Court to enjoin all Defendants from "removing Ms. Perlmutter from her position" or "treating her as having been removed" from serving as Register of Copyrights.   *See* Proposed Order (ECF 49-6).[10]   The Court cannot order this relief to the extent that she seeks injunctive (and declaratory) relief against the President himself.   For a century and a half, the Supreme Court has maintained that courts, "in general," have "no jurisdiction of a bill to enjoin the President in the performance of his official duties."   *Franklin v. Massachusetts*, 505 U.S. 788, 802–03 (1992) (plurality opinion) (quoting *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1866)); *see also id.* at 826–27 (Scalia, J., concurring).   A "District Court's grant of injunctive relief against the President himself is extraordinary, and should … raise[] judicial eyebrows."   *Id.* at 802 (plurality opinion).   "[S]imilar considerations regarding a court's power to issue relief against the

---

[10] Plaintiff says she "does not seek reinstatement here," Pl.'s Mem. 18, but an alleged unlawful removal is still a removal, and Plaintiff represents that Defendants' actions have made her "unable" to perform the statutory responsibilities of the Register of Copyrights.   Perlmutter Decl. ¶ 14.

President himself apply to [a] request for a declaratory judgment." *Swan v. Clinton*, 100 F.3d 973, 976 n.1 (D.C. Cir. 1996). Granting Plaintiff's requested relief would "at best create[] an unseemly appearance of constitutional tension and at worst risk[] a violation of the constitutional separation of powers." *Id*. at 978.

An injunction that restrains the President's subordinates does not solve the problem. *Cf*. Pl.'s Mem. 24 n.6. A federal court may grant only those equitable remedies that were "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999). Reinstatement of a public official is not such a remedy. "It is … well settled that a court of equity has no jurisdiction over the appointment and removal of public officers." *In re Sawyer*, 124 U.S. 200, 212 (1888). Instead, "[t]he jurisdiction to determine the title to a public office belongs exclusively to the courts of law." *Id*.; *see Slaughter v. Trump*, No. 25-5261, 2025 WL 2551247, at *10 (D.C. Cir. Sept. 2, 2025) (Rao, J., dissenting). Thus, "the power of a court of equity to restrain by injunction the removal of a [public] officer has been denied in many well-considered cases." *Sawyer*, 124 U.S. at 212; *see, e.g., Baker v. Carr*, 369 U.S. 186, 231 (1962) (decisions that "held that federal equity power could not be exercised to enjoin a state proceeding to remove a public officer" or that "withheld federal equity from staying removal of a federal officer" reflect "a traditional limit upon equity jurisdiction[]"); *Walton v. House of Representatives of the State of Okla.*, 265 U.S. 487, 490 (1924) ("A court of equity has no jurisdiction over the appointment and removal of public officers."); *Harkrader v. Wadley*, 172 U.S. 148, 165 (1898) ("[T]o sustain a bill in equity to restrain … the removal of public officers, is to invade the domain of the courts of common law, or of the executive and administrative department of the government."); *White v. Berry*, 171 U.S. 366, 377 (1898) ("[A] court of equity will not, by injunction, restrain an executive officer from making a wrongful removal of a subordinate

appointee, nor restrain the appointment of another.") (citation omitted); *accord Bessent v. Dellinger*, 604 U.S. ---, 145 S. Ct. 515, 517 (2025) (mem.) (Gorsuch, J., dissenting) (explaining that, "by the 1880s this Court considered it 'well settled that a court of equity has no jurisdiction over the appointment and removal of public officers'") (quoting *Sawyer*, 124 U.S. at 212), *subsequent determination*, 145 S. Ct. 1326 (2025).

Plaintiff relies on *Severino v. Biden*, 71 F.4th 1038 (D.C. Cir. 2023), to argue that reinstatement is an available remedy.  Pl.'s Mem. 18.  That decision was issued at the motion-to-dismiss stage and addressed Article III standing; it did not grant any relief, much less reinstatement. *Severino*, 71 F.4th at 1042–43.  Not only that, *Severino* acknowledged significant questions about what relief was available, including whether such relief would meaningfully redress the injury.  *Id.* at 1042 (explaining that the court "need not confront th[e] difficult question" of "whether an injunction ordering a presidential appointment would be available or appropriate").  Otherwise, Plaintiff relies on the unpublished stay decision in *Harris v. Bessent*, No. 25-5037, 2025 WL 1021435 (D.C. Cir. Apr. 7, 2025), which contains a single, unreasoned sentence on this issue.  *See id.* at *2.

### B.    Plaintiff is not entitled to a permanent injunction.

To establish that she is entitled to the "drastic and extraordinary" remedy of a permanent injunction," *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010), Plaintiff must demonstrate: "(1) that [she] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendants, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.*, 64 F.4th 1354, 1364 (D.C. Cir. 2023) (quoting

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).   The decision to grant or deny "permanent injunctive relief is an act of equitable discretion by the district court[.]"   *eBay*, 547 U.S. at 391 (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–13 (1982)).   The first two factors of the permanent injunction analysis "are often considered together."   *LeBlanc v. U.S. Priv. & C.L. Oversight Bd.*, 784 F. Supp. 3d 1, 38 (D.D.C. May 21, 2025) (citation omitted).

The "high standard for irreparable injury," *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)—even higher here as Plaintiff has requested a mandatory injunction that would alter the status quo, *Phillip v. Fairfield Univ.*, 118 F.3d 131, 133 (2d Cir. 1997)—requires a two-fold showing.   First, because an irreparable injury "must be both certain and great," Plaintiff "must show '[t]he injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.'"   *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (emphasis omitted) (quoting *Wis. Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985)).   The mere "possibility of irreparable harm" is not sufficient to satisfy this burden.   *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).   Second, "the injury must be beyond remediation."   *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.

### 1.    A permanent injunction cannot be awarded absent extraordinary circumstances.

In the context of an employee's discharge, the Supreme Court has been clear that the requirements for injunctive relief, including irreparable injury, are not satisfied absent a "genuinely extraordinary situation," *Sampson*, 415 U.S. at 92 n.68, and "[c]ases are legion holding that loss of employment does not constitute irreparable injury," *English v. Trump*, 279 F. Supp. 3d 307, 334 (D.D.C. 2018) (quoting *Farris v. Rice*, 453 F. Supp. 2d 76, 79–80 (D.D.C. 2006)).

29

Plaintiff acknowledges that this Court has already determined that *preliminary* injunctive relief may be granted in the context of the discharge from government employment only in a "genuinely extraordinary situation." *Sampson*, 415 U.S. at 92 n.68; *see* Pl.'s Mem. 18; PI Mem. Op. 3–4 & n.1. She now argues, however, that "*Sampson* does not apply at the summary-judgment stage," because that case reviewed a preliminary injunction. Pl.'s Mem. 18. That makes no difference. "The standard for a preliminary injunction is essentially the same as for a permanent injunction," except that the latter requires a showing of actual success on the merits. *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987). Plaintiff cites no case holding (or even suggesting) that *Sampson*'s "extraordinary situation" standard is inapplicable to a request for a permanent injunction. In fact, virtually all the district court decisions she cites that entered a permanent injunction explicitly applied *Sampson*. *See Grundmann v. Trump*, 770 F. Supp. 3d 166, 188 (D.D.C. 2025); *LeBlanc*, 784 F. Supp. 3d at 41–43; *Harris v. Bessent*, 775 F. Supp. 3d 164, 181 (D.D.C. 2025); *Trump v. Slaughter*, ---F. Supp. 3d---, 2025 WL 1984396, at *17 (D.D.C. July 17, 2025). The motion panel in this case did as well. *Perlmutter*, 2025 WL 2627965, at *1, *4–7 (Pan, J., joined by Childs, J., concurring).

Those same cases refute Plaintiff's assertion—made now for the first time—that *Sampson*'s "extraordinary situation" standard for injunctive relief is limited to circumstances "where there is an administrative scheme in place to resolve the personnel dispute at issue." Pl.'s Mem. 18–19. Although Plaintiff cites dicta from several D.C. Circuit decisions, she concedes that the Circuit has never adopted her reading of *Sampson*. *See id*. at 19 (citing *Taylor v. Resol. Tr. Corp.*, 56 F.3d 1497, 1505 n.1 (D.C. Cir. 1995)). And she cites no case from this District that has adopted her cramped view of *Sampson*.

### 2.    Plaintiff has failed to show irreparable harm.

Plaintiff repeats the same theories of irreparable harm that this Court already rejected in the context of its preliminary injunction decision: (1) deprivation of her "statutory right to function" as Register of Copyrights; (2) the "impediment to her ability to discharge her ongoing statutory responsibilities as the lawful Register of Copyrights"; and (3) harms to the "Library's and the Copyright Office's ability to perform their assigned functions as intended by Congress."  Pl.'s Mem. 20–23; *see* PI Mem. Op. 3–15.   The same analysis applies here.

***Statutory Right to Function:***  Plaintiff first argues that she will be irreparably harmed through an "inability to lead and direct the important work of the Copyright Office at a critical juncture" and perform responsibilities of the Copyright Director—*i.e.*, the "loss of her 'statutory right to function.'"  Pl.'s Mem. 21–22.   This is not a cognizable theory of irreparable harm.  *See* PI Mem. Op. 4–12.   Plaintiff does not suffer any irreparable harm simply by not being able to occupy a certain office.   Statutory obligations are vested in the office, not the individual.   The notion that public officials "have a separate private right, akin to a property interest, in the powers of their offices" is "alien to the concept of a republican form of government."  *Barnes v. Kline*, 759 F.2d 21, 50 (D.C. Cir. 1984) (Bork, J., dissenting), *judgment vacated sub nom. Burke v. Barnes*, 479 U.S. 361 (1987).   Any harm to Plaintiff can be remediated through "remedies available at law, such as monetary [relief]" in the form of back pay.  *Anatol Zukerman*, 64 F.4th at 1364 (quoting *eBay Inc.*, 547 U.S. at 391).   As the Supreme Court held in the course of staying two permanent injunctions against removals of the members of the National Labor Relations Board and the Merit Systems Protection Board, "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty."  *Wilcox*, 145 S. Ct. at 1415 (citing *Trump v. Int'l*

31

*Refugee Assistance Project*, 582 U.S. 571, 580 (2017)); *see Boyle*, 145 S. Ct. at 2654 (same); *accord* PI Mem. Op. 9.

Even if an individual could have a cognizable interest in occupying a governmental position, this case is nothing like those district court cases Plaintiff cites that have embraced such a theory. *See* Pl.'s Mem. 20–21.   Most of the cases Plaintiff cites found that a loss of a "statutory right to function" was irreparable injury because the office required Senate confirmation and was housed in a multi-member independent agency.   *See Grundmann*, 770 F. Supp. 3d at 188 (removed Federal Labor Relations Authority member was deprived of her "statutory right to function" because the plaintiff was "a Senate-confirmed principal officer" in "an agency that both Congress and the President in their considered judgment created to be independent and free from political meddling," with for-cause removal protections (emphasis omitted)); *LeBlanc*, 784 F. Supp. 3d at 42 & n.34 (finding irreparable harm because "plaintiffs are appointed by the President, with the advice and consent of the Senate, to a nonpartisan, multimember board of experts," with for-cause removal protections); *Wilcox v. Trump*, 775 F. Supp. 3d 215, 236 (D.D.C. 2025) (finding irreparable harm where "plaintiff has been deprived of a presidentially appointed and congressionally confirmed position of high importance, and both she and … the NLRB have been deprived of the ability to carry out their congressional mandate" and there has been a "loss of the office's independence," whose members had for-cause removal protections); *Harris*, 775 F. Supp. 3d at 186 (irreparable harm because "Harris is a member of the board of an independent agency, was appointed by the President and confirmed by the Senate, and enjoys tenure protections to preserve her independence"); *Slaughter*, 2025 WL 1984396, at *18 ("Being deprived of employment in the normal course does not compare to being removed from a Presidentially appointed, Senate-confirmed, high-ranking, public-servant role."); *U.S. Institute of Peace v. Jackson*, 783 F. Supp. 3d

32

316, 378 (D.D.C. 2025) ("Plaintiffs have been deprived of a presidentially appointed and congressionally confirmed position of high importance, eliminating their ability to carry out their congressional mandate in furthering the development of peace studies").

By contrast, the Register of Copyrights is appointed by the Librarian and does not require Senate confirmation.  17 U.S.C. § 701(a).  The Copyright Office is unlike the "independent" or "nonpartisan" entities at issue in the cases Plaintiff cites, which Congress sought to shield from political influence using multi-member boards, removal protections, or both.  *See* PI Mem. Op. 8 n.2.  Serving in a Senate-confirmed position "is different in caliber and kind from working as a Library of Congress employee."  *Slaughter*, 2025 WL 1984396, at *18.

The remainder of the cases Plaintiff cites found irreparable harm on a statutory-right-to-function theory because the organization was at risk of being fundamentally altered.  In *Berry v. Reagan*, Civ. A. No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983), *vacated as moot*, 732 F.2d 949 (D.C. Cir. 1983), the district court deemed harm from removal to be irreparable because the agency itself was, by law, set to terminate within a few weeks.  *See id*. at *5.  The same is true of *Aviel v. Gor*, 780 F. Supp. 3d 1 (D.D.C. 2025), where the plaintiff "persuasively argue[d] that, absent immediate injunctive relief, there would be no [Inter-American Foundation] left for her to lead" due to a planned "dramatic reduction" in the entities staff and responsibilities.  *Id*. at 14. This theory of irreparable harm, however, rests on the mistaken assumption "that alleged injury to the [agency] [is] identical to alleged injury to the plaintiff."  PI Mem. Op. 6.  "[I]njuries to third parties are not a basis to find irreparable harm."  *Id*. at 13; *see English*, 279 F. Supp. 3d at 335 (a plaintiff "must demonstrate the likelihood of irreparable harm *to her* if an injunction does not issue" (emphasis in original)); *Brehm v. Marocco*, 2025 U.S. Dist. LEXIS 71326, at *6–7 (D.D.C. Mar. 11, 2025) (plaintiff "has not identified any cognizable irreparable harm to *himself* as opposed to

potential harm to the agency and its partners").  Plaintiff has (still) offered no evidence that the Library of Congress or Copyright Office will experience *any* changes—much less fundamental changes like those alleged in *Berry* and *Aviel*—and, in any event, she cannot piggyback on speculative institutional harms to secure a permanent injunction for herself.

Finally, Plaintiff says her inability to perform her statutory function is irreparable because she is unable to lead the office "at a critical juncture."  Pl.'s Mem. 21.  Again, Plaintiff has no right to serve in her office at all—much less at a particular point in time.  *Supra*, p. 31.  Under that theory *every* removed officer (or employee) could claim irreparable injury because he or she is *presently* being prevented from occupying the desired office, but that sweeping theory of injury is inconsistent with the long line of cases holding that loss of employment is not irreparable harm absent a "genuinely extraordinary situation."  *Sampson*, 415 U.S. at 92 n.68.  That theory is also incompatible with the D.C. Circuit's decision in *Dellinger v. Bessent*, No. 25-5052, 2025 WL 887518 (D.C. Cir. Mar. 10, 2025), which rejected the argument that merely "remain[ing] out of office" is *per se* irreparable harm.  *Id*. at *4.

The motion panel's decision does not change the outcome.  The panel acknowledged that Plaintiff cannot obtain an injunction absent an "extraordinary situation" and that deprivation of a statutory right to function "does not, in itself, constitute *irreparable* harm."  *Perlmutter*, 2025 WL 2627965, at *6–7 (Pan, J., joined by Childs, J., concurring).  Nonetheless, the motion panel thought Plaintiff's removal "extraordinary" under *Sampson* because the Register is in the Legislative Branch and so Plaintiff's removal "violate[d] the separation of powers."  *Id*. at *7; *see also id*. at *8 (describing the Register of Copyrights as "a Legislative Branch official").  As explained earlier, that position is incompatible with the binding decisions in *Intercollegiate* and *Medical Imaging*. The Librarian of Congress is appointed by the President, *see* 17 U.S.C. § 701(a), and the Library of

34

Congress is "undoubtedly a 'component of the Executive Branch.'" *Intercollegiate*, 684 F.3d at 1341–42 (quoting *Free Enter. Fund*, 561 U.S. at 511). The Copyright Office is housed within the Library of Congress, and the Register of Copyrights is appointed by the Librarian. *Supra*, p. 4. It cannot possibly be that an office within an *executive* department is in "the Legislative Branch," and an officer appointed by a principal *executive* officer is "a Legislative Branch official." Nor did the motion panel pause to consider the implications of holding that an officer who wields significant executive power—as the Copyright Director does, *supra*, pp. 4, 9–10—is housed in the Legislative Branch. The Court should not follow reasoning that is irreconcilable with D.C. Circuit precedent.

  ***Inability to Perform Statutory Duties:*** Plaintiff next claims that she will be irreparably harmed by "the concomitant impediment to her ability to discharge her ongoing statutory responsibilities as the lawful Register of Copyrights." Pl.'s Mem. 22. As this Court already recognized, "[t]here is little if any difference between this theory of harm" and the "statutory right to function" theory—both are ways of claiming that she is suffering irreparable harm because she cannot perform the job of Register of Copyrights." PI Mem. Op. 12–13. The Court should reject this theory of irreparable harm for the reasons already given.

  ***Institutional Harms:*** Plaintiff's remaining theory of harm posits institutional harms to the Library and to Congress—not to *herself*. Pl.'s Mem. 22–23. She says that "Defendants' efforts to oust Perlmutter threaten the Library's and the Copyright Office's ability to perform their assigned functions as intended by Congress," and constitute an "assault on the institutional independence and integrity of the Library and Copyright Office." *Id*. at 22; *see also id*. at 23 (asserting "separation-of-powers issues" and claiming that the "security of the copyright registration system and the value of the deposited works" will be "jeopardize[d]"); Perlmutter Decl. ¶¶ 11, 16 (postulating "confusion among Library staff, copyright stakeholders, and the public" and loss of

35

"credibility").   Once again, Plaintiff "cannot rely on purported institutional harms to the Library or Copyright Office to show irreparable harm to her."   PI Mem. Op. 14; *see English*, 279 F. Supp. 3d at 335 (a plaintiff "must demonstrate the likelihood of irreparable harm *to her* if an injunction does not issue" (emphasis in original)); *supra*, p. 33.   Plaintiff's claim that her removal is "inextricable" (Pl.'s Mem. 22) from these purported institutional harms does not transform those harms into her own.

Plaintiff's concerns of separation-of-powers harms to Congress are legally defective for the same reason.   *Cf.* Pl.'s Mem. 23.   They are also unconvincing even on their own terms.   Plaintiff objects that "the Copyright Office cannot perform its statutory role as a neutral advisor to Congress if an executive branch official controls the Library of Congress's operations."   *Id.*   That cannot possibly be true—Congress put the President in charge of the Library of Congress by giving him the power to appoint (and remove) the Librarian.   2 U.S.C. § 136-1(a).   As a presidential appointee, the Librarian and her own appointees—including the Register of Copyrights—are already subject to the control of the Executive Branch.   Otherwise, Plaintiff hypothesizes that Defendants will "place confidential congressional correspondence and work product at risk" or "jeopardize the security of the copyright registration system and the value of the deposited works," Pl.'s Mem. 23—but she offers no evidence to back up this speculation, just as she did not before. *See* PI Mem. Op. 14–15.

*     *     *

Plaintiff has thus failed to show that she will suffer irreparable injury that cannot be remedied by back pay.   She objects that if monetary damages, like back pay, were "sufficient redress," then this would allow the President to fire the Senate Parliamentarian or a U.S. District Judge without facing an injunction.   Pl.'s Mem. 23.   Not so.   The Register of Copyrights is an

36

Executive Branch officer, and Plaintiff was removed by the President and an Executive Branch principal officer. That scenario has no relevance to those Plaintiff hypothesizes, in which an officer of the Executive Branch purports to remove an official serving in one of the other branches of government.

### 3. The balance of harms and public interest weigh strongly against a permanent injunction.

The balance of harms and public interest also weigh decisively against a permanent injunction. The last two factors merge when the government is the opposing party. *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019). When balancing the equities, the Court must "consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co.*, 480 U.S. at 542). Because the Copyright Office is within the Executive Branch and wields important executive powers, *supra*, pp. 4, 9–10, an injunction reinstating the former Register of Copyrights would raise grave separation-of-powers concerns and work a significant irreparable harm to the Executive. The President cannot be compelled to retain the services of an executive officer whom he no longer believes should be entrusted with the exercise of that power. Such a remedy would undermine the accountability of the Executive Branch instilled by the Constitution. The President "is elected by the entire Nation" and *all* executive officers "remain[] subject to the ongoing supervision and control of the elected President." *Seila Law*, 591 U.S. at 224. As the Supreme Court held in the course of staying two permanent injunctions against removals of the members of the National Labor Relations Board and the Merit Systems Protection Board, "[t]he Government … faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her

37

statutory duty." *Wilcox*, 145 S. Ct. at 1415 (citation omitted); *see also Boyle*, 145 S. Ct. at 2564 (same).

The motion panel reached the opposite conclusion based on the same erroneous premise on which it based its merits and irreparable harm rationales—that "Perlmutter leads an agency that is housed in the Legislative Branch" and does "not exercise considerable or substantial executive power." *Perlmutter*, 2025 WL 2627965, at *8–9. Those conclusions are incorrect. *Supra*, pp. 4, 9–10. As Judge Walker explained, "[t]he Register of Copyrights exercises executive power in a host of ways," and "[r]ecently, repeatedly, and unequivocally, the Supreme Court has stayed lower-court injunctions that barred the President from removing officers exercising executive power." *Perlmutter*, 2025 WL 2627965, at *10, *11 (Walker, J., dissenting). The motion panel's order "repeat[ed] the mistake that *Wilcox* and *Boyle* twice corrected." *Id.* at *11 (Walker, J. dissenting).

> **4.      Even if injunctive relief were available, the Court should not enter the broad injunction Plaintiff requests.**

Even if the Court were to conclude that an injunction is available, it should not enter the expansive injunctive relief that Plaintiff is seeking. It is settled that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*." *CASA*, 606 U.S. at 852 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). Assuming *any* injunctive relief were available here, the most the Court could order would be an injunction directed at enabling Plaintiff to perform the duties of her former post. *See* Proposed Order at 1 (ECF No. 49-6). That would provide Plaintiff "complete relief." *CASA*, 606 U.S. at 851.

The Court *could not* enter the additional injunctive relief Plaintiff seeks directed at Mr. Blanche—(1) "enjoin[ing] [Mr. Blanche] from serving as 'acting' Librarian of Congress"; (2) enjoining Defendants from "appoint[ing] Todd Blanche or any other individual as an 'acting'

Librarian of Congress"; and (3) directing that "*any* actions taken by Todd Blanche in his role as 'acting' Librarian of Congress … are void *ab initio* and without any legal effect."   Proposed Order at 2 (ECF No. 49-6) (emphasis added).   That injunction would not remedy any harm *to Plaintiff* and is not necessary to provide her "complete relief."   She can serve as Register of Copyrights with Mr. Blanche serving as acting Librarian, so long as Mr. Blanche does not seek to "remove [Plaintiff] from her position" or "obstruct[] her ability to carry out that position."   *Id*. at 1.

Ultimately, the injunctive relief Plaintiff seeks against Mr. Blanche would only benefit Robert R. Newlen, whom Plaintiff contends is the true acting Librarian.   Stmt. of Material Facts Not in Dispute ¶ 3 (ECF No. 49-2).   But Mr. Newlen is not a party to this litigation, and Plaintiff cannot use this lawsuit to secure injunctive relief to non-parties.   *CASA*, 606 U.S. at 851–53. "Extending the injunction to cover [Mr. Newlan] would not render *her* relief any more complete." *Id*. at 853.   To the extent Plaintiff attempts to argue that she will be injured by being supervised by an acting Librarian she believes to have been unlawfully designated, that harm is not *irreparable—i.e.*, "both certain and great"—*Chaplaincy of Full Gospel Churches*, 454 F.3d at 297—and Plaintiff has made no argument that it is.   Indeed, even the motion panel's injunction was limited solely to "enjoin[ing]" Defendants "from interfering with [Plaintiff's] functioning as Register of Copyrights," Pl.'s Mem. 2, and does not prohibit Mr. Blanche continuing service as acting Librarian.

### C.    Even assuming that Plaintiff is entitled to declaratory relief, that relief must be limited to a declaration that her removal was unlawful.

Because a declaratory-judgment suit is "essentially an equitable cause of action," "the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment."   *Samuels v. Mackell*, 401 U.S. 66, 70, 73 (1971) (citation omitted).   Here, that principle precludes declaratory

39

relief that would effectively reinstate Plaintiff as Register of Copyrights.   For the same reasons that reinstatement by injunction is beyond the scope of this Court's equitable authority, *supra*, pp. 26–27, reinstatement by declaratory relief is unavailable.   *See Macauley v. Waterman S.S. Corp.*, 327 U.S. 540, 545 n.4 (1946) ("The same principles which justified dismissal of the cause insofar as it sought injunction justified denial of the prayer for a declaratory judgment."); *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 300 (1943) (The Declaratory Judgment Act "only provided a new form of procedure for the adjudication of rights in conformity" with "established equitable principles.").

## CONCLUSION

The Court should deny Plaintiff's motion for summary judgment and grant Defendants' cross-motion for summary judgment.

Dated:   September 22, 2025                Respectfully submitted,

                                          BRETT A. SHUMATE
                                          Assistant Attorney General

                                          YAAKOV M. ROTH
                                          Principal Deputy Assistant Attorney General

                                          ERIC J. HAMILTON
                                          Deputy Assistant Attorney General

                                          CHRISTOPHER R. HALL
                                          Assistant Branch Director
                                          Federal Programs Branch

                                          */s/ Benjamin Hayes*
                                          BENJAMIN HAYES
                                          Senior Counsel to the Assistant Attorney General,
                                          Civil Division
                                          U.S. Department of Justice
                                          950 Pennsylvania Avenue, NW
                                          Washington, DC 20530
                                          (202) 514-8214
                                          Benjamin.T.Hayes@usdoj.gov


                                          *Counsel for Defendants*


41