# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHIRA PERLMUTTER,

     *Plaintiff*,

v.

TODD BLANCHE *et al.*,

     *Defendants*.

Case No. 25-cv-01659-TJK

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ......................................................................................................... 1

RECENT DEVELOPMENTS ........................................................................................ 1

ARGUMENT ............................................................................................................... 3

I.      The President Lacks Statutory Authority to Remove Ms. Perlmutter Directly ................ 3

II.     The President Lacks Statutory Authority to Appoint Mr. Blanche, Who Therefore Does Not Possess the Authority to Remove Ms. Perlmutter ................................................ 4

III.    The President Does Not Have Inherent Constitutional Authority to Overcome His Lack of Statutory Authority ................................................................. 8

      A.     The President does not have inherent Article II authority to appoint Mr. Blanche ................................................................. 8

      B.     The President does not have inherent Article II authority to remove Ms. Perlmutter directly ................................................................. 12

IV.    The Court Should Grant Ms. Perlmutter the Requested Relief ........................................ 16

      A.     Ms. Perlmutter is entitled to injunctive relief ........................................ 16

            1.     Reinstatement is an available remedy in wrongful-removal cases ........... 16

            2.     Ms. Perlmutter is entitled to a permanent injunction ................................ 19

      B.     Ms. Perlmutter is entitled to declaratory relief .................................... 31

CONCLUSION ............................................................................................................ 31

## TABLE OF AUTHORITIES

### Cases

*Aviel v. Gor* ("*Aviel II*"), 2025 WL 1600446 (D.C. Cir. 2025).. 3, 9, 10, 12, 13, 14, 15, 20, 22, 24, 30

*Aviel v. Gor*, No. 25-cv-778, 2025 WL 2374618 (D.D.C. Aug. 14, 2025)...................... 17, 26, 27

*Beattie v. Barnhart*, 663 F. Supp. 2d 5 (D.D.C. 2009) .................................................................. 20

*Berry v. Reagan*, No. 83-cv-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983)..................... 24, 26, 27

*Bowsher v. Synar*, 478 U.S. 714 (1986)............................................................................................ 15

*Brehm v. Marocco*, No. 25-cv-660, 2025 WL 1640193 (D.D.C. June 10, 2025)........................ 13

*Davis v. Billington*, 51 F. Supp. 3d 97 (D.D.C. 2014) .................................................................... 17

*Davis v. Billington*, 681 F.3d 377 (D.C. Cir. 2012)............................................................... 2, 4, 7

*Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669 (D.C. Cir. Feb. 15, 2025) ........................ 34

*Dellinger v. Bessent*, No. 25-5052, 2025 WL 887518 (D.C. Cir. Mar. 10, 2025)........... 12, 27, 30

*eBay Inc. v. MercExchange*, 547 U.S. 388 (2006)......................................................................... 23

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010)................................ 3, 13

*Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868 (1991) .................................................... 10

*Grundmann v. Trump*, 770 F. Supp. 3d 166 (D.D.C. 2025) .................................................... 17, 21

*Haddon v. Walters*, 43 F.3d 1488 (D.C. Cir. 1995).................................................................... 2, 5

*Harris v. Bessent* ("*Harris II*"), No. 25-5037, 2025 WL 980278 (D.C. Cir. 2025).......... 20, 21, 22

*Harris v. Bessent* ("*Harris III*"), No. 25-5037, 2025 WL 1021435
    (D.C. Cir. Apr. 7, 2025) ....................................................................................... 20, 22, 24

*Harris v. Bessent*, 775 F. Supp. 3d 164 (D.D.C. 2025) ................................................................. 16

*Harris v. Bessent*, 775 F. Supp. 3d 86 (D.D.C. 2025) ................................................................... 24

*Huisha-Huisha v. Mayorkas*, 27 F.4th 718 (D.C. Cir. 2022)........................................................ 20

*In re Hennen*, 38 U.S. 230 (1839)................................................................................................... 13

*In re Sawyer*, 124 U.S. 200 (1888) ................................................................................................. 18

*Kennedy v. Braidwood Mgmt., Inc.*, 145 S. Ct. 2427 (2025).......................................................... 3

*League of Women Voters v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) ................................. 28

*LeBlanc v. U.S. Priv. & C.L. Oversight Bd.*, No. 25-cv-542, 2025 WL 1454010
    (D.D.C. May 21, 2025) ........................................................................... 26, 28

*Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995) ................................. 7

*Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142 (2023) ................................. 6

*Miller v. Clinton*, 687 F.3d 1332 (D.C. Cir. 2012) ................................. 19

*Myers v. US*, 272 U.S. 52 (1926) ................................................................ 13, 14

*New York v. Biden*, 636 F. Supp. 3d 1 (D.D.C. 2022) ................................. 31

*NLRB v. Noel Canning*, 573 U.S. 513 (2014) ................................. 10

*NLRB v. SW Gen., Inc.*, 580 U.S. 288 (2017) ................................. 10

*Noel Canning v. NLRB*, 705 F.3d 490 (D.C. Cir. 2013) ................................. 15

*R.I.L-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) ................................. 28

*Sampson v. Murray*, 415 U.S. 61 (1974) ................................. 18, 21, 22, 23, 24

*Seila Law LLC v. CFPB*, 591 U.S. 197 (2020) ................................. 13

*Service v. Dulles*, 354 U.S. 363 (1957) ................................. 19

*Severino v. Biden*, 71 F.4th 1038 (D.C. Cir. 2023) ................................. 17, 20

*Spicer v. Biden*, 575 F. Supp 3d 93 (D.D.C. 2021) ................................. 17

*Swan v. Biden*, 100 F.3d 973 (D.C. Cir. 1996) ................................. 16

*Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996) ................................. 17

*Taylor v. Resol. Tr. Corp.*, 56 F.3d 1497 (D.C. Cir. 1995) ................................. , 22

*U.S. v. Eaton*, 169 U.S. 331 (1898) ................................. 10

*United States v. Arthrex, Inc.*, 594 U.S. 1 (2021) ................................. 29

*Vitarelli v. Seaton*, 359 U.S. 535 (1959) ................................. 19

*White v. Berry*, 171 U.S. 366 (1898) ................................. 18

*Wilcox v. Trump*, 775 F. Supp. 3d 215 (D.D.C. 2025) ................................. 16, 24

*Williams v. Phillips*, 482 F.2d 669 (D.C. Cir. 1973) ................................. 11, 12

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ............................................................ 22

## Statutes and Rules

17 U.S.C. § 407 ................................................................................................................ 29

17 U.S.C. § 408 ................................................................................................................ 29

17 U.S.C. § 701 ...................................................................................................... 3, 29, 30

17 U.S.C. § 702 ................................................................................................................ 29

2 U.S.C. § 136 .................................................................................................................. 14

5 U.S.C. § 105 ................................................................................................................ 4, 7

5 U.S.C. § 3102 .................................................................................................................. 6

5 U.S.C. § 3345 .................................................................................................................. 8

5 U.S.C. § 3347 ................................................................................................................ 10

5 U.S.C. § 3401 .................................................................................................................. 6

## Constitutional Provisions

U.S. Const. art. I, § 8, cl. 8 ............................................................................................... 29

## Other Authorities

Authority of the President to Remove the Staff Director of the Civil Rights
     Commission and Appoint an Acting Staff Director, 25 Op. O.L.C. 103 (2001) .............. 11

Memorandum from Walter Dellinger, Assistant Att'y Gen., Off. of Legal Couns. for
     Neil Eggleston, Assoc. Counsel to the President (Jan. 13, 1994),
     https://perma.cc/M4AA-EN9W ...................................................................................... 11

## INTRODUCTION

Shira Perlmutter is entitled to continue her service as Register of Copyrights. Defendants' various theories on the merits are either squarely foreclosed by binding D.C. Circuit precedent or recently rejected in an order by the D.C. Circuit. And because Ms. Perlmutter was never lawfully removed from her post, she is entitled to relief from this Court. Defendants' contrary arguments are incorrect as a matter of law. But it would also be profoundly inequitable if the President were permitted to act unlawfully, thereby permanently denying Ms. Perlmutter the opportunity to provide Congress and the public with the expertise she has developed over the course of a lengthy and distinguished career, particularly at this critical time in the copyright field. This Court should permanently enjoin Defendants from interfering with Ms. Perlmutter's service as Register.

## RECENT DEVELOPMENTS

Shortly before Defendants filed their cross-motion and opposition in this Court, the D.C. Circuit held that Plaintiff had satisfied the stringent requirements for an injunction pending appeal and enjoined Defendants (except for the President) from interfering with Plaintiff's service as the Register of Copyrights. *See Perlmutter v. Blanche*, No. 25-5285, 2025 WL 2627965 (D.C. Cir. Sept. 10, 2025). Judge Pan, joined by Judge Childs, wrote for the panel majority, explaining that Plaintiff's removal was likely unlawful, that she has suffered irreparable harm, and that the balance of the equities and public interest weighed in favor of her remaining Register of Copyrights. The next week, Defendants filed a petition for a rehearing or rehearing *en banc*, seeking reconsideration of the panel's decision, and specifically its conclusions that (1) the Library of Congress is not an "Executive agency" under the Federal Vacancies Reform Act (FVRA) and (2) Plaintiff has demonstrated irreparable harm. *See* Pet. for Reh'g or Reh'g En Banc, *Perlmutter v. Blanche*, No. 25-5285 (D.C. Cir. Sept. 17, 2025). Two weeks later, without any judge having requested a

1

response to the petition, the D.C. Circuit denied Defendants' request. *See Perlmutter v. Blanche,* No. 25-5285 (D.C. Cir. Oct. 1, 2025) (per curiam) (denying reh'g and reh'g en banc).

The D.C. Circuit's decision in *Perlmutter* is persuasive and should inform this Court's decision on Plaintiff's motion for summary judgment. The panel majority concluded the following:

First, the President likely lacked authority to remove Plaintiff directly or to appoint Todd Blanche to remove her. The President likely did not have authority pursuant to the FVRA to appoint Blanche because "[t]he plain language of the statute indicates that the Library of Congress is not an 'Executive agency' for purposes of the FVRA." *Perlmutter*, 2025 WL 2627965, at *5 (Pan, J., concurring, joined by Childs, J.). Indeed, as explained below, Defendants' contrary argument is squarely foreclosed by the D.C. Circuit's decisions in *Davis v. Billington*, 681 F.3d 377 (D.C. Cir. 2012), and *Haddon v. Walters*, 43 F.3d 1488 (D.C. Cir. 1995). Judge Walker dissented as to irreparable harm, but, as his colleagues noted, he did "not dispute that Perlmutter is likely to succeed on the merits of her lawsuit." *Perlmutter*, 2025 WL 2627965, at *9.

Next, Plaintiff "demonstrated irreparable harm." *Id.* at *5. "[T]he district court abused its discretion by failing to consider 'unusual actions relating to the discharge itself' and a 'genuinely extraordinary situation'—factors that inform the irreparable-harm analysis and distinguish this case from other removal cases." *Id.* at *1. Specifically, Plaintiff had shown "unusual" and "extraordinary" considerations, including: (1) an "unprecedented violation of the separation of powers" based on the President's removal of "an official in the Legislative Branch"; (2) that "the President's removal of Perlmutter was likely unlawful"; and (3) that "Perlmutter likely does not exercise substantial executive power." *Id.* at *2. The D.C. Circuit's prior decision in *Aviel v. Gor* ("*Aviel II*"), No. 25-5105, 2025 WL 1600446 (D.C. Cir. June 5, 2025), supports a finding of irreparable harm here, because in *Aviel II*, "[b]y declining to stay the preliminary injunction, we

2

implicitly agreed with the district court that Aviel would be irreparably harmed absent the preliminary injunction." *Id.* at *8.

Finally, the balance of the equities and the public interest weighed in favor of Plaintiff remaining in her statutory office. *Id.* at *8–9. "Perlmutter's situation differs significantly from the Executive Branch officials whose removals have been repeatedly upheld" because "the injunction requested by Perlmutter would not require the President to work with a removed principal officer at an Executive Branch agency; and it would not interfere with the President's constitutional prerogative to supervise the Executive Branch." *Id.* at *8. The Supreme Court's order in *Wilcox* therefore did not weigh against a preliminary injunction here. And critically, the Register, who "primarily works for Congress" and is supervised by the Librarian, "does not exercise considerable or substantial executive power." *Id.* at 9.

## ARGUMENT

### I.  The President Lacks Statutory Authority to Remove Ms. Perlmutter Directly

Congress vested the power to appoint the Register of Copyrights in the Librarian of Congress alone, and therefore, the power to remove the Register rests with the Librarian. 17 U.S.C. § 701. Defendants do not dispute that uniformly accepted principle. They do not dispute that the President lacks statutory authority to remove Plaintiff directly. Rather, they propose an exception, such that "if the President is *unable* to appoint an acting officer upon removal of the principal officer," he can "oversee and supervise the inferior officer until a new principal officer is confirmed by the Senate." Defs.' Cross-Mot. Summ. J. & Opp. at 33, ECF No. 51 ("Defs.' Br."). That theory is baseless, as explained *infra* Part III.A. Congress's choice must be given effect by adherence to the well-established rule that the power to remove follows the power to appoint. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 493 (2010); *see also Kennedy v. Braidwood Mgmt., Inc.*, 145 S. Ct. 2427, 2444 (2025) ("[W]hen as here Congress vests

appointment of inferior officers in 'heads of departments,' 'it is ordinarily the department head . . . who enjoys the power of removal.'") (cleaned up).

## II. The President Lacks Statutory Authority to Appoint Mr. Blanche, Who Therefore Does Not Possess the Authority to Remove Ms. Perlmutter

**1.** Defendants are undeniably wrong to rebuff binding D.C. Circuit precedent that makes plain that the Library of Congress is not an "Executive agency" and therefore not subject to the FVRA. And yet they do so without any cogent explanation. In *Davis v. Billington*, the D.C. Circuit squarely addressed whether the "Library of Congress" is an "Executive agency" under 5 U.S.C. § 105, the section of Title 5 that defines an "Executive agency." The court held that the "narrowing term 'Executive agency'" in 5 U.S.C. § 105 "plainly does not contain the Library of Congress within the meaning of the statute." 681 F.3d at 386.

Defendants' argument that *Davis* is "inapposite" because the decision arose in a *Bivens* case, Defs.' Br. at 16, is inconsistent with the principles of vertical *stare decisis*. To reach its decision in *Davis*, the D.C. Circuit had to interpret the term "Executive agency" in 5 U.S.C. § 105—precisely the same definitional statute that applies here. The D.C. Circuit's holding that the Library of Congress is not an "Executive agency" under that statute binds this Court, not just in *Bivens* cases, but also in any case that raises the question of whether the Library of Congress is an "Executive agency" under § 105. This is such a case, because the FVRA applies only to an "Executive agency." And while Defendants claim that "even the [D.C. Circuit] motion panel did not treat *Davis* as having resolved the statutory question presented here," Defs.' Br. at 16, that is provably false. *See Perlmutter*, 2025 WL 2627965, at *6 (citing *Davis* for the proposition that that Library is not an "Executive agency," and explaining that the case "analyzes the Civil Service Reform Act and concludes that the statute's use of the term 'Executive agency' . . . plainly does not contain the Library of Congress within the meaning of the statute") (cleaned up).

4

The inquiry should end there. But *Haddon*, too, is D.C. Circuit precedent that forecloses Defendants' theory. Defendants respond that Congress did not have reason to adopt a "belt-and-suspenders approach" for the Executive Residence (at issue in *Haddon*) like they did for the Library of Congress. Defs.' Br. at 16. But that does not refute *Haddon*'s conclusion that "Congress does not regard" an agency "to be an independent establishment, as it uses that term" where "Congress has used the term 'independent establishment' in distinction to" the agency. *Haddon*, 43 F.3d at 1490. Even if Defendants were correct that the Executive Residence is different (and they do not explain why that would be the case), Defendants' argument just proves Plaintiff's point: Congress recognizes the Library of Congress's unique status, and its failure to include the Library in the definition of "Executive agency" is no accident.

Defendants' contrary assertion that the FVRA applies to the Library of Congress irreconcilably conflicts with *Davis* and *Haddon* and is therefore meritless. *See also Perlmutter*, 2025 WL 2627965, at *5–6.

**2.** Even were this not an open-and-shut application of circuit precedent, Defendants cannot overcome the abundant, incontrovertible evidence that Congress did not include the Library of Congress in the statutory definition of an "independent establishment." *See* Mem. of Law in Supp. of Pl.'s Mot. Summ. J., at 10–11, ECF No. 49-1 ("Pl.'s Br."). The through line in Defendants' opposition is that we should not read anything into Congress's decisions to distinguish between the Library of Congress and an "Executive agency" in a dozen separate provisions under Title 5; to distinguish between the Library of Congress and an "independent establishment"; and to designate the Library of Congress as a "legislative branch" agency under Title 2, Title 5, and more.[1] Defs.' Br. at 8–17. Instead, according to Defendants, we should ignore the explicit

---

[1] Indeed, as recently as two months ago, the Department of Justice has taken the position that the Library of Congress is "part of the Legislative Branch." *See Am. First Legal Found. v. U.S.*

statutory text, which plainly supports Plaintiff's position, and instead infer that Congress adopted a "belt-and-suspenders" approach to these definitions. *Id.* at 13–14, 16.  That argument is absurd on its face.  It also would require the Court to ignore that Congress did *not* view the Library of Congress as so unique as to require a "belt-and-suspenders" approach to the definition of "Executive agency."[2]  And it would require the Court to set aside the canon against superfluity, as well as read conflicting obligations on Library of Congress employees under the Ethics in Government Act that cannot be waved away as mere superfluities.  *See* Pl.'s Br. at 11–12.

Defendants' other attempts to explain why the Court should not read anything into the statutory scheme similarly fail.  Defendants' theory that Congress may have intended to "adopt[] a unique definition of the term 'agency,'" distinct from the APA's definition, when it passed the dozen separate provisions under Title 5 that distinguish between "Executive agency" and "Library of Congress," Defs.' Br. at 14, makes no sense.  Those provisions still distinguish between "Executive agency" and "Library of Congress," rather than simply "agency" and "Library of Congress."  *See* 5 U.S.C. §§ 3102(a)(1) (listing "the Library of Congress" separately from the term "Executive agency"), 3401(1) (same), 4501(1) (same), 5102(a)(1) (same), 5521(1) (same), 5541(1) (same), 5584(g) (same), 5595(a)(1) (same), 5921(2) (same), 5948(g)(2) (same), 6121(1) (same), 7103(a)(3) (same).  Unsurprisingly, Defendants point to nothing in the legislative history or any other authority to back up their theory.  And, in any event, courts "cannot replace the actual [statutory] text with speculation as to Congress'[s] intent." *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 150 (2023).  Defendants also ask the Court to ignore that Congress explicitly designated

---

*Gov't Accountability. Off.*, No. 1:25-cv-662, ECF No. 12 at 5 (D.D.C. July 28, 2025); *see also id.*, ECF No. 9-1 at 5.

[2]  Nor did Congress use the term "independent establishment" in the Library's organic statute on the numerous occasions that Congress has amended Title 2, Chapter 5 of the U.S. Code since the Title 5's enactment in 1966.

the Library as a "legislative branch agency" because, they say, it is "unrelated to" the FVRA. Defs.' Br. at 12–13. But the FVRA incorporates Title 5's definition of "Executive agency," and therefore, the inclusion of the Library of Congress in the definition of "legislative branch" in a Title 5 provision *does* illustrate that the Library of Congress is not an "Executive agency" under the FVRA. *See, e.g.*, Pl.'s Br. at 10; Ethics in Government Act, 5 U.S.C. § 13101(4), (11).[3]

**3.** Defendants' only other statutory argument is that Congress intended to define "Executive agency" to be coextensive with the Constitution's definition of "executive Departments" in Article II.[4] But Defendants concede that "Congress is free to define terms as it pleases," Defs.' Br. at 13 (citation omitted), and offer *no* evidence to support their position that Congress chose voluntarily (and *silently*) to adopt the constitutional definition of an "executive Department" for the statutory definition of "Executive agency" under 5 U.S.C. § 105. Defendants

---

[3] Defendants also insist that three Congress members' statements that the Library of Congress "belongs to the *Government of the United States*" means that it belongs to the *executive branch*. Defs.' Br. at 3 (cleaned up) (emphasis added). This line of reasoning (while flatly wrong on its face) betrays Defendants' crucial misapprehension that the will of the executive branch is all that matters in the exercise of the President's Article II mandate that he faithfully execute the laws *of the United States*. *See infra* Part III. But the President's Article II authority necessarily includes due respect to the Constitution, the laws enacted by Congress, and the laws adjudged by federal courts.

[4] Defendants perplexingly state that "Plaintiff identifies no textual or precedential basis for cleaving 'a component of the Executive Branch' under the Appointments Clause, *Intercollegiate*, 684 F.3d at 1341–42, out of the capacious statutory term 'establishment in the executive branch.'" Defs.' Br. at 11; *see also id.* at 17. But there could be no clearer example than *Davis v. Billington*, which is specific to the Library of Congress and the definition of "Executive agency" under 5 U.S.C. § 105. Plaintiff points to others too. *See, e.g.*, Pl.'s Br. at 12 (citing *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 392–93 (1995)) (holding that Congress has the "dispositive" ability to define government entities "for purposes of matters that are within Congress's control"); *id.* at 10 (citing the Ethics in Government Act, which defines the "Library of Congress" as a component of the "legislative branch," distinct from the "executive branch" and "Executive agency"); *id.* at 11 (citing statutory provisions listing "the Library of Congress" separately from the term "Executive agency"); *id.* at 10–11 (citing statutory provision listing "the Library of Congress" as distinct from "independent establishment").

have no response to any of the critical questions this theory raises (*see* Pl.'s Br. at 12). They do not have a response for why Congress did not use the same words, or reference the Constitution. *Id.* And they do not have a response for why Congress would have adopted a standard that would depend on future legal developments and that would not provide clear guidance on how to handle entities like the Library of Congress, which may wield enough executive authority to trigger the Appointments Clause, but which also quite obviously perform critical legislative functions.[5] *Id.* This is because Defendants' theory is flatly wrong, and there is no statutory support for the notion that Congress adopted a precisely worded definition when it actually meant to track a diffuse constitutional concept.

## III. The President Does Not Have Inherent Constitutional Authority to Overcome His Lack of Statutory Authority

Defendants' backup, *post hoc* constitutional arguments to justify their overbroad assertions of executive power similarly fail. No court has ever accepted either of Defendants' extraordinary positions.

### A. The President does not have inherent Article II authority to appoint Mr. Blanche

The D.C. Circuit has now *twice* concluded that Defendants are unlikely to succeed with their novel theory that the President has inherent Article II authority to unilaterally appoint principal officers. *See Aviel II*, 2025 WL 1600446, at *2 (Katsas, J., concurring, joined by Pillard, J.) (It "is unlikely that the Take Care Clause gives the President unfettered discretion to designate

---

[5] Defendants unpersuasively claim that the Library of Congress is an "Executive agency" under the FVRA because the Librarian is nominated by the President and confirmed by the Senate. Defs.' Br. at 9. This is not sufficient, as shown by the fact that the President nominates and the Senate confirms the Comptroller General of the Government Accountability Office (GAO), but the FVRA specifically does not apply to the GAO. *See* 5 U.S.C. § 3345 (applying to "an officer of an Executive agency (including the Executive Office of the President, and other than the Government Accountability Office)").

acting principal officers with neither Senate confirmation nor a Senate recess nor even statutory authorization through the FVRA."); *accord id.* at *4 n.1 (Rao, J., dissenting); *Perlmutter*, 2025 WL 2627965, at *5 n.1. Defendants attempt to minimize *Aviel II*, describing it as an "interlocutory" decision, Defs.' Br. at 21, and ignore the D.C. Circuit's second rejection of the same theory in *Perlmutter*. Defendants take issue with Judge Katsas's statement by arguing that they are not seeking "unfettered discretion." Defs.' Br. at 21. But Judge Katsas merely accurately described that there is no limitation to Defendants' "reasonable time" theory. *Id.* And Judge Rao did not mention the President's "unfettered discretion" when she concluded that "this argument is unlikely to succeed because the text and structure of the Constitution strongly suggest the President has no inherent authority to appoint officers of the United States, like IAF Board members, outside the strictures of the Appointments Clause." *Aviel II*, 2025 WL 1600446, at *4 n.1 (Rao, J., dissenting). Defendants also argued that they did not seek "unfettered discretion" before the D.C. Circuit motions panel in *Perlmutter*, but the panel did not credit Defendants' argument in its contrary decision. *See Opp'n to Mot. for Inj. Pending Appeal*, *Perlmutter v. Blanche*, No. 25-5285 (D.C. Cir. Aug. 15, 2025).

To decide whether the President has inherent Article II authority to unilaterally appoint an acting Librarian, the Court need only look to the Appointments Clause, which expressly prohibits the President's unilateral appointment of principal officers by requiring the President to obtain the Senate's advice and consent, and the Recess Appointments Clause, which provides a narrow "exception" to the Appointments Clause that enables the President to unilaterally appoint a principal officer for a limited time when the Senate is in recess.[6] *NLRB v. Noel Canning*, 573 U.S.

---

[6] Defendants ask how the FVRA is consistent with the Appointments Clause. *See* Defs.' Br. at 21 ("Plaintiff offers no constitutional theory for why Congress would hold such residual power but not the President."). In 1998, the Supreme Court held that someone who holds a principal office on a temporary basis is an "inferior" officer—meaning that the Constitution

513, 519, 523 (2014). Defendants do not explain (nor could they) why their claim of unchecked executive authority contravenes the appointments clauses and the Framers' intent when they enshrined that separation of powers. As Plaintiff previously explained, Pl.'s Br. at 14, the Framers believed that an unchecked power was "the most insidious and powerful weapon of eighteenth-century despotism," and the Appointments Clause limits that power by "dividing" it "between the Executive and Legislative Branches." *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 883–84 (1991) (cleaned up).

Defendants assert that the Recess Appointments Clause "serves the very specific function" of authorizing the President to temporarily and unilaterally appoint a principal officer during a Senate recess, while the Take Care Clause provides free-ranging authority to unilaterally appoint a principal officer at any other time. Defs.' Br. at 21. That argument makes no sense. If the Take Care Clause provided that sweeping authority, there would have been no need for the Recess Appointments Clause. And the Appointments Clause's advice-and-consent requirement would be a nullity. The Supreme Court has repeatedly rejected this extreme position. *See NLRB v. SW Gen., Inc.*, 580 U.S. 288, 317 (2017) (Thomas, J., concurring) ("We cannot cast aside the separation of powers and the Appointments Clause's important check on executive power for the sake of administrative convenience or efficiency"); *see also Freytag*, 501 U.S. at 883.

Defendants primarily rely on opinions from the U.S. Department of Justice's Office of Legal Counsel (OLC) to prop up their claim. It is telling that the only authority Defendants can

---

entrusts Congress to provide for their (temporary) selection without requiring Senate confirmation. *See U.S. v. Eaton*, 169 U.S. 331 (1898). That is why Congress can authorize the President to make a temporary appointment through the FVRA and other statutory provisions. *See* 5 U.S.C. § 3347(a)(1) & (a)(2).

muster for their contrary position comes from the executive branch itself.[7]  And, of course, the D.C. Circuit did not credit the OLC opinions in *Perlmutter*, despite that Defendants relied on them there.  *See* Opp'n to Mot. for Inj. Pending Appeal at 18–19.  To the extent that OLC could be said to have asserted a consistent position, that assertion was premised exclusively on the ground that the President's Take Care Clause authority must include the ability to "keep the government running" when vacancies arise.  *See* Memorandum from Walter Dellinger, Assistant Att'y Gen., Off. of Legal Couns. for Neil Eggleston, Assoc. Counsel to the President (Jan. 13, 1994), https://perma.cc/M4AA-EN9W.  That justification manifestly does not apply here, where the President created the vacancy by firing the Librarian of Congress.  While the President had authority to fire the Librarian, he may not use the resulting vacancy to arrogate to himself untrammeled authority to bypass the Senate's constitutional role in appointments.  The OLC opinions are therefore not controlling, nor are they persuasive.

For similar reasons, *Williams v. Phillips*, 482 F.2d 669 (D.C. Cir. 1973), does not help Defendants.  As a preliminary matter, *Williams* actually *rejected* the defendant's claim that the President had the authority to unilaterally appoint an acting officer, explaining that "Art. II, § 2 of the Constitution unequivocally requires an officer of the United States to be confirmed by the Senate unless different provision is made by congressional statute."  *Id.* at *670.  And, as Judge Katsas reasoned in *Aviel II*, if there is ever inherent authority to appoint a temporary agency head, the government would have to show that it was necessary "to abate an emergency."  *Aviel II*, 2025

---

[7] Two of the OLC opinions do not concern constitutional officers at all, let alone principal officers.  *See* Authority of the President to Remove the Staff Director of the Civil Rights Commission and Appoint an Acting Staff Director, 25 Op. O.L.C. 103, 105 (2001); Memorandum from Walter Dellinger, Assistant Att'y Gen., Off. of Legal Couns. for Neil Eggleston, Assoc. Counsel to the President (Jan. 13, 1994), https://perma.cc/M4AA-EN9W.  And a third opinion was written recently to justify the President's firing of the board of the Inter-American Foundation (IAF) and purporting to appoint acting board members—actions that the D.C. Circuit deemed likely impermissible in *Aviel II*.  *Aviel II*, 2025 WL 1600446, at *1.

WL 1600446, at *2 n.1.  Just as in *Aviel II*, "[t]he government does not argue that any such emergency exists here."  *Id.*  Indeed, the President has had months to nominate and confirm a Librarian and there is no evidence that, prior to the D.C. Circuit's injunction, Mr. Blanche was engaged in any emergency activities.  Nor had Defendants actually been performing their supposed jobs at the Library, *see* Statement of Material Facts ("SOMF") ¶¶ 10–13, ECF No. 49-2; Defs.' Counter-Statement of Material Facts ("CSOMF") ¶¶ 10–13, ECF No. 51-1, so they cannot insist that they are needed "to abate an emergency."

Equally unavailing is Defendants' argument that they are not seeking an "unfettered" Presidential right to unilaterally appoint acting officers, but only a right to unilaterally appoint acting officers "for a reasonable time."  Defs.' Br. at 21.  That supposed limiting principle has no source in the Constitution, but rather, it relates back to dicta in *Williams v. Phillips*.  Therefore, for the same reasons that *Williams* does not sustain Defendants' position on Article II authority, any dicta from *Williams* is irrelevant here.  But even if we accept Defendants' "reasonable time" limitation at face value, the *Williams* court made clear that 4.5 months was not reasonable, and we are now past that time.  *Id.* at *670.

Defendants ask this Court to upend the Constitution, which requires the President to work with Congress to appoint a Librarian of Congress.  The President may exercise his authority over the Librarian (or over an acting Librarian), but unless Congress has given him such power, he cannot unilaterally appoint an acting Librarian.

### B.  The President does not have inherent Article II authority to remove Ms. Perlmutter directly

The Appointments Clause and Supreme Court precedent foreclose any claim of background presidential authority to remove inferior officers who were not appointed by the

President.  The D.C. Circuit recently reached the same conclusion in *Aviel II*.[8]  *See Aviel II*, 2025 WL 1600446, at *1 ("The governing statute authorizes the IAF Board of Directors—not the President—to appoint the CEO, and it is silent regarding the question of removal.  That means the Board—not the President—has the power to remove Aviel").  Defendants do not identify substantive issues with the D.C. Circuit's decision, but instead attempt to minimize it on procedural grounds, describing it as "merely reflect[ing] the motion panel's preliminary assessment of this constitutional question."  Defs.' Br. at 25. But in *Aviel II*, the D.C. Circuit explained that two Supreme Court cases require this outcome:  First, in *Free Enterprise Fund*, the Supreme Court explained that "Congress may vest in heads of departments" the appointment of inferior officers, and, "[i]f Congress does so, it is ordinarily the department head, rather than the President, who enjoys the power of removal."  *Free Enter. Fund.*, 561 U.S. at 493; *see Aviel II*, 2025 WL 1600446, at *1.  Second, in *In re Hennen*, the Supreme Court explained that if Congress vests a department head with the power to appoint and remove an inferior officer, "the President has certainly no power to remove" the inferior officer directly.  *In re Hennen*, 38 U.S. 230, 260 (1839); *see Aviel II*, 2025 WL 1600446, at *1.  Defendants offer no precedent to back up their contrary theory.

Defendants refer to *Myers* and *Seila Law*, Defs.' Br. at 23–24, but those cases are inapposite here.  *Myers v. US*, 272 U.S. 52 (1926); *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020).  Neither *Myers* nor *Seila Law* concerns an inferior officer.  In fact, *Myers* reaffirmed that the President can only remove an inferior officer if Congress has not exercised its power to vest

---

[8] The D.C. Circuit did not consider this argument in *Perlmutter* because Defendants declined to present it in their opposition to Plaintiff's motion.  It is also notable that the Department of Justice previously conceded this position in a different removal case, *Brehm v. Marocco*, No. 25-cv-660, 2025 WL 1640193 (D.D.C. June 10, 2025).  *See* Tr. of TRO Hr'g, at 9:5-9, *Brehm*, No. 25-cv-660 (D.D.C. Mar. 11, 2025) ("[It]'s clear in our papers, and I think not even disputed in the Defendants' papers, that the law is that an inferior officer is removable by the authority that appointed him, but nobody else—unless Congress alters that default rule.").

the appointment and removal of inferior officer in a head of department. *See Myers*, 272 U.S. at 161.

As explained at length above and in Plaintiff's prior brief, Pl.'s Br. at 5–7, 15–17, Defendants' theory is wholly unsupported by law. But it also suffers from two fatal internal inconsistencies. *First*, Defendants' own actions contradict their argument that *if* the President is unable to appoint an acting officer, then the President has Article II authority to fire inferior officers, because President Trump purported to fire Ms. Perlmutter before Mr. Blanche attempted to do the same. Pl.'s Br. at 16. Rather than meaningfully engage with Plaintiff's argument, Defendants wave this away as of "no legal significance." Defs.' Br. at 25. Defendants also say that "the President can achieve the same outcome by ordering the principal officer to fire the inferior officer." *Id.* This would have been news to President Nixon, who surely would have preferred to have the authority to fire the special prosecutor directly himself rather than go through the rigmarole of the Saturday Night Massacre. *Second*, Defendants' theory of a "background authority" is premised on "the absence of a principal officer" at the helm of an agency. Defs.' Br. at 24 n.9 (cleaned up). But critically, the Library does not lack a principal officer at the helm. As Plaintiff previously explained, Pl.'s Br. at 3, 17, Robert Newlen serves as the acting Librarian pursuant to Library regulations authorized by Congress, 2 U.S.C. § 136. Defendants say that the Library "cannot create its own internal governance regime to insulate itself from presidential control." Defs.' Br. at 25. But that makes no sense, and is a clear attempt to obscure the obvious reality that Defendants' argument hinges on a "broken" "chain of command" that does not exist. Defs.' Br. at 26.[9]

---

[9] Defendants' argument that the Library's regulations, which apply when the Librarian is "absen[t]" or "temporarily unavailable," do not apply where the President fired the Librarian is a red herring. Defendants' own definition of "absent" proves the point: the Senate-confirmed

The President claims a critical need to supervise the Library of Congress. But he can nominate and seek confirmation of any Librarian he chooses. He has not done so in the five months since he fired Dr. Hayden. Defendants' supposed necessity for sweeping inherent Article II authority to remove inferior officers, notwithstanding Congress's decision to vest that authority in the Librarian, rather than the President, is thus entirely self-inflicted.[10] Unsurprisingly, Defendants are unable to locate in the Constitution any "background rule," Defs.' Br. at 23, that the President may directly remove an inferior officer any time he has created the purported need for such direct supervision by failing to properly appoint a principal officer or acting principal officer. The President may not simply ignore the lawful supervisory mechanisms provided by the Appointments Clause and the Library of Congress's statutory and regulatory framework and then insist that the resulting exigencies demand that the courts recognize an unprecedented Article II authority. Courts need not "accept an interpretation of the Constitution completely divorced from its original meaning in order to resolve exigencies created by—and equally remediable by—the executive . . . branch." *Noel Canning v. NLRB*, 705 F.3d 490, 511 (D.C. Cir. 2013); *accord Bowsher v. Synar*, 478 U.S. 714, 736 (1986).

In short, Defendants cite no authority to support their extraordinary claim that the President has sweeping Article II authority to disregard the supervisory mechanisms that Congress has

---

Librarian is "not in a certain place [office] at a given time [currently]" or is "not present." Defs.' Br. at 25.

[10] The President also created the purported need for direct supervision by firing the Senate-confirmed Librarian, Dr. Hayden, who was in the middle of serving her 10-year term. To the extent Defendants are correct that the Library lacks a principal officer—which it does not—that would be a situation entirely of the President's own making and cannot justify his attempts to defy statute and the Constitution.

provided in the exercise of *its own* constitutional authority to provide for appointment and removal of inferior officers.

## IV. The Court Should Grant Ms. Perlmutter the Requested Relief

### A. Ms. Perlmutter is entitled to injunctive relief

Defendants claim that, even assuming the illegality of their actions, the Court is powerless to do anything about it. That is both wrong and dangerous. Plaintiff meets the requirements for permanent injunctive relief because she was illegally fired by the President, is entitled to lead an important statutory office and administer the nation's copyright system, and no remedy at law would cure the President's unlawful conduct. The D.C. Circuit correctly determined that Plaintiff is entitled to injunctive relief at the preliminary-injunction stage. *See Perlmutter*, 2025 WL 2627965, at *6–8. Plaintiff's entitlement to injunctive relief is even more obvious at the summary-judgment stage, where it is well-settled that the deprivation of her statutory right to serve as a federal official cannot be remediated absent a permanent injunction that reinstates her to her role or prevents Defendants' interference with her lawful service.

#### 1.    Reinstatement is an available remedy in wrongful-removal cases

In *Swan v. Biden*, 100 F.3d 973, 980 (D.C. Cir. 1996), the D.C. Circuit concluded that *de facto* reinstatement is an available remedy. This circuit precedent binds this Court and forecloses Defendants' contrary position. *See Harris v. Bessent*, 775 F. Supp. 3d 164, 182 (D.D.C. 2025); *Wilcox v. Trump*, 775 F. Supp. 3d 215, 237 (D.D.C. 2025). Plaintiff does not require an injunction against the President to redress her injury; instead, Plaintiff's injury is redressable by an injunction of subordinate executive officers, which the D.C. Circuit and other judges in this District have repeatedly ordered.

Defendants insist that "reinstatement of a public official" is not an available remedy. Defs.' Br. at 26–28. That is incorrect, but it also misses the point. *First*, Plaintiff

technically does not need to be "reinstated" because she was never lawfully terminated in the first place. As explained above, both attempts to fire Plaintiff (first by President Trump and then by Mr. Blanche) had no legal effect. *See supra* Parts I-III. As Defendants concede, *see* CSOMF ¶¶ 12, 14, Library officials and staff continued to recognize Plaintiff as the Register of Copyrights during the pendency of this litigation, SOMF ¶¶ 12, 14. And, as Defendants similarly concede, SOMF ¶¶ 10–13, at no point have Defendants actually been performing their supposed jobs at the Library. SOMF ¶¶ 10–13. And Plaintiff is surely the Register of Copyrights now, pursuant to the D.C. Circuit's injunction. *See Perlmutter*, 2025 WL 2627965. *Second*, even assuming that reinstatement is necessary, numerous other judges in this District have concluded that this precise remedy is available for wrongfully terminated public officials. Pl.'s Br. at 20 (listing summary judgment decisions of other judges in this District that issued injunctive relief for wrongfully-removed officials); *see, e.g.*, *Grundmann v. Trump*, 770 F. Supp. 3d 166, 187 (D.D.C. 2025); *Aviel v. Gor*, No. 25-cv-778, 2025 WL 2374618, at *15 (D.D.C. Aug. 14, 2025); *Spicer v. Biden*, 575 F. Supp 3d 93, 97 (D.D.C. 2021); *Davis v. Billington*, 51 F. Supp. 3d 97, 114 (D.D.C. 2014). *Third*, the *en banc* D.C. Circuit rejected this precise argument in a similar case, holding that the government was unlikely to succeed in showing "that there is no available [reinstatement] remedy for [allegedly unlawfully terminated officers]." *Harris v. Bessent* ("*Harris III*"), No. 25-5037, 2025 WL 1021435, at *2 (D.C. Cir. Apr. 7, 2025). As Judge Katsas explained in *Aviel II*, "our *en banc* order [in *Harris*] is the last word on that question until either the Supreme Court or a merits panel of our Court more definitively resolves the remedies issues." *Aviel II*, 2025 WL 1600446, at *2 n.2. *Fourth*, multiple D.C. Circuit merits panels have concluded that a court may "enjoin 'subordinate executive officials' to reinstate a wrongly terminated official '*de facto*,' even without a formal . . . reappointment." *Severino v. Biden*, 71 F.4th 1038, 1042–43 (D.C. Cir. 2023) (quoting *Swan v. Clinton*, 100 F.3d 973, 980 (D.C. Cir. 1996)).

Defendants specifically take issue with the D.C. Circuit's *en banc* order in *Harris*, arguing that it is an "unpublished stay decision" with a "single, unreasoned sentence on this issue," Defs.' Br. at 28.  But Defendants fail to apprehend that the *en banc* order incorporates by reference Judge Millett's lengthy dissent from the motions panel's grant of the emergency motions for stay.  *See Harris III*, 2025 WL 1021435, at *2; *Harris v. Bessent* ("*Harris II*"), 25-5037, 2025 WL 980278, at *25–49 (Millet, J., dissenting).  There, Judge Millett explained that "federal courts may preserve in office or reinstate someone fired from the Executive Branch with an injunction if the circumstances are 'extraordinary,'" and rejected each of the arguments that Defendants supply here.  Judge Millett explained:

> Even though an injunction cannot restore such officeholders to office *de jure*, this court's precedent holds that a court can order their restoration to office *de facto*.  In *Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996), President Clinton removed Robert Swan from the board of the National Credit Union Administration, *id.* at 974.  This court held that it could grant Swan relief by enjoining the board and all other relevant executive officials subordinate to the President to treat Swan as a legitimate board member.  *Id.* at 980.  Similarly, in *Severino v. Biden*, this court concluded that it could issue an injunction to "reinstate a wrongly terminated official '*de facto*,' even without a formal presidential reappointment."  71 F.4th at 1042–1043 (quoting *Swan*, 100 F.3d at 980).

*Harris II*, 2025 WL 980278, at *43 (Millett, J., dissenting).

As in *Harris II*, "[t]he government invokes older caselaw holding that an injunction cannot restore someone to their position in the Executive Branch."  *Harris II*, 2025 WL 980278, at *44 Millett, J., dissenting) (citing *In re Sawyer*, 124 U.S. 200, 212 (1888), and *White v. Berry*, 171 U.S. 366, 377 (1898)); *see also* Defs.' Br. at 27–28.  "But, as the Supreme Court itself has said: 'Much water has flowed over the dam since 1898,' and it is now well established that 'federal courts do have authority to review the claim of a discharged governmental employee.'"  *Harris II*, 2025 WL 980278, at *44 (Millett, J., dissenting) (citing *Sampson v. Murray*, 415 U.S. 61, 71 (1974)).  For example, in *Service v. Dulles*, upon which *Sampson* relied, a foreign service officer had sought both injunctive and declaratory relief, and obtained that relief on remand after this Court held his

termination unlawful.  *Service*, 354 U.S. 363, 389 (1957).  Similarly, in *Vitarelli v. Seaton*, 359 U.S. 535 (1959), a federal employee sought judgment declaring his dismissal unlawful and "an injunction requiring his reinstatement," and the Court held that he was "entitled to the reinstatement which he seeks."  *Vitarelli*, 359 U.S. at 537, 546 (1959); *see also Miller v. Clinton*, 687 F.3d 1332, 1360 n.7 (D.C. Cir. 2012) (Kavanaugh, J., dissenting) (noting public servants facing "unconstitutional discrimination" may obtain "an injunction").  In short, there is a long history of courts issuing equitable relief of precisely this type.

Defendants also attempt to read *Severino* (and by proxy, *Swan*) as limited to disputes about standing.  Defs.' Br. at 28.  "That makes no sense."  *Harris II*, 2025 WL 980278, at *44 (Millett, J., dissenting).  As Judge Millett explained, "[t]o establish standing, plaintiffs must show, among other things, that their 'injury would likely be redressed by judicial relief.'  So recognizing the existence of a legal remedy is a critical precondition to resolving a lawsuit on the merits."  *Id.*  It follows that, "[b]ecause jurisdiction in both *Swan* and *Severino* depended on holding that an injunction could issue, and both cases held that there was jurisdiction and went on to decide the merits, both cases necessarily held that an injunction could restore someone to office *de facto*."  *Id.*.

Defendants' contrary position is inconsistent with binding circuit precedent and directly contravenes the D.C. Circuit's recent orders *Perlmutter*, *Harris III*, and *Aviel II*.  This Court should therefore swiftly reject Defendants' theory.

### 2.  Ms. Perlmutter is entitled to a permanent injunction

Consistent with the number of summary-judgment decisions in this District in which permanent injunctions have been awarded to wrongfully removed federal officials, *see* Pl.'s Br. at 20, Ms. Perlmutter is entitled to a permanent injunction here.  As discussed above, the D.C. Circuit concluded that Plaintiff demonstrated irreparable harm and that the balance of the equities favored

an injunction. *Perlmutter*, 2025 WL 2627965, at \*6–9. The D.C. Circuit's decision is persuasive and should inform the Court's decision here.

As a preliminary matter, and as Plaintiff has previously explained, ECF No. 34 at 21 n.9, Defendants are incorrect that Plaintiff seeks to alter the *status quo*. Defs.' Br. at 29. The D.C. Circuit has unequivocally said: "The status quo is the last *uncontested* status which preceded the pending controversy." *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 733 (D.C. Cir. 2022). "Courts also have awarded preliminary injunctions when it is necessary to compel [a] defendant to correct [an] injury already inflicted by defining the *status quo* as 'the last peaceable uncontested status' existing between the parties before the dispute developed." *Id.* at 733–34 (cleaned up). Plaintiff seeks relief that would confirm the state of affairs before this dispute developed. But in any event, Plaintiff's status as the Register of Copyrights is unchanged.

### a. Plaintiff has demonstrated that she will suffer irreparable injury if a preliminary injunction is denied

Ms. Perlmutter has demonstrated that she will suffer irreparable harm absent a permanent injunction because "legal remedies are inadequate," *Beattie v. Barnhart*, 663 F. Supp. 2d 5, 9 (D.D.C. 2009), to redress the loss of her ability to serve in a unique, high-ranking public service role. This is consistent with the D.C. Circuit's recent orders in *Perlmutter* and *Aviel II*, both of which held that wrongfully-removed public officials were entitled to injunctive relief that permitted them to retain their positions. This is also consistent with the D.C. Circuit's decisions in *Severino* and *Harris III*, which, as discussed above, confirm that injunctive relief is available in wrongful-removal cases like this one.

**1.** *Sampson*'s "heightened standard" does not apply to the Court's review on the merits. *Taylor v. Resol. Tr. Corp.*, 56 F.3d 1497, 1505 n.1 (D.C. Cir. 1995). *Sampson* requires that a plaintiff demonstrate a "genuinely extraordinary situation" to override the typical factors

that cut against the availability of *preliminary* injunctive relief in government personnel cases. *Sampson*, 415 U.S. at 84. By its own terms, *Sampson*'s holding pertains to the availability of *preliminary injunctions* (or other *temporary* relief). *See*, *e.g.*, *id.* ("Although we do not hold that Congress has wholly foreclosed the granting of *preliminary injunctive relief* in such cases, we do believe that respondent at the very least must make a showing of irreparable injury sufficient in kind and degree to override these factors cutting against the general availability of *preliminary injunctions* in Government personnel cases.") (emphasis added); *id.* at 83 ("The District Court, exercising its equitable powers, is bound to give serious weight to the obviously disruptive effect which the grant of the *temporary relief* awarded here was likely to have on the administrative process.") (emphasis added). Defendants do not contend that any paragraph in *Sampson* relates to the availability of permanent relief. Instead, in *Sampson*, the plaintiff filed an administrative appeal with the Civil Service Commission and then filed an action in district court while her appeal was pending; the Court held that temporary relief was not appropriate in district court while plaintiff's administrative appeal was pending. The *Sampson* Court even noted that the Civil Service Commission may ultimately enter an injunction after review on the merits. *Id.* at 69–70.

Defendants observe that recent cases in this District have referred to *Sampson* in their irreparable harm analysis for permanent injunctive relief. Defs.' Br. at 30. But the judges in those cases referred to *Sampson* primarily to address whether backpay would remedy the plaintiff's injury—a question that is already part of the Court's permanent-injunction inquiry. *See, e.g.*, *Grundmann v. Trump*, 770 F. Supp. 3d 166, 188 (D.D.C. 2025) (citing the government brief's reference to *Sampson* and concluding that "[t]he Government argues that loss of employment does not amount to an irreparable harm because backpay is available."). And plaintiffs in those cases did not ask the courts to consider the applicability of *Sampson* to permanent injunctions. *Sampson*'s heightened standard therefore does not apply here.

As noted above, *Sampson*'s application is limited to cases where there is an administrative scheme already in place to resolve the personnel dispute. Pl.'s Br. at 18–20.  In other words, *Sampson* cautions against temporary relief where there are significant "factors cutting against the general availability of preliminary injunctions in Government personnel cases," such as the "disruptive effect" to the "administrative process" and deference to the government in the "dispatch of its own internal affairs." *Sampson*, 415 U.S. at 83–84 (cleaned up).  Judges in this District have not appeared to explicitly consider Plaintiff's position that *Sampson* does not apply where, as here, the plaintiff does not "attempt to short-circuit an administrative scheme explicitly designed to resolve the exact type of personnel dispute at issue," *Taylor*, 56 F.3d at 1506 n.1; however, they certainly have considered the "disruptive effect" to the "administrative process" and whether the government should be afforded deference in "the dispatch of its own internal affairs." *See, e.g.*, *LeBlanc v. U.S. Priv. & C.L. Oversight Bd.*, No. 25-cv-542, 2025 WL 1454010, at *29 (D.D.C. May 21, 2025).  And where there is no administrative process in place to resolve a plaintiff's removal, the reviewing courts necessarily afforded little to no weight to those factors, which are premised on the existence of a parallel administrative scheme. *See id.*; *Sampson*, 415 U.S. at 84.

**2.** Even so, Plaintiff's harms are "sufficient in kind and degree" to override the factors that typically weigh against relief in "personnel cases" like *Sampson*. *Sampson*, 415 U.S. at 84.  As a threshold matter, the irreparable harm analysis differs between preliminary and permanent relief: to obtain a preliminary injunction, a plaintiff must show that she will "suffer irreparable harm in the absence of preliminary relief," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), whereas to obtain a permanent injunction, the plaintiff must show that she will "suffer irreparable injury if an injunction is denied," *eBay Inc. v. MercExchange*, 547 U.S. 388, 393 (2006).  For the

same reasons that the D.C. Circuit found irreparable harm at the preliminary-injunction stage, *see Perlmutter*, 2025 WL 2627965, at *6–8, Plaintiff is entitled to a permanent injunction.

Moreover, this Court's preliminary-injunction opinion makes clear that its irreparable harm conclusion is specific to Plaintiff's request for preliminary relief. The Court referred to Plaintiff's harms as her "*temporary* removal" and "*temporary* inability to perform statutory duties," *see, e.g.*, ECF No. 40 at 10 (emphases added), and concluded that "even assuming Perlmutter is right that her removal was unlawful . . . 'At worst, [she] would remain out of office for a short period of time' while the Court resolves the merits," *id.* (quoting *Dellinger v. Bessent*, No. 25-5052, 2025 WL 887518, at *4 (D.C. Cir. Mar. 10, 2025)). In *Brehm v. Marocco*, Judge Leon also envisioned that the plaintiff's irreparable harm, while insufficient for emergency relief, would nevertheless be sufficient for a permanent injunction at the summary-judgment stage. Mem. Ord. at 5, *Brehm v. Marocco*, No. 25-cv-660 (D.D.C. Mar. 11, 2025), ECF No. 15; *see* Pl.'s Br. at 21.

Plaintiff's irreparable harm is even more clear-cut at the merits stage. Defendants attempted to unlawfully remove Plaintiff from office, and there is no available remedy at law that would reinstate her or otherwise effectuate her entitlement to her office. If permanent injunctive relief is denied, Plaintiff would be unable to resume performing the functions that have been entrusted to her by law.

The D.C. Circuit correctly concluded in *Perlmutter* that Plaintiff demonstrated "unusual actions relating to the discharge itself" and a "genuinely extraordinary situation" sufficient to establish irreparable harm under the *Sampson* framework. *Perlmutter*, 2025 WL 2627965, at *1 (quoting *Sampson*, 415 U.S. at 92 n.68). Defendants do not and cannot rebut the D.C. Circuit's conclusion that "[t]he President's attempt to reach into the Legislative Branch to fire an official that he has no statutory authority to either appoint or remove, and to impede Congress's ability to carry out an enumerated constitutional duty, presents a 'genuinely extraordinary situation,' that

threatens irreparable harm to the constitutional structure of our government." *Perlmutter*, 2025 WL 2627965, at \*7 (quoting *Sampson*, 415 U.S. at 92 n.68). Plaintiff was purportedly removed on a Saturday, the day after she issued a report providing advice—with which the President has indicated disagreement—to Congress, supporting the unavoidable inference that the President's objective was to prevent her from continuing this work. And the President then purported to install executive branch officials—Todd Blanche and Paul Perkins—as acting Librarian of Congress and acting Register of Copyrights. Plaintiff's removal is "a grave intrusion by the President into the constitutional powers of a coordinate branch of government," *Perlmutter*, 2025 WL 2627965, at \*7, that therefore a "genuinely extraordinary situation," *id.* Defendants attempt to wave away this concern as a harm to the *institution* rather than a harm to Plaintiff. Defs.' Br. at 25. But that misses the point. The D.C. Circuit in *Perlmutter*, and other judges in this District, have found that separation-of-powers violations and other institutional harms are demonstrative of the "unusual actions relating to the discharge itself" and a "genuinely extraordinary situation" under *Sampson*. *See supra* at 2; *see also Wilcox*, 775 F. Supp. 3d at 236 (considering harm to plaintiff's agency as a part of the court's irreparable harm analysis); *Berry v. Reagan*, No. 83-cv-3182, 1983 WL 538, at \*5 (D.D.C. Nov. 14, 1983) (same); *LeBlanc*, 2025 WL 1454010, at \*30 (same); *Harris*, 775 F. Supp. 3d at 96 (same).

Defendants unconvincingly claim that there are no separation-of-powers harms here because the President appoints the Librarian, who supervises the Register. Defs.' Br. at 36. But Congress has not ceded to the executive branch unilateral authority to appoint an official to lead the Library, especially in view of the Library's many sensitive responsibilities to Congress. Nor would Congress be likely to confirm a high-ranking Justice Department official such as Mr. Blanche to simultaneously lead a legislative entity charged with the provision of neutral, technical advice to the legislature, which stores confidential Congressional documents and other materials

prepared in response to or in anticipation of Congressional requests.  Viewed through this lens, what Defendants dismiss as "speculation"—unlawful access to confidential congressional correspondence and work product" and "the security of the copyright registration system and the value of the deposited works"—is *per se* unlawful.  Defs.' Br. at 36; *see* Pl.'s Br. at 23.

Beyond that, the D.C. Circuit correctly determined that Plaintiff's "statutory right to function as the Register of Copyrights is [] far weightier than the mere loss of income implicated in *Sampson*," explaining that  "Perlmutter is a government official engaged in 'lead[ing] and direct[ing] the important work of the Copyright Office at a critical juncture'" and "[i]n the unique role of Register of Copyrights, Perlmutter has the opportunity to influence Congress on copyright matters of national importance, such as the development of generative AI."  *Perlmutter*, 2025 WL 2627965, at *6.  Therefore, the "uniqueness of her role and the opportunities it gives her 'transcend[] the loss of income or embarrassment involved in the typical employment action.'"  *Id.*  Defendants contend that the deprivation of a statutory right to function is "not a cognizable theory of harm."  Defs.' Br. at 31.  But they do not cite a single case that actually says that—and their omission is particularly stark in contrast to the number of summary-judgment decisions from this District that say otherwise, Pl.'s Br. at 20, and the D.C. Circuit's decisions in both *Aviel II* and *Perlmutter*.  *See Perlmutter*, 2025 WL 2627965, at *8 ("By declining to stay the preliminary injunction [in *Aviel II*], we implicitly agreed with the district court that Aviel would be irreparably harmed absent the preliminary injunction.").

Defendants otherwise do not explain their puzzling statements that "Plaintiff does not suffer any irreparable harm simply by not being able to occupy a certain office," Defs.' Br. at 31, and "Plaintiff has no right to serve in her office at all—much less at a particular point in time," *id.* at 33, in light of the obvious precedent to the contrary.  Defendants cite to *Dellinger* for the proposition that "'remain[ing] out of office' is [not] *per se* irreparable harm," *id.*, but those cherry-

picked words glaringly omit the remainder of that clause; D.C. Circuit *actually* said that "[a]t worst, Dellinger would remain out of office *for a short period of time*." *Dellinger*, 2025 WL 887518, at *4 (emphasis added).  In *Perlmutter*, the D.C. Circuit relied on this part of *Dellinger* when it similarly concluded that the *short-term* deprivation of a position is not "*necessarily* irreparable harm" sufficient for a preliminary injunction.  *Perlmutter*, 2025 WL 2627965, at *7 (emphasis added).  That is plainly not what is at issue here (despite Defendants' efforts to obscure that reality), where Plaintiff will not be able to occupy her statutory position without a permanent injunction.   Her injury is thus clearly irreparable.

This case is also on all fours with numerous other cases in this District finding irreparable harm when an officer is improperly removed.  *See* Pl.'s Br. at 20.  Defendants contend that such cases are distinguishable because they concerned principal officers appointed by the President and confirmed by the Senate, and in some cases non-partisan roles.  Defs.' Br. at 31.  But that misses the point.  What matters is that Plaintiff has a statutory right to serve in her "unique" position that provides the "opportunity to influence Congress on copyright matters of national importance" until she is removed by the Librarian.  *Perlmutter*, 2025 WL 2627965, at *6.  Plaintiff's harm is all the more extraordinary because she is *not* a principal officer that the President appoints, but an inferior officer who Congress insulated from removal by the President.

Defendants also contend that a subset of those cases, *Berry* and *Aviel*, are different from this case because they relied on the fact that the survival of the plaintiff's organization was at stake.  Defs.' Br. at 33.  But Defendants' argument misunderstands the courts' decisions in those cases.  As this Court explained in its preliminary-injunction opinion (and Plaintiff explained in her prior brief, *see* Pl.'s Br.at 21–22), the courts in *Berry* and *Aviel* held that the plaintiffs suffered irreparable harm because they would never be reinstated to their offices—"there would be no agency for the officer to return to after the case was resolved" or that plaintiff's "position [would]

likely be irreparably changed without an injunction," ECF No. 40 at 7. Critically, this determination relies on the premise that a plaintiff demonstrates irreparable harm when she demonstrates that she will never be reinstated to her office.[11] Plaintiff has demonstrated that here.

> ### b. Money damages would not restore Plaintiff's ability to lead an important statutory office and administer the nation's copyright system

Defendants repeatedly argue that Plaintiff's injury is not *irreparable*, but fail to plausibly explain how it can be remedied. Defendants do not identify a single case that indicates that backpay is a sufficient remedy for the unlawful removal of a high-ranking public official. Nor does Plaintiff seek backpay here. As a result, remedies at law are plainly insufficient. Defendants also do not meaningfully engage with Plaintiff's point that, if money damages were sufficient redress, then the President could illegally fire any senior federal official (the Senate parliamentarian and U.S. District Judges included). Pl.'s Br. at 23. Defendants say that "[t]hat scenario has no relevance" because "the Register of Copyrights is an Executive Branch Officer." *Id.* at 36–37. That's not true. But it also confuses the remedy with the merits. If the Court determines that Plaintiff was unlawfully removed (as D.C. Circuit precedent requires), the Court should find that the law necessitates a permanent injunction to block her removal, or else the President will have free rein to lawlessly fire government employees and still get his way.

---

[11] *Aviel* made this explicit when the court concluded that the plaintiff's statutory right to function was irreparable harm at the summary-judgment stage—a conclusion the court did not reach at the preliminary-injunction stage. Pl.'s Br. at 20 n.4. Defendants also reference *Brehm*, but as discussed above, *supra* at 23, and in Plaintiff's prior brief, that case supports Plaintiff's position by indicating that the deprivation of a statutory right to function would likely warrant a permanent injunction (*i.e.*, reinstatement) at the summary-judgment stage.

### c. The balance of the equities and public interest decisively favor permanent injunctive relief

The balance of the equities and public interest decisively favor permanent injunctive relief. Defendants cannot disregard the D.C. Circuit's directive that the "substantial public interest" favors having governmental agencies abide by the federal laws that govern their existence and operations." *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (cleaned up). Here, Defendants do not plausibly argue that the removal of the Register of Copyrights, who has served faithfully in her role for the last five years, will benefit the public interest, especially when her removal violates the Constitution, federal law, and D.C. Circuit precedent. It is undoubtedly in the public interest that the Court unwind the President's unconstitutional actions, rather than permit him to act illegally and still reap the benefits. Nor can Defendants "suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required." *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015).

Defendants contend that requiring the President to retain the services of an official who refuses to do his bidding hinders his Article II authority. Defs.' Br. at 37. But Defendants have it backward. The President must faithfully execute the laws of the United States, which expressly prohibit the actions he has taken here. Nor does Plaintiff "exercise considerable or substantial executive power" similar to members of independent agencies like the Consumer Product Safety Commission and the National Labor Relations Board at issue in *Wilcox* and *Boyle*. The D.C. Circuit correctly reached this conclusion in *Perlmutter*, and the *en banc* court subsequently denied Defendants' petition for a rehearing, which specifically requested reconsideration on that issue. *Perlmutter*, 2025 WL 2627965, at *8–9; *Perlmutter*, No. 25-5285 (D.C. Cir. Oct. 1, 2025) (denying reh'g). As a threshold matter, the Constitution vests *Congress*, not the executive branch, with the power to administer the nation's copyright system, U.S. Const. art. I, § 8, cl. 8, which it

then assigned to the Copyright Office, 17 U.S.C. § 701. Accordingly, the Register "primarily works for Congress": she "serves Congress, executive agencies, and the Judiciary by providing advice, information, and assistance on national and international issues relating to copyright. *Perlmutter*, 2025 WL 2627965, at \*9; *see also* 17 U.S.C. § 701(b)(1)-(3). The Register is also (as Defendants concede) an inferior officer, whose appointment is vested by Congress in a department head and who is "directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate," *i.e.*, the Librarian. *United States v. Arthrex, Inc.*, 594 U.S. 1, 13 (2021) (cleaned up). The Register is not "the sole head of an agency" who "only the President may remove." *Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669, at \*15 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting). An inferior officer like Plaintiff necessarily does not exercise the same degree of power as a principal officer like Wilcox or Boyle.

Defendants contend that the Register's rulemaking responsibilities mean that the Register exercises "executive" power, but the Register does *not* have general authority to issue regulations that establish new legal rights and obligations. Defs.' Br. at 10–11. The Register is narrowly "authorized to establish regulations not inconsistent with law for the administration of the functions and duties made the responsibility of the Register under [the Copyright Act]" and, critically, "[a]ll regulations established by the Register . . . are subject to the approval of the Librarian of Congress." 17 U.S.C. § 702. Accordingly, the regulations that the Register recommends to the Librarian primarily relate to the administration of the copyright system—*i.e.*, regulations that pertain to the required formats and numbers of deposit copies submitted with an application for registration. *See* 17 U.S.C. §§ 407(c), 408(c), (d). These are not "executive" in nature, and they are surely not "considerable or substantial executive power." The balance of the equities and public interest decisively support equitable relief for Plaintiff.

### d. The Court should enter permanent injunctive relief that affords complete relief to Ms. Perlmutter

In arguing that the Court should limit Plaintiff's relief, Defendants perplexingly describe Plaintiff's harm that would persist under Defendants' proposal as "being supervised by an acting Librarian *she believes to have been unlawfully designated.*"[12] Defs.' Br. at 40 (emphasis added). That mischaracterizes the harm. If we are at the remedy stage, the Court has already established that Mr. Blanche *was unlawfully appointed* as acting Librarian and *does not lawfully possess* the authorities of the Librarian. At this point, under Defendants' proposal, Plaintiff would be directed and supervised (pursuant to 17 U.S.C. § 701(a)) by a pretender to the Librarian role. But that does not make any sense. Critically, the Librarian's authority to direct and supervise the Register includes (and is therefore inextricable from) the authority to appoint and remove the Register. It therefore does not follow that there could exist a Librarian who cannot appoint or remove the Register, but can supervise and direct the Register. There cannot be two Librarians who split up these duties. Plaintiff therefore requires an injunction to prevent Mr. Blanche from serving as acting Librarian in order to obtain complete relief in this case.

Defendants' contrary position raises a host of other questions. Would Mr. Blanche be able to fire Plaintiff's staff so that she cannot perform her duties? Would he be able to prevent Plaintiff from completing the final part (Pl.'s Br. at 2–3) of the AI report? Would he be able to reject Plaintiff's exercise of rulemaking and fee-setting authority, where they require the Librarian's approval? Defendants have no answers.

---

[12] Defendants argue that "that harm is not irreparable—*i.e.*, 'both certain and great.'" Defs.' Br. at 39. But Plaintiff need not separately prove irreparable harm would persist under each of Defendants' alternative proposals for narrower injunctions. Instead, Plaintiff requests a remedy that provides her complete relief from the irreparable harm demonstrated above, *supra* at IV.A.2.a. In any event, it is hard to imagine how supervision by a pretender to the Librarian role would not constitute irreparable harm (it is *certain* because the Court has established that it is unlawful, and it *cannot be remedied* absent an injunction).

And above all, at its core, this case is about a separation-of-powers violation. Defendants'
contention that a violation of the Constitution need not be redressed in order to fully resolve the
issues in this lawsuit is ill-conceived.

### B. Ms. Perlmutter is entitled to declaratory relief

Defendants argue that this Court should not grant declaratory relief based on "equitable
principles," Defs.' Br. at 39–40, but otherwise do not address the relevant standard. As explained
in Plaintiff's earlier brief, declaratory relief is appropriate because (1) "the judgment will serve a
useful purpose in clarifying the legal relations at issue," and (2) "the judgment will terminate and
afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *New
York v. Biden*, 636 F. Supp. 3d 1, 31 (D.D.C. 2022).

As explained above, Plaintiff's removal was unlawful. Declaratory judgment would serve
to settle Plaintiff's status, which Defendants continue to call into question in their brief. For these
reasons, the Court should enter declaratory judgment that Ms. Perlmutter's removal was invalid,
she is the lawful Register of Copyrights, and Mr. Blanche's appointment to Librarian of Congress
was invalid.

### CONCLUSION

For these reasons, the Court should grant Plaintiff's motion for summary judgment.


Dated: October 6, 2025                    Respectfully submitted,

                                          */s/ Allyson R. Scher*
                                          Brian D. Netter (D.C. Bar No. 979362)
                                          Allyson R. Scher (D.C. Bar No. 1616379)
                                          Democracy Forward Foundation
                                          P.O. Box 34553
                                          Washington, DC 20043
                                          (202) 448-9090
                                          bnetter@democracyforward.org
                                          ascher@democracyforward.org

Donald B. Verrilli, Jr. (D.C. Bar. No. 420434)
Ginger D. Anders
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue, NW, Suite 500E
Washington, D.C. 20001
(202) 220-1100
donald.verrilli@mto.com
ginger.anders@mto.com

Kuruvilla J. Olasa (pro hac vice admitted)
Miranda E. Rehaut (pro hac vice admitted)
Adeel Mohammadi (pro hac vice admitted)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
(213) 683-9100
kuruvilla.olasa@mto.com
miranda.rehaut@mto.com
adeel.mohammadi@mto.com

*Counsel for Plaintiff*