**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| SHIRA PERLMUTTER, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-01659-TJK |
| | ) | |
| TODD BLANCHE, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF
<u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

ARGUMENT .......................................................................................................................... 3

I.    Plaintiff was lawfully removed from serving as Register of Copyrights. ........................... 3

    A.    The President lawfully designated Mr. Blanche as acting Librarian and Mr.
        Blanche Confirmed Plaintiff's Removal from the Position of Register of
        Copyrights. ...................................................................................................... 3

        1.    Mr. Blanche was lawfully designated as acting Librarian pursuant to the
            Federal Vacancies Reform Act. ................................................................. 3

        2.    Alternatively, the President's designation of Mr. Blanche as acting
            Librarian is independently authorized by Article II of the Constitution. .............. 9

    B.    The President had the authority to remove the Register directly. ........................... 11

II.   Plaintiff is not entitled to reinstatement or a permanent injunction. ................................. 13

    A.    Plaintiff is not entitled to reinstatement. ............................................................... 13

    B.    Plaintiff is not entitled to a permanent injunction. .................................................. 16

        1.    A permanent injunction cannot be awarded absent extraordinary
            circumstances. ......................................................................................... 16

        2.    Plaintiff has failed to show irreparable harm. ........................................... 17

        3.    The balance of harms and public interest weigh strongly against a
            permanent injunction. ............................................................................... 20

        4.    Even if injunctive relief were available, the Court should not enter the
            broad injunction Plaintiff requests. ........................................................... 21

    C.    Even assuming that Plaintiff is entitled to declaratory relief, that relief must
        be limited to a declaration that her removal was unlawful. ..................................... 22

CONCLUSION .................................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases:**

*Amoco Prod. Co. v. Vill. of Gambell*,
   480 U.S. 531 (1987) ........................................................................................................ 16

*Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.*,
   64 F.4th 1354 (D.C. Cir. 2023) ...................................................................................... 14

*Aviel v. Gor*,
   No. 25-5105, 2025 WL 1600446 (D.C. Cir. June 5, 2025).............................. 9, 12, 15

*Aviel v. Gor*,
   780 F. Supp. 3d 1 (D.D.C. 2025) ................................................................................... 19

*Baker v. Carr*,
   369 U.S. 186 (1962) ................................................................................................. 13, 14

*Barnes v. Kline*,
   759 F.2d 21 (D.C. Cir. 1984), *judgment vacated sub nom.*
   *Burke v. Barnes*, 479 U.S. 361 (1987).......................................................................... 14

*Barton v. Barr*,
   590 U.S. 222 (2020) ......................................................................................................... 6

*Berry v. Reagan*,
   Civ. A. No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983), *vacated as moot*,
   732 F.2d 949 (D.C. Cir. 1983) ...................................................................................... 19

*Buckley v. Valeo*,
   424 U.S. 1 (1976) ........................................................................................................... 13

*Capriole v. Uber Techs., Inc.*
   991 F.3d 339 (1st Cir. 2021) .......................................................................................... 14

*Collins v. Yellen*,
   594 U.S. 220 (2021) ....................................................................................................... 13

*Davis v. Billington*,
   681 F.3d 377 (D.C. Cir. 2012) ........................................................................................ 4

*Davis v. Billington*,
   51 F. Supp. 3d 97 (D.D.C. 2014)................................................................................... 15

*Eltra Corp. v. Ringer*,
   579 F.2d 294 (4th Cir. 1978).......................................................................................... 4, 8

*English v. Trump*,
   279 F. Supp. 3d 307 (D.D.C. 2018) ............................................................................. 18

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010) ................................................................................. 9, 10, 12, 13

*Grundmann v. Trump*,
  770 F. Supp. 3d 166 (D.D.C. 2025) ....................................................................... 14

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
  527 U.S. 308 (1999) ................................................................................................ 13

*Haddon v. Walters*,
  43 F.3d 1488 (D.C. Cir. 1995) ................................................................................ 5

*Harris v. Bessent*,
  No. 25-5037, 2025 WL 1021435 (D.C. Cir. Apr. 7, 2025) ..................................... 15

*In re Hennen*,
  38 U.S. (13 Pet.) 230 (1839) ................................................................................... 12

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*,
  684 F.3d 1332 (D.C. Cir. 2012) ..................................................................... 1, 2, 4, 18

*Med. Imaging & Tech. All. v. Libr. of Cong.*,
  103 F.4th 830 (D.C. Cir. 2024) ................................................... 4, 6, 11, 15, 18, 21

*Myers v. United States*,
  272 U.S. 52 (1926) .............................................................................................. 8, 12

*Perlmutter v. Blanche*,
  No. 25-5285, 2025 WL 2627965 (D.C. Cir. Sept. 10, 2025) ............ 2, 4, 5, 9, 17, 19, 20, 21, 22

*Perlmutter v. Blanche*,
  No. 25-cv-1659, 2025 WL 2159197 (D.D.C. July 30, 2025) .............................. 17, 18

*Printz v. United States*,
  521 U.S. 898 (1997) ................................................................................................. 9

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
  566 U.S. 639 (2012) ................................................................................................. 7

*Rimini Street, Inc. v. Oracle USA, Inc.*,
  586 U.S. 334 (2019) ................................................................................................. 6

*Sampson v. Murray*,
  415 U.S. 61 (1974) .............................................................................................. 2, 16

*In re Sawyer*,
  124 U.S. 200 (1888) ............................................................................................ 13-14

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
  591 U.S. 197 (2020) .......................................................................................... 11, 13

*Service v. Dulles*,
    354 U.S. 363 (1957) ................................................................... 15

*Severino v. Biden*,
    71 F.4th 1038 (D.C. Cir. 2023) .................................................. 15

*Shalala v. Ill. Council on Long Term Care, Inc.*
    529 U.S. 1 (2000) ........................................................................ 15

*Stanley v. City of Sanford*,
    606 U.S. 46 (2025) ........................................................................ 6

*Swan v. Clinton*,
    100 F.3d 973 (D.C. Cir. 1996) .................................................. 15

*Trump v. Boyle*,
    145 S. Ct. 2653 (2025) .............................................................. 20

*Trump v. CASA, Inc.*,
    606 U.S. 831 (2025) ............................................... 2, 13, 14, 21, 22

*Trump v. Slaughter*,
    606 U.S. __, 2025 WL 2692050 (2025) ................................ 15, 16

*Trump v. Wilcox*,
    145 S. Ct. 1415 (2025) .............................................................. 20

*Vitarelli v. Seaton*,
    359 U.S. 535 (1959) ................................................................... 15

*White v. Berry*,
    171 U.S. 366 (1898) ................................................................... 19

*Williams v. Phillips*,
    482 F.2d 669 (D.C. Cir. 1973) .............................................. 9, 10

**Statutes:**

2 U.S.C. § 136-1 ............................................................................ 3

5 U.S.C. § 104 ............................................................................ 7, 8

5 U.S.C. § 104(1) .......................................................................... 6

5 U.S.C. § 104(2) .......................................................................... 8

5 U.S.C. § 105 ........................................................................... 5, 7

5 U.S.C. § 13101 ........................................................................... 7

5 U.S.C. § 13101(4) ...................................................................... 7

5 U.S.C. § 13101(11) ................................................................................................ 7

5 U.S.C. § 13101(11)(F) .......................................................................................... 7

5 U.S.C. § 3345(a) .................................................................................................... 8

17 U.S.C. § 701 ...................................................................................................... 13

42 U.S.C. § 2000e-5(g)(1) ...................................................................................... 14

Pub. L. No. 89-554, 80 Stat. 378 (Sept. 6, 1996) ................................................... 7

**U.S. Constitution:**

U.S. Const. art. I, § 8 .............................................................................................. 21

U.S. Const. art. II, § 3 .............................................................................................. 9

**Other Authorities:**

*Temporary Presidential Designation of Acting Board Members of Inter-American
   Foundation & U.S. African Development Foundation,*
   49 Op. O.L.C. __, (Mar. 14, 2025) ..................................................................... 9

## INTRODUCTION

Plaintiff was lawfully removed from serving as Register of Copyrights. The President removed Plaintiff pursuant to his Article II authority, and she also was removed by the acting Librarian of Congress (Todd Blanche), who was lawfully designated as such under the Federal Vacancies Reform Act ("FVRA"). Plaintiff has no right to serve in the office she once held. The Court should grant Defendants' cross-motion for summary judgment.

Plaintiff disputes the lawfulness of Mr. Blanche's designation as acting Librarian, but her arguments depend on off-point case law and an a-textual interpretation of the relevant statute. At bottom, Plaintiff has no persuasive explanation as to how the Library of Congress—which is headed by a principal executive officer nominated by the President and is "undoubtedly a component of the Executive Branch," *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1342 (D.C. Cir. 2012)—is nonetheless not "an establishment in the executive branch" that is covered by the FVRA. Even if that counterintuitive world were reality, the President had independent authority under Article II to designate Mr. Blanche as acting Librarian when that office became vacant (who, in turn, designated Mr. Perkins as acting Register of Copyrights), as well as the authority to remove Plaintiff directly.

Merits aside, Plaintiff has not shown she is entitled to the remedy she requests. She insists federal courts' authority to reinstate removed officers is settled, but the Supreme Court has granted certiorari in two cases this Term to consider that precise issue. Those cases are directly relevant here; they are the reason the Supreme Court deferred ruling on Defendants' application for a stay of the D.C. Circuit's injunction pending appeal. *See Blanche v. Perlmutter*, No. 25A478 (Nov. 26, 2025) (deferring ruling "*Trump* v. *Slaughter*, No. 25-332, and *Trump* v. *Cook*, No. 25A312). This Court should not grant such extraordinary relief when its availability is being considered by the

1

Supreme Court.  Even if that relief were available, Plaintiff has not shown she is entitled to a permanent injunction.  She says she has been irreparably harmed by a deprivation of her supposed "statutory right to function," but even the D.C. Circuit motions panel recognized that "Perlmutter's inability to perform her statutory functions likely does not, in itself, constitute *irreparable* harm." *Perlmutter v. Blanche*, No. 25-5285, 2025 WL 2627965, at *7 (D.C. Cir. Sept. 10, 2025) (Pan, J., joined by Childs, J., concurring).  And Plaintiff has not identified anything else that could create the "genuinely extraordinary" circumstances required for permanent injunctive relief in this context. *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974).  She relies exclusively on the D.C. Circuit motions panel's conclusion that her removal endangers the separation of powers because the Register of Copyrights is an official in the *Legislative* Branch.  That is clearly wrong:  The Register is an inferior *Executive* Branch official who is appointed by a principal *Executive* Branch official (the Librarian), and, again, the Library of Congress is "undoubtedly a component of the Executive Branch."  *Intercollegiate*, 684 F.3d at 1342.  That binding precedent controls.

Finally, even if Plaintiff were entitled to injunctive relief, the most she can receive is an injunction restoring her to her former office and prohibiting interference with the carrying out of the Register's statutory functions.  That is "complete relief" for her.  *Trump v. CASA, Inc.*, 606 U.S. 831, 851 (2025).  She has no right to an injunction benefiting non-parties or prohibiting Mr. Blanche (or anyone else) from performing the duties of the Librarian.[1]

---

[1]  Mr. Blanche's period of service as acting Librarian expired on December 4, 2025—210 days after former Librarian Hayden's removal from office on May 8, 2025.  *See* 5 U.S.C. § 3346(a)(1).  Mr. Blanche designated Brian Nieves to be acting Principal Deputy Librarian on May 11, and he still serves in that position.  Defs.' Mot. 6; Defs.' Stmt. of Material Facts not in Dispute ¶ 6 (ECF No. 50-2).

## ARGUMENT

I.    **Plaintiff was lawfully removed from serving as Register of Copyrights.**

Plaintiff was lawfully removed as Register of Copyrights—either by Mr. Blanche or by the President.    The Court should grant summary judgment for Defendants.

### A.    The President lawfully designated Mr. Blanche as acting Librarian and Mr. Blanche Confirmed Plaintiff's Removal from the Position of Register of Copyrights.

The Library of Congress is an "Executive agency" under the FVRA, and the President lawfully designated Mr. Blanche under that law.    Alternatively, if the FVRA does not govern the President's designation of an acting Librarian of Congress, Article II authorizes the President's designation.    Regardless, Mr. Blanche was properly serving as the acting Librarian of Congress at the time of Plaintiff's removal, and he lawfully removed Plaintiff from her position.

#### 1.    Mr. Blanche was lawfully designated as acting Librarian pursuant to the Federal Vacancies Reform Act.

The President lawfully designated Mr. Blanche as the acting Librarian of Congress under the FVRA.    ECF No. 50-1, Defs.' Opp. to Pl.'s Mot. for Summ. J. and Cross-Mot. for Summ. J. ("Defs.' Mot.") at 8–17.    Plaintiff contends that the FVRA does not apply because the Library of Congress is not an "Executive agency."    ECF No. 52, Pl.'s Opp. To Defs.' Cross-Mot. for Summ. J. and Reply in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Opp.") at 4–8.    This argument is belied by the plain meaning of the relevant statutory text and D.C. Circuit precedent holding that the Library falls squarely within the Executive Branch.    Defs.' Mot. 8–11.

a.    The Library of Congress is an "establishment in the executive branch" under the FVRA for two fundamental reasons.    First, Congress has empowered the President to appoint and remove the Librarian of Congress for over two centuries.    Defs.' Mot. 3, 9–10; *see* 2 U.S.C. § 136-1(a) ("The President shall appoint the Librarian of Congress, by and with the advice and consent of

3

the Senate.").

Second, the Library of Congress, through the Copyright Office, exercises "important executive power," which makes the Library "squarely a component of the Executive Branch." *Med. Imaging & Tech. All. v. Libr. of Cong.*, 103 F.4th 830, 840 n.4 (D.C. Cir. 2024); *see Intercollegiate*, 684 F.3d at 1342 ("In this role [as copyright regulator] the Library is undoubtedly a component of the Executive Branch." (quotation omitted)); *Eltra Corp. v. Ringer*, 579 F.2d 294, 301 (4th Cir. 1978) ("it would appear indisputable that the operations of the Office of Copyright are executive."); *see also Perlmutter*, 2025 WL 2627965, at *10 (Walker, J., dissenting) ("The Register of Copyrights exercises executive power in a host of ways.").    The Library of Congress is thus squarely a part of the Executive Branch and falls within the plain meaning of the phrase "establishment in the executive branch."

   b.    Plaintiff asserts that D.C. Circuit precedent forecloses Defendants' position, *see* Pl.'s Opp. 4–5, but the cases she cites do not address the FVRA's application to the Library of Congress and so do not bind this Court.   *Id.* at 4.

   The first case, *Davis v. Billington*, 681 F.3d 377 (D.C. Cir. 2012), interpreted a different statutory scheme and offered only dictum on the Library's status under that scheme.   In *Davis*, the D.C. Circuit declined to create a new *Bivens* cause of action for a Library of Congress employee complaining about allegedly unconstitutional employment action.   *Id*. at 380–88.   The court discussed the Library's status in determining whether the Civil Service Reform Act (CSRA) provided an alternative remedial scheme, but the Library's precise status under the CSRA was ultimately irrelevant to the court's conclusion, and so the court's description of that status was dictum.   Moreover, the court of appeals cabined its discussion to the CSRA: "[The] term [Executive agency] … does not contain the Library of Congress *within the meaning of the statute,*

*see 5 U.S.C. § 7103(a)(3)*." *Id.* at 386 (emphasis added).   The cited statute refers separately to "an Executive agency" and the "Library of Congress."    Accordingly, *Davis*'s dictum reflects the unremarkable proposition that, if a statute refers separately to the Library and executive agencies—which the FVRA provisions do not—the Library is not an executive agency "within the meaning of th[at] statute."    *Id.*   That dictum has no relevance here.    Tellingly, the D.C. Circuit motions panel in this case did not treat *Davis* as controlling.    Plaintiff says this is "false," Pl.'s Opp. 4, but courts of appeals are not in the habit of relegating controlling precedent to "see also" cites.    *See Perlmutter*, 2025 WL 2627965, at *6 (Pan, J., joined by Childs, J., concurring).

The second case, *Haddon v. Walters*, 43 F.3d 1488 (D.C. Cir. 1995), is equally unavailing. As Defendants explained, Congress frequently employs a belt-and-suspenders approach to statutory interpretation, and the contextual factors justifying that approach here were not at play in *Haddon* and its analysis of whether the Executive Residence at the White House is an "executive agency" for purposes of 5 U.S.C. § 105.   Defs.' Mot. 16.   Plaintiff says Defendants have not explained why "the Executive Residence is different" than the Library of Congress even as she concedes its "unique status."   Pl.'s Opp. 5.   Moreover, Plaintiff simply ignores the other considerations underlying *Haddon*, including the existence of provisions in Title 3 of the U.S. Code that "address[ed] similar concerns with respect to the President's advisors and the staff of the Executive Residence," 43 F.3d at 1490, and a reluctance to undermine the "President's authority to manage his own household," Defs.' Mot. 16 (quoting *Haddon v. Walters*, 836 F. Supp. 1, 3 (1993)).

c.    Plaintiff's arguments regarding the statute's text fare no better.[2]    She says it is

---

[2]  The Department of Justice did not take the position that the Library of Congress is "part of the Legislative Branch."   Pl.'s Opp. 5 n.1.    The cited case—*America First Legal Foundation v. U.S. Government Accountability Office*, No. 1:25-cv-662 (D.D.C.)—concerns whether the Government Accountability Office is subject to FOIA.    In addressing that issue, the Department cited cases

"absurd on its face" that Congress would have employed a belt-and-suspenders approach in the various provisions of Title 5 she cites that separately list the Library of Congress in definitions of "agency." Pl.'s Opp. 5–6. It is far from absurd. At bottom, Plaintiff's objection rests on an exaggerated conception of the "canon against superfluity." Pl.'s Opp. 6. That canon is not a "silver bullet," *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019), because "redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication," *Barton v. Barr*, 590 U.S. 222, 239 (2020). Here, as Defendants explained, Congress would have had every reason to employ this belt-and-suspenders approach given the "Library's historical association with Congress," *Med. Imaging*, 103 F.4th at 840 n.4, and the longstanding precedent that the Library is *not* an "agency" for purposes of the APA or FOIA. Defs.' Mot. 13–15. Those concerns are not present for the FVRA. Plaintiff says they are because there is no meaningful difference between the term "Executive agency" incorporated by the FVRA and "agency," Pl.'s Opp. 6, but the definition of "Executive agency" (unlike "agency") is defined to include "an establishment in the executive branch," 5 U.S.C. § 104(1), which on its face encompasses the departments in the Executive Branch, like the Library. No belt-and-suspenders is needed. *See Stanley v. City of Sanford*, 606 U.S. 46, 56 (2025) (The canon against surplusage "does not require [a court] to favor an unusual meaning that will avoid surplusage over a more natural one." (quotation marks omitted)).

Even less relevant is Congress's inclusion of the Library of Congress in definitions of

---

concluding that the APA and FOIA did not apply to the Library. The Department did not argue that the Library is "part of the Legislative Branch," which is foreclosed by D.C. Circuit precedent. *See, e.g.*, *Med. Imaging*, 103 F.4th at 840 n.4.

"legislative branch agency."  Defs.' Mot. 12–13.  Congress is free to define terms in whatever way it chooses and the fact that it included the Library in a definition of "legislative branch agency" for purposes of provisions having nothing to do with the FVRA—and most outside Title 5—has no bearing on the interpretation of the phrase "establishment in the executive branch."  Plaintiff objects that one of these provisions is in Title 5—5 U.S.C. § 13101—but she ignores that provision's *express* limitation of its definition to "*this subchapter*."  Defs.' Mot. 13 (quoting 5 U.S.C. § 13101(4), (11)).[3]  Those provisions have no bearing on the interpretation of the FVRA.

Plaintiff thinks it noteworthy that Congress did not "use the term 'independent establishment' in the Library's organic statute on the numerous occasions that Congress has amended Title 2, Chapter 5 of the U.S. Code since [] Title 5's enactment in 1996."  Pl.'s Opp. 6 n.2.  That is irrelevant.  Congress enacted Title 5 in 1966 to consolidate the various laws related to the organization of the U.S. Government, and it was in that law that Congress first adopted the definition of "Executive agency" and "independent establishment" in 5 U.S.C. §§ 104 and 105. *See* Pub. L. No. 89-554, 80 Stat. 378 (Sept. 6, 1966).  The Library was established more than 150 years before Congress adopted Title 5, *see* Defs.' Mot. 3, and the fact that Congress did not re-write the entire U.S. Code post-1966 to conform to Title 5's terminology does not render the Library any less "an establishment in the executive branch."[4]

---

[3] Plaintiff's concern (Opp. 6) about "conflicting obligations on Library of Congress employees under the Ethics in Government Act" is misplaced.  Because "the specific governs the general," *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (brackets omitted), the Library of Congress is not an executive agency in the specific context of the Ethics in Government Act because the Act treats it as part of the legislative branch, *see* 5 U.S.C. § 13101(11)(F).

[4] Plaintiff all but abandons her argument that the FVRA does not apply because the Library is codified in Title 2 of the U.S. Code.  As Defendants explained, Congress has not enacted Title 2 into positive law, and the Library performs executive functions.  Defs. Mot. 12.  It is "irrelevant

d.      Finally, Plaintiff takes issue with the proposition that "[t]he most natural reading of the statute's text is that 'an establishment in the executive branch' under the FVRA includes the Executive Branch under the Constitution."  Defs.' Mot. 11; *see* Pl.'s Opp. 7–8, 11.  But Plaintiff provides no reason to assume, absent text to the contrary, that Congress intended for any inconsistency between the scopes of the Appointments Clause and the FVRA.  A court should interpret the FVRA to uphold, rather than undermine, the President's ability to "select those who were to act for him under his direction in the execution of the laws."  *Myers v. United States*, 272 U.S. 52, 117 (1926).

Plaintiff says Presidential appointment is irrelevant because the "President nominates and the Senate confirms the Comptroller General of the Government Accountability (GAO)," but the FVRA does not apply to the GAO.  Pl.'s Opp. 8 n.5.  That is true, however, only because the FVRA *expressly* excludes the GAO.  *Id.* (citing 5 U.S.C. § 3345(a)).  Absent that express exclusion, the GAO clearly would be within the FVRA.  *See* 5 U.S.C. § 104(2) (expressly including the GAO within definition of "independent establishment").  And the fact that the GAO is specifically listed in 5 U.S.C. § 104 does not detract from the conclusion that the Library is "an establishment in the executive branch."  The GAO's enabling statute states that the GAO "is an instrumentality of the United States Government independent of the executive departments." 31 U.S.C. § 702.  Given that language, it was necessary to specifically list the GAO in 5 U.S.C. § 104(2) to avoid any argument that the language in the GAO's enabling statute precludes it from being considered "an establishment in the executive branch."  There is no such language in the Library's enabling statute, and it falls squarely within the statutory language "an establishment in

_____

that the Office of the Librarian of Congress is codified under the legislative branch."  *Eltra Corp.*, 579 F.2d at 301.

the executive branch."

> **2.    Alternatively, the President's designation of Mr. Blanche as acting Librarian is independently authorized by Article II of the Constitution.**

Even if the FVRA does not apply to the Library of Congress, Article II authorized the President's designation of Mr. Blanche.  Defs.' Mot. 18–22.  In light of the Constitution's mandate that the President "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, and the Framers' demand for "unity in the Federal Executive," *Printz v. United States*, 521 U.S. 898, 922 (1997), the President has the "power to name acting officials when necessary to fulfill his constitutional duties, at least where no statute precludes it," *Temporary Presidential Designation of Acting Board Members of Inter-American Foundation & U.S. African Development Foundation*, 49 Op. O.L.C. __, at 4 (Mar. 14, 2025) (slip op.); *see* Defs.' Mot. 19.  The D.C. Circuit has in dicta suggested that this implied appointment power—necessary to preserve the "vigor and accountability" of the Executive Branch, *Printz*, 521 U.S. at 922—may last for a "reasonable period of time" awaiting the submission of a nomination to the Senate, *Williams v. Phillips*, 482 F.2d 669, 670 (D.C. Cir. 1973).  Here, no "limiting legislation" prevents the President's designation of Mr. Blanche, *id.* at 670, and Mr. Blanche removed Plaintiff on his second day as acting Librarian, *see* Defs.' Mot. 6.

Plaintiff relies heavily on the interlocutory decision in *Aviel v. Gor*, No. 25-5105, 2025 WL 1600446 (D.C. Cir. June 5, 2025), which concluded that the President does not have "unfettered discretion" in designating acting principal officers.  Pl.'s Opp. 8–9.  Defendants have never argued that the President has "unfettered discretion to designate acting principal officers."  *Aviel*, 2025 WL 1600446 at *2 (Katsas, J., joined by Pillard, J., concurring); *Perlmutter*, 2025 WL 2627965, at *5 n.1 (Pan, J., joined by Childs, J.) (same).  Instead, Defendants have argued only that the President may, to ensure no break in Article II's "chain of command," *Free Enter. Fund v.*

*Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 498 (2010), designate an acting officer "to serve only 'for a reasonable period of time' until the President can nominate and secure Senate confirmation of a replacement." Defs.' Mot. 21 (quoting *Williams*, 482 F.2d at 670). The D.C. Circuit motions panel did not consider this argument. And Plaintiff's suggestion (Opp. 9) that "a reasonable period of time" is "no limitation" is a contradiction in terms.

Plaintiff insists that reading the Take Care Clause to allow the temporary designation of an acting principal officer would render both the Recess Appointments Clause and the Appointments Clause "a nullity." Pl.'s Opp. 10. That is false. The Recess Appointments Clause addresses a specific problem (vacancies during a recess) and offers a solution tailored to that problem. Defs.' Mot. 20–21. The Take Care Clause's provision of a *different* solution to a *different* problem does not render the Recess Appointments Clause meaningless, and it no more renders the Appointments Clause a "nullity" than does the Recess Appointments Clause itself. *Cf.* Pl.'s Opp. 10.

The D.C. Circuit's decision in *Williams v. Phillips*, 482 F.2d 669 (D.C. Cir. 1973), did not "reject[]" Defendants' reading of the Take Care Clause. Pl.'s Opp. 11 (emphasis omitted). To be sure, the Court acknowledged the general rule of Senate confirmation of principal officers (which Defendants do not contest). 482 F.2d at 670. But it went on to recognize that "it could be argued that the intersection of the President's constitutional obligation to 'take care that the laws be faithfully executed' and his obligation to appoint the director of OEO 'with the Advice and Consent of the Senate' provides the President an implied power, in the absence of limiting legislation, … to appoint an acting director for a reasonable period of time before submitting the nomination of a new director to the Senate." *Id.* The court of appeals did not limit this theory to "abate an emergency," Pl.'s Opp. 11; that was the district court's rationale, which the court of appeals did not adopt, *see* 482 F.2d at 670 & n.1. Nor is the "reasonable period of time" limitation from *Williams*

10

problematic for Defendants. Plaintiff focuses on the passage of time since Mr. Blanche was designated in May of this year, but the relevant metric is the duration of Mr. Blanche's service at the time he "caus[ed]" the removal of Plaintiff by designating Mr. Perkins as acting Register of Copyrights. Compl. ¶ 31. That happened *one day* after Mr. Blanche's designation. Defs.' Mot. 5–6.

Finally, there is no merit to Plaintiff's suggestion that the President's power to temporarily designate an acting principal officer depends on *how* the vacancy arose. Pl.'s Opp. 11. Congress gave the President the prerogative to appoint the Librarian, who is subject to at-will removal (as Plaintiff concedes). The President's constitutional authority to temporarily fill that vacancy cannot possibly be weaker when the vacancy has arisen due to the exercise of his constitutional removal power rather than the actions of the principal officer (*e.g.*, by resignation) or otherwise.

### B.     The President had the authority to remove the Register directly.

Even if Plaintiff is correct that Mr. Blanche lacked the authority to terminate her, the President had the Article II authority to remove Plaintiff directly. Defs.' Mot. 22–26. The Register of Copyrights exercises executive power, *Med. Imaging*, 103 F.4th at 839, and the President has the "power to remove … those who wield executive power on his behalf." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020). Although the President would normally exercise this power through the Librarian, if the President is unable to designate an acting Librarian, then he may act directly. Any other result would insulate the Register of the Copyright (an inferior officer) from Presidential control, contrary to Article II. *See, e.g.*, *id.* at 203–04.

Plaintiff reiterates (Opp. 13) her reliance on the D.C. Circuit's order in *Aviel*, but the divided panel's assessment of this question is not binding on this Court. Nor do the cases *Aviel* cited resolve this issue. *Free Enterprise Fund* said only that "it is *ordinarily* the department head, rather

than the President, who enjoys the power of removal" of an inferior officer.   561 U.S. at 493 (emphasis added).   And *In re Hennen*, 38 U.S. (13 Pet.) 230 (1839), recognized that this normal rule is "qualified by [] 'constitutional provision[s], or statutory regulation.'"   *Aviel*, 2025 WL 1600446, at *4 n.2 (Rao, J., dissenting) (quoting *Hennen*, 38 U.S. at 259).   These cases support the unremarkable proposition that, normally, the President must exercise his removal power through the department head, who "is and must be the President's *alter ego* in the matters of that department."   *Myers*, 272 U.S. at 133.   These cases do not provide support for the proposition that a department is free from presidential control when the President is unable to temporarily designate a department head.   If the President cannot exercise his "removal power" through someone else, he must be able to exercise it himself.   *Free Enter. Fund*, 561 U.S. at 495.

Plaintiff says the President could still exercise control over the Library because Robert Newlen is acting Librarian pursuant to Library of Congress regulations—but those regulations apply only when the Librarian's absence is temporary.   Defs.' Mot. 25.   Even if it were otherwise, Plaintiff supplies no authority for the proposition that the Library's regulations can deprive the President of his authority to supervise and remove those exercising executive power.

Here, the President removed the former Librarian of Congress—a removal that was indisputably lawful.   *E.g.*, Pl.'s Opp. 11 (acknowledging the President's "authority to fire the Librarian").   With the principal office vacant, President had direct authority over the inferior officer.   It makes no difference that the President has not yet nominated a new Librarian.   *Cf.* Pl.'s Opp. 15.   The relevant time frame for assessing the lawfulness of Plaintiff's removal is when the removal occurred, which was two days after the President removed the Librarian.   *See* Defs.' Mot. 5–6.   Obviously, the President could not have secured Senate confirmation of a new Librarian to supervise the Register within that timeframe.   *Cf.* Pl.'s Opp. 15.   More fundamentally, Plaintiff's

argument would give the Senate an effective veto over the President's ability to exercise control over the Executive Branch, which is incompatible with Article II's mandate and the separation of powers.   Defs.' Mot. 23.   Although invoking the Constitution's "original meaning," Pl.'s Opp. 15, Plaintiff's view is one that the Founders rejected.   *See Buckley v. Valeo,* 424 U.S. 1, 129 (1976) ("[T]he debates of the Constitutional Convention, and the Federalist Papers, are replete with expressions of fear that the Legislative Branch of the National Government will aggrandize itself at the expense of the other two branches."); *Free Enter. Fund*, 561 U.S. at 483 ("Since 1789, the Constitution has been understood to empower the President to keep these officers accountable—by removing them from office, if necessary.").

Finally, Plaintiff objects that Defendants have not identified a case endorsing direct Presidential removal of an inferior officer.   Pl.'s Opp. 13–14.   But "the President's removal power is the rule, not the exception."   *Seila Law*, 591 U.S. at 204; *cf. Collins v. Yellen*, 594 U.S. 220, 248 (2021).   And Plaintiff has not proven that an exception exists.   The statute creating the office of Register of Copyrights—17 U.S.C. § 701—does not limit the President's ability to remove the Register.

## II.    Plaintiff is not entitled to reinstatement or a permanent injunction.

Even if Plaintiff were to prevail on the merits, the Court should deny her requests for reinstatement and a permanent injunction.

### A.    Plaintiff is not entitled to reinstatement.

A federal court is limited to the equitable remedies that "were traditionally accorded by courts of equity."   *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999); *accord CASA*, 606 U.S. at 832.   Traditionally, courts of equity were unable to "stay[] [the] removal of a federal officer."   *Baker v. Carr*, 369 U.S. 186, 231 (1962); *see, e.g., In re Sawyer*,

124 U.S. 200, 212 (1888) ("[A] court of equity has no jurisdiction over the appointment and removal of public officers."); Defs.' Mot. 27–28 (citing cases).   And when Congress attempts to add to a federal court's equity powers, it does so explicitly.   *See, e.g.*, 42 U.S.C. § 2000e-5(g)(1) (allowing for reinstatement in the light of a finding that an employer "has intentionally engaged in or is intentionally engaging in an unlawful employment practice").   No such statute exists here.   The Court therefore cannot order reinstatement.   After all, Plaintiff has no "separate right … in the powers of the[] office" she once occupied, *Barnes v. Kline*, 759 F.2d 21, 50 (D.C. Cir. 1984) (Bork, J., dissenting), *judgment vacated sub nom. Burke v. Barnes*, 479 U.S. 361 (1987), and any harm caused by her removal can be remediated by back pay, *Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.*, 64 F.4th 1354, 1364 (D.C. Cir. 2023); *see* Defs.' Mot. 31.

Plaintiff responds that reinstatement is unnecessary "because she was never lawfully terminated in the first place."   Pl.'s Opp. 16–17.   But a court of equity's inability to "stay[] [the] removal of a federal officer" is not merits-dependent, *Baker*, 369 U.S. at 231, and Plaintiff fails to point to anything in equity's tradition providing otherwise.   Plaintiff also argues that reinstatement is not needed because of the D.C. Circuit's injunction pending appeal. Pl.'s Opp. 17.   That injunction is by definition temporary and will dissolve upon this Court's entry of final judgment, which will moot the appeal.   *Capriole v. Uber Techs., Inc.*, 991 F.3d 339, 343 (1st Cir. 2021).   It is for this Court to decide, in the first instance, whether Plaintiff is entitled to reinstatement.   She is not.   Defs.' Mot. 26–28.

Plaintiff argues otherwise based on various district court decisions.   Pl.'s Opp. 17.   Of course, those decisions are not binding, *CASA*, 606 U.S. at 858 n.17, and cannot authorize a remedy the Supreme Court has forbidden.   In any event, Plaintiff overstates the import of those decisions. For example, in *Grundmann v. Trump*, 770 F. Supp. 3d 166 (D.D.C. 2025), the court expressed

14

skepticism as to whether reinstatement "can be squared with *Grupo*" and did not ultimately decide the issue.  *Id*. at 182–84.  And *Davis v. Billington*, 51 F. Supp. 3d 97 (D.D.C. 2014), did not address the separation of powers issues, nor evaluate the availability of reinstatement as an historical matter.  *See id*. at 114.

Plaintiff next turns to the D.C. Circuit.  She relies principally on the unpublished stay decision in *Harris v. Bessent*, No. 25-5037, 2025 WL 1021435, at *2 (D.C. Cir. Apr. 7, 2025).  But *Harris* did not "definitively resolve[] the remedies issue[]."  *Aviel*, 2025 WL 1600446 at *2 n.2 (Katsas, J., joined by Pillard, J., concurring).  Nor did *Severino v. Biden*, 71 F.4th 1038 (D.C. Cir. 2023), or *Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996)).  Those cases addressed Article III standing and neither ordered any form of relief, must less reinstatement or *de facto* reinstatement.

Finally, Plaintiff argues that the Supreme Court has done away with the traditional limits on equitable authority in this area.  Pl.'s Opp. 18–19 (citing *Service v. Dulles*, 354 U.S. 363 (1957) and *Vitarelli v. Seaton*, 359 U.S. 535 (1959)).  Neither case addresses limits on equitable authority, and lower courts cannot infer that the Supreme Court overturns precedent *sub silentio*.  *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000).  Moreover, neither case implicated the separation of powers at play here concerning the President's authority to control an inferior officer exercising "important executive power."  *Med. Imaging*, 103 F.4th at 840 n.4; *see Service*, 354 U.S. at 365 (concerning "a Foreign Service Officer in the Foreign Service of the United States"); *Vitarelli*, 359 U.S. at 536 (concerning an "Education and Training Specialist in the Education Department of the Trust Territory of the Pacific Islands").

Besides, the Supreme Court has now granted certiorari in *Trump v. Slaughter*, No. 25-332 and *Trump v. Cook*, No. 25A312, which raise the issue of whether a federal court has authority to "prevent a person's removal from public office, either through relief at equity or at law."  *Trump*

*v. Slaughter*, 606 U.S. __, 2025 WL 2692050 (2025).    This Court should not order such extraordinary relief when the Supreme Court is currently considering its validity, particularly as the Supreme Court deferred ruling on Defendants' application for a stay of the D.C. Circuit's injunction pending resolution of *Slaughter* and *Cook*.    *See Blanche v. Perlmutter*, 25A478 (Nov. 26, 2025).

> **B.    Plaintiff is not entitled to a permanent injunction.**

> > **1.    A permanent injunction cannot be awarded absent extraordinary circumstances.**

Plaintiff has not demonstrated that she is entitled to permanent injunctive relief.    As a discharged federal employee, Plaintiff is not entitled to injunctive relief unless she can demonstrate that this case presents a "genuinely extraordinary situation."    *Sampson*, 415 U.S. at 92 n.68. Defs.' Mot. 29–30.    There is no merit to Plaintiff's arguments that *Sampson*'s "extraordinary situation" standard is inapplicable at the summary judgment stage.

Plaintiff argues that *Sampson*'s standard is limited to preliminary injunctions because the Court's opinion refers to "preliminary injunctive relief" and "temporary relief."    Pl.'s Opp. 21. Of course, the Court's opinion uses those terms because the case arose in that procedural posture; the Court's use of language reflecting that posture hardly suggests an intent to limit the principles underlying its holding to that posture.    That is especially true, given that "[t]he standard for a preliminary injunction is essentially the same for a permanent injunction," except for the strength of the merits showing, *Amoco Prod. Co. Vill. Of Gambell*, 480 U.S. 531, 546 n.12 (1987)—a principle Plaintiff does not contest.    Tellingly, Plaintiff still has not identified even one case adopting her reading of *Sampson*, and she has no meaningful response to the numerous cases from this District applying *Sampson* in the context of a request for a permanent injunction.    Defs.' Mot. 30 (collecting cases).    She also concedes that no court in this Circuit has accepted her view that *Sampson* applies only in the context of an administrative review process; even the D.C. Circuit's

16

motions panel applied *Sampson*'s "extraordinary situation" standard.    *Perlmutter*, 2025 WL
2627965, at *1, *4–7 (Pan, J., joined by Childs, J., concurring).

### 2.    Plaintiff has failed to show irreparable harm.

As this Court has already held, Plaintiff has failed to show that she will suffer irreparable
harm without an injunction.    Defs.' Mot. 31–37; *see generally Perlmutter v. Blanche*, No. 25-cv-
1659, 2025 WL 2159197 (D.D.C. July 30, 2025).    This Court should reach the same conclusion
again.

The deprivation of a purported "statutory right to function" is not irreparable harm.    Defs.'
Mot. 31–34.[5]    Plaintiff does not seriously dispute that proposition—no doubt because the D.C.
Circuit motions panel *agreed* that "Perlmutter's inability to perform her statutory functions likely
does not, in itself, constitute *irreparable* harm."    *Perlmutter*, 2025 WL 2627965, at *7 (Pan, J.,
joined by Childs, J., concurring).    Instead, like the motions panel, Plaintiff argues that her removal
is uniquely problematic (and qualifies as a "genuinely extraordinary situation") on the theory that
the Copyright Office is in "the Legislative Branch" and her removal constitutes a "grave intrusion
by the President into the constitutional powers of a coordinate branch of government."    Pl.'s Opp.
23, 24 (quoting *Perlmutter*, 2025 WL 2627965, at *7 (Pan, J., joined by Childs, J., concurring)).
That is wrong.    As Defendants have explained, the Register of Copyrights *is not* a Legislative
Branch official.    Defs.' Mot. 34–35.    The Librarian is a principal *Executive Branch* officer and the
Register of Copyrights, as an appointee of the Librarian, is an inferior *Executive Branch* officer.
*Id*.    This conclusion is compelled by D.C. Circuit precedent holding that the Library is

---

[5] Plaintiff's theory of irreparable harm based on a supposed "inability to perform statutory duties"
fails for the same reasons as her statutory right to function theory.    Defs.' Mot. 35; *Perlmutter v.
Blanche*, 2025 WL 2159197, at *7.    Plaintiff does not dispute that the theories are materially
indistinguishable.

"undoubtedly a 'component of the Executive Branch.'"   *Intercollegiate*, 684 F.3d at 1341–42; *see also Med. Imaging*, 103 F.4th at 833, 840 n.4.   That precedent controls.

Plaintiff does not actually defend the D.C. Circuit motions panel's designation of the Register of Copyrights as a Legislative Branch official.   Nor does she dispute the serious constitutional issue that would arise if an officer who wields significant *Executive* power is housed in the *Legislative* Branch.   Defs.' Mot. 35.   Instead, she conjures a separation-of-powers concern on the theory that "Congress has not ceded to the executive branch unilateral authority to appoint an official to lead the Library," who must be confirmed by the Senate.   Pl.'s Opp. 24.   This proves nothing.   The fact that the Librarian must be Senate-confirmed—like the Attorney General or the Secretary of State—does not transform the Librarian or the Register of Copyrights into Legislative Branch officials.   Ultimately, all this case involves is the President's exercise of control over Executive Branch officers.   That is not "an extraordinary situation"; it is Article II's mandate.

Plaintiff's reliance on purported harms to the Library and Congress are independently flawed because they posit harms to those institutions, not to Plaintiff.   Defs.' Mot. 35–36.   Plaintiff does not dispute that she must show "irreparable harm *to her* if an injunction does not issue."   *Id.* at 36 (quoting *English v. Trump*, 279 F. Supp. 3d 307, 335 (D.D.C. 2018)); *see also Perlmutter*, 2025 WL 2159197, at *7 ("injuries to third parties are not a basis to find irreparable harm").   So, she relies on those institutional harms only as evidence that her removal was "extraordinary."   Pl.'s Opp. 24.   But even now, she offers only speculation about "unlawful access to confidential congressional correspondence and work product" and the "security of the copyright registration system," Pl.'s Opp. 25, and the suggestion of such speculative harm rings particularly hollow given that *Congress* put the President in charge of the Library of Congress, Defs.' Mot. 26.

Nor can Plaintiff sweep away the fundamental distinctions between this case and others decided by courts in this District.   Pl.'s Opp. 26–27.   Defendants explained why those other cases are fundamentally different from this one—either because (1) they involved offices that required Senate confirmation and were housed in multi-member independent agencies (unlike the Library and the Register of Copyrights), or (2) the organization from which the plaintiff was removed was at risk of being fundamentally altered (also unlike here).   Defs.' Mot. 32–33.   Plaintiff acknowledges the first distinction but says it does not matter because the Register is still a "'unique' position."   Pl.'s Opp. 26.   But even the D.C. Circuit motions panel conceded that the inability to perform a "unique" role "does not, in itself, constitute irreparable harm."   *Perlmutter*, 2025 WL 2627965, at *7 (Pan, J., joined by Childs, J., concurring) (emphasis omitted).   And Plaintiff's theory that removal from a *less* significant position constitutes *greater* harm makes no sense and contradicts the district court authorities on which she purports to rely.   Defs.' Mot. 32–33 (collecting cases).   Nor do *Berry v. Reagan*, Civ. A. No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983), or *Aviel v. Gor*, 780 F. Supp. 3d 1 (D.D.C. 2025), support Plaintiff's argument.   Those cases presumed that reinstatement was an available remedy and so found irreparable harm where "the survival of the plaintiff's organization was at stake."   Pl.'s Opp. 26.   Reinstatement is not an available remedy and the absence of judicial power to order Plaintiff reinstated to her post cannot constitute irreparable harm for an injunction ordering that very relief.

Finally, Plaintiffs argue that an injunction and reinstatement are necessary to avoid a world in which "the President could illegally fire" even "the Senate parliamentarian" or a "U.S. District Judge[]."   Pl.'s Opp. 27.   A court may not "restrain an executive officer from making a wrongful removal *of a subordinate appointee*."   *White v. Berry*, 171 U.S. 366, 377 (1898).   That principle ensures that courts do not "invade the domain … of the executive and administrative departments,"

19

protects "the discretion which … the Executive Department has in all such matters," and avoids "the utmost confusion in the management of executive affairs."  *Id*. at 376, 378.   That principle applies here because the Register of Copyrights is an Article II inferior officer, but it would not apply to a hypothetical case where a President attempts to remove an Article I officer or an Article III judge.

### 3.    The balance of harms and public interest weigh strongly against a permanent injunction.

Because the Register of Copyrights exercises important executive powers, Plaintiff's reinstatement would cause significant harm to the President by forcing him to employ someone against his will.   Defs.' Mot. 37–38.   The Supreme Court has recognized that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty."  *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025); *see Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025) (same).   Those holdings control.

Plaintiff's responds that the public interest cuts in her favor because her removal is unlawful. Pl.'s Opp. 28.   Because Plaintiff is wrong on the merits, this argument is a non-starter.   Even if Plaintiff was correct, *Wilcox* and *Boyle* apply in the case of a "*wrongfully* removed officer." *Wilcox*, 145 S. Ct. at 1415 (emphasis added); *see Boyle*, 145 S. Ct. at 2654.

Moreover, Plaintiff cannot evade *Wilcox* and *Boyle* on the theory that the Register of Copyrights is less "executive" than the officials in those cases.   Pl.'s Opp. 28–29; *see Perlmutter*, 2025 WL 2627965, at *8 (Pan, J., joined by Childs, J., concurring) (concluding that the Copyright Director does not exercise "considerable or substantial executive power").   To begin, the suggestion that the Copyright Office is less "executive" because "the Constitution vests *Congress* … with the power to administer the nation's copyright system" is absurd.   Pl.'s Opp. 28.

20

The Constitution also gives Congress the power "To regulate Commerce," "To coin Money," and "To provide and maintain a Navy," U.S. Const. art. I, § 8—but that does not make the Secretaries of Commerce, Treasury, and Navy any less "executive." Plaintiff's next objection that the Register of Copyrights has only "narrow" regulatory authority, Pl.'s Opp. 29, is foreclosed by the D.C. Circuit's holding that the Copyright laws "give the Register and the Librarian *significant* authority to 'promulgate copyright regulations.'" *Med. Imaging*, 103 F.4th at 839 (emphasis added); *see also id.* at 833 (Register has "broad authority … to make copyright rules"); *see also Perlmutter*, 2025 WL 2627965, at *10 (Walker, J., dissenting) (recognizing that the "Register of Copyrights exercises executive power in a host of ways"); Defs.' Mot. 4. Besides, even if the Register exercised somewhat lesser executive authority, "*Wilcox* and *Boyle* cover *any* officer 'exercising the executive power.'" *Perlmutter*, 2025 WL 2627965, at *11 (Walker, J., dissenting).

### 4. Even if injunctive relief were available, the Court should not enter the broad injunction Plaintiff requests.

At a minimum, any injunction may be no broader than necessary to provide "complete relief *to the plaintiff[]*," *CASA*, 606 U.S. at 851, and so "the most the Court could order would be an injunction directed at enabling Plaintiff to perform the duties of her former post." Defs.' Mot. 38–39.

Plaintiff does not dispute this limit on injunctive relief. Even so, she argues that a broader injunction is necessary to afford her "complete relief" because the Librarian's supervisory role over the Register of Copyrights entails "the authority to appoint and remove." Pl.'s Opp. 30. That is a non-sequitur. Plaintiff's injury is not a lack of supervision by the Librarian, but her removal from serving as Register of Copyrights; an injunction reinstating her to that post and enjoining interference with her ability to perform the duties of that office cures that injury. Defs.' Mot. 38–39. Limitations on the *Librarian's* ability to fully supervise the Register (*e.g.*, through removal)

21

is not a harm to Plaintiff, but to the Librarian; if anything, Plaintiff would benefit from the greater autonomy. She may well prefer a return to the status quo ante, but a federal court's equitable powers extend only so far as to remedy *her* injury—not to recreate the world as she would prefer it. *CASA*, 606 U.S. at 851; *accord Perlmutter*, 2025 WL 2627965, at *1 (limiting injunction pending appeal to prohibiting Defendants from "interfering with appellant's service as Register of Copyrights").

Otherwise, Plaintiff criticizes Defendants for not offering "answers" to "a host of questions" she raises. Pl.'s Opp. 30. The fact that there may be "questions" about the application of any injunctive relief enabling Plaintiff to perform the duties of the Register is no basis for entering an injunction that exceeds federal courts' authority, and Defendants' suggestion (Opp. 31) that an expansive injunction is allowed to remedy "a violation of the Constitution" is foreclosed by *CASA*, which also involved constitutional claims.

### C.    Even assuming that Plaintiff is entitled to declaratory relief, that relief must be limited to a declaration that her removal was unlawful.

Declaratory relief is limited by the same "equitable principles" an injunctive relief. Defs.' Mot. 39. Accordingly, "reinstatement by declaratory relief is unavailable," as is declaratory relief broader than necessary to remedy Plaintiff's injuries. *Id.* at 40. Plaintiff provides no authority to the contrary.

## CONCLUSION

The Court should deny Plaintiff's motion for summary judgment and grant Defendants' cross-motion for summary judgment.

Dated: December 8, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

CHRISTOPHER R. HALL
Assistant Branch Director
Federal Programs Branch

*/s/ Benjamin Hayes*
BENJAMIN HAYES
Senior Counsel to the Assistant Attorney General,
Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-8214
Benjamin.T.Hayes@usdoj.gov

*Counsel for Defendants*