**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SHIRA PERLMUTTER, <br><br> *Plaintiff,* <br><br> v. <br><br> TODD BLANCHE *et al.*, <br><br> *Defendants*. | Case No. 1:25-cv-01659-TJK |

**SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT........................................................................................................................ 2

I.      The FVRA Did Not Authorize Blanche to Serve as Acting Librarian ............................... 2

II.     *Slaughter* Confirms that the President Did Not Have Inherent Article II Authority to Remove Ms. Perlmutter Directly ...................................................................... 2

III.   *Slaughter* Confirms that the President Did Not Have Inherent Article II Authority to Install Blanche as Acting Librarian ................................................................. 6

IV.   *Cook* Forecloses Defendants' Argument That No Remedy Is Available .......................... 7

CONCLUSION..................................................................................................................... 9

**INTRODUCTION**

*Trump v. Slaughter*, No. 25-332, 2026 WL 1855612 (U.S. June 29, 2026), and *Trump v. Cook*, No. 25A312, 2026 WL 1855613 (U.S. June 29, 2026), do not resuscitate Defendants' baseless justifications for Ms. Perlmutter's purported removal.  Indeed, the Supreme Court itself has already signaled as much.  The Court deferred Defendants' stay application in this very case specifically pending its decisions in *Slaughter* and *Cook*.  *See Blanche v. Perlmutter*, No. 25A478 (U.S. Nov. 26, 2025).  The day after it decided them, the Court denied the application in this case with no noted dissent, leaving in place the order permitting Ms. Perlmutter to continue serving as Register of Copyrights.  *See Blanche v. Perlmutter*, No. 25A478 (U.S. June 30, 2026).

Because Ms. Perlmutter's position as Register of Copyrights makes her an inferior officer of the United States who is supervised by the Librarian of Congress, rather than the President, the principal holdings of *Slaughter* and *Cook* do not bear on the questions presented here.  To the extent the cases are relevant at all, they cut against the government's arguments.  As set forth below: (1) *Slaughter* and *Cook* leave undisturbed the D.C. Circuit precedents that bind this Court to conclude that the FVRA does not cover the Library of Congress, such that the President could not properly have appointed Blanche as acting Librarian; (2) *Slaughter* did not unsettle the established rule that the President has no inherent power to remove an inferior officer whose appointment Congress has vested in a department head, and affirmatively refutes Defendants' extraordinary post hoc theory that the President has inherent Article II authority to remove Ms. Perlmutter directly; (3) *Slaughter*'s Appointments Clause reasoning undercuts Defendants' claim that the President has extra-statutory authority to install a temporary Librarian; and (4) *Cook* forecloses Defendants' argument that no equitable remedy is available.  Accordingly, this Court should grant summary judgment in Plaintiff's favor.

1

**ARGUMENT**

## I.   The FVRA Did Not Authorize Blanche to Serve as Acting Librarian

Defendants' primary theory turns on a question of statutory interpretation that neither *Slaughter* nor *Cook* had occasion to address: whether Congress designated the Library of Congress as an "Executive agency" for purposes of the FVRA.  *See* Pl.'s Br. at 10–11, ECF No. 49-1; Pl.'s Reply at 4–8, ECF No. 53.  As the D.C. Circuit concluded in this very case, "[t]he plain language of the statute indicates that the Library of Congress is not an 'Executive agency' for purposes of the FVRA."  *Perlmutter v. Blanche*, No. 25-5285, 2025 WL 2627965, at *5 (D.C. Cir. Sep. 10, 2025) (Pan, J., concurring, joined by Childs, J.), *reh'g en banc denied* (Oct. 1, 2025).  And, as explained in Plaintiff's briefs, Defendants' contrary argument is squarely foreclosed by the D.C. Circuit's decision in *Davis v. Billington*, 681 F.3d 377, 386 (D.C. Cir. 2012) (holding that "Executive agency" is a "narrowing term" that "plainly does not contain the Library of Congress within the meaning of the statute").  *Accord Haddon v. Walters*, 43 F.3d 1488, 1490 (D.C. Cir. 1995) (concluding that the Executive Residence is not an "Executive agency" because, as here, the term "Executive agency" is used in distinction to the Executive Residence in Title 5).  *See also* Pl.'s Br. at 10–12; Pl.'s Reply at 4–8.

Nothing in *Slaughter* or *Cook* bears on the statutory question of whether Congress designated the Library of Congress as an "Executive agency" for purposes of Title 5.

## II. *Slaughter* Confirms that the President Did Not Have Inherent Article II Authority to Remove Ms. Perlmutter Directly

In briefing summary judgment, Defendants claimed that, even if Blanche was not properly serving as acting Librarian (and thus could not validly have removed Ms. Perlmutter), the President had inherent Article II authority to remove her, despite that she is an inferior officer supervised and appointed by the Librarian.  *See* Defs.' Opp. at 22–26, ECF No. 51.  For a series

2

of reasons, Defendants' extraordinary theory—which the D.C. Circuit has already rejected twice, and in this very case—is irreconcilable with the reasoning of *Slaughter*.

*First*, the Court repeatedly grounded the President's authority to remove his direct subordinates on the proposition that "[h]e who appoints may remove." *Slaughter*, 2026 WL 1855612, at *9 (quoting 4 Papers of Thomas Jefferson 281 (1951)); *accord id.* at *9–10 (attributing the same view to Alexander Hamilton, James Monroe, and John Quincy Adams). The *Slaughter* Court found this principle to be embedded in the "carefully" chosen words of the Appointments Clause, which entitle only the President to "'appoint' the principal 'Officers of the United States.'" *Id.* at *9. The Court emphasized that, "[i]f the Framers intended to depart" from the convention that the power to appoint includes the power to remove, "one might have expected them to say so." *Id.* And, as the majority explained in defense of its account of the Decision of 1789, Justice Story concluded that the executive's removal power "could not be abridged by the legislature; *at least, not in cases, where the power to appoint was not subject to legislative delegation.*" *Id.* at *19 n.6 (quoting 3 Story § 1531, at 390, n.1) (emphasis added).

As applied here, because the Register of Copyrights is an inferior officer, the Constitution provides that "the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. Congress thought it proper for the Librarian of Congress to supervise the Register of Copyrights and to appoint the Register. 17 U.S.C. § 701. If the Framers had intended for individuals appointed by a Head of Department to nevertheless be removable directly by the President, "one might have expected them to say so."

This was not, of course, the Court's first occasion to consider who may remove an inferior officer. The *Slaughter* Court left in place (and, indeed, reaffirmed) a series of cases that preserved Congress's power to restrict the removal of inferior officers appointed by department

3

heads.  *See Myers v. U.S.*, 272 U.S. 52, 161–163 (1926) (reaffirming *U.S. v. Perkins*, 116 U.S. 483, (1886)); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 493–94 (2010) (same); *Seila Law LLC v. CFPB*, 591 U.S. 197, 218 (2020) (describing the inferior-officer cases as settled "exceptions").  *See also Comans v. Exec. Off. of the President*, 2026 WL 2100037, at *1 (E.D. Va. July 21, 2026) (concluding that *Slaughter* left the *Perkins* line of cases intact and that "judicial restraint requires" the court to hold that the President lacks inherent Article II authority to remove an inferior officer).  And the first precedent *Slaughter* invoked for the removal power was *Ex parte Hennen*—the very decision holding that the President "has certainly no power to remove" an inferior officer whose appointment Congress vested elsewhere.  38 U.S. (13 Pet.) 230, 260 (1839); *Slaughter*, 2026 WL 1855612, at *11 (citing *Hennen* as the Court's "first case on the subject").

The Court's emphasis on the textual and historical basis for the removal authority necessarily belies Defendants' theory that the President has a freewheeling removal authority with no textual or historical basis.

*Second*, the historical sources that the Court relied on to decide *Slaughter* limit the President's removal authority to principal officers under his direct supervision.  The Decision of 1789—the foundation of *Slaughter*'s historical account—resolved only the President's power to remove the department heads he himself appointed with the Senate's consent.  *See* 2026 WL 1855612, at *9–10.  The Court explicitly acknowledged this, describing Justice Story's view that the Decision of 1789 "expressed the sense of the legislature, that the power of removal by the executive [of principal officers] could not be abridged by the legislature."  *Id.* at *19 (brackets in original).  *Slaughter* also relied on Federalist No. 72 for the proposition that persons committed to the President's "immediate management" are "the assistants or deputies of the Chief Magistrate" who "derive their offices from his appointment, at least from his nomination," *id.* at

4

*8, and observed that the Constitutional Convention created "'a unitary and accountable President, standing under law, yet over' his department heads," *id.* (quoting A. Amar, Some Opinions on the Opinion Clause, 82 Va. L. Rev. 647 (1996)). The department head here is the Librarian—not the Register. The Librarian therefore serves as the President's subordinate, and the Register serves as the Librarian's subordinate. Under the logic of *Slaughter*, the power to remove the Register belongs to the Librarian alone.

*Third*, *Slaughter* reaches only principal officers that perform activities "well within the heartland of executive power." *Id.* at *18. Nor did it "determine the fate of officials not before [the Court]." *Id.* It would therefore be particularly inappropriate to extend *Slaughter* here, where the Register is an inferior officer who exercises significant legislative authority on behalf of Congress. The D.C. Circuit panel majority has said as much. It concluded that the Register was "assign[ed] prominent Congress-facing duties" and her "primary role is to advise Congress." *Perlmutter*, 2025 WL 2627965, at *8–9. The panel similarly emphasized that Defendants' actions here interfered with that very legislative work for Congress. *Id.* at *9. Moreover, the Register sits squarely in *Slaughter*'s reserved territory of officers that perform "functions traditionally handled outside the Executive Branch." *Slaughter*, 2026 WL 1855612, at *18. Copyright is Congress's own domain. The Constitution enumerates the copyright power among the powers of Congress, U.S. Const. art. I, § 8, cl. 8; Congress tasked the Copyright Office with administering that power, 17 U.S.C. § 701; and Congress placed the Copyright Office within the legislative branch, where it has resided for more than 150 years, *see* Act of July 8, 1870, ch. 230, § 85, 16 Stat. 198, 212; Act of Feb. 19, 1897, ch. 265, 29 Stat. 545. It is thus no surprise that the D.C. Circuit has already held that the Register "likely does not exercise considerable or substantial executive power" because she "primarily works for Congress." *Perlmutter*, 2025 WL 2627965, at *9. In any event, to the

extent the Copyright Office performs any functions that could be characterized as "executive," the

Register acts under the supervision of the Librarian of Congress.[1]

"All we do today," the *Slaughter* Court concluded, "is recognize what has been clear for a

century—that those who fall within the President's 'general administrative control' must be

removable by the President at will." *Slaughter*, 2026 WL 1855612, at *18 (quoting *Myers*, 272

U.S. at 135). The Register does not fall within the President's "general administrative control":

she is appointed by, and answerable to, the Librarian, and she "primarily works for Congress."

*Perlmutter*, 2025 WL 2627965, at *9.

### III. *Slaughter* Confirms that the President Did Not Have Inherent Article II Authority to Install Blanche as Acting Librarian

*Slaughter* reaffirms that the President staffs the executive branch through the

Appointments Clause—presidential nomination and Senate confirmation—not around it, leaving

no room for Defendants' theory (Defs.' Opp. at 18–22) that the President may unilaterally and

temporarily install an acting Librarian, which Plaintiff has elsewhere refuted (Pl.'s Reply at 11–

15). The Court explained in *Slaughter*: "Although it is up to the Senate to decide whether to

confirm those with whom the President would *prefer* to work, neither Congress nor the courts

may saddle him with those with whom he *cannot* work." 2026 WL 1855612, at *21. That

sentence assumes precisely what Defendants deny: the President's remedy is removal of his

direct subordinate and a new nomination, not self-help. *See Aviel v. Gor*, No. 25-5105, 2025 WL

1600446, at *2 (D.C. Cir. June 5, 2025) (Katsas, J., concurring, joined by Pillard, J.) (explaining

---

[1] Nor does the Register wield any of the executive powers enumerated as critical in *Slaughter*. While the Register establishes regulations to administer her statutory duties, Congress has made them subject to approval by the Librarian. *See* 17 U.S.C. § 702. The Librarian, not the Register, determines exceptions to the Copyright Act's prohibition on circumventing technological protection measures. *See* 17 U.S.C. 1201. And to the extent the Copyright Royalty Board exercises executive functions, Congress vested supervisory authority in the Librarian, not the Register. *See* 17 U.S.C. § 801.

it "is unlikely that the Take Care Clause gives the President unfettered discretion to designate acting principal officers with neither Senate confirmation nor a Senate recess nor even statutory authorization through the FVRA."); *accord id.* at \*4 n.1 (Rao, J., dissenting); *Perlmutter*, 2025 WL 2627965, at \*5 n.1. Consistent with that design, the Court observed that "the Constitution's words were chosen carefully—it was the President who would 'appoint' the principal 'Officers of the United States,' *with the Senate providing 'Advice and Consent,'*" *Slaughter*, 2026 WL 1855612, at \*9 (emphasis added), and it described a principal-officer vacancy as "permitting President Trump to appoint a replacement (contingent, of course, on the Senate's advice and consent)." *Id.* at \*6. *Slaughter* thus proceeded on the premise that principal officers take office only upon Senate confirmation. Defendants' unprecedented theory that the President has unilateral authority to install principal officers simply cannot be squared with it.

## IV.  *Cook* Forecloses Defendants' Argument That No Remedy Is Available

Defendants argued at summary judgment that reinstatement is not a remedy "traditionally accorded by courts of equity," relying on *In re Sawyer* and *White v. Berry*. Defs.' Opp. at 26–28; Defs.' Reply at 13–16, ECF No. 54. *Cook* rejected that argument on review of the same authorities. The Supreme Court held there was "[n]o equitable bar" to an order securing a removed officer in her office: equity has always ensured that "the actual incumbents of an office may be protected, pending a contest as to their title, from interference with their possession, and with the exercise of their functions." *Cook*, 2026 WL 1855613, at \*10 (quoting 2 J. High, Law of Injunctions § 1315, at 866 (2d ed. 1880)). *Sawyer* and *White*, the Court explained, stand only "for the far more limited proposition" that finally settling title to an office belonged to the courts of law, and they reflect "equity's overriding concern about the adequacy of legal remedies"— where the plaintiff had "effective legal remedies" to try title, "equity could not intervene." *Id.* (citing S. Bray, Remedies in the Officer Removal Cases, 17 J. Legal Analysis 236, 241–246

7

(2025)).

Professor Bray takes the position that, "assuming the president has a plausible legal basis for an officer's removal," a court should evaluate the legality of the President's actions, armed with a menu of possible remedies: "injunctions (final and preliminary), quo warranto, mandamus, declaratory judgment, and damages for lost wages and benefits." Bray, *supra*, at 239–40. "The court should ensure that violation of the law by the executive branch is not encouraged through inadequate remedies." *Id.* at 240. Professor Bray's conclusion is that, in ordinary cases, there might be a need to deploy equitable remedies on a temporary basis but that a declaratory judgment should typically suffice for permanent relief (with further relief available under 28 U.S.C. § 2202, if necessary). *Id.* at 237–39.

As applied here, Ms. Perlmutter has sought declaratory and injunctive relief, along with "all other appropriate relief" to establish that she remains the Register of Copyrights and cannot be removed except by a duly appointed Librarian of Congress. Compl. at 11–12, ECF No. 1 (Requests for Relief). This is surely broad enough for the Court to fashion an appropriate remedy for Defendants' wrongful efforts to impede Ms. Perlmutter's continued performance as Register of Copyrights.

To begin, Ms. Perlmutter has sought declaratory relief. "[A] declaratory judgment is just as definitive as any other judgment," Bray, *supra*, at 237. As explained elsewhere, Ms. Perlmutter satisfies all requirements for a declaratory judgment, which is a statutory remedy that exists apart from principles of equity.

In the alternative, and to assure complete relief, Ms. Perlmutter has sought a permanent injunction. Although Professor Bray believes that injunctive relief will often prove unnecessary if a declaratory judgment has been entered, his analysis is premised on the existence of a "plausible legal basis" for the removal. *Id.* at 239 ("[I]f the president asserts that an officer

8

exercises 'significant executive authority,' I am assuming the assertion is credible."). Here, Congress's decision to organize the Library of Congress within the legislative branch is good reason for the Court to exercise its authority to be most protective of the separation of powers. The other remedies mentioned by Professor Bray do not appear to be appropriate candidates here (but should be entered by the Court if it believes otherwise). As Professor Bray explained, "there is ample authority that a person in possession of an office cannot sue in quo warranto to determine title." *Id.* at 247; *see also Sibley v. Obama*, No. 12-5198, 2012 WL 6603088, at *1 (D.C. Cir. Dec. 6, 2012) (suggesting that a private plaintiff may not seek quo warranto to remove a government official). And Professor Bray treats mandamus as a possible avenue for interim relief but concludes that it is inferior to declaratory relief for purposes of final adjudication. Bray, *supra*, at 241–46, 249.

In sum, *Cook* confirms that, if the Court agrees that Ms. Perlmutter has not been removed from her position, it may fashion a remedy to protect her from the unlawful removal efforts. A declaratory judgment is surely available, and an injunction is appropriate under the circumstances. But *Cook* belies Defendants' claim that, even if Perlmutter should not have been removed, this Court is powerless to do anything about it.

***

*Slaughter* changes nothing about Defendants' threshold statutory problem—the FVRA never authorized Blanche to serve as acting Librarian—and affirmatively defeats their alternative theories of direct presidential removal and unilateral temporary installation of an acting Librarian. Together with *Cook* and the Court's stay denial in this case, it confirms this Court's authority to grant complete relief.

## CONCLUSION

For these reasons, Plaintiff's motion for summary judgment should be granted.

9

July 31, 2026

Respectfully submitted,

*/s/ Allyson R. Scher*
Allyson R. Scher (D.C. Bar No. 1616379)
Brian D. Netter (D.C. Bar No. 979362)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
ascher@democracyforward.org
bnetter@democracyforward.org


*Counsel for Plaintiff*