**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| SHIRA PERLMUTTER, | ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) | No. 1:25-cv-01659-TJK |
| TODD BLANCHE, *et al*., | ) ) | |
| *Defendants*. | ) ) ) | |

**DEFENDANTS' SUPPLEMENTAL BRIEF**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

STATEMENT .................................................................................................................... 2

I.      The Library of Congress and U.S. Copyright Office ............................................ 2

II.     The President Removed the Librarian and Register of Copyrights ...................... 3

III.    Procedural History .............................................................................................. 4

ARGUMENT ..................................................................................................................... 6

I.      Under *Slaughter*, the President has Constitutional Authority to Remove the Register of Copyrights. ................................................................................................................ 6

      A.    *Slaughter* holds that the President has Unfettered Authority to Remove Subordinates who Exercise Executive Power. ........................................... 6

      B.    The Register of Copyrights Exercises Executive Power. ........................... 8

      C.    *Slaughter* Applies to Inferior Officers, like the Register of Copyrights. .............. 11

II.     *Slaughter* Supports Defendants' Argument that the Library of Congress is "an Establishment in the Executive Branch" under the FVRA. ................................. 15

CONCLUSION .................................................................................................................. 18

**TABLE OF AUTHORITIES**

**Cases:**

*Aviel v. Gor*,
   No. 25-5105, 2025 WL 1600446 (D.C. Cir. June 5, 2025) ........................................... 12, 13, 14

*Blanche v. Perlmutter*,
   146 S. Ct. 844 (Nov. 26, 2025) ............................................................................................ 5

*Blanche v. Perlmutter*,
   No. 25A478, 2026 WL 1871314 (U.S. June 30, 2026) ...................................................... 6

*Bowsher v. Synar*,
   478 U.S. 714 (1986) ........................................................................................................... 15

*Buckley v. Valeo*,
   424 U.S. 1 (1976) ................................................................................................................ 8

*Eltra Corp. v. Ringer*,
   579 F.2d 294 (4th Cir. 1978) ............................................................................................. 8

*Free Enterprise Fund v. PCAOB*,
   561 U.S. 477 (2010) .............................................................................................. 11, 12, 17

*Freytag v. Comm'r*,
   501 U.S. 868 (1991) ........................................................................................................... 17

*Humphrey's Executor v. United States*,
   295 U.S. 602 (1935) ................................................................................................. 1, 7, 11

*In re Hennen*,
   38 U.S. 230 (1839) ...................................................................................................... 13, 14

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*,
   684 F.3d 1332 (D.C. Cir. 2012) ............................................... 1, 2, 3, 8, 9, 10, 16, 17

*Med. Imaging & Tech. All. v. Libr. of Cong.*,
   103 F.4th 830 (D.C. Cir. 2024) .......................................................... 1, 3, 8, 9, 10, 16

*Myers v. United States*,
   272 U.S. 52 (1926) ................................................................................................ 7, 8, 11, 12

*Perlmutter v. Blanche*,
   No. 25-5285, 2025 WL 2627965 (D.C. Cir. Sept. 10, 2025) .............................. 1, 5, 8, 9, 10, 16

*Perttu v. Richards*,
  605 U.S. 460 (2025) ........................................................................................................ 17

*Seila Law LLC v. CFPB*,
  591 U.S. 197 (2020) ............................................................................................. 12, 13, 15

*Swan v. Clinton*,
  100 F.3d 973 (D.C. Cir. 1996) ......................................................................................... 15

*Trump v. Boyle*,
  606 U.S. ---, 145 S. Ct. 2653 (2025) ................................................................................. 5

*Trump v. Slaughter*,
  609 U.S. ---, 2026 WL 1855612 (July 29, 2026) ...................................................... *passim*

*Trump v. Wilcox*,
  145 S. Ct. 1415 (2025) ....................................................................................................... 5

*United States v. Morrison*,
  487 U.S. 654 (1988) ......................................................................................................... 12

*United States v. Perkins*,
  116 U.S. 483 (1886) ......................................................................................................... 13

**Constitutional Provision:**

U.S. Const. art. II .................................................................................................... 6, 7, 17

**Statutes:**

2 U.S.C. §136-1(a) ........................................................................................................ 3, 16

5 U.S.C. §104(1) ........................................................................................................... 15, 16

5 U.S.C. §105 ................................................................................................................... 15

5 U.S.C. §3345(a) .......................................................................................................... 4, 15

17 U.S.C. §409 ................................................................................................................... 3

17 U.S.C. §410 ................................................................................................................ 3, 8

17 U.S.C. §411(a) ............................................................................................................... 3

17 U.S.C. §701(a) ........................................................................................................... 3, 17

17 U.S.C. §701(b)(3) ........................................................................................................... 9

17 U.S.C. §702 ....................................................................................................................... 3, 9

17 U.S.C. §708 .......................................................................................................................... 3

17 U.S.C. §708(b)...................................................................................................................... 9

17 U.S.C. §801 .......................................................................................................................... 9

17 U.S.C. §801(a)...................................................................................................................... 9

17 U.S.C. §802(f)(1).................................................................................................................. 9

**Other Authorities:**

1 Annals of Cong. 499 (Rep. Madison)...................................................................................... 15

30 Writings of George Washington 334 (J. Fitzpatrick ed. 1939) .............................................. 7

Act of Apr. 24, 1800, ch. 37, §5............................................................................................... 2

Act of Jan. 26, 1802, ch. 2, §3.................................................................................................. 2

The Federalist No. 47 (J. Madison)............................................................................................ 7

**INTRODUCTION**

Plaintiff Shira Perlmutter was lawfully removed from her former position as Register of Copyrights.   The President lawfully designated Todd Blanche as acting Librarian under the Federal Vacancies Reform Act ("FVRA"), who then removed Plaintiff by designating Paul Perkins as acting Register of Copyrights.   The President also had *constitutional* authority under Article II to directly remove the Register of Copyrights, an inferior officer wielding significant executive power. The Supreme Court's decision in *Trump v. Slaughter*, 609 U.S. ---, 2026 WL 1855612 (July 29, 2026), supports both grounds for granting summary judgment in Defendants' favor.

Most directly, *Slaughter* confirms the President's constitutional authority to effectuate the removal of the Register of Copyrights.   In overruling *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Supreme Court held that "[s]ubordinates who exercise the President's power are subject to removal by him.   Then, and only then, can they remain accountable to the President, and the President to the people." *Slaughter*, 2026 WL 1855612, at *21.   "The Register of Copyrights exercises executive power in a host of ways." *Perlmutter v. Blanche*, No. 25-5285, 2025 WL 2627965, at *10 (D.C. Cir. Sept. 10, 2025) (Walker, J., dissenting).   The Register has "significant authority to 'promulgate copyright regulations,'" and exercises "powers are 'generally associated in modern times with executive agencies.'" *Med. Imaging & Tech. All. v. Libr. of Cong.*, 103 F.4th 830, 839 (D.C. Cir. 2024) (quoting *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1342 (D.C. Cir. 2012)).   The Register of Copyrights thus "unquestionably exercises executive power, and must therefore be controlled by the Chief Executive, in whom such power is vested." *Slaughter*, 2026 WL 1855612, at *18.

Accordingly, *Slaughter* confirms that the President must have authority to directly remove the Register of Copyrights if, as Plaintiff argues, the President lacks authority to designate an acting

1

Librarian who is subject to Presidential removal to oversee the Register; in that case, Presidential removal of the Register of Copyrights is essential to "preserve" the "chain of dependence" between the President and all officials who purport to exercise executive power. *Slaughter*, 2026 WL 1855612, at *9, *21.

In addition, *Slaughter* reinforces Defendants' argument that the Library of Congress is "an establishment in the executive branch" covered by the FVRA. The Library "unquestionably exercises executive power," *Slaughter*, 2026 WL 1855612, at *18, and is "undoubtedly a 'component of the Executive Branch,'" *Intercollegiate*, 684 F.3d at 1342. The Library thus falls within the plain terms of the FVRA. At a minimum, the Court should interpret the FVRA to apply to the Library to avoid the significant constitutional concerns that would arise from the Register of Copyrights wielding executive power without being subject to Presidential control.

The Court should grant Defendants' motion for summary judgment and enter final judgment for Defendants. The Court should grant this relief as expeditiously as possible, so the President may now—almost eleventh months after the D.C. Circuit issued its injunction pending appeal—exercise his constitutional duty to oversee those who purport to wield executive power on his behalf.

## STATEMENT

### I.  The Library of Congress and U.S. Copyright Office

The Library of Congress is a statutorily created entity that is headed by a Librarian. Although the Library was initially created "for the use [by] Congress," Act of Apr. 24, 1800, ch. 37, §5, 2 Stat. 55, 56, it has for over two centuries operated under the control of the Executive Branch. Since the position of Librarian was created in 1802 and to this day, Congress has directed that the Librarian be appointed by the President—now, with the advice and consent of the Senate. *See* Act of Jan. 26, 1802, ch. 2, §3, 2 Stat. 128, 129 (providing that "a librarian [is] to be appointed

by the President of the United States solely"); 2 U.S.C. §136-1(a) ("The President shall appoint the Librarian of Congress, by and with the advice and consent of the Senate.").

The Library of Congress is composed of several divisions. One of these is the U.S. Copyright Office. That office is headed by the Register of Copyrights and Director of the U.S. Copyright Office, who is appointed by the Librarian. 17 U.S.C. §701(a). The Register administers the copyright laws of the United States. She examines applications for copyright registration, *id*. §§409-410, which copyright owners must obtain before bringing an infringement suit, *id*. §411(a). The Register also has "broad authority … to make copyright rules." *Med. Imaging*, 103 F.4th at 833; *see* 17 U.S.C. §§702, 708. In addition, the Register oversees the Copyright Royalty Judges, who have the power "to promulgate copyright regulations, to apply the statute to affected parties, and to set rates and terms case by case." *Intercollegiate*, 684 F.3d at 1342. The Register cannot exercise rulemaking powers unilaterally; instead, the Register "acts under the direction and supervision of the Librarian," *Med. Imaging*, 103 F.4th at 833 (citing 17 U.S.C. §701(a)), and "[a]ll regulations established by the Register … are subject to the approval of the Librarian of Congress," 17 U.S.C. §702; *see Med. Imaging*, 103 F.4th at 838.

These powers "are ones generally associated in modern times with executive agencies," and so the D.C. Circuit has repeatedly recognized that the Librarian is a "Head of Department" under the Appointments Clause. *Intercollegiate*, 684 F.3d at 1342; *Med. Imaging*, 103 F.4th at 833, 840 n.4.

## II.    The President Removed the Librarian and Register of Copyrights

On May 8, 2025, the President exercised his authority under Article II of the Constitution to remove Carla Hayden from her position as Librarian of Congress. Decl. of Shira Perlmutter ¶5 (ECF No. 49-3) ("Perlmutter Decl."). The next day, the President designated Defendant Todd

Blanche, the Deputy Attorney General, as acting Librarian of Congress and "directed [him] to perform the duties of [that] office." Perlmutter Decl., Ex. B, at 2 (ECF No. 49-5). In designating Mr. Blanche as acting Librarian, the President invoked his authority under Article II of the Constitution, both generally and as addressed in applicable federal statutes, including the FVRA, 5 U.S.C. §3345(a). *Id*.

On May 10, 2025, the President removed Plaintiff Shira Perlmutter from serving as Register of Copyrights. Perlmutter Decl., Ex. A (ECF No. 49-4). Mr. Blanche, as acting Librarian, then appointed Brian Nieves and Defendant Paul Perkins to serve as the acting Principal Deputy Librarian of Congress and acting Register of Copyrights, respectively. Perlmutter Decl., Ex. B, at 1 (ECF No. 49-5).

### III. Procedural History

1.      Plaintiff filed this lawsuit on May 22, 2025, challenging her removal as Register of Copyrights and requesting a temporary restraining order to enjoin Mr. Blanche from serving as acting Librarian of Congress, prohibit Mr. Perkins from serving as acting Register of Copyrights, and reinstate Plaintiff to the position of Register of Copyrights. *See generally* Mot. for TRO (ECF No. 2); Mem. in Supp. of Pl.'s Mot. for TRO (ECF No. 2-1). This Court denied that motion because Plaintiff "ha[d] not met her burden of showing that she will suffer imminent irreparable harm." TRO Hr'g Tr. at 51:25–52:6 (ECF No. 33-1). Plaintiff then filed a motion for a preliminary injunction, *see* Pl.'s Mot. for a Prelim. Inj. (ECF No. 24), which this Court denied on the same ground, *see* Order (ECF No. 39); Mem Op. (ECF No. 40).

2.      Plaintiff appealed the denial of her motion for a preliminary injunction and sought an injunction from the court of appeals. A divided panel of the D.C. Circuit entered an injunction pending appeal, enjoining Defendants (except the President) from "interfering with [Plaintiff's]

service as Register of Copyrights and Director of the U.S. Copyright Office ….” *Perlmutter*, 2025 WL 2627965, at *1. The majority distinguished the Supreme Court's stay decisions in *Trump v. Wilcox*, 145 S. Ct. 1415 (2025), and *Trump v. Boyle*, 606 U.S. ---, 145 S. Ct. 2653 (2025), on the theory that the Register of Copyrights "is housed in the Legislative Branch" and "does not exercise considerable or substantial executive power." *Id*. at *8-9 (Pan, J., joined by Childs, J., concurring). Judge Walker dissented. As he explained, "[t]he Register of Copyrights exercises executive power in a host of ways" and is thus "'squarely a component of the Executive Branch in its role as a copyright regulator.'" *Id*. at *10 (Walker, J., dissenting) (emphasis and quotation marks omitted). The D.C. Circuit denied Defendants' petition for rehearing en banc. Order, *Perlmutter v. Blanche*, No. 25-5285 (Oct. 1, 2025).

Defendants filed an application for a stay with the Supreme Court. *Blanche v. Perlmutter*, No. 25A478 (Oct. 27, 2025). The Supreme Court deferred ruling on Defendants' stay application "pending *Trump v. Slaughter*, No. 25-332, and *Trump v. Cook*, No. 25A312." *Blanche v. Perlmutter*, 146 S. Ct. 844 (Nov. 26, 2025).[1]

3. In the meantime, the parties briefed cross-motions for summary judgment. In their cross-motion, Defendants argued that Mr. Blanche was lawfully designated as acting Librarian under the FVRA and so had authority to remove Plaintiff from serving as Register of Copyrights and to designate Mr. Perkins as acting Register of Copyrights. Defs.' Opp. to Pl.'s Mot. for Summ. J. and Cross-Mot. for Summ. J. at 8-17 (ECF No. 50-1) ("Defs.' Mem."). Alternatively, Defendants argued that the President has authority under Article II of the Constitution to directly

---

[1] The D.C. Circuit suspended briefing on Plaintiff's appeal pending the Supreme Court's disposition of Defendants' stay application. Order, *Perlmutter v. Blanche*, No. 25-5285 (Nov. 19, 2025).

remove the Register of Copyrights, because "the Register of Copyrights [] wield[s] significant executive power." *Id*. at 23; *see also id*. at 22-26.   Summary judgment briefing concluded on December 8, 2025.

4.       On June 29, 2026, the Supreme Court issued its decision in *Trump v. Slaughter*. The Court held that the President has the constitutional authority to remove executive officers who "exercise[] executive power."   2026 WL 1855612, at *18.   The Court thus overruled *Humphrey's Executor*, and invalidated the statutory "for-cause removal provision" for Commissioners of the Federal Trade Commission.   *Id*. at *15, *17.

The next day, the Supreme Court denied Defendants' stay application but noted that "[t]he denial of the application is not a ruling on the merits of the legal issues presented in the litigation." *Blanche v. Perlmutter*, No. 25A478, 2026 WL 1871314, at *1 (U.S. June 30, 2026).

By minute order dated July 2, 2026, this Court directed the parties to submit supplemental briefs on the effect of *Slaughter* on this case.

## ARGUMENT

**I.        Under *Slaughter*, the President has Constitutional Authority to Remove the Register of Copyrights**

*Slaughter* held that the President has unfettered authority to remove subordinates who exercise any part of the executive power.   The Register of Copyrights unquestionably does—as the D.C. Circuit has repeatedly recognized.   Therefore, the President had the constitutional authority to remove Plaintiff from serving as Register.

### A.       *Slaughter* holds that the President has Unfettered Authority to Remove Subordinates who Exercise Executive Power

Article II of the Constitution provides that "[t]he executive power shall be vested in a President of the United States of America."   U.S. Const. art. II, §1 cl. 1.   Although the Constitution

6

"vest[s] 'the whole executive power' in just one person," it did not leave the President to "execute the laws alone and unaided."  *Slaughter*, 2026 WL 1855612, at \*7 (quoting The Federalist No. 47, at 303 (J. Madison)).  The Founders "knew … that it would be 'impossib[le] for just 'one man … to perform all the great business of the State.'"  *Id*. at \*8 (quoting 30 Writings of George Washington 334 (J. Fitzpatrick ed. 1939)).  So the Constitution gave the President authority to "appoint … Officers of the United States," U.S. Const. art. II, §2, cl. 2, "to assist [him] in discharging the duties of his trust," *Slaughter*, 2026 WL 1855612, at \*8 (quoting 30 Writings of George Washington 334 (J. Fitzpatrick ed. 1939)).

In *Myers v. United States*, 272 U.S. 52 (1926), the Court evaluated "the Constitution's text, history, and structure" and upheld the "President's power to fire his subordinates at will."  *Slaughter*, 2026 WL 1855612, at \*11 (citing *Myers*, 272 U.S. at 136); *see generally id*. at \*11-12 (discussing *Myers*).  But only a few years later, the Supreme Court in *Humphrey's Executor* upheld statutory for-cause removal restrictions on the Commissioners of the Federal Trade Commission.  295 U.S. at 620, 626-32.  *Humphrey's* acknowledged *Myers*'s holding that the Constitution gives the President authority to remove "all purely executive officers," but it held that Congress could restrict the President's removal of FTC Commissioners because "the commission acts in part quasi legislatively and in part quasi judicially," and "exercises no part of the executive power vested by the Constitution in the President."  *Id*. at 628.

*Slaughter* overruled *Humphrey's Executor*.  After surveying the Founding-era writings, the debates and practice of the First Congress, and congressional and executive practice in the decades following, *Slaughter* held that the Constitution gives the President unfettered authority to remove officials who exercise executive power:  "Subordinates who exercise the President's power are subject to removal by him.  Then, and only then, can they remain accountable to the President, and

7

the President to the people."   2026 WL 1855612, at *21; *see also id*. at *18 ("those who fall within the President's 'general administrative control' must be removable by the President at will" (quoting *Myers*, 272 U.S. at 135)).

The Court then held that the FTC's functions "are 'the very essence of execution of law"— and it was "not a close case."   *Slaughter*, 2026 WL 1855612, at *17.   First, the FTC "has the power to promulgate substantive rules that carry the force of law."   *Id*.   Such power, the Court held, "is executive through and through."   *Id*.   Second, the FTC "investigates businesses to ensure they comply with its statutes and rules," and "enforces those statutes and rules through in-house adjudications."   *Id*.   "This power, too, is executive."   *Id*.   Finally, "the FTC files civil suits on behalf of the United States in federal court," and "the 'discretionary power to seek judicial relief' lies at the very core of the executive authority.'"   *Id*. (quoting *Buckley v. Valeo*, 424 U.S. 1, 138 (1976)).   The FTC thus "unquestionably exercises executive power, and must therefore be controlled by the Chief Executive, in whom such power is vested."   *Id*. at *18.

### B.      The Register of Copyrights Exercises Executive Power

1.      *Slaughter*'s holding dictates that the President had constitutional authority to remove the Register of Copyrights in the context of this case, because the Register "exercises executive power in a host of ways."   *Perlmutter*, 2025 WL 2627965, at *10 (Walker, J., dissenting); *see Med. Imaging*, 103 F.4th at 839 (recognizing that "the Register and Librarian" exercise "powers … 'generally associated in modern times with executive agencies'" (quoting *Intercollegiate*, 684 F.3d at 1342)); *accord Eltra Corp. v. Ringer*, 579 F.2d 294, 301 (4th Cir. 1978) ("[T]he Copyright Office is an executive office, operating under the direction of an Officer of the United States.").

First, the Register, under the Librarian's supervision, interprets and applies the copyright laws in adjudicating applications for copyright registration.   17 U.S.C. §410.   "From within the

8

Library of Congress, [the Register of Copyrights] administers the Copyright Act, which requires the examination of copyright applications, the issuance of copyright registrations, the maintenance of copyright deposits, and the recordation of transfers of copyright ownership." *Perlmutter*, 2025 WL 2627965, at \*10 (Walker, J., dissenting) (quotation marks omitted)); *see Intercollegiate*, 684 F.3d at 1342 (Library and Copyright Office "apply the statute to affected parties" and "set rates and terms case by case"); *Med. Imaging*, 103 F.4th at 839 (similar).

Second, the Register, with the Librarian's approval, issues regulations concerning copyright registration. 17 U.S.C. §§702, 708(b); *see Med. Imaging*, 103 F.4th at 839 (Library and Copyright Office have "significant authority to 'promulgate copyright regulations'" (quoting *Intercollegiate*, 6834 F.3d at 1342)); *Perlmutter*, 2025 WL 2627965, at \*10 (Walker, J., dissenting) (Register of Copyrights "has rulemaking authority that is subject to review by the Librarian of Congress").

Third, the Librarian and Register oversee the Copyright Royalty Board, which adjudicates statutory copyright-royalty proceedings. 17 U.S.C. §801; *Perlmutter*, 2025 WL 2627965, at \*10 (Walker, J., dissenting) (Register of Copyrights "has some oversight responsibilities regarding Copyright Royalty Judges"). The Librarian appoints and removes the Board's members. *See* 17 U.S.C. §801(a); *Intercollegiate*, 684 F.3d at 1342. A Board member or a party to a copyright-royalty adjudication also may refer a legal issue to the Register, and the Board "shall apply the legal interpretation embodied in the [Register's] response." 17 U.S.C. §802(f)(1)(A)(ii).

Finally, the Register, under the Librarian's supervision, participates "in meetings of international intergovernmental organizations and meetings with foreign government officials relating to copyright," "including as a member of United States delegations." 17 U.S.C. §701(b)(3).

The Register of Copyrights thus "unquestionably exercises executive power." *Slaughter*,

9

2026 WL 1855612, at *17-18.  "[T]he power to promulgate substantive rules that carry the force of law" is "unquestionably … executive power," and "[w]hen an agency 'executes' a congressional mandate against private parties, it exercises executive power—no ifs, ands, or quasis about it."  *Id*. at *15, *17.  For these reasons, the D.C. Circuit has held that these "powers" are "generally associated in modern times with executive agencies," and that the Library is "squarely a component of the Executive Branch in its role as a copyright regulator."  *Med. Imaging*, 103 F.4th at 840 n.4 (quoting *Intercollegiate*, 684 F.3d at 1341-42).

2. The D.C. Circuit's motions panel did not dispute that the Copyright Office exercises *some* executive power but reasoned that "the Register likely does not exercise *considerable or substantial* executive power."  *Perlmutter*, 2025 WL 2627965, at *9 (Pan, J., joined by Childs, J., concurring); *see also id*. at *2, *4 (similar).  The preceding discussion refutes that assertion.  In any event, the President's removal power does not extend only to officers who perform "considerable or substantial executive power."  *Id*. at *9.  In overruling *Humphrey's Executor*, *Slaughter* rejected any effort to diminish the President's removal power on the theory that a power is "only *partly* executive."  *Slaughter*, 2026 WL 1855612, at *14.  Rather, only those "agenc[ies] that 'exercise[] *no part* of the executive power' need not fall within the rule of Presidential removal.'"  *Id*. (emphasis added).  All other "[s]ubordinates who exercise the President's power are subject to removal by him," because "the Constitution vests the whole executive power in the President alone."  *Id*. at *14, *21 (quotation marks omitted).

To be sure, the Register of Copyrights performs some functions that could be performed either by executive officers or by individuals outside the Executive Branch—for example, "provid[ing] advice to Congress about copyright issues."  *Perlmutter*, 2025 WL 2627965, at *4 (Pan, J., joined by Childs, J., concurring).  The same was true of the FTC, and *Humphrey's* relied

10

on the FTC's responsibility to make "recommendations" to Congress to conclude that the agency's commissioners could be insulated from Presidential removal.  295 U.S. at 621, 628.  But in overruling *Humphrey's*, the Court in *Slaughter* rejected any argument that an agency exercising executive power may be insulated from President oversight because it performs non-executive functions.  *Slaughter*, 2026 WL 1855612, at *13-14.  While Congress is free to "establish independent agencies to assist it with its functions," "it may not foist those agencies upon the President, and thus deprive him of the executive power vested in him by the Constitution."  *Id.* (quotation marks and brackets omitted).

### C.    *Slaughter* Applies to Inferior Officers, like the Register of Copyrights

The President's authority over officials that exercise executive power extends to inferior officers, like the Register of Copyrights.  Supreme Court precedent makes this clear.  For example, *Myers* invalidated a statute restricting the President's removal of an inferior officer (a postmaster), explaining that the "power to remove inferior executive officers … is in its nature an executive power."  272 U.S. at 161; *see Slaughter*, 2026 WL 1855612, at *11-12 (reaffirming *Myers*'s holding).   Similarly, in *Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010), the Court invalidated a statute that infringed "the President's removal power" by granting inferior officers two layers of tenure protection.  *Id.* at 495.

When Congress vests the appointment of an inferior officer in a department head, the President "ordinarily" exercises the power to remove that inferior officer through the department head, rather than on his own.  *See Free Enterprise Fund*, 561 U.S. at 493.  As a constitutional matter, Congress's power "to vest the appointment of … inferior officers in the heads of departments carries with it authority … to invest the heads of departments with power to remove."  *Myers*, 272 U.S. at 161.   And as a statutory matter, courts presume that "removal is incident to the

11

power of appointment." *Free Enterprise Fund*, 561 U.S. at 509.   That approach does not impair the President's oversight of the Executive Branch because the President retains the ability to remove inferior officers through the department head, who "is and must be the President's alter ego in the matters of that department."   *Myers*, 272 U.S. at 133.   The President thus "rarely has cause to turn his attention to the removal of an inferior officer because such officers are directly controlled by principal officers in the chain of command."   *Aviel v. Gor*, No. 25-5105, 2025 WL 1600446, at *5 (D.C. Cir. June 5, 2025) (Rao, J., dissenting).

That ordinary practice, however, does not mean that the principal officer's authority to remove an inferior officer is "exclusive" of the President's authority.   *Aviel*, 2025 WL 1600446, at *4 (Rao, J., dissenting).   When there is no principal officer (or acting principal) in office to oversee the inferior officer, the President must have authority to remove the inferior officer directly.   *See* Defs.' Mem. at 22-26 (ECF No. 50-1).   Inferior officers, like principal officers, exercise executive power, and "[s]ubordinates who exercise the President's power are subject to removal by him"— "the lowest officers, the middle grade, and the highest."   *Slaughter*, 2026 WL 1855612, at *9, *21.

To be sure, the Supreme Court has twice recognized an "exception[]" to the general rule of Presidential removal of certain inferior officers with "limited jurisdiction and tenure" and who "lack policymaking or significant administrative authority."   *Seila Law LLC v. CFPB*, 591 U.S. 197, 217-18 (2020); *see United States v. Perkins*, 116 U.S. 483, 485 (1886) (naval cadet-engineer); *United States v. Morrison*, 487 U.S. 654, 662-63 (1988) (independent counsel).   But the Register of Copyrights *has* significant duties and authority, and thus plainly does not fit into the "exception[] for inferior officers" recognized by *Perkins* and *Morrison*.   *Seila Law LLC*, 591 U.S. at 217 (emphasis omitted).

*Slaughter* confirms that any "exception" for inferior officers must remain limited to

"inferior officers with limited duties and no policymaking or administrative authority." *Seila Law LLC*, 591 U.S. at 218.   After all, *Slaughter* affirmed the President's removal authority based on the text of Article II, the Constitution's structure, and historical practice, *supra*, pp. 7-8—without distinguishing between principal and inferior officers.   To the contrary, the Court made clear that the President's removal power applies to *all* "[s]ubordinates who exercise the President's power"— "the lowest officers, the middle grade, and the highest." *Slaughter*, 2026 WL 1855612, at *9, *21. Notably, the dissent recognized the broad sweep of *Slaughter*'s rationale, acknowledging that there is not "much in the majority's logic that supports drawing a line at principal officers," as "[i]nferior officers … wield some executive power." *Id*. at *49 (Sotomayor, J., dissenting).   And when the *Slaughter* majority identified offices or entities that may not be subject to the rule of at-will Presidential removal, it did not mention inferior officers. *Id*. at *18.

*In re Hennen*, 38 U.S. 230 (1839), does not hold otherwise.   There, the Court addressed whether a federal district judge with statutory authority to appoint a clerk of court could remove the clerk at will. *Id*. at 257-58.   The statute was silent on removal, but the Court invoked the "sound and necessary rule … [that] the power of removal [i]s incident to the power of appointment," and held that the clerk, like other inferior officers, held his office "at the discretion of the appointing power" and so could be removed at will by the district judge. *Id*. at 259-60.   To be sure, *Hennen* stated that "the President has certainly no power to remove" an inferior officer, *id*. at 260, but Judge Rao has correctly explained that this statement was "obiter dicta," "has never been repeated as a holding of the Supreme Court," and "runs contrary to recent decisions reaffirming the breadth of the President's constitutional removal authority." *Aviel*, 2025 WL 1600446, at *4 n.2 (Rao, J., dissenting).   After all, *Hennen* involved the removal of an inferior officer in the Judicial Branch— a clerk for a federal district court judge.   That the President has "no power to remove" an Article

13

III officer, *Hennen*, 38 U.S. at 260, who "exercises no part of the executive power" does not mean he lacks authority to remove an inferior officer in the Executive Branch (like the Register) who "unquestionably exercises executive power." *Slaughter*, 2026 WL 1855612, at *14, *18. Indeed, *Hennen* itself acknowledged the general rule that the power to remove accompanies the power to appoint must "always be qualified by a 'constitutional provision, or statutory regulation,'" and here the "constitutional provision … is Article II, which provides for presidential removal of executive branch officers, particularly when no statute provides to the contrary." *Aviel*, 2025 WL 1600446, at *4 n.2 (Rao, J., dissenting) (quoting *Hennen*, 38 U.S. at 259). That conclusion is even more clear after *Slaughter*, which solidified the constitutional rule that "[s]ubordinates who exercise the President's power are subject to removal by him." 2026 WL 1855612, at *21.

Accordingly, the President must have authority to remove an inferior officer (like the Register of Copyrights) when there is no principal officer and (as Plaintiff argues) he has no authority to designate an acting principal officer. *See* Defs.' Mem. at 22-24 (ECF No. 50-1).[2] Certainly, *Hennen* never suggested that the President would lack authority to remove an inferior officer when there is no confirmed or acting principal officer through which the President can exert control over the inferior officer. In fact, *Hennen* rejected as "extraordinary" the notion that inferior officers "were to be held during life," 38 U.S. at 260—but that is exactly the dynamic Plaintiff enjoys now (and could enjoy in perpetuity if the Senate blocks confirmation of a Librarian). And what *Hennen* did not endorse *Slaughter* expressly forbade: it rejected any scenario in which officers that "exercise[] executive power" are not "controlled by the Chief Executive" in any

---

[2] As Defendants have explained, the Library's internal regulations that purport to designate an acting Librarian in the Librarian's absence do not cure the constitutional dilemma, because an executive department cannot create its own internal governance regime to insulate itself from presidential control. Defs.' Mem. at 25 (ECF No. 50-1).

14

respect, 2026 WL 1855612, at \*18, because only then can "'the chain of dependence … be preserved,'" *id*. at \*9 (quoting 1 Annals of Cong. 499 (Rep. Madison)).

A contrary rule would give the Senate an effective veto over the President's ability to control the Register "who wield[s] executive power on his behalf," *Seila Law*, 591 U.S. at 204, by simply refusing to confirm a new Librarian.  But *Slaughter* made clear that "neither Congress nor the courts may saddle" the President with subordinates who "exercise the President's power" and are not "accountable to [him]."  2026 WL 1855612, at \*18, \*21; *accord Bowsher v. Synar*, 478 U.S. 714, 722-23 (1986) ("A direct congressional role in the removal of officers charged with the execution of the laws beyond [impeachment] is inconsistent with separation of powers"); *Swan v. Clinton*, 100 F.3d 973, 986 (D.C. Cir. 1996) (recognizing the "constitutional problems" that arise by giving "[t]he Senate[] power to keep holdover members in office").

## II.    *Slaughter* Supports Defendants' Argument that the Library of Congress is "an Establishment in the Executive Branch" under the FVRA

Although *Slaughter* is most applicable to Defendants' argument that the President has constitutional authority to directly remove the Register of Copyrights, it also supports Defendants' statutory argument that the President lawfully designated Mr. Blanche as acting Librarian under the FVRA with the power to remove Plaintiff from serving as Register of Copyrights.  Defs.' Mem. at 8-11 (ECF No. 50-1).  As Defendants explained in their cross-motion, the FVRA governs the President's designation of an acting officer for a Senate-confirmed position in an "Executive agency."  5 U.S.C. §3345(a).  The term "Executive agency" includes an "independent establishment," which, in turn, includes "an establishment in the executive branch."  *Id*. §§104(1), 105; *see* Defs.' Mem. at 5 (ECF No. 50-1).

15

*Slaughter* confirms that the Library of Congress is an "establishment in the executive branch" under the FVRA. As discussed above, the Library of Congress exercises a slew of quintessential executive powers. *Supra*, pp. 8-9. In many ways, those powers are identical to those exercised by the FTC, which *Slaughter* held "unquestionably exercises executive power." 2026 WL 1855612, at \*18. Like the FTC, the Library "has the power to promulgate substantive rules that carry the force of law." *Id*. at \*17; *supra*, p. 9. And like the FTC, the Library "enforces those … rules through in-house adjudications" through the Copyright Royalty Board. *Slaughter*, 2026 WL 1855612, at \*17; *supra*, pp. 8-9. The Library thus exercises executive power and is "squarely a component of the Executive Branch." *Med. Imaging*, 103 F.4th at 840 n.4. As in *Slaughter*, this is "not a close case." 2026 WL 1855612, at \*17.[3]

The Library thus falls within the plain meaning of the phrase "establishment in the executive branch." 5 U.S.C. §104(1). The Library's status as a part of the Executive Branch is solidified by the President's statutory authority to appoint the Librarian, with the advice and consent of the Senate—just like the Attorney General, the Secretary of War, the Secretary of State, and FTC Commissioners. *See* 2 U.S.C. §136-1(a); Defs.' Mem. at 3 (ECF No. 50-1). Although Congress did not attempt to restrict the President's power to remove the Librarian, after *Slaughter* there can be no question that Congress lacks that power: "The [Library] unquestionably exercises executive power, and must therefore be controlled by the Chief Executive, in whom such power is vested." *Slaughter*, 2026 WL 1855612, at \*18.

---

[3] The motions panel reasoned that the *Register* does not exercise "considerable or substantial executive power." *Perlmutter*, 2025 WL 2627965, at \*9 (Pan, J., joined by Childs, J., concurring). But the majority acknowledged that the *Librarian*—as a "Head of Department" under the Appointments Clause, *see Intercollegiate*, 684 F.3d at 1342, exercises executive power. *Perlmutter*, 2025 WL 2627965, at \*9 n.2 (Pan, J., joined by Childs, J., concurring).

16

If the Library were *not* a component of the Executive Branch, then Plaintiff's own appointment as Register of Copyrights would be invalid.  The Register is appointed by the Librarian, *see* 17 U.S.C. §701(a), a method of selection that complies with the Appointments Clause only if the Librarian is the "Head[] of a "Department[]," U.S. Const. art. II §2, cl. 2.  A "Department" is a "free-standing, self-contained entity *in the Executive Branch*."  *Free Enterprise Fund*, 561 U.S. at 511 (quoting *Freytag v. Comm'r*, 501 U.S. 868, 915 (1991) (Scalia, J., concurring in the judgment) (emphasis added).  The lawfulness of Plaintiff's appointment therefore rests on the premise that the Library belongs to the Executive Branch, and the D.C. Circuit has held that the Library is part of the Executive Branch precisely because the Librarian's appointments would otherwise violate the Constitution.  *Intercollegiate*, 684 F.3d at 1341-42.

The Library of Congress thus falls squarely within the Executive Branch. The Librarian is appointed by the President, and the Library exercises quintessential executive powers, including through the operations of the Copyright Office.  The Library of Congress falls within the plain meaning of "establishment in the executive branch," and the President's designation of Mr. Blanche as acting Librarian was authorized by the FVRA.

At a minimum, *Slaughter* strongly supports interpreting the FVRA to include the Library of Congress as a matter of constitutional avoidance.  It is well established that courts "must first ascertain whether a construction of the statute is fairly possible by which [a] constitutional question may be avoided."  *Perttu v. Richards*, 605 U.S. 460, 468 (2025) (quotation marks and alterations omitted; brackets added).  Plaintiff's interpretation of the FVRA not only implicates the President's constitutional authority to remove the Register, *supra*, Part I, but it would impose a serious burden on the President's constitutional authority to remove the Librarian, by forcing the President to relinquish his constitutional prerogative to control the Register of Copyrights upon

17

exercising his undisputed constitutional authority to remove the Librarian.    By adopting Defendants' statutory argument, the Court would avoid having to confront these significant constitutional issues.

## CONCLUSION

The Court should deny Plaintiff's motion for summary judgment, grant Defendants' cross-motion for summary judgment, and enter final judgment for Defendants as expeditiously as possible, so the President may exercise his constitutional duty to oversee those who purport to exercise executive power on his behalf.


Dated: July 31, 2026                    Respectfully submitted,


                                        BRETT A. SHUMATE
                                        Assistant Attorney General

                                        ERIC J. HAMILTON
                                        Deputy Assistant Attorney General

                                        CHRISTOPHER R. HALL
                                        Assistant Branch Director
                                        Federal Programs Branch

                                        */s/ Benjamin Hayes*
                                        BENJAMIN HAYES
                                        Senior Counsel to the Assistant Attorney General,
                                        Civil Division
                                        U.S. Department of Justice
                                        950 Pennsylvania Avenue, NW
                                        Washington, DC 20530
                                        (202) 514-8214
                                        Benjamin.T.Hayes@usdoj.gov

                                        *Counsel for Defendants*