**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| SHIRA PERLMUTTER, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-01659-TJK |
| | ) | |
| TODD BLANCHE, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

**DEFENDANTS' RESPONSIVE SUPPLEMENTAL BRIEF**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

I.      Under *Slaughter*, the President has constitutional authority to remove the Register of Copyrights. ............................................................................................................ 2

II.     *Slaughter* supports Defendants' argument that the Library of Congress is "an establishment in the executive branch" under the FVRA. ...................................... 7

III.    *Slaughter* does not undermine Defendants' argument that the President has Article II authority to temporarily appoint an acting Librarian. ........................................... 8

IV.     *Trump v. Cook* prohibits this Court from reinstating plaintiff as Register of Copyrights.... 9

CONCLUSION ............................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases:**

*Aviel v. Gor*,
No. 25-5105, 2025 WL 1600446 (D.C. Cir. June 5, 2025) ............................................................ 3

*Blanche v. Perlmutter*,
No. 25A478, 2026 WL 1871314 (U.S. June 30, 2026) ................................................................. 2

*Free Enterprise Fund v. PCAOB*,
561 U.S. 477 (2010) ................................................................................. 3, 4, 6, 7

*Humphrey's Executor v. United States*,
295 U.S. 602 (1935) ................................................................................. 5

*In re Hennen*,
38 U.S. 230 (1839) ................................................................................. 3

*In re Sawyer*,
124 U.S. 200 (1888) ................................................................................. 10

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*,
684 F.3d 1332 (D.C. Cir. 2012) ................................................................................. 6

*Kennedy v. Braidwood Mgmt., Inc.*,
606 U.S. 748 (2025) ................................................................................. 5

*Med. Imaging & Tech. All. v. Libr. of Cong.*,
103 F.4th 830 (D.C. Cir. 2024) ................................................................................. 6

*Myers v. United States*,
272 U.S. 52 (1926) ................................................................................. 3, 4, 7

*Seila Law LLC v. CFPB*,
591 U.S. 197 (2020) ................................................................................. 4, 7

*Trump v. Cook*,
146 S. Ct. 2234 (2026) ................................................................................. 2, 9, 10

*Trump v. Slaughter*,
146 S. Ct. 2283 (2026) ................................................................................. 1, 3, 4, 5, 6, 7

*Trump v. Wilcox*,
145 S. Ct. 1415 (2025) ................................................................................. 6

ii

*Morrison v. Olson*,
  487 U.S. 654 (1988) ............................................................................................ 4

*United States v. Perkins*,
  116 U.S. 483 (1886) ............................................................................................ 4

*White v. Berry*,
  171 U.S. 366 (1898) .......................................................................................... 10

*Williams v. Phillips*,
  482 F.2d 669 (D.C. Cir. 1973) ............................................................................ 9

**Constitutional Provision:**

U.S. Const. art. I, §1, cl. 8 .................................................................................... 7

**Statutes:**

2 U.S.C. §136-1(a) .................................................................................................. 6

5 U.S.C. §104(1)................................................................................................. 1, 7

**Other Authority:**

S. Bray, *Remedies in the Officer Removal Cases*, 17 J. Legal Analysis 236 (2025) ..................... 10

**INTRODUCTION**

*Trump v. Slaughter*, 146 S. Ct. 2283 (2026), held that any official "who exercise[s] the President's power [is] subject to removal by him"—"the lowest officers, the middle grade, and the highest." *Id*. at 2296, 2310. That decision makes clear that if the President cannot designate an acting Librarian to supervise the Register of Copyrights, then the President has constitutional authority to directly remove the Register from office. *Slaughter* also supports Defendants' statutory argument. It makes clear that serious constitutional concerns would arise if the President lacked authority either to designate an acting Librarian under the Federal Vacancies Reform Act ("FVRA") to supervise the Register, or to remove the Register directly. And it supports Defendants' argument that the Register of Copyrights exercises core executive power and so falls squarely within the statutory phrase "establishment in the executive branch." 5 U.S.C. §104(1).

None of Plaintiff's efforts to bypass *Slaughter* succeeds. Plaintiff tries to limit *Slaughter* to officials whose functions are in the "heartland" of executive power, but *Slaughter* adopted the opposite rule: only officials who "exercise[] *no part* of the executive power" are free from Presidential oversight. 146 S. Ct. at 2302 (emphasis added). Regardless, the Register's functions are just as much in the heartland of executive power as those of the FTC, both of which promulgate rules to govern the conduct of private parties. Nor can Plaintiff escape *Slaughter* on the theory that the Library performs "functions traditionally handled outside the Executive Branch." *Id*. at 2306. But there is no "distinct historical tradition" of copyright-regulator independence from the executive; to the contrary, the Library and Copyright Office have always been subject to executive control. And that reality belies Plaintiff's argument that the Library (and the Copyright Office within) are a part of the Legislative Branch—a theory that is also foreclosed by D.C. Circuit precedent.

1

The Supreme Court did not "signal[]" disagreement with Defendants' reading of *Slaughter*. Pl.'s Supp. Mem. 1.  Although Plaintiff does not acknowledge it, the Supreme Court explicitly noted that "[t]he denial of the application is not a ruling on the merits of the legal issues presented in the litigation."  *Blanche v. Perlmutter*, No. 25A478, 2026 WL 1871314, at *1 (U.S. June 30, 2026).  In the event this Court does not agree with Defendants' primary statutory argument, it should hold that the President had constitutional authority to remove the Register of Copyrights directly and grant summary judgment for Defendants.

If this Court were to rule against Defendants, the Supreme Court's decision in *Trump v. Cook*, 146 S. Ct. 2234 (2026), confirms that this Court may not enter an injunction reinstating Plaintiff to service as Register of Copyrights.  Although *Cook* held that a federal court may order reinstatement *as interim relief* while litigation is ongoing, the Court made clear that reinstatement is not an available remedy upon entry of final judgment.  The "final[] determin[ation]" of the lawfulness of an officer's removal is "a question only a court of law could settle … by *quo warranto* or mandamus."  *Id*. at 2250.  Plaintiff thus cannot obtain the alternate remedies she seeks here.

## ARGUMENT

### I.    Under *Slaughter*, the President has constitutional authority to remove the Register of Copyrights.

*Slaughter* supports Defendants' argument that the President has Article II authority to directly remove the Register of Copyrights where, as here, there is no principal (or acting principal) in office.  Defs.' Supp. Mem. 6-15 (ECF No. 59).  None of Plaintiffs' contrary arguments has merit.

First, Plaintiff argues that *Slaughter* undermines Defendants' position because it "grounded the President's authority to remove his direct subordinates on the proposition that '[h]e who

2

appoints may remove.'"   Pl.'s Supp. Mem. 3 (ECF No. 58).   Defendants agree that normally inferior officers are removable by the principal officers that appoint them.   Defs.' Mem. 22-23 (ECF No. 50-1); Defs.' Reply 11-13 (ECF No. 54).   But neither *Slaughter* nor the sources on which it relied purported to restrict the President's power to remove an inferior officer directly when (a) the President is unable to designate an acting principal officer (as Plaintiff argues); and (b) there is no principal officer installed through which the President may exercise oversight over inferior officers.   Defs.' Mem. 22-23.   Instead, *Slaughter*'s reasoning affirms the President's authority to directly remove inferior officers, like the Register, when there is no principal officer subject to direct Presidential control.   Defs.' Supp. Mem. 11-15.   Inferior officers, like principal officers, exercise executive power, and "[s]ubordinates who exercise the President's power are subject to removal by him"—"the lowest officers, the middle grade, and the highest."   *Slaughter*, 146 S. Ct. at 2296, 2310.

Plaintiff cites *In re Hennen*, 38 U.S. 230 (1839), as categorically foreclosing the President's authority to remove an inferior officer.   That is false, as Defendants have explained.   Defs.' Supp. Mem. 13-14.   Although *Hennen* stated that "the President has certainly no power to remove" an inferior officer, 38 U.S. at 260, Judge Rao has correctly explained that this statement was "obiter dicta," "has never been repeated as a holding of the Supreme Court," and "runs contrary to recent decisions reaffirming the breadth of the President's constitutional removal authority." *Aviel v. Gor*, No. 25-5105, 2025 WL 1600446, at *4 n.2 (D.C. Cir. June 5, 2025) (Rao, J., dissenting); *see* Defs.' Supp. Mem. 13.

Otherwise, Plaintiff purports to invoke "a series of cases that preserved Congress's power to restrict the removal of inferior officers appointed by department heads."   Pl.'s Supp. Mem. 3-4. They did no such thing.   Both *Myers v. United States*, 272 U.S. 52 (1926), and *Free Enterprise*

*Fund v. PCAOB*, 561 U.S. 477 (2010), affirmed the President's authority over inferior officers. *Myers* upheld removal of a postmaster "by order of the Postmaster General, acting by direction of the President." 272 U.S. at 106. And *Free Enterprise Fund* invalidated for-cause removal restrictions on inferior officers when the principal officer is also protected from removal. 561 U.S. at 491. For its part, *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020), did not recognize a general "exception[]" for inferior officers; it said only that the Court had "held that Congress could provide tenure protections to *certain* inferior officers *with narrowly defined duties*," *id*. at 204 (emphasis added; emphasis omitted)—*i.e.*, those with "limited jurisdiction and tenure" and who "lack[] policymaking or significant administrative authority," *id*. at 217-18; *see also* Defs.' Supp. Mem. 12-13 (discussing *United States v. Perkins*, 116 U.S. 483 (1886), and *Morrison v. Olson*, 487 U.S. 654 (1988)). Plaintiff does not attempt to argue that the Register of Copyright fits within that exception—and it clearly does not. Defs.' Supp. Mem. 12.

Second, and relatedly, Plaintiff argues that "the historical resources that [*Slaughter*] relied on … limit the President's removal authority to principal officers under his direct supervision." Pl.'s Supp. Mem. 4. Not so. Instead, the historical sources on which the Court relied made clear that the President's removal power applies to *all* "[s]ubordinates who exercise the President's power"—"the lowest officers, the middle grade, and the highest." *Slaughter*, 146 S. Ct. at 2296, 2310. The *Slaughter* majority thus did not cite *Perkins* once and cited *Morrison* only for the proposition that the FTC Commissioners exercise executive power. *Slaughter*, 146 S. Ct. at 2301; *id*. at 2335 (Sotomayor, J., dissenting) (noting that "the majority ignores [*Perkins*]"). This was not lost on the dissent, which recognized that there is not "much in the majority's logic that supports drawing a line at principal officers," as "[i]nferior officers … wield some executive power." *Id*. at 2344 (Sotomayor, J., dissenting). And when *Slaughter* identified offices or entities that may not

4

be subject to the rule of at-will Presidential removal, it did not mention inferior officers.  *Id*. at 2305-06 (majority opinion).

Third, Plaintiff tries to limit *Slaughter* to officers "that perform activities 'well within the heartland of executive power.'"  Pl.'s Supp. Mem. 5 (quoting *Slaughter*, 146 S. Ct. at 2305). *Slaughter* says the exact opposite.   In overruling *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Supreme Court extended the President's removal power to all officers, except those that "'exercise[] *no part* of the executive power.'"  *Slaughter*, 146 S. Ct. at 2302 (emphasis added). Officers that exercise *any* part of the executive power are subject to Presidential removal.  *Id*. at 2310 ("Subordinates who exercise the President's power are subject to removal by him."); *see* Defs.' Supp. Mem. 6-8, 10-11.   The Register of Copyrights exercises some executive power, and so must be subject to Presidential control.   Defs.' Supp. Mem. 8-11.

Plaintiff insists that the Register does not "wield any of the executive powers enumerated" in *Slaughter*, but then backtracks by conceding that the Register (1) interprets and applies the copyright laws; and (2) issues regulations concerning copyright registration.   Pl.'s Mem. 6 n.1. Those are quintessential executive powers.   Defs.' Supp. Mem. 8-10.   The fact that the Register exercises these powers "subject to approval by the Librarian," Pl.'s Mem. 6 n.1, does not make the power exercised any less "executive" in nature; it just means the Register is an inferior officer.   *See Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 761-62 (2025).   The FTC's powers would still be executive, even if Congress made it a subcomponent within the Library, and the constitution would still require that the FTC Commissioners be subject to Presidential oversight.   And it makes no difference that the Register exercises some non-executive functions (*e.g.*, advising Congress). Pl.'s Supp. Mem. 5.   That does not distinguish the Register from *Humphrey's* analysis of the FTC's

5

powers and does not diminish the President's authority to exercise control over those who exercise any part of the executive power.   Defs.' Supp. Mem. 10-11.

Fourth, there is no merit to Plaintiff's argument that the Library or the Copyright Office are one of those "unique" entities that performs "functions traditionally handled outside the Executive Branch." *Slaughter*, 145 S. Ct. at 2306.   The Court has identified one entity that falls in that category—the Federal Reserve, which is "a uniquely structured, quasi-private entity," *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025), whose functions historically were not understood to be executive.   By contrast, copyright functions have always been understood to be executive in nature, and neither the Library nor the Copyright Office has a similar "distinct historical tradition" of executive independence like that of "the First and Second Banks of the United States." *Slaughter*, 145 S. Ct. at 2306.   The opposite is true.   The Librarian, who was first tasked with administering the copyright laws, has been appointed by the President and subject to at-will removal from the start, and the Copyright Office has been housed in the Library since its creation in 1897.   Defs.' Mem. 3-4 & n.2.

That history belies Plaintiff's assertion that "Congress placed the Copyright Office within the legislative branch."   Pl.'s Supp. Mem. 5.   The Libarian is a principal *executive* officer appointed by the President with the advice and consent of the Senate, and the Librarian appoints the Register of Copyrights, an inferior *executive* officer.   *See* Defs.' Supp. Mem. 2 (citing 2 U.S.C. §136-1(a)); Pl.'s Supp. Mem. 2 (acknowledging that the Register of Copyrights is "an inferior officer").   As the D.C. Circuit has held, the "Library is undoubtedly a 'component of the Executive Branch.'" *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1342 (D.C. Cir. 2012) (quoting *Free Enter. Fund*, 561 U.S. at 511); *see Med. Imaging & Tech. All. v. Libr. of Cong.*, 103 F.4th 830, 839, 840 n.4 (D.C. Cir. 2024); Defs.' Mem. 15-16; Defs.' Reply Mem. 17-

6

18.    The Library of Congress—including the Register of Copyrights—exercises executive authority and must be subject to Presidential oversight.

That rule does not change just because "Copyright is Congress's own domain" and "[t]he Constitution enumerates the copyright power among the powers of Congress."  Pl.'s Supp. Mem. 5 (citing U.S. Const. art. I, §1, cl. 8).  By that logic, most departments and agencies would be exempted from *Slaughter*'s holding because they administer statutes authorized by one or more of Congress's Article I Section 8 powers—including the FTC, which enforces laws enacted under Congress's Article 1 Section 8 power to "[t]o regulate Commerce … among the several States." But the Supreme Court rejected the argument that the President's removal power extends only to offices carrying out "the President's 'own constitutional duties," and not those who "execute the laws passed by Congress."  *Seila Law LLC*, 591 U.S. at 228 n.11.  And most of the Supreme Court's removal cases involved officers who executed laws enacted pursuant to Congress's Article I, Section 8 powers.  *See, e.g.*, *Seila Law LLC*, 591 U.S. 197 (commerce power); *Free Enter. Fund*, 561 U.S. 477 (commerce power); *Myers*, 272 U.S. 52 (post-office power).

## II.    *Slaughter* supports Defendants' argument that the Library of Congress is "an establishment in the executive branch" under the FVRA.

*Slaughter* also supports Defendants' argument that the Library of Congress is an "Executive agency" under the FVRA, such that the President lawfully designated Mr. Blanche as acting Librarian.  Defs.' Supp. Mem. 15-18; Defs.' Mem. 8-11.  Although Plaintiff insists that "[n]othing in *Slaughter* … bears on the statutory question," Pl.'s Supp. Br. at 2, *Slaughter* confirms that the Library of Congress "unquestionably exercises executive power," 145 S. Ct. at 2305, and thus falls squarely within the statutory phrase "establishment in the executive branch."  5 U.S.C. §104(1); *see* Defs.' Supp. Mem. 16.  At a minimum, *Slaughter* strongly supports interpreting the FVRA to

7

include the Library of Congress as a matter of constitutional avoidance.  *See* Defs.' Supp. Mem. 17-18.

Otherwise, Plaintiff insists that Defendants' interpretation of the FVRA is "squarely foreclosed by [] D.C. Circuit" precedent, Pl.'s Supp. Mem. 2, but Defendants have refuted those arguments already.  *See* Defs.' Mem. 16-17; Defs.' Reply Mem. 4-5.

**III.  *Slaughter* does not undermine Defendants' argument that the President has Article II authority to temporarily appoint an acting Librarian.**

In their summary judgment motion, Defendants argued that in the absence of a statutory prohibition, the President has Article II authority to designate an acting principal officer to supervise an agency's operations temporarily until the Senate confirms a new principal officer.  Defs.' Mem. 18-20.  Plaintiff argues that *Slaughter* undermines this argument because the Supreme Court recognized the normal rule that "principal officers take office only upon Senate confirmation." Pl.'s Supp. Mem. 7.

Defendants' position does not conflict with the constitutional design.  Defendants have argued only that "Article II authorizes the President to designate acting officials to supervise agencies' operations *temporarily*," until a principal officer can be nominated and confirmed by the Senate.  Defs.' Mem. 19 (emphasis added); *see generally id*. at 18-21; Defs.' Reply Mem. 9-11. That is not an "unprecedented theory."  Pl.'s Supp. Mem. 7.  It is the position taken by the Office of Legal Counsel in administrations of both parties, Defs.' Mem. 19, and the D.C. Circuit itself has recognized that the President's Article II duties empower him to appoint acting principal officers for a *temporary* period until a principal officer can be confirmed:

> It could be argued that the intersection of the President's constitutional obligation to 'take care that the laws be faithfully executed' and his obligation to appoint [a principal officer] 'with the Advice and Consent of the Senate' provides the President an implied power, in the absence of limiting legislation … to appoint an acting [principal officer] for a reasonable period of time before submitting the nomination of a new [principal officer] to the Senate.

*Williams v. Phillips*, 482 F.2d 669, 670 (D.C. Cir. 1973).   Nothing in *Slaughter* forecloses this reasoning.

IV.    ***Trump v. Cook* prohibits this Court from reinstating plaintiff as Register of Copyrights.**

Although this Court did not request supplemental briefing on *Trump v. Cook*, 146 S. Ct. 2234 (2026), Plaintiffs argue that *Cook* "rejected" Defendants' argument that district courts may not order the reinstatement of an executive officer.   Pl.'s Supp. Mem. 7-9; *see* Defs' Mem. 27-28; Defs.' Reply Mem. 13-16.   That is incorrect.

*Cook* held only that a district court has equitable authority to reinstate a removed official while litigation to determine the lawfulness of the removal is ongoing.   146 S. Ct. at 2250.   The Court explained that "equity could ensure that the actual incumbents of an office may be protected, *pending a contest as to their title*, from interference with their possession, and with the exercise of their functions."   *Id*. (quotation marks omitted; emphasis added).   But equity could not finally determine the lawfulness of an officer's removal:   "[C]ourts of equity *would not interfere by injunction* to determine questions concerning the appointment of public officers or their title to office."   *Id*. (emphasis added; quotation marks omitted); *see also id*. ("[A] court of equity would not and could not finally determine whether a plaintiff was validly removed.").   Instead, the "final[] determin[ation]" of the lawfulness of an officer's removal "[is] a question only a court of law could settle … by *quo warranto* or mandamus."   *Id*.

*Cook* read both *In re Sawyer*, 124 U.S. 200 (1888), and *White v. Berry*, 171 U.S. 366 (1898), to adopt this rule. *See* Defs' Mem. 27 (citing *Sawyer* and *White*). The Court explained that "[b]oth [*Sawyer* and *Berry*] stand for the … proposition … that 'a court of equity has no jurisdiction over the appointment and removal of public officers,' for such jurisdiction 'belongs exclusively to the courts of law.'" *Cook*, 146 S. Ct. at 2250. "Because the plaintiffs in [*Sawyer* and *Berry*] had 'effective legal remedies' (like mandamus and *quo warranto*) to finally settle title to their offices— the only relief they sought—'equity could not intervene.'" *Id*. (quoting S. Bray, *Remedies in the Officer Removal Cases*, 17 J. Legal Analysis 236, 246 (2025)).

Under *Cook*, this Court would have had authority to "order that [Plaintiff] … remain in office during the pendency of litigation if [Plaintiff] [were] otherwise entitled to a preliminary injunction." *Cook*, 146 S. Ct. at 2250. But *Cook* makes clear that this Court may not use equity to reinstate Plaintiff upon "finally settl[ing]" the lawfulness of her removal, where there are "effective legal remedies" available, such as "*quo warranto* or mandamus." *Id*. Accordingly, this Court may not issue an injunction reinstating Plaintiff as Register of Copyrights, and it may not enter a declaratory judgment, as that is not one of the legal remedies *Cook* recognized. *See id*. Although *Cook* recognized "*quo warranto* or mandamus" as available remedies, Plaintiff has not requested either form of relief; in fact, she says they "do not appear to be appropriate candidates here." Pl.'s Supp. Mem. 9.

The preceding discussion dispenses with Plaintiff's argument that this Court has "a menu of possible remedies" available on final judgment. Pl.'s Supp. Mem. 8. Even so, Plaintiff urges this Court to enter a permanent injunction based on "Congress's decision to organize the Library of Congress within the legislative branch." Pl.'s Supp. Mem. 9. Even if that characterization were correct, such considerations have no bearing on the scope of this Court's equitable power. In any

10

event, Plaintiff has not satisfied the requirements for a permanent injunction (and certainly not the sweeping injunction she requests), *see* Defs.' Mem. 28-39, and the Library of Congress is not within the Legislative Branch, so Plaintiff's own justification for a permanent injunction fails on its own terms.   *Supra*, p. 6; Defs.' Mem. 15; Defs.' Reply Mem. 17-18.

**CONCLUSION**

The Court should deny Plaintiff's motion for summary judgment, grant Defendants' cross-motion for summary judgment, and enter final judgment for Defendants as expeditiously as possible, so the President may exercise his constitutional duty to oversee those who purport to exercise executive power on his behalf.


Dated: August 14, 2026                    Respectfully submitted,


                    BRETT A. SHUMATE
                    Assistant Attorney General

                    ERIC J. HAMILTON
                    Deputy Assistant Attorney General

                    CHRISTOPHER R. HALL
                    Assistant Branch Director
                    Federal Programs Branch

                    */s/ Benjamin Hayes*
                    BENJAMIN HAYES
                    Senior Counsel to the Assistant Attorney General,
                    Civil Division
                    U.S. Department of Justice
                    950 Pennsylvania Avenue, NW
                    Washington, DC 20530
                    (202) 514-8214
                    Benjamin.T.Hayes@usdoj.gov

                    *Counsel for Defendants*


11