**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SHIRA PERLMUTTER,

       *Plaintiff,*

v.

TODD BLANCHE *et al.*,

       *Defendants*.

Case No. 1:25-cv-01659-TJK

**RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF**

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................... 1

ARGUMENT.............................................................................................................................. 2

I.      The FVRA Did Not Authorize Blanche to Serve as Acting Librarian ............................... 2

II.     *Slaughter* Confirms that the President Did Not Have Inherent Article II Authority
        to Remove Ms. Perlmutter Directly ................................................................................. 3

        A.      Supreme Court precedent pegs the power to remove to the power to
                appoint, which Congress vested in the Librarian..................................................... 4

        B.      The principles motivating *Slaughter* dictate the same outcome ........................... 8

III.    *Slaughter* Confirms that the President Did Not Have Inherent Article II Authority
        to Install Blanche as Acting Librarian ......................................................................... 10

IV.     *Cook* Forecloses Defendants' Argument That No Remedy Is Available ........................ 11

CONCLUSION.......................................................................................................................... 11

**INTRODUCTION**

Defendants fundamentally misread *Trump v. Slaughter*, 146 S. Ct. 2283 (2026), entirely ignore *Trump v. Cook*, 146 S. Ct. 2234 (2026), and rather than meaningfully apply either case, rehash the same arguments from prior briefs that the D.C. Circuit has already rejected.  First, the FVRA does not authorize Blanche to serve as acting Librarian: The Library of Congress is not an "Executive agency" within the statute's reach, as the D.C. Circuit has already held.  *See Davis v. Billington*, 681 F.3d 377, 386 (D.C. Cir. 2012); *Perlmutter v. Blanche*, 2025 WL 2627965, at *5 (D.C. Cir. Sept. 10, 2025) (Pan, J., concurring, joined by Childs, J.).  Second, Article II gives the President no power to remove the Register directly.  Removal follows appointment—as has been the case for well over a century—and Congress vested that appointment power in the Librarian. 17 U.S.C. § 701(a).  The D.C. Circuit has agreed.  *See Nat'l Treasury Emps. Union v. Reagan*, 663 F.2d 239, 247 (D.C. Cir. 1981) ("Absent relevant legislation" "the power to remove is held by the appointing authority, and only by the appointing authority."); *Perlmutter*, 2025 WL 2627965, at *6 (same); *Aviel v. Gor*, 2025 WL 1600446, at *1 (D.C. Cir. June 5, 2025) (Katsas, J., concurring, joined by Pillard, J.) (same).  Defendants effectively concede as much: their own brief admits that the President "ordinarily" removes an inferior officer "through the department head, rather than on his own."  Defs.' Supp. Br. at 11, ECF No. 59.  Far from silently overruling a long line of precedent, *Slaughter* confirms it.

Finally, Defendants concede by omission that neither *Slaughter* nor *Cook* supports their claim that the President may unilaterally install Blanche as acting Librarian, or their fallback argument that no remedy is available.  The Appointments Clause requires advice and consent for the appointment of principal officers.  *Slaughter*, 146 S. Ct. at 2295.  And *Cook* confirms there is no equitable bar to restoring a removed officer to her office.  *Cook*, 146 S. Ct. at 2250.  That forecloses Defendants' claim that, even if Ms. Perlmutter should not have been removed, this

Court is powerless to do anything about it.  The Court remains free to fashion a remedy that includes a combination of declaratory relief, a permanent injunction, and mandamus.

Unable to win on the law, Defendants resort to urgency.  They claim that time is of the essence.  Defs.' Supp. Br. at 2.  Any urgency, more than 15 months after Plaintiff's purported removal, is of Defendants' own making, and it is no reason to depart from settled law.  *See* Pl.'s Br. at 17, ECF No. 49-1; Pl.'s Reply at 12, ECF No. 53.  Nothing in Defendants' supplemental brief disturbs the conclusion that Plaintiff is entitled to summary judgment.

## ARGUMENT

## I.  The FVRA Did Not Authorize Blanche to Serve as Acting Librarian

Defendants continue to press their atextual argument that the FVRA applies to the Library of Congress.  Defs.' Supp. Br. at 15–18.  That argument conflicts with D.C. Circuit precedent and fails.  *See Davis*, 681 F.3d at 386 (holding that the "narrowing term 'Executive agency'" "plainly does not contain the Library of Congress within the meaning of the statute"); *Perlmutter*, 2025 WL 2627965, at *6 (relying on *Davis* to reach the same conclusion); *Haddon v. Walters*, 43 F.3d 1488, 1490 (D.C. Cir. 1995) (holding that Congress does not regard an entity "to be an independent establishment, as it uses that term," where, as here, it "has used the term 'independent establishment' in distinction to" that entity).  Defendants now assert that *Slaughter* helps their position because the Librarian, like the Federal Trade Commission (FTC) commissioner, issues rules and adjudicates cases.  *See* Defs.' Supp. Br. at 16.  But that argument has no relevance to the dispositive question: whether the Library falls within Congress's definition of "Executive agency," for purposes of the FVRA.  Plaintiff has shown that it does not.  *See* Pl.'s Br. at 10–11; Pl.'s Reply at 4–8.  In fact, the FTC is expressly excluded from the scope of the FVRA.  *See* 5 U.S.C. § 3349c(1).  So the result in *Slaughter* cannot possibly have turned on the meaning of the FVRA's statutory terminology.  Defendants still offer no evidence

2

that Congress silently adopted the constitutional definition of "Executive department" for the statutory term "Executive agency" in 5 U.S.C. § 105.[1]

Indeed, Defendants' own comparison cuts against them: if the *Librarian*—not the Register—wields the FTC-commissioner-like executive power that (Defendants say) makes the Library an "Executive agency," then it is the *Librarian* who the President must be able to reach directly, not the Register. The Register acts "under the Librarian's general direction and supervision," 17 U.S.C. § 701(a); she does not sit atop the chain of command the way FTC commissioners do. Defendants' statutory argument thus confirms Plaintiff's constitutional one: any executive power wielded within the Copyright Office is attributable to (and supervised through) the Librarian.

Defendants' plea for constitutional avoidance illuminates the weakness of their position. *See* Defs.' Supp. Br. at 17–18. The Court cannot read into a statute what is not there merely because Defendants invoke novel and extraordinary claims of inherent Article II authority.

## II. *Slaughter* Confirms that the President Did Not Have Inherent Article II Authority to Remove Ms. Perlmutter Directly

The Register of Copyrights is an inferior officer whom Congress has designated to be appointed and supervised by the Librarian of Congress. Longstanding precedent, which *Slaughter* reaffirmed, therefore binds this Court: where Congress vests appointment of an inferior officer in someone other than the President, "the President has certainly no power to remove" that officer directly. *Ex parte Hennen*, 38 U.S. 230, 260 (1839); *Slaughter*, 146 S. Ct. at 2298; *see also Nat'l Treasury Emps. Union*, 663 F.2d at 247. The inquiry should end with the text of *Slaughter* and the Supreme Court's (and D.C. Circuit's) other precedents. But even if the

---

[1] For the same reasons, Defendants' argument that the Librarian cannot appoint the Register unless the Library is an "Executive agency" under Title 5 defies common sense. *See* Defs.' Supp. Br. at 17.

Supreme Court had left open the general question of the President's authority to remove inferior

officers whose appointment Congress has vested in a department head, the principles motivating

the Court's holding would require the conclusion that the Register may be removed only by her

supervisor, the Librarian.

**A. Supreme Court precedent pegs the power to remove to the power to appoint, which Congress vested in the Librarian**

As a threshold matter, Defendants fundamentally misread *Slaughter* as holding that the

President has inherent Article II authority to directly remove inferior officers whose appointment

is explicitly vested by statute in department heads. *See* Defs.' Supp. Br. at 6. *Slaughter* contains

no such holding. *Slaughter* concerns whether Congress may, by statute, impose restrictions on

the President's power to remove an officer that he is entitled by the Constitution to remove.

**1.** To reach the opposite conclusion, Defendants ignore that the *Slaughter* Court

grounded the President's authority to remove his direct subordinates on the proposition that "[h]e

who appoints may remove," *Slaughter*, 146 S. Ct. at 2295. The historical sources the Court

relied on limit that authority to principal officers under the President's direct supervision. *See*

Pl.'s Supp. Br. at 3–6, ECF No. 58. Defendants also misread the series of cases that say that the

power to remove an inferior officer is "incident to the power of appointment," *Hennen,* 38 U.S.

at 259–60; *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 509 (2010).

However, Defendants concede that the President "ordinarily" removes an inferior officer

"through the department head, rather than on his own." Defs.' Supp. Br. at 11 (citing *Free

Enter. Fund*, 561 U.S. at 493).[2] That concession resolves this case: Congress vested the

---

[2] Defendants also repeat their primary argument at summary judgment that the President has the authority to remove an inferior officer where the President has not nominated, and the Senate has not confirmed, a principal officer. *See* Defs.' Supp. Br. at 14. As Plaintiffs have explained, Pl.'s Reply at 8–12, Defendants' argument is baseless and circular, and it directly contradicts

Register's appointment in the Librarian, 17 U.S.C. § 701(a), so the removal power runs through the Librarian too.

In *Hennen*, the Court held that the power to remove an inferior officer is "incident to the power of appointment." 38 U.S. at 259.  Reasoning by analogy to clerks appointed by the secretaries of the departments of state, war, and treasury—over whom "the President has certainly no power to remove," since Congress vested their appointment (and, with it, removal) in the department heads, *id.* at 259–60—the Court held that a clerk appointed by a district judge likewise held office at the discretion of that judge.  *Id.* at 261.  Defendants dismiss that statement as "obiter dicta," relying on a lone court-of-appeals dissent.  *See* Defs.' Supp. Br. at 13 (citing *Aviel*, 2025 WL 1600446, at *4 n.2 (Rao, J., dissenting)).  Yet the Supreme Court itself has cited *Hennen* for the proposition that, when Congress vests appointment power in a department head, "it is ordinarily the department head, rather than the President, who enjoys the power of removal." *Free Enter. Fund*, 561 U.S. at 493 (citing *Myers v. United States*, 272 U.S. 52, 119, 127 (1926) and *Hennen*, 38 U.S. at 259–260).  The D.C. Circuit agrees: "[t]he only one authorized to revoke an appointment is one authorized to make it. Thus, for example, an appointment authorized to be made by the Secretary of Defense and, in fact, made by the Secretary of Defense, cannot be revoked by the President." *Nat'l Treasury Emps. Union*, 663 F.2d at 247 (citing *Hennen*, 38 U.S. at 259).

*Free Enterprise Fund* confirms as much.  The Court struck down the second layer of good-cause removal protections for members of the PCAOB precisely because it left the President able to reach the Board only through the Securities and Exchange Commission—and its remedy proves the point.  Rather than hold that the President could remove Board members

_____

their raised-for-the-first-time and flatly incorrect view that the inferior-officer exception is narrow and limited, rather than the general rule, *see infra* at 7.

directly regardless of the statute, the Court severed only the Board's protection, leaving the Board "removable by the Commission at will" and leaving "the President separated from Board members by only a single level of good-cause tenure." *Free Enter. Fund*, 561 U.S. at 509. That remedy makes sense only if removal of inferior officers runs through the principal officer, not around him: if the President already had an inherent right to reach into the agency and remove the Board directly, the Commission's own tenure protection would have been beside the point, and there would have been only one layer to begin with. *See also Aviel*, 2025 WL 1600446, at *1 (if a department head holds the power to appoint and remove an inferior officer, "the President has certainly no power to remove" that officer directly (quoting *Hennen*, 38 U.S. at 260)); *Perlmutter*, 2025 WL 2627965, at *5 (same).

**2.** Defendants also conflate two distinct lines of authority: cases like *Hennen* and *Free Enterprise Fund*, which turned on who holds the power to remove an inferior officer, with cases like *Myers*, *Perkins*, *Morrison*, and *Seila Law*, which decide whether Congress may shield an inferior or principal officer from removal once that power is properly allocated. Defs.' Supp. Br. at 11–15. Those are different questions, and Defendants' authorities answer only the second— one this case does not present (indeed, the Register is removable at will by the Librarian).

*Myers* held that the President has unrestricted power to remove a postmaster whom the President himself had appointed with the Senate's advice and consent; it says nothing about who may remove an inferior officer appointed by a department head. 272 U.S. at 176. Defendants nonetheless quote *Myers* as "explaining that the 'power to remove inferior executive officers . . . is in its nature an executive power,'" Defs.' Supp. Br. at 11 (quoting 272 U.S. at 161), but their ellipsis omits the key words: the removal power "*is an incident of the power to appoint them*, and is in its nature an executive power." *Myers*, 272 U.S. at 161 (emphasis added). The next sentence says who holds that incident power: "The authority of Congress given by the excepting

6

clause to vest the appointment of such inferior officers in the heads of departments carries with it authority incidentally to invest the heads of departments with power to remove." *Id. Myers* therefore reinforces that removal is an incident of appointment, and because Congress vested the Register's appointment in the Librarian, 17 U.S.C. § 701(a), removal power runs through the Librarian—not the President.

In *Seila Law v. CFPB*, the Court invalidated for-cause removal protections for a principal officer—the director of an independent agency—that the President himself had appointed with the Senate's advice and consent. 591 U.S. 197, 204 (2020). Defendants posit (for the first time) that the Register falls outside the "exception" *Seila Law* recognized in dicta for inferior officers with "limited jurisdiction and tenure." *Id.* at 218. But *Seila*, at most, addresses whether Congress may restrict the removal of a given inferior officer by whatever superior is authorized to exercise removal authority (be it the President or the department head). It does not purport to speak to which particular superior holds that removal authority. It is therefore inapplicable here, where the President decidedly does not have the authority to remove the Register.

*Slaughter* did not disturb the established rule that removal power is incident to appointment power, as articulated in *Hennen* and *Free Enterprise Fund*. *Cf. Comans v. Exec. Off. of the President*, 2026 WL 2100037, at *1 (E.D. Va. July 21, 2026) ("*Slaughter*, however, had nothing to say about inferior officers or the *Perkins* line of cases, and this Court must exercise great caution in translating principles from one context into another without clear direction."). It addressed removal restrictions of principal officers who exercise executive power, not who has the power to remove inferior officers. The Register is an inferior officer, appointed and supervised by the Librarian. 17 U.S.C. § 701(a). *Slaughter* thus confirms, rather than unsettles, what *Hennen* recognized long ago: the President had no authority to remove Ms. Perlmutter directly.

7

### B. The principles motivating *Slaughter* dictate the same outcome

This case should end there, as it is established that the Register serves as an inferior officer who is appointed and supervised by the Librarian of Congress. Nevertheless, it bears mention that, beyond *Slaughter*'s holding (and those of the precedents that the Court left in place), the Court's reasoning cuts against Defendants' effort to find an implied constitutional authority for the President to remove an inferior officer directly. An inferior officer, by definition, answers to a principal officer—so the President's need to oversee the exercise of executive power is already satisfied through his authority over the Librarian.

In their supplemental brief, Defendants point to Copyright Office tasks that they frame as executive functions requiring executive oversight. *See* Defs.' Supp. Br. at 10. Congress already accounted for that: it placed the Register under the Librarian's "general direction and supervision," 17 U.S.C. § 701(a). Most Copyright Office regulations are far removed from anything that could be perceived as executive—they are procedural rules governing how the public uses its services (such as registration, recordation and the formats of deposit copies). *See* 17 U.S.C. §§ 407(c), 408(c), (d); Pl.'s Reply at 29. And even this limited rulemaking requires approval by the Librarian, *see* 17 U.S.C. § 702. That system bears no resemblance to the FTC's authority to "promulgate substantive rules that carry the force of law." *Slaughter*, 146 S. Ct. at 2304. As to an area that does involve promulgating substantive rules, a triennial rulemaking establishing exceptions to the statute's prohibition on circumventing technical measures, Congress specifically allocated decisionmaking to the Librarian (upon consideration of a recommendation by the Register). *See* 17 U.S.C. § 1201.

Defendants also point to the Register's handling of copyright applications, Defs.' Supp. Br. at 9, but her role there is limited to examining applications and creating a public record, *see* 17 U.S.C. § 410. The contrast with the patent system is key: patent rights do not exist until the

8

U.S. Patent and Trademark Office grants them, but copyright rights vest automatically when a work is created and fixed in a tangible form.  *See* 35 U.S.C. § 154(a)(2) (patent grant "shall be for a term beginning on the date on which the patent issues"); 17 U.S.C. § 102(a) ("Copyright protection subsists . . .  in original works of authorship fixed in any tangible medium of expression[.]").  The Register does not create legal rights; she reviews the work to confirm it constitutes protected subject matter and, if so, must register it.  *Id.* § 410(a).  Even if she refuses registration, an applicant remains free to sue for infringement, and the courts are not bound by her determination.  *Id.* § 411(a).  As to the Copyright Royalty Board, Congress placed it in the Library, outside of the Copyright Office; and it is supervised not by the Register but by the Librarian.  *Id.* § 801(a) (Librarian appoints Copyright Royalty Judges after consultation with the Register); *id.* § 803(b)(6)(A) ("[a]ll regulations issued by the Copyright Royalty Judges are subject to the approval of the Librarian of Congress and are subject to judicial review").  And while the Register may review the Copyright Royalty Judges' decisions for legal error and consult with them on questions of law, *id.* § 802(f), that is not supervision: the Judges retain "full independence" over rate and term adjustments, royalty distribution, and the acceptance or rejection of claims.  *Id.* § 802(f)(1)(A)(i).

Defendants mistakenly cite *Intercollegiate* for the proposition that the "Copyright Office 'appl[ies] the statute to affected parties' and 'set rates and terms case by case'" and as a result "'the Register and Librarian' exercise 'powers . . . generally associated in modern times with executive agencies.'"  Defs.' Supp. Br. at 9.  That mischaracterizes the opinion, which does not attribute those powers to the Copyright Office: "[T]he powers in the *Library and the [Copyright Royalty] Board* to promulgate copyright regulations, to apply the statute to affected parties, and to set rates and terms case by case are ones generally associated in modern times with executive agencies rather than legislators."  *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684

9

F.3d 1332, 1341–42 (D.C. Cir. 2012) (emphasis added).  The Register emphatically does not hold these powers.

Nor does the Register have authority to investigate compliance with regulations or to litigate independently.  Private litigants and the Department of Justice enforce the copyright laws.  *See* 28 U.S.C. § 516.  And while Defendants argue that the Register exercises executive power because she participates in international meetings related to copyright, Defs.' Supp. Br. at 9, her international role has been carefully delineated by Congress as educational in nature, and she serves on official government delegations only "as authorized by the appropriate Executive branch authority"—permission she needs from the executive branch, not power she wields for it. 17 U.S.C. § 701(b)(3).

The Register instead exercises what is primarily legislative authority on behalf of Congress.  *See* Pl.'s Supp. Br. at 5–6; *Perlmutter*, 2025 WL 2627965, at *8–9.  Her authority to administer the Copyright Act is conferred by Congress and overseen by the Librarian.  She advises Congress on how to best implement the Constitution's Copyright Clause, 17 U.S.C. § 701(b)—a role of an informative nature that *Slaughter* itself recognized may "be regarded as merely in aid of the legislative function of Congress."  146 S. Ct. at 2305 (quoting *Buckley v. Valeo*, 424 U.S. 1, 137–138 (1976)).

### III.  *Slaughter* Confirms that the President Did Not Have Inherent Article II Authority to Install Blanche as Acting Librarian

Defendants concede by omission that *Slaughter* does not prop up their unprecedented and unsupported theory that the President has unilateral authority to install principal officers. Instead, *Slaughter* reaffirms that "it is up to the Senate to decide whether to confirm those with whom the President would *prefer* to work" through the Appointment Clause's requirement of advice and consent.  *Slaughter*, 146 S. Ct. at 2310; *see* Pl.'s Supp. Br. at 6–7.

**IV.  *Cook* Forecloses Defendants' Argument That No Remedy Is Available**

Similarly, Defendants fail to acknowledge *Slaughter*'s companion case, *Cook*, and thereby concede that *Cook* lends no support to their arguments at summary judgment.  Instead, *Cook* squarely forecloses Defendants' position that reinstatement is not a remedy "traditionally accorded by courts of equity."  Defs.' Opp. at 27; ECF No. 51 (citation omitted); *see Cook*, 146 S. Ct. at 2250 (there is "[n]o equitable bar" to an order securing a removed officer in her office); Pl.'s Supp. Br. at 7–9.  *Cook* therefore belies Defendants' claim that, even if Ms. Perlmutter should not have been removed, this Court is powerless to do anything about it.  Ms. Perlmutter is entitled to declaratory and injunctive relief, and "all other appropriate relief" to establish that she remains the Register of Copyrights and cannot be removed except by a duly appointed Librarian of Congress.  Compl. at 11–12, ECF No. 1 (Requests for Relief).

## CONCLUSION

For these reasons, Plaintiff's motion for summary judgment should be granted.

August 14, 2026

Respectfully submitted,

*/s/ Allyson R. Scher*
Allyson R. Scher (D.C. Bar No. 1616379)
Brian D. Netter (D.C. Bar No. 979362)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
ascher@democracyforward.org
bnetter@democracyforward.org

*Counsel for Plaintiff*

11